

55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 2, 2004

Mr. Christopher Hughes  **VIA HAND DELIVERY**
819 La Jennifer Way
Palo Alto, California 94306

Re: thefacebook.com

Dear Mr. Hughes:

This is a formal demand letter sent to you pursuant to Massachusetts General Laws Chapter 93A, Section 9. This firm represents ConnectU LLC, of Greenwich, Connecticut.

As you are no doubt aware, ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU." The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service. Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers. Initially, ConnectU was to serve the Harvard community. Once established at Harvard, ConnectU would expand to other institutions.

Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team. To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

September 2, 2004
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

It is our understanding that Mr. Zuckerberg shared ConnectU's proprietary and confidential business information, materials, and source code with you, and that you willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

Your use of ConnectU's proprietary information, materials, and source code, which Mr. Zuckerberg unfairly and deceptively obtained from ConnectU and shared with you for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

Upon information and belief, these actions were performed willfully and knowingly.

As a result of your unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

In light of the foregoing, ConnectU demands that you (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. If you fail to do so, that statute provides

September 2, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that you will be liable for multiple damages and the reasonable attorney fees incurred by ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc: ConnectU LLC
John F. Hornick, Esq.
Margaret A. Esquenet, Esq.



55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 2, 2004

Mr. Andrew McCollum  
819 La Jennifer Way  
Palo Alto, California 94306

**VIA HAND DELIVERY**

Re:   thefacebook.com

Dear Mr. McCollum:

    This is a formal demand letter sent to you pursuant to Massachusetts General Laws Chapter 93A, Section 9. This firm represents ConnectU LLC, of Greenwich, Connecticut.

    As you are no doubt aware, ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU." The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service. Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers. Initially, ConnectU was to serve the Harvard community. Once established at Harvard, ConnectU would expand to other institutions.

    Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team. To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

Washington, DC • Atlanta, GA • Cambridge, MA • Palo Alto, CA • Reston, VA • Brussels • Taipei • Tokyo

September 2, 2004
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

  During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

  Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

  It is our understanding that Mr. Zuckerberg shared ConnectU's proprietary and confidential business information, materials, and source code with you, and that you willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

  Your use of ConnectU's proprietary information, materials, and source code, which Mr. Zuckerberg unfairly and deceptively obtained from ConnectU and shared with you for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

  Upon information and belief, these actions were performed willfully and knowingly.

  As a result of your unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

  In light of the foregoing, ConnectU demands that you (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

  Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. If you fail to do so, that statute provides

September 2, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that you will be liable for multiple damages and the reasonable attorney fees incurred by ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc: ConnectU LLC
John F. Hornick, Esq.
Margaret A. Esquenet, Esq.

Case 1:04-cv-11923-DPW    Document 13-3    Filed 10/28/2004    Page 8 of 16



55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 2, 2004

Mr. Dustin Moskovitz
819 La Jennifer Way
Palo Alto, California 94306

**VIA HAND DELIVERY**

Re:  thefacebook.com

Dear Mr. Moskovitz:

This is a formal demand letter sent to you pursuant to Massachusetts General Laws Chapter 93A, Section 9. This firm represents ConnectU LLC, of Greenwich, Connecticut.

As you are no doubt aware, ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU." The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service. Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers. Initially, ConnectU was to serve the Harvard community. Once established at Harvard, ConnectU would expand to other institutions.

Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team. To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

Washington, DC • Atlanta, GA • Cambridge, MA • Palo Alto, CA • Reston, VA • Brussels • Taipei • Tokyo

September 2, 2004  
Page 2

FINNEGAN  
HENDERSON  
FARABOW  
GARRETT &  
DUNNER LLP

      During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

      Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

      It is our understanding that Mr. Zuckerberg shared ConnectU's proprietary and confidential business information, materials, and source code with you, and that you willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

      Your use of ConnectU's proprietary information, materials, and source code, which Mr. Zuckerberg unfairly and deceptively obtained from ConnectU and shared with you for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

      Upon information and belief, these actions were performed willfully and knowingly.

      As a result of your unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

      In light of the foregoing, ConnectU demands that you (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

      Under Chapter 93A, you have thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. If you fail to do so, that statute provides

September 2, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

that you will be liable for multiple damages and the reasonable attorney fees incurred by ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc: ConnectU LLC
    John F. Hornick, Esq.
    Margaret A. Esquenet, Esq.



55 Cambridge Parkway • Cambridge, MA 02142-1292 • 617.452.1600 • Fax 617.452.1666
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

JONATHAN M. GELCHINSKY
617.452.1642
jon.gelchinsky@finnegan.com

September 8, 2004

Eric J. Stenshoel, Esq.
Curtis, Mallet-Prevost, Colt & Mosle, LLP
101 Park Avenue
New York, NY 10178

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Re:   thefacebook.com

Dear Mr. Stenshoel:

This is a formal demand letter to your client, Mark Zuckerberg, pursuant to Massachusetts General Laws Chapter 93A, Section 9. As you are aware, this firm represents ConnectU LLC, of Greenwich, Connecticut.

ConnectU LLC and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, began to develop a business plan for a new type of website in December 2002, called "ConnectU." The ConnectU website (formerly known as Harvard Connection) was designed to allow students and alumni of a college or university to create a network specific to that institution, giving the students and alumni a place to meet, exchange information, discuss employment prospects, and participate in an on-line dating service. Intended by its creators to be funded by corporate advertisers, ConnectU's business model had a significant chance of financial success because the users, well-educated students and alumni, are an attractive demographic for many advertisers. Initially, ConnectU was to serve the Harvard community. Once established at Harvard, ConnectU would expand to other institutions.

Because Messrs Winklevoss were scheduled to graduate in the summer of 2004 and wanted to complete and launch the site before graduation, they engaged trusted fellow students to help develop the code for the site and to become part of the ConnectU team. To that end, in November 2003, Messrs Winklevoss engaged Mark Zuckerberg to complete the development of the software for the ConnectU website. From November 2003 until February 2004, our client and Mr. Zuckerberg had numerous conversations and exchanged multiple email messages wherein Mr. Zuckerberg consistently and repeatedly assured ConnectU that he was using his best efforts to complete the project and ready the website for market, and our client confirmed its reliance on Mr. Zuckerberg's representations.

Eric J. Stenshoel, Esq.
September 8, 2004
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

During that time, ConnectU provided to Mr. Zuckerberg in person and via email detailed descriptions of its plans for the website, including descriptions of merchandising, production, management, design, procedure, and business plans, various functionality and content concepts, the type of information that would be collected from users of the site, and the source code that was developed as of that time. Mr. Zuckerberg agreed to maintain the confidentiality of those plans and information.

Apparently, despite pledging his commitment to the ConnectU project, accepting the ConnectU source code, and gaining access to ConnectU's proprietary and confidential business information, Mr. Zuckerberg never intended to fulfill his duty to ConnectU and broke the trust that Messrs Winklevoss placed in him. Instead, Mr. Zuckerberg unlawfully used ConnectU's code and business information to launch a competing website and service, thefacebook.com, on February 4, 2004.

It is our understanding that Mr. Zuckerberg has shared ConnectU's proprietary and confidential business information, materials, and source code with other individuals, namely, Eduardo Saverin, Dustin Moskovitz, Andrew McCollum, and Christopher Hughes, and that all of these individuals willfully and knowingly use the information and code in connection with the development, operation, and maintenance of thefacebook.com website.

Mr. Zuckerberg's use of ConnectU's proprietary information, materials, and source code, which he unfairly and deceptively obtained from ConnectU and shared with the other individuals stated above for purposes of launching and operating the competing website, thefacebook.com, violates M.G.L. c. 93A, § 2 and constitutes unfair and deceptive trade practices.

Upon information and belief, these actions were performed willfully and knowingly.

As a result of Mr. Zuckerberg's unfair and deceptive acts and practices, ConnectU suffered injury including, but not limited to, loss of potential market share, loss of business opportunities, and loss of actual business, in terms of both users and advertisers. The nature of this harm cannot be remedied by money damages alone.

In light of the foregoing, ConnectU demands that Mr. Zuckerberg (a) immediately take down the website thefacebook.com, (b) refrain from launching any website or service similar in purpose or function to ConnectU for at least two (2) years, (c) immediately return to ConnectU any information and materials owned by ConnectU, including but not limited to source code, object code, business plans of any kind, and website design plans of any kind, (d) immediately disgorge any profits earned by thefacebook.com, and (e) pay ConnectU's attorneys' fees and costs associated with this enforcement of ConnectU's rights.

Eric J. Stenshoel, Esq.
September 8, 2004
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

      Under Chapter 93A, Mr. Zuckerberg's has thirty (30) days from your receipt of this letter to respond with a reasonable offer of settlement. If he fails to do so, that statute provides that he will be liable for multiple damages and the reasonable attorney's fees incurred by ConnectU for the prosecution of this action.

Very truly yours,

Jonathan M. Gelchinsky

JMG/km

cc:    ConnectU LLC
       John F. Hornick, Esq.
       Margaret A. Esquenet, Esq.

## CERTIFICATE OF SERVICE

I, Jenny Macioge, hereby certify that on October 28, 2004, a true and correct copy of the foregoing FIRST AMENDED COMPLAINT was served by the indicated means to the persons at the addresses listed:

| | |
|---|---|
| Robert B. Hawk, Esq.<br>HELLER EHRMAN WHITE & McCAULIFFE<br>2775 Sand Hill Road<br>Menlo Park, CA 94025 | ☐ Via First Class Mail<br>☐ Via Hand Delivery<br>☒ Via Overnight Courier<br>☒ Via Facsimile |
| Daniel K. Hampton, Esq.<br>Gordon P. Katz, Esq.<br>HOLLAND & KNIGHT, LLP<br>10 St. James Avenue<br>Boston, MA 02116 | ☐ Via First Class Mail<br>☒ Via Hand Delivery<br>☐ Via Overnight Courier<br>☒ Via Facsimile |

_____
Jenny E.S. Macioge

FINNEGAN, HENDERSON, FARABOW,
 GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA 02142
Telephone: 617.452.1600