# EXHIBIT 19

APPENDIX 10A

# PROTOCOLS

Following are copies of the actual protocols employed in the cases as discussed *supra*:

*Playboy Enters., Inc. v. Welles*, 60 F. Supp. 2d. 1050 (S.D. Cal. 1999)

(1) The court will appoint an electronic discovery expert, based upon the parties' agreement or suggestions, to create a "mirror image" of defendant's hard disk.
(2) The expert will serve as an officer of the court. Therefore, his having access to information protected by the attorney-client privilege will not result in a waiver of that privilege. The expert will sign the protective order in effect in the case.
(3) The parties will agree on a day and time for the expert to perform the inspection, with plaintiff deferring to defendant as much as possible. Only defendant and its counsel may be present during the hard disk recovery.
(4) After making a copy of the hard drive, the expert will give the mirror image, transferred onto a disk, to defendant's counsel. Defendant's counsel will then print and review any documents and produce responsive communications, and create a privilege log for withheld documents.
(5) Defendant's counsel will be the sole custodian of and will retain the mirror image disk and copies of all documents retrieved from the disk, throughout the litigation. If any documents cannot be retrieved from the hard drive or the retrieved documents constitute less than the whole of data on the hard drive, then defense counsel will submit a declaration to the court along with a report signed by the expert explaining the limits of retrieval achieved.

*Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639 (S.D. Ind. 2000)

- In essence, plaintiff shall select and pay an expert who will inspect the computers in question to create a "mirror image" or "snapshot" of the hard drives. Defendant shall have a chance to object to the selection of the expert. The court will appoint the expert to carry out the inspection and copying as an officer of the court.
- The expert shall then use his or her expertise to recover from the "mirror image" of the hard drive of each computer, and to provide

10-25

in a reasonably convenient form to defendant's counsel, all available word-processing documents, electronic mail messages, powerpoint or similar presentations, spreadsheets, and similar files. The court intends that files making up operating systems and higher level programs in the computer not be duplicated, and that the copying be limited to the types of files reasonably likely to contain material potentially relevant to this case. To the extent possible, the expert shall also provide to defendant's counsel: (a) the available information showing when any recovered "deleted" file was deleted, and (b) the available information about the deletion and contents of any deleted file that cannot be recovered.

- After receiving these records from the expert, defendant's counsel shall then have to review these records for privilege and responsiveness to plaintiff's discovery requests, and shall then supplement defendant's responses to discovery requests, as appropriate.
- The expert shall sign the protective order in the case and shall retain until the end of this litigation the "mirror image" copies of the hard drives and a copy of all files provided to defendant's counsel. At the end of this litigation, the expert shall then destroy the records and confirm such destruction to the satisfaction of defendant. The expert shall not disclose the contents of any files or documents to plaintiff or its counsel or other persons. Because the expert will serve as an officer of the court, disclosure of a communication to the expert shall not be deemed a waiver of the attorney-client privilege or any other privilege. The expert may designate assistants to help in this project. Each assistant shall sign the protective order in this case and shall be subject to all provisions applicable to the expert.
- The expert shall file a report with the court setting forth the scope of the work performed and describing in general terms (but without disclosing the contents) the volume and types of records provided to defendant's counsel. After the expert has been selected, all communications between the expert and plaintiff's counsel shall take place either in the presence of defendant's counsel or through written or electronic communication with a copy to defendant's counsel.

*Northwest Airlines, Inc. v. Local 2000, Int'l Bhd. of Teamsters,* No. Civ. 00-08 (DWF/AJB) (D. Minn. Feb. 2, 2000)

(1) Place of Production. Any discovery requests and/or subpoenas issued by Northwest for equipment shall specify that the equipment will be produced at the offices of Ernst & Young nearest to the site of the equipment. Northwest will advise you further, if, at the request of any respondent, or by Order of the Court, alternative

arrangements are to be made for you to review the equipment either at the site where it is located or at some other site.

(2) Minimize Disruption or Interference. Consistent with the schedule of this litigation, you shall endeavor to conduct your inspection to the extent possible, in a manner which is least intrusive or disruptive of the normal activities or business operations of the person or organization producing the equipment.

(3) Only Ernst & Young to Review. When any equipment is produced to you, the only persons authorized to inspect or otherwise handle such equipment shall be employees of Ernst & Young assigned to this project. No employee of Northwest Airlines, the International Brotherhood of Teamsters of Local 2000, or other named parties, or their respective counsel, will inspect or otherwise handle the equipment produced.

(4) Receipts. Your personnel should provide a receipt for the equipment when it is delivered to you, including a description of the type of equipment, computer manufacturer, model number and serial number; hard drive manufacturer, model number, serial number, and MAC address wherever possible. Likewise, you should obtain a similar receipt when you return the equipment. Ernst & Young should document the chain of custody of the equipment and of any copies of information drawn from the equipment.

(5) Limited Scope of Inspection. It is understood from your representations that the standard practice among experts in computer forensics is to make a "mirror image" of any disc drive, or other storage device and then to utilize search methodologies to locate responsive words, phrase [sic], data, documents, messages or fragments thereof (hereinafter "Data") contained on the mirror image. The Court has limited discovery to the period between April 1, 1999, and February 8, 2000. In order to protect the privacy interest of the person producing the equipment, except to the extent necessary to search for responsive Data, you shall not read or review Data on the equipment which does not fall within the discovery period and does not relate to the persons or subject matter listed on Attachment A to these instructions. Ernst & Young shall retain custody of the mirror image until conclusion of this litigation, at which time you shall destroy the mirror image and shall issue written confirmation of that fact to the Court and to the person or organization who produced the equipment.

(6) Produce Copies of Responsive Information. Whenever your inspection of equipment identifies data that you deem to be responsive to Attachment A, you shall designate the item on a checklist/index. The listing form shall contain a line for each item

of data followed by separate spaces/boxes which may be checked (by defendants only) to designate any objections based upon (1) privilege; (2) negotiation or strike strategy; (3) relevance; (4) other (specified). You shall make three paper copies of each such item, retaining one copy for your records and delivering one copy, along with the prepared checklist, to the attorney representing the party to whom the date [sic] belongs. Upon notification by defense counsel you shall release particularly identified documents to counsel for plaintiff Northwest. Copies of documents not released to Northwest shall be retained by counsel for safekeeping pending determination of discoverability. Upon request of the person producing the equipment, you may provide to that person a copy of any document you have copied for Northwest. You shall not otherwise copy, or disclose, the contents of the equipment.

(7) Qualification of Personnel; Verification of Procedures. You shall be responsible for ensuring that all personnel assigned to this project are qualified and experienced in the field of computer forensic investigations and operate under the direction and control of one or more individuals qualified to serve as expert witnesses on the subject of computer forensic investigations. You shall also be responsible for confirming in writing, and testifying under oath, if necessary, that you have strictly followed the foregoing procedures.

(8) No changes to these Procedures Without Written Notice. There shall be no change in the foregoing instructions without prior written notice to the parties. Please confirm such notice before accepting any propose [sic] changes to these procedures.

(9) Acknowledgement and Agreement. Please confirm by an authorized signature below your receipt of and agreement to be bound by, the foregoing procedures.

)we Entm't, Inc. v. *William Morris Agency, Inc.*, 205 F.R.D. 421 .D.N.Y. 2002), aff'd, 98 Civ. 8272, 2002 U.S. Dist. LEXIS 8308 (S.D.N.Y. ay 9, 2002).

- Initially, the plaintiffs shall designate one or more experts who shall be responsible for isolating each defendant's e-mails and preparing them for review. The defendants shall have the opportunity to object to any expert so designated. The expert shall be bound by the terms of this order as well as any confidentiality order entered in the case.
- With the assistance and cooperation of the defendants' technical personnel, the plaintiffs' expert shall then obtain a mirror image of

any hard drive containing e-mails as well as a copy of any back-up tape. The plaintiffs may choose to review a sample of hard drives and tapes in lieu of all such devices.

- Plaintiffs' counsel shall formulate a search procedure for identifying responsive e-mails and shall notify each defendant's counsel of the procedure chosen, including any specific word searches. Defendants' counsel may object to any search proposed by the plaintiffs.

- Once an appropriate search method has been established, it shall be implemented by the plaintiffs' expert. Plaintiffs' counsel may then review the documents elicited by the search on an attorneys'-eyes-only basis. The plaintiffs may choose the format for this review; they may, for example, view the documents on a computer screen or print out hard copy. Once plaintiffs' counsel have identified those e-mails they consider material to this litigation, however, they shall provide those documents to defendants' counsel in hard copy form with Bates stamps. The plaintiffs shall bear all costs associated with the production described thus far. However, the defendants shall pay for any procedures beyond those adopted by the plaintiffs, such as the creation of TIFF files.

- Defendants' counsel shall then have the opportunity to review the documents produced in order to designate those that are confidential and assert any privilege. Any purportedly confidential or privileged document shall be retained on an attorneys'-eyes-only basis until any dispute about the designation is resolved. The fact that such a document has been reviewed by counsel or by the expert shall not constitute a waiver of any claim of privilege or confidentiality.

- Should any defendant elect to review its database prior to production, it shall do so at its own expense. In that event, the defendant shall review those hard drives and back-up tapes selected by the plaintiffs and shall create copies from which privileged or confidential and unresponsive material has been deleted. The defendant shall then provide plaintiffs' counsel with each "redacted" hard drive or tape, together with a privilege log identifying the documents removed. The process would then continue as described above.

*The Antioch Co. v. Scrapbook Borders, Inc., 210 F.R.D. 645 (D. Minn. 2002).*

- First, Antioch will select an expert of its choice, in the field of computer forensics ("the Expert"), to produce the "mirror image" of

the defendants' computer equipment. Once the Expert is chosen, Antioch will notify the defendants, and the defendants will make available to the Expert, at their place of business, and at a mutually agreeable time, all of their computer equipment.

- The Expert will use its best efforts to avoid unnecessarily disrupting the normal activities or business operations of the defendants while inspecting, copying, and imaging, the defendants' computer equipment, up to and including the retention of the computer equipment on the defendants' premises. Moreover, the only persons authorized to inspect, or otherwise handle such equipment, shall be employees of the Expert assigned to this project. No employee of Antioch, or its counsel, will inspect or otherwise handle the equipment produced. The Expert will also maintain all information in the strictest confidence.

- Within ten days of its inspection, copying, and imaging, of the computer equipment produced by the defendants, the Expert shall provide the parties with a report as to what computer equipment was produced by the defendants, and the actions taken by the Expert with respect to each piece of computer equipment. This report shall include a detailed description of each piece of computer equipment inspected, copied, or imaged, by the Expert, including the name of the manufacturer of the equipment and its model number and serial number; the name of the hard drive manufacturer and its model number and serial number; and the name of any network card manufacturer and its model number, serial number, and MAC address wherever possible. The Expert shall document the chain of custody for any copies and images drawn from the equipment. These reports shall be produced to both of the parties.

- Once the Expert has created copies and images of the defendants' hard drives, it will produce two copies of the resulting data. One copy will be transmitted to the court, and the other copy will be transmitted to the defendants. Thereafter, once Antioch propounds any document requests, the defendants will sift through the data provided by the Expert to locate any relevant documents.

- The defendants shall then produce to Antioch all responsive documents that are properly discoverable, as well as a privilege log, that describes the nature of any privileged documents or communications, in a manner that, without revealing information that is privileged or protected, will enable Antioch to assess the applicability of the privilege or protection claimed. At that time, the defendants

    shall also forward the privilege log to the court for potential *in camera* review.

- Once it has reviewed the documents produced by the defendants, as well as the privilege log, if the plaintiff raises a dispute as to any of the documents, by providing a cogent basis for doubting the claim of privilege, or for believing that there are further relevant documents, the court will conduct an *in camera* review, limited to the issues raised. This procedure will govern the recovery of deleted information from the defendants' computers unless and until modified by a court of competent jurisdiction.

- With this procedure in mind, we direct the parties to "meet and confer" on an appropriate time for the Expert to access the defendants' computer equipment, keeping in mind our directive to minimize the burden and inconvenience caused to the defendants. To that extent, we grant the Plaintiff's Motion to Compel, and to Appoint a Neutral Expert in Computer Forensics.