UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>        Plaintiff,<br><br> v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES AND THEFACEBOOK, INC.,<br><br>        Defendants. | CIVIL ACTION No.: 1:04-cv-11923 (DPW) |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>        Counterclaimants,<br><br> v.<br><br>CONNECTU LLC, CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>        Counterdefendants. | |

**Defendant Eduardo Saverin's**
**Memorandum In Opposition To Plaintiff's Motion To Compel**

## I. INTRODUCTION

  Plaintiff ConnectU LLC's ("ConnectU's") Motion to Compel concerns defendant Eduardo Saverin in two, and only two, respects: (1) in as far as it seeks to compel the production of mirror images of Mr. Saverin's computer hard drive and/or other electronic

memory devices, and (2) to the extent it seeks *all* of Mr. Saverin's documents related to the "subject matter of the action" or "development of thefacebook.com website". The Motion lacks merit in both respects, and should be denied as to Defendant Saverin.[1]

*First*, plaintiff has no justification for requesting production of Mr. Saverin's memory devices. ConnectU's purported justification — plaintiff's desire to find and recover programming code for the Harvard Connection, thefacebook.com, facemash or Coursematch — is simply inapplicable to Mr. Saverin. Defendant Saverin, who had *business* responsibilities for defendant thefacebook and was not and is not a computer programmer, never possessed any of these codes. Thus, for defendant Saverin, there is plainly nothing for ConnectU to find or recover.

*Second*, with respect to ConnectU's request to produce all documents "relevant to the subject matter of the action" and similar requests, these requests lack the "reasonable particularity" required by the Federal Rules and impose unreasonable burdens on Mr. Saverin. Faced with these facially improper requests, Defendant Saverin nonetheless agreed to produce responsive documents created on or before May 21, 2004, the launch date of the ConnectU.com website. By so doing, defendant Saverin agreed in essence to

---

[1] The remainder of ConnectU's Motion concerns requests that are, on their face, directed to defendants other than Mr. Saverin and/or where Mr. Saverin has no documents and has confirmed as much in his responses and/or in the meet and confer process. *See*, *e.g.*, Memorandum in Support of Motion to Compel, pp. 5-7, 16-18. ConnectU's tactical decision to serve 170 separate document requests and to direct those requests (at least nominally) to all five separate defendants, unnecessarily increased the burden and complexity for all defendants of responding to document discovery.

produce all documents in any way related to his work during an approximate 5 month period. With respect to subsequent periods, however, where the burden would be greater and the relevance less, Mr. Saverin requested that plaintiff be more particular in its requests. Plaintiff refused. Defendant Saverin's compromise offer and production are more than sufficient to comply with his obligation to provide discovery in response to plaintiff's improper requests.

For these reasons and the reasons set forth in Defendants Zuckerberg, Moskovitz, McCollum, Hughes, and Thefacebook, Inc.'s Memorandum in Opposition to ConnectU's Motion to Compel, ConnectU's Motion should be denied as against Mr. Saverin.

## II. FACTUAL AND PROCEDURAL HISTORY

During the 2003-2004 school year, while a student at Harvard University, defendant Saverin became one of the founders of thefacebook. As a student majoring in Economics who had not taken any Computer Science courses, defendant Saverin focused on the business side, and not the technical side, of thefacebook. *See* Declaration of Eduardo Saverin ("Saverin Decl.," attached hereto as Exhibit A), ¶ 2. Accordingly, defendant Saverin never possessed a copy of thefacebook source code — or for that matter, source code for Harvard Connection, Coursematch or facemash websites. *See* Ex. A, Saverin Decl., ¶ 3. Indeed, Cameron Winklevoss, designated by ConnectU as the most knowledgeable person regarding defendant Saverin's acts alleged in ConnectU's

complaint, acknowledged, "I don't think he [defendant Saverin] is a programmer." (Ex. B, Winklevoss Dep., at 251:6).[2]

Nonetheless, on October 28, 2004, ConnectU filed an amended complaint alleging, *inter alia*, that Defendant Saverin had copied copyrighted subject matter of the Harvard Connection code and created a derivative work that was used in connection with thefacebook website. Mr. Winklevoss's deposition testimony reveals the utter lack of any basis for this allegation: To wit, Mr. Winklevoss testified that he *did not know* whether defendant Saverin was ever involved in the coding of thefacebook (Ex. B, Winklevoss Dep., at 251:9-17), whether Mr. Saverin wrote any code for thefacebook (*Id*. at 258:6-11) or whether Mr. Saverin even had *seen* any line of source code for Harvard Connection. (*Id*. at 258:12-16). Rather, Mr. Winklevoss acknowledged that defendant Saverin was not involved with Harvard Connection; that the Harvard Connection source code was not made available to Mr. Saverin by anyone at Harvard Connection; and that no one at ConnectU has ever disclosed any Harvard Connection trade secrets to defendant Saverin (*Id.* at 341:11-24). ConnectU founder Winklevoss further testified that he did not know whether Mr. Saverin had ever communicated with defendant Zuckerberg about Harvard Connection (*Id*. at 258:1-5), or what specific information, if any, defendant Zuckerberg shared with Mr. Saverin (*Id*. at 318:11-13).

---

[2] Cited pages from the certified copy of Volume 1 of the transcript the deposition of Cameron H. Winklevoss as 30(b)(6) designee of ConnectU LLP ("Winklevoss Dep.") are attached hereto as Exhibit B. The deposition occurred on August 9, 2005, and Mr. Winklevoss has not yet submitted any changes to or signed the deposition.

In line with its wide-ranging yet baseless allegations against Mr. Saverin, ConnectU propounded 170 production requests nominally directed to all defendants, many of which were impermissibly broad and sought irrelevant documents. After several hours of meet and confer telephone conferences on July 13, 14, 18, and 26, 2005 — during which ConnectU abandoned a number of its improper requests but still refused to compromise on others — ConnectU filed the instant Motion.

### III.    ARGUMENT

#### A.    Because Defendant Saverin Has Never Possessed Any of the Source Code Arguably at Issue in this Case, No Justification Exists To Compel The Production Of Mr. Saverin's Electronic Memory Devices.

As its sole justification for compelling the production of images of Defendants' electronic memory devices, ConnectU argues that an expert should be permitted to perform forensic analyses on such images to find and recover specific computer programming code. *See* Memorandum in Support of Plaintiff's Motion to Compel ("Plaintiff's Memo") at page 7. However, defendant Saverin never possessed any Harvard Connection, thefacebook, Coursematch, or facemash source code in any of his electronic memory devices. *See* Saverin Decl., ¶ 3. Accordingly, there is simply nothing for an expert to "find and recover" and no need "to determine whether any code was deleted" from Mr. Saverin's electronic memory devices.

Where nothing has been deleted from a party's memory devices, there is no justification to compel the production of electronic images. Indeed, the cases cited by ConnectU support just this conclusion; each of those cases involved a party seeking access to computer storage media to determine whether documents have been deleted.

5

*See Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) ("The central dispute concerns access to computers for the purpose of attempting to recover deleted files."); *Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 652 (D. Minn. 2002) ("we conclude that Antioch should be able to attempt to resurrect data which has been deleted from the Defendants' computer equipment, and therefore, we grant its Motion to Compel."); *In re Triton Energy Ltd.*, 2002 U.S. Dist. LEXIS 4326, at *15-*16 (E.D. Tex. Mar. 7, 2002) ("Attempting to fashion a workable remedy for this situation, the Court will appoint a computer specialist to extract information as well as a special master to review and determine what documents or electronic data, if any, were destroyed which bear significantly on this litigation."); *Playboy Enterprises, Inc. v. Welles*, 60 F. Supp. 2d 1050, 1053 (S.D. Cal. 1999) ("Plaintiff needs to access the hard drive of Defendant's computer only because Defendant's actions in deleting those e-mails made it currently impossible to produce the information as a 'document.'"). In this case, of course, no source code was deleted from Mr. Saverin's memory devices because they never contained any such code.

     Moreover, the fact that Defendant Saverin has never possessed any of the source code in question should not be surprising. He was involved in the business side of thefacebook, not the technical side. Mr. Saverin has never taken any computer science courses at Harvard and is majoring in Economics. Saverin Decl., ¶ 2. Given these facts, there was no reason for Mr. Saverin to possess any of the relevant source codes, and no

6

reason for ConnectU to have brought this Motion against him.³  ConnectU's Motion to Compel the production of mirror images of Defendant Saverin's electronic memory devices, (*i.e.*, Document Request No. 119) should be denied.

> **B.    Because ConnectU's Requests Are Unreasonably Overbroad, Defendant Saverin Should Not Be Compelled To Produce Further Responsive Documents.**

ConnectU's Request Nos. 63, 129, and 135, pertaining to defendant Saverin, are all facially overbroad.  Request No. 63 seeks "[a]ll documents relating in any way to the development of thefacebook. com website."  Request Nos. 129 and 135 seek all documents provided by Mark Zuckerberg (No. 129) or any other person (No. 135) "relating in any way to the *subject matter* of this lawsuit."  Federal Rule of Civil Procedure 34(b), however, requires that document requests set forth the items to be produced by individual item or category and that each item or category be described with "reasonable particularity."  Under any reasonable interpretation of "reasonable particularity," ConnectU's document requests at issue fall far short of that requirement.

Because ConnectU's requests are so overbroad, (1) they require the production of irrelevant documents, and 2) they are unreasonably burdensome.  ConnectU's complaint

---

³ Requiring the production of Defendant Saverin's electronic device images will result only in the production of irrelevant documents.  And, in this case, compelling reasons exist not to permit plaintiff or its expert to fish through such irrelevant materials.  Specifically, during his involvement with thefacebook, Defendant Saverin used a desktop computer that is now being used by his mother, a practicing psychotherapist in Florida.  Ms. Saverin uses that computer in connection with her practice.  Saverin Decl., ¶ 4.  The hard drive on that computer now contains private and privileged patient-psychotherapist information.

relates to only very limited aspects of thefacebook.com's development and business, focusing primarily on events that occurred in late 2003 and early 2004, when the alleged misappropriation of trade secrets is supposed to have occurred.  *See, e.g.*, First Amended Complaint, ¶ 14 (Mr. Zuckerberg's involvement with plaintiff dates began in November 2003), ¶ 19 (Mr. Zuckerberg launched thefacebook.com on February 4, 2004); ¶ 20 (Plaintiff ConnectU's site launched on May 21, 2004).  However, Request No. 63, by seeking documents relating to the *entire* development of thefacebook website — with no time or other limitation — unambiguously seeks production of irrelevant documents beyond the scope of parties' pleadings.

In *Richland Wholesale Liquors, Inc. v. Seagram & Sons, Inc.*, 40 F.R.D. 480, 481-82 (D.S.C. 1966), the Court stated

> [c]ertain items from those documents may be relevant, but this is no reason for giving the plaintiff a roving commission to get not merely those items but also the details of a business that may have no relevancy to the lawsuit, but which would be delectable nuggets of information for a competitor.  To allow a plaintiff the sweeping investigation into all of the business affairs of its competitor on no more than an unsupported assertion that the plaintiff might find useful evidence in the documents would be a perversion of justice.  A litigant is entitled to some privacy on matters not directly relevant to the lawsuit.

Compelling the production of documents relating to the entire development of thefacebook website would plainly run afoul of the common sense concerns expressed in *Richland Wholesale Liquors*.

Similarly, defendant Saverin should not be compelled to produce documents in response to ConnectU's Request Nos. 129 and 135.  These requests, by seeking all documents relating to the "subject matter of lawsuit," on their face require a production

8

more expansive than that sanctioned by the Federal Rules. Indeed, it was to avoid such "fishing expeditions" that the scope of discovery permitted under Rule 26(b) was narrowed to "claim or defense of any party" from the broader concept of "subject matter of the lawsuit." *See* Rule 26 Amendment Notes. By limiting discovery to matters relevant to claims or defenses, the Committee intended "that the parties and the court focus on the actual claims and defenses involved in the action." *Id*. Against this background, ConnectU's requests are overbroad and improper.

Despite ConnectU's overbroad document requests, defendant Saverin, in an attempt at compromise, agreed to produce all non-privileged responsive documents generated on or before May 21, 2004, the launch date of the ConnectU website. The choice of May 21, 2004 was based on the fact that information about ConnectU and Harvard Connection, including alleged trade secrets, became public not later than that date. ConnectU rejected this compromise, insisting on compliance with the Requests as originally framed.

During the meet and confer telephone conversations, Defendants also offered to produce documents generated *after* May 21, 2004, if ConnectU would identify its trade secret claims and modify its requests to seek reasonably particular, relevant categories of documents. *See* Declaration of Bhanu K. Sadasivan ("Sadasivan Decl.," attached hereto as Exhibit C), ¶ 3. Indeed, ConnectU's statements in its Memo in Support of this Motion demonstrate that ConnectU could ask for more particular categories of documents. *See* Plaintiff's Memo, pp 18-19 (*e.g.*, documents referring to "similarities of Connectu.com and thefacebook.com . . .). ConnectU, however, refused to narrow or otherwise modify

9

its requests. Sadasivan Decl., ¶ 4. Because Request Nos. 63, 129, and 135, are plainly improper and objectionable, and in light of ConnectU's unreasonable refusal to narrow the requests in any manner, the Court should deny this part of the Motion as to Mr. Saverin.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Saverin respectfully requests that the Court deny ConnectU's Motion against him.

DATED: August 18, 2005

/s/ Daniel K. Hampton

Gordon P. Katz (BBO# 261080)
Daniel K. Hampton (BBO# 634195)
HOLLAND & KNIGHT, LLP
10 St. James Avenue
Boston, MA  02116
Telephone:  (617) 523-2700
dan.Hampton@hklaw.com
gordon.katz@hklaw.com

Robert B. Hawk (*pro hac vice*)
Bhanu K. Sadasivan (*pro hac vice*)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025
Telephone:  (650) 324-7197

Attorneys for Defendant Eduardo Saverin

# 3153351_v2