## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>   Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>   Defendants. | Civil Action No. 1:04-CV-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>   Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>   Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>   Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' (i) OPPOSITION TO CONNECTU LLC'S MOTION TO COMPEL THE PRODUCTION OF MIRROR IMAGES OF DEFENDANTS' HARD DRIVES AND OTHER ELECTRONIC MEMORY DEVICES AND DOCUMENTS CREATED AFTER MAY 21, 2004, AND (ii) CROSS-MOTION FOR PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

    A.    Background ........................................................................................... 3

        1.    The Parties ................................................................................. 3

        2.    Factual Background of the Case ................................................. 4

        3.    Course of Discovery .................................................................. 6

II.   ARGUMENT ................................................................................................. 7

    A.    ConnectU Should Not Be Permitted to Seek Further Discovery Without
        Specifying Its Trade Secrets ............................................................... 7

    B.    ConnectU's Requests Exceed Reasonableness and Relevance Generally........... 9

    C.    Imaging of Hard Drives is Inappropriate in this Case ......................... 11

        1.    ConnectU Fails to Justify Extreme Burden and Personal Invasion
            Involved in Production of Personal Hard Drives ...................... 11

        2.    Plaintiff's suspicion or doubts are insufficient to create a basis for
            the discovery requested ............................................................ 14

III.  FACEBOOK DEFENDANTS' CROSS-MOTION FO RA PROTECTIVE
    ORDER ......................................................................................................... 16

IV.   CONCLUSION ............................................................................................. 17

## TABLE OF AUTHORITIES

## FEDERAL CASES

*American Science and Engineering, Inc.* v. *Kelly*, 69 F.Supp.2d 227 ...............................................8

*Bunztman* v. *Springfield Redevelopment Auth.*, 146 F.R.D. 30 .........................................................9

*Cambridge Internet Solutions, Inc. v. Avicon Group,*
10 Mass. L. Rptr. 539, 1999 WL 959673,2 ...................................................................................7

*Cipolleta v. Sharp*, 2001 WL 914526 ...............................................................................................10

*Cognex Corp. v. Electro Scientific*, No. Civ.A. 01CV10287RCL, 2002 WL 32309413...............11

*CVD, Inc.* v. *Raytheon Co.*, 769 F.2d 842 .........................................................................................8

*Computer Economics, Inc.* v. *Gartner Group, Inc.*, 50 F.Supp.2d 980 ...........................................8

*Fennell* v. *First Step Designs, Ltd.*, 83 F.3d 526 ..................................................................11, 13, 14

*Imax Corp.* v. *Cinema Technologies, Inc.*, 152 F.3d 1161 .................................................................7

*L-3 Communications Corp.* v. *Reveal Imaging Technologies, Inc.,*
No. 035810BLS, 2004 WL 2915743 ....................................................................................7, 16, 17

*Leucadia, Inc.* v. *Applied Extrusion Technologies, Inc.*, 755 F.Supp. 635......................................9

*McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822 ..............................11, 14

*Microwave Research Corp.* v. *Sanders Associates, Inc.*, 110 F.R.D. 669.......................................7

*Playboy v. Welles*, 60 F. Supp. 2d 1050, 1053-54 .....................................................................12, 13

*Positive Software Solutions, Inc.* v. *New Century Mortgage Corp.*, 259 F.Supp.2d 561 ..............12

*Symantec Corp. v. McAfee Associates, Inc.*, No. C-97-20367-JF(EAI) 1998 WL 740807 ..........12

*Williams* v. *Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144 .....................................................11

*Wright* v. *AmSouth Bancorp*, 320 F.3d 1198 ...................................................................................12

*Xerox Corp.* v. *International Business Machines Corp.*, 64 F.R.D. 367 .......................................7, 9

## STATE CASES

*Bertsch* v. *Duemeland*, 639 N.W.2d 455 ...................................................................................12

*Dikeman* v. *Stearns*, 560 S.E.2d 115 ....................................................................................12

*Diodes, Inc.* v. *Franzen*, 260 Cal.App.2d 244 ............................................................................8

*Eastern Marble Products Corp.* v. *Roman Marble, Inc.*, 372 Mass. 835, 364 N.E.2d 799 ............8

*Engelhard Corp.* v. *Savin Corp.*, 505 A.2d 30 ...........................................................................7

*S&R Realty Corp.* v. *Marron*, 360 N.E.2d 1280 ........................................................................15

Defendants Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc.[1] hereby collectively respond to, and oppose, Plaintiff's Motion to Compel the Production of Mirror Images of Defendants' Hard Drives and Other Electronic Memory Devices and Documents created after May 21, 2004 ("ConnectU's Motion"). These Defendants further cross-move, hereby, for an appropriate Protective Order enjoining Plaintiff ConnectU, LLC ("ConnectU") from further attempts at discovering private and personal material of the individual Defendants, as well as any electronic information generated after the launch of the ConnectU website on May 21, 2004, until such time as ConnectU precisely identifies what confidential information and trade secrets have allegedly been misappropriated and/or incorporated into the Defendants' website.

## I.    INTRODUCTION

At its core, the case before this Court is a trade secret case. Defendants have stated that should ConnectU identify its trade secrets with particularity and identify how and why it alleges copyright infringement, Defendants will search for and produce documents responsive thereto which were created after May 21, 2004 – virtually the only documents not produced to date. ConnectU rejected the Defendants' offer and instead filed the present motion – even while it refused to produce a Rule 30(b)(6) witness competent to testify concerning its own copyright infringement allegations.

Most importantly, Massachusetts law, trade secret precedent from other states, and federal case law in this District all require that a plaintiff specify its claimed trade secrets with reasonable particularity before any of its discovery requests may be compelled. Because

---

[1]  Defendant Eduardo Saverin is represented by separate counsel in this matter. The term "Defendants," as used herein, refers to all Defendants, including Mr. Saverin. The "Facebook Defendants" may be used herein to refer to all Defendants *except* Mr. Saverin.

ConnectU has admittedly not done so, its motion should be denied and a protective order should issue.

No party disputes that defendants have produced responsive documents from the categories listed in ConnectU's Motion, which were created prior to May 21, 2004.[2] Defendants produced such documents irrespective of relevance. In addition, Defendants have agreed to produce certain potentially relevant documents created on or after May 21, 2005, including certain financial documents. To date, TheFacebook, Inc. (the "Facebook") has produced three different versions of its source code, with file dates spanning from early to mid 2004 up through 2005.

To require the production and imaging that ConnectU suggests is unreasonable, unwarranted, and oppressive. ConnectU's present motion seeks information relating to the website's members, every email, every business discussion, every version of code, every solicitation, every piece of advertising, and any other kind of information which resides on the Defendants' computers, irrespective to the relevance in this case.[3] Since the Spring of 2004, the Facebook has gained millions of members of its website service. Each of these millions of users has myriad documents associated with him or her. Were ConnectU's present motion to be

---

[2] May 21, 2004 is not a "magic date." It is the date on which ConnectU launched its own competing website. Since ConnectU's complaint focuses on a nexus of facts which occurred substantially prior to the launch of its own website (including the infringement claim), and since there could have been no trade secret theft of things ConnectU itself publicized on its website, counsel to defendants at the time identified this date as a logical break point for certain overburdensome and unduly broad requests. Furthermore, May 21, 2004 coincides with the period during which the Facebook's website began to experience exponential growth, making unqualified compliance with ConnectU's overbroad discovery demands for after created documents profoundly overburdensome, if not impossible.

[3] All of the proprietary information is being sought by a failing competitor of the Facebook which has repeatedly taken the Facebook's electronic information, website designs, and protected data for its own commercial purpose..

granted in full, in addition to its other requests, it would likely require the Facebook Defendants

to produce, at present estimates, an amount of documents and information in excess of one

twentieth the total collection of the U.S. Library of Congress.[4] The expense of such broad

production would be substantial, in part because the transfer of this amount of data would likely

require that Facebook's website (its entire business) be shut down for a two week period, if not

longer. In addition, compliance with ConnectU's overbroad discovery demands may prejudice

the privacy rights of millions of its members, as well as Defendants' right to privilege.

The Facebook Defendants request that ConnectU be limited to a reasonable and relevant

subset of its overbroad requests – which may only be identified upon the clear and explicit

specification by ConnectU of its claimed trade secrets. Discovery should be framed based upon

the unambiguous description of its trade secrets provided in response to pending discovery

requests.

### A.      Background

#### 1.      The Parties

ConnectU is an LLC allegedly formed in Delaware in April 2004. Its principal members

are Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and Howard Winklevoss.

Howard Winklevoss is the father of Cameron and Tyler Winklevoss, and is an investor in

ConnectU. Other than working on a part-time basis for ConnectU, Cameron Winklevoss has no

other employment. Tyler Winklevoss is also believed to be unemployed. Mr. Narendra is

currently working at an investment bank in New York. Howard Winklevoss is a principal of

---

□

[4] *See* Affidavit of Nicholas Heyman in Support of the Facebook Defendants' (i) Opposition to
ConnectU LLC's Motion, and (ii) Cross-Motion for Protective Order ("Heyman Affidavit")
¶¶ 1-3, (describing preliminary investigation as to the amount of documents in the Facebook
Defendants' possession which were created after May 21, 2004, or which reside on computers
and memory devices at issue here).

Winklevoss Consultants, which operates from the same office as ConnectU. Cameron and Tyler Winklevoss met Mr. Narendra while all three were students at Harvard.

The individual Defendants are also former Harvard students, although none of them graduated. They were all involved in the development of thefacebook.com, an online directory for college students which allows them to network with each other.

### 2.    Factual Background of the Case

Mark Zuckerberg ("Zuckerberg") , creator of thefacebook.com website and founder of the Facebook, is a 21 year old computer programmer. He is currently on leave from Harvard University because of the runaway success of his website. Zuckerberg created numerous websites at Harvard, including coursematch.com and facemash.com. He also assisted others on a volunteer basis in their website development when he found the opportunity intellectually challenging. Thefacebook.com was his most successful website creation.

Zuckerberg was originally contacted in late 2003 by the individual Plaintiffs[5] in this case, while he was a student of Harvard University. On November 3, 2003, Zuckerberg received an unsolicited email from Divya Narendra ("Narendra"), asking Zuckerberg if he would like to help program a few elements of a "dating and recruiting" website that Narendra and his friends were developing. Zuckerberg later learned that the website referenced by Narendra was called Harvard Connection ("HC"). Plaintiffs gave a copy of the HC computer code to Zuckerberg. While certain information was shared, no written confidentiality agreement was ever discussed or signed in the process of these discussions. Indeed, ConnectU admitted that the information shared by Narendra with Zuckerberg was also freely shared by Narendra with other

---

[5] For clarity, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra may also be referred to herein as "Plaintiffs," whether by themselves or collectively with the named Plaintiff, ConnectU.

third parties, without any verifiable expectation of secrecy or confidentiality. (*See* Walker Aff. Ex. A (transcript of August 9, 2005 deposition of ConnectU LLC (174:12-175:12; 177:7-16; 177:19-179:17)).)

Further, Zuckerberg was not compensated in any way for any work he did for Mr. Narendra and the Winklevosses. Rather, Zuckerberg volunteered to program portions of the HC website. Over time, Mr. Zuckerberg was asked to do an increasing amount of work and soon realized that the scope of the work involved was greater than what he had originally been told, and agreed to do. Zuckerberg also found that his academic studies required greater attention, and that other projects were more intellectually interesting. Ultimately, Zuckerberg informed Plaintiffs that he was no longer interested in volunteering his time for their project.

Mr. Zuckerberg decided to launch his own website, thefacebook.com, a website similar in many ways to previous websites he had created and other websites around the country. Thefacebook.com served essentially as an online directory for university students wherein they could join networks of similarly interested people, such as study groups and clubs. Thefacebook.com, like other websites created by Zuckerberg, was an instant success at Harvard. Shortly after launching at Harvard, thefacebook.com was launched at universities around the country. Thefacebook.com has garnered extensive media attention, including from many university periodicals, the New York Times, Time magazine and others. Ultimately, thefacebook.com was so successful that Zuckerberg decided to take a leave of absence from Harvard to attempt to build thefacebook.com into a business.

Following the initial success of the Facebook in the spring of 2004, Plaintiffs formed the entity ConnectU LLC. In so doing, ConnectU claims it created entirely new code, and it called its website connectu.com. In numerous, fundamental respects, the ConnectU website was

deliberately and explicitly modeled after thefacebook.com. The far more limited and more formal dating and recruiting website they had attempted to create in HC was, to some extent, abandoned with the HC code.

Plaintiffs believe that Zuckerberg had certain obligations to them and that he violated those obligations. Accordingly, this lawsuit ensued. Although they have not clearly expressed their reasoning to date, Plaintiffs appear to believe that the Defendants' basic business model (and nothing further) was unlawfully taken from them. Plaintiff has not identified any facts tying any acts by any Defendant (other than Mark Zuckerberg) to either of the Winklevosses or Narendra. No Defendant, including Mark Zuckerberg, has ever had any direct relationship with ConnectU LLC.

### 3.    Course of Discovery

Plaintiff has already engaged in substantial discovery. Defendants have produced thousands of pages of documents. Defendants have also produced three different versions of the Facebook's source code, the earliest version, while partially corrupted, containing files one or more files dated as early as February 2004.[6] The only documents being withheld are documents created after May 21, 2004, and student records of Mark Zuckerberg which predate his involvement in HC. Defendants have also objected to and refused to allow ConnectU to obtain mirror images of computers and memory devices of all Defendants.

Defendants previously noticed a deposition of ConnectU under Rule 30(b)(6) of the

---

[6] Although ConnectU challenges Defendants' code production, it conflates the (pre-litigation) backup procedures of college students with those of experienced professional computer scientists. Defendants have done their utmost to provide responsive source code – including imperfect code – and ConnectU is attempting to deride that effort to excuse the complete absence of evidence for its claims. To date, the Facebook's code production has been superior to ConnectU's in terms of both numerosity of production sets and identity with original code files. Moreover, Defendants have exhibited at least equal, and probably much greater source code control than Plaintiffs have exhibited as to their HC code.

Federal Rules of Civil Procedure. ConnectU refused to designate a witness as to three of the

noticed topics therein.[7] The initial deposition of ConnectU occurred on August 9, 2005,

covering the remaining topics, although numerous disputes exist related to that deposition.

## II.   ARGUMENT

### A.   ConnectU Should Not Be Permitted to Seek Further Discovery Without Specifying Its Trade Secrets

ConnectU's failure to specify its trade secrets preclude the relief it requests. ConnectU

should be required to specify its trade secrets in order to frame the relevant scope of discovery.

Massachusetts, federal, and other state law precedent uniformly precludes grant of a

motion to compel in the instant circumstance. Indeed:

> Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets
> and confidential proprietary information of its adversary, the plaintiff will
> normally be required to <u>first</u> identify with reasonable particularity the matter
> which it claims constitutes a trade secret before it will be allowed (given a proper
> showing of need) to compel discovery of its adversary's trade secrets.

*L-3 Communications Corp. v. Reveal Imaging Technologies, Inc.*, No. 035810BLS, 2004 WL

2915743, *13 (Mass. Super. Dec. 2, 2004) (emphasis added), quoting *Engelhard Corp. v. Savin*

*Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986). *See also L-3 Communications,* 2004 WL 2915743, *13,

citing *see, e.g., Cambridge Internet Solutions, Inc. v. Avicon Group*, 10 Mass. L. Rptr. 539, 1999

WL 959673,*2 (Mass. Super., Sept. 21, 1999), and *see also Imax Corp. v. Cinema Technologies,*

*Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998); *Xerox Corp. v. International Business Machines*

*Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974). This District has also adopted this rule. *See*

---

[7] All three topics related to ConnectU's evidentiary basis for its copyright infringement claim.
See Walker Aff. Ex. B (Amended Notice of Deposition of ConnectU); *id.* Ex. C (ConnectU's
Objections, including protective order objection); *id.* Ex. D (letter response from the Facebook
Defendants to ConnectU, noting impropriety of "protective order" objection). Counsel to the
Facebook Defendants, Joshua H. Walker, and counsel to ConnectU, John Hornick, met and
conferred regarding ConnectU's refusal to designate, but reached no resolution.

*Microwave Research Corp. v. Sanders Associates, Inc.*, 110 F.R.D. 669, 673 (D. Mass. 1986) ("[a] further procedure employed is to require a plaintiff to specify in detail the trade secrets and confidential information alleged to have been misappropriated").

In *addition*, before a plaintiff is entitled to broad discovery into a defendant's trade secrets, "it must show that other evidence which it has gathered through discovery provides a substantial factual basis for its claim," exceeding even the evidentiary threshold of Rule 11 of the Federal Rules of Civil Procedure. *Id.* at 674.

This rule serves several important purposes: (1) to dissuade the filing of meritless trade secret complaints; (2) to prevent plaintiffs from using the discovery process as a means to obtain the defendant's trade secrets; (3) to assist the Court in framing the appropriate scope of discovery; and (4) to enable defendants to form complete and well reasoned defenses. *See, e.g., Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980 (S.D. Cal. 1999). In complying with this obligation, it is not sufficient for a plaintiff to simply identify general categories of information as its trade secrets. Rather, a trade secret plaintiff must:

> describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade . . . and to permit the defendant to ascertain at least the boundaries within which the secret lies. Such disclosure must provide 'reasonable notice of the issues which must be met at the time of trial' and 'reasonable guidance in ascertaining the scope of appropriate discovery.

*Computer Economics*, 50 F. Supp. 2d at 984, citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 252 (1968). *See also Eastern Marble Products Corp. v. Roman Marble, Inc.*, 372 Mass 835, 364 N.E.2d 799, 801 (1977) (defining trade secret under Massachusetts law, (citation omitted)); *see also CVD, Inc. v. Raytheon Co.*, 769 F. 2d 842, 850 (1st Cir. 1985). In Massachusetts, as in other jurisdictions, vagueness and lack of specificity will prevent the plaintiff from asserting that their trade secret has been misappropriated. *See American Science*

*and Engineering, Inc. v. Kelly*, 69 F. Supp. 2d 227, 238 (D. Mass. 1999).

Requiring this level of specificity at the commencement of the litigation makes sense.

Otherwise, a plaintiff could file a trade secret lawsuit against a competitor or a former employee,

engage in extensive discovery, and then conform its misappropriation claims – if it can – to the

evidence produced by the defendant. In effect, this would allow the plaintiff to obtain discovery

and then "draw the bull's eye around [a previously shot] arrow." *See, e.g., Xerox Corp. v. IBM

Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (holding that, without such a rule, "neither the court

nor the parties can know, with any degree of certainty, whether discovery is relevant or not");

*Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991)

(ordering stay of discovery pending trade secret disclosure because "disclosure of plaintiff's trade

secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately

the Court to ascertain the relevance of plaintiff's discovery"); *see also 4 Milgrim, Trade Secrets* §

16.01[5] (2005) ("a [trade secret] plaintiff can reasonably anticipate that the defendant will insist

that it be apprised of considerable detail describing the trade secret. That insistence can

reasonably be expected to precede the defendant's submitting to discovery of it.").

ConnectU has failed to specify its trade secrets. (*See, e.g.,* ConnectU's Motion at 18

(stating that ConnectU might specify its trade secrets "at a later time").) Therefore, it must not

be given broad access to the Facebook Defendants' trade secrets. Accordingly, ConnectU's

Motion should be denied.

## B.    ConnectU's Requests Exceed Reasonableness and Relevance Generally

ConnectU's requests are also burdensome, oppressive, not likely to lead to admissible

evidence, and seek irrelevant evidence. ConnectU's request for a "mirror image" of every

electronic device owned by Defendants, and for the post-May 21, 2004 documents amounts to a

request for every document in the company and should be denied. *See Bunztman v. Springfield*

*Redevelopment Auth.*, 146 F.R.D. 30, 33 (D. Mass. 1993) (denying request for unspecified financial documents as vague, burdensome, and overbroad); *Cipolleta v. Sharp*, 2001 WL 914526 (Mass. Super. 2001) (denying request that was without limit as to time or a particular incident as unduly vague and overbroad).

As noted above, were ConnectU's present motion to be granted in full, it would require the Facebook Defendants to produce, at present estimates, an amount of documents and information in excess of one twentieth the total collection of the U.S. Library of Congress.[8]  The operations required to effect such a large transfer of data could necessitate the shut down of the Facebook's business for two weeks or more.  ConnectU's requests , along with its requests for all hard drives and memory devices of all defendants, is facially overbroad and unduly burdensome.[9]  These requests must be narrowed and informed by a clear specification by ConnectU of its trade secrets.

In fact, the language of ConnectU's own document requests highlight the absurdity of their failure to clearly specify their trade secrets.  For example, ConnectU moves to compel on its requests for production numbered 129 – 139.  (*See* ConnectU Motion at 17.)  Every one of these requests demands documents "relating in any way to the subject matter of this lawsuit."  How can Defendants possibly know what the "subject matter of this lawsuit" is if ConnectU has not defined its core, by specifying its trade secrets?

As the Facebook Defendants have repeatedly told ConnectU, they are more than willing to produce additional documents created after May 21, 2004 if ConnectU's requests are

[8] *See* Heyman Aff. ¶¶ 1-3.
[9] The request also raises complicated issues of attorney-client privilege.  Specifically, Defendants have had extensive contact with lawyers during the relevant times of the request.  The current motion, if granted, creates substantial risk that privileged documents could be disclosed, as many email communications and privileged documents surely reside on Defendants' computers.

reasonably tailored to specific claimed trade secrets.

### C.    Imaging of Hard Drives is Inappropriate in this Case

#### 1.    ConnectU Fails to Justify Extreme Burden and Personal Invasion Involved in Production of Personal Hard Drives

In order to seek the imaging of hard drives and other memory devices, a plaintiff must show that it has a particularized likelihood of finding discoverable material. *Fennell* v. *First Step Designs, Ltd.*, 83 F.3d 526 (1st. Cir. 1996). ConnectU has failed to meet the high standard required to justify imposing such an oppressive request on Defendants. In *Fennell*, the First Circuit affirmed the trial court's denial of plaintiff's Rule 56(f) request to "mirror" defendant corporation's hard drive; also endorsing the trial court's characterization of the request as a "fishing expedition." 83 F.3d at 532-33.[10]

A myriad of cases around the country have reached the same conclusion as the *Fennell* court, and denied motions to compel on facts similar or virtually identical to the instant ones. *See McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822 (10th Cir. 2001) (denying motion to compel imaging of hard drive as unwarranted, "drastic measure"); *Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144 (D.Mass. 2005) (denying plaintiff's motion to compel and appoint neutral forensic computer expert at its own expense, where premised on plaintiff's highly speculative conjecture, and where no indication defendant unwilling to produce responsive digital documents); *Cognex Corp. v. Electro Scientific*, No. Civ.A. 01CV10287RCL, 2002 WL 32309413 (D.Mass. July 2, 2002) (denying plaintiff's motion to compel defendant search of back-up memory devices; quoting 1993 Advisory Committee notes to Fed. R. Civ. P.

---

[10] ConnectU attempts to distinguish *Fennell* on the grounds that *Fennell* addressed discovery in the Rule 56(f) context. This distinction is irrelevant. There is no evidence that the First Circuit intended to limit its holding to such context. On the contrary, the ruling addresses sufficiency of requests for mirroring hard drives generally, as well as standard discovery protocols. *See generally, id.*

26(b): "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression"); *Symantec Corp. v. McAfee Associates, Inc.*, No. C-97-20367-JF(EAI), 1998 WL 740807 (N.D. Cal. Aug. 14, 1998) (finding request for copies of all hard drives unduly burdensome); *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 561 (N.D. Tex. 2003) (denying as overbroad plaintiff's request, in software copyright infringement action, for order allowing it to image all of defendant's servers and personal computers that contained software in dispute); *Bertsch v. Duemeland*, 639 N.W.2d 455 (N.D. 2002) (denying plaintiff access to defendant computers purchased after alleged wrongful acts in action for misappropriation of trade secrets, defamation, and tortious interference, on grounds that would not lead to relevant information and would risk disclosure of defendant's privileged and confidential information); *Dikeman v. Stearns*, 560 S.E.2d 115 (Ga. Ct. App. 2002) (denying defendant's request to image hard drive of plaintiff law firm, and other requests, as overbroad, oppressive, annoying); *Wright v. AmSouth Bancorp*, 320 F.3d 1198 (11th Cir. Feb. 5, 2003) (court denied plaintiff's motion to compel in discrimination suit where plaintiff sought discovery of computer disks and tapes containing "all word processing files created, modified and/or accessed" by five of the defendant's employees spanning a two and a half year period, since plaintiff's request was overly broad and unduly burdensome and made no reasonable showing of relevance).

The leading case cited by ConnectU also supports Defendants' position. In *Playboy v. Welles* (60 F. Supp. 2d 1050, 1053-54), the Court held that the Court must engage in a detailed balancing of factors in order to determine whether discovery is warranted. Specifically, the *Welles* court held that:

> The Advisory Committee Notes to Fed. R. Civ. P. 34 . . . makes it clear that
> information stored in computer format is discoverable. Defendant has cited no
> cases finding that electronically stored data is exempt from discovery. The only
> restriction in this discovery is that the producing party be protected against undue
> burden and expense and/or invasion of privileged matter. In determining whether
> a request for discovery will be unduly burdensome to the responding party, the
> court weighs the benefit and burden of the discovery. Fed. R. Civ. P. 26(b)(2).
> This balance requires a court to consider the needs of the case, the amount in
> controversy, the importance of the issues at stake, the potential for finding
> relevant material and the importance of the proposed discovery in resolving the
> issues. Fed. R. Civ. P. 26(b)(2).

*Id.* Applying this test, the Court must weigh the benefit and burden of the requested discovery,

including (i) the needs of the case, (ii) the amount in controversy, (iii) the importance of the

issues, and (iv) the potential for finding relevant materials, as well as (v) the importance of the

discovery in resolving issues. None of these factors weighs in favor of Plaintiffs.

Plaintiffs have done nothing in this case to meet its burden and apply this standard.

Plaintiff can point to no specific facts it believes it will find and the benefit of such discovery.

Plaintiff can not identify anything specific that it thinks it will find that will result in finding

relevant materials or in resolving issues. In contrast, the burden of the requested discovery is

fully described in this brief.[11]

In fact, Plaintiff ConnectU has failed to evince <u>any</u> particularized basis to conclude that

Defendants Dustin Moskovitz, Andrew McCollum, or Christopher Hughes have anything

relevant on their personal hard drives which has not already been produced. *See Fennell,* 83

F.3d. at 533 (holding that plaintiff had not demonstrated "'a particularized likelihood of

discovering appropriate information'"). Again, none of these Defendants ever had any direct

relationship with the HC project, much less with ConnectU. In contrast to the futility of

---

[11] Notably, Plaintiff does nothing to describe any protocol or mechanism to handle the cost of the
substantial undertaking requested by plaintiff.

ConnectU's request, the <u>burden</u> upon Defendants, and the resultant invasion of privacy, would be serious.

Plaintiff has not put in any support because it cannot. Plaintiff's case appears to rest on the shortness of time taken by Mark Zuckerberg to complete thefacebook.com website. All documents from that period of time (i.e. early 2004) have been produced, except pre-HC student records. In addition, Defendants produced large amounts of source code, and has continued to do so. Plaintiff cannot explain why any evidence after May 21, 2004 is necessary or likely to have any effect on this case.

### 2.     Plaintiff's suspicion or doubts are insufficient to create a basis for the discovery requested

Plaintiff's sole basis for justifying its onerous request is that it is suspicious of defendants. Much of plaintiff's motion also centers on the fact that it simply questions the accuracy of the production. Plaintiff offers no evidence in support of its position.

Plaintiff's accusation that "there must be more" simply is unwarranted when no record of an insufficient production exists. The law does not allow Plaintiff to seek the information requested based upon its suspicions. In *Fennell*, the First Circuit determined that a mere speculation or suspicion as to defendant's production was minimally probative and could not justify the extraordinary imposition of mirroring even such single defendant's hard drive. *See Fennell*, 83 F.3d at 533 ("the 'five suspicious facts' articulated earlier are equally speculative"). Just so, ConnectU's naked assertion that something is "fishy" (*see* ConnectU Motion, *passim*) hardly justifies such a drastic discovery measure. *McCurdy Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. At p. 831 (10th Cir. 2001) (affirming denial of motion to compel return or inspection of hard drives; "[a]lthough [the requesting party] was apparently skeptical that [the responding party] produced copies of all relevant and nonprivileged documents from the

hard drive(s), that reason alone is not sufficient to warrant such a drastic discovery measure").

Plaintiff incorrectly makes much of the absence of Zuckerberg's computer that is no longer in his possession. Defendant Zuckerberg would be willing to provide the hard drive he had during the winter of 2003-04, but despite extensive searches, he does not have it. ConnectU is therefore improperly seeking to compel production of a thing outside of Zuckerberg's possession, custody, or control. *See S&R Realty Corp. v. Marron*, 360 N.E.2d 1280 (Mass. App. Ct. 1977) (affirming denial of plaintiff's motion to compel discovery where there "was nothing in the record which cast doubt on truth of defendants' response that they had no documents pertaining to the subjects designated by plaintiff in its request").

Finding no evidence to support its claims, amongst the substantial production by defendants, ConnectU relies on innuendo to suggest that such evidence does exist and has been hidden. ConnectU's speculation is improper.

More generally, ConnectU is seeking to penalize Defendants for their good-faith compliance with discovery obligations. In insinuating that data has been withheld, Plaintiff cites categories of documents which have been produced. Far from supporting their "adverse inference," these productions demonstrate Defendants' good faith and diligent efforts to produce all available material.

Assumptions that Defendants must have backed up the HC code is unfounded, as Mark Zuckerberg, prior to the success of thefacebook.com was a student at Harvard. Frequently using his laptop as a server, Zuckerberg had neither the means nor the incentive to maintain professional, commercial scale back systems – particularly as to code for which he had no subsequent use, such as the HC code. Mr. Zuckerberg did not back up the HC code for the same reason that Plaintiff handed over the HC code without expectations of confidentiality. Plaintiff

may not like the fact that Mr. Zuckerberg had no need for the HC code and therefore did not keep it. However, if the evidence is not in Mr. Zuckerberg's possession, nothing further must be done.

Computer errors occur. The fact that certain data no longer exists is not tantamount to the hiding or destroying responsive data and materials. Plaintiff has no basis for its faulty accusations that Defendants are abusing the discovery process. Plaintiff has provided no witnesses, logs, or any supporting evidence to demonstrate that Defendants had destroyed data or are withholding data. Indeed, ConnectU's own production of source code suffers from substantial deficiencies in its integrity. Data imaging for forensic extraction, particularly of the magnitude sought by plaintiffs, should not be imposed where so unjustified.

In addition, ConnectU's request for images of the electronic memory devices is not tailored in response to the computer loss suffered by Zuckerberg. Plaintiff had initially requested the images in their first request for production of documents, well before they had knowledge that Defendant had suffered unrecoverable loss of data. Plaintiff raised no complaint at the time. In the course of discovery, it is not expected that any defendant should give up all electronic data to the plaintiff, but only what plaintiff establishes as relevant. Most importantly, ConnectU cannot compel production of an item a Defendant does not have, as with Zuckerberg. It lies beyond his possession, custody, and control.

## III. FACEBOOK DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER

Rule 26(c) of the Federal Rules of Civil Procedure allows the Court to make an "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including "(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way." In addition to mandating denial of ConnectU's Motion, the well established

rules regarding conduct of trade secret litigation are reflected in the Facebook Defendants'

Proposed Protective Order (*see, e.g. L-3 Communications Corporation et al. v. Reveal Imaging

Technologies, Inc. et al.*, No. 035810BLS, 2004 WL 2915743, *13 Mass. Super. Dec. 2, 2004)

("[t]he protection sought, among others, is an order that [plaintiff] be required to serve on the

defendants a statement specifically identifying those trade secrets that form the basis of their

trade secret misappropriations claims before any discovery may be had on those claims.

Massachusetts law, and the law elsewhere, supports such an order") (citations omitted).

Therefore, the protective order proposed by the Facebook Defendants should be granted. *See id.*

      Indeed, a protective order is needed here to prevent each of undue burden and expense

(*see, e.g. supra* at 3-4), oppression (*see, e.g., id.*), embarrassment (from production of private

hard drive materials), and annoyance (same) upon Defendants.  For the reasons stated herein, the

Facebook Defendants' proposed order is both appropriate and necessary.

## IV.    CONCLUSION

      For each of the foregoing reasons, the Facebook Defendants respectfully request that the

Court (i) deny ConnectU's Motion and (ii) grant the Facebook Defendants' Cross-Motion for a

protective order pursuant to Rule 26(c)(7) of the Federal Rules of Civil Procedure, until such

time as Plaintiff is able to specify its trade secrets with adequate particularity.

///

///

Dated:  August 18, 2005.

Respectfully submitted,

_____
/s/  Joshua H. Walker

Joshua H. Walker*
I. Neel Chatterjee*
Monte M.F. Cooper*
G. Hopkins Guy, III*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
jwalker@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
Telephone:     (617) 526-9600
Facsimile:     (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

ATTORNEYS FOR MARK ZUCKERBERG,
DUSTIN MOSKOVITZ, ANDREW
MCCOLLUM, CHRISTOPHER HUGHES, and
THEFACEBOOK, INC.

* Admitted Pro Hac Vice

DOCSSV1:421124.5