# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

CONNECTU LLC,

        Plaintiff,

v.                    C.A. No. 04-1923(DPW)

MARK ZUCKERBERG, EDUARDO SAVERIN,
DUSTIN MOSKOVITZ, ANDREW McCOLLUM,
CHRISTOPHER HUGHES and THE FACEBOOK,
INC.,

        Defendants.



CERTIFIED COPY

---

VOLUME 1

VIDEOTAPED DEPOSITION OF CONNECTU LLC

BY CAMERON H. WINKLEVOSS

Boston, Massachusetts

Tuesday, August 9, 2005

9:44 a.m. to 6:27 p.m.

Reported by:
Jessica L. Williamson, RMR, RPR, CRR
Notary Public, CSR No. 138795

JOB NO. 36599

www.sarnoffcourtreporters.com

46 Corporate Park, Suite 100    445 South Figueroa St., Suite 2950
Irvine, CA 92606    Los Angeles, CA 90071

phone  877.955.3855
fax    949.955.3854



SARNOFF
Court Reporters and
Legal Technologies

| | | |
|---|---|---|
| 09:43:59 | 1 | P R O C E E D I N G S |
| 09:43:59 | 2 | THE VIDEOGRAPHER: We are recording |
| 09:44:01 | 3 | and are now on the record. Today's date is |
| 09:44:04 | 4 | August the 9th, 2005, and the time is 9:44 |
| 09:44:07 | 5 | a.m. My name is George Dobrentey. I'm a |
| 09:44:10 | 6 | legal videographer for G & M Court |
| 09:44:14 | 7 | Reporters, Ltd. Our business address is 42 |
| 09:44:15 | 8 | Chauncy Street, Suite 1A, Boston, |
| 09:44:17 | 9 | Massachusetts 02111. |
| 09:44:18 | 10 | This is the deposition of Cameron |
| 09:44:23 | 11 | Winklevoss in the matter of ConnectU vs. |
| 09:44:27 | 12 | Zuckerberg in the United States District |
| 09:44:28 | 13 | Court for the District of Massachusetts, |
| 09:44:30 | 14 | Civil Action No. 04-1923(DPW). |
| 09:44:33 | 15 | This deposition is being taken at One |
| 09:44:37 | 16 | International Place in Boston, |
| 09:44:37 | 17 | Massachusetts, on behalf of the defendant. |
| 09:44:38 | 18 | The court reporter is Jessica Williamson. |
| 09:44:41 | 19 | Counsel will state their appearances, and |
| 09:44:42 | 20 | the court reporter will administer the oath. |
| 09:44:45 | 21 | MR. CHATTERJEE: Neel Chatterjee |
| 09:44:47 | 22 | and Joshua Walker for all of the defendants |
| 09:44:49 | 23 | except for Eduardo Saverin. |
| 09:44:54 | 24 | MR. WALKER: Robert Hawk from |
| 09:44:56 | 25 | Heller Ehrman for Defendant Saverin. |

6

| | | |
|---|---|---|
| 09:44:59 | 1 | MR. HORNICK: John Hornick and Troy |
| 09:45:01 | 2 | Grabow for the plaintiff, ConnectU. |
| | 3 | |
| | 4 | CAMERON H. WINKLEVOSS, |
| | 5 | a witness called on behalf of the Defendants |
| | 6 | Mark Zuckerberg, Dustin Moskovitz, Andrew |
| | 7 | McCollum, Christopher Hughes and The |
| | 8 | Facebook, Inc., having first been duly |
| | 9 | sworn, was deposed and testifies as follows: |
| | 10 | |
| | 11 | DIRECT EXAMINATION |
| | 12 | |
| | 13 | BY MR. CHATTERJEE: |
| 09:45:10 | 14 | Q.  Mr. Winklevoss, thank you for coming today. |
| 09:45:14 | 15 | Do you understand that your deposition today |
| 09:45:16 | 16 | is you're testifying on behalf of ConnectU |
| 09:45:19 | 17 | LLC? |
| 09:45:19 | 18 | A.  Yes. |
| 09:45:19 | 19 | Q.  Have you ever had your deposition taken |
| 09:45:21 | 20 | before? |
| 09:45:21 | 21 | A.  No. |
| 09:45:22 | 22 | Q.  I'm going to go over some ground rules with |
| 09:45:26 | 23 | you, and I'm just going to ask you to make |
| 09:45:29 | 24 | sure you understand them.  You may have gone |
| 09:45:31 | 25 | over them with your counsel before. |

7

| | | |
|---|---|---|
| 01:47:04 | 1 | the website for dating is one sort of part |
| 01:47:09 | 2 | of the user functionability of the site. |
| 01:47:36 | 3 | Q.  Isn't it true that Divya Narendra never |
| 01:47:38 | 4 | considered this information about a |
| 01:47:39 | 5 | university-based community confidential? |
| 01:47:43 | 6 | MR. HORNICK:  I'll object to the |
| 01:47:44 | 7 | form of the question, but you can answer it. |
| 01:47:46 | 8 | A.  No, I don't believe that he thought it |
| 01:47:48 | 9 | was -- I don't believe that that was true. |
| 01:47:52 | 10 | I believe that he did think that it was |
| 01:47:53 | 11 | confidential. |
| 01:47:56 | 12 | Q.  Do you know who else Mr. Narendra talked to |
| 01:48:00 | 13 | about this website development project? |
| 01:48:05 | 14 | A.  The only people that Divya have talked to in |
| 01:48:09 | 15 | terms of website project would have been |
| 01:48:12 | 16 | prospective programmers or programmers that |
| 01:48:15 | 17 | we had and people, perhaps close, trusted |
| 01:48:23 | 18 | friends maybe, to test parts of the site |
| 01:48:29 | 19 | were clearly instructed that it was |
| 01:48:30 | 20 | confidential, proprietary.  And the only |
| 01:48:34 | 21 | other people would have been perhaps one or |
| 01:48:38 | 22 | two or maybe three prospective employers |
| 01:48:41 | 23 | that he was interviewing with who couldn't |
| 01:48:44 | 24 | possibly have been in a position to compete. |
| 01:48:46 | 25 | Q.  With respect to these prospective employers, |

174

| | | |
|---|---|---|
| 01:48:51 | 1 | how would they know that they need to keep |
| 01:48:52 | 2 | that information confidential? |
| 01:48:53 | 3 | A.   I think, you know, he certainly could have |
| 01:48:58 | 4 | and would have instructed them that it was |
| 01:49:04 | 5 | confidential information, and I think it was |
| 01:49:06 | 6 | pretty clear that -- at that time period you |
| 01:49:08 | 7 | also have to remember that when he was |
| 01:49:09 | 8 | applying for jobs, we were given the |
| 01:49:12 | 9 | impression by Mr. Zuckerberg that the site |
| 01:49:13 | 10 | was close to launch in any event.  So there |
| 01:49:18 | 11 | was -- it was inconceivable that they were |
| 01:49:20 | 12 | in a position to compete. |
| 01:49:23 | 13 | Q.   Okay. |
| 01:49:23 | 14 | MR. HORNICK:  I'll object that this |
| 01:49:24 | 15 | is outside the scope and not 30(b)(6) |
| 01:49:25 | 16 | testimony. |
| 01:49:49 | 17 | Q.   Did you ever hear Mr. Narendra tell these |
| 01:49:50 | 18 | prospective employers that they should keep |
| 01:49:54 | 19 | the information confidential? |
| 01:49:55 | 20 | A.   No, I -- |
| 01:49:57 | 21 | MR. HORNICK:  Objection.  This is |
| 01:49:59 | 22 | not 30(b)(6) testimony.  It's outside the |
| 01:49:59 | 23 | scope, but you can answer it. |
| 01:50:03 | 24 | A.   I was not present during the employment |
| 01:50:04 | 25 | meeting, so, no, I did not hear. |

175

| | | |
|---|---|---|
| 01:50:06 | 1 | MR. CHATTERJEE: Let's mark this as |
| 01:50:07 | 2 | Exhibit 8. |
| 01:50:08 | 3 | (Exhibit No. 8, E-mail, Bates No. |
| 01:50:34 | 4 | C004810, marked for identification.) |
| 01:50:34 | 5 | Q. Please read through this -- |
| 01:50:36 | 6 | A. Sure. |
| 01:50:36 | 7 | Q. -- and let me know when you're done. |
| 01:50:39 | 8 | (Witness reviews document.) |
| 01:51:42 | 9 | MR. CHATTERJEE: Did I give you |
| 01:51:43 | 10 | one? |
| 01:51:44 | 11 | MR. HAWK: You did, yeah. |
| 01:51:49 | 12 | (Witness reviews document.) |
| 01:51:54 | 13 | A. All done. |
| 01:51:56 | 14 | Q. Mr. Winklevoss, do you know how many people, |
| 01:51:59 | 15 | prospective employers, or I'll use your |
| 01:52:03 | 16 | term, "close, trusted friends" Mr. Narendra |
| 01:52:07 | 17 | shared the HarvardConnection concept with? |
| 01:52:09 | 18 | A. I think that maybe two or three people at |
| 01:52:14 | 19 | major firms and maybe no more than a handful |
| 01:52:20 | 20 | of close friends. So I would say you could |
| 01:52:23 | 21 | probably count it on one to two hands. |
| 01:52:26 | 22 | Q. Could it be as high as 10 prospective |
| 01:52:30 | 23 | employers? |
| 01:52:30 | 24 | MR. HORNICK: Objection. Don't |
| 01:52:32 | 25 | speculate. |

176

| | | |
|---|---|---|
| 01:52:33 | 1 | A.    As I said, I'm aware that he -- |
| 01:52:35 | 2 | MR. HORNICK:  It's outside the |
| 01:52:36 | 3 | scope. |
| 01:52:36 | 4 | A.    I'm aware -- |
| 01:52:38 | 5 | MR. HORNICK:  -- of the 30(b)(6) |
| 01:52:39 | 6 | testimony.  Sorry. |
| 01:52:40 | 7 | A.    I'm aware that he has talked to one -- I |
| 01:52:44 | 8 | believe one employer about it.  I know that |
| 01:52:45 | 9 | for a fact.  And I assume because he applied |
| 01:52:49 | 10 | to I think two or three jobs, that he would |
| 01:52:53 | 11 | have talked to two or three employers about |
| 01:52:54 | 12 | it. |
| 01:52:55 | 13 | Q.    So it's at least two or three? |
| 01:52:56 | 14 | A.    I would say two or three, yeah. |
| 01:52:59 | 15 | Q.    Okay.  And close, trusted friends, |
| 01:53:01 | 16 | approximately how many? |
| 01:53:02 | 17 | MR. HORNICK:  Objection, |
| 01:53:02 | 18 | speculation.  You can answer if you know. |
| 01:53:05 | 19 | A.    I think probably two or three.  I would say, |
| 01:53:09 | 20 | yeah, but, again I can't say for sure. |
| 01:53:13 | 21 | Q.    Now, you said that there's one employer for |
| 01:53:17 | 22 | certain that you know he discussed it with. |
| 01:53:20 | 23 | Who is that? |
| 01:53:20 | 24 | A.    I think that he had -- I think I recall a |
| 01:53:23 | 25 | meeting maybe when he was at Credit Suisse |

| | | |
|---|---|---|
| 01:53:25 | 1 | that he might have talked to the employer |
| 01:53:27 | 2 | then. But, again, I think he had |
| 01:53:32 | 3 | conversations with two or three, but I don't |
| 01:53:34 | 4 | know. |
| 01:53:34 | 5 | Q. And do you know what friends he had the |
| 01:53:37 | 6 | conversations with? |
| 01:53:37 | 7 | A. Specifically, no. I mean, I think -- I |
| 01:53:45 | 8 | don't know specifically, no. |
| 01:53:46 | 9 | Q. What about Mr. Gao. Do you know if he |
| 01:53:48 | 10 | discussed this with any prospective |
| 01:53:50 | 11 | employers or any friends? |
| 01:53:53 | 12 | A. I don't know that. He may have. I don't |
| 01:53:57 | 13 | know. |
| 01:53:58 | 14 | Q. And do you know if he -- if Mr. Gao had any |
| 01:54:02 | 15 | discussions with people not affiliated with |
| 01:54:05 | 16 | HarvardConnection? |
| 01:54:08 | 17 | A. I could not say whether he did or not. |
| 01:54:10 | 18 | Q. What about Tyler Winklevoss? |
| 01:54:12 | 19 | A. I don't believe that Tyler did. |
| 01:54:14 | 20 | Q. So he's never had any conversations with -- |
| 01:54:17 | 21 | A. Aside from -- aside from close -- like, as I |
| 01:54:20 | 22 | mentioned before, close friends, he may |
| 01:54:22 | 23 | have. Such as roommates may have said, "Oh, |
| 01:54:27 | 24 | what are you doing?" And he might have |
| 01:54:28 | 25 | said, "I'm working on a website," end of |

178

| | | | |
|---|---|---|---|
| 01:54:31 | 1 | | story. |
| 01:54:31 | 2 | Q. | With no additional detail beyond that? |
| 01:54:33 | 3 | A. | No, I don't believe so. |
| 01:54:34 | 4 | Q. | And what about you? |
| 01:54:35 | 5 | A. | I believe the same way, yeah. |
| 01:54:37 | 6 | Q. | So you haven't talked with anyone other |
| 01:54:39 | 7 | | than -- |
| 01:54:40 | 8 | A. | Some close friends were aware that I was on |
| 01:54:42 | 9 | | a website. They may have been aware that I |
| 01:54:45 | 10 | | was involved with the Harvard Community, but |
| 01:54:47 | 11 | | much more than that, no, I don't believe so. |
| 01:54:53 | 12 | Q. | And what about Sanjay Mavinkurve? |
| 01:54:56 | 13 | A. | To my knowledge, he has not spoken to |
| 01:54:59 | 14 | | anybody. |
| 01:55:01 | 15 | Q. | And what about Joe Jackson? |
| 01:55:06 | 16 | A. | To my knowledge, he had not, either. |
| 01:55:14 | 17 | Q. | But you don't know? |
| 01:55:15 | 18 | | MR. HORNICK: Objection, don't |
| 01:55:16 | 19 | | speculate. He gave you his answer. |
| 01:55:17 | 20 | A. | I don't know. |
| 01:55:19 | 21 | Q. | So if you can take a look at this document |
| 01:55:22 | 22 | | we've marked as Exhibit 8. |
| 01:55:24 | 23 | A. | Uh-huh. |
| 01:55:24 | 24 | Q. | Are there any confidential information of |
| 01:55:30 | 25 | | HarvardConnection that Mr. Narendra has |

179

| | | |
|---|---|---|
| 01:55:32 | 1 | disclosed in this e-mail? |
| 01:55:36 | 2 | A.  Well, I think basically Mr. Narendra |
| 01:55:41 | 3 | illustrates two potential possibilities of |
| 01:55:45 | 4 | use for the site.  It's by no means all- |
| 01:55:48 | 5 | encompassing.  I don't think he really |
| 01:55:54 | 6 | expounds on anything that -- on anything |
| 01:56:01 | 7 | proprietary here. |
| 01:56:04 | 8 | Q.  So it's your -- so what you're saying is |
| 01:56:07 | 9 | there's nothing proprietary shared in this |
| 01:56:09 | 10 | e-mail? |
| 01:56:10 | 11 | A.  Oh, well, you know, the whole -- the |
| 01:56:30 | 12 | nightclub, the local club thing seems like |
| 01:56:33 | 13 | that could be proprietary.  The Harvard |
| 01:56:36 | 14 | bands and promotional thing could be |
| 01:56:37 | 15 | proprietary.  With respect -- social hub |
| 01:56:44 | 16 | might be proprietary.  But, again, this is a |
| 01:56:48 | 17 | close trusted friend.  This is not somebody |
| 01:56:52 | 18 | who -- you know, this falls under the |
| 01:56:55 | 19 | individuals that I mentioned before. |
| 01:56:56 | 20 | Q.  Do you know who this person is that was sent |
| 01:56:59 | 21 | this e-mail? |
| 01:56:59 | 22 | A.  Yeah, I believe he's a close friend of |
| 01:57:02 | 23 | Divya's.  And I think that -- I think that |
| 01:57:06 | 24 | he's an individual that could be trusted. |
| 01:57:09 | 25 | Q.  And what's his name? |

180

| | | | |
|---|---|---|---|
| 01:57:11 | 1 | A. | I believe the e-mail says it, Marko Soldo. |
| 01:57:14 | 2 | Q. | Do you know him? |
| 01:57:15 | 3 | A. | I do know him. |
| 01:57:15 | 4 | Q. | So how do you spell his name? |
| 01:57:18 | 5 | A. | M-A-R-K-O, S-O-L-D-O. |
| 01:57:22 | 6 | Q. | And do you know where he is now? |
| 01:57:24 | 7 | A. | He could be anywhere in the world. I don't |
| 01:57:28 | 8 | | know. He's not -- I don't -- I think he's |
| 01:57:34 | 9 | | Croatian perhaps and I don't know where he |
| 01:57:35 | 10 | | is. |
| 01:57:36 | 11 | Q. | Do you know if there are any follow-on |
| 01:57:38 | 12 | | discussions from this e-mail? |
| 01:57:38 | 13 | A. | Not that I'm aware of, I don't believe so. |
| 01:57:48 | 14 | Q. | Do you know why Mr. Narendra wrote this |
| 01:57:50 | 15 | | e-mail? |
| 01:57:50 | 16 | A. | As I said, you know, we may have talked -- |
| 01:57:57 | 17 | | you know, mentioned it to a friend or two |
| 01:57:59 | 18 | | for testing of some sort, and it's possible |
| 01:58:03 | 19 | | that Divya wanted to hear his input in a |
| 01:58:09 | 20 | | trusted environment. |
| 01:58:11 | 21 | Q. | You've used this term, "trusted |
| 01:58:15 | 22 | | environment." What do you mean by that? |
| 01:58:16 | 23 | A. | I just mean that, as I said, close friends, |
| 01:58:19 | 24 | | you know, that were aware that this was a |
| 01:58:22 | 25 | | closely guarded project. |

181

| | | | |
|---|---|---|---|
| 01:58:24 | 1 | Q. | Is there anything on that e-mail that |
| 01:58:26 | 2 | | suggests to you that the information is |
| 01:58:29 | 3 | | confidential? |
| 01:58:30 | 4 | A. | I don't see anything in this e-mail that |
| 01:58:36 | 5 | | specifically says confidential. |
| 01:58:40 | 6 | | MR. CHATTERJEE: Okay. Let's mark |
| 01:58:41 | 7 | | this as Exhibit No. 9. |
| 01:58:43 | 8 | | (Exhibit No. 9, E-mail, Bates No. |
| 01:59:00 | 9 | | C004820, marked for identification.) |
| 01:59:00 | 10 | Q. | Take a look at it, and let me know when |
| 01:59:02 | 11 | | you're done. |
| 01:59:03 | 12 | | (Witness reviews document.) |
| 01:59:34 | 13 | A. | Uh-huh. |
| 01:59:34 | 14 | Q. | Do you know who Suzanne R. is? |
| 01:59:36 | 15 | | MR. HORNICK: Just I'll object that |
| 01:59:38 | 16 | | this is outside the scope, and it's not |
| 01:59:40 | 17 | | 30(b)(6) testimony. You can continue. |
| 01:59:41 | 18 | A. | I believe that -- I think this lady is a |
| 01:59:45 | 19 | | potential employer. |
| 01:59:46 | 20 | Q. | And why do you think that? |
| 01:59:47 | 21 | A. | Because it sounds like she's giving a |
| 01:59:54 | 22 | | presentation to people at Harvard and |
| 01:59:56 | 23 | | there's the mention of a resume and offer of |
| 02:00:00 | 24 | | suggestions, so... |
| 02:00:01 | 25 | Q. | So you're surmising it from the content of |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

Page 403

1     In the United States District Court
2     For the District of Massachusetts
3         I, Jessica L. Williamson, Registered,
4     Merit Reporter, Certified Realtime Reporter
5     and Notary Public in and for the
6     Commonwealth of Massachusetts, do hereby
7     certify that CAMERON H. WINKLEVOSS, the
8     witness whose deposition is hereinbefore set
9     forth, was duly sworn by me and that such
10    deposition is a true record of the testimony
11    given by the witness.
12        I further certify that I am neither
13    related to or employed by any of the parties
14    in or counsel to this action, nor am I
15    financially interested in the outcome of
16    this action.
17        In witness whereof, I have hereunto set
18    my hand and seal this 11th day of August,
19    2005.
20
21    *[signature: Jessica L. Williamson]*
22    _____
23    Jessica L. Williamson, RMR, RPR, CRR
24    Notary Public, CSR No. 138795
25    My commission expires: 12/18/2009