# EXHIBIT 3



Not Reported in F.Supp.2d                                                                                                         Page 1

Not Reported in F.Supp.2d, 2002 WL 32309413
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2002 WL 32309413
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Massachusetts.
COGNEX CORPORATION, Plaintiff,
v.
ELECTRO SCIENTIFIC INDUSTRIES, INC., Defendant.
**No. Civ.A. 01CV10287RCL.**

Filed Feb. 14, 2001.
July 2, 2002.

represented by Victor H. Polk, Jr. , Bingham McCutchen LLP, Boston, MA, Attorney to be Noticed, for Victor H. Polk, Jr., Special Master.
represented by John L. Capone , Cesari & McKenna, LLP , Boston, MA, Lead Attorney, Attorney to be Noticed, Kevin Gannon , Michael E. Attaya , Thomas C. O'Konski , Cesari & McKenna, LLP, Boston, MA, Lead Attorney, Attorney to be Noticed, for Cognex Corporation, Plaintiff.
represented by Claire Laporte , John M. Granberry , Michael V. Dowd , Foley Hoag LLP , Boston, MA, Lead Attorney, Attorney to be Noticed, Mitchell J. Matorin , Foley Hoag LLP , Boston, MA, Lead Attorney, Attorney to be Noticed, Peter B. Ellis , Robert L. Bocchino, Jr. , Foley Hoag LLP, Boston, MA, Lead Attorney, Attorney to be Noticed, for Electro Scientific Industries, Inc., Defendant.
represented by Claire Laporte , Michael V. Dowd , Peter B. Ellis, (See above for address), Lead Attorney, Attorney to be Noticed, for Electro Scientific Industries, Inc., Counter Claimant.
represented by Martin J. O'Donnell , Cesari & McKenna, LLP , Boston, MA, Lead Attorney, Attorney to be Noticed, Michael E. Attaya, (See above for address), Lead Attorney, Attorney to be Noticed, for Cognex Corporation, Counter Defendant.
represented by Michael E. Attaya , Thomas C. O'Konski, (See above for address), Lead Attorney,

Attorney to be Noticed, for Cognex Corporation, Counter Defendant.

*MEMORANDUM AND RULING OF DISCOVERY MASTER ON MOTION TO COMPEL SEARCH OF ELECTRONIC BACK-UP TAPES*

LINDSAY, J.
**\*1** Plaintiff Cognex Corporation ("Cognex") has informally moved to compel a search by defendant Electro Scientific Industries, Inc. ("ESI") of its electronic backup tapes for documents responsive to Cognex's requests for production of documents. While conceding that it has not searched the subject back-up tapes, ESI opposes Cognex's motion on the basis that it has already conducted an extensive "reasonable" search for documents and that the cost and burden of the search sought by Cognex is unreasonable.

*Factual Background*

*ESI's Document Search*

ESI's document production and search efforts to date have been extensive. ESI's document search efforts included two attorneys from Foley Hoag traveling to ESI's facilities in Ann Arbor, Michigan and meeting with ESI personnel to devise a comprehensive search plan. Letter of Claire Laporte to Victor H. Polk, Jr., dated June 5, 2002 (the "Laporte Letter") at 1-2.

As a result, ESI produced both paper and electronic files from every current employee who had worked on ESI's CorrectPlace product and all former employees who had worked on the product and whose files could be located. Declaration of Patrick Leonard ("Leonard Dec.") ¶¶ 8-12. ESI also searched central paper and electronic repositories identified by employees for files related to CorrectPlace. *Id.* at ¶¶ 15, 19-20. After the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 2

Not Reported in F.Supp.2d, 2002 WL 32309413
**(Cite as: Not Reported in F.Supp.2d)**

discovery of the Wilson memorandum which has been the subject of previous motions, ESI further searched for documents from the files of those listed as recipients on the memo even if they had not worked on the CorrectPlace product. *Id.* at 16. ESI also searched every box kept in off-site storage in Ann Arbor, Michigan for documents relating to CorrectPlace. *Id.* at 17. Lastly, ESI searched for documents in its Portland, Oregon facility, where only a small amount of work on the CorrectPlace product had been done and only a few strategic planning meetings focused on the product had occurred. *Id.* at 14.

As far as hard-copy documents are concerned, the search yielded approximately twenty full boxes of material, of which about ten full boxes turned out to be responsive. Laporte Letter at 2. As far as electronically stored documents are concerned, Foley Hoag received approximately eight CDs of electronic files from ESI, which yielded, after screening for responsiveness, more than thirty full boxes of printed documents. *Id.* Foley Hoag also received and produced electronic copies of multiple versions of source code. *Id.*

The present motion is directed to 820 of ESI's electronic back-up tapes. These tapes were created as information back-ups for the possibility that the company's computers crashed or information otherwise was lost. These tapes cover a period from 1992 through 2001.

It is asserted by ESI that these tapes contain approximately 4 terabytes of data-more than 6000 CD-ROMs. Laporte Letter at 3. If printed, the tapes would yield almost three billion pages of documents. *Id.*

*2 ESI concedes that these tapes have not been searched for relevant documents. As generalized system back-ups, they may well contain relevant documents. In arguing that it has already conducted a reasonable search, however, ESI provides specifics as to the extent and nature of the search it has already conducted in responding to Cognex's document requests, and the burden the further search sought by Cognex would entail.

In providing detail as to the burden it would incur in conducting such a review, ESI points to the search it did conduct of back-up tapes from the 1988 to 1991 timeframe-tapes covering a time period immediately prior to Cognex's patent filing. Laporte Letter at 3-4. ESI searched these tapes only for source code files, which ESI claims were in a readily recognizable file format that could be isolated relatively quickly. *Id.* at 4.

Even so, it took a seven-person team of Foley Hoag lawyers and paralegals approximately ten weeks' of work to produce the documents, already pre-screened by the client to some degree, contained on the eight CDs produced by ESI to Foley Hoag. *Id.* Even one back-up tape could contain as much as 70 gigabytes of data, or 100 CDs' worth of data, suggesting that the review of the recovered material would consume a substantial amount of time. *Id.*

*Cognex Back-Up Tapes*

Cognex has also detailed its search for documents responsive to ESI's request. See Affidavit of Arthur O'Dea, Esq. ("O'Dea Aff."). With regard to its search of its back-up tapes, within Cognex it is the policy of the Information Technology group to back up specific systems onto tape daily. O'Dea Aff. ¶ 10. These systems include Cognex's e-mail and file servers, as well as its many PCs and workstations. *Id.* In accordance with that policy, the back-up tapes go off site for storage, and are retained for four months. *Id.* After four months, the back-up tapes come back to Cognex to be recycled-erased and reused for the next backup. *Id.*

Cognex's source code archives are exempt from the four-month retention policy since the entire source code archive for all products is continuously maintained. *Id.* ¶ 11. Certain source code archive files, however, were lost in a 1995 change of Cognex's source code storage system. *Id.* ¶ 12.

*Discussion*

While ESI's principal arguments have to do with the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                      Page 3

Not Reported in F.Supp.2d, 2002 WL 32309413
**(Cite as: Not Reported in F.Supp.2d)**

nature of the search it has already conducted and the burden of the further search Cognex now seeks, ESI also argues that the search should not be ordered because the responsive and non-privileged documents uncovered would "likely be duplicative." The fact that ESI has conducted a thorough search of ESI's existing files does not, however, suggest that a search of back-up files would only uncover duplicative documents. The nature of electronic snapshots inherent in back-up tapes-here covering a nine-year period-suggests that material would be caught in those snapshots which, for whatever reason, is no longer available or not stored in a manner that ESI's search previously uncovered. In addition, in light of the sheer volume of data on the back-up tapes, it is virtually inconceivable that they do not contain additional relevant material which would be appropriate for production.

**\*3** The fact that the back-up tapes are believed to contain relevant documents does not end the inquiry. Federal Rule of Civil Procedure 26 was specifically drafted to allow the District Court control over the scope and extent of discovery in light of the burden and cost of such discovery. As stated in the 1993 Advisory Committee note to Rule 26, Section b: "The information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression ... The revisions in Rule 26(b)(2) are intended to provide the court with broader discretion to impose additional restrictions on the scope and extent of discovery."

In relevant part, Rule 26(b)(2) provides: "The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines ... that the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

Were the issue simply whether ESI should be compelled at its own cost and expense to undertake the search requested by Cognex, the answer would be obvious in light of the facts and circumstances here. ESI has established the substantial efforts it has already undertaken to produce extensive documents to Cognex. The search it has already conducted appears to have exceeded any traditional standard for reasonableness. Moreover, the cost of the search sought by Cognex would likely be astronomical. ESI has already utilized the services of an independent electronic discovery consultant and presumably would utilize one for this project. Given the nature of the search already conducted and the burden of providing what is being sought, the burden and expense of the proposed discovery outweighs its likely benefit.

Making the issue here far more difficult is Cognex's willingness to bear the burden of the search it seeks. In its written submissions, Cognex proposes as an alternative to ESI's bearing the cost of the search that the court order the parties to split the cost. Cognex has also indicated that is would, if required, bear the full burden and costs of such a search.

For purposes of this analysis, it is assumed that an order could be crafted so as to substantially shift the economic costs of the proposed search to Cognex while protecting ESI's right to review its documents prior to production. Such an order could provide for the selection of an independent electronic discovery consultant, a mechanism for determining the searches to be conducted, an ability of ESI's counsel to review the designated documents for relevance and privilege and Cognex's payment of the costs of the electronic discovery consultant and even ESI's time in reviewing the documents. *See, e.g., Rowe Entertainment, Inc. v. William Morris Agency, Inc.,* 205 F.R.D. 421 (S.D.N.Y.2002) (providing a detailed discussion of the rationale and appropriateness of cost-shifting in various electronic discovery circumstances and containing a protocol for such discovery). FN1

> FN1. It has also been argued that cost-shifting, especially with regard to electronic data, serves an important purpose of counterbalancing the tendency to ask for more discovery material than

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                           Page 4

Not Reported in F.Supp.2d, 2002 WL 32309413
**(Cite as: Not Reported in F.Supp.2d)**

economic efficiency would justify because the cost of producing is not being borne by the party making the request. *See* M.H. Pulver, *Electronic Media Discovery: The Economic Benefit of Pay-Per-View,* 21 Cardozo L.Rev. 1379 (2000).

**\*4** The parties were asked to provide case law concerning whether ESI's objection to such discovery would be obviated by an order shifting the cost to Cognex. None of the cases provided by the parties are terribly helpful on this issue:
- *Pew v. Scopino,* 904 F.Supp. 18 (D.Me.1995). Upon a party's representation that all documents had been produced and a reasonable search conducted, the court refused to order a re-search for documents. The fact that certain documents may have been missed (as suggested by a third party production) did not justify the burden of re-searching the documents. Unlike *Pew,* however, ESI cannot certify that the back-up tapes were searched and Cognex has offered to incur the expense of a search.
- *Simon Property Group L.P. v. MySimon, Inc.* 194 F.R.D. 639 (S.D.Ind.2000). In this case, plaintiff was allowed at its own cost to search defendant's computers and to re-create deleted files. In so ordering, however, the court noted that plaintiff had shown "troubling discrepancies with respect to defendant's document production." No such showing has been made here.
- *Playboy Enterprises, Inc. v. Welles,* 60 F.Supp.2d 1050 (S.D.Cal.1999). The court also allowed plaintiff at its own cost to search defendant's hard drive for deleted emails. The court noted that few emails had been produced by defendant and defendant had a policy (that continued throughout the litigation) of deleting emails without regard to relevance to the pending document request. No such similar circumstance exists here.

The most closely analogous case cited by the parties is *McPeek v. Ashcroft,* 202 F.R.D. 31 (D.D.C.2001) . That case involved claims of retaliation against plaintiff for his making prior claims of sexual harassment. Defendant had searched and produced electronic and paper documents. Plaintiff sought to force defendant to search its back-up tapes for documents that were ultimately deleted but stored in the back-up tapes. As stated by the court:
> There is certainly no controlling authority for the proposition that restoring all backup tapes is necessary in every case. The Federal Rules of Civil Procedure do not require such a search, and the handful of cases are idiosyncratic and provide little guidance.

202 F.R.D. at 33. After detailing various considerations in these circumstances, the court ordered a limited search with costs to be allocated later based upon what was found.

The Discovery Master believes that Cognex's willingness to pay for the search of ESI's back-up tapes makes the question of whether ESI should be required to search these tapes a close call. On the record in this case as a whole, however, the Discovery Master will not order the search sought by Cognex.

On the one hand, there is no question in my mind that a search of back-up tapes would uncover documents not already produced. While ESI has undertaken an extensive search, the very nature of the snapshots reflected in back-up tapes suggests that documents will exist thereon which are no longer in ESI's electronic files. By offering to pay the costs of the search, Cognex greatly diminishes the concern about the burden upon ESI.

**\*5** In finding the search to be unwarranted here under the standards set forth in Rule 26(b)(2), however, I rely upon the following considerations:

1. ESI has already conducted an extensive search for relevant documents. At some point, the adversary system needs to say "enough is enough" and recognize that the costs of seeking *every* relevant piece of discovery is not reasonable. This concept is reflected in Rule 26 itself and made express in the Comments thereto.

2. This is not a case where the record reflects the conscious destruction of documents even after receipt of a document request (as in *Welles* ) or serious discrepancies in discovery (as in *MySimon* ). There is no question but that counsel for plaintiff believes that there has been bad faith in how

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                           Page 5

Not Reported in F.Supp.2d, 2002 WL 32309413
**(Cite as: Not Reported in F.Supp.2d)**

counsel for defendant has conducted discovery in this case. I disagree. The failure to search back-up tapes itself cannot have been bad faith-the case law does not establish a general duty to search back-up tapes. *See McPeek v. Ashcroft,* 202 F.R.D. at 33. While Cognex complains about the timing of the disclosure of the existence of the tapes, the fact is that ESI did disclose this information and our system of discovery does not provide an automatic mechanism for determining precisely how a search was conducted. The fact that ESI would have failed earlier to disclose the existence of these un-searched back-up tapes does not suggest bad faith.

3. This is not the type of case where one would expect the most relevant emails to be deleted at the time. In an employment situation (as in *McPeek* ), it is precisely the informal emails evidencing intent that in the normal course would be destroyed and not kept in company records.

4. There is something inconsistent with our notions of fairness to allow one party to obtain a heightened level of discovery because it is willing to pay for it. There are limits on the number of depositions and interrogatories even though more might well produce relevant information. There is no exception to those limitations based upon one party's willingness to pay. The sense of fairness underpinning our system of justice will not be enhanced by the courts participating in giving strategic advantage to those with deeper pockets. In the cases discussed above where cost-shifting was deemed appropriate, the specific circumstances justifying the discovery appear to be stronger than presented here.

5. I also give weight to the fact that Cognex, by corporate policy, destroys its back-up tapes after four months. There is nothing inherently wrong in the adoption of such a policy and there has been no suggestion of any improper action by Cognex in either the adoption or practice of its policy. The practical effect of such a policy, however, is to preclude others from conducting precisely the type of search sought here-even in those types of cases where back-up tapes would be expected to uncover highly relevant information. In the context of this case and the search already conducted by ESI, having adopted such a policy, Cognex should not be heard to require such a search from ESI without more of a showing than here.

*Ruling*

**\*6** For the foregoing reasons, Cognex's informal motion to compel ESI to search its back-up tapes is hereby DENIED.

D.Mass.,2002.
Cognex Corp. v. Electro Scientific Industries, Inc.
Not Reported in F.Supp.2d, 2002 WL 32309413

Briefs and Other Related Documents (Back to top)

• 1:01CV10287 (Docket) (Feb. 14, 2001)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.