

about us | practice | professionals | offices | clients | news | publications | events | careers

## publications :: articles

**Trade Secret Identification: The Importance of Timing In Discovery**
John F. Hornick and Margaret A. Esquenet
February 2005
*Copyright © Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*

In many cases, a trade secret plaintiff may avoid identifying its alleged trade secrets with particularity until late in discovery. This often results in the plaintiff identifying as its trade secrets items that it finds in documents and information produced by the defendant, some of which may be the defendant's own trade secrets. This article suggests methods of requiring the trade secret plaintiff to identify its alleged trade secrets with reasonable particularity in an initial trade secret disclosure statement before the defendant is required to respond to plaintiff's discovery requests.

### I. Plaintiff's and Defendant's Competing Discovery Goals

Trade secret Complaints rarely identify the trade secrets in suit with any particularity, and plaintiffs generally wish to delay such identification as long as possible. The defendant, on the other hand, wishes to obtain a reasonably particular definition of the information plaintiff claims as its trade secrets before producing in discovery the target of the lawsuit or its own secret information. Addressing these conflicting goals, one court said:

> It is painfully obvious, therefore, that identification of the trade secrets at issue is the most fundamental and basic aspect of this case. . . . Plaintiff's failure to provide the written trade secrets has, at the very least, prevented defendants' from obtaining adequate discovery on the most fundamental issue in the case, from obtaining expert testimony or other similar evidence to confront the allegations of trade secrets, and from adequately preparing a defense for trial.[1]

Courts also state that early identification of the trade secrets in suit notifies the defendant of the particular factual basis of the plaintiff's claim of misappropriation, frames the litigation, and enables the defendant to develop its defenses.[2]

Another court said: "Clearly until [the plaintiff details its alleged secrets], neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not; and it is doubtful whether [the plaintiff] can undertake a meaningful discovery program, which includes its attempt to trace the flow of trade secrets and confidential information through [the defendant]."[3] Concurring, one court stated that specification of the trade secrets "is a starting point for more particular discovery."[4]

The plaintiff may also wish to obscure integrated secrets, such as individual process steps within a complex production process, by providing an overly detailed statement of the process.[5] As a result, the defendant might complain that the plaintiff's trade secret disclosure is too detailed to be useful. However, in a dispute over the process for making chicken pox vaccine, one court determined that a 37-page initial trade secret disclosure statement describing the entire process sufficiently notified the defendant of the narrower claims of misappropriation of portions of that process.[6] Accordingly, a broad but detailed disclosure may be sufficient, and may be focused through subsequent discovery.

By contrast, a broad but unspecific assertion of a multitude of trade secrets may not adequately notify the defendant of the disputed issues.[7] One court ruled that the larger the number of potential trade secrets, the greater the need to be specific, because the defendant should not be forced to use discovery to determine the basic issues of the case.[8]

### II. Timing and Scope of Plaintiff's Trade Secret Disclosure

The first possible time for disclosure is at the time the plaintiff files the Complaint. But because Complaints are publicly available and unguarded by a protective order, the disclosure within the initial pleading would obliterate the very thing the plaintiff intends to protect.[9] Considering the issue of timing, one court stated:

> *Before a defendant is compelled to respond to a complaint* based upon claimed misappropriation or misuse of a trade secret and to embark on discovery which may be both prolonged and expensive, the complainant should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.[10]

Accordingly, one option is to seek disclosure of the plaintiff's alleged trade secrets before the defendant must file an Answer.

The more likely alternative is to seek identification after the Answer is filed but before the plaintiff may obtain discovery from the defendant. One court used this approach and explained:

> Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's secrets.[11]

However, other courts have allowed the specification of the plaintiff's trade secrets well into the discovery process.[12] Right or wrong, most cases are probably of this type. Recognizing the unavoidable confusion occurring when the trade secrets at issue have not been identified, another court commented:

> In a recent trade secret case -- a case cited by both parties -- before this court, the defendants were confused at the time of summary judgment as to the alleged trade secret. The court will not entertain such a dispute at such a late stage in the proceeding again.[13]

Although seemingly self-evident, that court found it imperative to know the specific subject matter of the litigation before the motions for summary judgment were filed. Because either party may file for summary judgment during discovery (and possibly even before the commencement of discovery),[14] the court's logic implies that shortly after the Complaint is filed, the plaintiff may be required to identify the trade secrets at issue.

Another court lamented: "[A]fter entry of an appropriate protective order, exact and specific identification of trade secrets should have been the starting point of discovery in this cause, not a matter for disclosure at the eleventh hour."[15] Perceiving unfairness to the defendant, that court precluded previously non-disclosed secrets from trial.

### III. Scope of Plaintiff's Trade Secret Disclosure

The catchwords for the minimum scope of plaintiff's trade secret disclosure are "with reasonable particularity."[16] One commentator suggested that a "workable definition might be that the plaintiff should provide the defendant with a general outline of its trade secrets sufficient to allow the defendant to assess the relevancy of the requested discovery and to assure the defendant (and the court) that the defendant is not the victim of a fishing expedition."[17] Without posing and analyzing hypothetical facts, a functional definition must suffice, because every trade secret will have some level of detail necessary for complete understanding. For example, one court held the following list to be wholly inadequate:

1. Detailed manufacturing drawings of [plaintiff's] canister and coalescer.
2. Detailed drawings of a new . . . canister.
3. Research and test data.
4. Manufacturing process information.
5. A patentable idea for a new canister.

      6. The entire process for the design and manufacture of the old and new canister and coalescer.[18]

The plaintiff believed the defendant misappropriated information regarding its canisters and coalescers, but the six-item list begs the question: But what, exactly, are the trade secrets? Accordingly, the court ruled that the plaintiff should specify its trade secrets with reasonable particularity.

### IV. Jurisdictions Requiring Early Disclosure

A few jurisdictions have made early trade secret disclosure a substantive requirement of their laws. Notably, California has a statutory provision, albeit buried in its code of civil procedure, that requires a plaintiff to disclose its trade secrets with reasonable particularity before it can obtain discovery from defendants. Though not enacted by a legislature, Delaware has an equally explicit common law rule requiring a plaintiff to describe its trade secrets with reasonable particularity before discovery begins. Endorsing analogous positions to California and Delaware, federal district courts in Illinois, Minnesota, Florida, and Virginia have imposed an early disclosure requirement on plaintiffs in trade secret cases. In addition, a state court in Massachusetts has also required early disclosure of trade secrets.

#### A. California

As the only state with a statutory requirement,[19] the California Code of Civil Procedure provides:

> 2019(d):
>
> In any action alleging the misappropriation of a trade secret under the Uniform Trade Secrets Act . . ., before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable *particularity* subject to any [protective] orders.[20]

This provision, which was added when the California legislature passed its Uniform Trade Secrets Act in 1984, codifies the state's common law requirement that a trade secret plaintiff must first identify its trade secrets with sufficient particularity before the plaintiff may begin discovery.[21] Although the legislative history is sparse, a memorandum circulated among the California legislature stated: "One area not addressed by the Uniform Act is the area of plaintiff's abuse in initiating trade secret lawsuits for the purpose of harassing or even driving a competitor out of business by forcing a competitor to spend large sums in defending unwarranted litigation."[22] Accordingly, the California legislature added a layer of protection absent from the Uniform Trade Secrets Act for a trade secret defendant.

Because California's Code of Civil Procedure contains the provision, one might incorrectly assume that the rule is procedural, not substantive in nature and thus inapplicable in federal court. However, the federal court for the Southern District of California determined that the *Erie* doctrine compelled it to apply § 2019(d).[23] After finding no conflicts with the Federal Rules of Civil Procedure, the court listed three justifications for requiring the plaintiff to provide an early disclosure of its trade secrets with reasonable particularity. First, California enacted the provision concurrently with the remainder of the trade secrets act, and separation of the provision is impossible without frustrating the intent of the California legislature to protect trade secret defendants. Second, if federal courts were to ignore the requirement in § 2019 (d), plaintiffs would be tempted to forum shop in diversity cases, only filing in federal courts where the absence of the requirement provides the plaintiff a distinct tactical advantage. Third, finding no countervailing federal interests, the court stated, "The statute promotes well-investigated claims, frames the appropriate scope of discovery, prevents needless discovery disputes, and enables defendants to form complete and well-reasoned defenses."[24] Thus, the requirement is a part of the substantive trade secret law of California.

#### B. Delaware

Similar to California's statutory rule, Delaware's common law requires a trade secret plaintiff to reveal its trade secrets before beginning discovery. One court summarized:

> Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required first to identify with *reasonable*

*particularity* the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.[25]

The initial identification with reasonable particularity, which mimics California's statutory standard, is a well-established requirement of Delaware trade secret law.[26]

### C. Others

Recently, other courts have begun imposing similar disclosure requirements on trade secret plaintiffs. For example, while evaluating the merits of a protective order, an Illinois district court cited Delaware case law and prohibited discovery until the plaintiff "particularize[d] which of its secrets were allegedly misappropriated."[27] In postponing discovery, the court noted the importance of tailoring discovery requests and ordered the plaintiff to file a "particularized trade secret statement."[28]

The Illinois district court is not alone. A district court in Minnesota granted a motion compelling the plaintiff to provide a list of trade secrets at an early stage of the litigation, citing a California decision for the proposition that such a list is a "common requirement."[29] Similar to the Illinois court, the Minnesota court emphasized the interdependency of discovery and the disclosure of specific trade secrets. Without classifying the level of specificity with a phrase akin to "reasonable particularity," the court noted that the requisite level of detail would be the same as would be required in later stages in the litigation, such as summary judgment or at trial.[30] In addition, a Massachusetts state court recently stated that "Before any discovery relating to trade secrets themselves is permitted, this Court must revisit the issue of the plaintiff's designation of what it is that they claim are trade secrets."[31] The court further ordered the plaintiffs to set forth their trade secrets with "rigorous and focused particularity."[32]

In contrasting California's trade secret law with Florida's trade secret law, a Florida district court found there was no conflict and held that, although lacking a statute similar to California's, Florida trade secret law also required an initial disclosure with reasonable particularity.[33] The court reasoned that because a fundamental issue in a trade secret case is whether a trade secret exists, that secret must be revealed to the court and to the defendant. As support for its conclusion, the court examined other jurisdictions, and found that no state reaches a conflicting result.[34] Thus, the Florida court granted the defendant's motion to compel, which required the trade secret plaintiff to disclose the asserted trade secrets with reasonable particularity before further discovery occurred.

In considering a motion for a protective order under the California Code of Civil Procedure § 2019, a Virginia district court emphasized the need for plaintiffs to describe trade secrets with sufficient particularity, before discovery is permitted.[35] In this action, the plaintiff served a discovery request on the defendant.[36] The defendants objected to any discovery until the plaintiff adequately identified its trade secrets.[37] In granting the defendant's motion for protective order, the Virginia court highlighted the need for trade secrets to be described with particularity, even in the absence of a statutory provision like § 2019.[38] The court stated that requiring the identification of a trade secret with particularity would alleviate the tensions between a plaintiff's need for discovery from the defendant, and a defendant's right to know which trade secrets are the subject of the claims.[39] The court also cited case law from other jurisdictions, illustrating the devastating potential outcomes from a plaintiff's failure to describe its trade secrets adequately.[40]

### V. Conclusion

Based on these cases and the California statute, a reasonable argument can be made that trade secret plaintiffs should be required to provide an initial trade secret disclosure with reasonable particularity as a prerequisite to commencing discovery. Situations may exist in which this rule should not apply, such as where both the plaintiff and defendant already know the nature of the plaintiffs alleged secrets. However, in most cases, the application of the rule is likely to balance the conflicting goals of plaintiffs and defendants in trade secret cases, and help to focus and limit discovery.

### Endnotes

[1] *Diversified Tech., Inc. v. Dubin*, 31 U.S.P.Q.2d 1692, 1695 (S.D. Miss. 1994) (opinion withdrawn from bound volume by court).

[2] *Computer Economics, Inc. v. Gartner Group*, 50 F. Supp. 2d 980, 985 (S.D. Cal. 1999); see also *Neothermia Corp. v.*

*Rubicor Med. Inc*., 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004).

[3] *Xerox Corp. v. Int'l Bus. Machs. Corp*., 64 F.R.D. 367, 371-72 (S.D.N.Y. 1974).

[4] *Porous Media Corp. v. Midland Brake, Inc*., 187 F.R.D. 598, 599 (D. Minn. 1999).

[5] *SmithKline Beecham Pharm. v. Merck & Co*., 766 A.2d 442, 447 (Del. 2000).

[6] *Id.*

[7] *IDX Sys. Corp. v. Epic Sys. Corp*., 285 F.3d 581, 583-84 (7th Cir. 2002).

[8] *Del Monte Fresh Produce Co. v. Dole Food Co*., 148 F. Supp. 2d 1322, 1326 (S.D. Fla. 2001).

[9] *Diodes, Inc. v. Franzen*, 67 Cal.Rptr. 19, 24 (Cal. Ct. App. 1968); see also *Dick Corp. v. SNC-Lavalin Constructors Inc*., No. 04 C1043, 2004 WL 2967556, at *9 (N.D. Ill. Nov. 24, 2004).

[10] *Diodes*, 67 Cal.Rptr. 19, 24 (Cal. Ct. App. 1968 ) (emphasis added).

[11] *Engelhard Corp. v. Savin Corp*., 505 A.2d 30, 33 (Del. Ch. 1986); see also *Savor Inc. v. FMR Corp*., No. Civ.A 00C-10-149JRS, 2004 WL 1965869, at *2 (Del. Super. Ct. July 15, 2004) (unpublished opinion); *L-3 Communications Corp. v. Reveal Imaging Techs., Inc*., No. 035810BLS, 2004 WL 2915743, at *13 (Mass. Super. Ct. Dec. 2, 2004).

[12] *Xerox Corp. v. Int'l Bus. Machs. Corp*., 64 F.R.D. 367, 371 (S.D.N.Y. 1974).

[13] *Combined Metals of Chicago, L.P. v. Airtek, Inc*., 985 F. Supp. 827, 832 (N.D. Ill. 1997) (citation omitted).

[14] FED. R. CIV. P. 56(a).

[15] *Diversified Tech., Inc. v. Dubin*, 31 U.S.P.Q.2d 1692, 1695 (S.D. Miss. 1994) (opinion withdrawn from bound volume by court); see also *Lynchval Sys., Inc. v. Chicago Consulting Actuaries, Inc*., 49 U.S.P.Q.2d 1606, 1610-11 (N.D. Il. 1998).

[16] See, e.g., *Engelhard Corp. v. Savin Corp*., 505 A.2d 30, 33 (Del. Ch. 1986); CAL. CIV. PROC. CODE § 2019(d) (West 2001); *Omniplex World Servs. Corp., v. Sci. Applications Int'l. Corp*., No. 00-728-A, slip op. at 6-7 (E.D. Va. July 13, 2000) (unpublished court order); see also *L-3 Communications Corp v. Reveal Imaging Techs., Inc.*, No. 035810BLS, 2004 WL 2915743, at *13 (Mass. Super. Ct. Dec. 2, 2004).

[17] Kevin R. Casey, *Identification of Trade Secrets During Discovery: Timing and Specificity*, 24 A.I.P.L.A. Q.J. 191, 254 (1996).

[18] *Porous Media Corp. v. Midland Brake, Inc*., 187 F.R.D. 598, 599 (D. Minn. 1999).

[19] *Computer Economics, Inc. v. Gartner Group*, 50 F. Supp. 2d 980, 984 n.3 (S.D. Cal. 1999); see also *Neothermia Corp. v. Rubicor Med., Inc*., 345 F. Supp. 2d 1042, 1043 (N.D. Cal. 2004).

[20] CAL. CIV. PROC. CODE § 2019(d) (West 2001) (emphasis added).

[21] *Computer Economics*, 50 F. Supp. 2d at 983-84 (S.D. Cal. 1999).

[22] *Computer Economics*, 50 F. Supp. 2d at 985 n.6 (S.D. Cal. 1999) (citing Memorandum from Messrs. John Carson and Greg Wood to Assemblyman Harris re: Assembly Bill 501).

[23] *Id.* at 986-993.

[24] *Id.* at 993; see also *Neothermia Corp. v. Rubicor Med., Inc*., 345 F. Supp. 2d 1042, 1044 (N.D. Cal. 2004).

[25] *Engelhard Corp. v. Savin Corp*., 505 A.2d 30, 33 (Del. Ch. 1986) (emphasis added); see also *Savor Inc. v. FMR Corp*., No. Civ.A 00C-10-149JRS, 2004 WL 1965869, at *6 (Del. Super. Ct. July 15, 2004) (unpublished opinion).

[26] See, e.g., *Struthers Scientific Int'l Corp*., 51 F.R.D. 149, 154 (D. Del. 1970); *Leucadia, Inc. v. Applied Extrusion Techs., Inc*., 755 F. Supp. 635, 637 (D. Del. 1991).

[27] *Automed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001).

[28] *Id.*

[29] *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 599-600 (D. Minn. 1999).

[30] *Id.* at 600.

[31] *Staffbridge, Inc., v. Gary D. Nelson Assocs., Inc.*, No. 0124912BLS, 2004 WL 1429935, at *2 (Mass. Super. Ct. June 11, 2004) (unpublished opinion).

[32] *Id.* at 4.

[33] *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1324-25 (S.D. Fla. 2001).

[34] *Id.* at 1325.

[35] *Omniplex World Servs. Corp., v. Sci. Applications Int'l. Corp.*, No. 00-728-A, (E.D. Va. July 13, 2000) (unpublished court order).

[36] *Id.* at 3.

[37] *Id.*

[38] *Id.* at 6.

[39] *Id.*

[40] *Id.* at 7.

*Copyright © Finnegan, Henderson, Farabow, Garrett & Dunner, LLP. This article is for informational purposes and is not intended to constitute legal advice. This memorandum may be considered advertising under applicable state laws.*

about us | practice | professionals | offices | clients | news | publications | events | careers

©2003 Finnegan, Henderson, Farabow, Garrett & Dunner, LLP   Disclaimer   Privacy