**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC,<br><br>                Plaintiff,<br><br>      v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>                Defendants. | CIVIL ACTION NO. 1:04-cv-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG and THEFACEBOOK, INC.,<br><br>                Counterclaimants,<br><br>      v.<br><br>CONNECTU LLC,<br><br>                Counterdefendant,<br><br>      and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>                Additional Counterdefendants. | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL THE PRODUCTION OF MIRROR IMAGES OF DEFENDANTS' HARD DRIVES AND OTHER ELECTRONIC MEMORY DEVICES AND DOCUMENTS CREATED AFTER MAY 21, 2004,**
**AND**
**PLAINTIFF'S OPPOSITION TO THEFACEBOOK DEFENDANTS' CROSS-MOTION FOR A PROTECTIVE ORDER**

## I.    Introduction

The Facebook Defendants and Defendant Saverin filed separate oppositions to Plaintiff's motion to compel.  This brief replies to both oppositions, and opposes Thefacebook Defendants' cross motion for a protective order.  Defendants' opposition and cross motion paints the facts with a broad brush, attempting to whitewash the facts set forth in Plaintiff's motion, which were presented there precisely for the purpose of showing that Plaintiff has a substantial factual basis for its claims, and that the mirror images and documents sought by Plaintiff's motion are likely to support such claims that Mr. Zuckerberg stole the Harvard Connection idea.[1]

Defendants' oppositions are based on two fundamental flaws, one of which relates to Plaintiff's motion to compel the production of documents created on or after May 21, 2005 and Defendants' cross motion for protective order, and the other relates to Plaintiff's motion to compel mirror images of Defendants' electronic memory devices. Defendants also combined their arguments relating to electronic memory devices and post-May 21, 2005 documents.  As shown below, these two parts of Plaintiff's motion to compel are entirely unrelated.

The Facebook Defendants best stated the first flaw as follows: "At its core, the case before this Court is a trade secret case" (Thefacebook Defendants' Opposition

---

[1]    For example, Defendants say Mr. Zuckerberg found that "other projects were more intellectually interesting"  (Thefacebook Defendants' Opposition ("TFB Opp.") at 5).  This is a veiled admission, based on the time Mr. Zuckerberg made such a statement (January 14, 2004, see Ex. 8) that he was working on a website that stole the Harvard Connection idea.  Defendants try to cover Mr. Zuckerberg's theft by arguing that connectu.com is modeled after thefacebook.com (TFB Opp. at 6).  In fact, it is the other way around; thefacebook.com clones Harvard Connection.  Also, contrary to their unsupported statement, Mr. Zuckerberg never told the founders he "was no longer interested in volunteering his time for their project."  (TFB Opp. at 5)  Defendants also call ConnectU a failing competitor.  (TFB Opp. at 2, n. 3)  ConnectU is struggling because TFB stole its idea and the market, and left it without the code Mr. Zuckerberg promised to write and said he wrote (see Ex. 1-5, 8).

("TFB Opp.") at 1) and therefore Plaintiff's requests for post-May 21, 2004 documents "must be narrowed and informed by a clear specification by ConnectU of its trade secrets" (TFB Opp. at 10) or "reasonably tailored to specific claimed trade secrets" (TFB Op. at 11; see also Saverin Opp. at 9). Plaintiff doesn't know where Defendants got the impression that this is primarily a trade secret case. Although Defendants seem to view this case solely as a trade secret and copyright case, it is largely a case of unjust enrichment, unfair competition and trade, fraud, breach of implied covenant of good faith and fair dealing, breach of contract, breach of fiduciary duty, and intentional interference with prospective contractual and advantageous business relations, and such claims do not depend on the trade secret claim. One way Defendants' wrongful acts manifested themselves here was through trade secret misappropriation. This basic flaw destroys Defendants' arguments that Plaintiff's trade secrets must be specified before post-May 21, 2004 documents need be produced, and that Plaintiff should narrow its discovery requests. Moreover, Defendants' argument is now moot because Plaintiff identified its trade secrets in response to Defendants' Interrogatory No. 2, which was not even due until after Defendants filed their cross motion for protective order.

The second flaw is that Plaintiff allegedly is seeking broad discovery from Defendants' electronic memory devices. The Facebook Defendants argue that Plaintiff is seeking post-May, 21, 2004 documents and personal information from their electronic memory devices (TFB Opp. at 2, 3, fn. 4, 9), but Plaintiff's motion could not have been clearer: all Plaintiff seeks from Defendants' electronic memory devices is the Harvard Connection code that Mr. Zuckerberg received from Plaintiff's founders and said he worked on, code for thefacebook.com website pre-dating October 2004, and Mr. Zuckerberg's facemash online journal (Opening Brief at 7, 13, n. 6). This eliminates virtually all of Defendants' objections to the imaging of their electronic memory devices, including their concerns about privilege (see TFB Opp. at 10, n. 9). This is discussed in greater detail in § II, *infra*. Moreover, contrary to Defendants' argument (TFB Opp. at

3

10, n. 9; 13, n. 11), Plaintiff suggested detailed procedures for the imaging process, which will guarantee the security of such information, protect privilege and privacy, and minimize the effect of the imaging process on Defendants' business (see Opening Brief at 13, n. 6).

Separating the two parts of Plaintiff's motion and repeating that Plaintiff seeks only source code (and the facemash online journal) from Defendants' electronic memory devices also negates Defendants' Library of Congress argument (TFB Opp. at 3). The only documents relevant to this motion that Defendants say they are withholding are documents created on or after May 21, 2004 (TFB Opp. at 6; Saverin Opp. at 9). It is unlikely that Defendants are withholding more than several hundred documents covered by production Request Nos. 63, 67, and 129-139 (which are the subject of this motion).

Defendants' opposition also states repeatedly that Plaintiff failed to address this or that important issue. Although Plaintiff repeatedly calls Defendants on such erroneous statements below, Plaintiff urges the Court to revisit its opening brief to see for itself that the issues Defendants argued were missed by Plaintiff were actually covered in great detail.

## II.    Defendants Failed to Address Most of Plaintiff's Arguments for Compelling the Production of Defendants' Electronic Memory Devices

Thefacebook Defendants sum up their argument for denying Plaintiff's request to compel the production of mirror images of Defendants' electronic memory devices by saying "ConnectU's naked assertion that something is fishy hardly justifies such a drastic discovery measure." (TFB Opp. at 14)   They also argue that "[P]laintiff  must show that it has a particularized likelihood of finding discoverable material," citing *Fennel v. First Step Designs, Ltd.*, 83 F.3d 526 (1st Cir. 1996) (TFB Opp. at 11). Defendants must not have read Plaintiff's opening brief, where it provided pages and

pages of detailed reasons why Defendants' electronic memory devices are likely to yield the missing Harvard Connection Code, the prelaunch code for thefacebook.com website, and uncorrupted code for thefacebook.com website from launch to October 2004.  See Opening Brief at 7-13.

Everything about Defendants' position on this issue is fishy.  For example, although they spend six pages arguing against the mirror imaging of their electronic memory devices because the Harvard Connection code allegedly will not be found there, they say *__nothing__* about why thefacebook.com code will not be found there.  They fail to address any of the arguments set forth on pages 8-13 of Plaintiff's opening brief, that the hard drive Mr. Zuckerberg used for facemash was probably the same drive he used for his alleged Harvard Connection work and for thefacebook.com, that Defendants' assertion that the missing code does not exist is inconsistent with Defendants' agreement to produce certain other electronic documents (and therefore that Mr. Zuckerberg and/or the other Defendants must have other electronic memory devices predating the launch of thefacebook.com website), and that the missing Harvard Connection code and the missing thefacebook.com are surely backed up somewhere.

It is also fishy that Defendants make no effort to explain why Mr. Zuckerberg does not have the hard drive that contained the Harvard Connection code, or when he lost it.  Also, Defendants said the hard drive containing the facemash code crashed.  (Ex. 17, Request No. 30)  Is this a different hard drive?  Where is the one that failed?  When did it fail?  When was that hard drive lost?  When was this hard drive lost?  If this is the same hard drive, which seems likely (as Plaintiff explained in detail in its opening brief, at  8-9), which is it:  did it crash or did he lose it?[2]

---

[2]    Defendants also suggest that Mr. Zuckerberg had only one computer during the relevant time period, i.e., October 2003 to February 2004.  (TFB Opp. at 15) As explained in Plaintiff's opening brief, it is likely that Mr. Zuckerberg had more than one hard drive or memory device because Defendants agreed to produce other

Mr. Zuckerberg provides no affidavit explaining any of this, yet he was on notice as early as Plaintiff's founders' February 2004 cease and desist letter (Ex. 11) that he should preserve evidence (this is also a response to the argument bridging TFB Opp. at 15-16 that "Mr. Zuckerberg had no need for the HC code and therefore did not keep it"). If Mr. Zuckerberg's hard drive containing facemash and the Harvard Connection code crashed, the code probably would have been recoverable from such hard drive at that time, and he should have kept the crashed hard drive. These facts may eventually lead to an adverse inference against Defendants. For today, however, they support imaging other electronic memory devices in Defendants' possession, custody, and control, especially those of the co-Defendant programmers, Moskovitz and McCollum, and those of thefacebook.com's server providers, for the reasons set forth in Plaintiff's opening brief (at 12-13).

Defendants' argument that it has 600-800 electronic memory devices is a tactic to intimidate the court into denying the motion. (See Heyman Declaration, ¶ 5) Defendants also provide no explanation as to what and where these electronic memory devices are (are they hard drives, servers, CD ROMS, flash memory drives, etc.?). As explained in Plaintiff's opening brief, thefacebook.com had only one server when it launched and five servers by March 31, 2004. (Opening Brief at 12). Imaging thefacebook.com's servers used during that time period (or their backups), the individual co-Defendants' electronic memory devices used from October 2003 to October 2004, and Thefacebook, Inc.'s main webservers running thefacebook.com from launch to October 2004, are likely to yield the missing thefacebook.com code, for the detailed reasons set forth in the opening brief (at 12-13).[3] Although Defendants argue

---

contemporaneous documents that would have stored electronically. (Opening Brief at 9-11) Defendants don't address any of this.

[3]     In this regard, Defendants argue that "ConnectU has failed to evince any particularized basis to conclude that Defendants Dustin Moskovitz, Andrew McCollum,

that imaging such devices would be burdensome, they offer no explanation as to why imaging such electronic memory devices is not likely to yield the missing code.

Defendants try to portray themselves as cooperative in discovery by stating that they produced "three different versions of . . . source code, with dates spanning from early to mid 2004 up through 2005" (TFB Opp. at 2), and that "the earliest version, while partially corrupted, contain[s] files [sic] one or more files dated as early as February 2004" (TFB Opp. at 6). In fact, the pre-October 2004 facebook.com source code produced by Defendants is useless and Defendants' carefully chosen words prove it. Why do Defendants say "one or more files dated as early as February 2004" when they could have said exactly how many files date from that period? The reason is that the code is unreadable. Moreover, thefacebook.com website, as with any computer program, requires many files to operate. One, or two, or three files from February 2004 would be only a fraction of the code needed to run the website. However, the only file Defendants produced from February 2004 is not a code file; Defendants have produced no code predating August 2004, corrupted or uncorrupted.

Except for *Playboy Enters. v. Welles*, 60 F. Supp. 2d 1050, 1051-52 (S.D. Cal. 1999), Defendants addressed none of the cases discussed in detail in Plaintiff's opening brief (at 14-16). With respect to *Playboy*, Defendants presented its balancing test as if Plaintiff ignored it, and as if it supports Defendants' position. (TFB Opp. at 12-13) Plaintiff presented *Playboy's* balancing test as the conclusion to eight pages of detailed explanation of the particularized factual and legal basis for imaging Defendants' electronic memory devices.

By comparison, Defendants cite eight cases, with no explanation of why they apply here. Defendants' cases do not support the denial of this motion. In *McCurdy*

---

or Christopher Hughes have anything relevant on their personal hard drives." (TFB Opp. at 13) Plaintiff provided such basis at page 12 of its opening brief.

*Group v. American Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001) (non-precedential), the court denied a request to produce all computer disc drives, including backups, because there was no evidence that files were missing and plaintiff had already agreed to produce the requested drives to a third party for inspection. The defendant had not explained why inspection by the third party would not have been sufficient. *Id.* Here, source code is admittedly missing and is likely to be recoverable, for the reasons set forth in Plaintiff's opening brief (at 8-13).

In *Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144, 145 (D. Mass. 2005), the movant claimed to have had possession of the document but could no longer locate it. The movant offered no plausible proof that the document produced by the defendants was not the same as the one movant was looking for. In contrast, Defendants are unable to produce the missing code and Plaintiff has made a detailed showing of why Defendants' electronic memory devices likely contain such code.

In *Cognex Corp. v. Electro Scientific Indus.*, No. Civ. 01CV10287RCL, 2002 WL 32309413 (D. Mass. July 2, 2002), plaintiff moved to search every backup file the defendant had, which if printed would result in billions of pages of documents. The court held that it was unreasonable to seek every relevant piece of discovery and not the type of case where one would expect the relevant emails to be deleted. Contrast this with the present situation, where Defendants admit that code has been lost and/or corrupted.

In *Symantec Corp. v. McAfee Associates, Inc.*, No. C-97-20367-JF(EAI), 1998 WL 740807 (N.D. Cal. Aug. 14, 1998), the plaintiff repeatedly failed to comply with the scheduling order, delayed taking a deposition until one week before the close of fact discovery, and then asked for images of all hard drives after the close of discovery. The court found that Symantec was not diligent in discovery and could have discovered information months earlier, and that the requests for source code for all products was unduly burdensome. None of these facts is present here.

8

In *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 561 (N.D. Tex. 2003), plaintiff requested and the court denied a broad request to image all of the defendant's computer storage facilities, drives, and servers. The court held that the request was overly broad because imaging would include not only the files at issue, but also anything else that happened to be on a server containing any of those files. In contrast, although imaging entails imaging the entirety of Defendants' relevant electronic memory devices, Plaintiff's expert will be looking only for the missing code.

In *Bertsch v. Duemeland*, 639 N.W.2d 455 (N.D. 2002), the appeals court held that the trial court did not abuse its discretion in denying plaintiff access to hard drives acquired after the torts were committed. The trial court did, however, allow discovery of information on computers owned by defendants as of the date the torts were committed. This supports Plaintiff's motion, as Plaintiff only seeks discovery of memory devices used from October 2003 to October 2004.

In *Dikeman v. Stearns*, 560 S.E.2d 115 (Ga. Ct. App. 2002), a client requested all bills sent to all clients of a law firm, names and addresses of clients, invoice numbers, calendars, description of number of photocopies billed to all clients, and a copy of the firm's hard drive. The court found that the requests were both overly broad and invaded privacy expectations of clients. None of these facts is present here.

In *Wright v. AmSouth Banccorp.*, 320 F.3d 1198 (11th Cir. 2003), plaintiff sought discovery of computer disks and tapes containing "all word processing files created, modified and/or accessed by" five defendant employees. The court denied the requests as overly broad because plaintiff did not provide any theory of relevance that might narrow the scope of his request. Here, Plaintiff has a narrowly tailored request and seeks only source code.

Defendants also cite the First Circuit's decision in *Fennel*, as Plaintiff predicted in note 8 of its opening brief (at 16). By comparison to the present case, *Fennel* **did**

9

involve a fishing expedition.  *Fennel* was a Rule 56(f) case where discovery had already

closed and plaintiffs were requesting additional discovery.  83 F.3d at 530-531.  Under

the standards of 56(f), the movant has the burden to show why discovery should be

allowed, instead of the usual rule under Rule 26, where the party resisting discovery has

the burden.  Further, in *Fennel*, the defendant had already provided a diskette

containing a copy of the word processing file of the memorandum the plaintiff claimed

was backdated.  *Id.* at 531.  The plaintiff's expert had already examined the diskette and

the court found that plaintiff had not shown that it had the technical means to find the

information it was seeking.  More importantly, there was simply no evidence of

fabrication, and certainly no evidence of destruction or loss of data.  This is completely

different from the present situation, where the Defendants have admitted that at least

one of Mr. Zuckerberg's hard drives crashed, the same or another hard drive was lost,

they cannot produce the Harvard Connection code or pre-launch thefacebook.com

code, and they can produce only corrupted code from the launch of thefacebook.com

through the first eight months of its operation.

For all of the reasons set forth in Plaintiff's opening brief, for the reasons set forth

in this reply, and in view of Defendants' failure to address virtually all of Plaintiff's

detailed arguments, Plaintiff's motion to image Defendants' electronic memory devices

should be granted.

## III.    Defendants' Arguments for Withholding Post-May 21, 2004 Documents Show a Fundamental Misunderstanding of Plaintiff's Claims

As Plaintiff explained above, this case has many claims.  As Plaintiff explained to

Defendants during the four meet and confers (totaling over 6 hours)[4] to date, and in its

opening brief (at 18), the issue of specifying Plaintiff's trade secrets and the issue of

_____

[4]      Plaintiff spent almost all of such time attempting to convince Defendants to provide discovery.  Plaintiff is not withholding any documents or things requested by Defendants.

whether post-May 21, 2004 documents must be produced are unrelated. Regardless of how Plaintiff defines its trade secrets, Plaintiff identified in its opening brief post-May 21, 2004 documents it would be entitled to receive from Defendants (at 18-19).  Because this case includes much more than trade secret claims, Plaintiff cannot and need not narrow its requests, as Defendants argue (see TFB Opp. at 10; Saverin's Opp. at 2,  3, 7, 9)  Now that Plaintiff has specified its trade secrets in suit (see Ex. 26, Int. No. 2), the documents to which Plaintiff is entitled, as covered by Request Nos. 63, 67, and 129-139 (which are the subject of this motion), should not be limited because there are eight other claims that involve issues other than trade secret issues.  Defendants' argument that "[t]hese requests must be narrowed and informed by a clear specification by ConnectU of its trade secrets" (TFB Opp. at 10) ignores Plaintiff's other claims.[5]

Defendants say they produced pre-May 21, 2004 documents "irrespective of relevance," but then arbitrarily and unilaterally cutoff production on May 21, 2004.  (TFB Opp. at 2)  Thus, relevance is not an issue.  Also, Defendants argue that producing the documents responsive to Request Nos. 63, 67, and 129-139 may be impossible (TFB Opp. at 1, n. 2), but also say they will produce documents if Plaintiff specifies trade secrets (TFB Opp. at 2, 6; Saverin Opp. at 9).  Thus, they must be withholding specific documents they view as responsive.  As stated in § I, *supra*, Defendants probably are not withholding more than several hundred post-May 21, 2004 documents responsive to the requests covered by this motion.

Defendants' citation of *Bunztman v. Springfield Redevelopment Authority*, 146 F.R.D. 30, 33 (D. Mass. 1993), and *Cipolleta v. Sharp*, 2001 WL 914526 (Mass. Super. 2001) (TFB Opp. at 9-10), are inapplicable here.  Plaintiff's requests for post-May 21,

---

[5]     Contrary to Defendants' argument, they never said they would produce post-May 21, 2004 documents if Plaintiff specified how and why it alleges copyright infringement. (TFB Opp. at 1)

2004 documents seek only documents related to the claims, defenses, and counterclaims and cover a specific, limited time period, and only require Defendants to apply the same criteria for responsiveness that they applied when they produced pre-May 21, 2004 documents responsive to the production requests covered by this motion.

Defendants also argue that ConnectU's requests are overly burdensome. This is simply not true. Defendants merely want documents that are relevant to the current lawsuit, which Defendants admit they are withholding (TFB Opp. at 6; Saverin Opp. at 9). For the reasons set forth herein and in Plaintiff's opening brief, this Court should grant Plaintiff's motion to compel production of documents created on or after May 21, 2004 that are responsive to Request Nos. 63, 67, and 129-139.

## IV.    Defendants' Cross Motion for a Protective Order is Moot

### A.    Defendants' Cross Motion is a Delay Tactic

On August 22, 2004, Plaintiff served on Defendants its responses to Defendants' first set of interrogatories. Plaintiff's response to Defendants' Interrogatory No. 2 specified Plaintiff's trade secrets in suit. Such response was not due until August 22, yet Defendants filed their cross motion on August 18, 2005. Moreover, even though they had Plaintiff's trade secret identification in hand, they filed supplemental authority in support of their cross motion on August 24, 2005.

More importantly, however, are the facts leading to the filing of Defendants' cross motion. Plaintiff takes no issue with the law generally requiring a plaintiff in a trade secret case to identify its trade secrets with reasonable particularity before discovery proceeds (TFB Opp. at 7). Plaintiff's counsel has even written on the subject (Ex. B to Notice of Newly Identified Authority in Support of Facebook Defendants' (i) Opposition to ConnectU LLC's Motion to Compel and (ii) Cross-Motion for Protective Order), and wondered why Defendants initially engaged in discovery and produced documents,

12

instead of insisting on receiving an identification of trade secrets before they provided discovery. The circumstances under which Defendants asserted such body of law and moved for a protective order demonstrate a strategy of delay, and to obtain an unfair advantage.

Defendants could have served interrogatories (requesting, among other things, an identification of Plaintiff's trade secrets) when they served production requests, on April 6, 2005, but instead requested only documents in their first round of discovery. Plaintiff served production requests and interrogatories April 7, 2005, and the parties agreed to do a first document exchange on May 31, 2005. Plaintiff produced almost all documents Defendants requested that day, and has supplemented its production since that date, for a total of over 11,000 pages and numerous CD-ROMs containing Harvard Connection source code. After Plaintiff produces the connectu.com code next week, it will not be withholding any known documents. By comparison, Defendants' initial production was sorely lacking, and Plaintiff has spent over six weeks and over six hours of meeting and conferring to convince Defendants to supplement their production, and was forced to file the present motion to compel. During the July 26, 2005 meet and confer, Defendants agreed to produce additional documents responsive to Request Nos. 42, 44-46, 85-95, 98-101, 102-104 (in part), 105, 107-110, 113, and 169, and were "leaning toward" producing documents responsive to Request Nos. 70-71, 96, and 102-104 (in part) (none of which are covered by Plaintiff's present motion to compel, but which are covered by Defendants' cross motion for protective order). Plaintiff memorialized such agreement in its July 28, 2005 letter (Ex. 27), to which Defendants did not respond until August 19, 2005 (Ex. 28), after they filed their cross motion. On August 10, 2005, Plaintiff asked for a meet and confer regarding the documents Defendants promised to produce (Ex. 29) (Defendants admit the promise: TFB Opp. at 2), then asked again to meet and confer on August 15, 2005 (Ex. 30) and August 17, 2005 (Ex. 31). Defendants delayed meeting and conferring until August 22, 2005, after

filing their motion for protective order on August 18, 2005.  During that meet and confer, and in a letter dated August 19, 2005 (Ex. 28), Defendants reneged on their agreement to produce more documents and said they would not do so until Plaintiff identifies its trade secrets with particularity and either the Court approves it or Defendants deem it adequate.  Plaintiff attempted to convince Defendants to produce the documents they promised, citing the identification of trade secrets provided by Plaintiff's 30(b)(6) witness during the August 9, 2005 deposition and the response to Defendants' Interrogatory No. 2, which formalized the deposition testimony, and which Plaintiff intended to serve (and did serve) that very day.  Defendants again refused.  Thus, Defendants' strategy got them all of Plaintiff's documents, and allowed them to withhold documents to which Plaintiff is legitimately entitled.[6]

The point is that Defendants could have and should have raised this body of law before they provided discovery.  During the August 22, 2005 conference, they tried to explain their strategy by saying they just discovered this body of law while researching their opposition to Plaintiff's present motion to compel.  Not likely.  Why didn't Defendants raise this body of law earlier or move for a protective order earlier?  The answer is that they saw that by asserting it when they did, they could delay discovery even longer, while simultaneously arguing that they have been cooperative in discovery.

B.    **Defendants are Likely to Challenge Plaintiff's Trade Secret Identification**

---

[6]    Defendants' strategy has also gotten them interrogatory responses and a 30(b)(6) deposition.  Contrary to Defendants' argument, Plaintiff did not refuse to produce a 30(b)(6) witness on copyright infringement (see TFB Opp. at 7 and n. 7). Though this is an issue for another day, Plaintiff told Defendants that because they have designated their code as confidential, it is impossible to provide a 30(b)(6) witness to testify on alleged copyright infringement without violating the protective order, and that they will get the information they seek from Plaintiff's technical expert.  Regarding Defendants' interrogatory answers, they are also sorely lacking, and Plaintiff expects to file a motion to compel shortly.

Defendants are likely to continue to press their cross motion, arguing that (1) Plaintiff's trade secret identification is not sufficiently detailed, (2) the secrets were in the public domain when they engaged Mr. Zuckerberg, and/or (3) that Harvard Connection's founders did not adequately protect them.  Arguments Nos. 2 and 3 are irrelevant to the issues covered by Plaintiff's motion to compel or Defendants' motion for protective order.[7]  With respect to argument no. 1, Plaintiff's response to Defendants' Interrogatory No. 2 identified the essence of the secret combination of elements, which was a secret project, enterprise and idea, and its implementation (see Ex. 26).  By comparison, if this set of facts were exported to secret prelaunch enterprises to develop services and products in other industries, a trade secret specification of creating a nationwide overnight air-delivery service would have adequately identified the essence of the Fed Ex idea before it launched; or to create a website for consumer product auctions would have adequately disclosed the essence of the ebay idea before it launched; or to create a portable personal stereo device would have adequately disclosed the essence of the Sony Walkman idea before it was first offered for sale.  A person working on such a secret project to launch such products and services, who learned the essence of these ideas, would have all he needed to develop and launch the idea himself.  Plaintiff provided substantially more details of its trade secret combination in response to Interrogatory No. 2.

Defendants cite *American Science and Engineering, Inc. v. Kelly*, 69 F. Supp. 2d 227 (D. Mass. 1999), for its alleged proposition that vagueness and lack of specificity will prevent a plaintiff from asserting that its trade secret has been misappropriated. The court in *American Science* was addressing whether a plaintiff's trade secret claim was reasonably likely to succeed, for purposes of determining if a preliminary injunction

---

[7]    The issue of Mr. Narendra's alleged disclosures (TFB Opp. at 4-5), which are really nondisclosures, is irrelevant here.

should be granted; it was not considering a discovery issue.  The court was examining

the merits of the case -- whether a trade secret had been misappropriated -- based on

the evidence of misappropriation before it.  The merits of Plaintiff's trade secret claim

are irrelevant to Plaintiff's motion to compel or Defendants' cross motion.

Defendants also quoted *Computer Economics, Inc. v. Gartner, Inc.*, 50 F. Supp.

2d 980, 984 (S.D. Cal. 1999), for the proposition that Plaintiff's trade secret identification

must be stated with "sufficient particularity to separate it from matters of general

knowledge in the trade," to permit Defendants "to ascertain at least the boundaries

within which the secret lies," and "provide reasonable notice of the issues which must

be met at the time of trial."  Plaintiff's response to Defendants' Interrogatory No. 2 does

this, and its responses to Defendants' Interrogatory Nos. 10 and 14 (Ex. 26) states that

no known enterprise or website embodied the combination of elements set forth in

Plaintiff's trade secret identification before Defendants launched thefacebook.com.

Plaintiff's trade secret identification and other interrogatory answers separate the

Harvard Connection's founders' secret enterprise, project, and idea from matters of

general knowledge in the trade at that time because the combination of elements had

not been done before (and even if it had, the Harvard Connection Founders did not

know of it).  By analogy, before ebay, there were consumer product auctions and

websites, but no consumer product auction websites.  Before Fed Ex, there were

courier services and airplanes, but no nationwide overnight air delivery services.  Before

the WALKMAN, there were stereos, transistor radios, and cassette tape players, but no

portable stereo transistor radio/cassette players.  Plaintiff's identification therefore

"permits the defendant[s] to ascertain at least the boundaries within which the secret

lies" and "provides reasonable notice of the issues which must be met at the time of

trial."

For these reasons, Defendants' cross motion should be denied.

16

**V.    Plaintiff's Motion Applies to Thefacebook, Inc.
and All Individual Defendants**

Defendants argue that the individual Defendants other than Mr. Zuckerberg

should for some reason be exempt from this action.  (TFB Opp. at 6)  The individual

Defendants other than Mr. Zuckerberg are defendants at least in part because they

founded, launched, and operated thefacebook.com website for six months before

Thefacebook. Inc. incorporated on July 29, 2004.   Mr. Saverin, who separately opposes

this motion, admits being a founder in the declaration attached to such opposition (¶ 2).

Saverin also complains that there is "no reason for ConnectU to have brought

this motion against him."  (Saverin Opp. at 7)   Again, Plaintiff explained in its opening

brief why Mr. Saverin could have thefacebook.com code on his hard drive, and Mr.

Saverin is withholding post-May 21, 2004 documents.[8]  Mr. Saverin's counsel, Mr.

Hawk, offered Plaintiff's counsel a declaration saying Saverin never had any code, and

asked if Plaintiff would drop the motion requesting Mr. Saverin's electronic memory

devices.  Plaintiff's counsel agreed to consider Mr. Hawk's request.  However, he never

sent the declaration.  Plaintiff even granted Defendants an extension of time to respond

to this motion and counsel did not send the declaration.  Thus, Mr. Saverin forces

Plaintiff to reply.

Saverin also cites privacy and confidentiality as reasons for denying Plaintiff's

motion, citing *Richland Wholesale Liquors, Inc. v. Seagram & Sons, Inc.*, 40 F.R.D. 480,

481-82 (D.S.C. 1966) (Saverin Opp. at 8).  The *Richland* case is inapplicable here

because the Stipulated Protective Order entered by the Court alleviates these concerns.

---

[8]    Contrary to Saverin's argument (Saverin Opp. at 5), Plaintiff has not abandoned
any discovery requests.

## VI.    Conclusion

Defendants argue that "[m]uch of Plaintiff's motion . . . centers on the fact that it simply questions the accuracy of the production" (TFB Opp. at 14).  To the contrary, Plaintiff objects to the **ADEQUACY** of Defendants' production.  For the reasons set forth in this reply and Plaintiff's opening brief, Plaintiff's motion to compel should be granted and Defendants' cross motion for a protective order should be denied.

Respectfully submitted,

/s/Troy E. Grabow_____
Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA  02142
Telephone:  (617) 452-1600
Facsimile:   (617) 452-1666
larry.robins@finnegan.com
jon.gelchinsky@finnegan.com

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Troy E. Grabow (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Plaintiff and Counterclaim
Defendants

DATED:  August 26, 2005