

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

901 New York Avenue, NW ▪ Washington, DC 20001-4413 ▪ 202.408.4000 ▪ Fax 202.408.4400
www.finnegan.com

**JOHN F. HORNICK**
(202) 408-4076
john.hornick@finnegan.com

July 5, 2005

Daniel K. Hampton, Esq.                                **VIA FACSIMILE**
Holland & Knight, L.L.P.
10 St. James Avenue
Boston, MA 02116

Monte Cooper
Orrick, Herrington & Sutcliffe, L.L.P.
1000 Marsh Road
Menlo Park, CA 94025

> *ConnectU LLC v. Zuckerberg et al.*
> Civil Action No. 1:04-cv-11923 (DPW)

Dear Dan and Monte:

We write concerning certain deficiencies in Defendants and Counterclaimants' Responses to Plaintiff and Counterdefendants' Requests for the Production of Documents and Things, dated May 31, 2005 ("Defendants' Responses"). We will write separately about deficiencies in documents produced by Defendants and deficiencies in Defendants' reponses to Plaintiff's first set of interrogatories.

In their Responses, Defendants state numerous objections that are unsupported and inconsistent with the scope of this litigation. As you know, Plaintiff is entitled under Fed. R. Civ. P. 26(b)(1) to discovery of any matter, not privileged, that is relevant to any claim or defense in this action. We set forth the following deficiencies in Defendants' Responses so that Defendants can rectify those deficiencies and produce documents accordingly.[1]

First, Defendants object to a large number of Plaintiff's Production Requests on the basis that the requests either: (1) invade Defendants' privacy; or (2) call for

---

[1] The deficiencies set forth in this letter may not be exhaustive, and ConnectU and the individual Counterclaim Defendants reserve the right to identify additional deficiencies upon further review of Defendants' Responses.

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 2 of 10

Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information. Defendants' withholding of documents on these bases is improper in light of the Stipulated Protective Order entered in this case, to which the parties are bound. The Stipulated Protective Order eliminates Defendants' concerns about privacy and/or confidentiality and the like. As noted in section 1 of the Stipulated Protective Order, Confidential Information means any document or thing ... "considered by any party in good faith as confidential because it contains a trade secret or other information considered by such party to be confidential." Access to such confidential information is restricted by sections 6 through 8 of the Stipulated Protective Order, to assure proper handling of confidential information and prevent disclosure of confidential information to unauthorized persons. In light of the entry of the Stipulated Protective Order, relevant responsive documents should not be withheld based on privacy and confidentiality (and similar) objections. Defendants therefore must produce responsive documents that were refused on the basis of the improper privacy objection. This includes at least Production Request Nos. 38, 42, 44, 45, 46, 96, 119, 120, 121, and 122. Defendants must also produce responsive documents that were refused on the basis of the improper commercially sensitive/trade secret objection. This includes at least Production Request Nos. 34, 69, 70, 71, 98, 99, 106, 107, 111, 113, and 123. Moreover, with respect to other responses in which Defendants made privacy and/or commercially sensitive/trade secret objections but did not expressly refuse to produce documents, Defendants should withdraw such objections.

With respect to at least Production Request Nos. 18, 19, 20, 21, 23, 27, 28, 29, and 63, Defendants have limited their production to documents created on or before May 21, 2004. Defendants' withholding of documents created after May 21, 2004 is inappropriate. The production requests are not limited in any way to documents created on or before May 21, 2004. Documents created after May 21, 2004 are relevant to both ConnectU's claims and the Defendants' affirmative defenses and counterclaims. The selection of May 21, 2004, the launch date of the ConnectU website, appears to be a random cutoff date with no relationship to the production request or the issues in this litigation. The Defendants have not stated any rationale for the selection of this date or for the withholding of documents created after May 21, 2004. Acts and omissions of Defendants, communications by or between Defendants, and communications between Defendants and third parties, occurring after May 21, 2004 and relating to thefacebook.com website certainly are relevant to the claims or defenses in this action. For example, after that date, Defendants may have exchanged nonprivileged communications with each other or with third parties about the operative facts underlying this action. After that date, users of the thefacebook.com website may have expressed opinions in emails addressed to Defendants (or forwarded or copied to Defendants) about the subjects of the operative facts underlying this action. After that date, Defendants have communicated with the media about the operative facts underlying this action. For at least these reasons, Defendants must produce documents created after May 21, 2004 with respect to Production Request Nos. 18, 19, 20, 21, 23, 27, 28, 29, and 63.

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 3 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

With respect to Production Request No. 24, it is not clear whether Defendants are producing responsive documents. Defendants improperly refer to their responses to Request Nos. 15 through 21, even though Defendants asserted different objections to each of those requests. For example, it is unclear whether or not Defendants are cutting off documents after May 21, 2004 (as done with respect to Request Nos. 18-21) or whether they will be producing the documents without this date restriction (as done with respect to Request Nos. 15-17). Defendants must clearly state their objections as to each individual production request, and inform ConnectU as to whether they will be producing responsive documents. In the event that the Defendants intended to refuse to produce documents responsive to Production Request No. 24, or intend to cut such documents off at May 21, 2004, such an objection is improper. Mr. Zuckerberg's acts and omissions, his communications with other Defendants, and his communications with third parties, occurring before or after May 21, 2004 and relating to thefacebook.com website, certainly are relevant to the claims or defenses in this action. To the extent such communications are not covered by other requests, they are covered by this request. Mr. Zuckerberg may have exchanged nonprivileged communications covered by this request with other Defendants or with third parties about the operative facts underlying this action. Users of thefacebook.com website may have expressed opinions in emails addressed to Mr. Zuckerberg (or in emails forwarded or copied to Mr. Zuckerberg) about the subjects of the operative facts underlying this action. Mr. Zuckerberg certainly has communicated with the media about the operative facts underlying this action. For at least these reasons, Defendants must produce documents responsive to Production Request No. 24 or represent that they have produced all such documents.

Similar to the production requests discussed in the two preceding paragraphs, Defendants' responses to Production Request Nos. 25 and 26 are improper. It appears that Defendants have improperly limited their production under these requests to documents created on or before May 21, 2004. Mr. Saverin's and Mr. Moskovitz's acts and omissions, their communications with other Defendants, and their communications with third parties, occurring after May 21, 2004 and relating to thefacebook.com website, certainly are relevant to the claims or defenses in this action. To the extent such communications are not covered by other requests, they are covered by these requests. After May 21, 2004, Mr. Saverin and Mr. Moskovitz may have exchanged nonprivileged communications covered by this request with other Defendants or with third parties about the operative facts underlying this action. After that date, users of thefacebook.com website may have expressed opinions in emails addressed to Mr. Saverin and/or Mr. Moskovitz (or in emails forwarded or copied to them) about the subjects of the operative facts underlying this action. After that date, Mr. Saverin and/or Mr. Moskovitz may have communicated with the media about the operative facts underlying this action. For at least these reasons, Defendants must produce documents responsive to Production Request Nos. 25 and 26.

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 4 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

With respect to Production Request No. 30, Defendants will apparently only produce emails relating to facemash.com. However, this request is not limited to emails. Defendants have not represented that no other nonemail documents exist, or the reason that they have limited their production to emails. Defendants must produce any other (nonemail) documents and things relating to facemash.com, or represent that there are no other documents. Moreover, Defendants stated that the "code for facemash was lost when the hard drive of Mr. Zuckerberg's computer malfunctioned." Please provide us with an image of the hard drive of Mr. Zuckerberg's computers (as sought by Request Nos. 116, 117, and 118) so that we can analyze what other documents exists with respect to Production Request No. 30.

With respect to a large number of production requests, Defendants state that they have no responsive documents. Further explanation is required at least with respect to Production Request Nos. 35, 48, 49, 52, 53, 54, 64, and 65. As for Production Request No. 35, Defendants claim that no responsive documents exist despite the newspaper article stating that the on-line journal was available on Mr. Zuckerberg's website. Defendants have not explained why the on-line journal or copies thereof are not available to Mr. Zuckerberg or others. As for Production Request Nos. 48 and 49, Defendants have not provided any explanation as to why the source code for the Harvard Connection website to which Mr. Zuckerberg was given access in late 2003, or versions of computer program coding that was provided to Mr. Zuckerberg, both of which he acknowledged having access to in emails, allegedly do not exist. Similarly, with respect to Production Request Nos. 52, 53, and 54, Defendants provide no explanation as to why the requested computer program coding, which Mr. Zuckerberg represented existed, allegedly does not now exist. Moreover, Defendants' responses to Request Nos. 57 and 58 appear to be inconsistent with Defendants' responses to Request Nos. 52, 53, and 54. Defendants' responses to Request Nos. 57 and 58 suggest that documents sought by Request Nos. 52, 53, and 54 do (or should) exist. With respect to Production Request Nos. 64 and 65, Defendants have not explained why no documents exist relating to the thefacebook.com website as it existed on January 11 and January 13, 2004, respectively. It is extremely surprising that no documents exist relating to the thefacebook.com website on these dates because Mr. Zuckerberg registered the thefacebook.com domain name on January 11, 2004. For each of the production requests discussed in this paragraph, Defendants must explain the reasons that these documents allegedly do not exist or provide responsive documents.

With respect to Production Request No. 36, Defendants state that they will produce emails, but the production request is not limited to emails. Defendants have not stated that no other nonemail documents exist, or the reason that they have limited their production to emails. Defendants must produce all documents responsive to this request.

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

With respect to Production Request Nos. 38, 42, 43, 44, 45, 46, 69, 70, 71, 96, 98, 99, 106, 107, 111, 113, 119, 120, 121, 122, 123, Defendants have improperly refused to produce any documents. Defendants have repeated many of the same improper objections as addressed above. For example, Defendants have objected to various requests (e.g., 38, 42, 43, 44, 45, 46, 96, 119, 120, 121, and 122) for allegedly invading Defendants' privacy. Defendants have also objected to many of the requests on the basis of confidential, commercially sensitive, and/or trade secret information. As discussed above, these are not proper objections because a Stipulated Protective Order is in effect in this case. The documents and things covered by these requests are relevant for the following reasons and/or the following issues, among others:

- In addition to the privacy objections previously discussed, Defendants object to Request No. 38 as allegedly "seeking irrelevant documents that are not reasonably calculated to lead to the discovery of admissible evidence." Defendants provide no explanation or rationale for their position that these documents are not reasonably calculated to lead to the discovery of admissible evidence. Mr. Saverin's calendars are relevant to the issue of when Mr. Zuckerberg, or he and Mr. Zuckerberg, began working on the thefacebook.com website, and to test the veracity of statements made by Mr. Zuckerberg.

- In response to Production Request No. 42, Defendants assert that the request for documents relating to the Harvard Administrative Board and Mark Zuckerberg, including but not limited to any matter involving facemash and/or Harvard Connection, is not reasonably calculated to lead to the discovery of admissible evidence. This position is unsustainable, particularly with respect to documents related to Harvard Connection. The facts surrounding Harvard Connection and the Harvard Administrative Board are central to most, if not all, of the issues in dispute in this litigation, including Defendants' waiver defense. Documents related to facemash and the Harvard Administrative Board are relevant to Mr. Zuckerberg's veracity and credibility, alleged programming skills, and ability to create websites within the time periods he says he is capable of doing so.

- As to Production Request Nos. 43, 44, 45, and 46, the facts surrounding any matter involving the Defendants and the Harvard Administrative Board are reasonably likely to lead to the discovery of admissible evidence and any such documents must be produced. Documents related to the Harvard Administrative Board and the individual Defendants are relevant to their veracity and credibility.

- As to Production Request No. 69, the computer program coding for thefacebook.com is clearly reasonably calculated to lead to the discovery of admissible evidence, and is directly relevant to the claims, defenses, and counterclaims asserted in this litigation.

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 6 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

- Production Request Nos. 70, 71, 96, 98, 99, 106, 107, and 113 relate to the value of thefacebook.com website and Thefacebook, Inc., the growth and success of thefacebook.com website and Thefacebook, Inc., Defendants' business model, the user and advertising markets for the websites in suit, Defendants' profits from the unlawful acts alleged in the First Amended Complaint, and Plaintiff's damages.

- As to Production Request No. 111, the features and functionality of the thefacebook.com website relate at least to the issue of copying from the Harvard Connection site and/or code.

- As to Production Request Nos. 119, 120, 121, 122, and 123, electronic images of hard drives are needed to determine if any additional responsive documents exist, particularly in view of Defendants' representation that certain documents do not exist that should exist, and that certain electronic documents have been lost.

Defendants' responses are insufficient with respect to Production Request Nos. 60, 67, 68, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 100, 101, 102, 103, 104, 108, 109, 116, 117, 118, 124, 125, 126, 127, 128, and 141, for at least the reasons stated below:

- Production Request No. 60 seeks "documents sufficient to identify the creator (as the word 'creator' is used in paragraph 2 of the counterclaims set forth in Defendants' Answer) of the website thefacebook.com, and all documents relating to such creation and identifying all developers of such website." This request relates to the core issues of Plaintiff's claims, and relates to Defendants' defenses and counterclaims as well. In response, Defendants make several inappropriate objections, then refer Plaintiff to Defendants' response to Plaintiff's Interrogatory No. 10. This is not responsive. Interrogatory 10 does not mention the term "creator," nor does the Defendants' response to Interrogatory 10 answer the question or render moot the request for documents that identify the "creator." Defendants must produce documents responsive to Production Request No. 60.

- Production Request No. 67 seeks "All documents constituting and/or relating to Mark Zuckerberg's development of computer program coding for the website to be known as thefacebook.com, and/or relating to the development of the website itself, including but not limited to design notes, flow charts, libraries of code, testware, etc." In response, Defendants object on a number of grounds, including that the request is "argumentative." The objection for being "argumentative" is inappropriate and is not understood. After making objections, Defendants referred to Defendants' Response to Request for Production No. 63, where Defendants had refused to produce documents created after May 21, 2004. As described above with respect to Production Request No. 63, it is

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 7 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

improper to limit production to documents created on or before May 21, 2004.
The request is not so limited and documents created after May 21, 2004 relate to
the core issues of the First Amended Complaint. Mr. Zuckerberg could have
used at any time for thefacebook.com website code or other work that he wrote
or performed for Harvard Connection.

- Defendants' response to Production Request No. 68 states that they will
"produce computer files containing the front end source code that operated
thefacebook.com website as it existed on October, 2004 and December, 2004."
However, Plaintiff's request is not so limited. This objection is also improper
because thefacebook.com website went live on February 12, 2003 and versions
of such website must have existed prior to that date. All documents and things
responsive to Request No. 68 must be produced.

- Defendants have improperly responded to Production Request No. 84 by
stating that they will produce "non-privileged samples of advertising-related
documentation." Plaintiff has not requested samples of advertising documents,
but has requested "all documents" relating to advertising. Defendants have not
asserted that responding to this request would be unduly burdensome, and
therefore there is no basis for their refusal to produce the requested documents.
A request for advertising documents is reasonably calculated to lead to discovery
of admissible evidence, especially on damages issues and Defendants' improper
head start and usurpation of the market. Therefore, Defendants' objections are
improper and Defendants must produce these documents.

- Defendants have failed to respond properly to Production Request No. 85
because their response merely provided the number of users on a single date.
The production request asked for "All documents sufficient to identify, and
relating to, daily, monthly, and annual traffic to the thefacebook.com website,
from its launch date to the date of Defendants' response." Defendants have not
stated that they produced any responsive documents. Moreover, Defendants'
objection that the request is not reasonably calculated to lead to the discovery of
admissible evidence is not sustainable, as traffic to thefacebook.com website,
and the growth rate of such traffic, are relevant to many elements of Plaintiff's
claims, especially Plaintiff's damages, Defendants' improper head start on and
usurpation of the market, and the improperly obtained popularity of
thefacebook.com website. Moreover, an interrogatory answer does not eliminate
Defendants' obligation to produce documents. Defendants must produce
documents responsive to Request No. 85.

- Defendants' response to Production Request No. 86 is also insufficient.
Production Request No. 86 requests documents to identify the schools at which
the thefacebook.com website is available or operational, on a monthly basis,
from August 2003 to the date of Defendants' response. Defendants' response

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 8 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

refers Plaintiff to Defendants' response to Plaintiff's Interrogatory No. 11, which only provides a single list of schools where thefacebook.com website is presently located. This response is insufficient. This request is relevant to the growth and value of thefacebook.com website, Defendants' improper head start on and usurpation of the market, the improperly obtained popularity of thefacebook.com website, and Plaintiff's damages. Moreover, an interrogatory answer does not eliminate Defendants' obligation to produce documents. Defendants must produce documents sufficient to identify the schools on a monthly basis.

• Similar to Production Request No. 85, Defendants have refused to provide documents responsive to Production Request Nos. 87, 88, and 89, instead referring to interrogatory responses that provide information for a single date. This is not responsive to the request. These requests are relevant to the growth and value of thefacebook.com website, Defendants' improper head start on and usurpation of the market, the improperly obtained popularity of thefacebook.com website, and Plaintiff's damages. Moreover, an interrogatory answer does not eliminate Defendants' obligation to produce documents. Defendants must produce documents responsive to Production Request Nos. 87, 88, and 89.

• As to Production Request Nos. 90, 91, 92, 93, 94, 95, 100, and 101, the financial statements Defendants agreed to produce are not responsive to these requests. The documents sought by these requests are needed to calculate Defendants' profits and Plaintiff's damages, and are also relevant to the growth and value of thefacebook.com website.

• The responses to Production Request Nos. 102, 103, and 104 are insufficient. The documents and things sought by Request No. 102 are relevant to whether Thefacebook, Inc. is properly doing business, and whether the individual Defendants can hide behind the corporate shield. Request Nos. 103 and 104 are catch-all requests intended to capture any and all corporate documents of Thefacebook, Inc., and all contracts between any of the individual Defendants and any nonparty, that are not sought by other requests and that relate in any way to the claims, defenses, or counterclaims asserted in this action. Any and all responsive documents must be produced.

• As to Production Request Nos. 108 and 109, Defendants agreed to produce only the current agreement with its vendor of server services. This is insufficient. These requests relate to the issues of when work on thefacebook.com website began, and the growth of thefacebook.com website. All such documents must be produced.

• Defendants responded to Production Request Nos. 116, 117, and 118 by making general objections and then referring to responses to other production requests. Because Defendants referenced a wide range of other responses, it is

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 9 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

not clear if Defendants are producing electronic images of the hard drives sought by the requests, or what the Defendants' objections are. Plaintiff requests a specific individual response to each of Production Request Nos. 116, 117, and 118, as required by Fed. R. Civ. P. 34(b), and the electronic images sought by the requests must be produced. The hard drive images are needed to determine if any additional responsive documents exist, particularly in view of Defendants' representation that certain documents do not exist that should exist, and that certain electronic documents have been lost.

- As for Production Request Nos. 124, 125, 126, 127, and 128, Defendants have not stated a valid basis for only producing a single resume for each person. The production requests are not so limited; they clearly request all versions from August 2003 to the present, as well as other documents. Defendants' resumes, CVs, cover letters to potential employers, and/or job applications may refer to their work on or involvement with thefacebook.com website and when such work began. These documents therefore are reasonably calculated to lead to the discovery of admissible evidence and must be produced.

- As for Production Request No. 141, documents showing the permanent address of the person listed are reasonably calculated to lead to the discovery of admissible evidence, particularly to Defendants' defenses. Defendants have not asserted a valid objection, and therefore Defendants must produce documents responsive to Request No. 141.

With respect to Production Request Nos. 83, 105, 110, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 166, and 170, it is unclear whether Defendants intend to produce all responsive documents. For example, Production Request No. 110 seeks all documents sufficient to identify and constituting all Frequently Asked Questions, and answers thereto, posted on thefacebook.com website from August 2003 to the date of Defendants' response. Defendants merely referred Plaintiff to the current website for thefacebook.com. Defendants must clarify whether all FAQs that were ever posted on thefacebook.com website are still posted on the webpage identified in Defendants' response. If not, Defendants' response is incomplete. As for all of the production requests listed in this paragraph, Defendants must either represent that they have produced all documents responsive to these requests, or explain what documents have not been produced.

With respect to Request Nos. 167 and 168. Defendants must produce all fact documents (as compared to expert reports or other expert documents) supporting Defendants' allegations of damages. If all such documents have been produced, Defendants should say so. If all such documents have not been produced, they should be produced right away.

Daniel K. Hampton, Esq.
Monte Cooper, Esq.
Page 10 of 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

With regard to Request No. 169, Defendants must produce such documents as soon as they are generated.

Lastly, it is our understanding that Mr. Hampton will be representing Eduardo Saverin. To the extent that Mr. Saverin controls, possesses, or has access to any documents responsive to any of Plaintiff's requests, he must produce them even if the request is not specifically directed to him. To name only four examples, Mr. Saverin could possess documents responsive to Production Request Nos. 8 and 19-21 even though the requests are not expressly directed to Mr. Saverin.

We will contact you tomorrow to schedule a conference call to discuss the issues covered by this letter and to attempt to resolve them without the Court's involvement.

Sincerely,

FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.

By: _Troy E. Grabow for JFH_
John F. Hornick

JFH/TEG

cc:   Robert B. Hawk, Esq. - Heller, Ehrman, White & McAuliff, L.L.P.
      Michael M. Markman, Esq. - Heller, Ehrman, White & McAuliff, L.L.P.
      Gordon P. Katz, Esq. - Holland & Knight, L.L.P.
      G. Gordon Guy, III - Orrick, Herrington & Sutcliffe, L.L.P.
      Neel I. Chatterjee, Esq. - Orrick, Herrington & Sutcliffe, L.L.P.
      Joshua H. Walker, Esq. - Orrick, Herrington & Sutcliffe, L.L.P.
      Steven M. Bauer, Esq. - Proskauer Rose, L.L.P.
      Jeremy P. Oczek, Esq. - Proskauer Rose, L.L.P.