# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>      ConnectU,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>      Defendants. | Civil Action No. 1:04-CV-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>      Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>      Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>      Additional Counterdefendants. | |

**THE FACEBOOK DEFENDANTS' REPLY IN SUPPORT OF CROSS-MOTION FOR <u>PROTECTIVE ORDER</u>**

Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc. (the "Facebook Defendants") collectively submit this reply memorandum in support of their Cross-Motion for Protective Order.

## I.    INTRODUCTION

Plaintiff ConnectU LLC's ("ConnectU") combined Opposition and Reply Brief ("Opp.") misapplies the law and mischaracterizes critical facts related to this discovery dispute. No one can reasonably dispute that the discovery sought by ConnectU is onerous and unreasonable. To preclude such burdensome requests, the text of Rule 26(b)(1) of the Federal Rules of Civil Procedure was specifically amended in 2001 to add a "good cause" standard for discovery "relevant to the subject matter involved in the action." *See* F.R.C.P. 26(b)(1). Comm. Note, 2001 Amendments. Congress specifically instructed Courts that "[w]hen judicial intervention is invoked, the actual scope of discovery should be determined according to the reasonable needs of the action." *Id.* In the present matter, ConnectU's requests do not meet the "reasonable needs of the action" threshold set forth by Congress.

ConnectU's motion asks for an "electronic image of the entire computer hard drive(s) or other computer memory devices" from **each** Facebook Defendant, as well as from Eduardo Saverin. ConnectU admits that it bases this request purely on speculation as to what it hopes to find on these computers. Opp. at 5. At the same time that ConnectU makes its request, ConnectU concedes that three of the individual Defendants (Moskovitz, McCollum, and Hughes) are not even alleged to have been involved with the original HarvardConnection project. ConnectU nonetheless demands electronic images of these Defendants' hard drives simply because they helped launch the facebook.com website. *Id.* at 21. Under applicable First Circuit law, ConnectU's unfounded suspicions are insufficient to obtain the extraordinary relief that it requests.

ConnectU, through its motion, also seeks without limitation wholly irrelevant documents created after May 21, 2004, the date of the public launch of its own website (when any alleged misappropriation of trade secrets no longer could have occurred). Indeed, ConnectU seeks everything "relating in any way to the subject matter of this lawsuit." *See* Requests Nos. 129-139. These requests are devoid of any specificity and make no effort to obtain what is reasonably needed in this case. Moreover, ConnectU simply dismisses the Facebook Defendants' claims that such vague Requests are over-broad or unduly burdensome, and again speculates that there might be something relevant in the enormous number of documents requested. *See*, *e.g.*, Opp. at 17. Such fishing expeditions should not be condoned.

Rejecting any attempt to narrow discovery, ConnectU also continues to refuse to provide a sufficient identification of the trade secrets allegedly misappropriated so as to apprise the Defendants of the nature of its claims. Instead ConnectU now argues that its vague list (which is unlimited by its very terms) of "ideas" that define any social network website contained in a recent Interrogatory Response meets its required specification. ConnectU's response cannot meet the specificity requirements of Massachusetts law. Therefore, no reason exists to deny the Facebook Defendants' Cross-Motion for Protective Order.

**II.    CONNECTU'S REQUESTS FOR "ELECTRONIC IMAGE[S] OF THE ENTIRE COMPUTER HARD DRIVE(S) OR OTHER COMPUTER MEMORY DEVICES" ARE OVERLY BROAD, EXTREMELY BURDENSOME, AND UNJUSTIFIED.**

ConnectU claims it is entitled to electronic "mirror images" of Zuckerberg's and every other Defendants' hard drives merely because they "founded, launched, and operated thefacebook.com website for six months before the Facebook incorporated on July 29, 2004." Opp. at 17. ConnectU's request does not satisfy the "good cause" standard of Rule 26(b)(1), let alone the case law related to "mirror image" requests. ConnectU offers no justification based upon evidence to justify its demand. ConnectU glosses over the burden its request imposes on

defendants. ConnectU speculates that the Defendants' "memory devices are likely to yield" HarvardConnection and facebook.com code, which it argues "are surely backed up somewhere." *See* Opp. at 5. As set forth earlier, ConnectU's demands would likely shut down the Facebook Defendants' business for a number of weeks. *See* Affidavit of Nicholas J. Heyman in support of the Facebook Defendants' (i) Opposition to Plaintiff's Motion to Compel the Production of Mirror Images of Defendants' Hard Drives and Other Electronic Memory Devices and Documents Created after May 21, 2004, and (ii) Cross-Motion for Protective Order ("Heyman Affidavit"), ¶¶ 1-9.

### A. ConnectU's Requests Are Unreasonable.

ConnectU's request is also unreasonable because most, if not all, of the information sought by plaintiff is not even relevant to this case. ConnectU's copying of the entirety of the Facebook Defendants' hard drives would include, by ConnectU's own admission, wholly irrelevant, potentially privileged and personal information. *See* Opp. at 3-4. This problem is compounded because ConnectU seeks to have its own expert cull all such information from his review, even as he searches through virtually every personal file. *Id.* Such a "solution" is untenable.

### B. ConnectU's Attempt to Justify Its Request Fails.

Notably, ConnectU's conclusory allegations, made without resort to any discovery, fail to meet the threshold showing in the First Circuit that ConnectU prove it has a particularized likelihood of finding discoverable material. *Fennell* v. *First Step Designs, Ltd.*, 83 F.3d 526, 532-34 (1st. Cir. 1996). In the First Circuit, mere speculation or suspicion that a defendant's production is minimally probative does not justify the extraordinary imposition of mirroring that defendant's hard drive. *Compare id.* at 533 ("the 'five suspicious facts' articulated earlier are

equally speculative") *with* Opp. at 5 ("fishy").[1]

To support its claim, ConnectU incorrectly alleges it has not received sufficient source code. In reality, ConnectU has **received** three different versions of the facebook.com website code – the earliest Facebook code located – and yet, to date, ConnectU has been unable to identify any HarvardConnection code contained therein. *See* Opening Memorandum, at 6. ConnectU essentially argues that because it cannot prove its case from the critical discovery it already has received, it is entitled to unlimited discovery. ConnectU's approach is wholly improper.

ConnectU incorrectly speculates that such an extraordinary production is warranted because code under development "must have been" backed up on **all** of the Defendants' hard drives – even if a crash of some type occurred. No proof whatsoever of the suggested "back ups" exists. ConnectU has not even attempted to depose any witness knowledgeable about such back-up procedures, and instead simply demands that the Court accept wholesale its arguments that typical college students who are computer science majors employ, as a rule, professional back-up procedures for their projects.

ConnectU also argues that it is entitled to the onerous discovery requested because the earliest code that the Facebook Defendants have located and produced was partially corrupted. *See* Opp. at 7. The Facebook Defendants have produced the requested code in the exact condition Facebook Defendants found it as required by applicable rules. *See* F.R.C.P. 34. ConnectU provides no evidence that any other version of the code exists. The Facebook Defendants have done an exhaustive search and have produced all responsive copies of the code in their possession.

---

[1] If anything, ConnectU's Opposition is more conclusory than the *Fennell* plaintiff's argument.

As plaintiff's request seeks every document in the company as well as in the possession of each individual without limitation, the Facebook Defendants are entitled to the entry of a protective order.

### C. ConnectU's Attempt to Distinguish the Case Law Fails.

In an effort to overcome the deficiencies with its factual position, ConnectU also attempts to distinguish the case law previously cited by the Facebook Defendants in support of their arguments that demands for electronic imaging require proof of particularized need. *See* Opp. at 7-10. ConnectU's attempted distinctions are irrelevant or moot.

ConnectU incorrectly contends that *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526 (1st Cir. 1996) should not apply to this case. In support of its argument, ConnectU argues that in *Fenell* "there was *no evidence* of fabrication, and certainly no evidence of destruction or loss of data." Opp. at 10 (emphasis added). Here, although ConnectU provides *argument* thereon, it provides no proof whatsoever of any "fabrication" or "destruction" of evidence by the Facebook Defendants to make this distinction viable. Nor has ConnectU even attempted to find such proof.

ConnectU also incorrectly argues that *Fennell* does not apply because it involved Rule 56(f) of the Federal Rules of Civil Procedure. Contrary to ConnectU's assertion, the *Fennell* Court fully acknowledged that it was applying ordinary Rule 26(b) discovery burdens in its analysis. *See Fennell*, 83 F.3d at 532 & n.7. The Court of Appeals in *Fennell* specifically concluded that the plaintiff's demand for electronic discovery "would involve substantial risks and costs," in part due to the privilege issues involved. ConnectU offers no explanation as to why those same concerns are not also present here.

ConnectU further argues that in *Williams v. Mass. Mut. Life Ins. Co.*, 226 F.R.D. 144, 145 (D. Mass. 2005), the movant could offer no explanation why a document that was in its

- 5 -

possession was not the same as one it was looking for on the Defendants' electronic systems. Opp. at 7-8.  Yet, in attempting to make this distinction, ConnectU offers no explanation as to why the Facebook source code already produced and in its possession is somehow different than the code it claims would be resident on the Defendants' hard drives.  Indeed, this is the crux of ConnectU's problem: It has received the Defendants' code, it just does not like that evidence.  ConnectU's inchoate speculation is identical to that which was rejected by the Court in *Williams*, and underscores the weakness of its arguments.

Likewise, in *Cognex Corp. v. Electro Scientific*, No. Civ.A. 01CV10287RCL, 2002 WL 32309413 (D.Mass. July 2, 2002), the Court denied plaintiff's motion to compel a search of defendant's back-up memory devices, quoting the 1993 Advisory Committee notes to Fed. R. Civ. P. 26(b): "[t]he information explosion of recent decades has greatly increased both the potential cost of wide-ranging discovery and the potential for discovery to be used as an instrument for delay or oppression."  ConnectU attempts to distinguish this case by arguing that, there, the defendant would have had to search every single backup file which, if printed, would have resulted in billions of pages of documents.  Opp. at 8.  Yet, in making this "distinction," ConnectU wholly overlooks the fact that the information it requests from electronic imaging of the facebook.com website by itself would cover roughly one twentieth the volume of information in the Library of Congress.  *See* Heyman Aff. ¶¶ 1-9.  ConnectU's distinction actually proves the Facebook Defendants' point that ConnectU's requests are unduly burdensome.

Finally, despite ConnectU's claims to the contrary, the document request at issue in *Wright v. AmSouth Bancorp.*, 320 F.3d 1198, 1205 (11th Cir. Feb. 5, 2003) – "all word processing files created, modified and/or accessed by" defendants -  is much narrower than the document requests at issue here - "[a]n electronic image of the entire computer hard drive(s) or

other computer memory devices." Again, ConnectU is simply dissatisfied with the holding – a fact which does not provide a basis to ignore it.[2] ConnectU seeks far more than source code.

Although ConnectU argues the case law it cited in its Opening Brief is more relevant, it is not. Three of those cases involved electronic recoveries by Court-appointed experts, rather than by the plaintiff (as proposed here), and none of them relied upon First Circuit precedent. *See Antioch Co. v. Scrapbook Borders, Inc.*, 210 F.R.D. 645, 650-51 (D. Minn. 2002); *In re Triton Energy, Ltd.*, 2002 U.S. Dist. LEXIS 4326, *13 (E.D. Tex. Mar. 7, 2002); *Northwest Airlines, Inc. v. Local 2000, Int'l Bhd. of Teamsters*, 2000 U.S. Dist. LEXIS 22638 (D. Minn. Feb. 2, 2000). The difference between (i) producing information following a proper balancing of needs and evidence by the Court to the Court's own appointed expert, rather than (ii) to the plaintiff's own expert, based on plaintiff's naked suspicion, is enormous. In ConnectU's fourth case, *Playboy Enter. v. Welles*, 60 F. Supp. 2d 1050, 1051-52 (C.D. Cal. 1999), the Court first applied a balancing test for need, and then ruled production would occur, but only after the Defendant first reviewed the electronic production and determined which responsive documents (if any) existed. Again, this is not the procedure that ConnectU suggests be utilized. ConnectU wants electronic imaging to be completed by its expert alone, and without regard to relevance. Moreover, the "minimal business interruption" in *Playboy* may be contrasted with the massive disruption ConnectU seeks to impose here, which would impact literally millions of third party

---

[2] ConnectU's attempt to distinguish the many other cases cited by the Facebook Defendants are likewise deficient. For instance, in *McCurdy Group, LLC v. Am. Biomedical Group, Inc.*, 9 Fed. Appx. 822, 831 (10th Cir. 2001), on similar facts, the Court found that the requesting party's skepticism, without persuasive evidence, that all relevant documents had been produced was not a sufficient reason "to warrant such a drastic discovery measure" as electronic imaging. ConnectU claims that unlike that case, here "source code is admittedly missing and is likely to be recoverable." The Defendants in no way concede that any code is likely to be recoverable from their hard drives. Similarly, in *Symantec Corp. v. McAfee Assocs., Inc.*, No. C-97-20367-JF(EAI), 1998 WL 740807 (N.D. Cal. Aug. 14, 1998), the diligence of the party was an issue related to the re-opening discovery, not the actual burden for the discovery requested. On that latter point, the Court found the requests for "source code for all products" was unduly burdensome. Notably, ConnectU glosses over this fact and fails to explain why its own electronic discovery requests are somehow less so.

users. Such demands are unreasonable, and no case supports such draconian production.

## III. CONNECTU'S DOCUMENT REQUESTS REGARDING POST MAY 21, 2004 DOCUMENTS SEEK IRRELEVANT INFORMATION, AND ARE OVERLY BROAD AND UNDULY BURDENSOME ABSENT AN APPROPRIATE IDENTIFICATION OF TRADE SECRETS

ConnectU also contends its broad demands for documents generated after the public launch of its own website on May 21, 2004, is appropriate, notwithstanding that it only recently served the Facebook Defendants with an Interrogatory Response which it contends constitutes its trade secrets. However, the Interrogatory Response is *per se* inadequate under Massachusetts law, as explained by the Defendants in a separate motion which will be filed in the next few days.[3] Regardless, ConnectU's requests still cover enormous amounts of material which have no conceivable link to this litigation, including sensitive, private data of third party consumers.

### A. ConnectU's Recent Production of a Response to Interrogatory Number 2 Does Not Overcome the Issues Associated with Specification of Trade Secrets

Massachusetts law requires that in any trade secret case, the plaintiff must identify its trade secrets with rigorous specificity. For instance, in *Staffbridge, Inc. v. Nelson Assocs., Inc.*, No. 024912-BLS, 2004 WL 1429935, at *1 (Mass. Super. June 11, 2004), before permitting discovery relating to plaintiffs' claimed trade secrets, the Massachusetts Superior Court ordered plaintiffs to describe "with **rigorous and focused particularity** what, and only what, the plaintiffs claim to constitute the trade secrets allegedly misappropriated by either of the defendants that form the basis for this law suit." *Id.* at *4 (emphasis added). The court further explained that "[t]he designation must, with clarity that can be understood by a lay person, make clear and distinguish what is protectable from that which is not." *Id. See also* 4 Milgrim, Trade Secrets § 16.01[5] (2005) ("a [trade secret] plaintiff can reasonably anticipate that the defendant

---

[3] The Facebook Defendants anticipate the separate motion will be filed no later than September

will insist that it be apprised of <u>considerable detail</u> describing the trade secret.  That insistence can reasonably be expected to precede the defendant's submitting to discovery of it") (emphasis added).

The particularity demanded by the Superior Court in *Staffbridge* is representative of the level of detail that Courts generally, and Massachusetts Courts specifically, demand in trade secrets cases such as this one.  *See L-3 Communications Corp. v. Reveal Imaging Tech. Inc.*, No. 035810BLS, 2004 WL 2915743, *13 (Mass. Super. Dec. 2, 2004) ("Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required to <u>first</u> identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets") (quoting *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986)); *Microwave Research Corp. v. Sanders Associates, Inc.*, 110 F.R.D. 669, 673 (D. Mass. 1986)  ("[a] further procedure employed is to require a plaintiff to specify in detail the trade secrets and confidential information alleged to have been misappropriated").

Likewise, counsel for ConnectU has written as recently as February of this year that Courts apply the reasonable particularity standard in order to ensure that the plaintiff does not generically identify its trade secrets and attempt to use discovery as a vehicle to obtain the information it actually will use to allege this tort:

> In many cases, a trade secret plaintiff may avoid identifying its alleged trade secrets with particularity until late in discovery.  This often results in the plaintiff identifying as its trade secrets items that it finds in documents and information produced by the defendant, some of which may be the defendant's own trade secrets. . . .  Trade secret Complaints rarely identify the trade

---

8, 2005.

> secrets in suit with any particularity, and plaintiffs generally wish to delay such identification as long as possible. . . . The catchwords for the minimum scope of plaintiff's trade secret disclosure are "with reasonable particularity." One commentator suggested that a "'workable definition might be that the plaintiff should provide the defendant with a general outline of its trade secrets sufficient to allow the defendant to assess the relevancy of the requested discovery and to assure the defendant (and the court) that the defendant is not the victim of a fishing expedition.'"

John F. Hornick & Margaret A. Esquenet, *Trade Secret Identification: The Importance of Timing in Discovery*, (Feb. 2005), available at www.finnegan.com/publications/news-popup.cfm?id+1248&type=article (citations omitted).

Counsel for ConnectU claims now that its generic description in its Response to Interrogatory Number 2 of the observable functions of the ConnectU and facebook.com websites were "trade secrets" of the prior entity known as HarvardConnection. Facebook Defendants do not address ConnectU's arguments regarding their identification of trade secrets (*see* Opp. at 14-16) in this reply, but thoroughly address the matter in their forthcoming motion to compel, incorporated herein. Simply stated, ConnectU's generic response is inadequate.

**B.      May 21, 2004 Is Not an "Arbitrary Date"**

ConnectU also contends that its requests for documents generated after May 21, 2004, relate to far more than its trade secret claims, and that therefore it is irrelevant whether it has adequately specified those trade secrets. *See* Opp. at 2-3. However, regardless of how it attempts to distinguish that seminal allegation, all of ConnectU's requests are aimed at discovery concerning the operation, functionality, and profitability of the facebook.com website as it exists now, rather than at the time any of the alleged torts related to such operation occurred. ConnectU is essentially arguing that it is entitled to the broadest scope of discovery imaginable, even though it has provided only the most basic of arguments as to what it claims is the "confidential information" that is supposedly present in the Defendants' product. This is

precisely the concern that Courts have expressed exists in trade secret cases – namely, that plaintiff's might attempt to be as vague as possible relating to their trade secrets, and use the discovery process to define those trade secrets "after-the-fact" by reference to what they discover about the Defendants' technology.  *See, e.g., Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974).

Indeed, ConnectU has not explained what, if any, trade secrets were not disclosed by its public launch of its web site launch on May 21, 2004.  As a result, the case law reflects that no trade secret misappropriation or related torts could have occurred after that date.  *See Bertsch v. Duemeland*, 639 N.W. 2d 455, 465 (N.D. 2002) (denying motion to compel discovery of information on computers acquired after similar torts, including trade secret misappropriation and tortuous interference with a business relationship, could have possibly occurred); *see also Buntzman v. Springfield Redevelopment Auth.*, 146 F.R.D. 30, 33 (D. Mass. 1993) (denied motion to compel as to documents related to dates after which the tort was committed).  The fact the law recognizes this distinction underscores why the date chosen by the Facebook Defendants to withhold production until specification is not "arbitrary," as alleged.

Moreover, while it argues that this is not at its core a trade secret case, ConnectU nonetheless does not offer any other basis than alleged trade secret misappropriation as support for its claims of unfair competition, unjust enrichment, breach of implied covenant of good faith and fair dealing, breach of contract, breach of fiduciary duty, and intentional interference with prospective contractual and advantageous business relations.  *See* Opp. at 3.  ConnectU offers no argument or evidence to explain why its requests would be relevant to any of these ancillary causes of action.  The trade secret claims are driving these other tort claims, and ConnectU thus is, not surprisingly, being as general in its description of its trade secrets as it possibly can.  This

is improper.

Far from an "arbitrary" date, May 21, 2004 is the date that ConnectU publicly launched its own website, destroying any trade secrets in functions that are evident to the website user. *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, No. 04-1462 (Fed. Cir. Aug. 24, 2005), 2005 WL 2030282, at 11 (holding that under Massachusetts law, "the owner of the trade secret bears the burden of taking reasonable steps to preserve the secrecy of the trade secret."); *see also Permagrain Prods., Inc. v. U.S. Mat & Rubber Co.*, 489 F. Supp. 108, 110 (E.D. Pa. 1980) (applying Massachusetts law; a trade secret is lost upon disclosure by holder); *Cornell-Dubilier Elec. Corp. v. Aerovox Corp.*, 71 USPQ 153, 154-156 (Mass. Super. 1946) (disclosure by goods manufactured by holder destroys trade secrets). The Facebook Defendants are well within their rights in demanding that ConnectU adequately specify what trade secrets it contends were misappropriated prior to May 21, 2004, and to identify them with sufficient clarity to separate them from matters of "general knowledge in the trade." *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d. 980, 984 (S.D. Cal. 1999). More particularly, any secrecy of ConnectU terminated on or before May 21, 2004. Therefore, the temporal nexus of these, and all of ConnectU's claims, lies before that time. ConnectU's unwillingness to acknowledge that fact is commensurate with its failure to focus its discovery in any way.

        **C.**     **ConnectU's Document Requests Are Overly Broad and Unduly Burdensome**

Moreover, ConnectU's Request Numbers 129-139, are overly broad, requesting documents of the various Facebook Defendants "relating in any way to the subject matter of this lawsuit." These requests are not tailored to the claims, defenses and counterclaims, as ConnectU argues. *See* Opp. at 12. If courts allowed requests like these, parties would only need one document request (*i.e.*, "All documents relating in any way to the subject matter of this lawsuit"). Again, ConnectU's own refusal to focus its discovery is the only impediment to just and efficient

management of this process.

The Facebook Defendants' have made a full and complete production of relevant documents pursuant to a reasonable and diligent search, even thought they cannot fully ascertain ConnectU's purported trade secrets. ConnectU's requests seek documents well beyond those related to the claims, defenses, and counterclaims. In fact, ConnectU's requests here are broader than those denied in the Facebook Defendants' cited cases. *Buntzman*, 146 F.R.D. 30, 33 (denied request for "financial statements"); *Chipoletta v. Sharp*, No. 98-5947-A, 2001 WL 914526, *1 (Mass. Super. Aug. 13, 2001) (denied request for documents "that identify" or "can be associated with" defendant).

Throughout this case, the Facebook Defendants have advised ConnectU that ConnectU must sufficiently identify their allegedly misappropriated trade secrets in order for the Facebook Defendants to produce post May 21, 2004 documents. *See* Affidavit of Monte Cooper in Support of Facebook Defendants' Cross-Motion for Protective Order ("Cooper Aff.") Exs. E, F (8/19 and 8/22 letters); *see also* ConnectU Ex. 27. In multiple discussions on July 12, 14, 18 and 26, 2005 and letters on August 19 and 22, 2005, the Facebook Defendants made it clear that their production depended upon ConnectU's identification of trade secrets. *Id*. The Facebook Defendants needed ConnectU to identify trade secrets so that they could determine which documents to produce, and which to withhold. ConnectU's response was to file its Motion to Compel, rather than provide the requisite specification.

For the reasons set forth above, and in its opening brief, the Facebook Defendants request the Court grant its cross-motion for a protective order.

/ / /

/ / /

- 13 -

Dated:  September 6, 2005                  Respectfully submitted,

                         /s/  Monte M.F. Cooper

Monte M.F. Cooper*
G. Hopkins Guy, III*
I. Neel Chatterjee*
Joshua H. Walker*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
jwalker@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
Telephone:     (617) 526-9600
Facsimile:      (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

ATTORNEYS FOR MARK ZUCKERBERG, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.

* Admitted Pro Hac Vice

DOCSSV1:423854.5

**TABLE OF CONTENTS**

                                                                                                                                                              **Page**

I.     INTRODUCTION ................................................................................................. 0

II.    CONNECTU'S REQUESTS FOR "ELECTRONIC IMAGE[S] OF THE ENTIRE COMPUTER HARD DRIVE(S) OR OTHER COMPUTER MEMORY DEVICES" ARE OVERLY BROAD, EXTREMELY BURDENSOME, AND UNJUSTIFIED. ........................................................................................................ 1

        A.     ConnectU's Requests Are Unreasonable.................................................. 2

        B.     ConnectU's Attempt to Justify Its Request Fails...................................... 2

        C.     ConnectU's Attempt to Distinguish the Case Law Fails. ........................ 4

III.   CONNECTU'S DOCUMENT REQUESTS REGARDING POST MAY 21, 2004 DOCUMENTS SEEK IRRELEVANT INFORMATION, AND ARE OVERLY BROAD AND UNDULY BURDENSOME ABSENT AN APPROPRIATE IDENTIFICATION OF TRADE SECRETS ..................................................................... 7

        A.     ConnectU's Recent Production of a Response to Interrogatory Number 2 Does Not Overcome the Issues Associated with Specification of Trade Secrets ..................................................................................................... 7

        B.     May 21, 2004 Is Not an "Arbitrary Date"................................................ 9

        C.     ConnectU's Document Requests Are Overly Broad and Unduly Burdensome ........................................................................................... 11

## TABLE OF AUTHORITIES

**Pages**

### FEDERAL CASES

*Antioch Co.* v. *Scrapbook Borders, Inc.*,
   210 F.R.D. 645 (D. Minn. 2002) ...................................................................................... 7

*Buntzman* v. *Springfield Redevelopment Auth.*,
   146 F.R.D. 30 (D. Mass. 1993) ................................................................................. 11, 13

*Computer Economics, Inc.* v. *Gartner Group, Inc.*,
   50 F. Supp. 2d 980 (S.D. Cal. 1999) ............................................................................. 12

*Cornell-Dubilier Elec. Corp.* v. *Aerovox Corp.*,
   71 U.S.P.Q. 153 (Mass. Super. 1946) ........................................................................... 12

*Fennell* v. *First Step Designs, Ltd.*,
   83 F.3d 526 (1st. Cir. 1996) ........................................................................................ 3, 5

*McCurdy Group, LLC v. Am. Biomedical Group, Inc.*,
   9 Fed. Appx. 822, 831 (10th Cir. 2001) ......................................................................... 7

*Northwest Airlines, Inc.* v. *Local 2000, Int'l Bhd. of Teamsters*,
   2000 U.S. Dist. LEXIS 22638 (D. Minn. Feb. 2, 2000) ................................................ 7

*Permagrain Prods., Inc.* v. *U.S. Mat & Rubber Co.*,
   489 F. Supp. 108 (E.D. Pa. 1980) ................................................................................. 12

*Playboy Enter.* v. *Welles*,
   60 F. Supp. 2d 1050 (C.D. Cal. 1999) ............................................................................ 7

*In re Triton Energy, Ltd.*,
   2002 U.S. Dist. LEXIS 4326 (E.D. Tex. Mar. 7, 2002) ................................................. 7

*Williams* v. *Mass. Mut. Life Ins. Co.*,
   226 F.R.D. 144 (D. Mass. 2005) ................................................................................ 5, 6

*Wright* v. *AmSouth Bancorp.*,
   320 F.3d 1198 (11th Cir. Feb. 5, 2003) .......................................................................... 6

*Xerox Corp.* v. *IBM Corp.*,
   64 F.R.D. 367 (S.D.N.Y. 1974) ................................................................................... 11

## TABLE OF AUTHORITIES
(continued)

Page

### STATE CASES

*Bertsch* v. *Duemeland*,
    639 N.W.2d 455 (N.D. 2002) ..................................................................................................11

*Chipoletta* v. *Sharp*,
    No. 98-5947-A, 2001 WL. 914526 (Mass. Super. Aug. 13, 2001)..........................................13

*Cognex Corp.* v. *Electro Scientific*,
    2002 WL. 32309413 (D.Mass. July 2, 2002)..........................................................................6

*L-3 Communications Corp.* v. *Reveal Imaging Tech. Inc.*,
    No. 035810BLS, 2004 WL. 2915743 (Mass. Super. Dec. 2, 2004)L........................................9

*Staffbridge, Inc.* v. *Nelson Assocs., Inc.*,
    No. 024912-BLS, 2004 WL. 1429935 (Mass. Super. June 11, 2004) ..................................8, 9

*Symantec Corp. v. McAfee Assocs., Inc.*,
    No. C-97-20367-JF(EAI), 1998 WL. 740807 (N.D. Cal. Aug. 14, 1998)................................7

*Storage Tech. Corp.* v. *Custom Hardware Eng'g & Consulting, Inc.*,
    No. 04-1462 (Fed. Cir. Aug. 24, 2005) 2005 WL 2030282 ...................................................12