# EXHIBIT 11

LEXSEE 2002 U.S DIST. LEXIS 4326

IN RE: TRITON ENERGY LIMITED, SECURITIES LITIGATION

5:98CV256

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, TEXARKANA DIVISION

*2002 U.S. Dist. LEXIS 4326*

March 7, 2002, Decided
March 7, 2002, Filed, Entered

**DISPOSITION:** [*1] Motion GRANTED in part.

**LexisNexis(R) Headnotes**

**COUNSEL:** For D H LEE, JR, plaintiff: James N Haltom, George L McWilliams, Richard Andrew Adams, Patton Haltom Roberts McWilliams & Greer LLP, Texarkana, TX.

For D H LEE, JR, plaintiff: Nelson James Roach, Charles Cary Patterson, Jeffrey John Angelovich, Bradley Earl Beckworth, Jason Brandt Stephens, Nix Patterson & Roach LLP, Daingerfield, TX.

For D H LEE, JR, ALL PLA, plaintiffs: Arthur Miller, Attorney at Law, Cambridge, MA.

For D H LEE, JR, plaintiff: U Seth Ottensoser, Keith M Fleischman, Steven G Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY.

For RICHARD STRAUSS, MICHAEL NMN BROWN, BIRDIE CAPITAL CORPORATION, NORTH RIVER TRADING CO. L.L.C., KEN BORTNER, RICHARD L ZORN, ELIZABETH CLOFINE, SARAH SCHREIBER, consolidated plaintiffs: U Seth Ottensoser, Keith M Fleischman, Steven G Schulman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY.

For [*2] RICHARD STRAUSS, MICHAEL NMN BROWN, BIRDIE CAPITAL CORPORATION, KEN BORTNER, consolidated plaintiffs: Damon Young, Young Pickett & Lee, Texarkana, TX.

For RICHARD STRAUSS, MICHAEL NMN BROWN, consolidated plaintiffs: John Michael Pickett, Lance Lee, Young Pickett & Lee, Texarkana, TX.

For NORTH RIVER TRADING CO. L.L.C., RICHARD L ZORN, ELIZABETH CLOFINE, consolidated plaintiffs: Roger F Claxton, Claxton & Hill, Dallas, TX.

For SARAH SCHREIBER, consolidated plaintiff: Mark Stromberg, Shields Britton & Fraser, Dallas, TX.

For SARAH SCHREIBER, consolidated plaintiff: James D Shields, Shields Britton Fraser, Plano, TX.

For TRITON ENERGY LIMITED, PETER RUGG, defendants: Nicholas H Patton, Gregory Clay Sandefur, Patton Tidwell Sandefur, Texarkana, TX.

For TRITON ENERGY LIMITED, PETER RUGG, defendants: Noel M.B. Hensley, Haynes & Boone, Dallas, TX.

For THOMAS G FINCK, defendant: Barry F Cannaday, Rodney Acker, Ellen B Sessions, Jenkens & Gilchrist, Dallas, TX.

For THOMAS G FINCK, defendant: John David Crisp, Crisp Boyd Poff, Texarkana, TX.

For TRITON ENERGY LIMITED SECURITIES LITIGATION, consolidated defendant: Nicholas H Patton, Gregory Clay Sandefur, [*3] Patton Tidwell Sandefur, Texarkana, TX.

For TRITON ENERGY LIMITED SECURITIES LITIGATION, consolidated defendant: Noel M.B. Hensley, Haynes & Boone, Dallas, TX.

For DEGOLYER AND MACNAUGHTON, movant: Craig Alan Haynes, Lauren Carol Felts, Thompson & Knight, Dallas, TX.

JUDGES: CAROLINE M. CRAVEN, UNITED STATES MAGISTRATE JUDGE.

OPINIONBY: CAROLINE M. CRAVEN

OPINION:

### ORDER

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges dated January 15, 1994, Plaintiffs' Motion for a Log of Withheld Documents and for Certification of Preservation and Retention of Documents and Production of Triton's Computer Storage Systems (Docket Entry # 212) was referred to the Honorable Caroline M. Craven for the purposes of hearing and determining said motion. The Court, after considering the motion, the supplemental brief, the responses, and hearing arguments of counsel, n1 is of the opinion that the motion should be **GRANTED in part.**

> n1 A hearing was held on Plaintiffs' motion on March 6, 2002.

[*4]

### I. BACKGROUND

Plaintiffs filed their current motion, complaining that documents which bear significantly on this lawsuit have just recently been produced as opposed to when disclosures were made initially in June, 2001. Specifically, Plaintiffs assert that recent events discovered in the deposition phase of this case raise a serious concern that documents have been destroyed in violation of this Court's previous document preservation Order and the Local Rules. As an example of this concern, Plaintiffs state Defendants failed to include in their initial disclosures basic information and correspondence which supports Plaintiffs' allegations that the OCENSA pipeline transaction was not a sale, "but rather an off-balance sheet transaction virtually identical to the transactions utilized by Enron to hide debt, mislead shareholders, and falsely inflate Triton's earnings." n2 Plaintiffs further assert they did not receive these documents until late-January, over six months after Defendants' initial disclosures were due. In addition, Plaintiffs assert Defendants only produced these documents after Plaintiffs specifically demanded them and threatened to file a motion to compel. n3

> n2 Plaintiffs' mot. at 2.

[*5]

> n3 Another reason Plaintiffs argue more documents are in the possession of Defendants is based on documents Plaintiffs recently received regarding Triton's southeast Asian reserves. Plaintiffs assert that the quantity and quality of the reserves have been in issue from the beginning of this lawsuit, yet Plaintiffs only recently received a report regarding those reserves from Gaffney Cline and Associates, an outside reserve engineering firm. Plaintiffs similarly contend that these documents were only received after Plaintiffs threatened to file a motion to compel.

Plaintiffs provide the following time line of Defendants' document production. On June 29, 2001. Triton produced sixteen boxes of documents and re-produced the "data room" documents in Dallas. On July 18, 2001, Triton produced approximately 215 more documents. Defendants supplemented its production with documents in September 2001. Subsequently, Plaintiffs raised a concern over the loss of documents during the Amerada Hess Corporation and Triton merger, and on December 14, 2001, the undersigned issued an Order reiterating the parties' [*6] obligation to preserve documents.

Plaintiffs contend fifteen depositions have already been taken in this case, including the depositions of Lead Plaintiffs, several of Defendants' officers and directors, outside security analysts, and independent companies who visited Triton's data rooms during the bidding process. Plaintiffs assert hundreds if not thousands of documents were produced after key depositions were taken or on the eve of the depositions. Plaintiffs contend they did not have the benefit of many important documents before the depositions were taken, and therefore some depositions will have to be re-taken.

For these reasons, Plaintiffs are asking the Court for the following: (a) Plaintiffs seek from Defendants a log of all documents that it or its attorneys have withheld from Plaintiffs on any ground(s); (b) Plaintiffs seek an Order requiring Triton to produce a written certification to the Court describing the efforts, if any, it has undertaken to comply with this Court's previous Orders regarding the preservation and production of evidence and their obligations under the Private Securities Litigation Reform Act ("PSLRA"); and (c) Plaintiffs seek access to Triton's computer [*7] storage systems (including servers and hard drives) and those of all present and former members of the Board of Directors, who served on the Board between January 1, 19998 until the time Triton's Board of Directors ceased to exist, and to allow non-destructive testing of these systems to determine what

documents and e-mails, if any, have been deleted and what, if any, of this information bears significantly on the subject matter of this lawsuit.

## II. ARGUMENTS

### A. Log of Withheld Documents

Plaintiffs first seek from Defendants a log of all documents that it or its attorneys have withheld from Plaintiffs on any ground(s). Defendants respond that neither the facts nor the law justifies Plaintiffs' extraordinary request that Triton be ordered to undertake the enormously expensive and time-consuming task of cataloguing the universe of documents that are nonresponsive and that it has not produced in this litigation.

### B. Written Certification of Preservation and Retention of Documents

Plaintiffs further seek an Order requiring Triton to produce a written certification to the Court describing the efforts, if any, it has undertaken to comply with this Court's previous [*8] Orders regarding the preservation and production of evidence and their obligations under the Private Securities Litigation Reform Act ("PSLRA"). Plaintiffs assert that the certification shall include (1) the names of all present and former employee(s) and/or present member(s) of the Board of Directors contacted by Triton and/or its attorneys regarding the pendency of this lawsuit and the duty of each such person(s) to retain all documents bearing significantly on this litigation; (2) the earliest date(s) upon which such communication was made with each such person(s); (3) a description of all evidence in the possession of each person(s) and a description of what, if any, such evidence was destroyed, discarded, lost, misplaced, or not preserved, for whatever reason; (4) a description of all evidence in the possession of each such person(s), if any, which has been withheld from production to Plaintiffs; and (5) a description of all evidence in the possession of each such person, which has been produced to Plaintiffs. Plaintiffs further assert that the certification should include, as to the certification regarding evidence possessed by each person(s), the date(s) upon which Triton and/or [*9] its counsel first (1) became aware of the existence of such evidence and (2) came into possession of such evidence.

### C. Production of Triton's Computer Storage Systems

Finally, Plaintiffs seek access to Triton's computer storage systems (including servers and hard drives) and those of all present and former members of the Board of Directors, who served on the Board between January 1, 19998 until the time Triton's Board of Directors ceased to exist, and to allow non-destructive testing of these systems to determine what documents and e-mails, if any, have been deleted and what, if any, of this information bears significantly on the subject matter of this lawsuit.

In support of its request, Plaintiffs assert they have recently deposed three of Triton's former directors. At the hearing on Plaintiffs' motion, Plaintiffs played excerpts from the depositions, wherein each former director testified he had not been asked by Triton's counsel to produce any documents. Each of the directors was also asked if Triton's counsel had asked them to retain any documents which might pertain to this lawsuit, and each of the directors answered that they had not been asked to retain any documents. [*10]

Plaintiffs further assert James C. Musselman, another Triton director and Chief Executive Officer for a substantial period of time during the pendency of this lawsuit, testified that he had never been asked for any documents, nor had he been asked to retain any documents. Additionally, Plaintiffs assert that Sheldon Erickson, a former Triton board member and Chairman of the Board, testified that he had sent and received e-mails relating to his involvement in Triton while serving on the board but those e-mails were only retained on his company's e-mail server for a period of one year before being destroyed. This lawsuit was filed on July 18, 1998, one day after the class period ended. Therefore, Plaintiffs assert any relevant e-mails in Mr. Erickson's possession would have remained on his server until at least July 18, 1999. Mr. Erickson testified Triton's counsel never asked him to retain the documents, and all of the e-mails have since been destroyed.

Don Drinkard, one of the Triton employees in charge of development and production, testified that he had never been asked for documents relevant to this litigation and that, the week before the deposition, he pulled approximately 25 [*11] e-mails relating to this litigation off of his computer at Triton and discussed them with counsel. Those e-mails were produced to Plaintiffs on February 12, 2002. Mr. Drinkard further testified that he has additional e-mails "archived" on his computer that he felt pertained to this lawsuit. Plaintiffs maintain that the responses of Triton's directors and top employees raises a serious concern that documents have been destroyed in violation of the law.

Triton responds that it has produced those documents that bear significantly on the claims specifically raised in Plaintiffs' Consolidated Class Action Complaint and that it has been doing a rolling production as permitted and required by the rules. Triton maintains it has made a huge effort to supplement its production by responding to new issues raised in depositions even though they are not alleged in the Complaint. Specifically, Triton asserts that Plaintiffs only allege the reserves in Ma-

laysia were improperly classified. Therefore, based on the substantive differences between quantity and classification of reserves, Triton did not initially produce documents relating to quantity. Triton adds, however, that even though not specifically [*12] alleged in the Consolidated Class Action Complaint, once the issue of quantity was raised in depositions, Triton produced such documents.

Triton asserts it alerted and cautioned its employees on July 23, 1998 that Triton cannot destroy any documents pertaining to the strategic alternatives process or any matters that may be the subject of the suit. The communication further instructed Triton employees that the documents to be preserved encompassed drafts, correspondence, and information in electronic form. Triton asserts it has sent follow-up communications reminding its employees that documents relating to this lawsuit cannot be destroyed. Triton further contends it identified and preserved thousands of e-mails from its computer system, which were reviewed for responsiveness and where appropriate, produced in this litigation.

While Triton submitted affidavits that it advised its employees to preserve documents during the pendency of this litigation, Triton did not advise its outside directors to preserve documents since they were not Triton employees. Triton conceded at the hearing that it did not tell its outside directors to preserve documents. Triton argues, however, that it [*13] only has control over employees and the documents within their possession. Specifically, Triton argues the three, independent outside directors whom Plaintiffs have deposed are not named parties to this litigation. Triton further asserts that two of the directors had no hard copy documents to produce. Triton further objects to Plaintiffs request for the personal computers of Erickson, Musselman, and McMahon and any other former directors of Triton because Triton does not have control over the personal computers of these former directors. Triton argues Plaintiffs' intrusion into the personal computers would allow Plaintiffs to view material produced for other corporations and for the directors' personal use far beyond the scope of their roles as former Triton directors.

Finally, Defendants Thomas Finck and Peter Ruggs assert that they have produced all of the non-privileged documents in their possession, custody, or control. The individual Defendants further argue Plaintiffs have not alleged any basis for any sanctions against them.

### III. DISCUSSION

#### A. Log of Withheld Documents

Plaintiffs maintain that Triton's production of key documents after the conclusion of depositions [*14] of Triton directors justifies the production of a log of withheld documents from Defendants. The Court agrees that Triton's production of documents at or after a deposition is unfair to Plaintiffs. However, there exists in the rules a duty to supplement, n4 which indicates to the Court that the rules contemplate a situation such as here where it is problematic to produce in one fell swoop *all* documents which bear significantly. In a simple case, this could be done. This is a complex lawsuit. The Court concludes the burden to Defendants outweighs the likely benefit of a log of all withheld documents. Therefore, the Court is of the opinion that this request should be granted only to the extent the documents are being withheld by a claim of privilege. If Triton is withholding the production of any documents or electronic data that bear significantly on the lawsuit, Triton shall set forth a description of the document(s) or the data and the reason(s) why it is being withheld within fourteen days from the date of entry of this Order. This also applies to the individual Defendants Thomas Finck and Peter Ruggs.

n4 *See* Local Rule CV-26(f).

[*15]

#### B. Written Certification of Preservation and Retention of Documents

Defendants have submitted to the Court adequate evidence of its efforts to inform its employees of the duty to preserve and produce documents. Moreover, the Court is of the opinion that the certification would do little to aid in the resolution of this matter. As the Court discusses below, the Court makes provision for a special master to review the computer hard drives to determine whether any documents or data that bear significantly have been deleted of not produced. Accordingly, Plaintiffs' request for a written certification is denied.

#### C. Production of Triton's Computer Storage Systems

Plaintiffs maintain that the responses of Triton's directors and top employees raises a serious concern that documents have been destroyed in violation of the law. Specifically, Plaintiffs seek access to Triton's computer storage systems to determine whether Triton has complied with its obligations to preserve and produce documents which bear significantly. Attempting to fashion a workable remedy for this situation, the Court will appoint a computer specialist to extract information as well as a special master [*16] to review and determine what documents or electronic data, if any, were destroyed which bear significantly on this litigation. The reasons for the Court's decision are as follows.

During pending litigation, a party is under a duty to preserve relevant evidence. Moreover, the PSLRA provides that "during the pendency of any stay of discovery . . . any party with actual notice of the allegations contained in the complaint shall treat all documents . . . that are relevant to the allegations as if they were the subject of a continuing request for production . . . ." 15 § 77z-1(b)(2). Therefore, Defendants had a common law duty not to spoil documents (in hard copy or electronic form) that might be discoverable in this litigation as well as a duty pursuant to the PSLRA. *15 U.S.C. § 78u-4(b)(3)(C)(i).*

The Court has not found any authority specifically addressing the issue of whether Triton has a duty to instruct its outside directors to preserve documents. However, the Court finds instructive *Danis v. USN Communications, Inc., 2000 U.S. Dist. LEXIS 16900, 2000 WL 1694325 (N.D. Ill. 2000),* wherein the plaintiffs filed a motion for sanctions against six of the eleven individual [*17] officers and director defendants. Only one of the defendants, Mr. Elliott, held the position of inside director of USN during the class period; the other defendants were outside directors to USN during the class period. USN was not named as a defendant because it filed for bankruptcy protection. The need to preserve documents was discussed at a USN board meeting the day the case was filed. The named defendants attended the meeting. The affidavits and the court testimony established that one of the attorneys "made it clear, in vivid terms, that with filing of the lawsuit document preservation must be a top priority at USN." *Id.* at 12. The witnesses testified that the attorney warned that he "could deal with bad documents," but "there was nothing worse than destroying documents," thus he emphasized the "importance of maintaining the documents." *Id.* The need to preserve documents was later discussed at a USN staff meeting attended by USN officers and high level managers representing every business group within USN.

The court in *Danis* concluded that the document preservation program was inadequate, though not intentionally so. The court further concluded that the outside directors, [*18] although under a duty to preserve, were not responsible for the failure to preserve documents. Instead, the court sanctioned the CEO, Mr. Elliott because "he was directed by the Board to see to it that documents were preserved, and he was on the scene with the ability to follow through and see that the job was completed." *Id.* at 41. While the court found USN failed to implement adequate steps to discharge its duty to preserve documents and information that might be discoverable, USN's attorney had admonished the outside directors and upper level employees to preserve documents.

In this case, Triton asserts it admonished its employees to preserve documents, but not its outside directors. The Court is of the opinion that it would have been prudent and within the spirit of the law for Triton to instruct its officers and directors to preserve and produce any documents in their possession, custody, or control. As stated above, the Court does not find that Triton *intentionally* failed to instruct the outside directors to preserve and produce relevant documents. In fact, a large quantity of documents which bear significantly on this litigation has been preserved and produced to Plaintiffs. [*19] At the same time, "it is clear that as a result of the failure to implement a suitable document preservation plan, to communicate that plan effectively to [outside directors], and to follow up to insure that the directive was being followed, there were holes in the document preservation plan through which discoverable materials may have been lost." *Id.* at 43.

The Court is of the opinion that Plaintiffs' suggestion of allowing them unfettered access to Triton's computer hard drives would potentially violate Triton, its employees, and outside directors right to privacy and privileges. In an effort to alleviate these concerns, the Court will appoint a special master to review the information retrieved from the computer storage systems. n5 The Court will also appoint a forensic computer specialist to retrieve information from Triton's computer storage systems (including servers and hard drives) and those of all other former officers and directors as well as all present and former members of the Board of Directors, who served on the Board between January 1, 1998 until the time the Board of Directors ceased to exist. The computer specialist will conduct non-destructive testing of [*20] these systems to determine what documents and e-mails, if any, have been deleted. The special master will then review and determine what documents and electronic data, if any, were destroyed that bear significantly on the claims and defenses in this lawsuit. Based on the special master's report, the Court will determine whether Triton has complied with its disclosure obligations and whether a sanctions hearing is necessary.

---

n5 The Court has the authority to appoint a special master to review and prepare a report to the Court. *See FED. R. CIV. P. 53.*

---

## IV. CONCLUSION

Based on the foregoing, it is

**ORDERED** that Defendants shall produce a log of all documents withheld by a claim of privilege, including a description of the document(s) and/or electronic data as well as the reason(s) why it is being withheld, within fourteen days from the date of entry of this Order. It is further

**ORDERED** that Defendants, including all outside directors, shall produce any additional documents which bear significantly [*21] on the claims and defenses of this lawsuit within ten days from the date of entry of this Order. Defendants shall continue to supplement their production of documents which bear significantly on the claims and defenses in this lawsuit, including documents from present and former outside directors. Defendants are advised that by supplementing, rather than producing the documents at one time, the Court places upon Defendants the burden of paying the costs for any additional deposition, if any, that Plaintiffs may need to take because they did not have the documents timely. This includes depositions of new witnesses or witnesses that have previously been deposed. It is further

**ORDERED** that the parties shall meet, confer, and submit to the Court within ten days from the date of entry of this Order mutually agreeable names of (1) an outside forensic computer specialist and (2) a special master knowledgeable in securities litigation. The Court will then appoint a computer specialist to retrieve information from Triton's computer storage systems (including servers and hard drives) and those of all other former officers and directors as well as all present and former members of the [*22] Board of Directors, who served on the Board between January 1, 1998 until the time the Board of Directors ceased to exist. The computer specialist will conduct non-destructive testing of these systems to determine what documents and e-mails, if any, have been deleted.

The Court will also appoint a special master who will determine, considering the allegations plead in Plaintiff's Consolidated Class Action Complaint as well as applicable privileges, what additional documents and electronic data, if any, should have been preserved and produced to Plaintiffs. Triton shall provide a list of all documents which have been produced to Plaintiffs in this litigation. Plaintiffs shall bear the costs of such testing and retrieval unless the special master determines Triton has not preserved and produced all documents which bear significantly on the claims and defenses in this lawsuit.

**IT IS SO ORDERED.**

**SIGNED** this 7th day of March, 2002.

CAROLINE M. CRAVEN

UNITED STATES MAGISTRATE JUDGE