**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC,<br><br>                    Plaintiff,<br><br>    v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>                    Defendants.<br><br>MARK ZUCKERBERG and THEFACEBOOK, INC.,<br><br>                    Counterclaimants,<br><br>    v.<br><br>CONNECTU LLC,<br><br>                    Counterdefendant,<br><br>    and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>                    Additional Counterdefendants. | CIVIL ACTION NO. 1:04-cv-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS IN RESPONSE TO PRODUCTION
REQUEST NOS. 42, 44-46, 70-71, 85-96, 98-105, 107-110, 113, AND 169**

Discovery is at a standstill. Although Plaintiff has provided all of the documents Defendants have requested,[1] answered Defendants' interrogatories, and provided a

---

[1] Plaintiff has produced a total of over 11,000 pages and numerous CD-ROMs containing Harvard Connection and ConnectU source code. It is not withholding any known documents and will supplement its production if additional responsive documents are located.

Rule 30(b)(6) witness to testify for ConnectU, Defendants are providing no further discovery until Defendants' pending motion for protective order is resolved.  However, Defendants' motion for protective order is now moot because Plaintiff timely identified its trade secrets on August 22, 2005, in response to Defendants' Interrogatory No. 2.

Discovery closes December 15, 2005 and Plaintiff's expert reports are due November 1, 2005.  Plaintiff is very concerned that unless the Court breaks the discovery deadlock, Defendants may effectively prevent Plaintiff from obtaining necessary discovery before its expert reports are due, and before discovery closes. Plaintiff has not yet been able to take depositions because Defendants are withholding documents responsive to so many of its production requests (which are the subject of this motion, Plaintiff's motion seeking post-May 21, 2004 documents (filed July 28, 2005), and another motion Plaintiff expects to file shortly), because the Harvard Connection code Mr. Zuckerberg allegedly wrote and all pre-October 2004 code for thefacebook.com website still has not been found and Defendants refuse to allow their electronic memory devices to be imaged for purposes of attempting to recover such missing code (this is the subject of Plaintiff's motion filed July 28, 2005, Docket No. ("D.N.") 37), and because Defendants have not adequately answered Plaintiff's interrogatories (Plaintiff filed a motion to compel interrogatory answers on August 30, 2005, D.N. 52).  With respect to the only deposition Plaintiff has noticed to date, of Defendant Saverin, Saverin's counsel says he is unavailable until October 3, 2005 and they are awaiting the outcome of the motion for protective order, which he joined on September 6, 2005.

Thus, Plaintiff files the present motion seeking the immediate production of the Facebook Defendants' documents. After the Court breaks the discovery deadlock, there will be no time to spare before Plaintiff's expert reports are due, and for Plaintiff to take depositions before discovery closes.

The Certification required by L.R. 7.1(A)(2) and 37.1(B) is set forth in the accompanying motion.

## I. Background and Procedural Facts

The following is an updated version of the facts set forth in Plaintiff's two previously filed motions to compel.

In December 2002, the founders of Plaintiff ConnectU LLC, Divya Narendra and Tyler and Cameron Winklevoss (the "Founders") came up with a great idea: to bring the concept of a social and professional directory, networking, and dating website to the college level, starting with Harvard University, where they were juniors at the time. In early November 2003, the Founders found Defendant Mark Zuckerberg and asked him to join with them to complete the site and launch and market it as quickly as possible (see Counterclaim ¶9, D.N. 14; Ex. 1). Mr. Zuckerberg enthusiastically agreed, and dove into completing the "connect" side of the site, or so he told the Founders.

Beginning around mid-November 2003, Mr. Zuckerberg sent Cameron Winklevoss a series of emails saying he had essentially completed the connect side and offering suggestions for the dating side of the site. On November 22, 2003, Mr. Zuckerberg wrote: "I have most of the coding done, and I think that once I get the graphics we'll be able to launch this thing…. it seems like everything is working". (Ex. 2) Yet every time the Founders tried to meet with him to see his progress, he stalled. Getting a meeting was a struggle; Mr. Zuckerberg continually put them off (see Ex. 3). Though the Founders met with Mr. Zuckerberg three times between November 26, 2003

and January 14, 2004 regarding his work on the site, he never showed them his work, yet continued to assure them that he was working diligently to complete the connect side of the site.²

The last meeting was January 14, 2004, during which Mr. Zuckerberg continued to lead the Founders to believe he was still on board and was working to complete the connect side (Ex. 7). What he didn't tell them at that meeting, or at any other time, was that 3 days earlier, on January 11, 2004, he registered the domain name "thefacebook.com". (Ex. 8) The morning of the meeting, he told the Founders he was working on another project with some other people. (Ex. 9) On February 4, 2004, the nature of that project became clear: Mr. Zuckerberg and the other individual Defendants launched a website called thefacebook.com, which is a social networking and dating site for college students that stole the Founders' idea for the Harvard Connection website.

As of April 2005, after its first 15 months of operation, thefacebook.com (which the individual Defendants ran as an unincorporated proprietorship for the first six months of its operation) went from zero users to a reported 2.6 million registered users, operating at 640 of 1400 U.S. colleges and universities, with 50% to 90% market penetration at such schools. (Ex. 10) Today thefacebook.com has a reported 3.5 million users at more than 800 U.S. colleges and universities. (Ex. 11) Thefacebook.com is now one of the top 20 websites in the country, with traffic nearly 80 times that of all college newspapers combined. (Ex. 12) The average user visits thefacebook.com an amazing six times per day. (Ex. 10) As of May 2005, thefacebook.com web pages have been viewed a reported **3 billion** times. (Ex. 10) In mid-April, 2005, venture capitalists promised to pump **$13 million** in capital into

---

² Mr. Zuckerberg wrote: November 30, 2003: "everything will be ready for testing by Monday." (Ex. 4) December 1, 2003: "I have everything working on my system now." (Ex. 5) January 8, 2004: "I've made some of the changes, although not all of them, and they seem to be working on my computer." (Ex. 6)

Thefacebook, Inc., giving it a value of at least $40-$60 million at that time.  (Ex. 13, 10)  Recent estimates put its value at close to $100 million.  (Ex. 14)  The facebook.com's current advertisers, which are its primary revenue source, include Apple, Victoria's Secret, and Paramount Pictures.  (Ex. 10)  On February 7, 2005, thefacebook.com launched at the first European colleges.  (Ex. 15)  On September 2, 2005, thefacebook.com expanded to high schools.  (Ex. 14)

       The Founders were shocked at Mr. Zuckerberg's duplicity and thievery, and sent him a cease and desist letter on February 10, 2004 (Ex. 16).  Mr. Zuckerberg responded, saying he did not start working on thefacebook.com website until after the January 14, 2004 meeting, and denying any wrongdoing.  (Ex. 17)  The media reported that Mr. Zuckerberg said he coded the entire thefacebook.com website in one week's time (a superhuman feat), supposedly in late January and early February 2004 (Ex. 18).  In fact, Mr. Zuckerberg started working on thefacebook.com at least as early as January 12, 2004 (see Confidential Ex. 16 to Plaintiff's Motion to Compel Answers to Interrogatories, D.N. 54), and has admitted in the media to conceiving thefacebook.com around Christmas 2003.  (Ex. 19)

       After the facebook.com website launched on February 4, 2004, the Founders knew they had lost the crucial jump on the market that Mr. Zuckerberg and the other individual Defendants had snatched away.  Harvard Connection still wasn't ready to launch.  They had none of the coding Mr. Zuckerberg said he wrote, and again they were without a programmer to complete the connect side of the site and help them launch it.  In early March 2004, the Founders located and hired a professional website development company, which rewrote the computer code needed to run the site.  The Founders and their web developer were finally able to launch the site, renamed "connectu.com", on May 21, 2004.  Unfortunately, by this time thefacebook.com had a reported 150,000 users at 30 colleges across the U.S. (Ex. 18, 13), and school was ending for the summer.  Connectu.com launched, but there were few students to use it

5

because it was summer vacation.  Compared to thefacebook.com's reported 3.5 million users today (Ex. 11), connectu.com has only about 67,000.

      Plaintiff filed suit September 2, 2004.  Plaintiff served production requests and interrogatories April 7, 2005, and the parties agreed to do a first document exchange on May 31, 2005.  Since that time, Plaintiff has spent much of its time trying to obtain document discovery from Defendants.  Plaintiff spent over six hours of meeting and conferring to convince Defendants to supplement their production.  During the July 26, 2005 meet and confer, the Facebook Defendants agreed to produce additional documents responsive to Request Nos. 42, 44-46, 85-95, 98-101, 102-104 (in part), 105, 107-110, 113, and 169, and were "leaning toward" producing documents responsive to Request Nos. 70-71, 96, and 102-104 (in part).  Plaintiff memorialized such agreement in its July 28, 2005 letter (Ex. 20), to which the Facebook Defendants did not respond until August 19, 2005 (Ex. 21), after they filed their pending motion for protective order.

      On August 10, 2005, Plaintiff asked for a meet and confer regarding the documents the Facebook Defendants promised to produce (Ex. 22), then asked again to meet and confer on August 15, 2005 (Ex. 23) and August 17, 2005 (Ex. 24).  Defendants delayed meeting and conferring until August 22, 2005, after filing their motion for protective order on August 18, 2005.  During that meet and confer, and in a letter dated August 19, 2005 (Ex. 21), the Facebook Defendants reneged on their agreement to produce more documents and said they would not do so until Plaintiff identifies its trade secrets with particularity and either the Court approves it or Defendants deem it adequate.  Plaintiff attempted to convince the Facebook Defendants to produce the documents they promised, citing the identification of trade secrets provided by Plaintiff's 30(b)(6) witness during the August 9, 2005 deposition and the response to Defendants' Interrogatory No. 2, which formalized the deposition testimony, and which Plaintiff intended to serve (and did serve) that very day, which was

6

its due date. The Facebook Defendants again refused. Thus, Defendants' strategy got them all of Plaintiff's documents, and allowed them to withhold documents to which Plaintiff is legitimately entitled.[3]

Although Plaintiff has now identified its trade secrets, the Facebook Defendants and Defendant Saverin refuse to withdraw their motion for protective order and have refused to produce any additional documents.[4] Faced with the facts set forth above and the potential of paying staggering damages, the Facebook Defendants have every incentive to stall and stonewall discovery. The present motion is being filed to break the discovery deadlock.[5]

## II.     **Argument**

Defendants have taken the position that they will not produce any additional documents, even as to production requests with respect to which they previously agreed to produce responsive documents, until this Court decides Defendants' cross-motion for a protective order. However, Plaintiff has already adequately identified its trade secrets under the law. In the Facebook Defendants' August 25, 2005 letter (Ex.

---

[3]     Defendants' strategy has also gotten them interrogatory responses and a 30(b)(6) deposition.

[4]     The Facebook Defendants filed the original cross-motion for protective order on August 18, 2005. On September 6, 2004, Defendant Saverin filed a Notice of Joining Cross-Motion, requesting that any benefit of the requested motion for protective order also run to Defendant Saverin.

[5]     The Facebook Defendants should be able to produce the documents they are withholding immediately. The Facebook Defendants stated in their August 19, 2005 letter that "the Facebook Defendants continue in good faith to attempt to locate and identify responsive documents," and "[w]e are attempting to identify what additional documents, if any, exist that are responsive to the categories identified in your letter of July 28, 2005 and will respond accordingly when we are able to parse the materials into the requests you cited. Where no documents exist at all, we will in fact supplement our prior responses and so state." (Ex. 21) In their August 22, 2005 letter, they stated that "the Facebook Defendants continue to search for relevant information generated both prior to and after May 21, 2004." (Ex. 25)

26), and in their Reply in Support of Cross-Motion for Protective Order (which is really an unauthorized surreply to Plaintiff's reply to the Facebook Defendants' opposition to Plaintiff's motion to compel hard drive images and post-May-21, 2004 documents, and which still ignores Plaintiff's arguments, focuses solely on alleged burden to the corporate Defendant, and never says that images of the individual <u>and</u> corporate Defendants' electronic memory devices will not yield the missing Harvard Connection and/or thefacebook.com code), Defendants still contend that Plaintiff's trade secret identification is inadequate.  On September 8, 2005, they filed a motion to compel on this issue.  Defendants' arguments that Plaintiff has not adequately identified its trade secrets are incorrect and inconsistent with the law.  The trade secret combination Plaintiff identified in response to Interrogatory No. 2 is sufficient under Massachusetts law for a secret of this type.  Defendants stole Plaintiff's idea and turned it into a $100 million business in 19 months, and now claim that the idea was nothing.  Defendants' strategy is to trivialize the combination by dissecting the individual components, and to try Plaintiff's trade secret case in a discovery motion.  Plaintiff will save its arguments for its opposition to Defendants' September 8, 2005 motion to compel a different response to Interrogatory No. 2  (Plaintiff also addressed this issue in its reply to the Facebook Defendants' opposition to Plaintiff motion to compel hard drive images and post-May 21, 2004 documents).

       Here, Plaintiff requests that the Court order the Facebook Defendants to produce immediately the documents that they previously agreed to produce or were "leaning toward" producing.

       A.    **Documents the Facebook Defendants Previously Agreed to Produce**
             <u>Prior to the Filing of the Cross-Motion for Protective Order</u>

       The following are the production requests that the Facebook Defendants agreed to produce during the meet and confer conferences (see Ex. 20), and that they should

be ordered to produce immediately.[6]  Because the Facebook Defendants agreed to produce such documents, Plaintiff does not provide Defendants' responses and objections, or arguments as to their relevance.

### 1. Request Nos. 42 and 44-46

**Request for Production No. 42**

All documents relating in any way to any matters involving the Harvard Administrative Board and Mark Zuckerberg, including but not limited to any matter involving facemash and/or Harvard Connection.

**Request for Production No. 44**

All documents relating in any way to any matters involving the Harvard Administrative Board and Dustin Moskovitz.

**Request for Production No. 45**

All documents relating in any way to any matters involving the Harvard Administrative Board and Andrew McCollum.

**Request for Production No. 46**

All documents relating in any way to any matters involving the Harvard Administrative Board and Christopher Hughes.

With respect to Production Request Nos. 42 and 44-46, the Facebook Defendants agreed to produce responsive documents with respect to Harvard Connection and thefacebook.com.  A separate motion will address the other subject areas of these requests, as to which Defendants refused to produce responsive documents.

---

[6] Plaintiff separately discusses production requests (in Section B below) with respect to which the Facebook Defendants indicated they were "leaning toward" producing responsive documents.

9

### 2. *Request Nos. 85-95*

**Request for Production No. 85**

All documents sufficient to identify, and relating to, daily, monthly, and annual traffic to the thefacebook.com website, from its launch date to the date of Defendants' response.

**Request for Production No. 86**

All documents sufficient to identify the universities, colleges, and other schools (by name, city, state, and country if other than the U.S.A.) at which the thefacebook.com website is available or operational, on a monthly basis from August 2003 to the date of Defendants' response to this request.

**Request for Production No. 87**

All documents sufficient to identify the number of persons registered to use the thefacebook.com website, in total and broken out by university, college, or other school, on a daily basis from August 2003 to the date of Defendants' response to this request.

**Request for Production No. 88**

All documents sufficient to identify the number of hits per day to the thefacebook.com website, in total and broken out by university, college, or other school, from August 2003 to the date of Defendants' response to this request.

**Request for Production No. 89**

All documents sufficient to identify the number of hits per day to the thefacebook.com website by the same users, in total and broken out by university, college, or other school, from August 2003 to the date of Defendants' response to this request.

**Request for Production No. 90**

All documents sufficient to identify, and relating to, Thefacebook, Inc.'s fixed costs, on a monthly basis, from its launch date to the date of Defendants' response.

**Request for Production No. 91**

All documents sufficient to identify, and relating to, Thefacebook, Inc.'s variable costs, on a monthly basis, from its launch date to the date of Defendants' response.

**Request for Production No. 92**

All documents sufficient to identify, and relating to, Thefacebook, Inc.'s overhead, on a monthly basis, from its launch date to the date of Defendants' response.

**Request for Production No. 93**

All documents sufficient to identify, and relating to, Thefacebook, Inc.'s monthly and annual revenue, from its launch date to the date of Defendants' response.

**Request for Production No. 94**

All documents sufficient to identify, and relating to, Thefacebook, Inc.'s monthly and annual gross profit, from its launch date to the date of Defendants' response.

**Request for Production No. 95**

All documents sufficient to identify, and relating to, Thefacebook, Inc.'s monthly and annual net profit, from its launch date to the date of Defendants' response.

With respect to Production Request Nos. 85-95, the Facebook Defendants agreed to produce responsive documents.

3.    *Request Nos. 98-101*

**Request for Production No. 98**

All documents sufficient to identify, and relating to, all bank and other financial institution accounts of Thefacebook, Inc.

**Request for Production No. 99**

All documents sufficient to identify all tangible and intangible assets of Thefacebook, Inc., including real property, personal property (including but not limited to computers and servers), intellectual property, cash on hand, letters of credit, savings, investments, stocks, bonds, certificates of deposit, mutual funds, equities, etc.

**Request for Production No. 100**

All documents sufficient to identify, and relating to, all debt of Thefacebook, Inc., and of the individual Defendants relating to the thefacebook.com website, on a monthly basis from August 2003 to the date of Defendants' response to this request.

**Request for Production No. 101**

All documents sufficient to identify, and relating to, the value of Thefacebook, Inc. and the thefacebook.com website.

With respect to Production Request Nos. 98-101, the Facebook Defendants agreed to produce responsive documents.

### 4. *Request Nos. 102-104*

**Request for Production No. 102**

All documents constituting or relating to Thefacebook, Inc.'s Articles of Incorporation, Bylaws, corporate name registrations in any state, fictitious name registrations in any state, and licenses to do business in any state.

**Request for Production No. 103**

All documents constituting or relating to Thefacebook, Inc.'s corporate records, including but not limited to records and minutes of directors' meetings, other business meetings, corporate resolutions, other corporate filings with any state on behalf of the corporation or any employee, payroll records, financial records, stock certificates, contracts, loan documents, financing documents and financing statements, mortgages, schedules of corporate assets, and shareholder documents.

**Request for Production No. 104**

All documents constituting or relating to contracts between any nonparty and the Thefacebook, Inc., or between any nonparty and any other Defendant or any related person or entity relating to Thefacebook, Inc. or the thefacebook.com website.

With respect to Production Request Nos. 102-104, the Facebook Defendants agreed to produce responsive documents but did not specify what documents they expected to produce, and said they were leaning toward producing other documents (discussed in Section B, *infra*).

### 5. *Request Nos. 105, 107-109, 110, 113, and 169*

**Request for Production No. 105**

All documents constituting or relating to plans or strategies for Thefacebook, Inc. or the thefacebook.com website, including but not limited to financing plans, business plans, strategic plans, investment or financing plans, and/or development plans.

**Request for Production No. 107**

All documents sufficient to identify the owners of Thefacebook, Inc. and the facebook.com website, and their respective ownerships shares, equity, and rights

therein, and their salaries, dividends, and/or other monetary or nonmonetary compensation.

**Request for Production No. 108**

All documents sufficient to identify, and relating to, all locations from which the website thefacebook.com has been operated since its inception to the date of the response to this request.

**Request for Production No. 109**

All documents sufficient to identify, and relating to, the servers and location thereof used by the thefacebook.com website.

**Request for Production No. 110**

All documents sufficient to identify, and constituting, all Frequently Asked Questions ("FAQ"), and answers thereto, posted on the thefacebook.com website from August 2003 to the date of Defendants' response to this request.

**Request for Production No. 113**

All documents sufficient to identify the demographics and consumer preferences of users of the thefacebook.com website, including but not limited to the age, gender, level of education, and buying and product preferences and patterns.

**Request for Production No. 169**

All documents transmitted or provided to, reviewed, considered, or prepared by any and all expert witnesses engaged by all or any of the Defendants.

With respect to Production Request Nos. 105, 107-109, 110, 113, and 169, the Facebook Defendants agreed to produce responsive documents.

For all of the production requests listed above, the Facebook Defendants agreed to produce responsive documents, then reneged when they filed their motion for protective order. The Facebook Defendants should be ordered to produce such responsive documents immediately.

### B. Documents The Facebook Defendants Previously Indicated They Were "Leaning Toward" Producing

With respect to the following production requests, the Facebook Defendants stated during the July 26, 2005 meet and confer conference that they were "leaning toward" producing responsive documents. After filing their motion for protective order, they reneged and now refuse to produce responsive documents. The Facebook Defendants should be compelled to produce documents responsive to each of these requests, immediately.

#### *1. Request Nos. 70-71*

**Request for Production No. 70**

All documents sufficient to identify, and relating to, all persons and companies who have expressed any interest in investing in any way in Thefacebook, Inc. and/or thefacebook.com, and/or who have invested in Thefacebook, Inc. and/or thefacebook.com.

**Response to Request for Production No. 70**

Defendants object to this request as overbroad, including as to time period and seeking irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that this request seeks information beyond the scope of a proper request for production of documents, and purports to impose on Defendants an obligation to provide information in the nature of an interrogatory, which has not been properly propounded as an interrogatory, and further exacerbates Plaintiff's use of interrogatories in excess of the number permitted by Rule. Defendants further object to this request to the extent that it calls for Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information.

**Request for Production No. 71**

All documents sufficient to identify, and relating to, any and all investors, potential investors, loans (including but not limited to loans from any of the individual Defendants or from any nonparty, including Peter Thiel), investments, gifts (including but not limited to money, concert or other sports or entertainment tickets, meals, parties, and vehicles), contributions, offers (including but not limited to investment offers and/or offers to purchase or buy out all or part of Thefacebook, Inc. or its business, and/or the rights therein held by any of the individual Defendants, and the persons or companies who

14

made such offers), or other forms of financing contributed to or received by Thefacebook, Inc., the thefacebook.com website, and/or any of the individual Defendants for use in connection with or related to the thefacebook.com website, and all meetings with potential investors or investors (including dates, locations, participants, and the purpose of such meetings), on a monthly basis from August 2003 to the date of Defendants' response to this request.

**Response to Request for Production No. 71**

Defendants object to this request as compound, overbroad, unduly burdensome, and seeking irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object that this request seeks information beyond the scope of a proper request for production of documents, and purports to impose on Defendants an obligation to provide information in the nature of an interrogatory, which has not been properly propounded as an interrogatory, and further exacerbates Plaintiff's use of interrogatories in excess of the number permitted by Rule. Defendants further object to this request to the extent that it calls for Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information.

During the July 26, 2005 meet and confer conference, the Facebook Defendants stated that they were "leaning toward" producing documents responsive to Request Nos. 70-71. Documents responsive to Request Nos. 70-71 are directly relevant to the value of thefacebook.com website and Thefacebook, Inc., the growth and success of thefacebook.com website and Thefacebook, Inc., Defendants' profits from the unlawful acts alleged in the First Amended Complaint, and Plaintiff's damages. The Facebook Defendants' objection that the requests call for Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information is improper in light of the Stipulated Protective Order entered in this case, to which the parties are bound. The Facebook Defendants should be compelled to produce responsive documents immediately.

### 2. Request No. 96

**Request for Production No. 96**

All state and/or federal income tax returns filed by each of the Defendants for the years 2003, 2004, and 2005.

**Response to Request for Production No. 96**

Defendants object to this request as seeking irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent that it invades Defendants' privacy and calls for confidential and privileged information.

During the July 26, 2005 meet and confer conference, the Facebook Defendants stated that they were "leaning toward" producing documents responsive to Request No. 96. The state and federal income tax returns filed by each of the Defendants for 2003 through 2005 are relevant to Defendants' profits from the unlawful acts alleged in the First Amended Complaint, and Plaintiff's damages. The individual Defendants operated thefacebook.com website as an unincorporated proprietorship for six months before they incorporated. The Facebook Defendants' objection that the request calls for Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information is improper in light of the Stipulated Protective Order entered in this case, to which the parties are bound. The Facebook Defendants should be compelled to provide responsive documents immediately.

### 3. Request Nos. 102-104

**Request for Production No. 102**

All documents constituting or relating to Thefacebook, Inc.'s Articles of Incorporation, Bylaws, corporate name registrations in any state, fictitious name registrations in any state, and licenses to do business in any state.

**Response to Request for Production No. 102**

Defendants object to this request as seeking irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the general objection set forth above and subject to the specific objection stated herein, Defendants respond as follows: Defendants agree to produce TheFacebook, Inc.'s corporate charter and bylaws to the extent such documents exist in their possession and are located by a reasonable search.

**Request for Production No. 103**

All documents constituting or relating to Thefacebook, Inc.'s corporate records, including but not limited to records and minutes of directors' meetings, other business meetings, corporate resolutions, other corporate filings with any state on behalf of the corporation or any employee, payroll records, financial records, stock certificates, contracts, loan documents, financing documents and financing statements, mortgages, schedules of corporate assets, and shareholder documents.

**Response to Request for Production No. 103**

Defendants object to this request as compound, overbroad, including as to time period, unduly burdensome, and seeking irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent that it calls for Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information. Without waiving the general objections set forth above and subject to the specific objections stated herein, Defendants respond as follows: Defendants refer Plaintiff to Defendants' Response to Request for Production Nos. 90 through 95, 97, 100,101, and 104. Further answering, Defendants agree to produce TheFacebook, Inc.'s corporate charter and bylaws to the extent such documents exist in their possession and are located by a reasonable search.

**Request for Production No. 104**

All documents constituting or relating to contracts between any nonparty and the Thefacebook, Inc., or between any nonparty and any other Defendant or any related person or entity relating to Thefacebook, Inc. or the thefacebook.com website.

**Response to Request for Production No. 104**

Defendants object to this request as compound, overbroad, including as to time period, unduly burdensome, and seeking irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this request to the extent that it calls for Defendants' confidential, proprietary, commercially sensitive, and/or trade secret information. Without waiving the general objections set forth above and subject to the specific objections stated herein, Defendants respond as follows: Defendants will produce a sample of responsive contracts to the extent such documents exist in their possession and are located by a reasonable search. Further

answering, Defendants refer Plaintiff to thefacebook.com web page: http://www.thefacebook.com/terms.php.

With respect to Request Nos. 102-104, the Facebook Defendants stated during the July 26, 2005 meet and confer conference that Plaintiff could expect to receive more documents, and that they were leaning toward producing additional documents. Unfortunately, the Facebook Defendants did not specify which documents they were referring to.

The documents and things sought by Request No. 102 are relevant to whether Thefacebook, Inc. is properly doing business, and whether the individual Defendants can hide behind the corporate shield. Request Nos. 103 and 104 are intended to capture corporate documents of Thefacebook, Inc. and contracts between any of the Defendants and any nonparty. For example, Defendants' payroll records, financial records, stock certificates, contracts, loan documents, financing documents and financing statements, mortgages, schedules of corporate assets, and shareholder documents sought by Request No. 103 are relevant to the value of Thefacebook, Inc. and thefacebook.com website, and to calculating Defendants' profits and Plaintiff's damages. Defendants' corporate records are precisely the type of place that one would expect to find nonprivileged statements and other evidence relating directly to the claims of this lawsuit. Defendants' contracts (sought by Request Nos. 103 and 104) would include its contracts with server providers, which may help Plaintiff find the missing thefacebook.com code (for example, such contracts would identify the server providers at any particular point in time, and should specify the providers' obligations to backup the code). Such contracts entered in the first six months of thefacebook.com's operations would also contribute to supporting the individual Defendants' personal

liability. These are only a few of examples of the relevance of such documents. Thus, such documents are relevant to the claims and defenses of the suit, and should be produced immediately.

### III.  Conclusion

For these reasons, Plaintiff respectfully urges the Court to order the Facebook Defendants to produce documents responsive to Production Requests Nos. 42, 44-46, 70-71, 85-96, 98-105, 107-110, 113, and 169, immediately.

Respectfully submitted,

| | |
|---|---|
| DATED:  September 9, 2005 | /s/ Troy E. Grabow_____<br>Lawrence R. Robins (BBO# 632610)<br>Jonathan M. Gelchinsky (BBO# 656282)<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, L.L.P.<br>55 Cambridge Parkway<br>Cambridge, MA  02142<br>Telephone:  (617) 452-1600<br>Facsimile:   (617) 452-1666<br>larry.robins@finnegan.com<br>jon.gelchinsky@finnegan.com<br><br>John F. Hornick (*pro hac vice*)<br>Margaret A. Esquenet (*pro hac vice*)<br>Troy E. Grabow (*pro hac vice*)<br>FINNEGAN, HENDERSON, FARABOW,<br>  GARRETT & DUNNER, L.L.P.<br>901 New York Avenue N.W.<br>Washington, DC  20001<br>Telephone:  (202) 408-4000<br>Facsimile:   (202) 408-4400<br><br>Attorneys for Plaintiff and Counterclaim Defendants |