**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, | |
| Plaintiff, | CIVIL ACTION NO. 1:04-cv-11923 (DPW) |
| v. | |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC., | |
| Defendants. | |
| MARK ZUCKERBERG and THEFACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
| Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, | |
| Additional Counterdefendants. | |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT CONNECTU LLC'S**
**RESPONSES TO DEFENDANT AND COUNTERCLAIM PLAINTIFF**
<u>**THEFACEBOOK, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-17)**</u>

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff

ConnectU LLC ("ConnectU") objects and responds as follows to Defendant and

Counterclaim Plaintiff TheFaceBook, Inc.'s ("TFB") First Set of Interrogatories (Nos. 1-

17):

Page 1 of 31

CONFIDENTIAL INFORMATION

**GENERAL OBJECTIONS**

ConnectU sets forth the following general objections to the "Definitions,"

"Instructions," and interrogatories:

1.    ConnectU objects to the definition of ConnectU in paragraph J of the

Definitions for purposes of the interrogatories to the extent that the definition is not

limited to the single corporate entity ConnectU LLC.  The interrogatory responses will

cover information known or reasonably available to the single corporate entity ConnectU

LLC and its predecessors, subject to all other objections.  ConnectU objects to the

instruction to respond with specific information relating to ConnectU and Harvard

Connection separately.

2.    ConnectU objects to the Definitions to the extent they are inconsistent with

Local Rule 26.5.

3.    ConnectU incorporates by reference its General Objections as set forth in

its Responses to TFB's First Request for the Production of Documents and Things.

4.    ConnectU objects generally to TFB's Instructions and interrogatories to

the extent they seek to impose obligations greater than those required by the Federal

Rules of Civil Procedure.

5.    ConnectU objects to the interrogatories to the extent they seek information

or documents falling within the scope of the attorney-client, work-product, and/or other

privileges, or information or documents containing or reflecting the mental impressions,

conclusions, opinions, or legal theories of ConnectU's attorneys or other representatives

concerning the pending action.

CONFIDENTIAL INFORMATION

6.    ConnectU objects to the interrogatories to the extent they seek (a) information unavailable to ConnectU; or (b) information in the public domain and/or equally available to TFB's counsel; or (c) information already within TFB's possession or knowledge.

7.    ConnectU objects to the interrogatories to the extent that they purport to require ConnectU to conduct discovery of or to investigate third persons, or to reply on behalf of persons or corporations over whom ConnectU exercises no control or on whose behalf ConnectU has no authority to respond.

8.    ConnectU objects to the interrogatories to the extent that they seek information in contravention of the Stipulated Protective Order.

9.    ConnectU objects to the interrogatories to the extent that they do not relate to any claim or defense or seek information or documents that are neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

10.    ConnectU objects to the interrogatories to the extent they prematurely seek identification or designation of witnesses or exhibits for trial.

11.    ConnectU objects to the interrogatories to the extent they prematurely seek information.  ConnectU has not completed its investigation of this case and has not completed discovery or preparation for trial.  The responses contained herein are based on such information as presently available to and specifically known to ConnectU.  It is anticipated that further discovery, independent investigation, legal research, and analysis will supply additional facts, add additional facts to the known facts, as well as establish entirely new factual conclusions and legal contentions, all of

CONFIDENTIAL INFORMATION

which may lead to substantial additions to, changes in, and variations from the responses herein set forth.

12.     ConnectU objects to the interrogatories to the extent they are vague, indefinite, overbroad, and unduly burdensome.

13.     ConnectU objects to the interrogatories to the extent they are duplicative of other discovery.

14.     ConnectU objects to the interrogatories to the extent they call for expert testimony.

15.     ConnectU objects to the interrogatories to the extent they contain numerous subparts and pose multiple questions.

16.     To the extent specific general objections are cited to specific interrogatories, those citations are provided because they are believed to be particularly applicable to the interrogatory and are not to be construed as a waiver of any other general objection applicable to information and/or documents falling within the scope of the interrogatory.

## SPECIFIC OBJECTIONS AND RESPONSES

Subject to and without waiving its General Objections, which are incorporated herein by reference, ConnectU objects and responds to Defendant TFB's interrogatories as follows:

CONFIDENTIAL INFORMATION

**Interrogatory No. 1:**

Identify with precision and specificity all facts in support of Your contention that any HarvardConnection Code or ConnectU Code is infringed.

**Response to Interrogatory No. 1:**

In addition to the General Objections set forth above, ConnectU objects to this interrogatory to the extent it requests testimony by ConnectU as to any source code used by the Defendants for thefacebook.com website or produced by Defendants, and to the extent it requires access by Plaintiff to any documents designated by Defendants as confidential under the Protective Order.  Because Defendants have designated source code and documents they have produced as Confidential Information under the Stipulated Protective Order, officers and agents of ConnectU have not had access and cannot have access to any such source code or documents.  ConnectU also objects to this interrogatory as premature and as partially unanswerable at this time because Defendants to date have not produced any Harvard Connection source code that Mr. Zuckerberg or the other Defendants had access to or worked on, any prelaunch source code for thefacebook.com website, or any source code for thefacebook.com website, in uncorrupted form, from the time of launch to October 2004.  Defendants have only produced uncorrupted versions of thefacebook.com source code from October and December 2004, approximately 8 months after the February 2004 launch of thefacebook.com website.  ConnectU also objects to this interrogatory as premature and as calling for expert testimony which will be provided in an expert report by the deadline set by the Court.  Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

CONFIDENTIAL INFORMATION

Subject to the above general and specific objections, ConnectU responds as follows:

In November 2003, the founders of Harvard Connection and ConnectU contacted Mr. Zuckerberg to assist in developing the code for Harvard Connection.  Mr. Zuckerberg agreed to develop the code necessary for the connect side of the Harvard Connection website to function and to assist in the development and design of the website.  The Harvard Connection founders provided Mr. Zuckerberg with the existing code, showed Mr. Zuckerberg the existing site, and discussed various functionalities of the website, as well as the business model for the website.

Mr. Zuckerberg delayed completing the portions of the Harvard Connection website that he was supposed to be developing so that the website could launch, yet led the founders to believe that he had completed his work or was near to doing so, and that he was continuing to work on the site.  For example, on January 8, 2004, Zuckerberg told Cameron Winklevoss that he had made some changes to the site and that they appeared to be working, and would upload them to the live site once he completed the computer programming.  On January 14, 2004, Mr. Zuckerberg met with Cameron Winklevoss to discuss the status of the website.  Mr. Zuckerberg did not mention to Cameron Winklevoss that he had registered the domain name thefacebook.com three days earlier, on January 11, 2004, or mention anything concerning thefacebook.com website.  On February 4, 2004, Defendants launched thefacebook.com website.

On February 12, 2004, Mr. Zuckerberg represented that he began working on thefacebook.com website after the January 14, 2004 meeting, not before.  In a media

CONFIDENTIAL INFORMATION

article, Mr. Zuckerberg was quoted as saying that he coded thefacebook.com website in one week.  Mr. Zuckerberg has never denied making such statement.  It would not be possible for Mr. Zuckerberg to write and test all of the code for thefacebook.com website and design and complete the user interface in one week, or even after the January 14, 2004 meeting and before the launch of thefacecbook.com website, as this is too short of a time to write and test the entire code and design and complete the entire thefacebook.com website.  Based on his known skills, it is also unlikely that Mr. Zuckerberg was able to prepare or complete the graphics for thefacebook.com website, especially in the short time between January 14, 2004 and launch, or in the week prior to launch.  Thefacebook.com website is of the same nature and purpose as the Harvard Connection website was and was planned to be, and shares many of the same features and functionality as contained in and envisioned for the Harvard Connection website. The code and business plan for performing or including these features and functionality were available to Mr. Zuckerberg and it would have been natural and easy for him and/or the other Defendants to use such code or other copyrighted aspects of Harvard Connection for thefacebook.com website.  It would have also been natural and easy for Defendants to use for thefacebook.com website the code Mr. Zuckerberg said he wrote (or was writing) for the Harvard Connection website beginning in November 2003.

**Interrogatory No. 2:**

Identify with precision and specificity each and every alleged trade secret ConnectU contends was misappropriated by Defendants.

**Response to Interrogatory No. 2:**

In addition to the General Objections set forth above, ConnectU objects to this interrogatory to the extent it requests testimony by ConnectU as to any source code

CONFIDENTIAL INFORMATION

used by the Defendants for thefacebook.com website or produced by Defendants, and to the extent it requires access by Plaintiff to any documents designated by Defendants as confidential under the Protective Order. Because Defendants have designated source code and documents they have produced as Confidential Information under the Stipulated Protective Order, officers and agents of ConnectU have not had access and cannot have access to any such source code and documents. ConnectU also objects to this interrogatory as premature and as partially unanswerable at this time because Defendants to date have not produced any Harvard Connection source code that Mr. Zuckerberg or the other Defendants had access to or worked on, any prelaunch source code for thefacebook.com website, or any source code for thefacebook.com website, in uncorrupted form, from the time of launch to October 2004. Defendants have only produced uncorrupted versions of thefacebook.com source code from October and December 2004, approximately 8 months after the February 2004 launch of thefacebook.com website. ConnectU also objects to this interrogatory as premature and as calling for expert testimony which will be provided in an expert report by the deadline set by the Court. ConnectU also objects to this interrogatory as premature and as calling for expert testimony which will be provided in an expert report by the deadline set by the Court. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

CONFIDENTIAL INFORMATION

The trade secrets misappropriated by Defendants include, but are not limited to, the following, in combination:

1. The entire project, enterprise, and ideas of bringing an online community in the form of a multi-purpose dating and social network website to the college/university level, and enabling students, alumni, and employers to connect in various user-defined ways and for various user-defined purposes on such network, and implementing such ideas, until such time that such website were to be launched by the founders.

2. The entire project, enterprise, and idea of bringing such an online community and network to individual colleges and universities, and then branching out to additional colleges and universities and linking them together, and implementing such ideas, until such time that such website were to be launched by the founders, and until such time as the website were to be launched at other schools and linked to existing schools.

3. Requiring users to have a .edu email address to access the site and become part of the community and network, for security and quality control, until such time that such website were to be launched by the founders.

4. All information, fields, features, and functions provided on the website, until such time that such website were to be launched by the founders, including without limitation:

   a. a social network comprised or nodes and ties;

CONFIDENTIAL INFORMATION

b. information fields, including house, dorm, dating preferences, dating intention, interests, thesis, major, education, and other fields relating to the college environment;

c. a registration page that confirms the user has a .edu address, then permits access to the site and enables the user to build a profile and use the site's functions;

d. enabling the user to create profiles that could be used for functionality relating to dating or connecting for other social or professional reasons;

e. enabling users to see other users' profiles;

f. enabling the user to perform user-defined searches or functions, and to connect with other users in user-defined ways through such searches and functionality;

g. enabling the user to save and/or visualize connections;

h. a process that determines whether a user's email address will be provided to another user;

i. a function enabling a third party to make a connection between other users;

j. providing users with information, such as information about nightclubs and bands;

k. enabling users to upload the users' thesis and resume.

5. The entire project, enterprise, and idea of designing and launching a website with such combination of information, fields, features, and functions, until such time that such website were to be launched by the founders.

CONFIDENTIAL INFORMATION

6.      The idea of launching a website embodying the pre-launch trade secrets set forth in this response before any competitive website launched.

7.      The layout, design, and user interface of the Harvard Connection website screens, until such time that such website were to be launched by the founders.

8.      The Harvard Connection code itself, as well as the functionality of the code. The Harvard Connection code would remain a trade secret after launch. The surface functionality of the code, as perceivable by users of the website, would not be a trade secret after such time that such website was launched by the founders. The underlying functionality of the code, not perceivable to users of the website, would remain a trade secret after launch.

9.      The plan to monetize the website after it launched and built a user base, such as through advertising revenue directed to the college student demographic.

**Interrogatory No. 3:**

Identify with precision and specificity all facts in support of Your contention that any trade secret was misappropriated, including but not limited to a description of the precise manner in which each alleged trade secret was allegedly misappropriated.

**Response to Interrogatory No. 3:**

In addition to the General Objections set forth above, ConnectU objects to this interrogatory to the extent it requests testimony by ConnectU as to any source code used by the Defendants for thefacebook.com website or produced by Defendants, and to the extent it requires access by Plaintiff to any documents designated by Defendants as confidential under the Protective Order. Because Defendants have designated

CONFIDENTIAL INFORMATION

source code and documents they have produced as Confidential Information under the

Stipulated Protective Order, officers and agents of ConnectU have not had access and

cannot have access to any such source code or documents. ConnectU also objects to

this interrogatory as premature and as partially unanswerable at this time because

Defendants to date have not produced any Harvard Connection source code that Mr.

Zuckerberg or the other Defendants had access to or worked on, any prelaunch source

code for thefacebook.com website, or any source code for thefacebook.com website, in

uncorrupted form, from the time of launch to October 2004. Defendants have only

produced uncorrupted versions of thefacebook.com source code from October and

December 2004, approximately 8 months after the February 2004 launch of

thefacebook.com website. ConnectU also objects to this interrogatory as premature

and as calling for expert testimony which will be provided in an expert report by the

deadline set by the Court. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this

interrogatory as premature to the extent it seeks an opinion or contention that relates to

fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as

follows: The same facts that support Plaintiff's contentions that Defendants copied the

Harvard Connection code, as set forth in response to Interrogatory No. 1, also support

the contention that Defendants misappropriated the trade secrets of ConnectU when

they launched thefacebook.com website. In addition to such facts, the Harvard

Connection trade secrets were disclosed to Mr. Zuckerberg with the expectation that

they would be kept confidential and would not convert them to his own competitive use,

CONFIDENTIAL INFORMATION

and Mr. Zuckerberg knew or should have known that such information was secret and proprietary to the Harvard Connection founders.

Mr. Zuckerberg launched thefacebook.com without notifying any of the founders, and despite the fact that his site would be a direct competitor of the Harvard Connection website and is of the same nature and purpose as the Harvard Connection website was and was planned to be, and shares many of the same features and functionality as contained in and envisioned for the Harvard Connection website. Thefacebook.com website contains or embodies, and/or disclosed to the public, the combination of trade secrets identified in response to Interrogatory No. 2, and/or destroyed their secrecy for the founders and the first-to-market advantage that the secrecy of the Harvard Connection website project, enterprise, and ideas provided prior to thefacebook.com's launch.

## Interrogatory No. 4:

For each alleged trade secret ConnectU contends that Defendants misappropriated, identify all ConnectU's products that incorporate each such alleged trade secret, including but not limited to the Product version number, website release date, and any other first public disclosure.

## Response to Interrogatory No. 4:

Pursuant to Fed. R. Civ. P. 33(c), Plaintiff objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact. ConnectU also objects to this interrogatory as not seeking information that is reasonably calculated to lead to the discovery of admissible evidence.

CONFIDENTIAL INFORMATION

Subject to the above general and specific objections, ConnectU responds as follows:

Each version of the ConnectU site, which was first launched on or about May 21, 2005, and which is found at connectu.com, incorporates the trade secrets set forth in response to Interrogatory No. 2, in combination. However, much of such information was no longer secret, except for the Harvard Connection code and its functionality not perceivable to website users, after thefacebook.com launched and destroyed such secrecy and the founders' first-to-market advantage. The first public disclosure of the combination of trade secrets identified in response to Interrogatory No. 2 was made by the individual Defendants when they launched thefacebook.com website.

**Interrogatory No. 5:**

Identify all measures taken by ConnectU and HarvardConnection to preserve the confidentiality of the alleged trade secrets it contends Defendants misappropriated, as well as all known breaches of confidentiality by any Person other than Defendants, including, without limitation, any disclosure to any third party by Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, or other agents of ConnectU or HarvardConnection.

**Response to Interrogatory No. 5:**

In addition to the General Objections set forth above, ConnectU objects to this interrogatory as posing multiple questions. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

CONFIDENTIAL INFORMATION

The Harvard Connection founders took various measures to preserve the confidentiality of the trade secrets misappropriated by Defendants. The founders ensured that there was an understanding with each person to whom the trade secrets were disclosed that the information disclosed was confidential, and/or disclosed only a limited part of the trade secrets to each such person, and/or disclosed trade secret information only under circumstances that assured that the necessary degree of secrecy would be maintained. For example, a generalized description of the idea of the Harvard Connection website was disclosed to several potential employers, who are expected to maintain applicant information confidentially and who in fact do so, and who were not potential competitors of the Harvard Connection website, which was expected to launch imminently to such disclosures. Other than such limited disclosures under circumstances likely to maintain the necessary degree of secrecy to the founders, the founders did not disclose trade secrets to anyone outside of close trusted friends, immediate family, and programmers. The founders assured that such persons understood that this information was confidential, expressly and/or based on the circumstances of the disclosure. Plaintiff is aware of no breaches of confidentiality by any person other than Defendants.

**Interrogatory No. 6:**

Identify all facts in support of Your contentions: (i) that HarvardConnection had a for-profit or related commercial purpose (specifying the date for which each given fact supports the existence of a for-profit purpose); and (ii) that any such for-profit purpose of HarvardConnection was communicated to any of the Defendants (specifying the date of the Communication), including, without limitation, any Communication of any business plan or related document to Mark Zuckerberg.

CONFIDENTIAL INFORMATION

**Response to Interrogatory No. 6:**

Pursuant to Fed. R. Civ. P. 33(c), Plaintiff objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

From the beginning of the Harvard Connection enterprise, the founders envisioned initially opening up the website at Harvard University first and then branching out to other schools. The founders discussed and planned that after the site obtained sufficient usage, profit-making opportunities, such as advertising, would be implemented. Operating a high-traffic social networking site would have been economically prohibitive unless it was run on a for-profit basis. By fall of 2003, the founders and Mr. Zuckerberg were discussing a business model that included advertising revenue. One of the models the founders had bookmarked and discussed with Mr. Zuckerberg was the friendster.com website, which obtains significant revenue from advertising. Also, the founders clearly told Mr. Zuckerberg their goal of launching the site as soon as possible, before another site launched that could take away its first-mover advantage. Defendants recognized this first-mover advantage in paragraph 16 of Defendants' Answer to the First Amended Complaint. In addition to advertising, the founders and Mr. Zuckerberg developed a plan for working with nightclubs to obtain discounts for members. The founders and Mr. Zuckerberg discussed promotional efforts that would have required significant expense, such as a launch party for the Harvard Connection site. The Harvard Connection founders' business plan and plan to

CONFIDENTIAL INFORMATION

market the website was disclosed to Mr. Zuckerberg in emails between October 2003 and mid-January 2004, during meetings between Mr. Zuckerberg and the founders, and between Victor Gao and Mr. Zuckerberg, and by disclosing to Mr. Zuckerberg the Harvard Connection source code and website, which embodied the Harvard Connection business plan.

The for-profit purpose was communicated to Mr. Zuckerberg in various emails, during the in person meetings, and in various telephone conversations. The business related possibilities of the Harvard Connection website were made clear to Mr. Zuckerberg from the outset of his participation, both in writing and orally. For example, in one of the initial communications with Mr. Zuckerberg, Divya Narendra wrote on November 3, 2003: "[t]his should be a really rewarding experience, especially if you have an entrepreneurial personality." In various other emails, Mr. Zuckerberg was apprised and discussed a plan for obtaining discounts from nightclubs for members. Mr. Zuckerberg also criticized the founders' business plan, stating on February 12, 2004 that he had expressed doubts when he met with the Harvard Connection founders in January 2004 about the alleged "lack of promotion that would go on to successfully launch the website, etc."

**Interrogatory No. 7:**

Identify all facts in support of Your contention that HarvardConnection is a predecessor in interest to ConnectU.

**Response to Interrogatory No. 7:**

In addition to the General Objections set forth above, ConnectU objects to this interrogatory to the extent that it infers that Harvard Connection and ConnectU are not the same business enterprise. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to

Page 17 of 31

CONFIDENTIAL INFORMATION

this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

At the time the founders of ConnectU developed many of the ideas for ConnectU, they were calling the project by its expected website name -- Harvard Connection. After launch of thefacebook.com website by Mr. Zuckerberg, they changed the name of the future website to connectu.com. They also incorporated as ConnectU LLC on April 6, 2004. Pursuant to Fed. R. Civ. P. 33(d), ConnectU refers Defendants to the LLC Operating Agreement produced by ConnectU at C011285-C011335, which formalized the founders' relationship and ConnectU's rights relevant to this lawsuit.

**Interrogatory No. 8:**

Identify all facts in support of Your contention that ConnectU LLC owns the alleged trade secrets or copyrighted material it contends Defendants misappropriated or infringed.

**Response to Interrogatory No. 8:**

Pursuant to Fed. R. Civ. P. 33(c), Plaintiff objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

Pursuant to Fed. R. Civ. P. 33(d), ConnectU refers Defendants to the assignments from Joseph Jackson and Victor Gao to ConnectU, produced by ConnectU at C0011336 and C0011337. Pursuant to Fed. R. Civ. P. 33(d), ConnectU also refers

CONFIDENTIAL INFORMATION

Defendants to the LLC Operating Agreement produced by ConnectU at C011285-C011335. Sanjay Mavinkurve contributed to the Harvard Connection code, and his contributions became part of the Harvard Connection code.

**Interrogatory No. 9:**

Identify all facts in support of ConnectU's contention that Mark Zuckerberg had a duty to maintain the alleged secrecy of the alleged trade secrets ConnectU contends Mark Zuckerberg misappropriated.

**Response to Interrogatory No. 9:**

In addition to the general objections set forth above, ConnectU objects to this interrogatory as calling for legal testimony. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

The founders viewed the combination of information set forth in response to Interrogatory No. 2 as trade secrets. Mr. Zuckerberg became a partner of the Harvard Connection founders and a member of the Harvard Connection team. He agreed to write code for the Harvard Connection website, and said he was writing it. Mr. Zuckerberg was also an experienced programmer and therefore would know that unpublished code, such as the Harvard Connection code, was proprietary and confidential to the founders and the partnership and team of which he was a member. Mr. Zuckerberg knew that the only people to whom the founders disclosed the Harvard Connection trade secrets, as set forth in response to Interrogatory No. 2, were he and the founders, and that the only people to whom the Harvard Connection code was

CONFIDENTIAL INFORMATION

disclosed were the founders, Mr. Zuckerberg, and the programmers.  Mr. Zuckerberg

and the founders were unaware of any other websites with the nature, purpose,

features, and functionality planned for Harvard Connection website, as set forth in

response to Interrogatory No. 2.  The founders and/or Mr. Gao told and discussed with

Mr. Zuckerberg that the website development project was confidential, that the founders

wanted to launch the Harvard Connection website before any competitive website

launched, that the founders did not want to lose the first-to-market advantage, and

wanted to launch the website as soon as possible.  Mr. Zuckerberg's emails to the

founders recognize the fast track on which he was supposedly helping develop the

Harvard Connection website.  The founders met with Mr. Zuckerberg in private places

and under private circumstances, and were careful not to allow other people to hear

their discussions.  The Harvard Connection code was password protected and only the

founders, Mr. Zuckerberg, and the programmers knew of its existence and location on

the server.  Mr. Zuckerberg knew this.  The Harvard Connection code to which Mr.

Zuckerberg had access bore copyright notice.  Mr. Zuckerberg acknowledged such a

duty on February 12, 2004, stating that "In response to your email, I would like to let you

know that I have no intention of disclosing your work product, any of your ideas, or your

demands."  In that same communication, Mr. Zuckerberg said that he worked on "The

facebook, using none of the same code nor functionality that is present in

HarvardConnection."

**Interrogatory No. 10:**

    Identify all facts in support of ConnectU's contentions that each of its alleged

trade secrets allegedly misappropriated by Defendants were not in the public domain at

the time of any alleged misappropriation by Defendants, as well as all facts which may

CONFIDENTIAL INFORMATION

potentially support the argument that any alleged trade secret <u>was or is</u> in the public

domain.

**Response to Interrogatory No. 10:**

In addition to the General Objections set forth above, ConnectU objects to this

interrogatory to the extent that it calls for expert testimony.  Pursuant to Fed. R. Civ. P.

33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an

opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as

follows:

The Harvard Connection founders were not aware, prior to the launch of

thefacebook.com website, of any college social networking sites with the combination of

features identified in response to Interrogatory No. 2.  Plaintiff is aware of no such

website that existed prior to the launch of thefacebook.com.

**Interrogatory No. 11:**

Identify all facts in support of ConnectU's contention that it suffered damages or

other injury as a result of alleged wrongdoing in its Complaint, as well as all individuals

with knowledge of such facts and documents supporting such contention.

**Response to Interrogatory No. 11:**

In addition to the General Objections set forth above, ConnectU objects to this

interrogatory as premature because it calls for expert opinion, which will be provided

before the deadline set by the Court.  Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also

objects to this interrogatory as premature to the extent it seeks an opinion or contention

that relates to fact or the application of law to fact.

CONFIDENTIAL INFORMATION

Subject to the general and specific objections, ConnectU answers this interrogatory as follows:

Thefacebook.com website usurped the first-to-market advantage that the founders and Mr. Zuckerberg worked and planned to capture. Thefacebook.com website, which is of the same nature and purpose as the Harvard Connection website was and was intended to be, has usurped the market, has gained enormous value, and has attracted advertisers and investors that it would not have attracted, but for Defendants' wrongful acts. By leading the Harvard Connection founders to believe that he was part of the Harvard Connection development partnership and development team, leading them to believe that he was completing the Harvard Connection code, and leading them to believe that he was still part of the team and was still working on the code after the January 14, 2004 meeting, Mr. Zuckerberg also damaged the founders by making it impossible to launch the Harvard Connection website until several months after thefacebook.com website launched. ConnectU's damages are irreparable, but it has suffered monetary damage equal to the present and future value of Thefacebook, Inc., thefacebook.com, and any benefits received by the individual Defendants, at the very least.

**Interrogatory No. 12:**

Describe the circumstances of each disclosure by ConnectU to a third party of any ConnectU trade secret that ConnectU contends Defendants misappropriated, including, but not limited to, describing the date of each such disclosure, the identities of the third parties and individuals involved, all individuals with knowledge of such facts, and all documents relating to each disclosure.

CONFIDENTIAL INFORMATION

**Response to Interrogatory No. 12:**

In addition to the General Objections set forth above, ConnectU objects to the interrogatory to the extent that the term "third party" is vague and ambiguous. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

Mr. Zuckerberg and Defendants disclosed the combination of ConnectU trade secrets identified in response to Interrogatory No. 2 when they launched thefacebook.com website on February 4, 2004. Prior to the launch of thefacebook.com website on February 4, 2004, the Harvard Connection founders did not disclose to any third parties (except the programmers, as set forth below) the combination of trade secrets set forth in response to Interrogatory No. 2. Prior to February 4, 2004, the Harvard Connection founders made the following limited disclosures to the following persons:

1. Mark Zuckerberg:  the combination of information set forth in response to Interrogatory No. 2.

2. Victor Gao:  the combination of information set forth in response to Interrogatory No. 2.

3. Sanjay Mavinkurve:  the combination of information set forth in response to Interrogatory No. 2.

4. Joe Jackson:  the combination of information set forth in response to Interrogatory No. 2.

CONFIDENTIAL INFORMATION

5. Nate Rosenberg: the general idea of the Harvard Connection website and the Harvard Connection code (but not allowed to retain the code).

6. Rob Scott: the front page and a nonfunctioning search page of the Harvard Connection site as of December 23, 2003.

7. Chris Lentz: the idea of a dating/alumni website for the Harvard community, with controllable content, which might be branched to other schools.

8. Several potential employers of Divya Narendra in Fall 2003 (under an understanding that job applicant information is maintained as confidential, where such potential employers were unlikely to attempt to launch a competitive website, and where the Harvard Connection website was expected to launch imminently): only the idea that the founders were developing a website for the college level, but no specifics.

9. The founders' fathers and mothers, under an understanding that the website was secret: the general ideas of item nos. 1-6, and 9 set forth in response to Interrogatory No. 2, but not the specifics.

10. Marko Soldo (trusted friend, to test and provide feedback on the Harvard Connection website, under an understanding that the website was secret): only the idea that the founders were developing a social networking website for the college level, and the user interface as it existed, but no specifics.

11. Mike Jaffee (trusted friend, to test and provide feedback on the Harvard Connection website, under an understanding that the website was secret): only the idea that the founders were developing a social networking website for the college level, and the user interface as it existed, but no specifics.

CONFIDENTIAL INFORMATION

**Interrogatory No. 13:**

Identify all facts in support of ConnectU's contention that Defendants put alleged trade secrets or copyrighted materials to use, including but not limited to all individuals with knowledge of such facts and documents supporting the contention.

**Response to Interrogatory No. 13:**

In addition to the General Objections set forth above, ConnectU objects to this interrogatory to the extent it requests testimony by ConnectU as to any source code used by the Defendants for thefacebook.com website or produced by Defendants, and to the extent it requires access by Plaintiff to any documents designated by Defendants as confidential under the Protective Order. Because Defendants have designated source code and documents they have produced as Confidential Information under the Stipulated Protective Order, officers and agents of ConnectU have not had access and cannot have access to any such source code or documents. ConnectU also objects to this interrogatory as premature and as partially unanswerable at this time because Defendants to date have not produced any Harvard Connection source code that Mr. Zuckerberg or the other Defendants had access to or worked on, any prelaunch source code for thefacebook.com website, or any source code for thefacebook.com website, in uncorrupted form, from the time of launch to October 2004. Defendants have only produced uncorrupted versions of thefacebook.com source code from October and December 2004, approximately 8 months after the February 2004 launch of thefacebook.com website. ConnectU also objects to this interrogatory as premature and as calling for expert testimony which will be provided in an expert report by the deadline set by the Court. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to

Page 25 of 31

CONFIDENTIAL INFORMATION

fact or the application of law to fact.  Moreover, ConnectU objects to this interrogatory as being duplicative of Interrogatory Nos. 1 and 3.

Subject to the above general and specific objections, ConnectU responds as follows:  The same facts that support Plaintiff's contentions that Defendants copied the Harvard Connection code and misappropriated the Harvard Connection trade secrets, as set forth in response to Interrogatory Nos. 1 and 3, also support the contention that Defendants used Plaintiff's trade secrets and copyrighted subject matter when they launched thefacebook.com website.  In addition to such facts, the Harvard Connection trade secrets were disclosed to Mr. Zuckerberg with the expectation that they would be kept confidential and would not convert them to his own competitive use, and Mr. Zuckerberg knew that such information was secret and proprietary to the Harvard Connection founders.

Mr. Zuckerberg launched thefacebook.com without notifying any of the founders, and despite the fact that his site would be a direct competitor of the Harvard Connection website and is of the same nature and purpose as the Harvard Connection website was and was planned to be, and shares many of the same features and functionality as contained in and envisioned for the Harvard Connection website.  Thefacebook.com website contains or embodies, and/or disclosed to the public, the combination of trade secrets identified in response to Interrogatory No. 2, and/or destroyed their secrecy for the founders and the first-to-market advantage that the secrecy of the Harvard Connection website project, enterprise, and ideas provided prior to thefacebook.com's launch.

CONFIDENTIAL INFORMATION

**Interrogatory No. 14:**

Identify every public domain source, including but not limited to competitors' datasheets and website publications, textbooks, and trade show materials, that discloses or encompasses any of the alleged ConnectU trade secrets or alleged copyrighted material ConnectU contends Defendants misappropriated.

**Response to Interrogatory No. 14:**

In addition to the General Objections set forth above, ConnectU objects to the term "public domain source" as vague and ambiguous.  ConnectU also objects to the interrogatory as being unclear as to what time period Defendants are referring to. Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

Prior to the launch of thefacebook.com website, the Harvard Connection founders were aware of no third party website embodying the combination of trade secrets identified in the response to Interrogatory No. 2 above.  Plaintiff is aware of no such website that existed before thefacebook.com launched.

**Interrogatory No. 15:**

Identify the U.S. state of which each of Cameron Winklevoss and Tyler Winklevoss is a citizen, respectively.

**Response to Interrogatory No. 15:**

In addition to the General Objections set forth above, ConnectU objects to this request as vague and ambiguous, and unrelated to any claim or defense in this action.

CONFIDENTIAL INFORMATION

Cameron Winklevoss and Tyler Winklevoss are citizens of Connecticut. Cameron Winklevoss and Tyler Winklevoss have partial residency in both Connecticut and Massachusetts.

**Interrogatory No. 16:**

Specify all instances in which Mark Zuckerberg was offered or given compensation for the work he completed or was to complete on HarvardConnection, including, without limitation (i) any direct monetary compensation, and (ii) any present or future interest in either HarvardConnection, ConnectU, or a related entity or project. Include the exact date, amount, and nature of any offer or payment, as well as the specific Communication through which any offer or payment was made.

**Response to Interrogatory No. 16:**

Pursuant to Fed. R. Civ. P. 33(c), Plaintiff objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

On December 3, 2003, Divya Narendra stated in an email to Mr. Zuckerberg that: "We're very deep into developing a site, which we'd like you to be part of …".  Mr. Zuckerberg then agreed to work on the Harvard Connection website, and the founders and Victor Gao told Mr. Zuckerberg that he was a part of the team and enterprise that was developing (and that would maintain) the Harvard Connection site, and that he would remain part of the team and enterprise after the site launched.  The founders also told others that Mr. Zuckerberg was part of the team, stating in an email to Christopher Lentz on December 15, 2003 that "The 'team' working on the site is myself, tyler, mark

Page 28 of 31

CONFIDENTIAL INFORMATION

(developer), and my friend divya." They also told Mr. Zuckerberg that he was an equal-opportunity member in the project and enterprise, and an equal-opportunity member of the Harvard Connection team, based on the amount of contribution and effort each partner made, to be later determined based on their ongoing participation and contribution to the enterprise. In all communications and meetings with Mr. Zuckerberg, Mr. Zuckerberg was treated as a partner and acted as such. Mr. Zuckerberg said he wanted to be a member of the Harvard Connection team, partnership, and enterprise and did not ask to be paid as a contract programmer. Mr. Zuckerberg never asked for any payment. As a partner, Mr. Zuckerberg would have monetary compensation in the form of a share in the partnership if the website launched, became popular, and could be monetized. Mr. Zuckerberg, like the other partners prior to February 2004, did not receive a direct cash payment from Harvard Connection. The founders also told Mr. Zuckerberg that a benefit to him would be to renew his reputation after the problems he had with facemash.com. The founders also told Mr. Zuckerberg that another benefit to him would be the ability to identify and highlight his contribution to potential employers.

Mr. Zuckerberg did not complete any of the responsibilities that he agreed to complete, including preparing the Harvard Connection website for launch and handling post-launch development. Mr. Zuckerberg terminated his relationship and participation in the Harvard Connection team, project, and enterprise by launching thefacebook.com on February 4, 2004, and therefore terminated any present or future interest in Harvard Connection and ConnectU.

**Interrogatory No. 17:**

Specify the exact number of hours that were originally represented to Zuckerberg as the total number required to complete or otherwise make fully functional the

CONFIDENTIAL INFORMATION

HarvardConnection website, as well as the (i) precise number of hours and (ii) the number of calendar days that you contend Zuckerberg <u>agreed</u> to work on the HarvardConnection website.

**<u>Response to Interrogatory No. 17:</u>**

In addition to the General Objections set forth above, ConnectU objects to the question as being based on the false premise that representations were made to Mr. Zuckerberg of the number of hours required to complete or otherwise make fully functional the Harvard Connection website.  Pursuant to Fed. R. Civ. P. 33(c), Plaintiff also objects to this interrogatory as premature to the extent it seeks an opinion or contention that relates to fact or the application of law to fact.

Subject to the above general and specific objections, ConnectU responds as follows:

An exact number of hours to complete or otherwise make fully functional the Harvard Connection website was not represented to Mr. Zuckerberg.  Mr. Zuckerberg did not ask or specify that he wanted to work on the Harvard Connection website for a precise or limited number of hours or calendar days.  Instead, Mr. Zuckerberg agreed to perform the work that was necessary to complete the website and develop the website with the Harvard Connection team, and to remain a part of the Harvard Connection team after the site launched.

CONFIDENTIAL INFORMATION

_Troy E. Grabow_

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Troy E. Grabow *(pro hac vice)*
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400


Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA  02142
Telephone:  (617) 452-1600
Facsimile:   (617) 452-1666


Attorneys for Plaintiff and Counterclaim Defendant

DATED:  August 22, 2005

CONFIDENTIAL INFORMATION

<u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that a true and correct copy of the attached PLAINTIFF
AND COUNTERCLAIM DEFENDANT CONNECTU LLC'S  RESPONSES TO
DEFENDANT AND COUNTERCLAIM PLAINTIFF THE FACEBOOK, INC.'S FIRST SET
OF INTERROGATORIES (NOS. 1-17) was served by facsimile and Federal Express overnight
courier on August 22, 2005 to the following:


Daniel K. Hampton, Esq.
HOLLAND & KNIGHT, LLP
10 St. James Avenue, 11th Floor
Boston, MA 02116
617.523.6850 (fax)

Robert B. Hawk, Esq.
HELLER EHRMAN, LLP
275 Middlefield Road
Menlo Park, CA 94025
650.324.0638 (fax)

Steven M. Bauer, Esq.
PROSKAUER ROSE LLP
One International Place, 14th Floor
Boston, MA 02110-2600
617.526.9899 (fax)

Joshua H. Walker, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
650.614.7401 (fax)

08/24/2005 11:53    4084400

FINNEGAN HENDERSON

PAGE  02

## VERIFICATION

On behalf of ConnectU LLC, I hereby verify that I have read the foregoing PLAINTIFF AND COUNTERCLAIM DEFENDANT CONNECTU LLC'S RESPONSES TO DEFENDANT AND COUNTERCLAIM PLAINTIFF THEFACEBOOK, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-17). I hereby state that the facts contained therein are true to the best of my knowledge, information, and belief.

I declare under the penalty of perjury that the foregoing is true and correct.

Date: August 24, 2005          By: _____
                                    Cameron Winklevoss