**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, | Civil Action No. 1:04-CV-11923 (DPW) |
|       Plaintiff, | District Judge Douglas P. Woodlock |
| v. | |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC., | Magistrate Judge Robert B. Collings |
|       Defendants. | |
| MARK ZUCKERBERG, and THEFACEBOOK, INC., | |
|       Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
|       Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, | |
|       Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' OPPOSITION TO CONNECTU LLC'S MOTION TO
COMPEL THE PRODUCTION OF DOCUMENTS IN RESPONSE TO PRODUCTION
REQUEST NOS. 42, 44-46, 70-71, 85-96, 98-105, 107-110, 113, AND 169**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

    A.    Factual Background ................................................................................. 2

    B.    Discovery Background ............................................................................ 4

    C.    Current Discovery Dispute .................................................................... 7

II.   ARGUMENT ................................................................................................... 13

    A.    ConnectU Should Not Be Permitted to Seek Further Discovery Without
Specifying Its Trade Secrets ............................................................... 13

    B.    Requested Documents Are Not Relevant to Any Claim or Defense and/or
The Requests Are Overly Broad and Unduly Burdensome .............. 16

        1.    ConnectU Seeks Irrelevant Documents ................................... 17

        2.    ConnectU's Requests Are Overly Broad and Unduly Burdensome ........ 18

III.  CONCLUSION ................................................................................................ 18

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Am. Sci. & Eng'g, Inc.* v. *Kelly*, 69 F.Supp.2d 227 ................................................................. 15

*Bemis v. Kelley*, 857 F.2d 14, 18 ................................................................. 17

*CVD, Inc.* v. *Raytheon Co.*, 769 F.2d 842 ................................................................. 15

*Computer Econ., Inc.* v. *Gartner Group, Inc.*, 50 F.Supp.2d 980 ................................................................. 15

*Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 7 ................................................................. 17

*Imax Corp.* v. *Cinema Techs., Inc.*, 152 F.3d 1161 ................................................................. 14

*In re Lupron® Mktg. & Sales Practices Litig.*, Case No. MDL 1430, 01-CV-10861-RGS,
     2004 WL 764466, *1 ................................................................. 18

*In re Lupron® Mktg & Sales Practices Litig.*, Case No. MDL 1430, 01-CV-10861-RGS,
     2004 WL 764454, *1 ................................................................. 18

*L-3 Communications Corp.* v. *Reveal Imaging Techs., Inc.*,
     No. 035810BLS, 2004 WL 2915743 ................................................................. 14

*Leucadia, Inc.* v. *Applied Extrusion Techs., Inc.*, 755 F.Supp. 635 ................................................................. 16

*Microwave Research Corp.* v. *Sanders Assocs., Inc.*, 110 F.R.D. 669 ................................................................. 14

*Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 11 ................................................................. 18

*Xerox Corp.* v. *IBM Corp.*, 64 F.R.D. 367 ................................................................. 14, 16

### STATE CASES

*Cambridge Internet Solutions, Inc. v. Avicon Group*,
     10 Mass. L. Rptr. 539, 1999 WL 959673,2 ................................................................. 14

*Diodes, Inc.* v. *Franzen*, 260 Cal.App.2d 244 ................................................................. 15

*Eastern Marble Prods. Corp.* v. *Roman Marble, Inc.*, 372 Mass. 835, 364 N.E.2d 799 ............. 15

Engelhard Corp. v. Savin Corp., 505 A.2d 30 ................................................................. 14

*Staffbridge, Inc. v. Nelson Assocs., Inc.*, No. 024912-BLS, 2004 WL 1429935, at *1 ........... 13, 14

## FEDERAL STATUTES

Federal Rules of Civil Procedure 11 ........................................................................ 14

Federal Rules of Civil Procedure 26 ........................................................................ 12

Federal Rules of Civil Procedure 26(a)(2)(B)........................................................... 18

Federal Rules of Civil Procedure 26(b) .................................................................... 16

Federal Rules of Civil Procedure 26(b)(1) ............................................................... 17

Federal Rules of Civil Procedure 26(b)(2) ............................................................... 17

Defendants Mark Zuckerberg ("Zuckerberg"), Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc. ("TheFacebook") (collectively, "Facebook Defendants") [1] hereby respond to, and oppose, Plaintiff's Motion to Compel the Production of Documents in Response to Production Request Nos. 42, 44-46, 70-71, 85-96, 98-105, 107-110, 113, and 169 ("ConnectU's Motion").

## I.     INTRODUCTION

In its Amended Complaint, Plaintiff ConnectU LLC ("ConnectU") alleges that Facebook Defendants are guilty of misappropriation of trade secrets, breach of contract, unfair trade practices, intentional interference with prospective business advantage, breach of fiduciary duty and duty of good faith and fair dealing, and copyright infringement. *See* Docket No. 13. Plaintiff's claims are all based on the alleged unauthorized use of Plaintiff's allegedly confidential business plan (trade secrets) and source code (trade secrets and/or copyright).  To date, Plaintiff has failed to sufficiently identify its trade secrets or copyrights with particularity, including any specific business plan or any source code.  For example, ConnectU failed to produce a Rule 30(b)(6) witness to competently testify concerning its own trade secrets, including any source code that Facebook Defendants allegedly used or infringed.  ConnectU supplied an incredibly vague and ambiguous "identification" of its alleged trade secrets in response to Facebook Defendants' Interrogatory No. 2.  This refusal to sufficiently identify trade secrets and copyrights, not Facebook Defendants' actions, have brought this discovery to a standstill.  Facebook Defendants have been as forthcoming as possible regarding discovery in spite of Plaintiff's stonewalling

Overwhelming federal and state case law, including from the District of Massachusetts

---

[1]  Defendant Eduardo Saverin is represented by separate counsel in this matter.  The term "Defendants," as used herein, refers to all Defendants, including Mr. Saverin.  The "Facebook

and Massachusetts State Courts, clearly requires that ConnectU specify its claimed intellectual property, such as trade secrets, with reasonable particularity before any of its discovery requests may be compelled. Because ConnectU has not done so, its Motion should be denied.

Furthermore, the document requests at issue are overbroad and unduly burdensome and seek irrelevant documents not reasonably calculated to lead to the discovery of admissible evidence. Indeed, Plaintiff has done nothing to explain the particular relevance of any categories of documents sought by these requests and has refused to narrow any of the requests. Nor has Plaintiff shown good cause to expand allowable discovery in its belated Motion, filed over three months after Facebook Defendants served its responses. For these additional reasons, Plaintiff's Motion should be denied. If and when Plaintiff narrows its requests to seek only relevant material and to avoid seeking an overly broad category of documents that places undue burden on Facebook Defendants, Facebook Defendants will promptly produce additional, relevant, non-privileged documents responsive to the tailored requests.

## A.    Factual Background

Plaintiff ConnectU is an LLC allegedly formed in Delaware in April 2004. Its principal members are Cameron Winklevoss, Tyler Winklevoss, Divya Narendra, and Howard Winklevoss. Howard Winklevoss is the father of Cameron and Tyler Winklevoss, and is an investor in ConnectU. Other than working on a part-time basis for ConnectU, Cameron Winklevoss has no other employment. Tyler Winklevoss also is believed to be unemployed. Narendra is currently working at an investment bank in New York. Howard Winklevoss is a principal of Winklevoss Consultants, which operates from the same office as ConnectU. Cameron and Tyler Winklevoss and Narendra were all students at Harvard.

The individual Defendants also are former Harvard students. They were all involved in

Defendants" may be used herein to refer to all Defendants *except* Mr. Saverin.

the development of thefacebook.com, an online directory for college students which allows them to network with each other.  Zuckerberg, creator of thefacebook.com website and founder of TheFacebook, is a 21-year-old computer programmer.  Zuckerberg previously created numerous websites while studying at Harvard, including coursematch.com and facemash.com.  He also assisted others on a volunteer basis in their website development when he found the opportunity intellectually challenging.

Zuckerberg was originally contacted in late 2003 by the individual Plaintiffs[2] in this case, while he was a student at Harvard University.  On November 3, 2003, Zuckerberg received an unsolicited email from Narendra, asking Zuckerberg if he would like to help program a few elements of a "dating and recruiting" website that Narendra and his friends were developing.  Zuckerberg later learned that the website referenced by Narendra was called HarvardConnection.  Plaintiffs gave a copy of the HarvardConnection source code to Zuckerberg.  While such information was shared, no written confidentiality agreement was ever discussed or signed in the process of these discussions.

Further, Zuckerberg was not compensated in any way for any work he did for Narendra and the Winklevosses.  Rather, Zuckerberg volunteered to program portions of the HC website.  Over time, Zuckerberg was asked to do an increasing amount of work and soon realized that the scope of the work involved was greater than what he had originally been told, and agreed to do.  Zuckerberg also found that his academic studies required greater attention, and that other projects were more intellectually interesting.  Ultimately, Zuckerberg informed Plaintiffs that he was no longer interested in volunteering his time for their project.

Zuckerberg decided to launch his own website, thefacebook.com, a website similar in

---

[2] For clarity, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra may also be referred

many ways to previous websites he had created and other websites around the country. Thefacebook.com served essentially as an online directory for university students wherein they could join networks of similarly interested people, such as study groups and clubs. Thefacebook.com, like other websites created by Zuckerberg, was an instant success at Harvard. Shortly after launching at Harvard, thefacebook.com was launched at universities around the country. Thefacebook.com has garnered extensive media attention, including from many university periodicals, the New York Times, Time magazine and others. Ultimately, thefacebook.com was so successful that Zuckerberg decided to take a leave of absence from Harvard to attempt to build thefacebook.com into a business.

Plaintiffs believe that Zuckerberg had certain obligations to them and that he violated those obligations. Accordingly, this lawsuit ensued. Plaintiff has not identified any facts tying any acts by any Defendant (other than Zuckerberg) to any of the individual Plaintiffs. No Defendant, including Zuckerberg, has ever had any direct relationship with ConnectU.

### B.    Discovery Background

In April 2005, Plaintiff propounded 170 production requests - actually many more when considering that the vast majority of requests are compound. Facebook Defendants have produced over two-thousand of pages of documents in response to these requests. Defendants have also produced three different versions of TheFacebook's source code. Facebook Defendants produced these documents and source code based, in part, on Plaintiff's numerous promises to sufficiently identify the allegedly misappropriated trade secrets, including a specific business plan or any source code. These promises remain broken.[3]

---

to as "Plaintiffs," whether by themselves or collectively with the named Plaintiff, ConnectU.
[3] In addition to Facebook Defendants' unfulfilled discovery requests described below, on several occasions Plaintiff specifically promised to provide the required identification of trade secrets and/or copyrights allegedly misappropriated or infringed. *See* Walker Aff. Ex. C.

Facebook Defendants have requested that Plaintiff identify the trade secrets and copyrights allegedly misappropriated or infringed in 10 requests for production, a Rule 30(b)(6) deposition of ConnectU, and at least two very specific interrogatories. *See* Walker Aff. Ex. A. In response to the requests for production, Plaintiff has failed to produce a single page of allegedly infringed copyrighted material (*e.g.*, source code). Regarding the Rule 30(b)(6) deposition, Topics Nos. 7, 8, and 9 all related to HarvardConnection and ConnectU code, which Plaintiff may claim are infringed by Facebook Defendants' source code. *See* Walker Aff. Ex. B. However, Plaintiff refused to designate a witness to testify as to these three topics.[4] The Rule 30(b)(6) deposition of ConnectU occurred on August 9, 2005, without the witness identifying a single piece of source code Plaintiff claims is infringed or misappropriated. *See* Walker Aff. Ex. D.

Regarding Facebook Defendants' interrogatories, Interrogatory No. 1 requested Plaintiff to "[i]dentify with precision and specificity all facts in support of Your contention that any [copyrighted material] HarvardConnection Code or ConnectU Code is infringed." Walker Aff. Ex. E. Once again, Plaintiff refused to identify any copyrighted material. Plaintiff only refers to "the existing code," "code and business plan" and "such code or other copyrighted aspects of Harvard Connection" without identifying any "code" or "copyrighted aspects." *Id.* Similarly, Interrogatory No. 2 ask Plaintiff to "[i]dentify with precision and specificity each and every alleged trade secret ConnectU contends was misappropriated by Defendants." *Id.*

After initially objecting, Plaintiff recently responded to Interrogatory No. 2. This response stated that "[t]he trade secrets misappropriated by Defendants include, but are not limited to, the following, in combination" (emphasis added) and listed nine purportedly discrete

---

[4] *See* Walker Aff. Exs. F and G (letter response from Facebook Defendants to ConnectU, noting

items.  Facebook Defendants found this alleged trade secret designation deficient *per se* under

Massachusetts law, being unlimited on its face, and due to the fact that it completely failed to

distinguish comprehensive precedent in the public domain, including information the

Counterdefendants themselves made available, through publication and promotion of their beta

website in 2003.  ConnectU's response is wholly inadequate.

Therefore, on September 8, 2005, Facebook Defendants filed under seal a motion to

compel particularized identification of trade secrets in response to their Interrogatory No. 2.

Docket No. 67.  For the convenience of the Court, we simply cross-reference the arguments in

this motion and its supporting memorandum, instead of repeating them here.  Details of the

inadequacies of Plaintiff response to Interrogatory No. 2 are supplied in Memorandum in

Support of The Facebook Defendants' Motion to Compel Paricularized Idenfitication of Trade

Secrets in Response to The FaceBook Defendants' Interrogatory No. 2, filed under seal (Docket

No. 63).

Facebook Defendants continue to produce responsive documents and agreed to produce

other relevant documents *if and when* Plaintiff sufficiently identifies its alleged trade secrets.

Walker Aff Exs. A and H.  Despite this assurance, Plaintiff still refuses to sufficiently identify a

single trade secret.

As a result, Facebook Defendants are only withholding some financial and corporate

documents created after May 21, 2004,[5] and student records of individual Defendants that

---

impropriety of "protective order" objection).

[5]  May 21, 2004 is the date on which ConnectU launched its own competing website.  Because
ConnectU's complaint focuses actions that allegedly occurred prior to the launch of its website
(including the copyright infringement and trade secret misappropriation claims that for a basis
for this entire suit), and because there could have been no trade secret theft of things ConnectU
itself publicized on its website as of May 21, 2004, documents created after this date are less
relevant to this matter.

predate the existence of HarvardConnection or ConnectU.  Facebook Defendants have also objected to and refused to allow ConnectU to obtain mirror images of computers and memory devices of all Defendants.  These documents and mirror images are the subjects of Facebook Defendants' Motion for Protective Order regarding electronic images of Facebook Defendants' entire hard drives and post-May 21, 2004 documents.  *See* Docket Nos. 38, 43, 50, and 60.

### C.    Current Discovery Dispute

Plaintiff's Motion seeks documents responsive to 32 of the 107 document requests in its first set of document requests.  The 32 requests relate to a huge range of topics, including: individual Defendants' interactions with the Harvard Administrative Board and their tax returns; thefacebook.com web traffic, availability, operations, registrations, users and their demographics, consumer preferences, and frequently asked questions; and TheFacebook's financial documents, corporate documents and records, contracts, ownership and owner's compensation, locations of operations and its servers, potential and actual investors and any investments in TheFacebook.[6]  ConnectU's discovery appears to be directed to harassment rather than discovery of the facts of the case.

All of the document requests at issue seek materials that are, in whole or in part, irrelevant to any claims or defenses in this case.  In addition, all requests are overly broad and unduly burdensome because they are not nearly limited to seeking only relevant documents.  In their initial response to the document requests, Facebook Defendants informed Plaintiff that the requests at issue seek irrelevant documents and are overly broad and unduly burdensome.  Despite the inadequacies of the requests, in the spirit of compromise Facebook Defendants provided responsive documents and references to its webpages and interrogatory responses

---

[6]  All of the proprietary information is being sought by a failing competitor of the Facebook which has repeatedly taken the Facebook's electronic information, website designs, and

regarding 20 of the 32 requests at issue beginning May 31, 2005.

In response (including its Motion), Plaintiff *never* explained the relevance of all of the documents sought by the requests or why Facebook Defendants' document production and other provided information are insufficient.  Plaintiff also never narrowed any of the requests.  Instead of compromising, Plaintiff simply submitted its Motion, although it waited over three months to do so.

The following are summaries of categories of Plaintiff's 32 requests, which all seek irrelevant documents and are overly broad and unduly burdensome, categorized by subject matter for the Court's convenience:

**Request for Production Nos. 42, 44-46 (the "Harvard Administrative Board Requests")** seek "*[a]ll* documents *relating in any way* to any documents involving the Harvard Administrative Board and [individual Facebook Defendants]."  (Emphasis added.)  These request broadly seek irrelevant actions in front of the Harvard Administrative Board that could include granting makeup examinations for medical reasons, conferring sophomore standing, granting leaves of absence, violations of alcohol rules, disruptive conduct and sexual harassment.  *See* Walker Aff. Ex. I.  Moreover, these requests could concern activities occurring long before Plaintiffs contacted Zuckerberg for assistance.  Obviously, these requests are either  totally irrelevant or at least overly broad.  In addition, Request for Production No. 42 specifically requests irrelevant documents related to "facemash," which is a website utilizing photos of students and is in no way relevant to this case.

**Request for Production Nos. 70-71 (the "Investor Requests")** broadly seek irrelevant documents including those "relating to, all persons and companies who have expressed any

protected data for its own commercial purpose..

interest in investing in any way … and/or who have invested" in The Facebook (Request No. 70) and "potential investors"; "gifts," including "concert or other sports or entertainment tickets, meals, parties, and vehicles"; and "all meetings with potential investors or investors" *on a monthly basis* (Request No. 71). Information related to actual or potential investors are not relevant to any claim or defense in this case. These requests are overly broad and could include, for example, tickets for a movie that one of the Facebook Defendants saw with a friend, who could be considered a "potential investor." In its Motion, Plaintiff does not explain why such broad discovery is relevant or necessary, especially why Plaintiff needs such information on a monthly basis or why Facebook Defendants' disclosed documents, including FACE004119 – FACE004127, FACE004175 - FACE004187, and FACE004196 – FACE004199, are insufficient.

**Request for Production Nos. 85-89 (the "Website Requests")** broadly seek irrelevant documents in an unduly burdensome way by asking for documents related to thefacebook.com website, including "traffic," universities, colleges, and other schools at which it is registered, "persons registered," "hits," and "hits … by the same users" on a *daily, monthly, and/or annual basis.* Similarly, several of these requests seek the information *broken down by university, college or other school* (Nos. 87-89). Plaintiff does not explain why such broad discovery is relevant or necessary, why Plaintiff needs such information on a daily, monthly, or annual basis, or why breakdowns by universities, etc. are at all relevant.

Moreover, Plaintiff does not explain why Facebook Defendants' response identifying the number of users logging onto thefacebook.com on the date the document requests were issued as well as several interrogatory responses and substantial document production are inadequate.

**Request for Production Nos. 90-95, and 98-101 (the "Financial Requests")** broadly

seek documents relating to TheFacebook's fixed and variable costs, overhead, revenue, gross and net profits, assets, bank accounts, debt, and value on a monthly or annual basis. Plaintiff does not explain the need or relevance or tremendous breath and repetition of these requests, particularly in light of Facebook Defendants' production of 2004-2005 financial documents earlier this year, including TFB000002 - TFB000051 and FACE002127 - FACE002130. If Plaintiff claims that these documents are necessary to calculate damages, these Financial Requests should be more narrowly tailored so as to not seek duplicative and unnecessary material. For example, it is difficult to see how requested documents that could encompass a debit card receipt for a cup of coffee are relevant to this case.

Request for Production No. 96 (the "Tax Return Request") seeks federal income tax returns for individual Defendants. Plaintiff never explains why these would be relevant, why it is necessary to invade individual Defendants' privacies, or why the financial information available in tax returns could not be found elsewhere, including from the Financial Requests.

Request for Production Nos. 102-103 (the "Corporate Requests") broadly seeks "[a]ll documents constituting or relating to" TheFacebook's corporate documents and records, including Articles of Incorporation, By-Laws, registrations, and licenses (Request No. 102) and minutes of board of directors' or other meetings, employee and payroll records, corporate filings, financial records and documents, stock certificates, contracts, loan documents, mortgages, schedules of corporate assets, and shareholder documents. How stock certificates are relevant to a trade secret case is left unexplained by ConnectU. Requests for employee and payroll records are far too broad and to not justify infringing on the privacy interests of TheFacebook's employees. Additionally, contracts, mortgages, schedules of corporate assets, and financial records and documents are plainly sought in other requests.

Plaintiff never explains why this enormous breadth of documents are relevant, except for claiming without explaining, that documents requested in Request No. 103 are relevant to the value of TheFacebook and thefacebook.com and to calculating Defendants' profits and Plaintiff's alleged damages. *See* Motion at 18. However, these requested corporate records are plainly not relevant to the value or TheFacebook or damages. Furthermore, Plaintiff does not explain why Facebook Defendants' production of documents, including FACE002085 – FACE002126, FACE004128 – FACE004134, and FACE004248 – FACE004256 is not sufficient.

**Request for Production Nos. 104, 105, 108 and 109 (the "Operations Requests")** broadly seek "[a]ll documents … relating to contracts … relating to Thefacebook, Inc. or the thefacebook.com website"; "[a]ll documents … relating to plans or strategies for Thefacebook, Inc. or the thefacebook.com website"; "[a]ll documents … relating to, all locations from which the website thefacebook.com has been operated"; and "[a]ll documents … relating to, the servers and locations thereof." *All* contracts TheFacebook has with third parties, including for example, a caterer, are not relevant to this case. Neither are all of its plans or strategies or the former locations of TheFacebook or its servers. These requests are not tailored to this case whatsoever. Plaintiff neither explains why all of these requested documents are relevant to claims or defenses in this case nor specifies why the documents already produced by Facebook Defendants are not sufficient.

**Request for Production No. 107 (the "Owners Request")** seeks irrelevant documents identifying owners and their compensation and Plaintiff does not explain how the requested documents are relevant.

**Request for Production No. 110 (the "FAQ Request")** seeks all "Frequently Asked

Questions" and answers ever posted on thefacebook.com. Plaintiff neglects to explain why
Facebook Defendants' response to Request No. 110 citing the Frequently Asked Question web
page from thefacebook.com is not sufficient or why historical procedure of changing a user's
password, for example, is relevant. *See* Walker Aff. Ex. J.

      **Request for Production No. 113 (the "User Request")** seeks thefacebook.com's
customer demographics and preferences. Because this request is not limited in any way, it would
require Facebook Defendants to release potentially private matter contrary to thefacebook.com's
privacy policy and the user's expectation of privacy. *See* Walker Aff. Ex. K. The User Request
is overly broad, asking, for example, for information as to whether more users at Harvard prefer
an English class to a calculus class, which clearly is not germane to this case.

      **Request for Production No. 169 (the "Expert Request")** requests documents
"transmitted or provided to, reviewed, considered, or prepared by any and all expert witnesses
engaged by all or any of the Defendants." Clearly this request is premature in that expert reports
have not been produced or finalized; therefore, the expert witnesses' documents are not known at
this time. Moreover, this request is outrageously broad as is in not limited to documents
considered by the expert in preparation of any report. As written, the request seeks every email
ever sent to the expert by anyone and every document the expert ever wrote. This request
exceeds the discovery contemplated by Fed. R. Civ. P. 26 and impinges upon work product
protection to the extent it requests documents prepared by counsel for this litigation. When the
Facebook Defendants offers a testifying witness, it will produce the appropriate documentation.

      As noted above, Facebook Defendants have objected to each of the 32 requests, but also
have substantially responded to 20 of them by promising to and producing responsive documents
and directing Plaintiff to Facebook Defendants' interrogatory responses and website. Despite all

of these objections and responses, Plaintiff has not addressed in its Motion the validity of any of the objections, or the sufficiency of any of the responses.

Furthermore, Facebook Defendants are not withholding any responsive documents, with the possible exception of pre-May 21, 2004 financial documents that are the subject of Facebook Defendants' Motion for Protective Order and privileged documents.  *See* Docket Nos. 38, 43, 50, and 60.  In addition, Facebook Defendants are in the process of performing a search for such requested documents and will produce any relevant documents found should Plaintiff adequately define its trade secrets.  Facebook Defendants may be able to identified only documents upon the clear and explicit specification by ConnectU of its claimed trade secrets and copyrighted material.  As a result, document discovery from Facebook Defendants should be postponed until Plaintiff provides unambiguous description of its trade secrets.

## II.    ARGUMENT

### A.    ConnectU Should Not Be Permitted to Seek Further Discovery Without Specifying Its Trade Secrets.

ConnectU's failure to specify its trade secrets preclude the relief it requests.  ConnectU should be required to specify its trade secrets in order to frame the relevant scope of discovery.

Massachusetts law requires that in any trade secret case, the plaintiff must identify its trade secrets with rigorous specificity.  For instance, in *Staffbridge, Inc. v. Nelson Assocs., Inc.*, No. 024912-BLS, 2004 WL 1429935, at *1 (Mass. Super. June 11, 2004), before permitting discovery relating to plaintiffs' claimed trade secrets, the Massachusetts Superior Court ordered plaintiffs to describe "with *rigorous and focused particularity* what, and only what, the plaintiffs claim to constitute the trade secrets allegedly misappropriated by either of the defendants that form the basis for this law suit."  *Id.* at *4 (emphasis added).  The court further explained that "[t]he designation must, with clarity that can be understood by a lay person, make clear and

distinguish what is protectable from that which is not." *Id.*

The particularity demanded by the Superior Court in *Staffbridge* is representative of the level of detail that Courts generally, and Massachusetts Courts specifically, demand in trade secrets cases such as this one.  Massachusetts, federal, and other state law precedent uniformly precludes grant of a motion to compel in the instant circumstance.  Indeed:

> Where, as here, a plaintiff in a trade secret case seeks to discover the trade secrets and confidential proprietary information of its adversary, the plaintiff will normally be required to <u>first</u> identify with reasonable particularity the matter which it claims constitutes a trade secret before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets.

*L-3 Communications Corp. v. Reveal Imaging Techs., Inc.*, No. 035810BLS, 2004 WL 2915743, *13 (Mass. Super. Dec. 2, 2004) (emphasis added), quoting *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986), citing *see, e.g.*, *Cambridge Internet Solutions, Inc. v. Avicon Group*, 10 Mass. L. Rptr. 539, 1999 WL 959673,*2 (Mass. Super., Sept. 21, 1999); *see also Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998); *Xerox Corp. v. IBM Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974).  This District has also adopted this rule.  *See Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 673 (D. Mass. 1986) ("[a] further procedure employed is to require a plaintiff to specify in detail the trade secrets and confidential information alleged to have been misappropriated").

In *addition*, before a plaintiff is entitled to broad discovery into a defendant's trade secrets, "it must show that other evidence which it has gathered through discovery provides a substantial factual basis for its claim," exceeding even the evidentiary threshold of Rule 11 of the Federal Rules of Civil Procedure.  *Id.* at 674.

This rule serves several important purposes: (1) to dissuade the filing of meritless trade secret complaints; (2) to prevent plaintiffs from using the discovery process as a means to obtain

the defendant's trade secrets; (3) to assist the Court in framing the appropriate scope of

discovery; and (4) to enable defendants to form complete and well reasoned defenses. *See, e.g.,*

*Computer Econ., Inc. v. Gartner Group, Inc.*, 50 F. Supp. 2d 980 (S.D. Cal. 1999). In

complying with this obligation, it is not sufficient for a plaintiff to simply identify general

categories of information as its trade secrets. Rather, a trade secret plaintiff must:

> describe the subject matter of the trade secret with sufficient particularity to
> separate it from matters of general knowledge in the trade . . . and to permit the
> defendant to ascertain at least the boundaries within which the secret lies. Such
> disclosure must provide 'reasonable notice of the issues which must be met at the
> time of trial' and 'reasonable guidance in ascertaining the scope of appropriate
> discovery.

*Computer Econ.*, 50 F. Supp. 2d at 984, citing *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244,

252 (1968). *See also Eastern Marble Prods. Corp. v. Roman Marble, Inc.*, 372 Mass 835, 364

N.E.2d 799, 801 (1977) (defining trade secret under Massachusetts law, (citation omitted)); *see*

*also CVD, Inc. v. Raytheon Co.*, 769 F. 2d 842, 850 (1st Cir. 1985). In Massachusetts, as in

other jurisdictions, vagueness and lack of specificity will prevent the plaintiff from asserting that

their trade secret has been misappropriated. *See Am. Sci. & Eng'g, Inc. v. Kelly*, 69 F. Supp. 2d

227, 238 (D. Mass. 1999).

Likewise, counsel for ConnectU has written as recently as February of this year that

Courts apply the reasonable particularity standard in order to ensure that the plaintiff does not

generically identify its trade secrets and attempt to use discovery as a vehicle to obtain the

information it actually will use to allege this tort:

> In many cases, a trade secret plaintiff may avoid identifying its alleged trade
> secrets with particularity until late in discovery. This often results in the plaintiff
> identifying as its trade secrets items that it finds in documents and information
> produced by the defendant, some of which may be the defendant's own trade
> secrets. . . . Trade secret Complaints rarely identify the trade secrets in suit with
> any particularity, and plaintiffs generally wish to delay such identification as long
> as possible. . . . The catchwords for the minimum scope of plaintiff's trade secret
> disclosure are "with reasonable particularity." One commentator suggested that a

"'workable definition might be that the plaintiff should provide the defendant with a general outline of its trade secrets sufficient to allow the defendant to assess the relevancy of the requested discovery and to assure the defendant (and the court) that the defendant is not the victim of a fishing expedition.'"

John F. Hornick & Margaret A. Esquenet, *Trade Secret Identification:  The Importance of Timing in Discovery*, (Feb. 2005), available at www.finnegan.com/publications/news-popup.cfm?id+1248&type=article (citations omitted).

Requiring a high level of specificity at the commencement of the litigation makes sense. Otherwise, a plaintiff could file a trade secret lawsuit against a competitor or a former employee, engage in extensive discovery, and then conform its misappropriation claims to the evidence produced by the defendant.  In effect, this would allow the plaintiff to obtain discovery and then "draw the bull's eye around [a previously shot] arrow."  *See, e.g.*, *Xerox*, 64 F.R.D. at 371 (holding that, without such a rule, "neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not"); *Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 755 F. Supp. 635, 637 (D. Del. 1991) (ordering stay of discovery pending trade secret disclosure because "disclosure of plaintiff's trade secrets prior to discovery of defendant may be necessary to enable the defendant and ultimately the Court to ascertain the relevance of plaintiff's discovery"); *see also 4 Milgrim, Trade Secrets* § 16.01[5] (2005) ("a [trade secret] plaintiff can reasonably anticipate that the defendant will insist that it be apprised of considerable detail describing the trade secret.  That insistence can reasonably be expected to precede the defendant's submitting to discovery of it.").

## B.   Requested Documents Are Not Relevant to Any Claim or Defense and/or The Requests Are Overly Broad and Unduly Burdensome.

ConnectU's document requests at issue seek irrelevant material, and as such, production pursuant to these requests should not be compelled.  Fed. R. Civ. P. 26(b) limits the scope of discovery to that "relevant to the claim or defense of any party" and excludes discovery where

"the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1) and (2).[7]

To the extent any requests may seek relevant documents, they are overly broad and unduly burdensome as they are not reasonably tailored to the claims and defenses of this action and pertain to a huge range of irrelevant documents along with any relevant ones. These request should be denied because, "where the relevance of information sought in discovery proceedings is questionable and the request is overly broad, or compliance with such a request would be unduly burdensome, discovery of the requested information will be denied." *Flynn v. Church of Scientology Int'l*, 116 F.R.D. 1, 7 (D. Mass. 1986) (quoting 4 *Moore's Federal Practice*, p. 26-431; denying motion to compel deposition testimony). Therefore, all of the requests at issue either seek only irrelevant documents or are of questionable relevance and are overly broad and unduly burdensome, and discovery on them should be denied.

## 1. ConnectU Seeks Irrelevant Documents.

A party attempting to compel discovery must demonstrate the "particular relevance" of sought material, otherwise the motion to compel should be denied. *See Bemis v. Kelley*, 857 F.2d 14, 18 (1st. Cir. 1988) (affirmed denial of motion to compel when movant failed to inform district court of the "particular relevance" of the requested material to his complaint). The 32 document requests at issue seek documents irrelevant to any claim or defense in this litigation, as shown above. Moreover, with the exception of Document Request No. 103, ConnectU does not claim that any of the requests at issue seek relevant documents. As such, ConnectU's motion should be summarily denied.

---

[7] To extend discovery to "any matter relevant to the subject matter involved in the action," ConnectU must show "good cause," but does not. *See* Fed. R. Civ. P. 26(b)(1).

### 2.    ConnectU's Requests Are Overly Broad and Unduly Burdensome.

The 32 document requests at issue, as described above, are overly broad and unduly burdensome.  Therefore, to the extent any requests may seek relevant documents, the Motion to compel should still be denied.

Responses to three requests should not be compelled for additional reasons.  First, Tax Return Request (No. 96) should be denied for another reason - because it seeks largely irrelevant documents and quasi-privileged information, namely private tax returns.  *See In re Lupron® Mktg. & Sales Practices Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2004 WL 764466, *1 (D. Mass. Mar. 2, 2004).  Second, regarding expert documents requested in the Expert Request (No. 169), only those documents that are not attorney work product and were considered by the expert or support the expert's opinion need to be disclosed, along with the expert's publications authored within the last 10 years.  Fed. R. Civ. P. 26(a)(2)(B); *see also Nexxus Prods. Co. v. CVS New York, Inc.*, 188 F.R.D. 7, 11 (D. Mass. 1999) (must disclose documents considered by expert, but not attorney work product).  Again this request also is premature as expert discovery has not been completed.

Third, discovery pursuant to the Corporate Requests (specifically No. 103) should not be compelled as this request for entire employee files is overly broad and infringes on the legitimate privacy interests of the affected employees.  *In re Lupron® Mktg. & Sales Practices Litig.*, No. MDL 1430, 01-CV-10861-RGS, 2004 WL 764454, *1 (D. Mass. Mar. 17, 2004) (denying request for entire employee personnel files; requiring a more tailored request).

## III.    CONCLUSION

For each of the foregoing reasons, the Facebook Defendants respectfully request that the Court deny ConnectU's Motion.

Dated:  September 23, 2005.

Respectfully submitted,

_____
/s/  Joshua H. Walker

Joshua H. Walker*
I. Neel Chatterjee*
Monte M.F. Cooper*
G. Hopkins Guy, III*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
jwalker@orrick.com

Steven M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE LLP
One International Place, 22nd Floor
Boston, MA 02110-2600
Telephone:    (617) 526-9600
Facsimile:    (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

ATTORNEYS FOR MARK ZUCKERBERG,
DUSTIN MOSKOVITZ, ANDREW
MCCOLLUM, CHRISTOPHER HUGHES, and
THEFACEBOOK, INC.

* Admitted Pro Hac Vice

DOCSSV1:426317.2