# EXHIBIT 1



Not Reported in N.E.2d
Not Reported in N.E.2d, 1999 WL 959673 (Mass.Super.)
(Cite as: 1999 WL 959673 (Mass.Super.))

Page 1

C
Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
CAMBRIDGE INTERNET SOLUTIONS, INC.
v.
The AVICON GROUP, and others.
No. 99-1841.

Sept. 21, 1999.

QUINLAN.

Memorandum Of Decision And Order On
Defendants Leary, Peters, and Brown's
Motion To Dismiss Counts III, V, VI, and VIII of
Plaintiff's Complaint And
Plaintiff's Motion To Dismiss Count III of Defendant
Casgar's Counterclaim
[FN1]

FN1. John C. Leary, Douglas W. Peters, Christopher W. Brown and Christopher W. Casgar.

*1 On July 16, 1999, this matter came before the court for hearing on the motion of defendants John C. Leary ("Leary"), Douglas W. Peters ("Peters") and Christopher W. Brown ("Brown"), collectively, ("the defendants") [FN2] to dismiss those counts of plaintiff's complaint, i.e. Count III alleging breach of contract, Count VI alleging misappropriation of trade secrets, and Count VIII alleging intentional interference with contractual and advantageous relations, and violation of G.L. c. 93A.

FN2. Defendants Avicon Group, Inc. and Casgar are not parties to the motion to dismiss.

Plaintiff Cambridge Internet Solutions, Inc. ("C-Bridge") poses the motion and moves to dismiss Count III of defendant Christopher W. Casgar ("Casgar")'s Counterclaim, which alleges intentional interference with advantageous relations. For the following reasons, defendants' motion to dismiss will be *ALLOWED* in part and *DENIED* in part. C-Bridge's motion to dismiss will be *DENIED*.

BACKGROUND

C-Bridge, founded in October 1996, designs computer systems to help businesses integrate their operations for planning, purchase of raw materials, production, shipment and sales. Defendants Leary, Peters and Brown left C-Bridge's employ to form the Avicon Corporation ("Avicon"). Avicon then hired the defendant Casgar from C-Bridge. While employed by C-Bridge, the defendants and Casgar each signed Proprietary Information, Invention and Non-Disclosure Agreements ("non-disclosure agreements"). Casgar also signed a non-competition agreement.

C-Bridge alleges that the defendants violated their non-disclosure agreements by using C-Bridge's written business plan and documents developed during an off-site C-Bridge workshop as the basis for Avicon's business plan. C-Bridge also argues that Avicon's business is in direct competition with C-Bridge, and that the defendants intentionally interfered with C-Bridge's contractual and advantageous relations by 1) using C-Bridge's proprietary information to interfere with C-Bridge's clients and prospective investors and 2) inducing Casgar to leave his employment with C-Bridge to work for Avicon.

Defendants argue that Counts III, V, VI and VIII of the complaint should be dismissed because C-Bridge failed to state its claims with sufficient particularity, and because C-Bridge has failed to state a claim on which relief can be granted. See Mass.R.Civ.P. 8, 12(b)(6).

In his Answer to C-Bridge's complaint, Casgar denies that Avicon is in competition with C-Bridge and alleges in Count III of his counterclaim that C-Bridge intentionally interfered with Casgar's advantageous business relations with Avicon. C-Bridge moves to dismiss Count III of that counterclaim, alleging that Casgar has failed to plead the elements of a claim for intentional interference with advantageous relations.

DISCUSSION
Pursuant to Mass.R.Civ.P. 12(b)(6), a complaint must be dismissed if it fails to state a legal claim on which relief may be granted against the defendant. The court must accept all the facts asserted in the plaintiff's complaint as true and determine whether those facts constitute a viable cause of action against

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11923-DPW    Document 85-2    Filed 09/23/2005    Page 3 of 5

Not Reported in N.E.2d                                                                                                     Page 2
Not Reported in N.E.2d, 1999 WL 959673 (Mass.Super.)
**(Cite as: 1999 WL 959673 (Mass.Super.))**

defendant. For dismissal under Mass.R.Civ.P. 12(b)(6), a court must find "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *General Motors Acceptance Corp. v. Abington Casualty Ins. Co.,* 413 Mass. 583, 584, 602 N.E.2d 1085 (1992). C-Bridge argues that defendants' motion to dismiss fails to satisfy this standard.

a. Misappropriation of Trade Secrets

*2 A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue. See *Microwave Research Corp. v. Sanders Assoc.,* 110 F.R.D. 69, 672 (D.Mass.1986). Such identification is necessary to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets. *Id.* Consequently, plaintiffs must demonstrate a factual basis for their claim and, where possible, identify their alleged trade secrets with some specificity. *Id.* at 674. The court must strike a balance between "a plaintiff's right to discovery and a defendant's right to be protected against devastating injury which may result if it develops that plaintiff's claim is without substance." *Id.* at 672, quoting *Ray v. Allied Chemical Corp.,* 34 F.R.D. 456, 458 (S.D.N.Y.1964). In this case, defendants allege that C-Bridge's references to misappropriation of a business plan and of various unidentified documents fail to identify its alleged trade secrets with sufficient particularity.

At this stage of the proceedings, the court must determine whether C-Bridge has identified its alleged trade secrets with sufficient particularity to survive a motion to dismiss. See *Brum v. Town of Dartmouth,* 44 Mass.App.Ct. 318, 321, 690 N.E.2d 844 (1998). In the case of the Business Plan, C-Bridge has provided the requisite degree of specificity. The business plan has been identified by C-Bridge as a single written document that was removed by Leary and Peters when they left C-Bridge to form Avicon.

C-Bridge also alleges that the defendants misappropriated certain source codes, work processes and customer deliverables when they left C-Bridge's employ. Some of these documents originated in C-Bridge workshops, and others were developed for specific C-Bridge customers. Where C-Bridge should have knowledge of the particular documents and source codes at issue, it is appropriate for C-Bridge to identify with greater particularity the specific customer material it claims was misappropriated. Defendants are entitled to a more definite statement of the specific trade secrets at issue. See Mass.R.Civ.P. 12(e).

In order to prove that specific information qualifies as a trade secret, a business must also prove that it took the necessary steps to insure the material's confidentiality. See *Jet Spray Cooler, Inc. v. Gifford K. Crampton,* 361 Mass. 835, 841, 282 N.E.2d 921 (1972). The business must demonstrate that it pursued an "active course of conduct designed to inform ... employees that such secrets and information were to remain confidential." *Id.* at 841, 282 N.E.2d 921. C-Bridge argues that it has satisfied this standard by marking documents confidential and by having employees and customers sign confidentiality agreements.

*3 A court will permit a plaintiff to prevail on a motion to dismiss "unless it appears *with certainty* that he is entitled to no relief under any combination of facts that could be proved in support of his claim." *Id.* at 322 (emphasis in original). The defendants were key management employees of C-Bridge who had access to certain customer-specific information. C-Bridge has made at least a minimal showing that it took steps to protect the secrecy of certain trade secret information to which the defendants had access as C-Bridge employees.

b. Breach of Contract

C-Bridge claims that by misappropriating its trade secrets, the defendants breached their non-disclosure agreements. The defendants argue that this claim also must fail because of C-Bridge's failure to identify the alleged confidential/and or proprietary information with sufficient particularity. Specifically, the defendants argue that if C-Bridge cannot support its claim for breach of non-disclosure agreements where it has failed to identify properly the trade secrets it alleges have been disclosed as the basis of the breach of contract claim. Where C-Bridge sufficiently identified its Business Plan as a confidential document and is being allowed to submit a more definite statement regarding the other confidential materials it claims were misappropriated, defendants are not entitled to have this count dismissed.

c. Intentional Interference with Contractual and Advantageous Relations

The defendants allege that C-Bridge's claim for intentional interference fails to state a claim on which relief may be granted. See Mass.R.Civ.P. 12(b)(6). Where C-Bridge has established that it had a non-competition agreement with Casgar, and that the defendants, as principals of Avicon, Inc., solicited Casgar to leave C-Bridge to accept employment with Avicon, it has stated a sufficient cause of action to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:04-cv-11923-DPW   Document 85-2   Filed 09/23/2005   Page 4 of 5

Not Reported in N.E.2d
Not Reported in N.E.2d, 1999 WL 959673 (Mass.Super.)
(Cite as: 1999 WL 959673 (Mass.Super.))

Page 3

survive a motion to dismiss. See *Brum*, 44 Mass.App.Ct. at 321, 690 N.E.2d 844.

C-Bridge further alleges that the defendants used proprietary customer information to lure prospective clients away from C-Bridge and to discourage potential investors from investing in C-Bridge. These allegations, which must be taken as true for the purpose of this motion, are sufficient to survive a motion to dismiss. See *Brum*, 44 Mass.App.Ct. at 321, 690 N.E.2d 844.

### d. Chapter 93A

Finally, the defendants argue that C-Bridge's claim for violation of G.L. c. 93A ("93A"), the Massachusetts Consumer Protection Statute, should be dismissed. See Mass.R.Civ.P. 12(b)(6). As a general rule, 93A does not apply to disputes arising out of the employment relationship. See *Manning v. Zuckerman*, 388 Mass. 8, 12, 444 N.E.2d 1262 (1983). C-Bridge argues, however, that *Manning* does not apply to a claim for misappropriation of trade secrets where the employee is no longer employed by the owner of the trade secrets. See *Peggy Lawton Kitchens Inc. v. Hogan*, 18 Mass.App.Ct. 937, 940, 466 N.E.2d 138 (1984). Post-employment activities arising from contractual undertakings entered into as part of an employment relationship are not actionable under c. 93A. *Informix v. Rennell*, 41 Mass.App.Ct. 161, 163, 668 N.E.2d 1351 (1996). "Contract disputes between an employer and an employee are ... 'private in nature' and do not occur in the ordinary 'conduct of any trade or business' as contemplated by [93A]." *Id.* Alleged violations of non-disclosure agreements that were signed as part of the employer-employee relationship, are not actionable under c. 93A. *Id.*

*4 That does not end the inquiry, however. Plaintiffs also allege that these defendants' intentional interference with C-Bridge's contractual and advantageous business relations constitutes a violation of 93A. Employees may properly plan to compete with their employer and take steps to do so while still employed without being obliged to disclose their plans. *Augat, Inc. v. Aegis, Inc.*, 409 Mass. 165, 172, 565 N.E.2d 415 (1991). "There are, however, certain limitations on the conduct of an employee who plans to compete with an employer ..." *Id.* at 172-73, 565 N.E.2d 415. Certain breaches of duty may expose the employee to liability under G.L. c. 93A. *Id.* On the basis of the allegations made, the court cannot say that there is no set of facts which would subject the defendants to liability under G.L. c. 93A.

### e. Casgar's Counterclaim

C-Bridge moves to dismiss Count III of defendant Casgar's counterclaim, which alleges that C-Bridge intentionally interfered with Casgar's advantageous relations with Avicon. Casgar alleges in his Answer that Avicon is not in competition with C-Bridge; that the two companies are engaged in very different businesses. Consequently, Casgar argues that C-Bridge's entire suit is frivolous, and was intended merely to interfere with his business relationship with Avicon. C-Bridge argues that Count III must be dismissed under Mass.R.Civ.P. 2(b)(6) because Casgar has failed to state a claim on which relief may be granted. Specifically, C-Bridge argues that Casgar has failed to show that C-Bridge interfered with Casgar's business relationship with Avicon or that C-Bridge caused Casgar actual pecuniary harm. See *Morochnik v. Quigley*, 17 Mass.App.Ct. 1035, 1036, 461 N.E.2d 1220 (1984).

In evaluating a motion to dismiss a counterclaim, the court must accept as true the allegations of the counterclaim, as well as any inferences that may be drawn from it. *Mulvanity v. Pelletier*, 40 Mass.App.Ct. 106, 108, 661 N.E.2d 952 (1996). A counterclaim would not be dismissed for failure to state a claim unless it appears beyond doubt that the movant can prove no set of facts in support of his counterclaim that would entitle him to relief. See *Nader v. Citron*, 372 Mass. 96, 98, 360 N.E.2d 870 (1977).

In Massachusetts, a claim for intentional interference with advantageous business relations may be based on the institution of a lawsuit designed to interfere with a business relationship. See *Powers v. Leno*, 24 Mass.App.Ct. 381, 385, 509 N.E.2d 46 (1987). Taking the allegations of Casgar's counterclaim as true, Casgar has alleged sufficient facts to survive a motion to dismiss.

### ORDER

For the foregoing reasons, it is hereby ORDERED that Defendants' motion to dismiss is *DENIED*. However, the plaintiff is ORDERED to provide a more definite statement within thirty days of this order identifying with greater particularity the specific customer material and/or trade secrets it alleges to have been misappropriated.

*5 Plaintiffs' motion to dismiss Count III of Casgar's counterclaim is *DENIED*.

Not Reported in N.E.2d, 1999 WL 959673

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d  
Not Reported in N.E.2d, 1999 WL 959673 (Mass.Super.)  
**(Cite as: 1999 WL 959673 (Mass.Super.))**

Page 4

(Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.