# EXHIBIT 5



Only the Westlaw citation is currently available.

Superior Court of Massachusetts.
STAFFBRIDGE, INC. et al. [FN1]

> FN1. Scott Nieh, Laura Yao-Nieh and Nigel Lui.

v.

GARY D. NELSON ASSOCIATES, INC. d/b/a
Nelson Human Resources Solutions et al. [FN2]

> FN2. Gary D. Nelson.

No. 024912BLS.

June 11, 2004.

*MEMORANDUM AND ORDER ON PLAINTIFFS'
EMERGENCY MOTION TO CONTINUE THE
PRETRIAL
CONFERENCE AND RENEWED REQUEST FOR
MODIFICATION OF SCHEDULING ORDER AND
DEFENDANTS' CROSS MOTION*

ALLAN VAN GESTEL, Justice of the Superior Court.

*1 This matter is before the Court literally on the eve of trial. There are two motions: an emergency motion by the plaintiffs seeking to continue the pretrial conference and a renewed request for a modification of the scheduling order governing this case; and an emergency cross motion by the defendants for fees and costs. The Court heard the parties orally on June 9, 2004.

BACKGROUND
The following procedural history provides some background.

The Tracking Order that issued on December 17, 2002, at the request and with the concurrence of the parties, called for all non-expert discovery to be completed almost a year ago, by July 30, 2003, and all expert discovery to be completed over six months ago, by December 1, 2003. In fact discovery was not only not completed in a timely fashion, it has barely begun.

The complaint presents three counts: misappropriation of trade secrets; breach of contract for software licensing; and breach of fiduciary duty by a shareholder in a closely held corporation.

The plaintiffs are developers of workforce management software which they call StaffFind. The corporate defendant is a provider of temporary staffing. In May 2000, the parties entered into a license agreement under which the plaintiff would "do all work necessary to permit" the defendant to offer its customers a version of StaffFind that would manage certain information generated in the staff recruitment process. The plaintiff retained ownership in StaffFind, and the defendants agreed not to disassemble, de-compile or reverse engineer the software.

Allegedly because of dissatisfaction with StaffFind, the corporate defendant, with assistance from an independent company, created its own software product for the same purpose as StaffFind. The defendant's product is called WorkForceLogic ("WFL").

A prominent feature of the plaintiffs' claims is the charge that WFL was created by the misappropriation of the trade secrets contained in StaffFind.

In a December 1, 2003 letter from plaintiffs' counsel to defendants' counsel, the plaintiffs attempted to define or describe their trade secrets. In response to what the plaintiffs proffered, the defendants responded with a detailed affidavit from Mark Crovella, an Associate Professor of Computer Science at Boston University, that asserted that the information presented by the plaintiffs was insufficient to enable anyone to understand, identify and distinguish what trade secrets, if any, are in the StaffFind product. This Court examined the proffer and expressed its basic, albeit untrained, agreement with Professor Crovella. In part, the Court's reaction was sparked by its own recent experience in a remarkably similar case--*Softscape, Inc. v. Cambia Consulting, Inc .,* Suffolk Superior Court, No. 03-2824 BLS. [FN3]

> FN3. In *Softscape,* a jury found for the plaintiffs on their claim that Cambia misappropriated its computer software trade

Not Reported in N.E.2d                                                                                                                Page 2
Not Reported in N.E.2d, 2004 WL 1429935 (Mass.Super.)
**(Cite as: 2004 WL 1429935 (Mass.Super.))**

secrets in violation of a licensing agreement. This Court, however, in ruling separately on a G.L.c. 93A count, found that no trade secrets were proved. *Softscape* is now believed to be on appeal, with the jury and the judge on opposite sides of the trade secret issue.

This Court noted in its earlier Order in this case:
Both for the defendants to respond to the charges against them, and for the Court to make appropriate findings and rulings on the case, there must be a clear designation that distinguishes unique or proprietary material from the vast body of the StaffFind program and source code, and apprises a person what trade secrets in StaffFind the plaintiffs claim are to be found in WFL. That cannot be done on the present record.
*2 Recently, on June 2, 2004, this Court denied the defendants' motion for summary judgment and, treating the plaintiffs' earlier motion mentioned above as a Rule 56(f) motion seeking further discovery, denied it as well.

Once again, the same issues have arisen. The plaintiffs want more time for discovery and the defendants want reconsideration and allowance of their motion for summary judgment.

## DISCUSSION
On the record before it--which has not effectively changed since last January--this Court should be disinclined to grant additional time for further discovery. See, e.g., *Greanleaf v. MBTA,* 22 Mass.App.Ct. 426, 429-30 (1986). At the same time, and admittedly arriving under a different circumstance, this Court takes to heart Justice Dreben's admonition in *O'Connor v. City Manager of Medford,* 7 Mass.App.Ct. 615, 619 (1979):
Our judicial system is not "a mere game of skill or chance" in which the judge is merely an "umpire." *In re Barnett,* 124 F.2d at 1010-11. We will not permit the rules to subvert a just result ...
Further, due process requirements may affect the appropriateness of any response by this Court to the present situation. See *Gos v.. Brownstein,* 403 Mass. 252, 255-57 (1988).

To achieve justice, judges are expected to provide litigants with an opportunity for a trial when that is appropriate. "The Superior Court is a tribunal of superior and general jurisdiction. Inherently it has wide power to do justice and to adopt procedure to that end." *Fanciullo v. B.G. & S. Theatre Corp.,* 297 Mass. 44, 51 (1937). For that reason, and one other,

this Court will attempt here to craft an Order that is fair to both sides. The other reason is that this is not just a suit over the misappropriation of what are alleged to be trade secrets. Count II of the complaint seeks relief for breach of the licensing agreement, a claim that does not necessarily require a trade-secret underpinning. Nor does Count III, which is against the individual defendant for breach of his fiduciary duties as a shareholder in a close corporation.

Before any discovery relating to trade secrets themselves is permitted, however, this Court must revisit the issue of the plaintiffs' designation of what it is that they claim are trade secrets. This effort has caused a careful re-reading of the Affidavit of Professor Crovella (Paper # 21) and the Affidavit of Michael Stonebraker (Paper # 30) submitted by the plaintiffs.

Attached to the Crovella Affidavit as Exhibit 2 is the December 1, 2003, letter from plaintiffs' counsel to defendants' counsel enclosing what is characterized as "the designation of trade secret material ... with respect to StaffFind and its components." Enclosed with the letter are 11 pages of description, with three multi-page exhibits. Almost all of the foregoing is not understandable to a lay reader like the Court, not because it is unreadable, but because it is presented in un-understandable software jargon.

*3 Professor Crovella's background and curriculum vitae demonstrate that he is immensely qualified to speak with authority on the subject at hand. As noted above, he is an Associate Professor in the Department of Computer Science at Boston University. He holds a B.S. from Cornell University, an M.S. from the State University of New York at Buffalo, and an M.S. and a Ph.D. in Computer Science from the University of Rochester.

In his Affidavit, Professor Crovella explains and states that "it is impossible to identify what trade secrets, if any, are present in the StaffFind product" from a review of what was provided to him. He goes on to say that this "deficiency would prevent anyone comparing the two programs [StaffFind and WFL] from vetting WFL for trade secrets supposedly found in StaffFind." This is because "the Designation includes functional characteristics that would be present in any similar software program; fails to separate claimed secrets from the vast body of source code designated; and fails to distinguish between data dictated by user-visible requirements and actual trade secrets."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 1429935 (Mass.Super.)
(Cite as: 2004 WL 1429935 (Mass.Super.))

At oral argument on the present motions, counsel for the plaintiffs stated that there were three matters that constituted his clients' trade secrets: the source code as a whole; the database schema; and the customer databases.

Professor Crovella summarized his comments as to each of those three matters in the following ways.

1. The source code designation "fails to separate the claimed secrets from the vast body of source code designated; and without this, it is impossible to determine whether such claimed trade secrets are present in the WFL software, and whether those claimed trade secrets are in fact generally know to the trade";

2. The database schema designation "makes no distinction between the portions of the database tables, field definitions, and formats that would be naturally dictated by user-visible requirements, and those portions (if any) that represent trade secrets, the posited similarity would tell nothing"; and

3. The customer databases designation "does not distinguish unique or proprietary material from the vast body of the StaffFind program and source code (including its patently generic portions), and does not apprise a person what trade secrets StaffBridge claims are to be found in WFL."

Professor Michael Stonebraker, who submitted an affidavit on behalf of the plaintiffs, possesses a similarly impressive curriculum vitae. He is a retired professor at both the University of California at Berkeley and at its Graduate School. He holds a B.S .E.E. from Princeton University and a Ph.D. in Computer Information and Control Engineering from the University of Michigan.

Professor Stonebraker, in his Affidavit mentions that he has reviewed Professor Crovella's Affidavit, however, Professor Stonebraker makes no effort in his own Affidavit to address the problems and concerns raised by Professor Crovella. Rather, in general and conclusory language, Professor Stonebraker opines that "StaffBridge is entitled to claim as a trade secret the data in the customer databases for Veritas, Brocade and Barclays Global Investors" and that "StaffBridge is also entitled to consider its database schema a trade secret, not because it is novel, in and of itself, but because access to the database schema would enable a software programmer to develop WorkForceLogic in such a way as to enable an expeditious conversion of StaffBridge customer databases to the WorkForceLogic platform."

*4 Aside from conceding that he "find[s] the StaffBridge program not particularly novel," Professor Stonebraker otherwise engages mostly in speculation about how WFL was created and that it must have been copied from StaffFind. Nothing in Professor Stonebraker's Affidavit would permit even a person with Professor Crovella's expertise, let alone a person with this Court's limited lack of expertise, to know and be able to distinguish what it is in the StaffFind software that is actually protectable from that which is not.

While perhaps rewarding the lackadaisical and the less than diligent pursuit of discovery, the interests of justice warrant giving the plaintiffs one final chance to pull up their socks and get ready for trial. But such an opportunity cannot be at the risk of the defendants' entitlement to know with precision what is claimed as a trade secret before any discovery of the defendants' allegedly infringing materials. See, e.g., *SmithKlineBeecham Pharmaceuticals Co. v. Merck & Co., Inc.*, 766 A.2d 442, 447 (Del.2000); *Computer Economics, Inc. v. Gartner Group, Inc.*, 50 F.Sup.2d 980, 989 (S.D.Cal.1999).

ORDER

1. On or before June 30, 2004, the plaintiffs, through their counsel, may have the opportunity to provide to the Court and the defendants, through their counsel, a second designation, in affidavit form and under oath, that sets forth with rigorous and focused particularity what, and only what, the plaintiffs claim to constitute the trade secrets allegedly misappropriated by either of the defendants that form the basis for this law suit.

The designation must, with clarity that can be understood by a lay person, make clear and distinguish what is protectable from that which is not.

2. Upon receipt of the second designation referred to in paragraph 1 above, the defendants shall have until July 23, 2004, to submit to the Court and counsel for the plaintiffs, a response to the second designation.

If the response is other than an acceptance of the adequacy of the second designation, the defendants' response, like the plaintiffs' second designation, shall be in affidavit form and under oath.

3. The Court will hold a status conference on August 4, 2004, at 2:00 p.m., for the purpose of discussing the future course of this case.

A. If no second designation is served by the plaintiffs within the time provided, then this Court will grant summary judgment in favor of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in N.E.2d
Not Reported in N.E.2d, 2004 WL 1429935 (Mass.Super.)
**(Cite as: 2004 WL 1429935 (Mass.Super.))**

Page 4

defendants on Count I relating to the trade secret issues and will expect the parties to present proposals for possible minimal further discovery and litigation, if any, on Count II for breach of the licensing agreement and Count III for breach of fiduciary duties by the individual defendant.

B. If a second designation is served and accepted for adequacy, without waiving any rights to challenge the trade secret nature of what is designated, then the Court will expect the parties to present proposals for further minimal discovery and litigation of the entire case.

**\*5** C. If a second designation is served and not accepted for adequacy, then the Court, at the status conference, will accept such written filings either side chooses to make and will hear oral argument on the parties' respective positions. The Court's subsequent decision on the adequacy of the second designation will dictate whether the case proceeds on all three counts or just on Counts II and III.

Not Reported in N.E.2d, 2004 WL 1429935 (Mass.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.