IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>　　　　Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>　　　　Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>　　　　Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>　　　　Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>　　　　Additional Counterdefendants. | |

**THE FACEBOOK DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL PARTICULARIZED IDENTIFICATION OF TRADE SECRETS IN RESPONSE TO THE FACEBOOK DEFENDANTS' INTERROGATORY NO. 2**

Defendants Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc. (the "Facebook Defendants") collectively submit this reply memorandum in support of their Motion to Compel Particularized Identification of Trade Secrets in Response the Facebook Defendants' Interrogatory No. 2.

## I. INTRODUCTION

Plaintiff's Opposition to this Motion ("CU Opposition") misconstrues the law, its own complaint, and the Facebook Defendants' Memorandum in Support of the Facebook Defendants' Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendants' Interrogatory No. 2 ("Facebook Motion" or "Motion"). Accordingly, the Motion should be granted.[1]

## II. UNDER ANY STANDARD, PLAINTIFF MUST DISTINGUISH RELATED OR CONSTITUENT MATTER WHICH IS UNPROTECTABLE

It is a truism that matter cannot, in good faith, be designated a "unique" and "confidential" trade secret yet also have been in the public domain. Where there is an admittedly related corpus of precedent or contextual matter, as here, plaintiff must distinguish it. This burden increases where plaintiff itself played a key role in prematurely releasing the matter into the public domain, just as CU has done.

### A. Law Requires CU to Distinguish Unprotectable Matter in Designation

On page 12 of its Opposition, CU states that "the [Facebook Defendants] cite <u>no law</u>" for the requirement that CU must distinguish its trade secret listing from matter in the public domain. Opp. 12 (emphasis added); *see also id.* at 11-13.

---

[1] ConnectU raises numerous arguments related to other discovery issues and other disputes between the parties. As this motion is focused on the sufficiency of ConnectU's response, Defendants will not respond to those other allegations in this memorandum. Defendants disagree with ConnectU. Should the Court want briefing on any of these peripheral issues, Defendants request leave to supplement its reply in the future.

This statement is false. *See* Mot. at 6 ("information that is in the public domain cannot be appropriated by a party as its proprietary secret") (quoting Federal Circuit case applying Massachusetts law[2]); *id.* ("'[o]nce a trade secret enters the public domain, the possessor's exclusive rights to the secret are lost'") (quoting First Circuit case); *id.* ("'[a] trade secret that enters the public domain strips its owner of the exclusive rights to the information'") (quoting District of Massachusetts case); *e.g., id.* at 7 ("'[t]he designation must, with clarity that can be understood by a lay person, make clear and distinguish what is protectable from that which is not'") (quoting District of Massachusetts case). *See also, e.g., Prescott v. Morton Intern., Inc.*, 769 F.Supp. 404, 406 (D.Mass. 1990) (publication of trade secret, as by patent issuance, destroys it), citing *Wise v. Hubbard*, 769 F.2d 1, 2-3 (1st Cir. 1985).

CU later contradicts its statement that "no law" was cited by attempting to distinguish several of the cases that the Facebook Defendants *did* cite, such as *Staffbridge, Inc. v. Nelson Assocs., Inc.*, No. 024912-BLS, 2004 WL 1429935 (Mass. Super. June 11, 2004) ("*Staffbridge*") (requiring more particularized description of trade secrets prior to any additional discovery).[3] *See* CU Opp. at 12-13. In fact, CU recognizes "the court ordered that plaintiff's "designation must, with clarity that can be understood by a lay person, make clear and distinguish what is protectable from that which is not." (citations omitted). CU Opp. at 12. For these reasons, *Staffbridge* applies in this case, and requires that CU define its alleged trade secrets with "rigorous and focused particularity". *Staffbridge* at *4. CU also mischaracterizes *L-3 Communications Corp. v. Reveal Imaging Technologies, Inc.*, No. 035810BLS, 2004 WL

---

[2] The Federal Circuit case cites, for example, *J.T. Healy & Son, Inc. v. James A. Murphy & Son, Inc.*, 357 Mass. 728, 260 N.E.2d 723, 730 (1970) (a trade secret is lost when the owner "lie[s] back and do[es] nothing to preserve its essential secret quality"). *See Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, No. 04-1462, 2005 WL 2030281, at *12 (Fed. Cir. Aug. 24, 2005).

2915743, *13 (Mass. Super. Dec. 2, 2004) ("*L-3 Communications*"), erroneously stating that it does not require a plaintiff to separate its trade secrets from what is known in the trade or in the public domain. CU Opp. at 12.

> On the contrary, *L-3 Communications* quotes Staffbridge at length, reaffirming that:
>
> "Both for the defendants to respond to the charges against them, and for the Court to make appropriate findings and rulings on the case, there must be a clear designation that distinguishes <u>unique or proprietary material</u> from the vast body of [information alluded to in the amended complaint], and apprises a person what trade secrets . . . the plaintiff claim[s] are to be found {in defendants' product}."

*L-3 Communications*, at *13. Matter cannot be "unique" and "proprietary" yet still be within the public domain. As in *Staffbridge*, if the Court is requiring a plaintiff to distinguish "unique" and "proprietary" material from the relatively circumscribed matter in a prior designation, or a complaint, it *all the more* requires a plaintiff to distinguish it from necessarily non-unique matter in the public domain with which it may be conflated. This "distinction rule" is not in addition to the trade secret particularization requirement. Rather, the former is concomitant with and necessary to the latter.

### B. Trade Secret "Combination" INCREASES Burden of Distinguishing Public Domain Matter and of Particularization Generally

Several pre-existing public websites, including Club Nexus, have all the features of the "combination" proffered in CU's present designation. See Mot. at 2, 8-20 (repeating references to identical websites for each claimed element). Therefore, CU must distinguish the public domain "combinations" from those that were not public.

Regardless, even if only part of the combination was public domain, CU would have to distinguish it, particularly where, as here CU is attempting to establish a very narrow threshold for trade secret existence. Otherwise, CU might claim that combinations of elements (less than

---

[3] *See also infra* at §III.A.

-3-

the complete listing of elements) were its trade secrets and were misappropriated – even where such lesser combinations were already in the public domain.

However, the CU's designation is not just partially collected from the public domain. **Every single element is public domain**, and CU does not dispute this. *See generally* CU Opp.; *id.* at 18; Mot. at 8-20. CU appears to be claiming only the "assembly" of certain public domain elements as its trade secret. Therefore, the need to particularize (i) the precise nature of the combination, and (ii) precisely which elements and combination of elements are unprotectable, is much greater.

Lastly, unless each element is further specified, it will be difficult for the Court to tell which "combinations" are unprotectable.

### C. CU's General Failure to Keep Any Designated Matter Confidential Increases Burden to Distinguish, Particularly as to Matter CU Itself Released Into Public Domain

CU does not dispute that the lack of *a priori* confidentiality is a complete defense to a trade secret claim. *See* CU Opp. at 13. Instead of arguing this indisputable tenet of Massachusetts and other trade secret law, CU simply asserts that this foundational matter "is an issue for another day". CU Opp. at 13 (citing no case law). CU cannot simultaneously admit that its designation contains extensive matter it never kept confidential and argue that the protectability of such matter is an issue "for another day". CU's designation of mostly (or completely) non-secret matter makes this issue immediate and unavoidable. Moreover, CU must meet this burden now as a matter of law. *See, e.g., Cambridge Internet Solutions, Inc. v. Avicon Group*, No. 99-1841, 1999 WL 959673, *2 (Mass. Super. Sept. 21, 1999) (rule that plaintiff must prove existence of trade secret for trade secret designation entails requirement that plaintiff prove it took all necessary steps to ensure confidentiality).

CU essentially admits that it must address confidentiality on the next page, where it

claims that the following things were kept "secret":

- the Founders'[4] idea of bringing a social network to the college level;
- the project and enterprise of developing the website;
- the plan to launch the website;
- the plan to make money on the website.

CU Opp. at 12.

On the contrary, every one of these claimed elements was disclosed by ConnectU's principals in 2003. *See, e.g.,* CU Opp. at 3 (admitting that pre-launch version of Harvard Connection website was publicly available on the Internet and 2003 and that at least Divya Narendra discussed the above plans with third parties, without referencing confidentiality).[5] Nor has ConnectU produced a single document explicitly requiring confidentiality dated prior to late winter or early spring of 2004 – long after the alleged misappropriation took place. CU is attempting to put the cat back in the bag. Indeed, it is questionable whether the cat was ever there in the first place.

### D. Parties' Contemporaneous Knowledge of Public Domain Precedent Irrelevant to Present Requirement to Distinguish

The determination of whether or not a trade secret exists is an objective test, which is the plaintiff's burden to meet early[6] in the litigation. *See Storage Tech.*, No. 04-1462, 2005 WL

---

[4] Note that Plaintiff's definition of "Founders" excludes Zuckerberg. *See* CU Opp. at 3.

[5] The sole exception might be the Founders plan to make money on the website. Apparently, however, this was primarily kept secret from Defendant Zuckerberg. Of course, the plan to make money on website, even a college website, did not originate with Plaintiff or its principals. *See* Mot. at 8-20.

[6] It must do so early because otherwise the claim is not "cognizable" to the court. *See, e.g., Microwave Research Corp. v. Sanders Assoc.*, 110 F.R.D. 69, 672 (D.Mass. 1986). This substantive test occurs so early because it is necessary to ensure that the lawsuit is meritorious, and that a competitor, such as CU, cannot get access to Defendants' trade secrets without proper warrant. *See id.* The fact that there are other claims in the lawsuit is immaterial to this purpose.

2030281 *12 (Fed. Cir. Aug. 24, 2005). The contemporaneous *knowledge* of the parties as to public domain information is irrelevant to Plaintiff's present burden of distinguishing it. CU's argument to the contrary has been explicitly and unequivocally rejected by the Federal Circuit as contrary to Massachusetts law. *See id.*, citing *USM Corp. v. Marson Fastener Corp.*, 393 N.E.2d 895, 899-900 (Mass. 1979)[7] and *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 160 (1989).

### III.  PRESENT DESIGNATION INSUFFICIENT UNDER ANY STANDARD

#### A.  Rigorous and Focused Particularity is Appropriate Here

For all of the above reasons, the *Staffbridge* standard of "rigorous and focused particularity" should apply here. CU attempts to distinguish *Staffbridge* and related cases at various points in its brief. *See* CU Opp. at 12-13; *see also supra*.[8] However, the purported distinctions only serve to strengthen the applicability of this holding. First, the *Staffbridge* Court references the need for distinctions between the designated matter and **both** the plaintiff's own source code **and** trade or public domain information. *See Staffbridge*, at *3 (favorably quoting defendant's expert's argument that distinction from related public domain matter required); *see id.* at *1 ("[t]his Court . . . expressed its basic, albeit untrained, agreement with [defendant's

---

[7] Both *Storage Tech.* and *Marson* postdate and supersede (or narrow) the 1976 *Analogic* case CU cites at 19. Moreover, *Analogic's* focus on (i) written covenants by admitted former employees *of the plaintiff* and (ii) time required for reverse engineering (*see Analogic Corp. v. Data Translation, Inc.*, 358 N.E.2d 804 (Mass. 1976)), factually distinguish it. The *Prescott* case, also cited in CU's Opposition at 19, is completely inapposite. *Prescott* stood for the proposition that a proven misappropriator cannot "baptize" himself of wrongdoing by "patenting the ill-gotten information". *Id.* at 407. Here, the publications (i) pre-date Plaintiff's claimed creation, and/or (ii) were made by third parties and Plaintiff's own agents.

[8] Again, CU's attempt to distinguish *L-3 Communications Corp. v. Reveal Imaging Technologies, Inc.*, No. 035810BLS, 2004 WL 2915743 (Mass. Super. Dec. 2, 2004) ("*L-3 Communications*") is similarly erroneous. *L-3* actually quotes *Staffbridge* at length and reaffirms as absolute the need for a designation to distinguish matter which is actually "unique" or "proprietary". *L-3 Communications*, at *13.

expert]"); *id.* *4 (order requiring that **all** unprotectable material be distinguished). CU has not even distinguished unprotectable material in its source code (*see* Mot. at 19 (response designating Harvard Connection code as a whole)), much less commonly known trade information or other related matter in the public domain. *See* Mot. at 1-2, 9-20.

Second, the *Staffbridge* Court ruled not only that discovery was stayed until defendant **accepted** the adequacy of the designation (*see* CU Opp. at 12), but that it was prepared to dispose of the claim altogether based on the adequacy of the designation. *Staffbridge*, at *5.[9]

Third, CU's attempt to distinguish *Staffbridge* on the grounds that "it was on the eve of trial" (CU Opp. at ), is inconsistent with its own arguments and exaggerates the extremity of that case's posture. *See e.g.,* CU Opp. at 11 (relying on summary judgment case); *see Staffbridge*, at *1 (though long delayed due to plaintiff's delay in identifying its trade secrets, discovery had "barely begun"). *Id.* at *2 (noting that plaintiff was seeking additional time for discovery); *id.* at *4 (referencing possibility of additional discovery).

A high particularization standard is warranted by each of: (i) the terms of the actual interrogatory, (ii) Rule 33(b)(1) of the Federal Rules of Civil Procedure, (iii) the applicability, *a fortiori*, of *Staffbridge*, and other cases (*see generally* Mot.), (iv) the massive amount of confusion that exists as to whether Plaintiff is attempting to claim matter which was wholly or

---

[9] CU argues that it should be, to some degree, exempted from providing high levels of specificity because this is not a summary judgment motion. See id. at 12 ("[i]f such were the law, every motion seeking the identification of a plaintiff's trade secret would become a summary judgment motion"). CU is wrong. If such were the case, no plaintiff would ever be subject to a challenge of the sufficiency of a trade secret claim. The reason for the trade secret identification law is to ensure protection against frivolous claims based upon information in the public domain. Defendants merely seek to ensure that plaintiff complies with its obligations before it is entitled to seek the onerous discovery it requests. In addition, the trade secret identification must be specific with rigorous particularity to ensure that the Court can evaluate discovery requests in light of the designation. Without a focused, particularlized identification, the Court will be left guessing as to what discovery is relevant. *See also Staffbridge*, *4-5 (laying out procedure for

partially in the public domain, (v) ambiguity as to what "combination" is being claimed (i.e., misappropriation necessarily includes **all** elements of Response 2 or different combinatorial permutations thereof), (vi) Plaintiff's uniquely personal knowledge as to what it or its founders leaked in 2003 and before, and (vii) Plaintiff's attempt to use one definition of "social network" and other terms to apply to Harvard Connection (a loose definition[10]) and vastly narrower ones to distinguish public domain precedent. *See* CU Opp. at 19-20.[11] Plaintiff is proffering a dynamic trade secret claim definition which can "contract" to avoid precedent but "expand" to reach Defendant activities. In other words, the designation is deliberately equivocal. Therefore, all the policies underlying the trade secret designation rule practically require rigorous and focused particularity.

### B.  CU's Response Inadequate Under Any Potential Legal Standard

The Facebook Defendants' Interrogatory No. 2 asks Plaintiff to "[i]dentify with precision and specificity each and every alleged trade secret ConnectU contends was misappropriated by Defendants." CU fails to meet the requested "precision and specificity" standard of the question, as well as the related requirements of Federal Rule of Civil Procedure 33(b)(1) (requiring that each interrogatory be answered "separately and fully"). It equally fails the particularity standards of Massachusetts state law.

---

complete disposition of trade secret claim absent stipulated adequacy of designation).
[10] A loose, minimalistic definition of "social network" allows Plaintiff to call Harvard Connection a social network (which it was not). This, in turn, would wrongly allow Plaintiff to stretch its argument that Harvard Connection was similar to the Facebook (which was and remains a social network). The fact that the Harvard Connection code was dysfunctional – never sustaining complete operation, much less full embodiment of the claimed trade secrets – further muddies the waters and further demands that Plaintiff be much more specific. Defendants cannot "know" what such coded trade secrets were to the extent such code was non-operational.
[11] The fact that CU is able to particularize different websites – all with nominal "nodes" and "ties" – as "social networks" or not, belies its claims that it is unable to do so in its designation. The designation is amenable to further particularization by CU's own argument.

The Facebook Defendants have comprehensively detailed its arguments as to why the CU's present designation is ambiguous in its Motion and supporting materials. Again, CU's Opposition generally does little to address these problems.

As the Facebook Defendants stated in their Motion, and above, it is unclear **which** combination or combinations are entailed in the present trade secret designation. *See* Mot. at 8. (quoting CU's response: "[t]he trade secrets include, but are not limited to, the following **in combination**") (emphasis added).[12] "[I]n combination" is vague. As addressed in the Facebook Defendant's letter, as well as in their Motion, "in combination" could mean (i) only every single element and sub-element, or (ii) one or more of any of such vague trade secret "description. *See, e.g.,* Mot. at 8-9. Assuming that each of the nine descriptions and the 11 subparts constituted definite elements, the present ambiguity would ostensibly allow Plaintiff to claim over **four hundred distinct combinations** of elements. Plaintiff's designation must be supplemented and clarified. Nothing in the cases cited by CU on page 16 of its Opposition allows the nature of the combination itself to be vague. Nor do any of these cases address situations where, as here, the instant combination was probably public domain.

Plaintiff argues that its specification is adequate because what was misappropriated was Plaintiff's actual "business plan." *See* CU Opp. at 14-15. How the business model could be "Plaintiff's", an entity which did not exist until spring of 2004, is not explained. If Plaintiff is referring to its own business model, this was only created after thefacebook.com was launched, if not substantially later. As Plaintiff must admit in accordance with its own production and testimony, the so-called Founders did not have a written business plan until after February 14,

---

[12] Relatedly, CU's statement "the trade secrets include" may not unequivocally answer the question posed, which was directed at matter misappropriated. This presents independent, if related, grounds to compel.

2005, having been prompted by a third party to create one. Therefore, this argument does not show adequacy.

In addition, CU has failed to prove that it took <u>any</u> steps to ensure confidentiality. *See supra, passim.* Cambridge *Internet Solutions, Inc. v. Avicon Group*, No. 99-1841, 1999 WL 959673, *2 (Mass. Super. Sept. 21, 1999) (rule that plaintiff must prove existence of trade secret for trade secret designation entails requirement that plaintiff prove it took all necessary steps to ensure confidentiality). CU must be compelled to meet this burden.

## IV.   CONCLUSION

For the reasons set forth above, and in its opening brief, the Facebook Defendants request the Court grant this motion to compel.

/ / /

/ / /

/ / /

| | |
|---|---|
| Dated:  September 27, 2005. | Respectfully submitted, |

             /s/  Joshua H. Walker
G. Hopkins Guy, III*
I. Neel Chatterjee*
Monte M.F. Cooper*
Joshua H. Walker*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
jwalker@orrick.com

Steve M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:     (617) 526-9600
Facsimile:      (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

ATTORNEYS FOR MARK ZUCKERBERG, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.

* Admitted Pro Hac Vice

DOCSSV1:427492