**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC,<br><br>       Plaintiff,<br><br>  v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>       Defendants.<br><br>MARK ZUCKERBERG and THEFACEBOOK, INC.,<br><br>       Counterclaimants,<br><br>  v.<br><br>CONNECTU LLC,<br><br>       Counterdefendant,<br><br>  and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>    Additional Counterdefendants. | CIVIL ACTION NO. 1:04-cv-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |

**REPLY TO DEFENDANTS' OPPOSITIONS TO PLAINTIFF'S MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS IN RESPONSE TO PRODUCTION
REQUEST NOS. 42, 44-46, 70-71, 85-96, 98-105, 107-110, 113, AND 169**

  After many hours of meet and confers and many letters, Defendants promised to produce certain documents and said they were leaning toward producing others. Defendants then broke this promise because of the trade secret identification issue, not because of any objections they had to the document requests. Thus, Defendants were prepared to waive their objections, at least with respect to the documents they

anticipated producing. Now, in response to Plaintiff's motion, Defendants argue that they should not have to produce any of these documents because they are suddenly irrelevant.[1]

The Facebook Defendants try to hide behind their motion to compel trade secret identifications, using that motion as an excuse not to produce documents that they promised to produce. However, as fully briefed and set forth in Plaintiff's Opposition to Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendants' Interrogatory No. 2 (Docket No. ("D.N.") 78, filed September 22, 2005), Plaintiff has already identified its trade secrets. Moreover, as set forth in that same paper, Plaintiff is not required to separate its trade secret from the public domain in the discovery stage of this case. This matter has been fully briefed by both parties. Plaintiff addresses herein only new arguments made by Defendants in their opposition briefs and refers the Court to Plaintiff's Opposition to Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendants' Interrogatory No. 2.

The Facebook Defendants also argue that Plaintiff's present motion was belated (TFB Opp. at 2, 8), which is simply not true. Plaintiff did not file this motion earlier because Defendants agreed to produce the documents. Why would Plaintiff file a motion to compel documents at a time when the Defendants were promising to produce them? It was only after Defendants broke their promises that such a motion became necessary. Plaintiff promptly filed the present motion after Defendants declared on

---

[1] The Facebook Defendants also state that they will produce documents if Plaintiff narrows its requests. (Opp. at 2) This was not a condition for their promise to produce documents during the last (July 26, 2005) meet and confer.

August 22, 2005 that they would not honor their promise to produce the documents that are the subject of this motion.

Defendant Saverin has filed a separate opposition. Defendant Saverin by his own admission is withholding documents responsive to the requests covered by this motion and should also be compelled to produce all responsive documents.

I.  **Facts**

   A.  **Factual Background**

Many of the facts set forth by the Facebook Defendants are inaccurate. Plaintiff refers the Court to the facts section of Plaintiff's Opposition to the Facebook Defendants' Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendants' Interrogatory No. 2.[2]

   B.  **Discovery Background**

The Facebook Defendants continue to whitewash the facts and raise extraneous arguments. Plaintiff responds in footnote 3 simply to set the record straight.[3]

---

[2] The Facebook Defendants again imply that Cameron and Tyler Winklevoss are not gainfully employed. (TFB Opp. at 2) Cameron and Tyler, who graduated from Harvard University in May 2004, are currently running ConnectU and training for the 2008 Summer Olympics in rowing.

[3] For example, the Facebook Defendants state that "Defendants have also produced three different versions of TheFacebbook's source code" (TFB Opp. at 4), but fail to mention that the oldest source code file for the facebook.com website is dated August 1, 2004 (six months after thefacebook.com launched) and that such code is contained in an unreadable version. The earliest uncorrupted version of thefacebook.com source code is from October 2004.

The Facebook Defendants also argue that "Plaintiff has failed to produce a single page of allegedly infringed copyrighted material." (TFB Opp. at 5) Plaintiff has produced thousands of pages of copyrighted Harvard Connection source code, which Plaintiff believes Defendants copied. However, Defendants have not produced any

3

As the Court is aware, the Facebook Defendants continue to refuse to produce post-May 21, 2004 documents. The Facebook Defendants do not even in good faith argue that documents created after May 21, 2004 are irrelevant. Instead, the Facebook Defendants claim that such documents are "less relevant," but not irrelevant. (TFB Opp. at 6 n.5) In a separate motion, Plaintiff has moved to compel production of such documents, which are likely to show efforts to cleanse thefacebook.com code of infringement. See Plaintiff's Motion to Compel the Production of Mirror Images of Defendants' Hard Drives and Other Electronic Memory Devices and Documents Created After May 21, 2004 (D.N. 37). Moreover, documents created after May 21, 2004 are vital to virtually all of Plaintiff's claims, for the reasons set forth in such motion.

In opposition to the present motion, the Facebook Defendants are inconsistent from one page to the next as to exactly what they are withholding. First, the Facebook Defendants imply that they are only withholding a limited amount of documents, stating that "Facebook Defendants are only withholding some financial and corporate

---

uncorrupted versions of code prior to October 2004, which would reveal the details of their infringement.

Contrary to the Facebook Defendants' claims, Plaintiff did not refuse to designate a witness to testify as to the copyright infringement topics, nor did the Plaintiff "refuse[] to identify any [infringing] copyrighted material." (TFB Opp. at 5). In fact, the Facebook Defendants' designation of thefacebook.com source code as confidential under the Protective Order makes it impossible for Plaintiff to provide a witness on such topics because no fact witness for Plaintiff can see the Facebook Defendants' website code. Further, the 30(b)(6) witness did not identify infringed or misappropriated source code because he was not asked, because he was not designated to testify on such topics. The Facebook Defendants also state that Plaintiff "initially" objected to Interrogatory No. 2, but then later answered. (TFB Opp. at 5) As stated many times before, that is not true. ConnectU never refused to identify its trade secrets, always said that it would do so in a timely manner, and in fact did so when its response to Interrogatory No. 2 was due on August 22, 2005.

4

documents created after May 21, 2004, and student records of individual Defendants." (TFB Opp. at 6-7). But that is completely inconsistent with the arguments they made in the Cross-Motion for Protective Order, in which they said that the number of documents they would need to review is one-twentieth the total collection of the U.S. Library of Congress. (Facebook Defendants' Opposition and Cross Motion for Protective Order, filed August 18, 2005, D.N. 43, TFB Brief at 3). In response, Plaintiff pointed out that the Facebook Defendants were trying to confuse the issue by combining arguments relating to the mirror imaging of hard drives with the production of post-May 21, 2004 documents, and that "it is unlikely that Defendants are withholding more than several hundred" responsive post-May 21, 2004 documents. (Plaintiff's Reply and Opposition to Cross Motion for Protective Order, D.N. 50, at 4) If the Facebook Defendants are correct in their statement on pages 6-7 of their brief, they are admitting that they are withholding a relatively small quantity of post-May 21, 2004 documents.

      The Facebook Defendants are further inconsistent in that they later state that the "Facebook Defendants are not withholding any responsive documents, with the possible exception of **pre**-May 21, 2004 financial documents that are the subject of Facebook Defendants' Motion for Protective Order and privileged documents." (TFB Opp. at 13) If the Defendants only have a few documents from pre-May 21, 2004, why did they waste everyone's time with seven hours of meeting and conferring and not just produce them? Regardless of the number of documents Defendants are withholding that are responsive to the requests covered by this motion, Defendants should be ordered to produce them, as they promised to do (or as they were leaning toward doing), boilerplate objections notwithstanding.

The Facebook Defendants also state that they "are in the process of performing a search for such requested documents and will produce any relevant documents should Plaintiff adequately define its trade secrets." (TFB Opp. at 13). As set forth in Plaintiff's opening brief at page 7 n.5, the Facebook Defendants consistently have stated that they are continuing to search for documents. Thus, the Facebook Defendants should be able to produce the documents they are withholding immediately.

## II. Arguments

### A. Plaintiff Has Already Addressed the Arguments with Respect to Trade Secret Identification

To spare the Court additional briefing on the issue of trade secret identification, Plaintiff refers the Court to the briefing on The Facebook Defendants' Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendants' Interrogatory No. 2. Each of Defendants' arguments was rebutted in Plaintiff's Opposition to Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendant's Interrogatory No. 2 ("Plaintiff's Opposition") and in Plaintiff's Opposition to The Facebook Defendants' Cross-Motion for a Protective Order (D.N. 50, filed August 26, 2005). In their nearly incomprehensible reply to Plaintiff's Opposition, the Facebook Defendants repeatedly misstated facts clearly supported in Plaintiff's Opposition and attempted to bootstrap the deficiencies of its arguments, again relying on post-discovery cases to support its arguments regarding Plaintiff's discovery obligations. However, the Facebook Defendants conceded that trade secrets need only be identified in this District with reasonable particularity (TFB Opp. at 1-2, 14), if they are identified in discovery at all. Because Plaintiff anticipated the Facebook Defendants' bootstrapping in its Opposition, there is no need to address it

6

here.  As explained in Plaintiff's Opposition (Plaintiff's Opposition at 11-13), neither the *Staffbridge* nor *L-3 Communications* cases, on which the Facebook Defendants rely, required the plaintiffs to separate their trade secrets from information known in the trade or in the public domain.  Instead, they required the plaintiffs to specify what they viewed as unique and proprietary, as distinguished from the "vast body" of information they initially claimed as secret.  *Staffbridge*, 2004 WL 1429935 at *3; *L-3 Communications*, 2004 WL 2915743 at *13.[4]

However, there is no absolute requirement that Plaintiff provide a trade secret identification in this District.  (See  Plaintiff's Opposition at 10-11).  Some Courts have not required it, including Your Honor.  *Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 674 (D. Mass. 1986) (when plaintiff cannot specify trade secrets, the test for whether or not such a plaintiff is entitled to discovery is whether there is a substantial factual basis for plaintiff's claim); *Data General Corp. v. Grumman Systems Support Corp.*, 825 F. Supp. 340, 357-58 (D. Mass. 1993).

*Eastern Marble* Products *Corp. v. Roman Marble, Inc.*, 364 N.E.2d 799 (1977), cited by the Facebook Defendants (TFB Opp. at 15), on appeal, clearly states that a trade secret may be a combination of information that gives the owner an opportunity to

---

[4] The issue in a trade secret identification is whether it tells with sufficient particularity what trade secret is claimed, even if the Defendants dispute the issue of secrecy, which is true in almost any trade secret case.  Defendants' chance to challenge such alleged secrecy comes at the summary judgments stage, or at trial.  Even then, Plaintiff is only required to show that a modicum of originality separates the trade secret combination from everyday knowledge.  *Prescott v. Morton Int'l, Inc.,* 769 F. Supp. 404, 409 (D. Mass. 1990) (on summary judgment, a trade secret "must possess at least that modicum of originality which will separate it from everyday knowledge"), *quoting Dynamics Research Corp. v. Analytic Sciences Corp.*, 400 N.E.2d 1274, 1284 (Mass. App. Ct. 1980); *Peggy Lawton Kitchens v. Hogan,* 466 N.E.2d 138, 140 (Mass. App. Ct. 1984) (the insertion of an ingredient "served to add that modicum of originality which … characterizes a trade secret").

7

obtain an advantage over competitors who do not know or use it, and that confidentiality obligations are implied in employer-employee relationships, 364 N.E.2d at 801, 803. Plaintiff has identified such a combination, which provided such a business advantage until Mr. Zuckerberg -- Plaintiff's predecessors' partner -- stole it. *See also CVD, Inc. v. Raytheon* Co.*,* 769 F.2d 842 (1st Cir. 1985), also cited by the Facebook Defendants (TFB Opp. at 15) (On appeal, a trade secret may be such a combination, depends on the conduct of the parties and the nature of the information, and need only be protected by reasonable precautions, not heroic measures, *id.* at 850, 851-52.).

      **B.    The Specific Discovery Requests Seek Relevant Documents and Are Not Overly Broad or Unduly Burdensome**

While the Facebook Defendants raise many arguments, it is undisputed that they agreed to produce documents responsive to certain document requests (42 and 44-46, 85-95, 98-101, 102-104, 105, 107-109, 110, 113, and 169) and said that they were leaning toward producing others (70-71, 96, and 102-104).  Now they are suddenly arguing that such requests seek irrelevant documents, and that the requests are overly broad and unduly burdensome.  If that is the case, why did they agree to produce them?

The Facebook Defendants state that "Plaintiff never explained the relevance of all of the documents sought by the requests."  (TFB Opp. at 8)  This is incorrect.  The relevance of such document was explained on several occasions, including during the seven hours of meeting and conferring and in letters sent to the Facebook Defendants. For example, on July 5, 2005, Plaintiff set forth the deficiencies of Defendants' Responses to the Requests for Production of Document and Things in exhaustive detail, and requested the first meet and confer.  (Ex. 27)  The parties then met and conferred for over 7 hours regarding the document production requests, discussing

8

each of the discovery requests that is the subject of the present motion. By the end of the 7 hours of meeting and conferring, Defendants agreed to produce documents responsive to certain requests and stated that they were leaning toward producing others.

### i.   *Documents Defendants Agreed to Produce*

As to documents that Defendants have agreed to produce, they should be ordered to produce these documents immediately. The relevance of these documents cannot seriously be disputed.

Request Nos. 42 and 44-46: Contrary to the Facebook Defendants' assertion, the relevance of Request Nos. 42 and 44-46 was stated in detail in Plaintiff's July 5, 2005 letter to Defendants. (Ex. 27 at 5) The Facebook Defendants promised to produced such documents. Although they argue that facemash is irrelevant, the Defendants have placed facemash in issue by their repeated use of facemash as an example of Mr. Zuckerberg's prior experience and expertise in designing websites. For example, at page 3 of the Facebook Defendants' Motion to Compel Particularized Identification of Trade Secrets in Response to the Facebook Defendants' Interrogatory No. 2, they discuss facemash as an example of one of numerous sites that Mr. Zuckerberg previously created. Also, in the facts section of their present opposition, the Facebook Defendants refer to Mr. Zuckerberg's creation of facemash.com. (TFB Opp. at 3) Similarly, Defendants raised the issue of facemash in their counterclaim as an example of Zuckerberg's experience and expertise (D.N. 14, ¶ 8), yet want to shield Mr. Zuckerberg from what the facemash debacle says about his character.

9

Additionally, many of Plaintiff's claims place Defendants' character in issue. One of Plaintiff's claims is that Mr. Zuckerberg has violated Chapter 93A of the Massachusetts code. In proving a Chapter 93A violation, the issue of a defendant's character cannot be avoided, since the gravamen of a Chapter 93A claim is the commission of unfair and/or deceptive acts. Ann. L. Mass., ch. 93A, § 2. Chapter 93A liability exists if the defendant's conduct falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, unethical, oppressive or unscrupulous." *PMP Assoc., Inc. v. Globe Newspaper Co.*, 321 N.E.2d 915, 917 (Mass. 1975).

Request No. 85-89: Contrary to the Facebook Defendants' assertion, the relevance of Request Nos. 85-89 was stated in detail in Plaintiff's July 5, 2005 letter to Defendants. (Exhibit 27 at 7-8) The Facebook Defendants promised to produce such documents. Furthermore, Defendants also refused to provide responses to the corresponding interrogatories that requested an answer to such questions. Plaintiff was then forced to file the Motion to Compel Answers to Interrogatories on August 30, 2005 (D.N. 54), including Interrogatory Nos. 12-14, which requested similar information. As explained in the motion to compel answers to interrogatories, the documents are relevant to the growth and value of thefacebook.com website (which the Court can see has been enormous), Defendants' improper head start on and usurpation of the market, the improperly obtained popularity of thefacebook.com website, and Plaintiff's damages. (D.N. 54, Brief at 10-11) The Facebook Defendants also argue that Plaintiff has not explained why it needs such information on a daily, monthly, or annual basis, or why breakdowns by universities, etc., are relevant. As previously explained, unless

10

Defendants provide information on more than a single date, Plaintiff's expert will be forced to assume a straight line of growth from zero colleges on thefacebook.com's launch date to the number of colleges where thefacebook.com operates today (or at trial).  Defendants' expert will probably disagree with such an assumption because thefacebook.com many not add colleges at a linear rate (e.g., it might not add colleges during vacation months).  To prevent such a trap for Plaintiff's expert, Defendants should be required to produce responsive documents.  Similarly, Plaintiff needs information over time regarding traffic to thefacebook.com website (Request No. 85), number of registered users (Request No. 87), and number of hits (Request Nos. 88 and 89).  Plaintiff pointed this out to the Facebook Defendants.  This information is only available from Defendants.

Request Nos. 90-95 and 98-101:  Contrary to the Facebook Defendants' assertion, the relevance of Request Nos. 90-95 and 98-101 was stated in detail in Plaintiff's July 5, 2005 letter to Defendants  (Ex. 27 at 8).  Defendants promised to produce these documents.  Plaintiff refers the Court to the July 5, 2005 letter and does not repeat its arguments here.  However, the Facebook Defendants point to the financial documents that it recently produced at TFB000002-TFB000051.  These documents provide an incomplete picture.  For example, Request No. 98 requests documents sufficient to identify bank and financial institution accounts of Thefacebook, Inc., yet none of the financial documents referred to by the Facebook Defendants contains any of this information.  Moreover, the financial statements are missing for many months and time periods, as articulated in the letter to Joshua Walker of

11

September 28, 2005 (Ex. 28).  Defendants should be required to produce all responsive documents.

Request No. 105:  With respect to Request No. 105, it was initially unclear whether Defendants intended to produce responsive documents.  (Ex. 27 at 9).  During the meet and confer, Defendants promised to produce them.

Request Nos. 107 and 113:  Contrary to the Facebook Defendants' assertion, the relevance of Request Nos. 107 and 113 was stated in detail in Plaintiff's July 5, 2005 letter to Defendants  (Ex. 27 at 6).  In response, Defendants promised to produce these documents.  Plaintiff refers the Court to the July 5, 2005 letter and does not repeat its arguments here.

Request Nos. 108 and 109: Contrary to the Facebook Defendants' assertion, the relevance of Request Nos. 108 and 109 was stated in detail in Plaintiff's July 5, 2005 letter to Defendants (Ex. 27 at 8).  Defendants promised to produce these documents.  The relevance of the locations from which thefacebook.com website has been operated (Request No. 108) and the servers and locations used by thefacebook.com (Request No. 109), are also clearly set forth in the motion to compel hard drive images.  All of Defendants' server providers should have the source code which Defendants claim to have lost.

Request No. 110:  The Facebook Defendants try to hide behind their citation to the Frequently Asked Questions on a single day as being responsive.  As clearly stated in the July 5, 2005 letter (Ex. 27 at 9), Defendants must clarify whether all FAQs that were ever posted on thefacebook.com website are still posted on the webpage identified in Defendants' response.  They have failed to do so, therefore their response

12

is incomplete. During the meet and confer conference, Defendants promised to produce additional "terms of use and privacy documents," which they viewed as responsive to this request. They should be ordered to produce them.

Request No. 169: The Facebook Defendants originally agreed to produce responsive documents. In response to the present motion, the Facebook Defendants and Defendant Saverin object to this request and argue that they need not produce expert-related work product. (TFB Opp. at 12) Plaintiff agrees and does not plan produce such documents with respect to its own experts. But this does not excuse Defendants from withholding documents relied on by the expert in preparation of his/her report or that form the basis of his/her opinion.

For all of the document requests for which Defendants promised to produce documents, the Court should order the immediate production of documents. If anything is belated here, it is Defendants' new objections to these document requests.

### ii. *Documents Defendants Were Leaning Toward Producing*

Request Nos. 70-71: Contrary to the Facebook Defendants' assertion, the relevance of Request Nos. 70-71 was stated in detail in both Plaintiff's July 5, 2005 letter to Defendants (Ex. 27 at 6) and in the opening brief (Opening Brief at 15). Information on investors is highly relevant to the enormous and rapidly growing value of thefacebook.com. The Facebook Defendants point to a number of the Facebook Defendants' documents, stating that Plaintiff has not shown that they are insufficient. The limited number of pages that the Facebook Defendants have produced are e-mails to and from the Facebook Defendants and prospective businesses, all on or before May 21, 2004. These documents provide very limited information regarding investors,

13

particularly because they are pre-May 21, 2004, when the facebook.com did not yet have many, if any, investors. Thus, such documents cannot possibly provide a complete picture. However, it is the Defendants' obligation to produce all responsive documents and is not the Plaintiff's burden to guess whether the piecemeal documents produced by Defendants are sufficient.

Moreover, the Facebook Defendants produced such documents before the July 26, 2005 conference during which they said they were leaning toward producing more responsive documents. Thus, the Facebook Defendants <u>must</u> have more responsive documents.

<u>Request Nos. 96 and 102-104:</u>  Contrary to the Facebook Defendants' assertion, the relevance of these requests was stated in detail in both Plaintiff's July 5, 2005 letter to Defendants (Ex. 27 at 6 and 8) and in the opening brief (Opening Brief at 16-19). Plaintiff refers the Court to the July 5, 2005 letter and the opening brief and does not repeat its arguments here.

### C.    Saverin Is Obligated to Produce Responsive Documents

Defendant Saverin continues to be ambiguous as to whether or not he is withholding documents responsive to many of these requests. Contrary to Mr. Saverin's argument (Saverin Opp. at 1), Plaintiff did not refuse to clarify the extent to which the motion was directed to Saverin. After the initial inquiry by Robert Hawk, John Hornick (counsel for Plaintiff) asked "Are you withholding any documents responsive to the requests covered by the motion?" (Exhibit 1 to Declaration of Robert Hawk to Defendant Eduardo Saverin's Opposition to ConnectU's Motion to Compel, D.N. 79) Counsel for Saverin refused to answer this simple questions, which led Plaintiff's

14

counsel to conclude that Mr. Saverin is withholding documents. Thus, Plaintiff's counsel said that "unless you can tell us that you are not withholding documents responsive to the requests covered by the motion, we will need to tell the Court that the motion does apply to Saverin." In a final e-mail to Mr. Hawk (attached as Ex. 29), counsel made clear that Saverin is on notice that that Plaintiff views the motion as applicable to him. Mr. Hornick also stated that "However, if you believe we need to apprize the court of our position, by stating that Saverin is covered by the motion, or joining Saverin in the motion, we will be happy to honor your request. Please let us know what you prefer." Mr. Hawk responded by saying that he has responded to the questions and has "made our position clear." He did not ask Plaintiff to inform the court that the motion applies to Mr. Saverin.

The present motion applies to Saverin to the full extent that he is withholding documents responsive to any of the requests. On page 4 of Saverin's Opposition, Mr. Saverin states that he has not "withheld" responsive docs, and that "[r]esponsive documents created or [sic] before May 21, 2004 in Mr. Saverin's possession have been produced." If so, why didn't Mr. Hawk simply say so in response to Plaintiff's question? This would have saved lots of time and energy.

Mr. Saverin says he has never been an officer, director, or employee of Thefacebook, Inc., but admits he was a founder (Saverin Opp. at 2) and a shareholder. (Defendant's Opposition to Motion to Compel Hard Drives, at 3). There is no reason why he would not have had access to any and all documents, and he could have them now.

Regarding Mr. Saverin's argument that counsel for Plaintiff "focused meet and confer efforts" only on the Facebook Defendants (Saverin Opp. at 4), Mr. Saverin was represented during each meet and confer conference and all requests for which Mr. Saverin might be expected to have documents were raised with his counsel (and in Plaintiff's July 5, 2005 letter (Ex. 27)).  However, if Mr. Saverin has responsive docs about which he was not asked, he is still obligated to produce them because the production requests were directed to him, as well as to the Facebook Defendants.

With respect to Request No. 96 for tax returns, Mr. Saverin cites case law saying that tax returns are only discoverable if information is not available through other means.  (Saverin Opp. at 5)   However, that is exactly the situation here.  Plaintiff has no alternative means to get the same information.

With respect to Request No. 169 regarding experts, Plaintiff refers the Court to the discussion in section III.B.*i.* regarding Request No. 169.

## III.    Conclusion

For the reasons set forth in Plaintiff's opening brief and this reply, Plaintiff urges the Court to grant its motion to compel the production of documents responsive to Production Requests Nos. 42, 44-46, 70-71, 85-96, 98-105, 107-110, 113, and 169.

Respectfully submitted,

DATED:  September 30, 2005             /s/ Troy E. Grabow_____
                                       Lawrence R. Robins (BBO# 632610)
                                       Jonathan M. Gelchinsky (BBO# 656282)
                                       FINNEGAN, HENDERSON, FARABOW,
                                         GARRETT & DUNNER, L.L.P.
                                       55 Cambridge Parkway

Cambridge, MA  02142
Telephone:  (617) 452-1600
Facsimile:   (617) 452-1666
larry.robins@finnegan.com
jon.gelchinsky@finnegan.com

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Troy E. Grabow (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Plaintiff and Counterclaim Defendants