IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>        Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>        Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>        Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>        Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>        Additional Counterdefendants. | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' JOINT MOTION TO COMPEL TESTIMONY FROM CONNECTU LLC RESPONSIVE TO DEFENDANTS' AMENDED 30(b)(6) NOTICE**

# TABLE OF CONTENTS

**Page**

I.    CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2) AND FEDERAL
      RULE OF CIVIL PROCEDURE 37(A)(2)(B).................................................................. 2

II.   ANALYSIS .................................................................................................................... 3

      A.    THE WITNESS GAVE EVASIVE AND NON-RESPONSIVE REPLIES
            AND REFUSED TO ANSWER QUESTIONS................................................... 4

      B.    THE WITNESS WAS NOT PREPARED TO TESTIFY ON THE
            NOTICED RULE 30(b)(6) TOPICS.................................................................. 7

      C.    COUNSEL COACHED THE WITNESS AND OBSTRUCTED THE
            DEPOSITION .................................................................................................... 9

      D.    PLAINTIFF MUST DESIGNATE A WITNESS TO TESTIFY ON
            TOPICS 7, 8 AND 9........................................................................................ 17

            1.    PLAINTIFF'S INVOCATION OF THE STIPULATED
                  PROTECTIVE ORDER IS UNAVAILING .......................................... 17

            2.    TOPICS 7-9 ARE NEITHER PREMATURE NOR REQUEST
                  EXPERT TESTIMONY......................................................................... 18

            3.    PLAINTIFF'S FAILURE TO MOVE FOR A PROTECTIVE
                  ORDER WAIVES ITS OBJECTIONS.................................................. 19

III.  CONCLUSION............................................................................................................ 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*AMP Inc. v. Fujitsu Microelectronics, Inc,* 853 F.Supp. 808 ...................................................... 18

*Beloit Liquidating Trust v. Century Indemnity Co.* , 2003 WL 355743, 8 ................................. 19

*Bregman* v. *District of Columbia*, 182 F.R.D. 352 ...................................................................... 19

*Calzaturficio S.C.A.R.P.A S.P.A.* v. *Fabiano Shoe Co.*,
    201 F.R.D. 33 ............................................................................................ 1, 4, 5, 7, 9, 11, 18

*Damaj* v. *Farmers Ins. Co.*, 164 F.R.D. 559.............................................................................. 16

*Ecrix Corp.* v. *Exabyte Corp.*, 95 F.Supp.2d 1155 .................................................................... 19

*Ethicon Endo-Surgery* v. *U.S. Surgical Corp.*, 160 F.R.D. 98 .................................................... 6

*Foster-Miller, Inc.* v. *Babcock & Wilcox Canada*, 210 F.3d 1 ................................................. 17

*Johnson* v. *Wayne Manor Apts.*, 152 F.R.D. 56........................................................................ 2, 11

*Marker v. Union Fidelity Life Ins. Co.,*, 125 FRD 121, 126 (M.D.N.C., 1989) ........................ 18

*McDonough* v. *Keniston*, 188 F.R.D. 22 ................................................................................... 11

*Mitsui & Co., Inc.* v. *Puerto Rico Water Resources Authority*, 93 F.R.D. 62 ............................ 19

*Phinney* v. *Paulshock*, 181 F.R.D. 185 (D. N.H. 1998) .............................................................. 6

*United Techs. Motor Sys., Inc.* v. *Borg-Warner Auto., Inc.*, 50 U.S.P.Q.2d 1060...................... 18

*U.S.* v. *Taylor*, 166 F.R.D. 356 (M.D. N.C. 1996) *aff'd* 166 F.R.D. 367 (M.D. N.C. 1996).......... 5

## FEDERAL STATUTES

Fed. R. Civ. P. 30(b)(6) .........................................................................1- 5, 7, 10, 13, 17-20

Fed. R. Civ. P. 30(d)...................................................................................................... 11

Fed. R. Civ. P. 37(a)(2)(B) they...................................................................................... 2

Fed. R. Civ. P. 37(a)(3)................................................................................................... 6

Defendants Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc., ("the Facebook Defendants")[1] and defendant Eduardo Saverin (collectively "Defendants") hereby jointly move to compel the Plaintiff, ConnectU LLC ("ConnectU") to comply with Federal Rule of Civil Procedure 30 and to furnish a witness who will provide informed, responsive, and factual answers on the topics noticed in Defendants' Amended Notice of Deposition of Plaintiff and Counterdefendant ConnectU LLC Pursuant to Fed. R. Civ. P. 30(b)(6) ("30(b)(6) Notice"), for at least an additional four hours as to topics 1 through 6 and 10. This remedy will account for the time lost due to Plaintiff and its counsel's misconduct during the deposition, detailed below. Defendants further move for an order compelling Plaintiff to produce a designee with respect to topics 7, 8 and 9, and for an instruction to Plaintiff's counsel not to interpose meritless, obstructive and or coaching objections during the deposition. Specifically, Defendants move the Court:

1.    to compel ConnectU to "make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought … *and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed* … as to the relevant subject matters," *Calzaturficio S.C.A.R.P.A S.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001) (emphasis added), for at least an additional four hours,

2.    to instruct ConnectU's counsel that he is not entitled to "improperly object[] to the form of the question by either suggesting what he apparently believe[s] to be an appropriate answer to his client or himself testifying," or "to act as intermediary, interpreting questions, and deciding which questions the witness should answer," or to make other improper objections. *Id.*,

---

[1]  Defendant Eduardo Saverin is represented by separate counsel in this matter.

at 40-41, *quoting Johnson v. Wayne Manor Apts.*, 152 F.R.D. 56, 59 (E.D. Pa. 1993) (internal

quotes omitted), and

      3.      to order that ConnectU "*shall designate* one or more officers, directors, or

managing agents, or other persons who consent to testify on its behalf," for topics 7, 8 and 9 in

Defendants' 30(b)(6) Notice.  Fed. R. Civ. P. 30(b)(6) (emphasis added).

Defendants believe that oral argument may assist the Court, and wish to be heard on the

issues presented by this Motion.  Defendants have submitted a proposed Order.

## I.    CERTIFICATION PURSUANT TO LOCAL RULE 7.1(A)(2) AND FEDERAL RULE OF CIVIL PROCEDURE 37(A)(2)(B)

Counsel for Defendants certifies that pursuant to Local Rule 7.1(a)(2) and Fed. R. Civ. P.

37(a)(2)(B) they met and conferred with counsel for ConnectU regarding this motion.  The

Facebook Defendants' counsel (Monte M.F. Cooper), Eduardo Saverin's counsel (Robert Hawk)

and ConnectU's counsel (John F. Hornick and Troy E. Grabow) met and conferred to discuss the

issues addressed in this Motion.  Messrs. Cooper and Hawk followed up the teleconference with

a letter to Mr. Hornick, dated September 12, 2005, reiterating their position and identifying

portions of the transcript where ConnectU failed to fulfill its obligations under the Federal Rules

of Civil Procedure.  On September 23, 2005, a teleconference occurred between the Facebook

Defendants' counsel (Joshua Walker and Kenneth Halpern) and ConnectU's counsel (Mr.

Hornick).  The parties were unable to resolve or narrow the issues.[2]

---

[2]  The Declaration of Joshua H. Walker in Support of Defendant's Motion to Compel Testimony
From ConnectU Responsive to Defendants' Amended 30(b)(6) Notice ("Walker Dec.") attaches
copies of the Facebook Defendants' Amended Notice of Deposition of Plaintiff and
Counterdefendant ConnectU LLC Pursuant to Fed. R. Civ. P. 30(b)(6) as Ex. 1; ConnectU's
Objections to Amended Notice of Deposition of Plaintiff and Counterclaim Defendant ConnectU
LLC Pursuant to Fed. R. Civ. P. 30(b)(6) as Ex. 2; the letter dated September 12, 2005 from
Robert Hawk and Monte M.F. Cooper to John Hornick as Ex. 3; the letter dated September 23,
2005, from Joshua Walker to John Hornick as Ex. 4; and the emails from John Hornick to Joshua
Walker and vice-versa dated September 26, 2005 as Exs. 5 and 6.

II.  **ANALYSIS**

On August 9, 2005, the Facebook Defendants took the deposition of ConnectU's designee, Cameron Winklevoss, on topics 1 through 6 and 10 of Defendants' 30(b)(6) Notice. These topics go to the core allegations in this case – the Plaintiff's corporate knowledge as to (i) the contract it alleges between Mark Zuckerberg ("Zuckerberg") and Plaintiff (topic 1), (ii) Plaintiff's alleged trade secrets and confidential information allegedly entrusted to Zuckerberg (topic 2), (iii) Zuckerberg's or other defendants' alleged use of Plaintiff's claimed source code or confidential business information (topics 3 and 4), (iv) the conception, design and development of Plaintiff's website (topic 5), (v) the actions of the individual defendants other than Zuckerberg (topic 6), and (vi) Plaintiff's alleged ownership of the intellectual property it asserts, including any transfer of rights to it by other entities (topic 10).  *See* Walker Dec. Ex. 1 at 4-5.

The deposition topics are clear and straightforward, and the questions asked during the deposition were straightforward and direct.  Yet time and again, the Rule 30(b)(6) witness, Plaintiff's founder and principal, Cameron Winklevoss, avoided answering.  In many cases, the question was never answered; in others, the witness evaded so doggedly it took four or five times longer to elicit responsive testimony than it should have.  This evasiveness recurred so frequently throughout the deposition that it infected the entire process.  The resulting harm extends beyond the questions that were never answered, to those that were never asked, because of the evasiveness of the witness and inappropriate disruption and coaching from counsel. Consequently, Defendants seek to re-depose ConnectU not merely as to specific questions from the original deposition, but for an additional four hours, to pursue the follow-up questions that proper responses from the witness would and should have allowed.

The witness's misconduct (as well as Plaintiffs' counsel's misconduct)  took several specific forms – evasiveness and non-responsiveness, a lack of the preparation required of a Rule

30(b)(6) designee, and at times even defiance of the basic requirements of the deposition process under the Federal Rules (for instance, that it is the province of deposing counsel to ask the questions, and not the witness's prerogative to suggest "better" ones). ConnectU's counsel abetted and promoted this misbehavior, coaching the witness, encouraging him to answer improperly, interposing groundless objections and, when he deemed it to his client's advantage, engaging in obstruction of the deposition. The misconduct was so pervasive that incorporating every example into the main text of this motion would overwhelm the Court (and exceed the page limit). Thus, Defendants present herein several representative instances of the different types of misconduct, and respectfully refer the Court to the annotated list of the deposition excerpts that support this motion. *See* Walker Dec. Exs. 7 (annotated deposition transcript organized by type of misconduct) and 10 (entire deposition transcript).

> **A.     THE WITNESS GAVE EVASIVE AND NON-RESPONSIVE REPLIES AND REFUSED TO ANSWER QUESTIONS.**

ConnectU's designee consistently would not answer questions posed, instead stating a non-responsive belief or supposition that admittedly was not based on his or ConnectU's knowledge. *See* Walker Dec., Ex. 3. This is impermissible. In response to the Facebook Defendants' Rule 30(b)(6) Notice, ConnectU was obligated to "make a conscientious good-faith endeavor to designate the persons ***having knowledge*** of the matters sought … and to prepare those persons ***in order that they can answer fully, completely, unevasively, the questions posed*** … as to the relevant subject matters," *Calzaturficio*, 201 F.R.D. at 36 (emphasis added). Several times, the witness openly flouted the obligation to answer the questions posed.

An egregious example of such evasiveness occurred during questioning on topic 1, the circumstances and terms of the alleged agreement involving Zuckerberg and ConnectU. *See* Walker Dec. Ex. 1. The witness had testified that Zuckerberg was a partner in ConnectU. *See*

*e.g.* Walker Dec. Ex. 7 at 65:18-19. Counsel for the Facebook Defendants followed up that

testimony with a very simple question:

> Q.     Did you ever terminate his partnership?
>
> A.     ***Well, I think a better question is***, did he ever fulfill the contribution level that he
> agreed to? And he was -- to our knowledge, we have yet to receive that
> contribution.

*Id.* at 81:20-24 (emphasis added). Remarkably, the witness not only failed to answer, he

scoldingly proposed "a better question" and then rhetorically answered his own question. The

Facebook Defendants counsel tried again:

> Q.     And that's not my question. Did you ever terminate the partnership with him?
>
> A.     Well, I think the -- you know --
>
> MR. HORNICK:  I think you're putting words into the witness's mouth.
>
> A.     Yeah. Again, the question might better be phrased as, did he complete the sort of
> contribution he agreed to that would have suggested him being an equal partner?
> And absolutely not. He -- or maybe he did complete it, but we don't have it.
>
> Q.     Okay. Mr. Winklevoss, you're not answering my question.
>
> MR. HORNICK:  You're giving him an unfair question, that's why.

*Id.* at 81:25-82:14

Emboldened by ConnectU's counsel, the witness refused to answer and proposed a

different question that counsel should ask, thus failing to "answer fully, completely, unevasively,

the questions posed." *Calzaturficio* at 36. In *Calzaturficio*, this Court held that a designee had

failed to meet his obligation under Rule 30(b)(6) to testify to the corporation's positions on the

issues in the case when he refused to answer a question asking why a contract had been

terminated. 201 F.R.D. at 37-38. Here, asking ConnectU if it had terminated Zuckerberg's

alleged partnership was equally germane and proper. *Id.*, citing *U.S. v. Taylor,* 166 F.R.D. 356,

361 (M.D. N.C. 1996), *aff'd* 166 F.R.D. 367 (M.D. N.C. 1996) ("corporation must provide its

interpretation of documents and events" through 30(b)(6) testimony).

Even if counsel's question had been objectionable for some reason, the correct procedure is for the deponent to answer, subject to a concise, non-suggestive objection such as "I object to the form of the question." *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995); *Phinney v. Paulshock*, 181 F.R.D. 185, 206 n.49 (D. N.H. 1998) (Rule 30(d)(1) requires concise, non-argumentative and non-suggestive objections).

A more extended refusal to answer, consuming more than four pages of testimony, ensued when the Facebook Defendants' counsel asked the witness if he had ever discussed with Zuckerberg what share of the alleged partnership Zuckerberg would have.  Walker Dec. Ex. 7 at 63:23-68:3.[3]  The witness gave an unsolicited lecture on how dot-com companies work, speculated about what Mr. Zuckerberg "understood," cited "multiple benefits" that allegedly were to accrue to Zuckerberg, and asserted that Mr. Zuckerberg was "part of the team."  *Id*. What the witness did not do was answer the question posed, which the Facebook Defendants' counsel was forced to repeat ten times.  At one point, counsel requested that the witness: "Please just answer the question.  It's a yes or no."

Before the witness could respond, ConnectU's counsel interjected, "The witness can answer the question however he wants."  *Id*. at 65:1-4.  This is not an accurate statement of a deponent's duty under the Federal Rules, and witness should have answered the question posed. *See* Fed. R. Civ. P. 37(a)(3) ("an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer or respond").  Accordingly, Defendants should be allowed the additional deposition testimony that they seek.

---

[3]  Walker Dec. Ex. 7 is selected portions of the transcript of the August 9, 2005 deposition of ConnectU (designee Cameron Winklevoss); the entire deposition transcript is attached as Ex. 10.

**B.    THE WITNESS WAS NOT PREPARED TO TESTIFY ON THE NOTICED RULE 30(b)(6) TOPICS.**

Another major problem that infected the deposition of ConnectU was the witness's profound lack of preparation to testify on the topics in Defendants' Rule 30(b)(6) Notice for which he was designated (1 through 6, and 10). He repeatedly pleaded ignorance, often referring deposing counsel to Counterclaim Defendant Divya Narendra, who, he stated could testify as to whether and how ConnectU communicated to others that its information was secret (topics 1, 2 and 10). *See e.g.*, Walker Dec. Ex. 7 at 49:23-51:4; 52:12-53:23; 98:15-103:19. The witness suggested the same regarding **a third party** -- Victor Gao. *See e.g.*, Walker Dec. Ex. 7 at 88:9-20, 112:10-25.

The Federal Rules require more. The designee was obligated to "review all matters known or reasonably available to [ConnectU] in preparation for the Rule 30(b)(6) deposition." *Calzaturficio*, 201 F.R.D. at 36 (D. Mass. 2001). Yet Mr. Winklevoss admitted he had barely prepared for his deposition, not even speaking to the other principals of ConnectU:

> Q.    Did you talk to anyone other than your lawyers to prepare for your deposition today?
>
> A.    No.
>
> Q.    So you did not talk to Divya Narendra?
>
> A.    Not in terms of the preparation for the deposition, no, absolutely not.
>
> Q.    And you didn't talk to Tyler Winklevoss?
>
> A.    No.
>
> Q.    And you didn't talk to Howard Winklevoss?
>
> A.    About this specific deposition, we -- in terms of the preparation yesterday, no.
>
> Q.    Other than your preparation yesterday, did you do anything to prepare for this deposition before your preparation yesterday?
>
> A.    No, not really. That was -- yesterday was the day where we sort of sat down and

did that with counsel.

Q.    So to prepare for your deposition today, you met with counsel?

A.    Uh-huh.

Walker Dec. Ex. 10.

As a result of the witness's lack of preparation, large swaths of the deposition were unproductive and a waste of time.  For example, when asked to identify where, in a set of emails between himself and Mark Zuckerberg, it was reflected that Mr. Zuckerberg understood that the HarvardConnection information was confidential (a key issue in any trade secrets dispute), the witness pointed to one instance and then refused to answer follow-up questions, revealing that he was unprepared:

Q.    And anything else you can identify?

A.    I think I've answered the question.

[*Sharp colloquy between counsel, and four more instances of the witness's refusal to answer the question follow.  Then*:]

Q.    Please answer my question with respect to these documents.

A.    So that's the -- I think that that's the most illustrative point, and I don't think that it's -- **as I said before, it's the collage of e-mails**.  And I don't think that I -- you know, I think that's the most relevant point, and I think that that's the most worthwhile point to answer that question with.

Q.    So you're just saying it's the entire collection?  There's nothing specifically in any individual --

A.    I just showed you a specific instance.  That was the fact that he didn't use our code and functionality in a site indicates an understanding, as I've said before, of the proprietary nature of the code, the functionality and the business ideas surrounding the site.

Q.    Okay.  And Mr. Winklevoss, other than that one instance, are there any other specific instances where you can say that, or are you just saying it's all of the e-mails kind of together?

A.    **I'm saying it's a collage**.  I'm saying that Mr. Gao imparted the proprietary nature

of the site to him and that, yeah, *I think that's -- you have multiple instances there. And, again, there might be more instances that I can't recall off the top of my head right now*.

Q.    Okay.

A.    Okay? *That does not exclude what I can't recall*.

Walker Dec. Ex. 7 at 108:12-111:24 (emphasis added). The witness was willing to answer the question only by reference to a "collage" of documents, while insisting that there may be "more instances that I can't recall off the top of my head right now." Mr. Winklevoss' testimony reflects either a failure to review the documents fully, as Rule 30(b)(6) requires, or a deliberate attempt at sandbagging, which is just as firmly prohibited. *Calzaturficio*, 201 F.R.D. at 36 (review of all available matters by witness is required to prevent a party from "conducting a half-hearted inquiry before the deposition, but a thorough and vigorous one before the trial").

Defendants are entitled to a Rule 30(b)(6) designee who *comes prepared* and answers "*fully, completely, unevasively, the questions posed* … as to the relevant subject matters," *Calzaturficio*, 201 F.R.D. at 36-37 (emphasis added). The Plaintiff did not provide that. Throughout the deposition, there are stretches of testimony of diminished or no use due to the designee's lack of preparation. *See e.g.*, Walker Dec. Ex. 7 at 63:23-68:3 (topic 1); 41:12-24 (topic 2); 281:8-287:6 (topic 3); 92:23-94:9 (topic 5); 281:12-287:6 (topic 10). Accordingly, re-taking the 30(b)(6) deposition is warranted. 201 F.R.D. at 41 (ordering re-deposition of Rule 30(b)(6) designees where it was "glaringly obvious that they failed to educate themselves about the 30(b)(6) topics about which they would be questioned").

C.    **COUNSEL COACHED THE WITNESS AND OBSTRUCTED THE DEPOSITION.**

The third major category of problems that plagued the deposition arose from ConnectU's counsel's improper objections, obstruction and coaching. Some of this appeared in the foregoing

discussion of the witness's conduct; many more examples, sorted by type, can be found in section B of Walker Dec. Ex. 7.

Among the most egregious instances of such obstruction was a sequence in which Defendant Eduardo Saverin's counsel was pursuing a line of questions about the contents of the HarvardConnection code registered with the Copyright Office, and the possibility that the ConnectU principals had in fact deposited material co-authored by Mr. Zuckerberg. After giving testimony that suggested this had happened, the witness, blatantly coached by ConnectU's counsel, engaged in a series of evasions and refusals-to-answer in order to avoid confirming this damaging admission. The result was the dovetailing of Plaintiff counsel's misconduct with the witness's non-responsiveness and evasiveness detailed above.

Saverin's counsel first elicited testimony that an individual, Victor Gao, who had written some of the HarvardConnection code, had provided the complete version that was filed with the Copyright Office, and that this version was the code as it existed in February 2004.[4]  Saverin's counsel continued:

Q.    All right. Did you -- are you aware that any deletions or omissions were made from what Mr. Gao provided as the HarvardConnection code before it was deposited with the copyright office?

A.    No. We asked him for the complete code.

**MR. HORNICK:  But I should say that the witness might not be aware of deletions that were made.**

A.    To my knowledge, there were no deletions made.

---

[4]  "Q.  Mr. Gao had the full code. Where did he have it?
A.  I believe he downloaded the full code in February of 2004, post-facebook launch from the server and had it on his hard drive.
Q.  And that is the code that was printed out and that you gave to your attorneys to be deposited with the copyright office, correct?
A.  Yes." Walker Dec. Ex. 7 at 276:21-277:5.

-10-

Walker Dec. Ex. 7 at 277:6-16 (emphasis added). The intervention by ConnectU's counsel was coaching, a practice clearly forbidden under the Federal Rules. Fed. R. Civ. P. 30(d)(1); *McDonough v. Keniston*, 188 F.R.D. 22, 24 ("Speaking objections and coaching objections are simply not permitted in depositions in federal cases."). Indeed, it went beyond coaching – Plaintiff counsel impermissibly offered a substantive modification to the witness's testimony. *Calzaturficio*, 201 F.R.D. at 40 (improper for attorney to be "suggesting what he apparently believed to be an appropriate answer to his client or ***himself testifying***'"), quoting *Johnson v. Wayne Manor Apts.*, 152 F.R.D. 56, 59 (E.D. Pa. 1993) (emphasis added). Subsequent testimony shows that Plaintiff counsel's comment reminded the witness to testify that Zuckerberg's contributions were removed before the HarvardConnection code was submitted for registration. However, at this instance, the witness missed the cue, unambiguously testifying that, "we asked him for the complete code" and "there were no deletions made" from the code provided by Mr. Gao before filing with the copyright office. Walker Dec. Ex. 7 at 277:11, 15-16.

The next sequence of questioning followed the same trajectory. Defendant Saverin's counsel asked a series of questions that elicited an assertion by the witness that Zuckerberg had completed the "connect side" code for HarvardConnection but had never delivered it, but then, an admission that Mr. Zuckerberg had made some contribution to the HarvardConnection code. This led to a second coaching intrusion by ConnectU's counsel. This time, ConnectU's counsel was more explicit in his "testimony" that Mr. Zuckerberg's code had been removed:

> Q.    Okay. Did Mr. Gao tell you that based on his inspection, Mr. Zuckerberg had made no contributions to the HarvardConnection code?
>
> A.    Mr. Gao told me that Mr. Zuckerberg made very minor and minimal changes or additions to the HarvardConnection code.
>
> Q.    ***How many lines of code did Mr. Zuckerberg write that are now a part of the HarvardConnection code?***

A.     ***I don't know that off the -- I just don't know that.***

Q.     And I mean, it could be several hundred, correct?

A.     Mr. Gao was under the impression, based on looking at the code, that he had been on there for no more than two hours, and the majority of the work that he did was actually taking code Mr. Gao wrote and copying it and putting in names, various connect names.

Q.     But -- all right.  But -- fair enough.  But my question was different.  My question was, you don't know that -- you don't know -- first of all, I think you've already testified -- let me make sure -- you don't know how many lines of code that Mr. Zuckerberg contributed to the HarvardConnection code that has been filed with the copyright office, correct?

A.     That --

MR. HORNICK:  Objection.  That -- ***no Zuckerberg code that I know of has been published*** –

Walker Dec. Ex. 7 at 278:19-280:1 (emphases added).  Here, Plaintiff's counsel does nothing

less than answer a question for his witness.  His "testimony" is clearly forbidden by the Federal

Rules and the applicable case law.  Plaintiff counsel's conduct led to a revealing exchange:

MR. HAWK:  Hey, you're not testifying here.  If you have an objection, you just go ahead, buddy, but look, don't interfere.

MR. HORNICK:  ***You're asking a question*** --

MR. HAWK:  Don't coach your -- don't coach your witness.

MR. HORNICK:  ***-- he can't answer.***

MR. HAWK:  Don't coach the witness.

MR. HORNICK:  ***And it wasn't a true question.***  When we –

Walker Dec. Ex. 7 at 280:2-13 (emphasis added).  ConnectU's counsel, undeterred by Saverin's

counsel's admonition not to coach the witness, repeats his "testimony" that the question "wasn't

true," again signaling to the witness to deny that Mr. Zuckerberg's code had been deposited with

the Copyright Office.  Plaintiff's counsel also implies that he knows more about the facts than the

witness does.[5]

At this point, the witness finally takes the hint and provides the answer ConnectU's counsel has been prompting:

> A.    To answer your question, when we asked Mr. Gao for the code, I asked him for -- we specifically asked him for code that did not include Mark Zuckerberg's code when filing with the copyright office, okay?

Walker Dec. Ex. 7 at 281:12-16.  It might simply be a matter for impeachment that this answer is irreconcilable with the witness's earlier testimony that "we asked him for the complete code" and that the original source code had been deposited without deletions.  Walker Dec. Ex. 7 at 277: 11, 15-16.  However, what is clearly improper is that, once clued in to the "problem" via counsel's coaching, the witness stopped answering factually, instead repeating the conclusion his counsel had supplied, or adding vitiating language to his answer ("I believe"), or simply not answering the questions at all:

| | |
|---|---|
| Q.   Well, let me ask you this:  You said you instructed Mr. Gao to give you code that did not contain any contributions by Mark Zuckerberg.  Is that what you told Mr. Gao? | *Deposing counsel asks question about conversation with Mr. Gao re code-stripping for the first time.* |
| A.   Yes, but there were no contributions from Mr. Zuckerberg in the code, is what I'm getting at. | |
| Q.   Well, did Mr. Gao confirm to you that he did not strip out anything from the code that -- before he gave it to you? | |
| A.   *I believe* that Mr. Gao told me that there was no code in there, that Mark Zuckerberg wrote when he file -- when he gave us the code to file with the copyright office. | Witness testifies not to his knowledge of facts but to his "belief." |
| Q.   Okay.  So that's your testimony; Mr. Gao told you that there was no code written by Mr. Zuckerberg, no code whatsoever in the HarvardConnection code that he found and that he gave to you? | *Same question, second time.* |

---

[5]  ConnectU's counsel also should not be asserting that Plaintiff's designee is unable to answer this question, which clearly falls within topics 3 ("Alleged use by Mark Zuckerberg… of the source code for the HarvardConnection website") and 10 (ConnectU's "alleged ownership of all intellectual property including … copyrighted material…referenced in the Amended Complaint") of Defendants' Rule 30(b)(6) Notice.

| | |
|---|---|
| A.   My testimony is that the code that was filed with the copyright office did not contain Mark Zuckerberg's code. Now, in addition to that, I am under the impression that Mr. Gao said that there was no contribution from Mark on the server, aside from him poking around in files and duplicating code that Mr. Gao had already written.  Now, if you want to call that a version, I'm not sure what you mean by a version.  You're talking about multiple versions of the code. | Witness does not answer the question, but instead testifies non-responsively about the code filed with the Copyright Office and about what Mr. Gao said on a different occasion. |
| Q.   Well, you're not answering my question. | |
|      MR. HORNICK:  Yes, he has answered your question. | But the witness has not answered the question. |
| Q.   Let me ask you this.  Let me ask you this. | |
|      MR. HORNICK:  ***You showed him the code --*** | Coaching. |
|      MR. CHATTERJEE:  Counsel, lodge an objection.  You don't need to instruct the witness, and you don't need to argue. | |
|      MR. HORNICK:  I'm not instructing the witness. | |
|      MR. HAWK:  Yeah, you're -- | |
|      MR. HORNICK:  You're asking unfair questions. | Baseless objection. |
|      MR. CHATTERJEE:  I'm looking forward to bringing this in front of the Court. | |
|      BY MR. HAWK: | |
| Q.   Did Mr. Gao strip out any code from the version that he gave you which you gave to your lawyers to deposit with the copyright office? | |
| A.   I am -- I can't answer that.  I don't know the answer to that.  I know that the code given to the copyright office has none of Mark Zuckerberg's code. | Witness admits he cannot answer factually, but makes a self-serving assertion anyway. _Same question, third time_. |
| Q.   And how do you know that?  Is that because Mr. Gao told you that? | |
| A.   Because ***we wouldn't have*** filed code that he written -- wrote for copyright because it's not our code. | Again the witness does not testify to his knowledge of facts, but again asserts what the company "would have" done. |
| Q.   Right.  And I know you didn't intend to do that, but you've made an unequivocal statement that you did not file code with the copyright office that contained contributions by Mr. Zuckerberg.  Now, hold on, let me finish the question.  And so I want to know what is your factual basis for that statement, not what you intended to do, but what | Witness does not testify to his |

DOCSSV1:428877.3

your factual basis for that statement is?

A. *Simply based on the fact that it was not -- you know, it would not be our intent to file such code.*

Q. Okay. Did you ever have any discussion with Mr. Gao about whether or not he stripped out any code that was done by Mr. Zuckerberg?

A. To be quite honest, I don't remember if -- I remember that the contribution -- Mark's contribution was nil, okay? He went onto the server, and there was no contribution.

Q. That wasn't my question. My question was, did you ever have any conversation with Mr. Gao about whether he stripped out any code?

A. *I believe* that I asked Mr. Gao at the time, is there any code -- is any of Mr. Zuckerberg's code in this? And his response was that -- *I believe* that there was no code from Mr. Zuckerberg in that piece of code.

Q. And that there never had been?

A. Well, see, the thing is, like, you know, if you want to contin[ue] -- if you want to -- I'm not a programmer, I'm not an expert, but are you -- would you consider -- you know, are you considering code that Mark Zuckerberg copied and renamed from -- that Victor Gao wrote? Because that code is Victor Gao's code. Do you see what I'm getting at? And that's what Mark Zuckerberg did.

Q. But you know what? My question -- the problem that I'm having is that you're not answering my question. My question went simply to your conversations with Mr. Gao, and you're like two or three steps ahead of me --

A. Okay.

Q. -- about, you know, whether code if it's copied over. I'm asking you about a specific question about your conversation with Mr. Gao, and that's what I'd like you to answer.    Did you ever discuss with Mr. Gao, No. 1, whether he stripped out any code that was written by Mark Zuckerberg?

A. Okay. I -- to the best of my recollection, I asked Mr. Gao, "Is any of Mark Zuckerberg's code -- like, we need code -- we need the HarvardConnection without Mark Zuckerberg's code," okay? And I don't remember if Mr. Gao had to take something out. *It's my assumption that* –

Q. I don't want your assumption.

knowledge of facts, but again asserts what the company "would have" done. *Same question, fourth time*.

The witness does not answer the question asked about Mr. Gao.

*Same question, fifth time*.

Speculation.

Witness does not answer the question, which is about a conversation with Mr. Gao.

*Same question, sixth time*.

Speculation.

| | |
|---|---|
| A.  Okay.  ***I believe that Mr. Gao -- well, assumption, belief, same thing.*** | |
| Q.  I know, that's what I'm saying.  I don't want that.  I want your recollections of conversations -- | *Same question, seventh time.* |
| A.  Okay. | |
| Q.  -- with Mr. Gao. | |
| A.  Okay.  I asked -- okay.  If we're talking about recollections, my recollection was "Give me the HarvardConnection code that everybody contributed to without Mark Zuckerberg," okay?  He gave that to me. | |
| Q.  Okay.  And you know he gave that to you because he said, "Here's the code you asked for" -- | |
| A.  Yes. | *Same question, eighth time.* |
| Q.  -- correct?  All right.  Did you ever discuss with Mr. Gao whether or not he had stripped out any code that was attributable to Mr. Zuckerberg? | |
| A.  I don't believe we had that discussion. | The witness states belief. |

Walker Dec. Ex. 7 at 282:2-287:21.  At the very end of a long question-answer sequence, the witness finally answered the question, while still appending the qualifier "I believe."  But because of the deponent's evasiveness and refusal to answer, and three additional baseless and or coaching interventions by ConnectU's counsel, Saverin's counsel had to repeat his question eight times to elicit even that answer.  After several not-too-subtle reminders from ConnectU's counsel, the witness changed course.  This sequence exemplifies how suggestive objections by counsel "can tend to obscure or alter the facts of the case and consequently frustrate the entire civil justice system's attempt to find the truth," warranting the Court's instruction to desist from such conduct, and even a ban on spoken objections (with specific narrow exceptions such as privilege).  *Damaj v. Farmers Ins. Co.,* 164 F.R.D. 559, 561 (N.D. Okla. 1995).

Accordingly, an instruction to counsel to desist from these activities at the re-deposition of ConnectU is appropriate.

DOCSSV1:428877.3

### D.    PLAINTIFF MUST DESIGNATE A WITNESS TO TESTIFY ON TOPICS 7, 8 AND 9.

Topics 7, 8 and 9 of Defendants' 30(b)(6) Notice relate to the alleged infringement of HarvardConnection or ConnectU source code by the Facebook code produced by Defendants. Walker Dec. Ex. 7 at 4. Plaintiff has refused to designate a witness to testify as to these three topics, despite the Rule's unambiguous requirement that "the organization … named" in the notice "shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf." Fed. R. Civ. P. 30(b)(6) (emphasis added); *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 210 F.3d 1, 17 (1st. Cir. 2000) (affirming order to compel and for sanctions against party who failed to designate 30(b)(6) witness as to some noticed topics).

Plaintiff, however, has refused to designate a witness on the following three grounds:

1.    "[b]ecause Defendants have designated all source code they have produced as Confidential Information under the Stipulated Protective Order, officers and agents of ConnectU have not had access and cannot have access to any of the source code produced by Defendants. Therefore, a 30(b)(6) witness of ConnectU cannot testify regarding any of ConnectU's infringement allegations";

2.    "ConnectU also objects to these topics as premature"; and

3.    "as calling for expert testimony."

Walker Dec. Ex. 2.

The merits of its objections aside, Plaintiff must provide a designee because it has failed to timely move for a protective order. In any case, each of ConnectU's objections is without merit.

### 1.    PLAINTIFF'S INVOCATION OF THE STIPULATED PROTECTIVE ORDER IS UNAVAILING.

ConnectU's attempt to use the Stipulated Protective Order as a shield against critical discovery is improper. *See* Walker Dec. Ex. 9. The Second Stipulated Protective Order

("Protective Order") does have the effect of barring ConnectU's principals from viewing the Defendants' confidential and trade secret information without specific permission, including the code referenced in topics 7-9. But Rule 30 does not require ConnectU to designate one of its "officers [or] agents" to testify on its behalf. ConnectU's apparent insistence on having Cameron Winklevoss or another of its principals serve as the designee on these topics reflects merely its own preference. The rule provides for designation of "one or more officers, directors, or managing agents, *or other persons*." Fed. R. Civ. P. 30(b)(6). The designee need not be a principal of the corporation, nor even have personal knowledge of the matters on which she is to testify, so long as the corporation prepares her with using documents, knowledgeable persons, and other sources to the extent of what is known or reasonably available to the corporation on the noticed topic. *Calzaturficio*, 201 F.R.D. at 36, *citing, inter alia, Marker v. Union Fidelity Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D. N.C., 1989). Thus, ConnectU can name an expert, other consultant or any person mutually agreeable to the parties as designee and simply bring him or her up to speed on topics 7, 8 and 9. Walker Dec. Ex. 9 at §§ 7(d), (f).

### 2.    TOPICS 7-9 ARE NEITHER PREMATURE NOR REQUEST EXPERT TESTIMONY.

ConnectU's objections that the deposition topics are premature or request expert testimony is baseless. First, Defendants' request for a Rule 30(b)(6) deposition regarding infringement is not premature. Rule 30(b)(6) depositions are often used to discover the facts underlying a party's infringement contentions. *See e.g., United Techs. Motor Sys., Inc. v. Borg-Warner Auto., Inc.*, 50 U.S.P.Q.2d 1060, 1061-2 (E.D. Mich. 1998). As the court in *AMP Inc. v. Fujitsu Microelectronics, Inc.* stated, "it would seem reasonable to expect that a party that asserts [infringement positions] would be able to provide a witness to testify to the factual bases for those [positions]." 853 F. Supp. 808, 831 (M.D. Pa. 1994) (compelling designation).

Defendants are entitled to receive the facts surrounding ConnectU's justification to file its infringement claims against Defendants.

Second, there is no exception to the requirement of timely Rule 30(b)(6) depositions for expert-like testimony. *See Beloit Liquidating Trust v. Century Indemnity Co.*, 2003 WL 355743, *8, Case No. 02 C 50037 (N.D. Ill. Feb. 13, 2003) (requiring that Beloit designate a person to testify regarding environmental clean up estimates, even though the person who knew the most regarding this topic was likely going to testify as an expert in the case); *see also Ecrix Corp. v. Exabyte Corp.*, 95 F.Supp.2d 1155, 1158-59 (D. Colo. 2000) (basis for infringement allegations not "solely within the domain of expert testimony"). As in *Beloit*, ConnectU should be ordered to promptly designate a person to testify and that designee must make a reasonable search for the information and be prepared to testify without delay. *Id.*

### 3.  PLAINTIFF'S FAILURE TO MOVE FOR A PROTECTIVE ORDER WAIVES ITS OBJECTIONS.

Defendants' motion to compel should be summarily granted with regard to topics 7-9, as ConnectU has waived its objections by failing to move for a protective order. In response to ConnectU's objections, Defendants informed ConnectU that it must seek a protective order from the court if it continues to refuse to designate a witness. Walker Dec. Ex. 8 (August 3, 2005 letter from Joshua H. Walker to John F. Hornick). ConnectU chose not to do so.

The party resisting the Rule 30(b)(6) deposition must either designate a witness or move for a protective order "before the date set for the discovery." *Mitsui & Co., Inc. v. Puerto Rico Water Resources Authority*, 93 F.R.D. 62, 67 (D.P.R. 1981). Otherwise it will be ordered to designate without having its objections entertained. *Id,; see Bregman v. District of Columbia*, 182 F.R.D. 352, 355 (D. D.C. 1998) ("conduct was literally inexcusable under the Federal Rules of Civil Procedure"). The date set for deposition in Defendants' 30(b)(6) Notice was August 9,

2005.  Having failed to move for a protective order by that date – or indeed, at all – ConnectU

has waived its objections to designating a witness on topics 7 to 9.

**III.    <u>CONCLUSION</u>**

     For the foregoing reasons, Defendants respectfully request the relief set forth herein.

Dated:  October 4, 2005.                    Respectfully submitted,

                               /s/ I. Neel Chatterjee /s/
                          _____

G. Hopkins Guy, III*
I. Neel Chatterjee*
Monte M.F. Cooper*
Joshua H. Walker*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 614-7400
Facsimile:   (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
ddaybell@orrick.com

Steve M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:     (617) 526-9600
Facsimile:     (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

ATTORNEYS FOR MARK ZUCKERBERG,
DUSTIN MOSKOVITZ, ANDREW
MCCOLLUM, CHRISTOPHER HUGHES, and
THEFACEBOOK, INC.

* Admitted Pro Hac Vice

Dated:  October 4, 2005.                    Respectfully submitted,

                                    /s/ Robert Hawk /s/
                                    _____
                                    Robert Hawk*
                                    Bhanu Sadasivan*
                                    HELLER EHRMAN WHITE MCCULLIFF LLP
                                    1000 Marsh Road
                                    Palo Alto, CA  94025
                                    Telephone:     (650) 324-7000
                                    Facsimile:     (650) 324-0638
                                    robert.hawk@hellerehrman.com
                                    bhanu.sadasivan@hellerehrman.com

                                    Steve M. Bauer
                                    Jeremy P. Oczek
                                    PROSKAUER ROSE, LLP
                                    One International Plaza, 14th Floor
                                    Boston, MA 02110-2600
                                    Telephone:     (617) 526-9600
                                    Facsimile:     (617) 526-9899
                                    sbauer@proskauer.com
                                    joczek@proskauer.com

                                    ATTORNEYS FOR DEFENDANT EDUARDO
                                    SAVERIN.

                                    * Admitted Pro Hac Vice

DOCSSV1:428877.3