**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, | |
| Plaintiff, | CIVIL ACTION NO. 1:04-cv-11923 (DPW) |
| v. | |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC., | |
| Defendants. | |
| MARK ZUCKERBERG and THEFACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
| Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, | |
| Additional Counterdefendants. | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' JOINT
MOTION TO COMPEL TESTIMONY FROM CONNECTU LLC
RESPONSIVE TO DEFENDANTS' AMENDED 30(B)(6) NOTICE**

## I.    <u>Introduction</u>

On August 9, 2005, Defendants took the Rule 30(b)(6) deposition of Plaintiff ConnectU, through one of its founders, Cameron Winklevoss.  Although Mr. Winklevoss ("the witness") was well prepared for the deposition, the best possible designee, answered Defendants' repetitive and badgering questions to the best of ConnectU's ability, and provided complete and consistent answers, Defendants now seek an additional four hours of deposition testimony as to topics 1 through 6 and 10. Defendants' "Motion" should be denied for several reasons, including that:

- Defendants did not meet and confer in good faith.  Instead, Defendants were determined to file this Motion, despite Plaintiff's repeated offers to compromise (see § II.A, *infra*).

- The witness answered the questions completely and consistently (see § III.A and D, *infra*).

- The witness was fully prepared (see § III.B and D, *infra*).

- Defendants' sole example of alleged coaching shows that ConnectU's counsel did not coach at all, but rather made short objections that were proper and not disruptive.  However, Defendant Saverin's counsel's behavior, while questioning the witness, was impolite and unprofessional (see § III.C and D, *infra*).

With respect to topics 7-9, which call for the analysis of thefacebook.com code, most of which has not been produced and is confidential information under the protective order, it was impossible for Plaintiff to designate a Rule 30(b)(6) witness. Plaintiff offered to work this out with Defendants because no ConnectU witness can review thefacebook.com code, if Defendants ever produce it or the Court grants Plaintiff's motion to image Defendants' electronic memory devices (Dkt. 37), but Defendants failed to meet and confer and filed this Motion (see § II.B and III.E, *infra*).

For the reasons set forth below, Defendants' motion should be denied. Plaintiff agrees with Defendants that oral argument may assist the Court.

## II.    Defendants Did Not Meet and Confer in Good Faith

Defendants' Motion should be denied because they failed to cooperate and compromise to resolve this dispute in the spirit of the Federal Rules and the rules of this Court. Defendants try to paint a picture of reasonableness and cooperation in their Local Rule 7.1(A)(2) certification, but they omitted most of the facts.

### A.    Topics 1-6 and 10

Defendants fail to mention that Plaintiff repeatedly requested a list of the specific questions that Defendants believed were not answered. At the end of the deposition, Plaintiff's counsel asked Defendants' counsel what questions, if any, they would like to re-ask and offered counsel a reasonable amount of time to ask such questions while all of the parties, the witness, reporter, and videographer were together. (Ex. 10 to Motion, Dep. at 396:10-401:11) The witness and Plaintiff's counsel were ready and willing, but Defendants were not. (*Id.*)

On September 12, 2005, over a month after the 30(b)(6) deposition, Defendants wrote a letter to Plaintiff's counsel (Ex. 3 to Motion), in which they provided a list of transcript citations with which they were dissatisfied (Ex. A to the letter). Exhibit A, however, merely listed ranges of testimony. Some of the ranges of testimony started or ended in the middle of a sentence, did not contain a question, did not contain an answer, or contained any number of questions within the range. There was simply no way for Plaintiff to determine, with any certainty, what portion of each range Defendants were complaining about, or to identify the questions Defendants wished to re-ask or the basis for their complaint. For example, the first range cited in Ex. A is 22:2-23:22. Line 2 of page 22 begins in the middle of an answer, indeed, in the middle of a sentence of an answer. Was Defendant complaining about just that portion of the answer, and on what grounds?

2

On September 13, 2005, Plaintiff wrote to Defendants' counsel, stating that:

> [I]t would be very helpful, and would enable us to prepare much more quickly to meet and confer with you and respond to the points in your letter, if you would identify the specific questions with which you are unsatisfied with ConnectU's deposition testimony. We will then consider them in light of the testimony you cited, as well as other places in the transcript where such questions were asked and/or answered, and respond to you accordingly.

(Ex. 1)  However, Defendants refused to provide such a list, even though they stated at the end of the August 9, 2005 deposition that "we are happy to identify the questions and the answers we think are non-responsive."  (396-97)  Plaintiffs again wrote to Defendants, repeating the request and explaining why a list would be helpful:

> [W]e are asking you to state with specificity, in letter form, the questions with which you are unsatisfied with ConnectU's deposition testimony. Unless you state such questions, it will take us much longer to review the transcript pages you cited in Exhibit A to your September 12, 2005 letter, and we will have no way of knowing if the question we are reviewing for the adequacy of the answer is in fact the question with which you are unsatisfied with ConnectU's answer. Moreover, you cite many transcript pages and similar questions were asked at different times during the deposition. Do you view similar questions as the same question? Only you can tell us. Hence, we need a list of the questions with which you are dissatisfied with the answers.

(Ex. 2)  Despite repeated requests for a list of the actual questions that Defendants wanted answered, Defendants again refused on September 14, 2005 to provide such a list and threatened to certify under Local Rule 37.1 that ConnectU refused to respond to the request for a conference.  (Ex. 3).  On numerous occasions in the ensuing days, Plaintiff asked for a list of questions, but Defendants refused.  (Ex. 4)

On September 23, 2005, the parties held a meet and confer conference.  Plaintiff explained that it could not figure out which of the questions on which Defendants wanted more testimony, and asked Defendants to discuss Ex. A cite-by-cite on the phone, but Defendants would not do so.  During the conference, Plaintiff eventually convinced Defendants to name the categories of problems Defendants saw in the deposition (such categories can be seen in Ex. 7 to the Motion).  Plaintiff then said that

if Defendants identify the categories each Ex. A cite falls into, or identify the questions with which they are dissatisfied, Plaintiff would consider providing a witness for an additional half day. Defendants refused again. Plaintiff repeated such offer after the conference (Ex. 5), but Defendants continued to stonewall, saying they "cannot further supplement their previous extensive designation of transcript testimony." (Ex. 6) Defendants then filed this Motion, identifying for the first time a few specific questions that they wanted answered.

Defendants could have cooperated and identified the questions identified in their Motion but they were determined to file the Motion, and instead made a farce of the meet and confer requirements. Defendants did not confer in a good faith effort to avoid this Motion, and therefore it should be denied.

### B.    Topics 7-9

Defendants never met and conferred on this issue. In an August 4, 2005 teleconference with Defendants regarding the 30(b)(6) topics, Plaintiff stated that it would be impossible to provide a 30(b)(6) witness to testify on those topics without violating the stipulated protective order. Plaintiff provided additional reasons why it could not provide a Rule 30(b)(6) witness, discussed *infra*. Plaintiff also stated that it was not refusing to provide the testimony, but that it would be through Plaintiff's expert, later in the case. This was the end of the discussion with respect to topics 7-9. During the deposition, Defendants' counsel said in response to Plaintiff's counsel's objection to a question on these topics, "We'll save the meet and confer for another day." (155:2-3) That day never came.

Defendants have failed to comply with the Rule 37(a)(2)(B) and Local Rule 7.1(A)(2) meet and confer requirements with respect to topics 7-9, and therefore this Motion should not have been filed with respect to topics 7-9 and should be denied.

III.    **Opposition to Defendants' Arguments**

Defendants' request for an order for four more hours of testimony is excessive and unwarranted.  Excessive because Defendants cite only a few baseless or frivolous examples of testimony with which they are dissatisfied, totaling about one hour, 28 minutes of testimony, but demand four more hours.  Unwarranted because the witness fully answered all questions put to him, was fully prepared, and was not coached.

A.    **The Witness Fully Answered The Questions**

Contrary to Defendants' arguments (Motion at 4-6), the witness gave full and consistent answers to the questions he was asked.  Defendants discuss in the Motion only two examples to support their argument that the witness allegedly was evasive.  Although Ex. 7 to the Motion (discussed *infra*) cites other examples, we can assume that Defendants featured in their brief what they view as the best examples.  Yet upon scrutiny, the witness was neither evasive nor unresponsive with respect to these two lines of questions.

Before such scrutiny it is important for the Court to understand four overarching problems that led to this motion.  The first is that the witness swore to tell the whole truth, despite Defendants' counsel's badgering "yes or no" questions.  The second problem is that Defendants' counsel asked questions from their worldview, that is, their perspective and their view and theory of the case.  The witness, on the other hand, answered from his own worldview.  This led to repetitive questioning by counsel, not because the witness did not answer the questions, but because such answers did not jive with counsel's worldview and in many cases Defendants' counsel simply did not listen to, or understand, or like the answers.  The third problem is that Defendants pick and choose their way through 400 pages of repetitive questioning and answers, and cite only the portions that support their motion, ignoring testimony directly contrary to their arguments.  The fourth problem is that Defendants assume that a deposition involves machine-like questioning and answering, and that questions asked in a yes/no format

5

must always be answered simply yes or no.  In reality, no deposition is like this.  They tend to become conversational in nature, with half-formed questions (*see, e.g.,* 20:3; 132:6-7; 172:8), and yes/no questions are often intended to be answered, and are answered, in narrative form (*see, e.g.,* Defendants' Ex. 7 at 3, re: 47:20-49:7, where Defendants complain that the witness answered a yes/no question but failed to provide a narrative answer).  In this deposition, Defendants only tried to force the witness to answer yes/no questions with a yes/no when it suited them, and otherwise were happy with narrative answers to such questions and sometimes complained when they didn't get them.  These problems are apparent in the discussion below and in Plaintiff's Ex. 7.

The first question presented by Defendants (Motion at 4) relates to the termination of Mr. Zuckerberg's partnership with the Founders.[1]  Defendants asked whether "you" ever terminated his partnership.  The witness was testifying for ConnectU L.L.C., the corporate successor to the Founders' unincorporated entity that was developing the Harvard Connection website with Mr. Zuckerberg, now known as connectu.com.  The witness testified that the Founders didn't use the word "partner" with Mr. Zuckerberg (342:25-343:20), testifying instead that the Founders viewed Mr. Zuckerberg as a member of the Harvard Connection team (*see*, *e.g.*, 343:11-13).  Mr. Winklevoss is a competitive rower, and therefore thinks in terms of teams.  (*See, e.g.,* 18:8; 52:25-53:3; 65:24-66:1; 67:10-12; 68:11-12; 70:4; 119:9-10; 122:13-16; 129:11-12; 130:10, 22; 135:9; 137:14-17; 139:20-22; 184:9; 351:19-22)  But counsel insisted on asking "Did you terminate his partnership?"  (81:20; Motion at 5)  The witness tried to answer this unanswerable yes/no question from his own worldview by asking, rhetorically, did Mr. Zuckerberg ever provide the contribution that was expected of him as a member of the Harvard Connection team?  Plaintiff's counsel objected twice that

---

[1]     Because of the details of the disputed testimony, this brief is best read side-by-side with Defendants' Motion.

the question was unfair (81-82), but Defendants kept asking.  Moreover, Defendants

failed to cite the portions of the transcript where the witness directly answered the

question.

Q.  Okay.  So that's your answer.  The cease and desist letter effectively threw
him out of the partnership? …
A.  I think his actions threw him out of the partnership, and I think the cease and
desist letter illustrated and outlined what the actions were that he did that would
have effectively thrown him out of the partnership, yes.

(*Id.* at 83:4-13)  Thus, after about two pages of testimony (1 minute, 28 seconds),

Defendants had a full answer to their question.

Defendants cite *Calzaturficio S.C.A.R.P.A v. Fabiano Shoe Co.*, 201 F.R.D. 33,

37-38 (D. Mass. 2001), where a witness refused to answer "why" a contract had been

terminated.  Here, the witness fully answered.  But it is worth noting that asking "why" a

contract had been terminated is very different from asking "if" a contract (or partnership)

has been terminated.  The former is a factual question appropriate for fact testimony,

but the latter is a legal contention beyond the scope of a fact witness.  Where a question

seeks details of "contentions made and positions taken" by a corporate party, such

testimony is inappropriate under Rule 30(b)(6).  *McCormick-Morgan, Inc. v. Teledyne*

*Indus., Inc.*, 134 F.R.D. 275, 285, 288 (N.D. Cal. 1991), *rev'd in part on other grounds*,

765 F. Supp. 611.  In *McCormick*, the court held that a 30(b)(6) deponent, as a non-

lawyer, would be "ill-equipped to reason reliably about the legal implications" of difficult

issues, *id.* at 287, and could not be expected to present orally "a fully reliable and

sufficiently complete account of all the bases for the contentions made and positions

taken" by the corporate party, *id.* at 286.  Similarly, in *Smithkline Beecham Corp. v.*

*Apotex Corp.*, 2000 U.S. Dist. LEXIS 667, *27 (N.D. Ill. Jan. 21, 2000), the court held

that a "recipient of a Rule 30(b)(6) request is not required to have its counsel muster all

of its factual evidence to prepare a witness to be able to testify regarding a defense or

claim."  Here, Defendants were asking the deponent legal issues about legal

contentions, and the 30(b)(6) witness provided his best non-legal response from his own personal perspective.[2]

Defendants challenge Plaintiff's counsel's objections that Defendants were "putting words in the witness's mouth" and was "giving him an unfair question."  (Motion at 6)  Defendants cite to *Ethicon Endo-Surgery v. U.S. Surgical Corp.*, 160 F.R.D. 98, 99 (S.D. Ohio 1995), and *Phinney v. Paulshock*, 181 F.R.D. 185, 206 n.49 (D.N.H. 1998), for the proposition that the deponent should answer subject to a non-suggestive objection, such as "I object to the form of the question."  Neither of these cases states that objections are so limited.  They merely state that counsel should make concise objections and should not instruct a witness not to answer a question.  Counsel's objections were within such parameters.

Defendants present only one other example of alleged evasiveness, arguing that the witness refused to answer regarding Mr. Zuckerberg's share of the Harvard Connection "partnership."  In this instance, the witness actually answered the question immediately after the question was asked but the Facebook Defendants' counsel kept asking the same question.  Defendants cite to 63:23-68:3 regarding whether ConnectU's noncorporate predecessor discussed with Mr. Zuckerberg what share of the alleged "partnership" Zuckerberg would have.  (63:23-24)  The witness immediately responded, saying "So to the extent of talking about equity shares at that point, it was premature."  (64:9-11)  The attorney asked again and the witness answered again: "The specific share, it was premature to speak about that at that time."  (64:16-17)  After having the question immediately and unambiguously answered, the attorney continued to repeat the same question.  The witness then explained some of the benefits to Mr. Zuckerberg -- other than equity shares -- of the partnership (or team).  The witness was

---

[2]    For these same reasons, 30(b)(6) testimony on Plaintiff's copyright infringement contentions is improper (see § III.E, *infra; s*pace prevents repeating these arguments there).

trying to answer the question fully, but the question assumed that the parties were thinking in terms of equity share at that time. The witness tried to explain that, at that time, before the Harvard Connection website was even finished, the Harvard Connection team was thinking in terms of immediate benefits, not long-term equity shares of an as-yet-unlaunched website. Specifically, the witness answered that the immediate benefits to Mr. Zuckerberg were prestige, that he could be the center point of the launch, and that he could reinvent himself after the facemash debacle (a failed website that resulted in disciplinary proceedings at Harvard University). (65:5-16) Because the witness's answers did not jive with Defendants' counsel's worldview, he kept repeating the same question, ten times, and again at pages 135-143. Co-Defendant Saverin's counsel did the same, later in the deposition. (342-356) The witness, on the other hand, consistently and repeatedly did his best to answer this line of questions from his view of what it meant to be a member of the Harvard Connection team.

Throughout this line of repetitive and sometimes badgering questions, Defendants' attorney was pushing for a yes or no answer, but the witness didn't see it that way. A witness will not answer yes or no when the whole truth does not lend itself to yes or no answers. Plaintiff's counsel's objection that "The witness can answer the question however he wants" (65:3-4) was in response to the following dialogue, where the witness was trying to give an explanation and Defendants' counsel would take nothing except a yes or no answer:

Q. Okay. Did you tell Mr. Zuckerberg how much of a share of the partnership he would have?
A. Well, there is more --
Q. Please just answer the question. It's a yes or no.
MR. HORNICK: The witness can answer the question however he wants.
A. Yeah, I mean, you're -- I'm assuming you're talking about equity share, the multiple benefits to a project, which could include prestige, equity. There's multiple levels. And at that point we had no revenue source, and the product was far from completion. We stressed to him multiple times that one of his major

benefits would be a sort of a reinventing of himself in terms of his reputation post the Facemash debacle.  In fact, he would be the center point of the launch, not us, even though it was our idea.  So we did not have specific talks about equity share, but as I said, he was an equal partner.  Whatever you might want to infer from the equal partner, be it a quarter, a quarter, a quarter, that's fine.

(64:23-65:21)  As the Court can see in context, Plaintiff's counsel simply made the point that the witness need not answer yes or no if he did not see it as a yes or no issue, and must be permitted to explain his answer and tell the whole truth.  Again, the witness answered the question fully, over a period of 2 minutes, 16 seconds.  Defendants are not entitled to additional testimony merely because the witness insisted on providing a complete answer in context.

### B.    The Witness Was More Than Adequately Prepared to Testify

Defendants argue that Mr. Winklevoss "had barely prepared for his deposition" (Motion at 7) but omitted the witness's complete testimony, where he stated that:

Q.    Okay.  What did you do to prepare for your deposition today?
MR. HORNICK:  And Cameron, before you answer that, just you can tell him generally, but don't tell him anything that we might have discussed.
A.  We -- or I basically went over sort of -- you know, went through the course of events, tried to reconstruct them in my mind and refresh my memory and just sort of be on top of the material.
Q.  What do you mean by "be on top of the material"?
A.  Well, as you guys are fully aware, that this situation happened -- began in 2003, so that's approximately two years ago.  So I went over anything, you know, e-mails and anything else that might relate to it.
Q.  So did you review any specific documents to refresh your recollection?
A.  No.  I pretty much went over the whole -- the whole opus or whatever you call
        it, went through some e-mails, tried to think of interactions that we had, meetings and whatnot.  And that's about it.
Q.  And what e-mails are you referring to?
A.  Basically any and all discourse between myself, Mr. Zuckerberg.

(10:1-11:3)  Defendants also ignored Mr. Winklevoss's testimony that he also spent 6-7 hours meeting with attorneys to prepare for the deposition.  (12:4-6)  As is true of the Motion as a whole, Defendants selectively pick and choose from the deposition testimony and do not provide the Court with the full picture, which shows that the

witness was well prepared, and had an excellent recall of the documents and facts (*see*, *e.g.*, 107-08, 120-21, 161-173, 229, 242, 253-54).  Moreover, Mr. Winklevoss was the best person to testify on the topics.  He was one of the Harvard Connection Founders, has been intimately involved in the present litigation, is running ConnectU on a daily basis with his brother Tyler, and speaks with the other ConnectU principals regularly, and therefore has broad knowledge about the facts of the case.

Defendants cite as an example of the witness's alleged unpreparedness his testimony on the issue of where it was reflected that Mr. Zuckerberg understood that the Harvard Connection information was confidential.  But none of the testimony Defendants quote suggests that the witness was unprepared.  Moreover, there are many pages of testimony on this point that Defendants did not cite.  Although Defendants cite to portions of testimony at 108:12-111:24, they fail to cite the testimony at pages 98-103, where the witness had already discussed this issue in detail.  In fact, it was this badgering in questioning that led Plaintiff's counsel to warn Defendants (for the first of three times) that their questions were reaching the oppressive level under Rule 30(d)(4) (108:12-110:4):[3]

Q.  And anything else you can identify?
A.  I think I've answered the question.
Q.  Well, other than that one statement, is there anything else you can identify in what I've marked as Exhibit 4?
A.  If you want me to go through these and sort of look a little bit more thoroughly, that's the first thing that popped out. I think it sufficiently answers the question.
Q.  Sure. Why don't you look through it more thoroughly and see if there's anything else.
A.  To really, you know, more thoroughly sort of hammer it home, Victor Gao, again, in multiple conversation -- you know, a two-hour conversation imparted to Mark the sort of the proprietary nature of the website.  So I really don't think it's necessary.

---

[3]  This following quote is the "sharp colloquy" Defendants omitted from their brief, along with the 16 lines of questions and answers they omitted, without ellipsis or explanation, from such quote (Motion at 8-9).

MR. HORNICK: I'll say that your question [sic] is reaching the oppressive level under the Federal Rules.

MR. CHATTERJEE: You can seek a protective order if you think it's oppressive. I'm just asking --

MR. HORNICK: I can stop it under that basis, if you read the rule.

MR. CHATTERJEE: If you want to stop it, stop it.

MR. HORNICK: I don't want to, no. I want to give you your full day.

A. And I'd like you to be --

MR. HORNICK: I suggest you move on. The witness has answered your question, many times.

MR. CHATTERJEE: I actually asked him to identify everywhere in these documents --

MR. HORNICK: And he told you the whole set of documents, and I told you the set of document documents [sic] is incomplete, so your questioning is unfair and oppressive.

A. You actually asked me to point one instance, and I did do that.

The testimony cited by Defendants does not show that the witness was unprepared. Rather, it shows that the witness considered the combination of emails to be a complete answer to the question posed. (Dep. at 98-111) Moreover, Plaintiff's counsel pointed out that the set of e-mails about which the witness was being questioned was not complete, as at least the e-mails prior to November 25, 2003 were missing, but Defendants' counsel still insisted that Mr. Winklevoss point to specific emails (107:8-16). Defendants assert that such testimony either reflects a failure to review the documents fully, or an attempt at sandbagging. (Motion at 9) When the testimony is read as whole, it reflects just the opposite. The witness was knowledgeable about the contents of the string of e-mails and believed the combination answered the question, but Defendants' counsel refused to accept his answer.

As to the other examples cited by Defendants, but not discussed (Motion at 7 and 9):

- 49:23-51:4: The witness directly answered the question presented, at 50:9-14 (Plaintiff's Ex. 7 at 4).

- 52:12-53:23: The witness directly and unequivocally answered the questions presented, at 52:15 and 53:17 (Ex. 7 at 4-5).

- 98:15-103:19:  The witness directly answered a variety of questions (Ex. 7 at 15-18).

- 63:23-68:3:  The witness specifically answered the question (Ex. 7 at 7-9).

- 41:12-24:  The witness had fully answered the antecedent to this follow up question, asking for an identification of the trade secret combination in suit (36-41).  (Ex. 7 at 1)  The witness also stated specifically that he prepared on this issue (41:7-11).

- 88:9-20, 112:10-25, 281:8-287:6:  Defendants' counsel asked about the actions of a third party, Victor Gao, who does not work for the company. The witness testified to the best of ConnectU's abilities and cannot be expected to testify on behalf of ConnectU as to acts of third parties (Ex. 7 at 12-14, 20-21, 30-34).[4]

- 92:23-94:9:  The witness provided a responsive answer about the state of the technology but is not a computer programmer (Ex. 7 at 1-2).

The examples cited by Defendants do not evince a lack of preparation by the witness.  Instead, they show that he was well prepared, responsive, and helpful.

### C.    Counsel Did Not Coach the Witness or Obstruct the Deposition

Defendants would like the Court to believe that the objections by ConnectU's counsel were obstructive and consumed large amounts of time, and therefore that they need more time to make up for the time ConnectU's counsel spent objecting.  This is far from reality.  The examples of alleged coaching cited by Defendants in Defendant's Ex. 7, § B(2), total 4 minutes, 40 seconds.  This surely does not warrant providing an additional 4 hours of testimony and a restriction on objections.

---

[4]    Defendants also complain that the witness suggested that a third party might have information.  (Motion at 7)  Surely Defendants are not suggesting that a Rule 30(b)(6) witness cannot name other people who may have relevant information.

Defendants' supposedly most egregious instance of obstruction was in fact a situation where ConnectU's counsel tried to prevent Defendants from asking misleading questions about the copyright registration for the Harvard Connection code, which was performed by ConnectU's counsel, not ConnectU or the witness.  Such testimony was not covered by Defendants' 30(b)(6) Notice (Ex. 2 to Motion).  Defendants tried to force the witness to admit that the Harvard Connection code deposited with the Copyright Office contained some code written by Mr. Zuckerberg, or that such code was deleted before the copyright application was filed.  To ask any question containing such an implication was misleading because the deposit copy contains no such code and because the witness was not involved in preparing and filing the copyright application. Therefore Plaintiff's counsel stated, <u>after</u> the witness answered, that "I should say that the witness might not be aware of deletions that were made."   If such statement had coached the witness, he would not have given the following answer: "To my knowledge, there were no deletions made."  (277:12-16)

Defendants then changed the subject, asking about Mr. Zuckerberg's alleged contributions to the Harvard Connection code, not about the code submitted to the Copyright Office.  The witness answered the question.  Then counsel said his question was really about the code filed in the Copyright Office, which it clearly was not.  (*See* 278:25–279:22)  Counsel asked "you've already testified -- let me make sure -- you don't know how many lines of code that Mr. Zuckerberg contributed to the Harvard Connection code that has been filed with the copyright office, correct?"  (279:17-22) Such question outrageously mischaracterized the witness's testimony and was misleading and unfair because the code registered with the Copyright Office contains no Zuckerberg code, the witness did not register the copyright, the question was outside the scope of the deposition, and counsel said he asked one thing when he really asked another.  Plaintiff's counsel therefore stated:  "Objection.  That -- no Zuckerberg code that I know of has been filed in the copyright office" (the written transcript misreports the

14

objection, see CD-ROM Ex. 8), followed by attorney colloquy on the unfairness and misleading nature of the question (279:24-281:11), at the conclusion of which Saverin's counsel agreed the he can't mislead the witness ("Fine.  Alright." 281:9-10).  The remainder of Plaintiff's counsel's comments for the remainder of this line of questioning are quoted on page 14 of Defendants' Motion.  He hardly said another word, except to state once that the witness answered a question, once that counsel continued to ask unfair questions, and once that he was not instructing the witness.  (283:9-21)  Plaintiff's counsel's only other comment, made in response to Saverin's counsel's repeated questions about the Harvard Connection code, was "If you show him the code it might help" (this statement was also misreported in the transcript; *see* CD-ROM Ex. 8).

Plaintiff's counsel's statements and objections were necessitated by Saverin's counsel's unfair, misleading, and oppressive tactics, and the fact that he was asking questions outside the scope of the 30(b)(6) notice, which says nothing about Mr. Zuckerberg's contributions to the copyright deposit.  But on the whole, Plaintiff's counsel said very little during the pages and pages of testimony quoted in Defendants' Motion. If counsel does not speak, he cannot be coaching.

If any behavior during the deposition should be criticized, it is that of Mr. Hawk, Saverin's counsel.  Mr. Hawk repeatedly shook his head at the witness's answers, laughed and smiled at the witness while he answered, badgered the witness with oppressively repetitive questions, cut off the witness's answers, and tried to get the witness to change his answers.  (331:24; 334:6-9; 343:5-6; 371:7-8, 14-15; 345:18-23; 346:3-7; 350:17-25; 370:12-14; 372:12-16)  Plaintiff's counsel rightfully, properly, and repeatedly objected to such behavior and twice warned counsel that his tactics were reaching the oppressive level.[5]  By comparison, TheFacebook's counsel was not so

---

[5]     Mr. Hawk's behavior is highlighted in Plaintiff's annotated version of Defendants' Ex. 7, which is Ex. 7 hereto (at 38-41, 44-47, and 57).

impolite.  In view of Mr. Hawk's behavior alone, who was the sole questioner in the sole example of alleged coaching presented in the Motion, this Motion should be denied.

Plaintiff's motion for an instruction to counsel to desist from making objections should also be denied (in the event that the Court orders additional deposition time).

### D.    Defendants' Exhibit 7 Does Not Support Their Motion

Defendants' even less convincing examples of the witness's alleged evasiveness and unpreparedness, and of counsel's alleged coaching, are set forth in Ex. 7 to the Motion.  Plaintiff's Ex. 7 to this opposition addresses each such example, most of which are baseless or frivolous, and even petty.  Plaintiff urges the Court to review such examples to get a flavor for the repetition and oppressiveness of Defendants' questions, the sincerity, responsiveness, and preparation of the witness, and the propriety and restraint of Plaintiff's counsel.  If Defendants had simply listened to the witness and not tried to force answers that comport with their worldview, they would surely have conducted a more efficient deposition and had time for more questions.  Plaintiff should not be penalized for Defendants' shortcomings, and therefore their motion should be denied.

### E.    Defendants' Motion on Topics 7-9 Should be Denied

#### 1.    Defendants Have Failed to Produce the Relevant Source Code

Defendants fail to mention that they have produced no readable thefacebook.com source code from the time of its February 2004 launch, preceding the launch, or from the launch through September 2004, and have produced no database definition ("DBD") for any version of their code.  It is this early code and DBD that is the best evidence of infringement and misappropriation.  Plaintiff has filed a motion to compel the imaging of Defendants' electronic memory devices (Dkt. 37), which are likely to contain such code, which Defendants have not denied.  Until that motion is resolved and this early code and DBD are obtained, Plaintiff cannot provide an infringement or

misappropriation of code analysis, or complete its expert report due November 1, 2005.[6]
Even if the protective order permitted a Rule 30(b)(6) witness for ConnectU to testify
regarding such code (which it does not, discussed below), it is impossible for ConnectU
to provide such a witness at this time because Defendants have not produced their
early code and DBD, and have refused to provide images of their electronic memory
devices.

Defendants claim that they need to receive facts surrounding ConnectU's
justification for filing its infringement claims, but these facts were provided in response
to Defendants' first set of interrogatories (Ex. 10), and by the witness (*see infra*).  In fact,
because Defendants are withholding crucial code and the DBD, there is nothing more
that another 30(b)(6) witness could say on topics 7-9 at this time, and would merely
repeat the witness' testimony.

### 2.    The Protective Order Prohibits ConnectU from Reviewing the Documents That are the Subject of Topics 7-9

Plaintiff also informed Defendants that it is impossible for Plaintiff to designate a
Rule 30(b)(6) witness to testify regarding thefacebook.com code without violating the
protective order.

Defendants admit that the code referred to in topics 7-9 was designated as
confidential and that the protective order "does have the effect of barring ConnectU's
principals from viewing the Defendants' confidential and trade secret information without
specific permission, including the code referenced in topics 7-9."  (Motion at 18)  More
than just barring principals, the protective order bars any ConnectU employees or
agents from viewing the code (Dkt. 35, ¶ 7).  Despite this prohibition, Defendants still
state that "[t]he designee need not be a principal of the corporation, nor even have

---

[6]    Assuming such code is not produced or recovered through imaging, Plaintiff
expects to move, after depositions, for an adverse inference based on Defendants' spoliation of
evidence.  Plaintiff's Production Request No. 180 seeks the DBD, but Defendants are
withholding it (Ex. 9).

personal knowledge of the matters on which she is to testify, so long as the corporation prepares her using documents, knowledgeable persons, and other sources to the extent of what is known or reasonably available to the corporation on the noticed topic." Rule 30(b)(6) requires that the "persons so designated shall testify as to matters known or reasonably available to the organization." But the corporation cannot view the code so the code is not known or reasonably available to ConnectU. *See Calzaturficio,* 201 F.R.D. at 38 ("the obligation imposed by Rule 30(b)(6) is not infinite. . . .[T]he rule requires testimony only as to 'matters known or *reasonably available* to the organization.'" (emphasis in original) (citation omitted)).

### 3.    Rule 30(b)(6) Requires the Consent of "Other" Deponents

Defendants also ignore the fact that Rule 30(b)(6) states in full "or other persons who consent to testify on its behalf." The Advisory Committee notes state that "[t]he organization may designate persons other than officers, directors, and managing agents, but only with their consent." Fed. R. Civ. P. 30(b)(6) Advisory Committee Notes to 1970 Amendments. Here, however, because the information is confidential, an employee or agent of ConnectU cannot consent to reviewing the information and testifying on behalf of ConnectU.

Additionally, the *Calazturficio* case does not involve the issue of having an expert or non-employee provide 30(b)(6) testimony in any manner. *Calazturficio* merely reiterates that information must be reasonably available to the corporation. Defendants propose that ConnectU can name an expert, other consultant, or any person mutually agreeable as designee and simply bring him or her up to speed on topics 7-9. But under the protective order, no one other than an expert can have access to thefacebook.com code (Dkt. 35, ¶ 7). Defendants have suggested that Plaintiff's expert can be designated as its Rule 30(b)(6) witness on these topics. But why would an expert consent to speak as a fact witness on behalf of, and bind ConnectU, under Rule 30(b)(6)? Such an argument makes no sense and would create a conflict of interest for

the expert.  However, Plaintiff has agreed to provide testimony on such topics through its expert (but not as a Rule 30(b)(6) witness), after Defendants produce their early code (or it is recovered through imaging) and DBD, and the expert has performed his analysis.

### 4.    Defendants' Cases Are Inapposite

On pages 18-19 of their Motion, Defendants cite four cases.  *AMP, Inc. v. Fujitsu Microelectronics, Inc.*, 853 F. Supp. 808, 831 (M.D. Pa. 1994), and *Beloit Liquidating Trust v. Century Indemnity Co.*, 2003 WL 355743, *8 (N.D. Ill. Feb. 13, 2003), do not apply here because the information on which the 30(b)(6) witness would testify was not confidential and the examining party was not withholding information preventing the analysis on which the testimony was sought.  Fujitsu was ordered to provide a 30(b)(6) witness to testify on the factual basis of contentions and affirmative defenses set forth in its Answer and Counterclaim.  Here, Mr. Winklevoss was presented and prepared to testify on the factual basis for Plaintiff's copyright infringement claim, and did so (155:13–159:18), to the extent he was asked and such testimony did not require access to Defendants' confidential information.  Beloit was ordered to provide a 30(b)(6) witness even though he might later testify as an expert.  Here, **ONLY** Plaintiff's expert can testify on these topics, but only as an expert, but even he can't do so because Defendants have not produced crucial code.  The *Beloit* court also sparingly ordered Beloit to provide 30(b)(6) testimony on the myriad topics before it.  *United Techs. Motor Sys., Inc. v. Borg-Warner Auto., Inc.*, 50 U.S.P.Q.2d 1060, 1062-63 (E.D. Mich. 1998), does not apply.  Although plaintiff argued that the protective order prevented it from preparing anyone other than an attorney and experts on certain topics, plaintiff had designated an attorney as its 30(b)(6) witness.  ConnectU has not done so and cannot do so.  *Ecrix Corp. v. Exabyte Corp.*, 95 F.Supp.2d 1155, 1158-59 (D. Colo. 2000), does not apply here because plaintiff sought testimony on Exabyte's prefiling factual basis for its patent infringement counterclaim.  ConnectU's witness was prepared to testify on this

issue, and did so.  Although the *Ecrix* court observed that defendant could move to permit the disclosure of plaintiff's confidential information to defendant's 30(b)(6) witness, ConnectU must insulate itself from potential future infringement or misappropriation claims from Thefacebook, Inc., based on access to the latter's source code.  Defendants claim that the protective order prevents employees of ConnectU from viewing Thefacebook's code (Motion at 18), and Plaintiff agrees.[7]

### 5.    Plaintiff Did Not Need to Move for A Protective Order

The cases cited by Defendants, *Mitsui & Co., Inc. v. Puerto Rico Water Resources Auth.*, 93 F.R.D. 62, 67 (D.P.R. 1981), and *Bregman v. District of Columbia*, 182 F.R.D. 352, 354-55 (D.D.C. 1998), involved situations where the party served with the deposition notice did not even show up for the deposition and/or completely refused to designate witnesses as to any of the topics.  They did not involve the situation here, where the party served with the deposition notice offered its expert at a later date to testify.  Also, in stark contrast to the cases cited by Defendants, Plaintiff here did not refuse to provide a witness.  Rather, it was and is **impossible** to provide a witness to testify as to those topics without violating the protective order, and because Defendants have not produced their early code and DBD.  In view of the fact that Defendants have resisted all efforts to produce the code needed to perform the analysis on which they seek the designation of a witness, refuse to permit the imaging of their electronic memory devices, and did not meet and confer before filing their motion with respect to topics 7-9, their motion should be denied.

## V.    Conclusion

For the reasons set forth herein, Defendants' motion to compel additional testimony from ConnectU should be denied.

---

[7]    The applicable cases are those that prevent contention testimony in 30(b)(6) depositions (see n. 2, *supra*).

Respectfully submitted,

DATED:  October 18, 2005

/s/ Troy E. Grabow
Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA  02142
Telephone:  (617) 452-1600
Facsimile:   (617) 452-1666
larry.robins@finnegan.com
jon.gelchinsky@finnegan.com

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Troy E. Grabow (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Plaintiff and Counterclaim
Defendants