**EXHIBIT 7**

**(PART 2 of 3)**

| | | | |
|---|---|---|---|
| | had the same proprietary functionality and code. So that absolutely would be understood there, okay?<br>Q. But was it stated?<br>A. Was it specifically stated that I say, "You cannot work on another project exactly like this"? No, I did not say that.<br>Q. Okay.<br>A. However --<br>Q. Go ahead.<br>A. However, as I said before, he was unable and not allowed to use the same proprietary information and functionality and business models and everything that we conveyed to him for another project like that. | | |
| 204:22-208:8 | Q. Do you see that? Beneath that, did you disclose anything that ConnectU or HarvardConnection says this is confidential information?<br>    MR. HORNICK: And read it carefully, Cameron.<br>    THE WITNESS: Yeah<br>    (Witness reviews document.)<br>A. This -- yeah, this may, in fact, be proprietary information, but I will point out that myself and Mr. Lentz were engaged in business activities at this point. And he had a company called Greenwave Wireless, which --<br>Q. I understand. My question's very, very simple. It's -- and I'll restate it --<br>    MR. HORNICK: Object.<br>Q. -- in case it was unclear.<br>    MR. HORNICK: Well, actually, the witness answered the question.<br>    MR. HAWK: No, he didn't. He said this may be or something like that.<br>    MR. HORNICK: That was his answer.<br>    MR. CHATTERJEE: Well, let's not argue about it. I'm going to ask the witness a question. He's going to | Counsel poses a straightforward question about the contents of a document.<br><br><br><br>Non-responsive.<br><br><br><br><br><br><br>ConnectU's counsel asserts that witness' non-responsive answer was adequate. | This is a frivolous example. The witness specifically answered the question.<br><br><br><br>Plaintiff's counsel's statement was accurate. |

answer it, and, you know, if he's non-responsive, we'll go to the court on it.

    MR. HAWK: We don't want something like may be. We want an answer to the question.

    BY MR. CHATTERJEE:

Q. What is --

    MR. HORNICK: He gave his answer.

Q. What is the confidential ConnectU/HarvardConnection information that is disclosed in this email?

A. This -- the concept of a portal with controllable sort of content is a proprietary information; however, I believe at this time I had a nondisclosure with Mr. Lentz as well as an oral agreement and understanding that this was completely confidential and proprietary. So that answers your question.

Q. So did you have a written agreement with him?

A. I would have to check. I'm not sure. But I'm certain that Mr. Lentz -- we had an oral agreement.

Q. Have you talked with Mr. Lentz about this litigation at all?

A. He's aware that we're in a lawsuit. I have not really talked to him since we spoke in December, and then we didn't really -- about this specific litigation other than, you know, Are you suing them, yes, no, not really, no, I don't believe so.

Q. Is there anything in this content of this e-mail that indicates that it's confidential?

    MR. HORNICK: Which e-mail are you talking about?

    MR. CHATTERJEE: This string.

    MR. HORNICK: The whole thing?

| | | | |
|---|---|---|---|
| | MR. CHATTERJEE:  The entire document.<br>        MR. HORNICK:  Read through it, Cameron.<br>Q.  Take your time.<br>A.  Okay.<br>    (Witness reviews document.)<br>A.  I think, as I said before, the portal concept and the multiple schools is a proprietary piece of information, but as I also said, we were discussing here a potential business synergy and relationship, and we would have been covered and would have -- it would have all been protectable information.  This is not someone that I'm just spilling something to.<br>        MR. CHATTERJEE:  Could you please read my question back.<br>    (Record read.)<br>A.  Oh, okay.  Excuse me.  I don't believe there's anything in these e-mails that indicate that it's confidential, no. | The witness revises his previous answer and indicates that he is uncertain, reflecting a lack of preparation on 30(b)(6) topics 2, 5 and 10.<br><br>Non-responsive. | This is a frivolous example.  Nothing in this testimony reflects a lack of preparation; the witness specifically answered the question. |
| 208:13-209:22 | Q.  And before these e-mails were exchanged, did you have any conversations with Mr. Lentz?<br>A.  Yeah. And Mr. Lentz -- before or -- sorry, was the question before?<br>Q.  Before this e-mail exchange occurred.<br>A.  We may have talked on the phone.  I would assume that we would have talked on the phone.<br>Q.  And so you're not sure? You don't remember?<br>A.  I don't know the -- like if it started as an e-mail -- I mean, if it started as an e-mail dialogue, then we would be reading that. So I'm assuming that -- in fact, no, I remember that we spoke in person. Initially he mentioned he had a wireless business.  And I said, "Oh, that sounds interesting."  And then I think we may have talked and tried to set up some sort of discussion. | Vague ("may have").<br><br><br><br><br><br><br><br><br><br>Vague ("may have"). | In his next statement, the witness's recollection was refreshed and he specifically answered the question ("in fact, no, I remember that we spoke in person. Initially he mentioned he had a wireless business.  And I said, 'Oh, that sounds interesting.'"). |

28

| | | | |
|---|---|---|---|
| | Q. And so prior to sending this e-mail, it's your testimony that you had an agreement with him that all the information that you're talking about -- <br> A. Right. <br> Q. -- was confidential? <br> A. An oral agreement that is confidential between the co-parties, absolutely, yeah. <br> Q. So the two of you had that agreement -- <br> A. Uh-huh. <br> Q. -- before any e-mails were exchanged? <br> A. Sure, yeah. I mean, as I said, he has a business, a wireless business. He sent over a lot of information, a lot of material. He had a partner, and it was -- you know, he had a lot of protectable information on the table, too. | The witness undercuts the previous answer by answering vaguely and saying merely that Mr. Lentz had "protectable information" without responding directly to the question. <br><br> Topic 2. | This is a frivolous example. The witness answered unequivocally ("Sure, yeah.") Defendants' argument about undercutting is wrong, and irrelevant to this motion. |
| 210:5-16 | Q. Did you ever sign a nondisclosure agreement with them? <br> A. I believe -- I'm not sure. I don't recall if we signed -- I don't think we -- we signed a contract with them, and they agreed -- and perhaps in the contract there was confidential -- a confidentiality at that point. But, again, this is post February 4th. So the ideas that I, you know, have stated that were proprietary and private in terms of knowledge had been made public at that point. | The witness's response is vague and reflects a lack of preparation as to 30(b)(6) topics 2, 5, and 10. | This testimony was outside the scope of the 30(b)(6) topics because it related to whether Plaintiff's trade secret combination was still secret after Defendants launched thefacebook.com. The witness answered to the best of his recollection, after having reviewed all documents prior to the deposition (10-11). |
| 243:12-24 | Q. So when you were saying being an active part of the team, it had a different meaning here than it did in conversations you had with other people? <br> A. What I'm saying is that Victor's active part in the team would have been a monetary active part and that | Evasive | The witness specifically answered the question. |

| | | | |
|---|---|---|---|
| | Mark Zuckerberg's and other people's may have been an equity stake such as Mark Zuckerberg's active part of the team. Whenever Victor was active, he was a monetary active part of the team.<br>Q. You mean he was paid money?<br>A. He was a contracted active part. | Does not answer the question. | This is a frivolous example. The Facebook Defendants' counsel must have been satisfied with this answer because he did not ask a follow up and passed the deposition to Mr. Saverin's counsel. It was then 3:35pm and the deposition ended at 6:27pm. Counsel certainly could have asked a follow up question if he believed the question had not been answered. |
| 281:9-287:21 |     MR. HORNICK: You can't mislead the witness.<br>    MR. HAWK: Fine. All right.<br>A. To answer your question, when we asked Mr. Gao for the code, I asked him for -- we specifically asked him for code that did not include Mark Zuckerberg's code when filing with the copyright office, okay?<br>Q. Why did you do that?<br>A. Because we wouldn't file Mark Zuckerberg's code with the copyright office. We filed the code that we wrote.<br>Q. I thought you said there was only one version of the code. So there are two versions of the code, right?<br>A. No, no, no. There's one version of the code. Mark -- as I said, Mark didn't upload any of this stuff into the server.<br>Q. Well, let me ask you this: You said you instructed Mr. Gao to give you | | |

| | | |
|---|---|---|
| code that did not contain any contributions by Mark Zuckerberg. Is that what you told Mr. Gao? | | |
| A. Yes, but there were no contributions from Mr. Zuckerberg in the code, is what I'm getting at. | | |
| Q. Well, did Mr. Gao confirm to you that he did not strip out anything from the code that -- before he gave it to you? | | |
| A. I believe that Mr. Gao told me that there was no code in there, that Mark Zuckerberg wrote when he file -- when he gave us the code to file with the copyright office. | Evasive ("I believe") and reflects lack of preparation as 30(b)(6) designee on topics 3 and 10, inasmuch as witness could have prepared by talking to Mr. Gao. | The witness specifically answered this question. |
| Q. Okay. So that's your testimony; Mr. Gao told you that there was no code written by Mr. Zuckerberg, no code whatsoever in the HarvardConnection code that he found and that he gave to you? | | |
| A. My testimony is that the code that was filed with the copyright office did not contain Mark Zuckerberg's code. Now, in addition to that, I am under the impression that Mr. Gao said that there was no contribution from Mark on the server, aside from him poking around in files and duplicating code that Mr. Gao had already written. | Evasive and non-responsive answer. Vague ("I am under the impression"). | The witness specifically answered the question again. The witness was answering for ConnectU; to the extent that his testimony for the company did not come from personal knowledge, he testified regarding impressions he formed indirectly. |
| Now, if you want to call that a version, I'm not sure what you mean by a version. You're talking about multiple versions of the code. | | |
| Q. Well, you're not answering my question. | | |
| MR. HORNICK: Yes, he has answered your question. | | |
| Q. Let me ask you this. Let me ask you this. | | |
| MR. HORNICK: You showed him the code -- | | Mr. Hornick actually said "If you show him the code it might help" meaning "show him the code about which you are asking questions (see |
| MR. CHATERJEE: Counsel, lodge an objection. You don't need to instruct the witness, and you don't need to argue. | | |

31

| | | |
|---|---|---|
| | | CD-ROM Ex. 8). |
| MR. HORNICK:  I'm not instructing the witness.<br>    MR. HAWK:  Yeah, you're --<br>    MR. HORNICK:  You're asking unfair questions.<br>    MR. CHATTERJEE:  I'm looking forward to bringing this in front of the Court.<br>    BY MR. HAWK:<br>Q. Did Mr. Gao strip out any code from the version that he gave you which you gave to your lawyers to deposit with the copyright office?<br>A. I am -- I can't answer that.  I don't know the answer to that.  I know that the code given to the copyright office has none of Mark Zuckerberg's code.<br>Q. And how do you know that?  Is that because Mr. Gao told you that?<br>A. Because we wouldn't have filed code that he written -- wrote for copyright because it's not our code.<br>Q. Right.  And I know you didn't intend to do that, but you've made an unequivocal statement that you did not file code with the copyright office that contained contributions by Mr. Zuckerberg.  Now, hold on, let me finish the question.  And so I want to know what is your factual basis for that statement, not what you intended to do, but what your factual basis for that statement is?<br>A. Simply based on the fact that it was not -- you know, it would not be our intent to file such code.<br>Q. Okay.  Did you ever have any discussion with Mr. Gao about whether or not he stripped out any code that was done by Mr. Zuckerberg?<br>A. To be quite honest, I don't remember if -- I remember that the contribution -- Mark's contribution was nil, okay?  He went onto the server, and there was no contribution.<br>Q. That wasn't my question.  My | ConnectU's counsel, without making a proper objection, accuses Defendants' counsel of "asking unfair questions."<br><br><br><br><br>The witness answers that he doesn't know what Mr. Gao did, but adds an non-responsive conclusory qualifier.<br><br>Witness repeats his assertion based not on his knowledge.<br><br><br><br><br><br><br><br><br><br><br>Witness repeats the same assertion again, with the same lack of a factual basis.<br><br><br><br><br>Witness does not answer the question posed. | Counsel was asking questions about the contents of the Harvard Connection code without showing the witness the code, which was unfair and designed to trap the witness or to get him to make incorrect statements.<br>The witness was trying to say that he did not know whether the Harvard Connection code submitted to the Copyright Office had to be stripped, but stated several times that it contained no Zuckerberg code.  Defendants complain that the witnesses testified "not on his knowledge," but he was a 30(b)(6) witness and therefore testified about corporate knowledge.<br><br>The witness already testified that it was ConnectU's knowledge that the code submitted to the Copyright Office contained no Zuckerberg code.  Whether or not such corporate knowledge was correct is irrelevant to this motion.<br>The witness answers that "there was no contribution" thereby answering the question about stripping; there |

32

| | | |
|---|---|---|
| question was, did you ever have any conversation with Mr. Gao about whether he stripped out any code? | | was no Zuckerberg code to strip out. |
| A. I believe that I asked Mr. Gao at the time, is there any code -- is any of Mr. Zuckerberg's code in this? And his response was that -- I believe that there was no code from Mr. Zuckerberg in that piece of code. | Witness does not answer the question posed, which was about stripping out code, not about whether there was code. | The witness answered that he confirmed with Mr. Gao that the code did not contain any Zuckerberg contribution, so the question about stripping out makes no sense. |
| Q. And that there never had been? | | |
| A. Well, see, the thing is, like, you know, if you want to contin -- if you want to -- I'm not a programmer, I'm not an expert, but are you -- would you consider -- you know, are you considering code that Mark Zuckerberg copied and renamed from -- that Victor Gao wrote? Because that code is Victor Gao's code. Do you see what I'm getting at? And that's what Mark Zuckerberg did. | Witness avoids answering the question and again reflects his lack of preparation as 30(b)(6) designee on topics 3 and 10. | Witness answered the question by explaining that any code Mr. Zuckerberg may have added was simply copied from another part of the code that he did not write. Thus, the witness would not consider such code to be Zuckerberg's work product. |
| Q. But you know what? My question -- the problem that I'm having is that you're not answering my question. My question went simply to your conversations with Mr. Gao, and you're like two or three steps ahead of me -- | | |
| A. Okay. | | |
| Q. -- about, you know, whether code if it's copied over. I'm asking you about a specific question about your conversation with Mr. Gao, and that's what I'd like you to answer. Did you ever discuss with Mr. Gao No. 1, whether he stripped out any code that was written by Mark Zuckerberg? | | |
| A. Okay. I -- to the best of my recollection, I asked Mr. Gao "Is any of Mark Zuckerberg's code -- like, we need code -- we need the HarvardConnection with Mark Zuckerberg's code," okay? And I don't remember if Mr. Gao had to take something out. It's my assumption that -- | The witness again reveals his lack of preparation for 30(b)(6) topics 3 and 10, inasmuch as he does not know what Mr. Gao said regarding the stripping out of Mr. Zuckerberg's code. | The witness has already testified that stripping was not an issue that would have been discussed because Mr. Gao confirmed that the code submitted to the Copyright Office contained no Zuckerberg |

| | | | |
|---|---|---|---|
| | Q. I don't want your assumption.<br>A. Okay. I believe that Mr. Gao -- well, assumption, belief, same thing.<br>Q. I know, that's what I'm saying. I don't want that. I want your recollections of conversations --<br>A. Okay.<br>Q. -- with Mr. Gao.<br>A. Okay. I asked -- okay. If we're talking about recollections, my recollection was "Give me the HarvardConnection code that everybody contributed to without Mark Zuckerberg," okay? He gave that to me.<br>Q. Okay. And you know he gave that to you because he said, "here's the code you asked for" --<br>A. Yes.<br>Q. -- correct? All right. Did you ever discuss with Mr. Gao whether or not he had stripped out any code that was attributable to Mr. Zuckerberg?<br>A. I don't believe we had that discussion. | | contributions. The witness clearly answered this question below. (287:21) |
| 322:12-324:18 | Q. Meaning that he knew that some information that he had relating to TheFacebook came from HarvardConnection?<br>A. I said that I was not -- okay. I said I was not sure. I did not say at that time that he knowingly used it. However, based upon the outcome of Thefacebook, which he was a co-creator at that time, it is my belief that he used it.<br>Q. Okay. I want to ask you now, not about your belief, but your knowledge of facts. In the period from November 2003 to February 4, 2004, you're not aware of any evidence that Mr. Saverin knowingly used confidential -- confidential business information of HarvardConnection, correct?<br>    MR. HORNICK: Objection, mischaracterizes. | Witness testifies that he is not sure but insists on offering his "belief" admittedly not based on personal knowledge. | This is a frivolous example. This is not a proper Rule 30(b)(6) question. The question related to whether co-Defendant Saverin knew that some information he had relating to thefacebook.com came from Harvard Connection. ConnectU can have corporate knowledge of Mr. Saverin's personal knowledge only through this lawsuit. To date, Saverin has refused to appear for deposition. The information needed to answer this question was not known by or reasonably available to |

| | | |
|---|---|---|
| | Q. Correct?<br>A. I think you're conflating the issue. Knowing something and believing something are two different things. I can't knowingly say he used it. I believe he used it.<br>Q. Okay.<br>A. And I think we went over why I believe he used it. So --<br>Q. Right. But let me try this again.<br>A. All right.<br>Q. I don't think we're quite communicating. I don't want to know what evidence you have, if any. I don't want to -- this is another one of those questions I don't want to know about your belief --<br>A. Okay.<br>Q. -- right now. I want to know if you have any evidence that my client, Mr. Saverin, knowingly used confidential information of HarvardConnection during the period November 2003 and up until February 4, 2004 when Facebook was launched?<br>A. My evidence, which I've stated and on which I've formed my belief, however, the evidence is that Thefacebook.com website of which he was a co-creator during that time period utilized traits and misappropriated trade secrets and business information from HarvardConnection.<br>Q. Okay.<br>A. That's my evidence.<br>Q. Is there any other evidence?<br>A. No. That would be -- that would -- I would say that that, to the best of my knowledge, would be the main evidence.<br>Q. It's the main evidence. Is there any other evidence, sir?<br>A. The evidence my weak, untrained legal mind can think of that's -- yeah. Yeah. | Testimony not based on knowledge.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Testimony not based on knowledge. | ConnectU.<br>Same; the witness testified as to what ConnectU believes, which forms the basis of this lawsuit, and the fact that thefacebook.com was operated by the individual co-Defendants for the first six months of its operation.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Same. |
| 342:18- | Q. Well, let's talk about the word | | |

| 357:1 | "partner." | | |
|---|---|---|---|

357:1

"partner."

A. Okay.

Q. Did Mr. Zuckerberg ever say to you, "I understand I'm a partner in this HarvardConnection venture"? Did he ever say the word "partner"?

A. No, he did not use the word "partner." No.

Q. And did you, you personally, ever use the word "partner" to Mr. Zuckerberg?

A. No, and I don't believe I had to. I --

Q. But I didn't ask you about what you had to do.

MR. HORNICK: He can give a complete answer.

A. I used the word "part," which is part -- which assumes a partner is a part of a slice of the pie, you know, if you want to go down to the semantics level. But, no, we did not use the word "partner." We're college students. You know, we are on a project, and it's a team. That's what we called it.

Q. Okay. So just to be clear, you never told Mr. Zuckerberg that he was going to be a partner --

A. I never --

Q. -- quote, "partner" in the venture, correct?

A. Quote, "partner" -- quote, "partner," no, I did not use the word, quote, "partner."

Q. Okay. Fine. And just to be clear again, there was never any written -- oral or written agreement with Mr. Zuckerberg that he would have some specific percentage ownership in HarvardConnection, correct?

A. Specific ownership, yes. Specific as in specific equity stakes, yes, there was -- that conversation never happened.

Q. Listen to my question again.

MR. HORNICK: Listen to his answer. Did you hear it?

| | | | |
|---|---|---|---|
| | MR. CHATERJEE:  Robert, let's have the court reporter read that answer back.<br>　　　MR. HAWK:  Okay. Let's have the answer back, question and answer, if you wouldn't mind.<br>　　　(Record read.)<br>A. So, well, I was --<br>　　　MR. HORNICK:  Wait, wait. There's no question pending.<br>Q. Right.  So let me -- I'm a little unclear, I will say, after the last question and answer, so let me try if I can re ask it --<br>A. It was supposed to be --<br>Q. -- and clear it up.<br>A. Yeah, I mean, if you want to re ask that same question --<br>Q. Yeah --<br>A. -- sure.<br>Q. -- let me re ask the question, okay? Isn't it correct that there was never any written or oral agreement with Mr. Zuckerberg that he would have a specific percentage ownership in HarvardConnection?<br>A. Specific percentage ownership, as I said before, we did not talk about because it was premature --<br>Q. Okay.  Fine.<br>A. -- okay?<br>Q. All right.  All right.  You never talked about it with Mr. Zuckerberg, correct?<br>A. Specific percentage ownership. Outside of what I said earlier, which was that it was an equal -- an equal partnership based on contribution, no.<br>Q. See, that's the problem I'm having here.<br>A. Why is that so hard?<br>　　　MR. HORNICK:  Robert, listen. You don't like his answers, and you keep getting him to try to change them.  He has given you his answer.  He gave it this morning.  He's been | Rather than answer regarding whether there was an agreement, he answers regarding what was "talked about." This prompts counsel to ask whether it was "talked about"  Witness then obfuscates further by stating a non-responsive legal conclusion that contradicts his prior testimony. | This is a frivolous example.  The witness specifically answered the question, as he did several times previously during the deposition (see 63-68,135-143). Counsel said, "Okay. Fine."<br>The witness consistently repeated his prior testimony (see 63-68, 135-143, and above). |

| | | |
|---|---|---|
| consistent all day. I think you should stop badgering the witness.<br><br>MR. CHATERJEE: Mr. Hornick, what federal rule of evidence are you citing to at this point? Because badgering with counsel has nothing to do with the deposition.<br><br>MR. HORNICK: He is badgering the witness. He keeps asking the same question that's been asked all day. He keeps answering it.<br><br>MR. HAWK: We'll put this record before the Judge, okay?<br><br>MR. HORNICK: You're getting your answers.<br><br>MR. HAWK: We'll put the record -- we'll put the record before the Judge, and we'll --<br><br>MR. HORNICK: Go ahead. You're getting your answers.<br><br>MR. HAWK: All right. Let's turn it down a notch. We're almost done today. Let me try and put another question. I was just trying to explain to the witness why I keep going back to the same thing.<br><br>BY MR. HAWK:<br><br>Q. And the reason that I keep going back is because you're giving an argumentative answer.<br><br>MR. HORNICK: No, I disagree.<br><br>MR. HAWK: Hold it. Hold it. Don't interrupt me, okay?<br><br>MR. HORNICK: No, I will interrupt you if you misstate to the witness. You don't have the right to advise him of how he has to answer a question.<br><br>MR. HAWK: I have a right to conduct a deposition. I will try and do it.<br><br>MR. HORNICK: Go ahead. Do it properly.<br><br>BY MR. HAWK:<br><br>Q. Here's my -- here's my question: There was never any written or oral | ConnectU's counsel objects to Defendants' counsel's admonition not to give argumentative answers. | Plaintiff's counsel simply disagreed that the witness's answers were argumentative, and only a few minutes earlier had warned counsel that his questioning was reaching the oppressive level (for the second of three times, which was the first time for Mr. Saverin's counsel; 331:24), warned him to stop badgering the |

agreement with Mr. Zuckerberg that he would have a specific percentage ownership in HarvardConnection; isn't that correct?

A. Can you define "specific percentage ownership"?

Q. Is there something that's unclear --

A. Yeah, there is.

Q. -- about specific percentage ownership? All right? I'll give you an example. You could have said, "Mark, you're going to have a 25 percent ownership in this venture," or you could have said, "Mark, you're going to have a 10 percent ownership," okay? That's what I have in mind when I say the words "specific percentage ownership." Now that I've given you that example, do you understand what I --

A. Right.

Q. Okay. All right. Now let me ask the question. Isn't it correct, sir, that there was never any written or oral agreement with Mr. Zuckerberg that he would have a specific percentage ownership in HarvardConnection?

A. Specific percentage ownership, well, you know, with respect to an equal ownership, yes, there was that oral agreement. There was that oral discussion. There was no written; however, there was an oral.

    If you want to go by a specific percentage and we use my barometer, which I've said multiple times is that it was an equal team, an equal partnership based on the contributions at that time and that it was premature to go any further than that, there was an oral agreement to that extent, yes.

Q. There was an oral agreement that there would be equal or, in other words, 25 percent ownership by each of the partners; is that your testimony, sir?

---

The witness contradicts what he said just above (that they did not talk about "specific percentage ownership," now alleging that there was an "oral agreement" to "equal partnership," not based on knowledge or facts.

---

witness (334:6-9), to allow the witness to finish his answers (343:5-6; 371:7-8, 14-15), to stop trying to get the witness to change the answers he gave repeatedly and to stop badgering (345:18-23, 346:3-7, 370:12-14), and three minutes later had to tell him to stop cutting off answers, shaking his head, laughing, and smiling while witness testifies (350:17-25), and again at 372:12-16, and that the questioning was reaching the oppressive level at 372:12-16. By comparison, the Facebook Defendants' counsel was not so impolite and unprofessional.

The witness answered this question yet again, consistently. Such alleged inconsistency is irrelevant to this motion.

| | | | |
|---|---|---|---|
| | A. My answer is that it was -- I mean, as I said before, equal, equal to the contribution that each person brought to the table.<br>Q. Oh, okay. Well, I thought you meant equal that everybody would have an equal share, but let's --<br>A. Well, no.<br>Q. -- explore that.<br>So you had a conversation with Mr. Zuckerberg in which you told him that you wanted him to be a partner and that his partnership interest in this HarvardConnection partnership would be equal to his contribution; is that correct?<br>A. Sure. He had -- I mean, you are -- Mr. Zuckerberg in his e-mail discourse has indicated that he expected to be part of the development of the project and control. Now, we all brought different contributions to the table. They were all relatively critical in terms of the development of the site. And we all treated each other as equals, acted as equals.<br>    Again, we're college students, and this is a project that's going to launch. It was premature to talk about specific equity stake at that point with respect to percentages.<br>Q. Sir, my question was about a conversation that you had or didn't have with Mr. Zuckerberg. The answer you just gave had nothing to do with any conversation that you had--<br>    MR. HORNICK: Robert, you cut off his answer.<br>Q. -- or didn't have with Mr. Zuckerberg.<br>    MR. HORNICK: You cut off his answer, and you sit there and you shake his head -- you shake your head while he's talking, and you laugh and you smile while he's | Non-responsive.<br><br><br><br><br><br><br><br><br><br><br><br><br>The witness again changes his testimony from above on whether a "specific equity stake" was discussed. | This is a frivolous example. The witness answered unequivocally ("Sure").<br><br><br><br><br><br><br><br><br><br>The testimony is not inconsistent; Defendants simply don't understand it. Any alleged inconsistency is also irrelevant to this motion. |

| | | |
|---|---|---|
| talking, and that is improper. You should sit there quietly, without shaking your head, without smiling and without laughing while the witness finishes his answer, and then you can ask another question.<br><br>MR. HAWK: Well, thank you for your advice. Let me ask the question again because I don't think I got an answer to it, in all fairness.<br>BY MR. HAWK:<br>Q. Did you ever have a conversation with Mr. Zuckerberg in which you communicated to him that he would receive an equal partnership share in HarvardConnection and that his share would be equal to his contribution? | | |
| A. I think it was clear in our second meeting that he would -- as I mentioned before earlier, I mean, we've gone over this question multiple times, and I'm starting to believe that it's not because my answer is not correct, but that the answer is -- you guys don't want to seem to take my answer. And the answer is simple. Mr. Zuckerberg was invited to become part of a team. He became -- he agreed to become part of that team. | Non-responsive to what was asked (what he communicated to Mr. Zuckerberg). | The witness specifically answered the badgering question, as he had multiple times, then observes that counsel asks the same question over and over again, then responds regarding the part of the question relating to "his share would be equal to his contribution". |
| It was an equal opportunity partnership. Each person had respective contributions, and down the road as those contributions increased or decreased we would certainly have attached what you call, you know, more of a specific allocation, okay? At that time it was an equal allocation, okay? You're at the starting gate of a race. You can't predict who's going to be the winner, who's going to pull the most.<br><br>So -- and I would go so far as to say that actually his compensation was initially perhaps larger than ours because we made it very clear to him | The witness offers legal conclusion regarding the nature of his relationship with Mr. Zuckerberg but persists in saying nothing about what was communicated, as the pending question asked. | The witness was repeating his previous testimony (63-69), in response to the same question. |

41

| | | | |
|---|---|---|---|
| | that we wanted him to be the center point in the Crimson article at the launch of the site and that he would be sort of reinventing his character, which we would not be a part of. So from some accounts you could say that it was skewed in his favor.<br>Q. Okay.<br>A. But--<br>Q. Are you finished?<br>A. -- to the extent, that, again, we're college students and this is a team, a project, Mr. Zuckerberg has reapportioned shares and aspects of this company multiple times.<br>Q. All right. I -- you know, I've reached the point where I'm not going to, at your counsel's suggestion, ask you the question again unless -- unless you tell me that you actually intend to answer it the next time.<br>    MR. HORNICK: Objection.<br>Q. The question --<br>    MR. HAWK: Just let me finish this.<br>Q. The question that I ask had to do with conversations that you either had or didn't have with Mr. Zuckerberg. I think I've asked that question at least three times now, and I don't -- I don't believe, in all fairness, that I've gotten an answer to the question. If you want to take another shot at answering the question, then I'll re ask it. If you believe or you're not going to give me anything other than another answer like the one that you just gave me, I'll move on, and then I'll go to the Court and I'll try and seek an order that you be ordered to answer the questions that are asked in the deposition.<br>    So I'm going to put it out there one more time.<br>    MR. HORNICK: And I'll say | Non-responsive. | This is a frivolous example. The question was "are you finished?", in response to which the witness completed his previous answer. |

| | | | |
|---|---|---|---|
| | that I believe the witness has answered the questions to the best of his ability. You just don't like his answers.<br><br>    MR. HAWK: Okay. All right. I understand your position. You can argue that to the Court based on this record, all right?<br>BY MR. HAWK:<br>Q. My question to you, sir, is did you ever have any conversation with Mr. Zuckerberg in which you said to him that he would be getting an equal partnership share in the -- in the HarvardConnection team?<br>    MR. HORNICK: Objection. You've asked a question that he can answer because he's already said that he didn't use the word "partner." So your question's unfair.<br>Q. All right. Let me rephrase. Let me rephrase. Let me don't use -- because in all fairness, you have said that you didn't say "partner." You didn't say "partner."<br>    Did you ever tell or discuss with Mr. Zuckerberg that he would be getting an equal share of HarvardConnection?<br>A. Well, I think your question should be did he -- did we have a discussion for Mr. Zuckerberg to get a share of the partnership, okay?<br>Q. Well, I wanted to ask my question, Mr. Winklevoss. I ask you the question.<br>A. No, you asked me --<br>Q. I don't want you --<br>A. -- did he say --<br>Q. -- to reformulate my question.<br>A. You know, equal partnership with respect to a partnership based on equality, meaning people's contributions would be weighed accurately and you would divvy out equity based on contribution in an equal manner, yes, we had an equal | Coaching.<br><br><br><br><br><br><br><br>Non-responsive. Instead witness tells counsel he should have asked a different question.<br><br><br><br><br><br><br><br>Non-responsive (about whether he had discussions of a certain nature with Mr. Zuckerberg), but instead offers a non-responsive legal conclusion about | The witness had testified that the Founders referred to a team (343:11-13), not to a partnership (342:25-343:20). The witness also testified repeatedly about shares (63-65). Thus, the question was unfair and a trick. The only way to prevent counsel from trying to trick the witness was to point out the unfairness and the witness's prior testimony. Counsel then agrees ("in all fairness, you have said that you didn't say "partner.") The next question made no sense to the witness, so he suggested a question he could answer.<br><br>The witness specifically described the discussions, continuing his previous answer. |

| | | an alleged partnership. | |
|---|---|---|---|
| | partnership by that definition, to answer your question. | | |
| | Q. Okay. Now, my question was not about the kind of partnership you had. My question was about whether you ever had any discussion along the lines of -- | | |
| | A. Yeah. | | |
| | Q. -- you just testified -- let me finish. Did you ever have that discussion with Mr. Zuckerberg? | | |
| | A. Yes, as I said before, we -- in the second meeting we discussed people's respective roles. Everybody was on an equal playing field. That's why I'm referring to it's an equal partnership, if you will, okay, or equal team, based on contributions. If contributions six months down the road were unequal, then the partnership, you know, would certainly change in scope. But everybody was equal in terms of what they brought to the table, what they can contribute. So to answer your question, yes, we did have a discussion about equal partnership. | Evasive. Witness never directly answers the question, which was whether the witness ever told or discussed with Mr. Zuckerberg "that he would be getting an equal share". Various vague terms ("equal playing field," "equal team," "equal in terms of what they brought to the table"). | This is a frivolous example. The witness answered unequivocally, and provided details of the discussion with Mr. Zuckerberg during the second meeting. |
| | Q. Okay. And you had that discussion with -- | | |
| | A. Not using the word "partner." | | |
| | Q. Okay. But you had the discussion about equal shares of HarvardConnection based on contribution, you had that discussion with Mr. Zuckerberg in your second meeting with him, correct? | | |
| | A. Yes. We -- | | |
| | Q. Okay. | | |
| | A. -- went through the fact that he would reap in an equal manner any and all benefits that came along with the site, okay? | | |
| 369:9-373:7 | Q. Okay. All right. Fine. And did anyone -- did Mr. Narendra ever tell you at any time that he had obtained assurances from Mr. Zuckerberg that Mr. Zuckerberg would respect | | |

| | | |
|---|---|---|
| confidentiality of HarvardConnection information? | | |
| A. You know, as I said earlier, both Mr. Narendra and Mr. Gao, specifically Mr. Gao, explained to Mr. Zuckerberg the proprietary and confidential nature of the -- | Non-responsive. | The witness specifically answered the question. |
| Q. That wasn't my question, sir.  My question was, did Mr. Narendra ever tell you that Mr. Zuckerberg had committed to him to respect the confidentiality of HarvardConnection information? | | |
| A. I'm not sure.  I don't -- I believe that in the second meeting when we were all present we made it very clear the proprietary nature of the site.  Making something clear that it's proprietary is not -- is the same effect of telling someone "Don't tell them," you know? | Non-responsive. | This is a frivolous example.  The witness specifically answered "I'm not sure." |
| Q. Not my question. | | |
| A. Because Mr. Zuckerberg understands what proprietary information is. | Non-responsive. | The witness was completing his answer, which counsel interrupted. |
| Q. I'm not asking about what Mr. Zuckerberg understood.  My question was very specific, and I'll ask it for the third time -- | The witness clearly has not answered the question. | Plaintiff's counsel objected that the question has been asked and answered many times and that Saverin's counsel is badgering the witness. |
| MR. HORNICK:  And I'll object that he's answered it many times today and that you're now badgering the witness again. | | |
| MR. HAWK:  Okay.  All right.  Let's just have it again.  If he doesn't want to answer the question again, he doesn't -- you know, I can't make him. | | |
| MR. HORNICK:  And otherwise, it's asking him personally.  You're asking a personal question here, not a 30(b)(6) question. | | |
| MR. HAWK:  Yeah, okay.  Whatever. | | |
| BY MR. HAWK: | | |
| Q. Did Mr. Narendra ever tell you that Mr. Zuckerberg had committed in his presence to respect the | The witness again does | This is a frivolous |

| | | |
|---|---|---|
| confidentiality of HarvardConnection information?<br>A. Let's just say -- I would say that --<br>Q. Did he ever -- yes or no, did he ever tell you that?<br>MR. HORNICK: Let him finish his answer, Robert.<br>A. Mr. Zuckerberg agreeing to become part of the team, and to answer any questions that you might have like -- let's not talk about micro this, that, words, phrases, okay?<br>Q. No, that's not what my question was.<br>    MR. HORNICK: Robert, let him finish his answer.<br>    MR. HAWK: I want him to answer my question. | not answer the question, which is about what Mr. Narendra told him. | example. Counsel cuts off the witness before he can answer the question. Defendants' comment here concedes that the question was "about", and therefore was not necessarily a yes/no question. |
| A. His agreement to complete that side of the code and become part of the team was understanding and accepting of the fact that it's proprietary information, and as I pointed out on C4 -- 46 -- whatever that document was, the fact that Mr. Zuckerberg didn't use our code proves that he was fully aware of it. So, you know, you're asking -- I can't recall every instance and every personal sentence that was said to Mr. Zuckerberg and if he said yes, like, you know, specifically in the way that you're describing to this person that he understood. What I'm saying is that by becoming part of the team he effectively and directly knew that it was proprietary and confidential information.<br>Q. Right. But do you understand, sir, that you haven't answered my question? | Non-responsive. The witness instead opines conclusorily about Mr. Zuckerberg's "understanding."<br><br><br><br>The witness's comments reveals a failure to prepare for topics 1, 2 and 10, in this case by asking Mr. Narendra for his recollections. | The witness said earlier (369:24) that he was not sure, so he was completing his immediately previous answer, explaining how he knew, as a 30(b)(6) witness, that Mr. Zuckerberg agreed to "respect the confidentiality of Harvard Connection information." No witness has a perfect memory, but the witness testified that he fully prepared for the deposition. |
| MR. HORNICK: Object. He has answered your question, and again you sit there and you shake your head while he's talking and you keep cutting him off. It's oppressive.<br>    MR. HAWK: Well, I think the Judge is going to shake his head, and | The witness clearly has not answered the question. | Plaintiff's counsel reminds Saverin's counsel that he is behaving improperly, and that the questioning is oppressive. The witness answered the |

| | | | |
|---|---|---|---|
| | I -- <br>     MR. HORNICK:  The Judge can't see your behavior. <br>     MR. HAWK:  Well, we'll put it before the Judge because this witness is not answering my question. <br>     MR. HORNICK:  I think if you go back and read the transcript calmly, you'll realize that he has answered all your questions today, you just don't like the answers. <br>     MR. HAWK: Okay.  All right. <br>     MR. CHATTERJEE:  I think he doesn't like the questions, but... <br>     MR. HAWK: Yeah.  Yeah. | | question, as discussed above. |
| 376:8-20 | Q.  Did you do any specific research, let's say, prior to February 4, 2004 to determine if anyone out there was working on or doing what you were proposing to do with HarvardConnection? <br> A.  We did look -- I mean, as I said, we looked at those various sites.  We did not come across the sites that I said we didn't come across in the previous set of questioning.  And as I've also said in this set of questioning that it's to my knowledge that today at that -- prior to February 4th there was nothing like HarvardConnection. | Vague and non-responsive, conclusory assertion. | This is a frivolous example.  The witness specifically answered the question. |
| 378:14-381:7 | Q.  Okay.  When did Mr. Moskovitz first become aware of HarvardConnection? <br> A.  As I said, I can't specifically say when he became aware of HarvardConnection. <br> Q.  Did Mr. Moskovitz ever see any Web page for any version of the HarvardConnection website? <br> A.  I cannot say that specifically. <br> Q.  You don't know? <br>     MR. HORNICK:  The witness can't answer this question without seeing confidential information. <br> A.  Yeah, I can't say that. <br>     MR. HAWK:  No, I want to | Coaching the witness to say that he can't answer the question. | This is a proper objection.  Acts of co-Defendant Moskovitz are not known or reasonably available to |

| | | |
|---|---|---|
| know if he knows or not. | | ConnectU. |
| MR. HORNICK:  I told you he can't answer this question without seeing confidential information. | Coaching. | Same. |
| MR. HAWK:  I appreciate your testimony, but I'm asking for his, and I just want to know if he knows the answer to the question. | | |
| BY MR. HAWK: | | |
| Q. Sir, do you know, did Mr. Moskovitz ever see any Web page or any version of the HarvardConnection website? | | |
| A. I cannot say other than what I've stated before, which is that I believe, based on evidence, that he was involved in the creation of Thefacebook, which I believe was a derivative work of HarvardConnection. | Non-responsive. Expresses his conclusory "belief" as to different question that was not posed. | This is a frivolous example.  This is not a proper 30(b)(6) question. Acts of co-Defendant Moskovitz are not known or reasonably available to ConnectU. Defendants are refusing discovery on this and other issues.  But the witness specifically answered the question, which was "do you know?" |
| Q. Yeah, but that's not my question. My question is, did Mr. Moskovitz ever see any Web page -- | | |
| A. I don't -- | | |
| Q. -- for any version of the HarvardConnection website? | | |
| A. I don't know. | | |
| Q. Okay. | | |
| A. I don't know. | | |
| Q. That was easy, wasn't it? Did Mr. Moskovitz ever see any line of source code for HarvardConnection? | The witness qualifies his answer with a statement of his admittedly unfounded "belief." | The witness never admitted that his belief was unfounded, and he did his best to answer unanswerable questions, outside the scope of the 30(b)(6), and to avoid being trapped and having his statements quoted out of context. |
| A. Again, it's my belief however, I don't know. | | |
| Q. You don't know? | | |
| A. But my belief, based on evidence -- | | |
| Q. I didn't ask for your belief. Remember the little lecture that I gave at the beginning? | | |
| MR. HORNICK:  He's entitled to give his answer, Robert. | | |
| MR. HAWK:  Okay.  And I'm entitled to cross-examine the witness. | | |
| MR. HORNICK:  And you're -- | | |
| Q. Did Mr.-- | | |
| MR. HORNICK:  I'm not going to let you trap him in a corner. | | |

| | | | |
|---|---|---|---|
| | Q. Did Mr. Moskovitz ever see any line of source code for HarvardConnection?<br>A. It's my belief that he did.<br>Q. Okay. Do you know if Mr. Moskovitz ever saw any line of source code for HarvardConnection? I'm not asking for your belief. Do you know whether he ever saw any line of source code?<br>A. If by that have I seen him, I would say no, I do not know --<br>Q. Fine.<br>A. -- I believe. | Witness repeats his "belief" a third time.<br><br><br><br><br><br>Witness repeats his "belief" a fourth time. | Same.<br><br><br><br><br><br>This is a frivolous example. The witness specifically answered the question "do you know?" |
| 384:9-15 | Q. Did Mr. Hughes ever see any Web page for any version of the HarvardConnection website?<br>A. It's my belief that he did -<br>Q. No, I'm not asking about your belief, sir. Did Mr. Hughes ever see any Web page for any version of the HarvardConnection website?<br>A. I do not know. | Witness testifies to his "belief" rather than knowledge. | This is a frivolous example. This is not a proper 30(b)(6) question. Acts of co-Defendant Hughes are not known or reasonably available to ConnectU. Defendants are refusing discovery on this and other issues. This is an unanswerable question. |

| A (3) | | | |
|---|---|---|---|
| Citation | Text of deposition | Comments | Rebuttal to Comments |
| 313:20-25 | Q. -- in front of you, please. Exhibit 15 is an e-mail that you wrote to Victor Gao on January 25, 2004, correct? <br> A. Uh-huh. <br> Q. Yes? <br> A. (No verbal response.) | The witness refuses to give a affirmative answer, despite having been instructed at the beginning of the deposition, and agreeing, that he would answer questions "yes" or "no." | This is a frivolous and petty example. The witness was simply being asked if he had an email in front of him and forgot to answer verbally, which is a common problem with all witnesses. It was also 7 hours into the deposition; the witness was tired. Plaintiff can't believe Defendants are bothering the Court with such an example. |
| 382:14-383:6 | Q. Do you know or -- let me just ask you this: <br> Did Mr. McCollum ever see any Web page for any version of the HarvardConnection website? <br> A. It is my belief that he did. I do not know if he did. <br> Q. Okay. And did Mr. McCollum ever see any line of source code for HarvardConnection? <br> A. Again, it's my belief, based on evidence, that he did. I do not know if he did. <br> Q. All right. You know what? I'm just going to make it easy for you. I'm not asking about your belief, I'm asking about your knowledge, and I have been for the last 20 questions, all right? <br> MR. HORNICK: Objection, argumentative. And there's no question pending so just ask another question. | The witness tacks on his "belief" not based on the facts. <br><br> The witness does this again. | This is a frivolous example. This is not a proper 30(b)(6) question. Acts of co-Defendant Hughes are not known or reasonably available to ConnectU. Defendants are refusing discovery on this and other issues. This is an unanswerable question, and the witness answered that he did not know. <br> Same. |