**EXHIBIT 7**

**(PART 3 of 3)**

**B (1)**

| Citation | Text of testimony | Comments | |
|---|---|---|---|
| 22:10-23:22 | Q. Didn't Victor Gao tell you at some point that he had written some code?<br>A. Victor Gao said that what he -- to his -- the best of his knowledge, his extent, that Mark Zuckerberg had gone into the code, looked at it on the server and duplicated files from the, I believe, the date side and effectively renamed them. But in terms of Mark indicated that most -- a lot of the work that he had done on his local system, so it was never on the server.<br>Q. Okay. So it's your position that --<br>    MR. HORNICK: You know, I'd like to prevent you from saying "it's your position," because the witness isn't here to give contention testimony. You can ask for facts, you can say the facts that, that kind of thing, but in terms of saying "it's your position," I don't think that's proper.<br>    MR. CHATTERJEE: Well, you can object. I can ask the questions however I want, and you can say "Object to the form."<br>    MR. HORNICK: Well, I can actually prevent you from taking contention testimony. There's cases that support that, so let's not make an issue of it. Why don't you just ask your questions in an unobjectionable way.<br>    MR. CHATTERJEE: Counsel, you can make your objections, and the opposing -- or the witness can answer them, and should you want to seek a protective order, you can contact the Court. | Counsel's objection to "is it your position that" on the ground that it is "contention testimony" is improper. The corporation is "bound" by the 30(b)(6) testimony of the designee. | Plaintiff's counsel's objection is supported by the case law. *See, e.g., McCormick-Morgan, Inc. v. Teledyne Indus.*, 134 F.R.D. 275, 285, 288 (N.D. Cal. 1991), *rev'd in part on other grounds*, 765 F. Supp. 611; *Smithkline Beecham Corp. v. Apotex Corp.*, 2000 U.S. Dist. LEXIS 667, *27 (N.D. Ill. 2000). The witness, who is a nonlawyer, is not qualified to testify as to the corporation's legal contentions. This objection was made before any question was posed, so it could not possibly have coached the witness. Plaintiff's counsel suggested that Defendants could obtain factual testimony by asking questions in an unobjectionable way. Defendants' counsel then agreed to do so. |

| | | | |
|---|---|---|---|
| | MR. HORNICK: I'm just asking you to conduct your deposition properly.<br>　MR. CHATTERJEE: And, counsel, I will do so.<br>　MR. HORNICK: Okay. Thank you. | | |
| 231:19-232:1 | Q. And is there a separate signature line for HarvardConnection or for ConnectU, the unincorporated proprietorship?<br>A. Well, I mean, as I said before --<br>　MR. HORNICK: Objection, this question calls for legal expertise, which the witness doesn't have. You can try to answer it. | The question did not call for legal expertise, but a factual answer, which the witness could provide by looking at the document. | This question was part of a line of questions regarding who did and did not sign the ConnectU LLC operating agreement (230-232). The witness is not a lawyer, but the question referred to an "unincorporated proprietorship" and asked if there was a signature line for such a thing. Thus, Plaintiff's counsel objected that the question called for legal expertise. |
| 253:17-254:15 | A. As I said before, he became involved with Thefacebook prior to the coding of the site. Now, if you go by Mr. Zuckerberg's time line, that would be one week from launch. We have reason to believe that that's humanly impossible and that, in fact, we have -- there are news articles specifically that say that the concept was derived in the end of September -- excuse me, December by Mr. Zuckerberg. And given the fact that Mr. Zuckerberg approached Mr. Saverin prior to coding, we would assume that it would be well into, you know -- well, before February 4th that he was involved.<br>Q. Why -- what's the basis for your testimony that Mr. Saverin was involved with Thefacebook prior to coding?<br>　MR. HORNICK: Objection, asked and answered. You can say it again. | ConnectU's counsel's "asked and answered" objection was improper. The witness had not answered the question yet, and provided an answer that was not | The witness had provided the answer to this question in the answer he just provided, and at 250-251. The witness provided more detail in his next answer. |

| | | | |
|---|---|---|---|
| | A. Mr. Saverin says in the FM article dated February 9th, 2005 that Mark Zuckerberg was a close friend of him and approached him prior to coding of Thefacebook. That is my reason for belief. | redundant with previous answers. | |
| 256:4-20 | Q. When did Mr. Saverin first become aware of HarvardConnection? <br> A. Again, my -- our belief is that -- <br> Q. I don't want your belief. If you don't know the answer to my question, I want you to tell me that. What I don't want is your belief. When did Mr. Saverin first become -- I'm sorry, when did he first become aware of HarvardConnection? <br> A. He -- I don't know. I do not know. <br> MR. HORNICK: I'll object. That's not 30(b)(6) testimony. <br> MR. HAWK: Oh, that's incredibly 30(b)(6) testimony. <br> MR. HORNICK: I'm not sure how he can know what was in Mr. Saverin's mind, so I don't think that's 30(b)(6) testimony. | ConnectU's counsel's objection is improper. ConnectU has made allegations in its complaint regarding Mr. Saverin's use of Harvard Connection's alleged confidential information. Counsel for Mr. Saverin is trying to determine what ConnectU knows that relates to its allegations. This is covered by topics 3, 4 and 6 and allegation 21 in the complaint. | This is a frivolous example. This is not a proper 30(b)(6) question. Acts of co-Defendant Saverin, and the contents of his mind, are not known or reasonably available to ConnectU. Defendants are refusing discovery on this and other issues. This is an unanswerable question, but the witness tried to answer, then counsel cut him off. The witness then answered that he did not know. Plaintiff's counsel then objected that such questions are outside the scope of the 30(b)(6) deposition. |
| 257:5-21 | Q. Did Mr. Zuckerberg in January 2004 ever discuss or otherwise communicate with Mr. Saverin about HarvardConnection? <br> MR. HORNICK: Objection. This is all not 30(b)(6) testimony. None of this line of questioning is 30(b)(6) testimony. You can ask this witness -- <br> MR. HAWK: We disagree. <br> MR. HORNICK: -- as an individual. <br> MR. HAWK: I'm asking the questions. If you want to instruct him not to answer, go ahead. <br> MR. HORNICK: No, no, no, go ahead, but it's not 30(b)(6) testimony. <br> MR. HAWK: Well, we disagree.   BY MR. HAWK: <br> Q. I'm sorry, let me put the question -- | ConnectU's counsel's objection is improper. ConnectU has made allegations in its complaint regarding Mr. Saverin's use of Harvard Connection's alleged confidential information. Counsel for Mr. Saverin is trying to determine what ConnectU knows that relates to its allegations. This is covered by topics 3, 4 and 6 and allegation 21 in the complaint. | This is a frivolous example. This is not a proper 30(b)(6) question. Discussions and communications between Saverin and Zuckerberg are not known or reasonably available to ConnectU. Defendants are refusing discovery on this and other issues. This is an unanswerable question. After the objection, Saverin's counsel restated the question, to which the witness answered that he did not know. |

| 259:20-260:14 | Q. And what HarvardConnection trade secrets have been used in TheFacebook website?<br><br>   MR. HORNICK: Objection, asked and answered. You can answer it again.<br><br>   MR. HAWK: No, it wasn't asked and answered --<br><br>   MR. HORNICK: Not by you.<br><br>   MR. HAWK: -- but I don't want to argue with you. No, it wasn't asked and answered.<br><br>   MR. HORNICK: Yes, it was today.<br><br>BY MR. HAWK:<br><br>Q. I want you to listen to the question. I won't argue with your counsel, but this question hasn't been asked and answered. What HarvardConnection trade secrets have been used in the TheFacebook website based on your review of TheFacebook website?<br><br>   MR. HORNICK: Asked and answered.<br><br>You can answer it again. | This question had not been asked and answered. The witness had not previously testified as to which alleged trade secrets had been used in TheFaceBook website. | This is a frivolous example, and shows Defendants' badgering. The witness answered this question at 36-42, 75-78, 93, 157-59, 259-72. |
| 281:9-283:24 |    MR. HORNICK: You can't mislead the witness.<br><br>   MR. HAWK: Fine. All right.<br><br>A. To answer your question, when we asked Mr. Gao for the code, I asked him for -- we specifically asked him for code that did not include Mark Zuckerberg's code when filing with the copyright office, okay?<br><br>Q. Why did you do that?<br><br>A. Because we wouldn't file Mark Zuckerberg's code with the copyright office. We filed the code that we wrote.<br><br>Q. I thought you said there was only one version of the code. So there are two versions of the code, right?<br><br>A. No, no, no. There's one version of the code. Mark -- as I said, Mark didn't upload any of his stuff into | | |

| | | |
|---|---|---|
| the server. | | |
| Q. Well, let me ask you this: You said you instructed Mr. Gao to give you code that did not contain any contributions by Mark Zuckerberg. Is that what you told Mr. Gao? | | |
| A. Yes, but there were no contributions from Mr. Zuckerberg in the code, is what I'm getting at. | | |
| Q. Well, did Mr. Gao confirm to you that he did not strip out anything from the code that -- before he gave it to you? | | |
| A. I believe that Mr. Gao told me that there was no code in there, that Mark Zuckerberg wrote when he file -- when he gave us the code to file with the copyright office. | Evasive ("I believe") and reflects lack of preparation as 30(b)(6) designee on topics 3 and 10, inasmuch as witness could have prepared by talking to Mr. Gao. | This line of testimony is addressed in Plaintiff's opposition brief. |
| Q. Okay. So that's your testimony; Mr. Gao told you that there was no code written by Mr. Zuckerberg, no code whatsoever in the HarvardConnection code that he found and that he gave to you? | | |
| A. My testimony is that the code that was filed with the copyright office did not contain Mark Zuckerberg's code. Now, in addition to that, I am under the impression that Mr. Gao said that there was no contribution from Mark on the server, aside from him poking around in files and duplicating code that Mr. Gao had already written. Now, if you want to call that a version, I'm not sure what you mean by a version. You're talking about multiple versions of the code. | Evasive answer includes qualifier "I am under the impression," a non-responsive assertion about what was filed with the Copyright office, and a gratuitous argument about a previous answer. | Same. |
| Q. Well, you're not answering my question. | | |
| MR. HORNICK: Yes, he has answered your question. | The witness has not been responsive. | This objection was concise. See opposition brief. |
| Q. Let me ask you this. Let me ask you this. | | |
| MR. HORNICK: You showed him the code -- | Cues the witness with substantive testimony. | Plaintiff's counsel actually said "If you show him the code it might help," which |
| MR. CHATTERJEE: Counsel, | | |

| | | | |
|---|---|---|---|
| | lodge an objection. You don't need to instruct the witness, and you don't need to argue.<br>    MR. HORNICK: I'm not instructing the witness.<br>    MR. HAWK: Yeah, you're --<br>    MR. HORNICK: You're asking unfair questions.<br>    MR. CHATTERJEE: I'm looking forward to bringing this in front of the Court. | Not a proper objection. | is a proper statement. See CD-ROM Ex. 8 and opposition brief.<br><br><br>This is a proper objection. See opposition brief. |
| 292:14-23 | Q. And when did you give the Victor Gao written code to ConnectU? When did that happen?<br>    MR. HORNICK: Objection, calls for a legal conclusion, legal expertise, and this is a waste of time, but other than that, you can answer.<br>A. Well, I would say, you know, when we formed the entity ConnectU in March 26th '04, that's when I would have given it, because I formed the entity. | Baseless objection.<br><br>Topic 10. | The question calls for legal expertise because Mr. Gao wrote the code before ConnectU existed, and because the question implied a legal transfer ("when did you give the Victor Gao written code to ConnectU?"). In this context, the word "give" has legal implications. The question is also a waste of time because the witness is supposed to be testifying for ConnectU. Because the "you" referred to in a 30(b)(6) deposition is the company, it makes no sense to ask "when did ConnectU give the …code to ConnectU?" If the question was outside the scope and "you" was Mr. Winklevoss personally, the question was a waste of the time for the 30(b)(6) deposition. |
| 322:21-323:4 | Q. Okay. I want to ask you now, not about your belief, but your knowledge of facts. In the period from November 2003 to February 4, 2004, you're not aware of any evidence that Mr. Saverin knowingly used confidential -- confidential business information of HarvardConnection, correct? | | |

| | | | |
|---|---|---|---|
| | MR. HORNICK: Objection, mischaracterizes. | The pending question does not characterize anything. | The question is "you are not aware," not "are you aware," and therefore mischaracterizes the witness's immediately prior testimony. |
| 365:17-366:22 | Q. Okay. Let's just start with you. Other than Mr. Lentz, did you have an oral agreement with anyone else to respect confidentiality of HarvardConnection information?<br>    MR. HORNICK: You're asking him personally now, not as a 30(b)(6) witness, correct?<br>A. Yeah, ConnectU or --<br>    MR. HORNICK: Hold on, Cameron. It's important. You asked him did you, so it's not 30(b)(6) testimony.<br>    MR. HAWK: Just listen to the question. If you have an objection, just make it. You're being silly here --<br>    MR. HORNICK: No, I'm not being --<br>    MR. HAWK: -- the last few minutes.<br>BY MR. HAWK:<br>Q. Okay. Look, you don't understand, and I'm sorry. Let me pose my question, okay? My question to you as a 30(b)(6) witness is, did you personally have any conversations with anyone else prior to February 4, 2004, aside from Mr. Lentz, about respecting the confidentiality of HarvardConnection information?<br>    MR. HORNICK: And I object, this is not 30(b)(6) testimony. You can answer as a personal witness.<br>A. I believe that I personally did not have an oral agreement with those programmers. | Given that the witness was and is a principal of HarvardConnection and ConnectU, the question is clearly within the scope of topic 1. Whether any particular question has elicited 30(b)(6) testimony, as opposed to personal testimony, will be determined later. | This is a frivolous example. The witness testified that the events with Mr. Lentz occurred before ConnectU was incorporated. In his immediately prior answer, the witness said "Diyva would most certainly have made it clear…" Saverin's counsel then said "Okay. Let's just start with you." Based on these two factors, it was fair for Plaintiff's counsel to ask if the question was directed to Mr. Winklevoss personally, not as a 30(b)(6) witness. Saverin's counsel then insulted Plaintiff's counsel, but Plaintiff's counsel remained silent, his objection having been made. Saverin's counsel then apologized to the witness and acknowledged that his question was not clear. He then asked a nonsensical question: "My question to you as a 30(b)(6) witness is, did you personally. . ." Plaintiff's counsel objected again, concisely. |
| 369:9-373:7 | Q. Okay. All right. Fine. And did anyone -- did Mr. Narendra ever tell you at any time that he had | | |

| | | |
|---|---|---|
| obtained assurances from Mr. Zuckerberg that Mr. Zuckerberg would respect confidentiality of HarvardConnection information?<br><br>A. You know, as I said earlier, both Mr. Narendra and Mr. Gao, specifically Mr. Gao, explained to Mr. Zuckerberg the proprietary and confidential nature of the --<br><br>Q. That wasn't my question, sir. My question was, did Mr. Narendra ever tell you that Mr. Zuckerberg had committed to him to respect the confidentiality of HarvardConnection information?<br><br>A. I'm not sure. I don't -- I believe that in the second meeting when we were all present we made it very clear the proprietary nature of the site. Making something clear that it's proprietary is not -- is the same effect of telling someone "Don't tell them," you know?<br><br>Q. Not my question.<br><br>A. Because Mr. Zuckerberg understands what proprietary information is.<br><br>Q. I'm not asking about what Mr. Zuckerberg understood. My question was very specific, and I'll ask it for the third time --<br><br>    MR. HORNICK: And I'll object that he's answered it many times today and that you're now badgering the witness again.<br><br>    MR. HAWK: Okay. All right. Let's just have it again. If he doesn't want to answer the question again, he doesn't -- you know, I can't make him.<br><br>    MR. HORNICK: And otherwise, it's asking him personally. You're asking a personal question here, not a 30(b)(6) question.<br><br>    MR. HAWK: Yeah, okay. Whatever. | Non-responsive.<br><br><br><br><br><br><br><br>Non-responsive.<br><br><br><br><br><br><br><br><br><br><br>Non-responsive.<br><br><br><br><br><br>The witness has not answered the question. | See section A(2) above with respect to this same testimony and comments.<br><br><br><br><br><br><br>Same.<br><br><br><br><br><br><br><br><br><br>Same.<br><br><br><br><br><br>Same. |

| | | | |
|---|---|---|---|
| | BY MR. HAWK:<br>Q. Did Mr. Narendra ever tell you that Mr. Zuckerberg had committed in his presence to respect the confidentiality of HarvardConnection information?<br>A. Let's just say -- I would say that --<br>Q. Did he ever -- yes or no, did he ever tell you that?<br>    MR. HORNICK:  Let him finish his answer, Robert.<br>A. Mr. Zuckerberg agreeing to become part of the team, and to answer any questions that you might have like -- let's not talk about micro this, that, words, phrases, okay?<br>Q. No, that's not what my question was.<br>    MR. HORNICK:  Robert, let him finish his answer.<br>    MR. HAWK:  I want him to answer my question. | The witness again does not answer the question, which is about what Narendra told him. | Same. |
| | A. His agreement to complete that side of the code and become part of the team was understanding and accepting of the fact that it's proprietary information, and as I pointed out on C4 -- 46 -- whatever that document was, the fact that Mr. Zuckerberg didn't use our code proves that he was fully aware of it. So, you know, you're asking -- I can't recall every instance and every personal sentence that was said to Mr. Zuckerberg and if he said yes, like, you know, specifically in the way that you're describing to this person that he understood.  What I'm saying is that by becoming part of the team he effectively and directly knew that it was proprietary and confidential information.<br>Q. Right.  But do you understand, sir, that you haven't answered my question? | The witness again answers non-responsively, saying nothing about what Mr. Narendra said.  The witness instead opines conclusorily about Mr. Zuckerberg's "understanding."<br><br>The witness's comments ("I can't recall every instance and every personal sentence...") reveals a failure to prepare for 30(b)(6) Topics 1, 2 and 10, in this case by asking Mr. Narendra for his recollections. | Same.<br><br><br><br><br><br><br><br>Same. |

| | | | |
|---|---|---|---|
| | MR. HORNICK:  Object.  He has answered your question, and again you sit there and you shake your head while he's talking and you keep cutting him off.  It's oppressive.<br><br>MR. HAWK:  Well, I think the Judge is going to shake his head, and I --<br><br>MR. HORNICK:  The Judge can't see your behavior.<br><br>MR. HAWK:  Well, we'll put it before the Judge because this witness is not answering my question.<br><br>MR. HORNICK:  I think if you go back and read the transcript calmly, you'll realize that he has answered all your questions today, you just don't like the answers.<br><br>MR. HAWK:  Okay.  All right.<br><br>MR. CHATTERJEE:  I think he doesn't like the questions, but...<br><br>MR. HAWK:  Yeah.  Yeah. | The witness has not answered the question. | Plaintiff's counsel reminds Saverin's counsel that he is behaving improperly, and that the questioning is oppressive. |

| B (2) | | | |
|---|---|---|---|
| Citation | Text of deposition | Comments | |
| 41:12-24 | Q. And so these are the only ones that you can remember? You can't remember any other ones, right? <br>     MR. HORNICK: Objection. It's not a question of remembering, it's a question of asking follow-up questions. <br> A. Right. I mean, if you want to prompt me and ask me if, you know, this part of the site was proprietary and this part wasn't, or if you want to be more specific, I can certainly help out, but I think I've given you a pretty good bone to pick on, you know, that. | The objection coaches the witness, who parrots the lawyer's answer. | The objection is proper. It is counsel's job to elicit testimony from the witness by asking the right questions, and the witness had already provided a complete answer. That answer was consistent with Plaintiff's response to Interrogatory No. 2, which identifies Plaintiff's trade secret combination in suit. |
| 102:6-12 | Q. Isn't it true that in no e-mail that was ever exchanged between you and Mark Zuckerberg was it stated, "Don't tell anyone else about this information"? <br>     MR. HORNICK: Objection to the form of the question. Did it say those exact words? Is that your question? | Counsel for ConnectU improperly objects to the form of the question, which is perfectly permissible. ConnectU's counsel then coaches the witness by rewording the question. | This objection is addressed in Plaintiff's opposition brief. Defendants' counsel put quotation marks around his question within the question, which prompted Plaintiff's counsel to state his objection. Plaintiff's counsel did not reword the question, and Defendants' counsel answered "Yes" to Plaintiff's counsel's question. Thus, Plaintiff's counsel simply confirmed that Defendants' counsel wanted the witness to answer if any email exchanged with Mr. Zuckerberg used the exact words of Defendants' question. |
| 248:7-250:16 | Q. Thank you. <br>     Now, would you look at Topic | Counsel simply directs | This is a frivolous example. When |

| | | |
|---|---|---|
| No. 6. Topic No. 6 is "The alleged role of Eduardo Saverin, Dustin Moskovitz, Andrew McCollum, and Christopher Hughes in the acts alleged in the Amended Complaint."<br><br>    Are you the most knowledgeable person at ConnectU regarding that topic?<br>A. Yes.<br>    MR. HORNICK: Just for the record, this witness isn't capable of testifying on those topics to the extent it would require him to have any access to the defendants' confidential information,<br>    MR. HAWK: You know what? I don't know why you're saying that. I'm asking questions to establish what is known by the plaintiff in this case, who has brought this lawsuit. And I don't even see what relevance your statement has, but I don't want to argue with you about it. I don't know if it's a coaching statement. I don't know what the point of it is, but I'm going to go forward.<br>    MR. HORNICK: Okay. Good.<br>    MR. HAWK: All right. Fair enough.<br>BY MR. HAWK:<br>Q. What was Eduardo Saverin's role with Thefacebook in January 2004?<br>A. Well, to the extent of my knowledge he was involved with Thefacebook prior to the coding and was involved in the development. What specifically, I haven't looked at the documents, but that's what I know.<br>Q. You say he was involved in the development and in the coding of Thefacebook in January --<br>A. Not the coding. Not the coding.<br>Q. -- 2004. No, let me finish my question.<br>A. I didn't say that.<br>Q. Okay. Well, then let me finish the | the witness's attention to the noticed topics.<br><br><br><br>Before a question has even been asked, ConnectU's counsel objects in a way that coaches the witness to claim a lack of knowledge.<br><br>Moreover, the objection is improper inasmuch as the topic derives directly from the complaint and seeks to discover ConnectU's knowledge as to its own allegations. | Plaintiff's counsel realized that Saverin's counsel planned to ask questions about topic no. 6, Plaintiff repeated for the record the objections to topic no. 6 stated in Plaintiff's written objections to the Rule 30(b)(6) notice (see Ex. 2 of Motion). Plaintiff made such statement before questioning began so that he would not need to object during the questioning. Moreover, the witness was not coached because Plaintiff had informed Defendants before the deposition that it would be impossible to designate a witness on topic no. 6 to the extent any questions required the witness to have access to any documents of information Defendants had designated as confidential under the protective order (Ex. 2 of Motion). Thus, the witness was not presented to testify on topic no. 6, to this extent. Saverin's counsel did not understand the reason for the objection and did not know if it was a coaching statement, which it was not. The witness was fully prepared to testify on topic no. 6, to the extent that such information |

| | | | |
|---|---|---|---|
| | question, and then you can say, "No, I didn't say that."<br><br>MR. HORNICK:  Why don't you let him finish his answer.<br><br>MR. HAWK:  No, I want him to let me finish my question.  I'm going to let him finish his answer, all right? But --<br><br>MR. HORNICK:  All right.  Let him finish his answer.<br><br>MR. HAWK:  Yeah, but he's got to let me finish my question.<br><br>MR. HORNICK:  Well, he was answering your question from before, and you interrupted him.<br><br>MR. HAWK:  All right.  You don't interrupt me, okay?<br>BY MR. HAWK:<br>Q.  Now, let me put a question --<br>A.  Sure. | The witness has interrupted and prevented Defendants' counsel from finishing his question.<br><br>Topic 6. | was known or reasonably available to ConnectU.<br>The witness interrupted Saverin's counsel to prevent the mischaracterization of his testimony.  Plaintiff's counsel came to his aid, and suggested that Saverin's counsel allow the witness to finish explaining what he did in fact say. |
| 276:21-<br>277:16 | Q.  Mr. Gao had the full code.  Where did he have it?<br>A.  I believe he downloaded the full code in February of 2004, post-facebook launch from the server and had it on his hard drive.<br>Q.  And that is the code that was printed out and that you gave to your attorneys to be deposited with the copyright office, correct?<br>A.  Yes.<br>Q.  All right.  Did you -- are you aware that any deletions or omissions were made from what Mr. Gao provided as the HarvardConnection code before it was deposited with the copyright office?<br>A.  No.  We asked him for the complete code.<br>    ***MR. HORNICK: But I should say that the witness might not be aware of deletions that were made.***<br>A.  To my knowledge, there were no deletions made. | Coaching. | This objection is addressed in detail in Plaintiff's opposition brief. |
| 279:14-<br>281:6 | Q.  But -- all right.  But -- fair enough.  But my question was different.  My | | |

| | | | |
|---|---|---|---|
| | question was, you don't know that -- you don't know -- first of all, I think you've already testified -- let me make sure -- you don't know how many lines of code that Mr. Zuckerberg contributed to the HarvardConnection code that has been filed with the copyright office, correct?<br>A. That --<br>　　MR. HORNICK:  Objection.  That -- no Zuckerberg code that I know of has been published --<br>　　MR. HAWK:  Hey, you're not testifying here.  If you have an objection, you just go ahead, buddy, but look, don't interfere,<br>　　MR. HORNICK:  You're asking a question --<br>　　MR. HAWK:  Don't coach your -- don't coach your witness.<br>　　MR. HORNICK:  -- he can't answer.<br>　　MR. HAWK:  Don't coach the witness. | ConnectU's counsel coaches the witness with his own factual testimony (that "no Zuckerberg code ... has been published" instead of simply objecting "mischaracterizes" or "lacks foundation." | This objection is addressed in detail in Plaintiff's opposition brief.  Plaintiff's counsel in fact said "That -- no Zuckerberg code that I know of has been filed in the copyright office--" (See CD-ROM Ex. 8) | |
| | 　　MR. HORNICK:  And it wasn't a true question.  When we --<br>　　MR. HAWK:  If you have an objection, just -- you're interfering with the deposition.<br>　　MR. HORNICK:  Ask your question.<br>　　MR. HAWK:  I -- well, if you would stop interrupting, I would ask the question.<br>　　MR. HORNICK:  I can't stop inter -- you've got to be -- you've got to --<br>　　MR. HAWK:  No, I don't have to do anything --<br>　　MR. HORNICK:  -- ask questions, Robert.<br>　　MR. HAWK:  -- except conduct an examination --<br>　　MR. HORNICK:  You can't mislead the witness.<br>　　MR. HAWK:  -- and you're | ConnectU's counsel further coaches the witness by characterizing the question as "not true." When his interference with the conduct of the deposition is pointed out, ConnectU's counsel continues to argue with Defendants' counsel, further delaying and disrupting the deposition. | This objection is addressed in detail in Plaintiff's opposition brief. | |

| | interfering. | | |
|---|---|---|---|
| 359:23-360:8 | Q. Did Mr. Saverin say anything that he had any knowledge that the allegations that you were making against Mr. Zuckerberg were correct?<br><br>　　MR. HORNICK:  Objection.  The complaint hadn't been filed at that point, so do you want to rephrase your question?<br><br>　　MR. HAWK:  No, I don't want to rephrase the question.<br><br>A. He apologized for our -- what we believed was a wrongdoing, and this was -- that was about all he said, I believe. | ConnectU's counsel intervenes to interpret the question as referring specifically to the Complaint, which by its language it need not, and suggests that the question makes no sense, thereby coaching the witness to be non-responsive.  The witness answers properly, showing that he understood the question. | This is also a frivolous example.  The question was misleading because the witness testified in his immediately previous answer that he spoke to Mr. Saverin during the Summer of 2004.  The Complaint had not yet been filed.  But Saverin's counsel, asking follow up questions regarding such conversation, asked "Did Mr. Saverin say anything that he had any knowledge that the allegations that you were making against Mr. Zuckerberg were correct?"  At that point in time, ConnectU had made no allegations against Mr. Zuckerberg, so the question was nonsensical.  Thus, Plaintiff's counsel objected, stated that the Complaint had not been filed, and asked if counsel wanted to rephrase the question.  Instead, counsel refused and pressed his unfair and nonsensical question. |

| B (3) | | | |
|---|---|---|---|
| Citation | Text of deposition | Comments | Rebuttal to comments |
| 63:23-68:3 | Q. Was there any discussion about what share of the partnership he would have?<br>A. With respect to dot-com companies, they're generally started as projects and sort of a small group of people with an idea, and it's sometimes unclear exactly where, you know, two months from that -- the start point or six months from that start point where exactly the equity will lay. Mr. Zuckerberg himself has reapportioned equity multiple times.<br>So to the extent of talking about equity shares at that point, it was premature. However, everything was an equal partner. Everybody did contribute.<br>Q. So I want to make sure this is clear. So was there any discussion about what share of the partnership Mr. Zuckerberg would have?<br>A. The specific share, it was premature to speak about that at that time.<br>Q. So is the answer to my question no?<br>A. The answer is that it was premature to speak about specific shares. Was it understood by Mr. Zuckerberg that he would get a share? Yes.<br>Q. Okay. Did you tell Mr. Zuckerberg how much of a share of the partnership he would have?<br>A. Well, there is more --<br>Q. Please just answer the question. It's a yes or no.<br>MR. HORNICK: The witness can answer the question however he wants.<br>A. Yeah, I mean, you're -- I'm assuming you're talking about equity share, the multiple benefits to a project, which could include prestige, equity. There's multiple levels. And at that point we had no | | In context, Plaintiff's counsel was making the point that the witness need not answer yes/no if he does not see the issue as a yes/no issue, or if, in the witness's view, answering yes/no would not provide the |

revenue source, and the product was far from completion. We stressed to him multiple times that one of his major benefits would be a sort of a reinventing of himself in terms of his reputation post the Facemash debacle. In fact, he would be the center point of the launch, not us, even though it was our idea.

So we did not have specific talks about equity share, but as I said, he was an equal partner. Whatever you might want to infer from the equal partner, be it a quarter, a quarter, a quarter, that's fine.

Q. Did you tell Mr. Zuckerberg that he would be an equal partner?

A. I told Mr. Zuckerberg that he was -- we conveyed to Mr. Zuckerberg that he would be a part of the HarvardConnection team --

Q. And --

A. -- okay, not a contract programmer.

Q. And did you convey to him what his share of the partnership would be?

MR. HORNICK: Objection, asked and answered.

A. As I said before, we did not speak about specific equity stakes at that point. It was premature. If, you know -- I might point out at that time that Mr. Zuckerberg had yet to make a contribution. So, generally speaking, you know, in any law firm, particularly -- you know, I'm sure your firm works this way -- you work for seven, eight, ten years and then become a partner. People don't hand out partnership. You know, you don't give out equity.

So everybody was aware that they were on a team, they'd make contributions, and that depending on the size of the contribution after a certain time period, they would be given equity.

Q. Was there ever any discussion at any

whole truth. Defendants' counsel only sought yes/no answers to ostensibly yes/no questions when it suited their purposes, and were happy with narrative answers to yes/no questions in most instances. In some cases, Defendants even complained when the witness did not provide a narrative answer to a yes/no question. (see Defendants' Ex. 7, p. 3, 2nd example (as to 47:20-49:7))

| | | | |
|---|---|---|---|
| | point with Mr. Zuckerberg about what his share of the partnership would be?<br>A. Other than the fact that he was an equal partner on ConnectU and given full creative control and full input into what the product could and should be, there was not a specific discussion about specific amounts of equity at that time.<br>Q. Was there ever discussions stating that he was an equal partner?<br>A. As I said, we invited him to be part of the team. We invited him to contribute. He agreed to contribute, end of story.<br>Q. And where I'm focusing now is the word "equal."<br>A. Uh-huh.<br>Q. So did you ever tell Mr. Zuckerberg he would be an equal partner?<br>A. Well, I think the fact that we gave him our whole source code, gave him creative control, gave him full, you know -- asked him for multiple input would certainly lend to the word "equal." There was no one-way dialogue. In fact, if anything, it was skewed in his favor. And so he had more than enough reason to believe that it was going to be on equal terms, his terms, and that's as far as really I can comment on that. | | |
| 81:20-<br>82:14 | Q. Did you ever terminate his partnership?<br>A. Well, I think a better question is, did he ever fulfill the contribution level that he agreed to? And he was -- to our knowledge, we have yet to receive that contribution.<br>Q. And that's not my question. Did you ever terminate the partnership with him?<br>A. Well, I think the -- you know --<br>    MR. HORNICK: I think you're putting words into the witness's mouth. | The witness refuses to answer the question and proposes a "better question."<br><br>Counsel poses the very simple factual question again.<br><br>ConnectU's counsel makes an coaching objection. | This objection is addressed in detail in Plaintiff's opposition brief. |

| | | | |
|---|---|---|---|
| | A. Yeah.  Again, the question might better be phrased as, did he complete the sort of contribution he agreed to that would have suggested him being an equal partner? And absolutely not.  He -- or maybe he did complete it, but we don't have it.<br><br>Q. Okay.  Mr. Winklevoss, you're not answering my question.<br><br>    MR. HORNICK:  You're giving him an unfair question, that's why. | Again the witness refuses to answer the question and proposes an alternative question.<br><br><br><br>ConnectU's counsel again coaches the witness not to answer the question asked. | <br><br><br><br><br><br><br><br><br>Same. |
| 87:23-91:19 | Q. Did you ever tell Mr. Jackson he should keep the information confidential and not share it with others?<br><br>A. It was clear that he was on a contract basis and that he should complete his portion, and  Victor -- were it not I, Victor would have certainly told him this is a project that should not be talked about. | Non-responsive<br><br><br><br><br><br>Lack of preparation, referring the questioner to another individual. | This comment is addressed with respect to this testimony in section 2, *supra*.<br><br><br>Same. |
| | Q. Did you ever tell him that?<br><br>A. I don't recall if I told him, but Victor I think most certainly would have.<br><br>Q. And did Victor tell you, Tyler Winklevoss or Cameron -- or Divya Narendra that he informed Mr. Jackson of his confidentiality obligations?<br><br>A. I don't recall.  I don't know.  I can't say specifically if -- to my recollection, Mr. Gao would probably be a better individual to ask on that term, but I think it was fairly understood, and just like Victor brought Mark up to speed in terms of proprietary information, he would have done so with Joe as well.<br><br>Q. So is it ConnectU's testimony that Mr. Jackson was or was not told?<br><br>A. I believe that he understood that it was proprietary information, is | Speculation.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Non-responsive, speculation as to what | Same.<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>Same. |

| | | | |
|---|---|---|---|
| | ConnectU's position.<br>Q. The term "understood" is a confusing thing to me. Was he told -- | Jackson "understood." | |
| | MR. HORNICK: Well, it's not a confusing word. Don't say that.<br>A. How so?<br>MR. HORNICK: Just ask your question. | Coaches witness to continue his conduct. | This is a petty example. Defendants' counsel did not ask a question. He made a statement, and the statement was a commonly used device used by attorneys to try to influence a witness's testimony. Plaintiff's counsel recognized Defendants' counsel's trick and stated that "understood" is not a confusing word, and instructed Defendants' counsel not to use such tricks. Defendants comments regarding alleged evasiveness are addressed with respect to this testimony in section A(2), *supra*. |
| | Q. Well, did somebody tell him that he shouldn't share it with other people?<br>A. Well, "understood" sort of implies that either -- you can read it, you can hear it, you can understand it. It's ConnectU's position that he understood it. And how he understood it, I can't tell you exactly what neurons were firing in his brain that day that, you know, specifically gave him the inclination. | Deposing counsel asks the question for the fifth time.<br>The witness still does not answer the question about what was told by ConnectU rather than what he believes was understood by Johnson. | |
| | Again, Victor was present at a lot of those meetings. Victor was absolutely aware of the proprietary information, and he would have made Joe Jackson aware of that, just like he made Mr. Zuckerberg aware of that. | Speculation without knowledge of what they did, indicating a lack of preparation. | |
| | Q. So let me just ask it again. Does ConnectU know if Mr. Jackson was told to keep the information confidential? | Counsel asks the question again, for the sixth time. | Defendants comments regarding alleged evasiveness are addressed with respect to this testimony in section A(2), *supra*. |
| | A. It's ConnectU's position that Mr. Jackson understood that it was proprietary information. | Non-responsive. | |
| | Q. Okay. But you don't know if he was actually told? | Counsel asks the question for the seventh time. | Same. |
| | A. It's our position. Again, how he got that understanding, I don't -- you know, it's not for me to sort of speculate on, but it's our position that he's -- he had that understanding. | The witness repeats again his non-responsive answer and admits that to answer would be to "speculate." | Same. |
| | Q. That he had that understanding, but you don't know whether he was told or he just knew it or what? | Counsel asks the question for the eighth time. | Same. |
| | A. I would assume that he was told, but, again, that -- you know, who he | Again the witness | Same. |

| | | | |
|---|---|---|---|
| | got that understanding -- you know, a lot of programmers get understanding when you give them a block of code and you say, "This is code that I own, and this is a project that we're launching," and, you know, that alone for many people is a threshold for IP.<br><br>You know, programmers don't -- you know, especially people like Mr. Zuckerberg who are involved in an academic programming environment where they have to do programming problem sets, I don't think their teachers have to tell them that what you write is their code and that you shouldn't take code from a classmate or that, you know, you shouldn't copy, just like you don't copy a term paper. It's an understood thing in the academic community. Teachers don't have to say that. It's sort of a bylaw of any kind of coding.<br><br>There's open source, and then there's closed source. And closed source is proprietary information. And closed source is anything that's not made public purposely or -- you know, for that matter.<br><br>So we're talking about sort of nuances and this and that, but the fact of the matter is these are programming individuals, and they understood that it was proprietary information. That's our position. | refuses to answer, speculates, and repeats ConnectU's legal position.<br><br>Topics 2, 10. | |
| 204:22-206:5 | Q. Do you see that? Beneath that, did you disclose anything that ConnectU or HarvardConnection says this is confidential information?<br>MR. HORNICK: And read it carefully, Cameron.<br>THE WITNESS: Yeah.<br>(Witness reviews document.)<br>A. This -- yeah, this may, in fact, be proprietary information, but I will point out that myself and Mr. Lentz | Counsel poses a straightforward question about the contents of a document.<br><br><br>Non-responsive | Defendants provide no comment here regarding Plaintiff's counsel's statements. Plaintiff's counsel ensured that the witness read the exhibit carefully before answering. Plaintiff's counsel then objects that the witness had already answered the question. |

| | | | |
|---|---|---|---|
| | were engaged in business activities at this point. And he had a company called Greenwave Wireless, which --<br>Q. I understand. My question's very, very simple. It's -- and I'll restate it --<br>MR. HORNICK: Object.<br>Q. -- in case it was unclear.<br>MR. HORNICK: Well, actually, the witness answered the question.<br>MR. HAWK: No, he didn't. He said this may be or something like that.<br>MR. HORNICK: That was his answer.<br>MR. CHATTERJEE: Well, let's not argue about it. I'm going to ask the witness a question. He's going to answer it, and, you know, if he's non-responsive, we'll go to court on it.<br>MR. HAWK: We don't want something like may be. We want an answer to the question.<br>BY MR. CHATTERJEE:<br>Q. What is --<br>MR. HORNICK: He gave his answer. | | Later, Plaintiff's counsel asked a clarifying question about an exhibit, and instructed the witness to read it carefully before answering. Defendants' comments regarding alleged evasiveness are addressed in section A(2), *supra*. |
| 302:18-303:22 | Q. Okay. So it is correct that in November of 2003 when you engaged, allegedly, Mr. Zuckerberg, you believed that 10 to 15 hours were all that was necessary to complete the website, correct?<br>A. Yes. And in addition, Mr. Zuckerberg said that he had completed the website as of a couple days after our first meeting, so that would lend it to be true, I would think.<br>Q. Well, I'll object. I'm going to move to strike your last answer --<br>A. Okay.<br>Q. -- you know? And let me ask the question again. Sometimes it --<br>A. I'm just telling you --<br>Q. Well, you know, the problem is I ask | | |

| | | | |
|---|---|---|---|
| | specific questions, and I am entitled to answers -- <br> A. Sure. <br> Q. -- to those questions without a bunch of other -- <br> A. Right. <br> Q. -- stuff tacked on. <br>     MR. HORNICK:  No, that's not true.  He can answer -- <br>     MR. HAWK:  It's absolutely true -- <br>     MR. HORNICK:  -- the question however he wants. <br>     MR. HAWK:  -- and we're not going to argue about it. | Regarding non-responsive and evasive. | In context, Plaintiff's counsel was making the point that the witness need not answer yes/no if he does not see the issue as a yes/no issue, or if, in the witness's view, answering yes/no would not provide the whole truth.  Defendants' counsel only sought yes/no answers to ostensibly yes/no questions when it suited their purposes, and were happy with narrative answers to yes/no questions in most instances.  In some cases, Defendants even complained when the witness did not provide a narrative answer to a yes/no question.  (see Defendants' Ex. 7, p. 3, 2nd example (as to 47:20-49:7))  In this case, the witness unequivocally answered the question (302:23), then explained why he believed his unequivocal answer was correct.  Counsel then said he would move to strike all but the unequivocal answer, no doubt so that he could later try to impeach the witness with an incomplete answer to the |

| | | | question. Plaintiff's counsel pointed out that the witness could answer fully. |
|---|---|---|---|
| 378:14-381:7 | Q. Okay. When did Mr. Moskovitz first become aware of HarvardConnection? <br> A. As I said, I can't specifically say when he became aware of HarvardConnection. <br> Q. Did Mr. Moskovitz ever see any Web page for any version of the HarvardConnection website? <br> A. I cannot say that specifically. <br> Q. You don't know? <br>    MR. HORNICK: The witness can't answer this question without seeing confidential information. <br> A. Yeah, I can't say that. <br>    MR. HAWK: No, I want to know if he knows or not. <br>    MR. HORNICK: I told you he can't answer this question without seeing confidential information. <br>    MR. HAWK: I appreciate your testimony, but I'm asking for his, and I just want to know if he knows the answer to the question. <br> BY MR. HAWK: <br> Q. Sir, do you know, did Mr. Moskovitz ever see any Web page or any version of the HarvardConnection website? <br> A. I cannot say other than what I've stated before, which is that I believe, based on evidence, that he was involved in the creation of Thefacebook, which I believe was a derivative work of HarvardConnection. <br> Q. Yeah, but that's not my question. My question is, did Mr. Moskovitz ever see any Web page -- <br> A. I don't -- <br> Q. -- for any version of the HarvardConnection website? <br> A. I don't know. | Coaches the witness to say that he can't answer the question. <br><br><br><br><br><br><br> The witness expresses his conclusory "belief" as to different question that was not posed. <br><br><br><br><br><br><br><br><br><br> The witness qualifies his | Plaintiff objected before the deposition (Ex. 2 of Motion) that the witness would not be presented to testify with respect to any questions that related to Defendants' information designated confidential under the protective order. Such information is not known to or reasonably available to ConnectU. Plaintiff repeated such objection and reminded counsel that the witness was not presented to testify regarding such information. Defendants' comments regarding alleged evasiveness are addressed in section A(2), *supra*. <br><br><br><br><br><br> Defendants' comments |

| | | |
|---|---|---|
| | Q. Okay.<br>A. I don't know.<br>Q. That was easy, wasn't it? Did Mr. Moskovitz ever see any line of source code for HarvardConnection?<br>A. Again, it's my belief; however, I don't know.<br>Q. You don't know?<br>A. But my belief, based on evidence --<br>Q. I didn't ask for your belief. Remember the little lecture that I gave at the beginning?<br>    MR. HORNICK: He's entitled to give his answer, Robert.<br>    MR. HAWK: Okay. And I'm entitled to cross-examine the witness.<br>    MR. HORNICK: And you're --<br>Q. Did Mr. --<br>    MR. HORNICK: I'm not going to let you trap him in a corner.<br>Q. Did Mr. Moskovitz ever see any line of source code for HarvardConnection?<br>A. It's my belief that he did.<br>Q. Okay. Do you know if Mr. Moskovitz ever saw any line of source code for HarvardConnection? I'm not asking for your belief. Do you know whether he ever saw any line of source code?<br>A. If by that have I seen him, I would say no, I do not know --<br>Q. Fine.<br>A. -- I believe. | answer with unfounded "belief." | regarding alleged evasiveness are addressed in section A(2), *supra*. |
| 382:14-<br>383:6 | Q. Do you know or -- let me just ask you this:<br>Did Mr. McCollum ever see any Web page for any version of the HarvardConnection website?<br>A. It is my belief that he did. I do not know if he did.<br>Q. Okay. And did Mr. McCollum ever see any line of source code for HarvardConnection?<br>A. Again, it's my belief, based on evidence, that he did. I do not know | The witness testifies as to his "belief" not based on the facts that are known to him or to ConnectU. | This is a frivolous example. Defendants provide no comments regarding Plaintiff's counsel's objection. Plaintiff pointed out that Saverin's counsel had not asked a question, but was arguing with the witness. He suggested that counsel ask another question. Saverin's |

| | | | |
|---|---|---|---|
| | if he did.<br>Q. All right.  You know what? I'm just going to make it easy for you.  I'm not asking about your belief, I'm asking about your knowledge, and I have been for the last 20 questions, all right?<br>    MR. HORNICK:  Objection, argumentative.  And there's no question pending so just ask another question. | | counsel then did so.  Defendants' comments regarding alleged evasiveness are addressed in section A(3), *supra.* |

**B (4)**

| Citation | Text of deposition | Comments | Rebuttal to Comments |
|---|---|---|---|
| 80:2-19 | Q. So it was not a tool that was specifically directed towards helping employers find students that they might want to hire --<br>A. It could be used by employers, and it could be used by students, but it --<br>Q. Let me finish my question.<br>    MR. HORNICK: Well, let him finish his answer.<br>Q. Okay. Go ahead and finish.<br>A. It could be. As I said before, it's a user-defined -- these are user-defined sites to a large extent. So it could be used in that case, but it also could be used student to student, alumni to alumni, alumni to student, student to alumni, employer to student. You know, you can draw a matrix and probably come up with 10 different relationships or uses of the site. | The witness interrupted counsel while he was posing a question. | This is a frivolous example. Defendants' counsel appeared to have completed his question, the witness began to answer, and counsel cut him off. Plaintiff's counsel asked that counsel allow the witness to complete his answer. Defendants' counsel then said "Okay. Go ahead and finish." |
| 108:12-110:2 | Q. And anything else you can identify?<br>A. I think I've answered the question.<br>Q. Well, other than that one statement, is there anything else you can identify in what I've marked as Exhibit 4?<br>A. If you want me to go through these and sort of look a little bit more thoroughly, that's the first thing that popped out. I think it sufficiently answers the question.<br>Q. Sure. Why don't you look through it more thoroughly and see if there's anything else.<br>A. To really, you know, more thoroughly sort of hammer it home, Victor Gao, again, in multiple conversation -- you know, a two-hour conversation imparted to Mark the sort of the proprietary nature of the website. So I really don't think it's necessary. | The witness contests whether he's required to answer the question posed.<br><br>The question, now posed for the third time, seeks identification of any other evidence of which the witness is aware. Again the witness states that because he has identified one piece of evidence, he need not answer the question. | Defendants' comments regarding alleged evasiveness are addressed in section A(2), *supra*.<br><br>Same. |

| | | | |
|---|---|---|---|
| | MR. HORNICK:  I'll say that your question is reaching the oppressive level under the Federal Rules.<br><br>MR. CHATTERJEE:  You can seek a protective order if you think it's oppressive.  I'm just asking --<br><br>MR. HORNICK:  I can stop it under that basis, if you read the rule.<br><br>MR. CHATTERJEE:  If you want to stop it, stop it.<br><br>MR. HORNICK:  I don't want to, no.  I want to give you your full day.<br><br>A.  And I'd like you to be --<br><br>MR. HORNICK:  I suggest you move on.  The witness has answered your question, many times. | ConnectU's counsel threatens to stop the deposition. | Plaintiff's counsel stated that the witness had answered the question many times, warned Defendants that the questioning was reaching the oppressive level, and tried to convince counsel to move on.  Under Rule 30(d), Plaintiff could have stopped the deposition and sought a protective order, but Plaintiff did not wish to stop the deposition, and said so. |
| | MR. CHATTERJEE:  I actually asked him to identify everywhere in these documents --<br><br>MR. HORNICK:  And he told you the whole set of documents, and I told you the set of document documents is incomplete, so your questioning is unfair and oppressive. | ConnectU's counsel improperly defends his client's answering by reference to an entire mass of documents. | The witness had given his answer, which was that the collage of documents answered the question.  Defendants would not accept this answer and badgered the witness to change his answer, which he refused to do. |
| 267:13-269:25 | Q.  So in and of itself, asking for dating preferences, that was not a trade secret of HarvardConnection at any time, correct? That had been done by a lot of other websites, right?<br><br>A.  Asking for dating preferences is not -- yeah, that would not be proprietary.<br><br>Q.  That's not a trade secret, right?<br><br>A.  Yes.<br><br>Q.  And asking for a person's house at Harvard that they live in or their major or their thesis, those are not trade secrets on a college website, to ask that kind of information on a college website? Would you agree with me? | ConnectU gives a clear and direct admission that a particular aspect of the HarvardConnection website is not a trade secret. | This is a substantive issue and is irrelevant to this motion.  Plaintiff's trade secret combination is set forth in response to Defendants' Interrogatory No. 2.  All aspects of the combination were secret before Mr. Zuckerberg stole the Founders' idea and Defendants launched thefacebook.com. |

| | | | |
|---|---|---|---|
| | MR. HORNICK: Objection, mischaracterizes.<br>A. I --<br>Q. In and of -- in and of themselves?<br>　MR. HORNICK: Objection. What kind of a question that?<br>　　MR. HAWK: It's a good one.<br>　　MR. HORNICK: In and of themselves is a question?<br>MR. HAWK: You know what?<br>MR. HORNICK: He's already given you an answer.<br>　　MR. HAWK: You're interfering with the deposition, okay?<br>　　MR. HORNICK: He's already given you an answer.<br>　　MR. HAWK: Just make your objection, all right? If you have an objection, just make it, but let me cross-examine the witness, all right? You'll --<br>　　MR. HORNICK: I asked you if that was a question.<br>　　MR. HAWK: Yeah, but that's not an objection. You can object to my questions. I don't want to get into banter like this back and forth. If you have an objection, just state it. Otherwise, I'm going to conduct the examination of the witness.<br>　　MR. HORNICK: And if you ask questions like, I'll ask you if that's really --<br>　　MR. HAWK: All right. Well, that's improper. You're interfering with the deposition.<br>　　MR. HORNICK: Ask proper questions, Robert. You'll be fine.<br>　　MR. HAWK: No, John, I'm not going to -- I'm not going to get into this with you. We'll -- you know, if we're going to have to have motion practice to keep you from interfering with the deposition, we'll do it.<br>　　MR. HORNICK: Go ahead and ask your questions.<br>　　MR. HAWK: Yea, I'm going to | Baseless objection.<br><br><br>ConnectU's counsel makes an improper objection: "What kind of question is that?"<br><br>ConnectU's counsel further delaying and disrupting the questioning.<br><br>ConnectU's counsel repeats his false objection that the question was already answered.<br><br>ConnectU's counsel repeats his disruptive comment, which is not a proper objection.<br><br><br><br>ConnectU's counsel asserts his right to comment on Defendants' counsel's questions during the deposition regardless of whether a proper objection is being made. | Defendants were mischaracterizing the witness's prior testimony, which was that before Mr. Zuckerberg stole the Founders' idea and Defendants launched the website, the Founders' entire combination was secret, including the points about which Defendants were asking questions. Defendants then asked a nonquestion "In and of themselves?", to which Plaintiff's counsel properly objected. Mr. Hawk (Saverin's counsel), then pretended the question "was a good one" and accused Plaintiff's counsel of interfering, when all he had done was object to a nonquestion. Plaintiff's counsel then further objected that the witness had already answered, which would have ended the colloquy, but Mr. Hawk continued it. Plaintiff's counsel then asked again if "in and of themselves" was a question, then asked counsel to ask proper questions. Mr. Hawk continued the colloquy, and Plaintiff's counsel again suggested that counsel proceed with his questioning. Mr. Hawk finally did so. |

| | go ahead and ask my question, if I can remember what it was after all that. | | |
|---|---|---|---|
| 304:3-305:17 | Q. Let me re ask the question -- A. Okay. Q. -- Okay? In November 2003 when you allegedly engaged Mr. Zuckerberg, your belief was that 10 to 15 hours was required to finish the HarvardConnection website? A. My belief, based on the fact that Mr. Zuckerberg said that he completed the code shortly after he began work on it, would lead to -- and this is my belief. And I'm giving you the facts as to why I'm basing my belief -- beliefs are based on sort of a set of facts that are, you know, in your repertoire, and my belief is that based on the expedient nature in which he said he completed the website, it was approximately 10 to 15 hours' worth of work. Q. Sir, but I -- MR. CHATTERJEE: I'm sorry, could the court reporter read your question back, please. THE WITNESS: I heard the question. MR. HORNICK: Yeah, I don't think -- MR. CHATTERJEE: Could you read it back, please? MR. HORNICK: I don't think -- I think you're harassing the witness. MR. CHATTERJEE: I'm just trying to hear what the question was. MR. HAWK: Well, let's have the question read back. MR. CHATTERJEE: I just -- I want to hear what it was. MR. HAWK: Let's have the question read back. (Record read.) MR. CHATTERJEE: Okay, "engaged." Okay. Thank you. BY MR. HAWK: | ConnectU's counsel objects to a simple request to have the question read back. | This is a frivolous example. Plaintiff's counsel had previously objected to Saverin's counsel's gratuitous statement that he would move to strike the witness's explanation of why his affirmative answer was correct (302:18-304:2), discussed *supra* in section B(3). The Facebook Defendants' counsel, who was not questioning the witness, then asked to have a question read back, but the witness said he had heard the question. Plaintiff's counsel started to say that the question need not be read back for a nonquestioning attorney when the witness had heard the question and was prepared to answer, but The Facebook Defendants' counsel cut him off. Plaintiff's counsel then objected that "I think you're harassing the witness," meaning that Defendants' counsel together were harassing the witness with the entire line of questioning, gratuitous comments about striking testimony, and interrupting the witness. |