IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>        Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>        Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>        Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>        Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>        Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' AMENDED REPLY TO PLAINTIFF'S OPPOSITION TO FACEBOOK DEFENDANTS' MOTION TO DISMISS**

Defendants Mark Zuckerberg, Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and TheFacebook, Inc.[1] ("The Facebook Defendants") hereby reply to Plaintiff's Opposition to Facebook Defendants' Motion to Dismiss.

## I.   INTRODUCTION

Facebook Defendants' Motion to Dismiss is brought on three grounds: (i) that this action, when filed, had a defect of standing that is incurable; (ii) that even if the original Complaint is ignored and only the Amended Complaint considered, Plaintiff was not the purported real party in interest as to any of the state-law claims until August of 2005 [two of which are unassignable as a matter of law], and, this not having been an "honest and understandable mistake," the state law claims should be dismissed, and (iii) even if the state law claims survive the first two hurdles, the Court should decline to exercise supplemental jurisdiction over those claims because they greatly expand the case beyond the scope of ConnectU's narrow and flimsy copyright claim, and thus "substantially predominate" over the sole federal claim.

## II. FACTS AND ARGUMENT

### A. THIS ACTION HAD AT ITS INCEPTION AN INCURABLE DEFECT OF STANDING AND SUBJECT-MATTER JURISDICTION.

ConnectU has tried mightily to argue that the defects in its original Complaint were mere clerical errors and good-faith mistakes, but the facts strongly suggest otherwise, and require dismissal. Although its intentions are relevant to Rule 17 analysis, they are not relevant to the question of standing. Originally, the Complaint was brought solely by ConnectU LLC and asserted only the state-law causes of action. ConnectU undisputedly did not own those causes of action on September 2, 2004, when the Complaint was filed. Declaration of Monte M.F. Cooper

---

[1] Defendant Eduardo Saverin is represented by separate counsel in this matter.

...

in Support of The Facebook Defendants' Motion to Dismiss ("Cooper Decl.") Ex. 6. Therefore, ConnectU lacked standing to sue. *Paradise Creations, Inc. v. UV Sales, Inc.*, 315 F.3d 1304, 1309 (Fed. Cir. 2003) (case dismissed for lack of standing where patentee had not been assigned patent rights *at time of suit*, even though they were assigned post-filing); *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 778 (Fed. Cir. 1996) (dismissed patent and trademark claims for lack of standing, because of plaintiff's "inability to prove that it was the owner of the Intellectual Property *at the time the suit was filed*"), *as amended on reh'g on other grounds*, 104 F.3d 1296 (Fed. Cir. 1996) (emphasis added); *MHI Shipbuilding LLC v. Nat'l Fire Ins. Co.*, 286 B.R. 16, 27-28 (D. Mass. 2001) ("the standing and real party in interest inquiries pose the same question:" does the party suing hold the substantive right sued upon?). Defects of standing are assessed at the time an action is brought and cannot be subsequently cured. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.4, 112 S. Ct. 2130 (1992) (rejecting argument that post-filing joinder of parties created standing: "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*") (emphasis in original).

ConnectU argues that despite the initial standing defect, it must be possible to cure by joinder or ratification, or else "Rule 17(a) would not exist." Opp. at 12. This argument is unavailing since it addresses only joinder of a party and not subject matter jurisdiction. ***Even if the real parties in interest had been named, there would not have been federal subject matter jurisdiction over the case.*** Therefore, Rule 17(a)'s limited exception to fix an error in naming the real party cannot save ConnectU's Complaint. To understand why this is so, one must consider the full depth of ConnectU's manipulations in the original Complaint:

- ConnectU, a Delaware LLC, is the named plaintiff but owned none of the claims asserted when the Complaint was filed.

- One of the parties who did own the claims, Divya Narendra, was a citizen of New York when the action was filed. Opp. at 18. So was the named defendant Mark Zuckerberg. Complaint ¶5.[2] Thus, bringing the action in the name of the real-party plaintiffs would have revealed that there was no diversity jurisdiction.

- "TheFaceBook.com" is named as the defendant and alleged to be a Massachusetts partnership, when in fact TheFaceBook, Inc. was a Delaware corporation at the time the Complaint was filed. Thus, naming the real-party defendant would have revealed that there was no diversity jurisdiction.

Because the real parties in interest were not diverse, there was never diversity jurisdiction, regardless of what the complaint alleged. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461, 100 S.Ct. 1779, 1782 (1980) (a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy). ConnectU's assertion that the Complaint's gerrymandered assertion of diversity creates subject matter jurisdiction misstates the law. Opp. at 4-5.

---

[2] ConnectU has asked the Facebook Defendants to file this Amended Reply Brief because in the Answer of All Defendants, "Mr. Zuckerberg denied residency in New York." In fact, Defendants denied paragraph 5 of the Amended Complaint, which alleged in relevant part: "Mark Zuckerberg is an individual with a place of residence in … New York." That this allegation was false on October 28, 2004 (Amended Complaint) does not entail that it was false on September 2, 2004 (original Complaint). Moreover, having "a place of residence" in a state is not the test of citizenship for diversity. *Lundquist v. Precision Valley Aviation, Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). ("The relevant standard is 'citizenship,' *i.e.*, 'domicile,' not mere residence."). A person is "domiciled" where he "has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Valentin v. Hospital Bella Vista*, 254 F.3d 358 (1st Cir. 2001). Courts have "consistently recognized" that college students remain citizens of their home states, and not the state where they attend college. *Alicea-Rivera v. SIMED*, 12 F. Supp. 2d 243, 246 (D. P.R. 1998) (collecting cases). ConnectU acknowledged this principle when it alleged that each of the individual defendants had "a place of residence" in his home state, rather than in Massachusetts. Complaint ¶¶5-9. Facebook Defendants agree with what ConnectU obviously intended, but did not correctly plead: that Mark Zuckerberg was a citizen of New York as of September 2, 2004. Indeed, the Answer clearly implies that Defendants believed that Mark Zuckerberg was a citizen of New York at that time. Note that Defendants specifically denied the imputation of citizenship for each of the individual defendants except for Mark Zuckerberg. *Compare* Answer at 2 ("Defendants deny [that Zuckerberg has a place of residence in New York]") with, *e.g.*, Answer at 3 ("Defendants admit that Defendant Moskovitz has previously resided in the State of Florida, but deny that he is a citizen of that state"). Answer (Docket No. 14) ¶¶ 5-9.

Rule 17(a) cannot be invoked to join the real parties in interest to the Complaint where doing so would destroy subject matter jurisdiction. This follows obviously from the language of the Rule: "such ratification, joinder, or substitution shall have the same effect as if the action *had been commenced* in the name of the real party in interest." Fed. R. Civ. P. 17(a) (emphasis added). Because the effect of substitution would have been dismissal for lack of subject-matter (diversity) jurisdiction, the rule cannot and does not relieve ConnectU's lack of standing. *Finalco Equipment Investors X v. Welch*, 718 F. Supp. 1446, 1449 (N.D. Cal. 1989) (party that is not properly before court due to lack of subject matter jurisdiction has no power to request party substitution under Rule 17(a)), *citing Aetna Cas. & Sur. Co. v. Hillman*, 796 F.2d 770, 774 (5th Cir. 1986). *See also, Zurich Ins. Co. v. Logitrans, Inc.*, 297 F.3d 528, 532 (6th Cir. 2002) (Rule 17(a) "must be read with the limitation that a federal district court must, at a minimum arguably have subject matter jurisdiction over the original claims").

Nor does 28 U.S. Code § 1653 save ConnectU by allowing it to "correct" its jurisdictional allegation and then invoke Rule 17(a). Opp. at 6. Section 1653 provides a method for curing defective *allegations of jurisdiction*. It cannot be used to create the underlying jurisdiction retroactively where, based on the revealed facts, jurisdiction did not previously exist. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830-31, 109 S.Ct. 2218 (1989). Indeed, ConnectU proposes to use § 1653 in precisely the opposite of its intended fashion – to remedy a situation where jurisdiction superficially appears to have been properly alleged in the Complaint but was in fact lacking. Thus the lack of standing at the inception of this case remains, unremedied and irremediable. *Lujan*, 504 U.S. at 570 n.4. Dismissal is required.

ConnectU's initial lack of diversity is also irremediable for the reasons set forth in the opening brief's extensive discussion of *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S.

567 (2004), and related cases. *Ortega v. Star-Kist Foods*, 370 F.3d 124, 137 (1st Cir. 1994) is not to the contrary. Opp. at 7.n.6. Indeed, *Ortega* has nothing to do with the issues in this case, but merely notes *Grupo*'s observation that a change in the parties to an action can affect subject matter jurisdiction. That has not happened here, nor has it been requested until now, long after the time to amend pleadings has passed. *Blanchard v. Terry & Wright, Inc.*, 331 F.2d 467 (6th Cir. 1964), is also inapposite. Opp. at 6. The Court noted that the third amended complaint in that action "did not change in any respect the substantive allegations setting forth plaintiffs' claim," but found that these unaltered allegations made out a federal claim. 331 F.2d at 468-69. This was a § 1653-type remedy, which, as discussed above, is not available in this instance. Nor does *Fox v. Bourgeois*, 799 F. Supp. 1274, 1275 (D. N.H. 1992) assist ConnectU. It is the decision of a lower court twelve years before *Grupo*, which explicitly rejected the idea that plaintiff's need to refile or other "considerations of finality, efficiency, and economy" were sufficient to justify retaining the case if diversity was lacking at the inception. 541 U.S. at 574, 581

### B. THE COURT SHOULD DISMISS THE STATE LAW CLAIMS ASSIGNED AFTER FILING, BECAUSE CONNECTU DID NOT ATTEMPT TO CURE WITHIN A REASONABLE TIME OR MAKE AN HONEST AND UNDERSTANDABLE MISTAKE.

Even if the Court allows this action to proceed on the basis of ConnectU's Amended Complaint, it still should dismiss the state law claims because ConnectU did not attempt to cure the standing defect with respect to those claims within a reasonable time, nor was its omission of the real parties in interest an "honest and understandable mistake."

With regard to the "reasonable time" requirement, ConnectU asserts without factual support or proper declaration that it "ratified" within a reasonable time.[3] However, ConnectU

---

[3] ConnectU also makes the strange assertion that the Facebook Defendants have not considered

cites no case law to contradict the authority presented by Facebook Defendants that ten months after objection is not a reasonable time.[4] Opening Brief at 18. Instead, it argues that the term "objection" in Rule 17 is limited to a court order or a motion, and that the affirmative defenses constituting the objection were "boilerplate." Opp. at 15-16. An "objection" is not limited solely to these forms. *Metal Forming Technols., Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 436-38 (S.D. Ind. 2004) (affirmative defense started the Rule 17(a) clock ticking; motion for summary judgment brought about a year later; action dismissed for lack of an "honest and understandable mistake" despite lack of any prejudice to defendant). And it is simply absurd to label the defenses, allowed by Federal Rule 12(b), as boilerplate – they properly address the specific facts of this case: ConnectU's formation as a corporate entity occurred after the events it is alleged to have been involved in, and it lacked standing to assert the individuals' claims. The Facebook Defendants raised these defenses based on the allegations in the Complaint, which pointed to the problems discussed herein but did not disclose the actual details of the relationships among the individuals, ConnectU LLC, and Harvard Connection. Within a few weeks of receiving relevant discovery – *i.e.*, the August production of the ConnectU Operating Agreement and deposition of ConnectU – which confirmed the defects identified by their defenses, the Facebook Defendants brought this motion.

ConnectU concedes that relief under Rule 17(a) is available only if an "honest and understandable" mistake has been made, citing no case law contrary to Defendants' authority

---

the possibility of "ratification" or cited case law pertaining to it, but then characterizes its August 5, 2005 assignment of claims as constituting said "ratification." Opp. at 12-13. The entire discussion of Rule 17 in the opening brief addresses this exact situation – a post-filing assignment of claims.

[4] *Prevor-Mayorsohn Caribbean, Inc. v. Puerto Rico Marine Mgmt.*, 620 F.2d 1, 3 n.2 (1st Cir. 1980) does not help ConnectU. The First Circuit held that the named party was in fact the real party, and observed that while ratification "may have" been available as an alternative, it was

presented in the Opening Brief, and even quoting the Advisory Committee note to this effect: "modern decisions are inclined to be lenient *when an honest mistake has been made*." Opp. at 17. Yet ConnectU fails to offer any evidence by proper declaration or affidavit of an honest mistake. *Automated Information Processing, Inc. v. Genesys Solutions Group, Inc.*, 164 F.R.D. 1, 3 (E.D.N.Y. 1995) ("affidavit provides only a brief and unconvincing explanation for [principal's] claimed unawareness" that corporate existence had lapsed; Rule 17(a) substitution not permitted). Despite being represented by highly competent counsel at the time it filed both its complaints, it offers no explanation of why it made the mistake of naming the wrong plaintiff. Moreover, both the facts and ConnectU's own credibility-straining statements suggest that it was fully aware before it filed either complaint that ConnectU was not the real party in interest, but chose to proceed without the real parties for its own reasons – to create the appearance of jurisdiction, for one.

The obvious reason for naming ConnectU, and not the individual parties, in the original Complaint was, as explained above, to create the appearance of diversity jurisdiction so that the action could be brought in federal court. Amazingly, ConnectU states on this very motion that "[a]dding them [the ConnectU founders] would not have affected diversity or its 'appearance.'" Opp. at 18. That is false. ConnectU admits that the "Founders" were residents of Connecticut and New York. Opp. at 18, Its original Complaint alleged that Mark Zuckerberg is a resident of New York. Complaint ¶5. Hence, no diversity exists between these parties. The original Complaint also falsely stated the citizenship of TheFacebook, as discussed above, again creating the false appearance of diversity. ConnectU explains this by saying that a search for an incorporated Facebook entity turned up no results as of September 2004. Opp. at 5 (providing no

---

unnecessary. The opinion did not discuss ratification at the trial stage.

factual support or declaration for this statement). Given the procedures one would expect a major law firm to follow in order to check the status of a corporate entity, this is hard to credit. It becomes even harder to believe when one notices that ConnectU corrected the allegation of TheFacebook's citizenship in the Amended Complaint it filed the next month – once the allegation no longer mattered for jurisdiction. ConnectU has not offered any explanation of why it could find TheFacebook's corporate registration in September, but not in October.

Nor are the Plaintiff's explanations of its failure to name the real parties or to timely assign their claims plausible. ConnectU explains that it "has been presumed to be the real party in interest since filing" because "it did not deem it necessary to join the Founders, which are its members under the Operating Agreement." Opp. at 17. But of course there was no signed Operating Agreement at the time of filing and no other document or act of assignment. *See* Cooper Dec. Ex. 7 (Interrogatory No. 7). Is it believable that ConnectU's principals and attorneys made this error when they were at the same time working carefully to obtain a copyright assignment? The lawyer-prepared copyright assignments from Joseph Jackson and Victor Gao are dated August 4, 2004, just before the original Complaint was filed. Cooper Decl. Ex. 3; ¶4. Aware of the prerequisites for a copyright assignment, ConnectU waited until its copyright registration was complete to file its Amended Complaint adding the copyright claim. Yet ConnectU asserts that in filing its original Complaint alleging solely the state-law claims, it overlooked what was fundamentally required for an assignment, and persisted in this egregious mistake for almost a year.

ConnectU discredits this unlikely notion at the same moment it raises it – stating that its principals were "working on an operating agreement that would formalize everyone's rights," but were taking their time due to the "length and complexity" of the Operating Agreement. Opp.

at 17. This assertion, if true, would prove that the principals knew they needed an additional agreement to effect an assignment of the claims which were asserted in the original Complaint. Opp. at 17. ConnectU also argues that the Operating Agreement merely formalized its rights as a "successor" to Harvard Connection's rights. *See* Opp. at 17. However, this directly contradicts its repeated statements that Harvard Connection was not a legal entity. *See* Opp. at 15, 19.

However, ConnectU's own evidence shows that this explanation of its conduct is also untrue. ConnectU admitted in deposition that its principals never discussed any transfer of rights to the company before the summer of 2005, shortly before they signed the Operating Agreement. Cooper Decl. Ex. 8 at 221:5 – 223:7. Even more striking, at least one draft of the Operating Agreement made no mention of a transfer of rights related to the state law claims. *See e.g.*, Cooper Decl. Ex. 9. Only *after* the Facebook Defendants propounded discovery seeking the basis for ConnectU's ownership of the claims did ConnectU's attorneys add claim-assigning language to the Operating Agreement. *See* Opening Brief at 7-8. Thus, ConnectU's claim that such an assignment was intended "all along" is not credible, but rather was prompted by Defendants' discovery.

Regardless of ConnectU's contradictory excuses, it has not shown the requisite evidence of an "honest and understandable mistake" but rather has further demonstrated an underlying scheme to manipulate jurisdiction. Despite the leniency afforded an honest mistake, the requirement is more than mere verbiage. *Intown Prop. Mgmt., Inc. v. Wheaton Van Lines, Inc.*, 271 F.3d 164, 169 (4th Cir. 2001) ("The Committee specifically cautions against abuse of Rule 17: the rule 'should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the correct party to sue is difficult or when an understandable mistake has been made.'…Such was not the case here.…Intown's mistake [was] not … 'understandable.' Intown

was represented by counsel and had notice of the Transcontinental action from an early date, and yet failed to seek to join the Transcontinental action until after the limitations problem with its own action became apparent.") There are any number of considerations that could account for why ConnectU's principals chose to delay assigning the claims until forced to do so. It is not the defendants' job to figure out the answer, but simply to point out that ConnectU has, even in this very motion, proffered demonstrably false excuses that show its omission of the real parties in interest was not an "honest and understandable mistake." ConnectU has failed to meet even this liberal standard.

### C. THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS.

Because the sole federal claim – the copyright claim – is both much narrower in scope than the state claims and substantively weak, the Court should decline to exercise supplemental jurisdiction over the state claims. ConnectU misstates the applicable standard, citing 28 U.S.C. § 1367(c)(4) as allowing the Court to discretionarily decline supplemental jurisdiction only in "exceptional circumstances." Opp. at 10. As is obvious from glancing at the statute, §1367(c)(4) does not limit §1367(c)(2), which applies to the present situation, where state law substantially predominates – they are *alternatives*. Nor does 28 U.S.C. § 1338(b) affect the analysis. Opp. at 11. The Court has exactly the same discretion under § 1338(b) that it has under § 1367 to decline jurisdiction over state claims that substantially predominate. *Verdegaal Bros., Inc. v. Union Oil Co.*, 750 F.2d 947, 950-51 (Fed. Cir. 1984); *I. Appel Corp. v. Munsingwear, Inc.*, 646 F.Supp. 685, 689-90 (S.D.N.Y. 1986); *Particle Data Labs., Inc. v. Coulter Elecs., Inc.*, 420 F.2d 1174, 1178 (7th Cir. 1969).

In its half-hearted attempt to distinguish the case law, ConnectU admits that the question is indeed whether the state claims substantially broaden the defenses and the theories of liability.

Opp. at 9; *Jaffrey v. Fitzwilliam*, 846 F. Supp. 3 (D. N.H. 1994). The answer to that question is clearly yes, because the copyright claim turns on whether a single document, the Harvard Connection Code, is infringed by the source code of the Facebook website. Amended Complaint ¶¶ 25-27. Essentially, the case would consist of comparing two computer programs for substantial similarity, considering Defendants' copyright defenses, and then, if liability were found, determining copyright damages that would reflect the portion of TheFacebook's profits attributable to the copying. *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1171-73 (1st Cir. 1994) (jury weighs value of copyright use against factors in profit attributable to defendant and apportions damages). ConnectU could also argue for "actual damages" if it could show "with reasonable probability that, but for the defendant's infringement, the plaintiff would not have suffered the loss." *Data Gen.*, 36 F.3d at 1171. It seems unlikely that, even on the most expansive theory of "indirect" losses," ConnectU could establish that TheFacebook's alleged first mover advantage derived from the Harvard Connection Code, because ConnectU has admitted the code is unusable. Cooper Decl. Ex. 8 at 214:10-16, 219:2-9 (testimony that the Harvard Connection Code was abandoned and new programmers were hired who started from scratch).

By contrast, the eight state law claims add innumerable issues and erect an action of much greater reach and complexity. Indeed, the trade secret misappropriation claim alone does this. Plaintiff admitted that Harvard Connection Code falls entirely within only one of ***nine categories*** of trade secrets listed by the Plaintiff in its recent answer to Defendants' interrogatories. *See* Cooper Decl, Ex. 7 at 9-12. Just one of the non-source code trade secret categories contains eleven subparts describing numerous types of functionality undisputedly beyond the capacities of the non-functioning code ConnectU deposited with the Copyright

- 11 -

Office. *Id.* at 10-11. Not only does the content of all of those trade secrets remain to be contested, but also the issues of: (1) what measures, if any, were taken to preserve confidentiality as to each; (2) what agreement regarding confidentiality, if any, existed between ConnectU and or its principals and Mark Zuckerberg and or the other defendants; (3) what evidence there is of use of each trade secret; and so on.

After these trade secret issues have been addressed, there are seven more claims presenting numerous issues and related questions of fact unrelated to the copyright claim: (i) breach of contract (was there a mutual manifestation of assent between Mark Zuckerberg and ConnectU or its principals?; as to what terms?; was there a breach?; damages; myriad contract defenses); (ii) breach of fiduciary duty (was there a partnership or joint venture or other source of fiduciary relationship between Mark Zuckerberg and ConnectU or any of its members?; was there a breach of that duty?); (iii) fraud (did Zuckerberg make the promise alleged?; was it false when made?; did Zuckerberg intend to induce reliance?; did ConnectU reasonably rely?; did ConnectU suffer resulting detriment?; were Zuckerberg's actions willful and knowing?; what were damages?); (iv) intentional interference with prospective contractual and advantageous business relations (did Defendants purposely and wrongfully cause website users and advertisers to refrain from entering into business relations with ConnectU and usurped its business opportunities?); (v) unfair trade practices; (vi) unjust enrichment; and (vii) breach of the implied covenant of good faith and fair dealing. *See* Amended Complaint at 6-12.

ConnectU's admission that the Harvard Connection Code – the entire basis for the copyright claim and thus for federal jurisdiction – was unusable further militates against supplemental jurisdiction because it strongly suggests that the claim is substantively weak. *Diven v. Amalgamated Transit Union Int'l & Local 689*, 38 F.3d 598, 602 (D.C. Cir. 1994) ("the

- 12 -

apparent weakness of the [federal] claim – even before discovery – is ... a factor to be weighed in determining whether the state claim 'substantially predominates'").[5] The reason is simple: ConnectU is contending that the Facebook website, which has over 8 million users and more than 3 billion page views (Opp. at 3) was built on code that ConnectU itself discarded as unsalvageable. The likelihood that defendants copied the Harvard Connection Code at all – much less to the level of detail required to make out infringement of its copyrightable "expression" in source code – given that the Code concededly lacked any meaningful functionality, is far-fetched. On this slender reed does federal jurisdiction over this entire action depend. The Court should exercise its discretion and decline ConnectU's invitation, for the sake of a throwaway copyright claim, to hear this complex and involved state-law action.

///

///

### III.   CONCLUSION

---

[5] In light of the admission by Plaintiff itself that it abandoned the Harvard Connection Code, its

Facebook Defendants respectfully repeat their request that this Court dismiss this case under Rule 12(b)(1) or, in the alternative, dismiss all of Plaintiff's non-copyright claims under Rule 17(a).

Dated: November 14, 2005.

Respectfully submitted,

_____/s/ Robert D. Nagel /s/_____
G. Hopkins Guy, III*
I. Neel Chatterjee*
Monte M.F. Cooper*
Joshua H. Walker*
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: (650) 614-7400
Facsimile: (650) 614-7401
hopguy@orrick.com
nchatterjee@orrick.com
mcooper@orrick.com
jwalker@orrick.com

Steve M. Bauer
Jeremy P. Oczek
PROSKAUER ROSE, LLP
One International Plaza, 14th Floor
Boston, MA 02110-2600
Telephone:   (617) 526-9600
Facsimile:   (617) 526-9899
sbauer@proskauer.com
joczek@proskauer.com

ATTORNEYS FOR MARK ZUCKERBERG, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.

* Admitted Pro Hac Vice

---

tone of bafflement at the notion that the copyright claim is weak is unwarranted.

- 15 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2005, a true and correct copy of the foregoing document was served on counsel of record by use of the Court's ECF system.

[[/s/]] Robert D. Nagel<br>
Robert D. Nagel*

* Admitted Pro Hac Vice

DOCSSV1:435236.1