# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br>Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br>Defendants.<br>MARK ZUCKERBERG, and FACEBOOK, INC.,<br>Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br>Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br>Additional Defendants on Counterclaims. | Civil Action No.: 04-11923-DPW<br><br>Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |

**FACEBOOK DEFENDANTS' OPPOSITION TO CONNECTU LLC'S
MOTION TO COMPEL ANSWERS TO INTERROGATORY NOS. 19-23**

Defendants Mark Zuckerberg ("Zuckerberg"), Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and Facebook, Inc. ("Facebook") (collectively, "Facebook Defendants")[1] hereby respond to, and oppose, Plaintiff's Motion to Compel Facebook Defendants' Answers to Interrogatory Nos. 19-23 ("ConnectU's Motion").

## I.  INTRODUCTION

ConnectU's most recent motions to compel relate to discovery requests propounded *before* the discovery hearing of November 18, and should be denied since both motions (i) raise issues mooted by discovery that Facebook has already made and (ii) re-argue issues already submitted to the Court but not yet decided. Indeed, for this motion:

(1)   Interrogatory Nos. 19 and 20 seek detailed disclosures relating to the *same* hard drives on which the Court already ruled at the November 18 hearing;

(2)   Interrogatory No. 21 asks for details about third-party hosting and server providers that Facebook Defendants have already provided to the full extent of their knowledge;

(3)   Interrogatory No. 22 demands information relating to Facebook Defendants' trade-secret position that is already the subject of two pending motions; and

(4)   Interrogatory No. 23 requests investor and investment information that is also the subject of a motion already under submission.

Moreover, Interrogatory Nos. 19-23 suffer from several other defects, such as overbreadth and compoundness. Any outstanding issues that might have remained once the pending motions are decided could and should have been resolved through the meet and confer

---

[1]  Defendant Eduardo Saverin is represented by separate counsel in this matter. The term "Defendants," as used herein, refers to all Defendants, including Mr. Saverin. The "Facebook Defendants" may be used herein to refer to all Defendants *except* Mr. Saverin.

process. Indeed, as has been common in this case, counsel for ConnectU did not even bother to finish the meet and confer before filing. Piling on two more motions to compel is a waste of the Court's and the parties' time and resources. ConnectU's motion to compel answers to Interrogatories Nos. 19-23 should be denied.

## II.     PROCEDURAL BACKROUND

### A.     Discovery Background

The Plaintiff has propounded a total of 198 production requests, 26 interrogatories (many more when their compound character is taken into account), and 10 subpoenas to non-parties. Facebook Defendants have produced almost 5,000 pages of documents, including two different versions of Facebook's source code, plus a CD with additional Facebook code extracted from Mark Zuckerberg's recently located hard drive, that date all the way back to February 2004. Facebook Defendants have even – despite contesting their relevance – produced certain financial documents dated after May 21, 2004, in an attempt to compromise reasonably.

In contrast, the Plaintiff has refused to identify its trade secrets with the specificity the law requires before it is entitled to discovery on that claim. Facebook Defendants have moved to compel ConnectU to produce a more particularized identification of its trade secrets in response to their Interrogatory No. 2. (Docket No. 43.) This motion is pending. Accordingly, Facebook Defendants have refused to produce discovery relating to ConnectU's trade secret claim until the Court decides this critical threshold issue.

To the extent Facebook Defendants continue to decline to produce on this basis, they have informed Plaintiff that *if and when* it sufficiently identifies its alleged trade secrets, Defendants will provide responsive discovery. Affidavit of Robert D. Nagel in Support of Facebook Defendants' Opposition To ConnectU's Motion to Compel Answers to Interrogatory

- 2 -

Nos. 19-23 Docket No. 83 Exh. A and ("Nagel Aff.") Exh. B. Despite this assurance, Plaintiff still refuses to sufficiently identify a single trade secret.

Otherwise, Facebook Defendants are only withholding some financial and corporate documents created after May 21, 2004,[2] and student records of individual Defendants that predate the existence of HarvardConnection or ConnectU. Facebook Defendants have also objected to and refused to allow ConnectU to obtain mirror images of computers and memory devices of all Defendants.

These mirror images and financial and corporate documents were the subjects of ConnectU's Motion to Compel and Facebook Defendants' Motion for Protective Order. *See* Docket Nos. 38, 43, 50, and 60. The Court heard that motion on November 18, 2005, and structured discovery relating to the hard drives in the following manner:

> [T]he Court will not at this time require the production of mirror images of hard drives within the custody, control and/or possession of defendants but permit plaintiff to take discovery as to the steps the defendants have taken to obtain and produce the codes. If defendants' counsel's representations turn out to be inaccurate, the Court may allow the plaintiff to make mirror images of defendants' hard drives.
>
> Further, the defendants shall provide all information to the plaintiff as to the identity of the entity which has possession of the server upon which the Facebook was initially launched and the plaintiff may subpoena that entity to permit the making of a mirror image of the hard drive from which the launch occurred. If the entity objects, it may follow the procedures set forth in Rule 45, Fed. R. Civ. P.

Judge Collings' Electronic Order of November 18, 2005.

---

[2] May 21, 2004 is the date on which ConnectU launched its own competing website. Because ConnectU's complaint focuses actions that allegedly occurred prior to the launch of its website (including the copyright infringement and trade secret misappropriation claims that for a basis for this entire suit), and because there could have been no trade secret theft of things ConnectU itself publicized on its website as of May 21, 2004, documents created after this date are less relevant to this matter.

The Court has not yet ruled on the issue of producing financial and corporate documents generated after May 21, 2004.

### B.     Current Discovery Dispute

Two of ConnectU's interrogatories (19 and 20), pertaining to Facebook Defendants' hard drives, were effectively ruled overbroad by the Court's November 18 Order. Two additional interrogatories (22, pertaining to ConnectU's alleged trade secrets, and 23, pertaining to investment and financial documents) depend on the outcome of already pending motions mentioned above. The remaining interrogatory (21, relating to third-party server providers) has been answered in its entirety. Thus, as explained in detail below, this motion is unwarranted on the merits.

In addition, the meet and confer process had not reached a conclusion as of the time of filing. ConnectU did not communicate about these interrogatories with Facebook Defendants between December 9, when Facebook Defendants supplemented their responses to Interrogatories 21 and 23, and January 5, when this motion was filed. At the November 18 hearing, the Court observed that "one [motion] might be resolved today, but the rest of them aren't going to be resolved today. I mean I'll get to them when I can get to them, but that number of discovery disputes is quite a burden on the Court." (Docket No. 130 at 8:24 – 9:3.) Nevertheless, ConnectU has pressed ahead with two more unwarranted motions to compel, each covering numerous requests. At the root of the problem is plaintiff's unwillingness ever to narrow its requests and respond in good faith to the question: "What do you actually need?" Detailed consideration of each interrogatory follows.

III.   ARGUMENT

    A.   **ConnectU's Motion Should Be Denied As To Interrogatory Nos. 19-20.**

        1.   **Interrogatory Nos. 19-20 Are The Subject Of A Motion That Has Already Been Denied By This Court.**

Interrogatory Nos. 19-20 ask Facebook Defendants to:

> **Identify each computer hard drive or other electronic memory or storage device** … in the possession, custody, or control of [any defendant], or **on which [any defendant] stored *any* information, from August 1, 2003 to the present, including but not limited to the "600-800 hard drives, or other memory devices"** referred to in paragraph 5 of the Affidavit of Nicholas J. Heyman, attached to "Facebook Defendants' (i) Opposition to ConnectU LLC's Motion to Compel the Production of Mirror Images of Defendants' Hard Drives and Other Memory Devices and Documents Created After May 21, 2004, and (ii) Cross-Motion for a Protective Order," **and the present location and custodian of each device identified in response to this interrogatory.**

(emphasis added). If the Court is experiencing a sense of déjà vu upon reading the text of ConnectU's Interrogatory Nos. 19 and 20, it is not alone. The mirror images were the subjects of ConnectU's Motion to Compel and Facebook Defendants' Motion for Protective Order regarding electronic images of Facebook Defendants' entire hard drives and post-May 21, 2004 documents. (Docket Nos. 38, 43, 50, and 60.) The Court heard that motion on November 18, 2005, and structured discovery relating to the hard drives in the following manner:

> [T]he Court will not at this time require the production of mirror images of hard drives within the custody, control and/or possession of defendants but permit plaintiff to take discovery as to the steps the defendants have taken to obtain and produce the codes.If defendants' counsel's representations turn out to be inaccurate, the Court may allow the plaintiff to make mirror images of defendants' hard drives.
>
> Further, the defendants shall provide all information to the plaintiff as to the identity of the entity which has possession of the server upon which the Facebook was initially launched and the plaintiff may subpoena that entity to permit the making of a mirror image of the hard drive from which the launch occurred. If the entity

- 5 -

>objects, it may follow the procedures set forth in Rule 45, Fed. R.
>Civ. P.

Judge Collings' Electronic Order of November 18, 2005.

Interrogatory Nos. 19 and 20 are companions to the ConnectU document requests seeking to image every hard drive and server the individual Defendants and facebook.com have had or used, from a date well before any of them met the Winklevosses, to the present. The Court considered those document requests in its discovery hearing and Order of November 18 and granted some, but pretermitted most, of the relief sought by ConnectU. Indeed, these interrogatories were propounded on August 31, long before the hearing.

ConnectU's motion on these interrogatories assumes that the Court accepted its absurd position that it would be appropriate to search every memory device owned or used by any defendant since August, 2003. The opposite is true – not only did the Court reject this notion, but ConnectU itself conceded it was unnecessary. (Docket No. 130 at 40:6-9.) The Court, in part, allowed ConnectU "to take discovery as to the steps the defendants have taken to obtain and produce the codes," and ordered that

>the defendants shall provide all information to the plaintiff as to
>the identity of the entity which has possession of the server upon
>which the Facebook was initially launched and the plaintiff may
>subpoena that entity to permit the making of a mirror image of the
>hard drive from which the launch occurred

Judge Collings' Electronic Order of November 18, 2005.

The Court specifically rejected the notion that all the memory devices would be imaged on a rolling basis without Court intervention, but explained that it would allow "a certain" extent of imaging now – the non-party hard drive from which the facebook.com launch occurred – but would "hold[] the rest in abeyance." (Docket No. 130 at 33:1-2.)

Part of the reason for these limitations, as reflected in the Court's order and the colloquy at the hearing, is that Facebook Defendants represented that they have searched and are searching diligently for responsive documents – including deleted files. Thus, the Court envisioned that the adequacy of Facebook Defendants' efforts to locate relevant source code could be assessed once completed. Those efforts are ongoing, and Facebook Defendants produced yet more code to ConnectU on January 7, 2006, retrieved from the computer Mark Zuckerberg used at Harvard. Relatedly, Facebook Defendants have promptly produced to ConnectU contact information they've obtained regarding the various non-party server providers used by facebook.com in the early days of its existence. Nagel Aff. Exh. F and Docket No. 122 Exhs. 2 and 5.

### 2. Interrogatory Nos. 19-20 Are Entirely Overbroad, And Indeed, ConnectU Has Conceded That Most Of The Hard Drives And Servers Are Irrelevant To This Case.

A second reason that the Court did not order the imaging of the "600-800" memory devices was that a consensus emerged at the hearing that the Harvard Connection Code was going to be found, if anywhere, on computers that were used in the first few months of facebook.com's existence. ConnectU's own counsel stated as follows:

> At the time of launch it was launched at one server at a server company. … Now within two months after launch, the FaceBook was on five servers, so if we can't find what we need on those original, that original one server, we go to the five. On April 14th of 2004, it was moved to a different server. If we can't find what we need in the earlier things, we go to that one. And then after that, we can simply look at whatever servers are used to run the FaceBook in various colleges, and I'd start with Harvard. **So we don't need 600 memory devices. We don't even need to take them offline to do this. All we need is to get access to their personal hard drives and other devices, the server companies they no longer use**, so there's no burden there--

Judge Collings' Electronic Order of November 18, 2005.

ConnectU's counsel went on to add:

> They, **I think they have 30 schools by the end of May [2004]**, if I recall correctly, **so if we were to look at the server that was running Harvard in that time period, we'd probably find what we were looking or not find it at all**.

*Id.* (emphases added). It only makes sense that the Harvard Connection Code would be found in the first few months after launch or not at all. As ConnectU has admitted, the Harvard Connection Code consisted of a few hundred dollars worth of programming done by a few Harvard students in their spare time, and ConnectU abandoned it as unusable in March 2004. Nagel Aff. Exh. K. If it was not on Facebook Defendants' hard drives in the early stages, it obviously will not be found on the computers running facebook.com's later, larger, more advanced operation. In light of ConnectU's admission that this is true, it is inexplicable that it has moved to compel an "identification" of all of Facebook Defendants' hundreds of memory devices for the year and eight months after May, 2004 without attempting to narrow its request.

Nor does the fact that this discovery request seeks a mere "identification," as opposed to the complete contents of each memory device, salvage it from overbreadth. ConnectU has conceded that most of the hard drives and servers are irrelevant to this case. As to those (from early 2004) that are within the proper scope of discovery, Facebook Defendants have been vigorously tracking down and searching them for some time, and producing all relevant findings to ConnectU. Generating a detailed "identification" of each of hundreds of irrelevant devices – many current, some no longer in use – would actually take time and resources away from the proper search for relevant responsive information that Facebook Defendants are engaged in. Per the Court's order, ConnectU may take discovery regarding the procedures Facebook Defendants have followed in searching for the Harvard Connection Code, so that the adequacy of those procedures may be examined and further action taken if warranted. Interrogatory Nos. 19 and 20

have no proper scope beyond what the Court has already prescribed with regard to the search for the Harvard Connection Code, and therefore the motion to compel should be denied.

### 3. Interrogatory Nos. 19-20 Are The Subject Of A Motion That Has Already Been Denied By This Court.

The meet-and-confer process illustrates ConnectU's determination to have motion practice on this issue. Facebook Defendants repeatedly reminded ConnectU that the Court had ruled on the hard drives issue, and the proper course was to follow the Court's prescribed procedure, rather than have more motion practice. Nagel Aff. Exhs. C, D, E, and F. In another effort to avoid further involving the Court, Facebook Defendants offered, immediately after the Nov. 18 hearing, to informally follow the "rolling" memory device discovery procedure that ConnectU's counsel had sought at the hearing, and which the Court had denied:

> MR. HORNICK: The, what we really need, and I think what we need to be practical is to get what I'm going to name on a rolling basis in this order. If we find what we want at the beginning we wouldn't have to keep rolling down, down the line. …

(Docket No. 130 at 14:3-7). This proposal had taken defendants' counsel entirely by surprise, as ConnectU had never mentioned it before. Even more surprisingly, ConnectU declined Facebook Defendants offer. Nagel Aff., Exh. F. Thus, ConnectU was willing to adopt this particular reasonable approach to memory device discovery neither before nor after the hearing, but only in the Court's presence. Facebook Defendants respectfully submit that that is not the spirit in which the Court has asked the parties to approach discovery disputes.

### B. ConnectU's Motion Should Be Denied As To Interrogatory No. 21.

Interrogatory No. 21 asks Facebook Defendants to "identify" all "persons" that have provided website hosting, server, storage, archive or other data processing services for the facebook.com website "from February 4, 2004 to the present."

- 9 -

With respect to this interrogatory, ConnectU's motion to compel is again wholly unnecessary and a waste of the Court's and the parties' time and resources. Facebook Defendants answered this interrogatory in the first instance, and have continued to supplement their answers as they have obtained additional responsive information. **N**agel Aff., Exhs.F, L and M.

It is difficult even to tell what relief the motion to compel seeks. ConnectU argues that in response to its request to "specify the services provided," Facebook Defendants' responses "provide only cryptic two or three word descriptions of the services provided and is unhelpful and insufficient." Motion at 12. Yet ConnectU nowhere explains what additional information it would consider helpful. ConnectU's interrogatory lists the categories of services as follows: "website hosting services; website server services or server capacity electronic storage services; storage servers or electronic storage capacity; electronic archive services; or other data processing services or capacity." Motion at 10. Facebook Defendants responded in similar terms, e.g., "space for servers," "website hosting bandwidth and content distribution," etc. Motion, at 11. Nowhere does ConnectU state what more it believes Facebook Defendants must "specify" than the exact type of information ConnectU requested.

ConnectU also complains that Facebook Defendants have "withh[eld] the identities of facebook.com's website hosting providers sought by Plaintiff's Production Request Nos. 108-09, (covered by Plaintiff's Motion to compel) and this interrogatory." That is false. Facebook Defendants have provided the name of every third party hosting service, server provider, storage provider, and the like that it has used, and all the contact information it possesses for each such entity. *See* Motion at 10-11 and Docket No. 122 Exh. 2. Indeed, Facebook Defendants have gone beyond what the interrogatory specifically calls for and provided copies of their agreements

- 10 -

with these third parties in order to leave no doubt as to their identities. (Docket No. 122 Exh. 5.) In their letter of December 1, Facebook Defendants further supplemented these answers with the contact information for Equinix, Inc., and two of the third-party providers from early 2004 whose identities required some research to uncover. Nagel Aff. Exh. F at 2-3. After a thorough search, this represents all of the responsive information that Facebook Defendants have located to date. No other responsive information is in their possession, custody or control. Thus, there is no basis for ConnectU's motion to compel.

ConnectU has employed its motion to compel as a mop-up operation, just in case something was overlooked by the other party. To fully appreciate this cavalier and frivolous overuse of the Court's procedures, Facebook Defendants ask the Court to note in particular one of the grounds on which ConnectU here moves: that Facebook Defendants' response is incomplete because it does not include third-party contact information that was provided instead by letter. Motion at 12, referring to Facebook Defendants' letter of December 1.

Even if ConnectU deemed it important that the third-party contact information be restated in a signed interrogatory response, it did not raise this purely clerical issue before moving to compel. In ConnectU's letter of December 6, there is no mention of this concern, and the parties had no further communication about it before the instant motion was filed on January 5. Nagel Aff., Exh. H. Thus ConnectU filed this motion in violation of the Local Rules, which require its counsel to "certify that they have conferred and have attempted in **good faith** to resolve or narrow the issue." Civil L.R. 7.1(a)(2) (emphasis added). Had ConnectU simply pointed out that Facebook Defendants had neglected to copy the contact information in the letter into the Supplemental Interrogatory Responses it produced a week later, Facebook Defendants would have been happy to correct the oversight. Moving to compel was gratuitous and improper.

### C. ConnectU's Motion Should Be Denied As To Interrogatory No. 22.

Interrogatory No. 22 asks Facebook Defendants to "[i]dentify all third party websites or other public domain sources that contained or embodied any of the numbered elements identified in response to Defendants' Interrogatory No. 2 prior to Feburary 4, 2004." Motion at 12. Facebook Defendants objected to this interrogatory on various grounds but principally because it rests on a defective trade secret disclosure. (Docket No. 122 Exh. 2.) In their objections, Facebook Defendants referred ConnectU to the Memorandum of Points and Authorities in Support of Facebook Defendants' Motion to Compel Particularized Identification of Trade Secrets in Response to Facebook Defendants' Interrogatory No. 2 ("Motion to Compel"). (Docket No. 122 Exh. 2.) ConnectU argues that it is improper to refer to a motion to compel for this purpose, citing a case that admonishes against falling back on the pleadings in place of answering an interrogatory. Motion at 14, *citing Melius v. Nat'l Indian Gaming Comm'n*, CIV A 98-2210 (TFH/JMF), 2000 WL 1174994, at *1-*2 (D.D.C. 2000). This argument is wholly disingenuous. Facebook Defendants advert to their Motion to Compel not to provide the substance of an interrogatory answer, but to explain their objection to answering – the asserted "trade secrets" are themselves too vague, ambiguous, and generic to entitle ConnectU even to take discovery.

Specifically, Facebook Defendants have already moved (i) to compel ConnectU to identify its trade secrets with the specificity required by Massachusetts law, and (ii) to prohibit ConnectU from taking discovery relating to its trade secret claim until it produces an adequate trade secret designation (the "Pending Facebook Motions"). (Docket No. 43.) The reason for these motions is simple: Plaintiff's trade secret designations are an empty placeholder crafted to allow ConnectU to take discovery and then to shape its trade secret assertions to fit the

information it elicits from the defendants. As Facebook Defendants have apprised the Court, ConnectU's own counsel has acknowledged the effectiveness of such a plaintiff's strategy in trade secret cases and warned practitioners' to watch for it. (Docket No. 47.) Facebook Defendants' effort to force a meaningful trade secret designation is still pending before the Court.

In light of the Pending Facebook Motions, ConnectU's motion to compel regarding Interrogatory No. 22 wastefully multiplies these proceedings. If Facebook Defendants had **agreed** to provide a response to ConnectU's interrogatory, that is, discovery based on the current trade-secret definition, they would have conceded the very thing contested by the Pending Facebook Motions. Facebook Defendants refused to supplement their answer to Interrogatory No. 22 because they have a right to maintain the position they have already argued to the Court. ConnectU's motion to compel simply asks the Court again to decide an issue already submitted.[3]

Finally, ConnectU's assertion that Facebook Defendants offered to supplement their answer at the meet and confer is false. Motion at 14. On the contrary, Facebook Defendants' counsel specifically stated that he would **not** supplement that interrogatory given that ConnectU's counsel was in effect asking him to define their own amorphous, improper trade secret for them. Nagel Aff. ¶4. By bringing this redundant motion to compel, the Plaintiff has needlessly multiplied the proceedings in this case.

---

[3] Another reading of ConnectU's motion is that it simply constitutes additional argument on the Pending Facebook Motions, as suggested by the following language: "Facebook Defendants' inability to identify third party sources containing the elements of Plaintiff's trade secret combination would show that their motion to compel a more particularized identification of trade secrets… [is] baseless." Motion at 13. In the absence of new evidence or a change in controlling law, supplementation of its motion papers submitted nearly five months ago is an impermissible reason for ConnectU to file this motion to compel.

### D.    ConnectU's Motion Should Be Denied As To Interrogatory No. 23.

Interrogatory No. 23 asks for every conceivable type of information and document identification relating to investors and investments. The interrogatory is so flagrantly compound that it is necessary to quote it in full:

> [*i*] Identify all investments in Thefacebook, Inc. and/or thefacebook.com website, including without limitation the name of each investor; the amount of each investor's investment; the percentage of Thefacebook, Inc.'s shares, assets, or other ownership interest owned or held by each investor, the value of Thefacebook, Inc. and/or thefacebook.com website estimated by or for each investor [*ii*] (and state the basis for asserting such value); [*iii*] all documents concerning or memorializing each investment; [*iv*] all documents concerning or memorializing negotiations with any actual or potential investor; all documents concerning or constituting presentations made to or by actual or potential investors in Thefacebook, Inc. and/or thefacebook.com website; and [*v*] all documents prepared by or on behalf of Thefacebook, Inc., or prepared by on behalf of any investor, concerning or constituting any financial projections, revenue projections, profit or loss projections, and/or cash flow projections for Thefacebook, Inc. and/or thefacebook.com website.

Motion at 15 (Roman numerals added). The foregoing contains at least five different interrogatories, indicated by the Roman numerals, covering related but distinct topics. Local Rule 26.1(c) ("subparts of a basic interrogatory which are *logical extensions* of the basic interrogatory and seek only to obtain specified additional *particularized information with respect to the basic interrogatory* shall not be counted separately from the basic interrogatory") (emphases added); *Banks v. Office of the Senate Sergeant-At-Arms & Doorkeeper*, 222 F.R.D. 7, 10 (D.D.C. 2004) (asking about the facts of an event and about the documents that evidence it are two separate interrogatories; asking about the results of tests and how those results were used are two separate interrogatories). Plaintiff is thus over the limit of twenty-five interrogatories. Fed. R. Civ. P. 33(a). Facebook Defendants raised this objection in their written responses and

reiterated it in the parties' meet-and-confer on November 16.  Nagel Aff. ¶ 6; Docket No. 122 Exhs. 2 and 5.

Nevertheless, in an effort to be cooperative, Facebook Defendants have answered this interrogatory (and continue to supplement their answer) by providing financial statements, business plan documents and basic information relating to the identities of major investors and the amounts they've invested.  Nagel Aff. ¶ 6**;** Docket No. 122 Exhs. 2 and 5.

Unfortunately, as with the other discovery requests discussed above, ConnectU has taken the maximalist, rather than the reasonable approach.  Facebook Defendants continue to question why ConnectU needs such detailed information about each and every investor and the whole course of their relationships with Facebook, continuing all the way to the present.  Nagel Aff. ¶6.  ConnectU continues to insist that it needs all this information to make their damages case.  Motion, at 16.  ConnectU never explains why net value information for Facebook would not suffice.  ConnectU's motion also provides no explanation of why the copious, multifaceted information it seeks (beyond what would show net value) is relevant, saying only: "This interrogatory is important to Plaintiff's proof of Facebook, Inc.'s value, and therefore to proving Plaintiff's damages."  Motion, at 16.

Even under the broad standard of relevance under the Federal Rules, that is inadequate.  Plaintiff must make at least a minimal showing that the discovery it seeks is relevant to a claim or defense in this case.  Fed. R. Civ. P. 26(b)(1).  ConnectU's generic assertion does not suffice to establish the relevance of the vast array of information it demands.  *Todd v. Merrell-Dow Pharmaceuticals, Inc.*, 942 F.2d 1173, 1178 (7th Cir. 1992) (vague assertions insufficient to support "virtually boundless fishing expedition"); *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497, 498-99 (E.D. Wis. 1978) (denying plaintiff's request for discovery of

financial records over seven-year period and ordering plaintiff to narrow its scope to seek only documents establishing current defendant's financial status, and denying request for records of dealings with third parties, both on relevance grounds).

Nor has Plaintiff offered any justification for the temporal scope of its requests, which extend to the present, nearly two years after the alleged acts occurred. For the reasons stated in Facebook Defendants Cross-Motion for Protective Order (Docket No.43) and Reply in support thereof (Docket No. 60, at 10-12), Facebook Defendants reiterate their objection to producing documents after May 21, 2004 without a more particularized statement of ConnectU's alleged trade secrets. Here again, ConnectU has in effect resubmitted a pending motion, multiplying proceedings. (Docket No. 68) And, in seeking information that relates to every aspect of every relationship with every investor, without topical limit, this interrogatory is overbroad. *Mack v. Great Atlantic & Pacific Tea Co., Inc.*, 871 F.2d 179, 186-87 (1st. Cir. 1989) (interrogatories were overbroad and burdensome that sought list of each vacancy, by job classification, pay group, or category, date filled, name of hire, race, years of service, age, and last known address over three year period: "the burden on the defendant in answering would outweigh significantly any [corresponding] benefit to plaintiff's case").

The damage that producing this information would cause to Facebook's business relationships requires that a stricter, more tailored standard of relevance be applied. Facebook is still a pre-IPO startup dependent on venture capital. Venture capitalists are extremely secretive regarding their investments. *See, e.g.,* Nagel Aff. Exs. I, J Jennifer Kuan, *Hostage Exchange in Venture Capital Networks* (July 2004) (paper presented to International Society for New Institutional Economics Conference), *available at* http://www.isnie.org/ISNIE04/Papers/kuan.pdf, p. 6 and n.1 (describing venture capital investing

as a "secretive long-term commitment" and explaining that after failed attempts at public VC funds, "venture capitalists warned that…investors making public disclosures would be left out of future funds"); Matt Marshall, Editorial, *Venture Firms' 'creative destruction',* San Jose Mercury News, Aug. 17, 2005 *available at:*

http://www.mercurynews.com/mld/mercurynews/business/columnists/business_extras/12404790.htm (referring to "the secretive world of Silicon Valley venture capital").

.[4] The Stipulated Protective Order entered in this case provides legally sufficient guarantees of confidentiality, but that does not fully address the harm to Facebook's relationships with current and potential future investors. Out of fear, however "irrational," that litigation will expose their confidential business strategy and holdings, venture capitalists will be more likely to avoid a company that must reveal this information to a competitor in litigation. That very real potential business harm justifies limiting discovery to what Plaintiff genuinely needs, yet ConnectU refuses even to state what that is, or why. Fed. R. Civ. P. 26(b)(2) (benefit of discovery to requesting party must outweigh burden to producing party); Exhs. G and H (declining to narrow this interrogatory or the related document requests). In *UAI Technology, Inc. v. Valutech, Inc.*, 122 F.R.D. 188 (M.D.N.C. 1988), the defendant objected to allowing its seven largest customers to be noticed for deposition, arguing that this would damage its relationships with those customers. The Court, recognizing the defendant's interest in preserving its business relationships, required the plaintiff to make a prima facie showing that the depositions were relevant. *Id.* At 190-91. Although the Court did allow the depositions, it noted several factors that are absent here: that the plaintiff itself had made its customers aware of the lawsuit by obtaining affidavits from them, and that the plaintiff had the futile expectation that the pendency of the lawsuit could be kept secret from those customers altogether. *Id.* at 190, 192.

Here, by contrast, ConnectU has not made any showing of the relevance of their vast request, and Facebook Defendants are not trying in vain to prevent investors from learning of the lawsuit, but rather to protect investors' preference for absolute confidentiality.

Additionally, ConnectU's failure to provide an adequate trade secret designation bars it from receiving an answer to this interrogatory to the extent it constitutes trade secret discovery, for the reasons argued in Facebook Defendants' pending Motions for Protective Order (Docket No. 43) and to Compel a more particularized trade secret designation (Docket No. 63). One of ConnectU's alleged but completely unspecified trade secrets is its "confidential and proprietary business plans." Docket No. 13, at ¶¶ 12, 13, 21, 22. ConnectU still has not produced a single document evidencing this business plan, nor has it disclosed any actual content to the claimed trade secret, except that it "include[s] *but is not limited to*" the intention to make the website profitable, by some means. Docket No. 65, Exh. 2, at 9, 11 (emphases added).[5] The only means specified is preceded by the fudge words "such as" and is itself completely generic. *Id*. Thus, ConnectU's attempts to discover information about Facebook's presentations to potential investors, financial projections, and the like present a familiar danger – that ConnectU can view Facebook's actual trade secrets and then tailor its allegations to match them. *See* Docket No. 63. Therefore, ConnectU's motion to compel should be denied with respect to Interrogatory No. 23.

---

[4] The Court may take judicial notice of the contents of scholarly and journalistic articles. Fed. R. Evid. 201(b).
[5] In order to avoid filing this opposition and the supporting papers under seal, Facebook Defendants have not attached Plaintiff's Responses to the Facebook Defendants' Interrogatories Nos. 1-17 as an exhibit to the accompanying affidavit. Facebook Defendants are aware that excessive filings under seal have become a burden to the Court. Therefore, with apologies to the Court for any inconvenience, Facebook Defendants respectfully refer the Court to the cited exhibit, already filed with the Court in connection with a previous motion.

## IV.   CONCLUSION

For the foregoing reasons, Facebook Defendants respectfully request that the Court deny ConnectU's Motion.

Dated:  January 23, 2006.              Respectfully submitted,

DEFENDANTS ZUCKERBERG, MOSKOVITZ, MCCOLLUM, HUGHES, and FACEBOOK, INC.

By their Attorneys,

   */s/ Jeremy P. Oczek*
Steven M. Bauer (BBO# 542531)
Jeremy P. Oczek (BBO #647509)
PROSKAUER ROSE LLP
One International Place
Boston, MA  02110
Tel:  (617) 526-9600

G. Hopkins Guy, III (*pro hac vice*)
I. Neel Chatterjee (*pro hac vice*)
Monte M.F. Cooper (*pro hac vice*)
Robert D. Nagel (*pro hac vice*)
Joshua H. Walker (*pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Tel:  (650) 614-7400