# EXHIBIT

# K

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS


CONNECTU LLC,

          Plaintiff,

v.                              C.A. No. 04-1923(DPW)

MARK ZUCKERBERG, EDUARDO SAVERIN,
DUSTIN MOSKOVITZ, ANDREW McCOLLUM,
CHRISTOPHER HUGHES and THE FACEBOOK,
INC.,

          Defendants.

CERTIFIED
COPY

---

VOLUME 1

VIDEOTAPED DEPOSITION OF CONNECTU LLC

BY CAMERON H. WINKLEVOSS

Boston, Massachusetts

Tuesday, August 9, 2005

9:44 a.m. to 6:27 p.m.


Reported by:
Jessica L. Williamson, RMR, RPR, CRR
Notary Public, CSR No. 138795

JOB NO. 36599

www.sarnoffcourtreporters.com
46 Corporate Park, Suite 100     445 South Figueroa St., Suite 2950
Irvine, CA  92606                Los Angeles, CA  90071

phone  877.955.3855
fax    949.955.3854



SARNOFF
Court Reporters and
Legal Technologies

1          VIDEOTAPED DEPOSITION OF CONNECTU LLC

2     by CAMERON H. WINKLEVOSS, a witness called

3     on behalf of the Defendant Mark Zuckerberg,

4     Dustin Moskovitz, Andrew McCollum,

5     Christopher Hughes and The Facebook, Inc.,

6     pursuant to Rule 30(b)(6) of the Federal

7     Rules of Civil Procedure, before Jessica L.

8     Williamson, Registered Merit Reporter,

9     Certified Realtime Reporter and Notary

10    Public in and for the Commonwealth of

11    Massachusetts, at the Offices of Proskauer

12    Rose, LLP, One International Place, Boston,

13    Massachusetts, on Tuesday, August 9, 2005,

14    commencing at 9:44 a.m.

15

16    A P P E A R A N C E S

17    FINNEGAN HENDERSON FARABOW GARRETT & DUNNER

18    LLP

19       (By John F. Hornick, Esq.

20       and Troy E. Grabow, Esq.)

21       901 New York Avenue, NW

22       Washington, D.C.  20001-4413

23       (202) 408-4000

24       john.hornick@finnegan.com

25       Counsel for the Plaintiff

1          A P P E A R A N C E S, Continued

2

3      ORRICK, HERRINGTON & SUTCLIFFE LLP

4          (By I. Neel Chatterjee, Esq.

5          and Joshua H. Walker, Esq.)

6          1000 Marsh Road

7          Menlo Park, California  94025

8          (650) 614-7356

9          nchatterjee@orrick.com

10         Counsel for the Defendants Mark

11         Zuckerberg, Dustin Moskovitz, Andrew

12         McCollum, Christopher Hughes and The

13         Facebook, Inc.

14

15     HELLER EHRMAN LLP

16         (By Robert B. Hawk, Esq.)

17         275 Middlefield Road

18         Menlo Park, California  94025-3506

19         (650) 324-7000

20         robert.hawk@hellerehrman.com

21         Counsel for the Defendant Eduardo Saverin

22

23     ALSO PRESENT:

24

25         George Dobrentey, Videographer

09:44:59  1          MR. HORNICK:  John Hornick and Troy

9:45:01   2     Grabow for the plaintiff, ConnectU.

          3

          4               CAMERON H. WINKLEVOSS,

          5     a witness called on behalf of the Defendants

          6     Mark Zuckerberg, Dustin Moskovitz, Andrew

          7     McCollum, Christopher Hughes and The

          8     Facebook, Inc., having first been duly

          9     sworn, was deposed and testifies as follows:

          10

          11              DIRECT EXAMINATION

          12

          13     BY MR. CHATTERJEE:

9:45:10   14    Q.   Mr. Winklevoss, thank you for coming today.

09:45:14  15         Do you understand that your deposition today

09:45:16  16         is you're testifying on behalf of ConnectU

09:45:19  17         LLC?

09:45:19  18    A.   Yes.

09:45:19  19    Q.   Have you ever had your deposition taken

09:45:21  20         before?

09:45:21  21    A.   No.

09:45:22  22    Q.   I'm going to go over some ground rules with

09:45:26  23         you, and I'm just going to ask you to make

09:45:29  24         sure you understand them.  You may have gone

09:45:31  25         over them with your counsel before.

| | | |
|---|---|---|
| 11:21:51 | 1 | was helping Victor finish off part of the |
| 11:21:54 | 2 | date side of the site.  I believe he was |
| 11:21:58 | 3 | helping him maybe with some of the back-end |
| 11:22:00 | 4 | functionality of the website.  Other than |
| 11:22:07 | 5 | that, I can't comment specifically. |
| 11:22:10 | 6 | Q.   Did you ever meet with Mr. Jackson? |
| 11:22:11 | 7 | A.   I did. |
| 11:22:13 | 8 | Q.   When was that meeting? |
| 11:22:13 | 9 | A.   Roughly the same time.  Again, I don't know |
| 11:22:15 | 10 | the date.  A lot of -- a lot of -- Victor |
| 11:22:18 | 11 | would have brought Mr. Jackson up to speed |
| 11:22:20 | 12 | in terms of the coding.  I would have met |
| 11:22:23 | 13 | him and, you know, introduced myself and |
| 11:22:25 | 14 | told him that I appreciated his effort.  But |
| 11:22:27 | 15 | other than that, Victor was pretty much in |
| 11:22:30 | 16 | charge of bringing him up to speed. |
| 11:22:32 | 17 | Q.   And do you know if Mr. Mavinkurve or Tyler |
| 11:22:34 | 18 | Winklevoss ever met with Joe Jackson? |
| 11:22:37 | 19 | A.   I don't believe so.  Mr. -- yeah, Mr. |
| 11:22:39 | 20 | Mavinkurve would not have, and Tyler I |
| 11:22:42 | 21 | don't -- Tyler may have met him, sort of |
| 11:22:44 | 22 | introduced himself, but, again, not a |
| 11:22:46 | 23 | meeting sort of in terms of coding and |
| 11:22:48 | 24 | whatnot. |
| 11:22:48 | 25 | Q.   So to the best of your recollection, you |

| | | |
|---|---|---|
| 11:22:51 | 1 | only met with Joseph Jackson once or twice? |
| 11:22:55 | 2 | A. Yeah. He was a -- he was not a heavy |
| 11:23:01 | 3 | contributor. I think he helped Victor with |
| 11:23:04 | 4 | one or two issues, and that was about it. |
| 11:23:06 | 5 | Q. And how much did you pay him? |
| 11:23:09 | 6 | A. I forget the hourly rate. I think it was |
| 11:23:12 | 7 | fairly reasonable for a college level |
| 11:23:14 | 8 | programmer. Again, it would be speculation. |
| 11:23:17 | 9 | I would say we might have paid him a couple |
| 11:23:22 | 10 | hundred dollars, if that. |
| 11:23:23 | 11 | Q. And was his hourly rate like $20 an hour? |
| 11:23:26 | 12 | A. It might have been something in that |
| 11:23:27 | 13 | ballpark, maybe a little bit less. Again, |
| 1:23:29 | 14 | he's a junior in college -- or at that time |
| 11:23:32 | 15 | I believe he was a junior. And that's about |
| 11:23:37 | 16 | market rate, I would say. |
| 11:23:39 | 17 | MR. CHATTERJEE: Let me just check. |
| 11:23:41 | 18 | How close are we to finishing on time? |
| 11:23:43 | 19 | THE VIDEOGRAPHER: We have 40 |
| 11:23:44 | 20 | minutes left on the tape. |
| 11:23:50 | 21 | MR. CHATTERJEE: Okay. |
| 11:23:51 | 22 | BY MR. CHATTERJEE: |
| 11:23:51 | 23 | Q. Did you ever tell Mr. Jackson he should keep |
| 11:23:54 | 24 | the information confidential and not share |
| 11:23:55 | 25 | it with others? |

| | | |
|---|---|---|
| 11:23:56 | 1 | A.  It was clear that he was on a contract basis |
| 1:24:03 | 2 | and that he should complete his portion, and |
| 11:24:07 | 3 | Victor -- were it not I, Victor would have |
| 11:24:13 | 4 | certainly told him this is a project that |
| 11:24:14 | 5 | should not be talked about. |
| 11:24:16 | 6 | Q.  Did you ever tell him that? |
| 11:24:17 | 7 | A.  I don't recall if I told him, but Victor I |
| 11:24:21 | 8 | think most certainly would have. |
| 11:24:23 | 9 | Q.  And did Victor tell you, Tyler Winklevoss or |
| 11:24:28 | 10 | Cameron -- or Divya Narendra that he |
| 11:24:31 | 11 | informed Mr. Jackson of his confidentiality |
| 11:24:34 | 12 | obligations? |
| 11:24:35 | 13 | A.  I don't recall.  I don't know.  I can't say |
| 1:24:39 | 14 | specifically if -- to my recollection, Mr. |
| 11:24:46 | 15 | Gao would probably be a better individual to |
| 11:24:49 | 16 | ask on that term, but I think it was fairly |
| 11:24:51 | 17 | understood, and just like Victor brought |
| 11:24:53 | 18 | Mark up to speed in terms of proprietary |
| 11:24:58 | 19 | information, he would have done so with Joe |
| 11:25:00 | 20 | as well. |
| 11:25:00 | 21 | Q.  So is it ConnectU's testimony that Mr. |
| 11:25:06 | 22 | Jackson was or was not told? |
| 11:25:07 | 23 | A.  I believe that he understood that it was |
| 11:25:10 | 24 | proprietary information, is ConnectU's |
| 11:25:14 | 25 | position. |

| | | |
|---|---|---|
| 11:53:40 | 1 | A.    No.   We -- there might be an e- -- well, I |
| 1:53:46 | 2 | don't know if there are e-mails indicating |
| 11:53:48 | 3 | the work that was -- I forget if we e-mailed |
| 11:53:53 | 4 | about that, but we had an oral agreement, |
| 11:53:57 | 5 | and that was about it. |
| 11:53:58 | 6 | Q.    And what were the terms of that agreement? |
| 11:53:59 | 7 | A.    "Will you complete Section X of website?" |
| 11:54:06 | 8 | "Yes, I will complete it." |
| 11:54:08 | 9 | "How much would you like?" |
| 11:54:09 | 10 | "I would like this amount." |
| 11:54:10 | 11 | "Okay.   Here is that amount when you |
| 11:54:11 | 12 | complete it.   And be fully aware that this |
| 11:54:15 | 13 | code is proprietary and that everything |
| 1:54:17 | 14 | involved is protected." |
| 11:54:19 | 15 | Q.    And you told him he shouldn't share anything |
| 11:54:23 | 16 | about his work with anyone else? |
| 11:54:25 | 17 | A.    Sure. |
| 11:54:27 | 18 | Q.    Is that a yes? |
| 11:54:27 | 19 | A.    Yes. |
| 11:54:28 | 20 | Q.    Okay.   When you say Section X was what he |
| 11:54:33 | 21 | was doing, what is that? |
| 11:54:34 | 22 | A.    I don't know.   You would have to ask him. |
| 11:54:35 | 23 | It would have been a section of the site |
| 11:54:36 | 24 | that was left incomplete.   I mean, he |
| 11:54:40 | 25 | could -- in some -- you know, he would tell |

| | | |
|---|---|---|
| 11:54:42 | 1 | us, I guess, what, you know, what needed to |
| 1:54:44 | 2 | be completed and how long it would take and |
| 11:54:46 | 3 | whatnot.  I mean, you know, that's how |
| 11:54:50 | 4 | computer software development works, |
| 11:54:51 | 5 | people -- you ask the developer, say, "Look, |
| 11:54:53 | 6 | we need help," they tell you how much time |
| 11:54:55 | 7 | and work and money, and you agree to it. |
| 11:54:58 | 8 | Q.   And how do you know that; that's how |
| 11:55:00 | 9 | software development works? |
| 11:55:03 | 10 | A.   Because that's what I do.  We do -- have |
| 11:55:06 | 11 | done contract software work. |
| 11:55:09 | 12 | Q.   You mean you've hired people? |
| 11:55:10 | 13 | A.   Well, I mean in software.  You break your |
| 1:55:14 | 14 | muffler and you go to Meineke and they give |
| 11:55:16 | 15 | you an estimation.  It's called estimation |
| 11:55:18 | 16 | of, you know, what the project entails. |
| 11:55:20 | 17 | Q.   How much did you pay Victor Gao? |
| 11:55:22 | 18 | A.   I think we paid him a couple hundred |
| 11:55:24 | 19 | dollars.  Again, I don't know the exact |
| 11:55:26 | 20 | amount.  And I couldn't quote you an exact |
| 11:55:29 | 21 | hourly rate. |
| 11:55:38 | 22 | Q.   And in fall 2003 until -- after Mark |
| 11:55:43 | 23 | Zuckerberg -- well, let me put it this way. |
| 11:55:46 | 24 | After June of 2003 did Victor Gao do |
| 11:55:49 | 25 | anything further for you? |

| | | |
|---|---|---|
| 11:55:50 | 1 | A. I don't -- he may have gone into the server. |
| 1:55:53 | 2 | He may have looked around.  He may have been |
| 11:55:55 | 3 | curious.  He had access to the server.  And |
| 11:56:00 | 4 | I'm not sure if he completed anything. |
| 11:56:02 | 5 | Q. Did anyone else have access to the server? |
| 11:56:05 | 6 | A. I don't believe anybody other than the |
| 11:56:09 | 7 | programmers have had access to the server. |
| 11:56:14 | 8 | Q. And how is "access" defined? |
| 11:56:17 | 9 | A. Being the ability to log in. |
| 11:56:21 | 10 | Q. And was it through a password or something? |
| 11:56:27 | 11 | A. It would be password protected, yeah, it |
| 11:56:29 | 12 | would have been password protected. |
| 11:56:30 | 13 | Q. And where was the server located? |
| 1:56:33 | 14 | A. What state or what -- on the -- where on the |
| 11:56:38 | 15 | World Wide Web or... |
| 11:56:40 | 16 | Q. Let's say what state? |
| 11:56:41 | 17 | A. I don't actually -- I don't know what state |
| 11:56:44 | 18 | it would have been in. |
| 11:56:45 | 19 | Q. Was it a Harvard server? |
| 11:56:47 | 20 | A. No, it was not a Harvard server. |
| 11:56:48 | 21 | Q. So what company provided that? |
| 11:56:50 | 22 | A. I believe it was Hurricane Electric. |
| 11:56:56 | 23 | Q. Okay.  Now, you had said earlier that Sanjay |
| 11:57:02 | 24 | Mavinkurve created the registration.  How |
| 11:57:04 | 25 | did that registration work? |

SARNOFF COURT REPORTERS AND LEGAL TECHNOLOGIES
877.955.3855

| | | |
|---|---|---|
| 02:52:10 | 1 | you know, -- it didn't look like they were |
| 02:52:13 | 2 | going to be able to finish it.  And they |
| 02:52:17 | 3 | were underqualified.  So after that we |
| 02:52:19 | 4 | approached iMarc and had them develop the |
| 02:52:22 | 5 | site. |
| 02:52:23 | 6 | Q.   And when did you bring iMarc on board? |
| 02:52:26 | 7 | A.   I believe it was like in March, maybe |
| 02:52:33 | 8 | March -- middle of March, something like |
| 02:52:39 | 9 | that, I think. |
| 02:52:40 | 10 | Q.   And what did iMarc do? |
| 02:52:42 | 11 | A.   IMarc started -- they basically programmed |
| 02:52:46 | 12 | the site from scratch over, because the php |
| 02:52:49 | 13 | at that point, the work from |
| 02:52:52 | 14 | HarvardConnection was -- many people had |
| 02:52:54 | 15 | worked with it.  And it was easier to |
| 02:52:56 | 16 | basically start again, clean slate. |
| 02:52:59 | 17 | Q.   Now, did you enter into any kind of |
| 02:53:02 | 18 | nondisclosure agreement with iMarc? |
| 02:53:04 | 19 | A.   Yeah, we had an NDA with them, yeah. |
| 02:53:08 | 20 | Q.   And was there any new confidential |
| 02:53:11 | 21 | information developed? |
| 02:53:11 | 22 | A.   Any confidential information developed.  I |
| 02:53:19 | 23 | can't recall right now.  I don't believe so. |
| 02:53:24 | 24 | Between Animal 57 and iMarc or -- |
| 02:53:28 | 25 | Q.   No, after signing the agreement with iMarc. |

214

02:53:30  1    A.   Oh, well, you know, there were -- sure,

02:53:40  2         sure, we would have developed ideas and

02:53:41  3         stuff that would have been confidential,

02:53:44  4         sure.

02:53:45  5    Q.   And how long did it take for iMarc to

02:53:48  6         complete the website?

02:53:49  7    A.   I believe they did it in two months, working

02:53:51  8         very, very hard and very fast.

02:53:55  9    Q.   And how many people were staffed on the

02:53:58  10        ConnectU project?

02:53:58  11   A.   I think there was one lead project manager,

02:54:00  12        one lead programmer and there may have

02:54:05  13        been -- there might have been -- there was a

02:54:07  14        graphics person who did graphics.  So there

02:54:10  15        was two, three people, one person sort of

02:54:12  16        making sure all the ducks were in a row, one

02:54:15  17        person programming, lead programmer, one

02:54:18  18        graphics individual, and there may have been

02:54:19  19        another programmer time to time.

02:54:24  20   Q.   And when did ConnectU launch?

02:54:28  21   A.   I believe -- I'm going to say May 25th,

02:54:32  22        2004, but I don't know that date for sure.

02:54:34  23        I know it was at the end of May.

02:54:36  24   Q.   Since the nondisclosure agreement with iMarc

02:54:41  25        what is the confidential information that

215

| | | |
|---|---|---|
| 02:54:43 | 1 | was created? |
| 02:54:43 | 2 | MR. HORNICK:   Objection.   And this |
| 02:54:44 | 3 | is outside the scope.   And I'm going to ask |
| 02:54:47 | 4 | you, this is really not relevant to the |
| 02:54:52 | 5 | case.   And what I -- rather than getting |
| 02:54:54 | 6 | into a fight over it, what I would suggest |
| 02:54:55 | 7 | that you do is you put that into a separate |
| 02:54:58 | 8 | 30(b)(6) notice and let's fight over it |
| 02:55:00 | 9 | before you have a witness on it, because I |
| 02:55:02 | 10 | don't really think you're entitled to our |
| 02:55:05 | 11 | current confidential information. |
| 02:55:06 | 12 | MR. CHATTERJEE:   The notice says |
| 02:55:08 | 13 | the concept, design and development of the |
| 02:55:10 | 14 | ConnectU website. |
| 02:55:10 | 15 | MR. HORNICK:   Yeah, it doesn't say |
| 02:55:11 | 16 | what the trade secrets are.   You've got a |
| 02:55:13 | 17 | separate one up there for the confidential |
| 02:55:15 | 18 | information that was shared with Zuckerberg. |
| 02:55:18 | 19 | That's No. 2.   Why are you entitled to our |
| 02:55:21 | 20 | current confidential information?   What does |
| 02:55:23 | 21 | that have to do with any of the claims or |
| 02:55:25 | 22 | defenses or counterclaims? |
| 02:55:26 | 23 | MR. CHATTERJEE:   It has to go with |
| 02:55:28 | 24 | the efforts to mitigate any damages.   It is |
| 02:55:31 | 25 | directly relevant if you create any new |

| | | |
|---|---|---|
| 02:55:32 | 1 | intellectual property, so -- |
| 02:55:32 | 2 | MR. HORNICK:  I'm sorry, you can't |
| 02:55:33 | 3 | have it today. |
| 02:55:33 | 4 | MR. CHATTERJEE:  -- what he |
| 02:55:33 | 5 | considered is confidential. |
| 02:55:34 | 6 | MR. HORNICK:  It's outside the |
| 02:55:34 | 7 | scope. |
| 02:55:35 | 8 | MR. CHATTERJEE:  Mr. Hornick -- |
| 02:55:37 | 9 | MR. HORNICK:  You listen to me. |
| 02:55:38 | 10 | MR. CHATTERJEE:  No, you listen to |
| 02:55:39 | 11 | me. |
| 02:55:39 | 12 | MR. HORNICK:  You assert -- |
| 02:55:40 | 13 | MR. CHATTERJEE:  You're instructing |
| 02:55:41 | 14 | him not to answer; is that correct? |
| 02:55:42 | 15 | MR. HORNICK:  Yes, I am. |
| 02:55:43 | 16 | MR. CHATTERJEE:  Okay.  Thank you. |
| 02:55:43 | 17 | There's no need to get involved in a debate |
| 02:55:46 | 18 | if you're instructing him not to answer. |
| 02:55:48 | 19 | MR. HORNICK:  But I tried to do it |
| 02:55:48 | 20 | with you in a reasonable way.  I suggested |
| 02:55:50 | 21 | to you that you do a separate 30(b)(6), and |
| 02:55:52 | 22 | let's fight over it properly.  Let's take it |
| 02:55:53 | 23 | before the Judge if we have to, let you take |
| 02:55:53 | 24 | a little time and think about whether you |
| 02:55:53 | 25 | think you really need that and whether |

217

|          |    |
|----------|----|
| 02:55:59 | 1  |
| 02:55:59 | 2  |
| 02:56:01 | 3  |
| 02:56:01 | 4  |
| 02:56:01 | 5  |
| 02:56:01 | 6  |
| 02:56:02 | 7  |
| 02:56:03 | 8  |
| 02:56:03 | 9  |
| 02:56:06 | 10 |
| 02:56:09 | 11 |
| 02:56:11 | 12 |
| 02:56:12 | 13 |
| 02:56:12 | 14 |
| 02:56:13 | 15 |
| 02:56:14 | 16 |
| 02:56:15 | 17 |
| 02:56:15 | 18 |
| 02:56:15 | 19 |
| 02:56:15 | 20 |
| 02:56:15 | 21 |
| 02:56:16 | 22 |
| 02:56:18 | 23 |
| 02:56:20 | 24 |
| 02:56:20 | 25 |

you're really entitled to it before we waste time during this deposition.  I --

MR. CHATTERJEE:  Mr. Hornick --

MR. HORNICK:  If you want to work this out --

MR. CHATTERJEE:  -- if you want to meet and confer, we can do that outside of the deposition.  I do not --

MR. HORNICK:  -- when you're trying to ask the witness questions about it.  This is a very, very sensitive area.

MR. CHATTERJEE:  Mr. Hornick, all you need --

MR. HORNICK:  I don't think the Judge is going to tell you that you can have this information.

MR. CHATTERJEE:  All you need to do is instruct the witness not to answer.

MR. HORNICK:  I'm trying to work it out --

MR. CHATTERJEE:  Your objections have been coaching the witness.  This is not a time to resolve that.  We'll meet and confer later.

MR. HORNICK:  Okay.

| 02:56:22 | 1 | | BY MR. CHATTERJEE: |
|---|---|---|---|
| 02:56:22 | 2 | Q. | What development work was done on the |
| 02:56:26 | 3 | | ConnectU website after signing up with |
| 02:56:29 | 4 | | iMarc? |
| 02:56:30 | 5 | A. | Development? |
| 02:56:31 | 6 | Q. | Yes. |
| 02:56:31 | 7 | A. | Well, we -- they basically started from a |
| 02:56:36 | 8 | | clean slate and coded the site from ground |
| 02:56:40 | 9 | | up. And I think you probably have the site |
| 02:56:44 | 10 | | map that we gave them. And that would |
| 02:56:47 | 11 | | pretty much outline the initial phase of |
| 02:56:49 | 12 | | development. |
| 02:56:49 | 13 | Q. | And was it changed in any way? |
| 2:56:50 | 14 | A. | You know, it might have -- sure, it might |
| 02:56:58 | 15 | | have been changed to some extent. As I |
| 02:57:01 | 16 | | said, the HarvardConnection development was |
| 02:57:03 | 17 | | in arrested development from November 2003. |
| 02:57:05 | 18 | | Nothing was implemented in that site or at |
| 02:57:07 | 19 | | least implemented and given to us. So |
| 02:57:09 | 20 | | certainly there is changes in the website. |
| 02:57:12 | 21 | Q. | Okay. Have all the rights associated with |
| 02:57:23 | 22 | | the HarvardConnection partnership been |
| 02:57:26 | 23 | | transferred to ConnectU LLC? |
| 02:57:29 | 24 | | MR. HORNICK: Objection, calls for |
| 02:57:31 | 25 | | a legal conclusion but you can testify to |

219

| | | |
|---|---|---|
| 02:57:32 | 1 | the extent that you know facts relating to |
| 02:57:35 | 2 | that question. |
| 02:57:35 | 3 | A.   I know that Victor and Joseph, they |
| 02:57:38 | 4 | transferred their rights, and I believe we |
| 02:57:40 | 5 | have a dual ownership of -- or dual license |
| 02:57:44 | 6 | with Sanjay. |
| 02:57:45 | 7 | Q.   And that's for the copyrights or for all |
| 02:57:49 | 8 | rights? |
| 02:57:50 | 9 | MR. HORNICK:  Objection.  It calls |
| 02:57:51 | 10 | for a legal conclusion -- |
| 02:57:53 | 11 | A.   I believe -- |
| 02:57:52 | 12 | MR. HORNICK:  -- and legal |
| 02:57:53 | 13 | testimony. |
| 2:57:54 | 14 | THE WITNESS:  Sorry.  Sorry. |
| 02:57:56 | 15 | A.   I believe that entails the copyrights, and I |
| 02:58:00 | 16 | would assume also all the all rights.  I |
| 02:58:02 | 17 | don't know the answer to the other portion |
| 02:58:04 | 18 | of that question. |
| 02:58:07 | 19 | Q.   And how is it that ConnectU LLC owns the |
| 02:58:13 | 20 | trade secrets of the HarvardConnection |
| 02:58:15 | 21 | partnership? |
| 02:58:16 | 22 | A.   We transferred like myself, Tyler and Divya |
| 02:58:20 | 23 | transferred the rights of our trade secrets |
| 02:58:24 | 24 | to ConnectU. |
| 02:58:25 | 25 | Q.   And how did you do that? |

220

| | | |
|---|---|---|
| 04:26:44 | 1 | e-mails, but I believe that we talked about |
| 04:26:46 | 2 | a co-ownership.  I think so. |
| 04:26:50 | 3 | Q.  Did ConnectU or anyone else give anything of |
| 04:26:52 | 4 | value to Mr. Mavinkurve for his agreement to |
| 04:26:55 | 5 | transfer his rights in the code to ConnectU? |
| 04:26:59 | 6 | A.  We -- no, we did not give any value to -- |
| 04:27:02 | 7 | anything of value with respect to that, no. |
| 04:27:07 | 8 | Q.  What -- when you communicated with Mr. |
| 04:27:10 | 9 | Mavinkurve about assigning his rights to |
| 04:27:13 | 10 | ConnectU, did you tell him why you wanted |
| 04:27:16 | 11 | him to do that? |
| 04:27:18 | 12 | MR. HORNICK:  Objection, assumes |
| 04:27:19 | 13 | facts not in evidence.  You can answer. |
| 04:27:21 | 14 | A.  I believe that when I sent an e-mail to him |
| 04:27:26 | 15 | stating that, you know -- regarding the |
| 04:27:30 | 16 | rights and whatnot, that -- as to why we |
| 04:27:39 | 17 | need the authorship, I believe I indicated |
| 04:27:41 | 18 | that we just needed to basically get our |
| 04:27:44 | 19 | ducks in a row.  This is our code, and we |
| 04:27:47 | 20 | need to formalize it. |
| 04:27:48 | 21 | Q.  So does Mr. Mavinkurve still have an |
| 04:27:55 | 22 | ownership interest in the code per your |
| 04:27:57 | 23 | understanding? |
| 04:27:58 | 24 | A.  Per my understanding, I believe he's able to |
| 04:28:00 | 25 | use it at will. |

295

| | | |
|---|---|---|
| 04:28:04 | 1 | Q.   Okay.  Does Mr. Gao still have any ownership |
| 04:28:07 | 2 | interest in the HarvardConnection code -- |
| 04:28:09 | 3 | A.   He does not. |
| 04:28:10 | 4 | Q.   -- per your understanding? |
| 04:28:11 | 5 | A.   He does not. |
| 04:28:12 | 6 | Q.   Did Mr. Gao assign his rights to the |
| 04:28:15 | 7 | HarvardConnection code -- |
| 04:28:17 | 8 | A.   Yes. |
| 04:28:17 | 9 | Q.   -- to ConnectU? |
| 04:28:18 | 10 | A.   Yes, he did. |
| 04:28:19 | 11 | Q.   When did he do that? |
| 04:28:20 | 12 | A.   Well, as I said, the moment we had a |
| 04:28:25 | 13 | development for hire, when he -- when I |
| 4:28:28 | 14 | hired him to write work and I paid him for |
| 04:28:30 | 15 | work, his contract was to write code for me. |
| 04:28:33 | 16 | So I own that code, okay?  When he wrote |
| 04:28:36 | 17 | that code over to me was July 2004, but I |
| 04:28:40 | 18 | effectively owned it the day he -- I paid |
| 04:28:43 | 19 | him for the code. |
| 04:28:45 | 20 | Q.   Okay. |
| 04:28:45 | 21 | A.   Does that make sense? |
| 04:28:47 | 22 | Q.   Other than the -- you think you paid him |
| 04:28:49 | 23 | about $200 altogether? |
| 04:28:51 | 24 | A.   Could have been more, up -- a little more |
| 04:28:55 | 25 | than that, I would say. |

296

04:28:56  1    Q.   How much?

04:28:56  2    A.   I would say maybe closer to $400.

04:28:59  3    Q.   Okay.  And you made those payments at or

04:29:02  4         near the time he was doing the coding,

04:29:04  5         correct?

04:29:04  6    A.   Yes.  It would have been right after

04:29:08  7         completion, yeah.

04:29:08  8    Q.   In July 2004 when Mr. Gao entered into some

04:29:15  9         further agreement with you or ConnectU

04:29:18  10        regarding the code, did he receive at that

04:29:20  11        time anything of value --

04:29:22  12   A.   No.

04:29:22  13   Q.   -- from you?

4:29:23   14   A.   No.

04:29:26  15   Q.   Did you have any communications with Mr. Gao

04:29:27  16        about why you wanted him to enter into this

04:29:31  17        agreement in July 2004?

04:29:32  18   A.   As I said before, this was actually really

04:29:36  19        an agreement that already had been entered

04:29:39  20        into.  It was more of a formalization.  His

04:29:41  21        signing over of copyright, I could have

04:29:44  22        given that to him -- the moment he wrote

04:29:45  23        code for me, it was my ownership.

04:29:48  24   Q.   Again, my question was, did you have any

04:29:50  25        communications with him regarding him

297

Page 403

1       In the United States District Court

2       For the District of Massachusetts

3           I, Jessica L. Williamson, Registered,

4       Merit Reporter, Certified Realtime Reporter

5       and Notary Public in and for the

6       Commonwealth of Massachusetts, do hereby

7       certify that CAMERON H. WINKLEVOSS, the

8       witness whose deposition is hereinbefore set

9       forth, was duly sworn by me and that such

10      deposition is a true record of the testimony

11      given by the witness.

12          I further certify that I am neither

13      related to or employed by any of the parties

14      in or counsel to this action, nor am I

15      financially interested in the outcome of

16      this action.

17          In witness whereof, I have hereunto set

18      my hand and seal this 11th day of August,

19      2005.

20

21

22      _____

23      Jessica L. Williamson, RMR, RPR, CRR

24      Notary Public, CSR No. 138795

25      My commission expires: 12/18/2009

G&M Court Reporters, Ltd.
617-338-0030