UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11923-DPW

CONNECTU LLC
    Plaintiff

v.

MARK ZUCKERBERG, et al
    Defendants

. . . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
HELD ON NOVEMBER 18, 2005

APPEARANCES:

For the plaintiff: John F. Hornick, Esquire, Jonathan M. Gelchinsky, Esquire, Margaret A. Esquenet, Esquire, Troy Grabow, Esquire, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 901 New York Avenue, N.W., Washington, DC 20001, (202) 408-4000.

For the defendants: Daniel K. Hampton, Esquire, Holland & Knight, LLP, 10 St. James Avenue, Boston, MA 02116, (617) 523-6850 and I. Need Chatterjee, Esquire, Robert D. Nagel, Esquire Orrick, Herrington & Sutcliffe, LLP, 4 Park Plaza, Suite 1600, Irvine, CA 02614-2558, (949) 567-6710.

Jeremy P. Oczek, Esquire, Proskauer Rose, LLP, One International Place, Boston, MA 02110, (617) 526-9600.

For defendant Eduardo Saverin: Daniel Hampton, Esquire, Holland & Knight, LLP, 10 St. James Avenue, Boston, MA 02116, (617) 523-2700 and Robert Hawk, Esquire, Heller Ehrman, LLP, 275 Middlefield Road, Menlo Park, CA 94025, (650) 324-7156.

Court Reporter:


Proceedings recorded by digital sound recording, transcript produced by transcription service.

---

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

34

1   MR. CHATTERJEE: No.

2   THE COURT: Okay. All right. Well, I, you know, if
3   it's not within your possession, custody or control, then it's
4   going to require another method of obtaining discovery.
5   Anything else you wanted to say on this.

6   MR. CHATTERJEE: Your Honor, as I've said, we've, all
7   places that Mr. Hornick is recommending--

8   THE COURT: I know, but if, they, if you don't object
9   except on the grounds of burden and it's not a burden to you,
10  and it's at their expense and you have all the protections, I
11  don't see a basis for denying it.

12  MR. CHATTERJEE: Your Honor, I'm fine with that with
13  respect to Mr. Zuckerberg. It's the other individual
14  defendants--

15  THE COURT: Well, I know the--

16  MR. CHATTERJEE: --that are not involved-

17  THE COURT: --this gentleman has a particular
18  problem, which I'll get to, but, do any of the other defendants
19  besides Saverin have a problem? You represent all of them,
20  except for him.

21  MR. CHATTERJEE: I represent all of them and, and
22  none of them were doing code development. That, that's their
23  issue. They don't, they, they haven't been involved in the
24  code at all. And they certainly don't--

25  THE COURT: Well, are there, there, I haven't looked

1   then come back and tell me if what they've done is less than
2   what you do and that you had some basis for saying if you were
3   allowed to do it, you're going to find something. So that,
4   that's the way I'm going to, I'm going to handle this
5   particular motion.
6           MR. HORNICK: Could I respond, Your Honor.
7           THE COURT: Sure.
8           MR. HORNICK: Just a couple of points. One is that
9   I'd be very interested to know if the defendants have made
10  images of any devices. If they haven't, I don't know how they
11  could have done what we want to do. Secondly, this approach
12  doesn't, will never allow us to find out whether this code was
13  deleted by one of the defendants, and third--
14          THE COURT: Well it will if they've done what you are
15  planning to do. He's indicated to me that they've gone through
16  the, and looked for among the deleted documents. But see
17  that's the reason, but you don't know exactly what they've
18  done, which is the reason I, I think before I make a ruling,
19  I'd like to have a more substantial record and have you know
20  exactly what they've done. And I'm, you know, I'm willing to
21  if, if this discovery reveals that these representations that
22  are made to me here, that they've done exactly what you would
23  have done are untrue, I'll shift, I'll do some, you know, some
24  cost shifting. But, you know, the way it works is that you
25  seek discovery from the other side. It's their obligation to

1  give it to you if it's relative to claim or defense of the
2  party. They say they've done it, and they've done exactly what
3  you would, your independent expert would do. And in the face
4  of that, I don't think that I am, the record is such that I can
5  order them over their objection to let you do mirror images of
6  their hard drives. But the server's a different question, the
7  server that they launched it from is a different question
8  because they haven't, I don't know what they've done to that,
9  but I don't' think they've made a mirror image of that, which
10 is the reason I'm going to let you go right ahead and do
11 discovery on that. But that's the, that's the reason for doing
12 it the way I'm doing it. Now, you find out exactly what
13 they're doing and if, if it turns out that these
14 representations that have been made to me, are, they're untrue,
15 that's obviously going to affect the next step.
16          MR. HORNICK: Your Honor, I'm going to assume that
17 privilege, attorney/client privilege and work product aren't
18 going to get in the way of this discovery.
19          THE COURT: Well, we haven't heard anything about
20 that yet. As I, as I--
21          MR. CHATTERJEE: I doubt that the individuals had
22 anything to do with this. This is all something that would
23 have been done by counsel with experts, and I can see a lot of
24 objections coming to the discovery that--
25          THE COURT: No, they, you can do discovery on what

1  you are willing to produce responsive documents prior to that
2  date.  How can they possibly be overbroad?
3      THE COURT:  Well, because I take it, because
4  according to what I'm hearing from the defendant is that since
5  that time the company has grown to such an extent that the
6  amount of documentation is so large that it would be burdensome
7  and it's not all relevant.
8      MR. HORNICK:  Well, Your Honor, we're only asking
9  them to apply the criteria of relevance that they applied when
10 they produced pre-May 21st documents, and as I said earlier in a
11 later brief, they admitted that we were right, that there is a
12 relatively small quantity of documents that they are
13 withholding that are responsive to these requests.  I've
14 pointed the Court before to their opposition to our motion to
15 compel documents.  At page six they say, "FaceBook defendants
16 are only withholding some financial documents and corporate
17 documents created after May 21, 2004."
18     THE COURT:  Well, yes, but that's just, that's just
19 the financial documents.  That doesn't, I mean, that does, is,
20 is that a statement as to the universe of documents--
21     MR. HORNICK:  If, if you read that--
22     THE COURT:  requested after May 21st?
23     MR. HORNICK:  Yes, if you read that paper, they were,
24 in context, they were talking about what they were withholding
25 as stated after May 21st, and they said we are only withholding

1  some financial and corporate documents created after May 21,
2  2004.  So we don't think the quantity is this large quantity
3  that they're talking about.  We think it's a relatively small
4  quantity, and we don't see why they can't produce them, because
5  they did not object to the relevance with respect to documents
6  before that date.
7           With respect to what we're looking for, well, Your
8  Honor, we don't know what they have.  They want us to tell us
9  what--
10          THE COURT:  Now hold on just a second.
11 Mr. Chatterjee, what about that point?  They're only
12 withholding a small number of documents after May 21st, 2004?
13          MR. CHATTERJEE:  That's just flat out wrong, Your
14 Honor.  Your understanding is that, that you articulated is
15 exactly what our point was, which was with respect to this
16 narrow category of financial information, a certain kind of
17 financial information, there are certain things that we've
18 withheld and I can talk about that if you want.  Those are
19 subjects of other motions.  But that is a very different issue
20 that in saying documents relating in any way to the development
21 of the FaceBook website.
22          THE COURT:  All right.  That's enough.  I've heard,
23 go ahead.  You wanted to, as to what we're looking for.
24          MR. HORNICK:  Yes, well, the reason that we have a
25 request that is basically asking for any documents that relate

1  to the lawsuit is because we don't know what they have and
2  what we can ask for. We have a lot of other document requests
3  and they have produced documents in response to some, and
4  they've promised to produce documents in response to others.
5  The ones where they promised, they withdrew the promise. We
6  have a separate motion pending. But this particular limited
7  set, they stood on their objection. We won't produce anything
8  created after May 21, 2004, and as a result, we don't have
9  things like email that these people exchanged after that date.
10 We don't have financial documents after that date, with few
11 exceptions. We don't have any corporate documents after that
12 date. We don't have any documents that relate to any efforts
13 that they might have made to cover up their wrongful acts after
14 that date. We don't have their communications with the media
15 after that date. And I don't know if Your Honor is aware of
16 this or not, but there are about five to 15 articles a day
17 published about the FaceBook.com. They are talking to the
18 media all the time. We don't have documents that talk about
19 how the FaceBook has grown since that date. All of this is
20 crucial for our, for our expert, but we don't want to name
21 particular categories and then have them say they object to
22 those because they don't understand them or they're holding
23 back things that we didn't simply ask for because they say oh,
24 it didn't technically fall within that category so, therefore,
25 we have some catchall requests that ask for any documents that