

901 New York Avenue, NW ■ Washington, DC 20001-4413 ■ 202.408.4000 ■ Fax 202.408.4400
www.finnegan.com

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

JOHN F. HORNICK
202.408.4076
john.hornick@finnegan.com

January 25, 2006

Robert D. Nagel, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

**VIA E-MAIL**

ConnectU LLC v. Zuckerberg, Facebook, Inc. et al.
Civil Action No. 1:04-CV-11923

Dear Robert:

On January 9, 2006 we received the CD bates numbered TFB000084, purporting to contain "the PHP and HTML source code recovered from the hard drive from Mark Zuckerberg's original computer he used at Harvard". On January 19, 2006, we received your objections to the subpoena served on January 5, 2006. This letter addresses each of these matters.

A.    **Objections to ConnectU LLC's Subpoena Duces Tecum of Facebook, Inc.**

We received your objections to the subpoena and note that it appears that we inadvertently marked the section regarding the production of documents. As your objection notes, our intention was to serve a Federal Rule of Civil Procedure 30(b)(6) notice of deposition and Rule 45 deposition subpoena upon Facebook and, separately, serve ConnectU LLC's Third Request for the Production of Documents and Things and Fourth Set of Interrogatories. We agree that under Fed. R. of Civ. P. 33 and 34, the documents and responses are due no later than February 7, 2006.

With respect to the production requests, in our January 6, 2006 email we asked you to let us know if it is your clients' position that they need not respond to such requests or produce the documents and things sought by such requests, as well as the basis for such position. Facebook did not clearly answer this question in its objections to the subpoena and Monte did not answer this question in his January 6, 2006 email. If this is your clients' position, we will want to schedule a discovery conference as soon as possible, as a prerequisite to filing a motion for contempt or seeking the Court's direct intervention. In view of the statement in Monte's January 6th email that "Defendants opposed only the unilateral demands that were not rooted in any existing Rule or Order of the Court -- not proper discovery mechanisms," we assume that Facebook

Robert D. Nagel, Esq.
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Defendants plan to respond substantively to such production requests and produce documents on or before February 7, 2006. We also asked in our January 6 email if your clients would agree to provide responses to the interrogatories and production requests, and produce the documents and things sought by such requests, in less than the thirty days allowed by the Fed. R. Civ. P. Monte's January 6th response said you would discuss our request and determine if some accommodation could be made, but we have not heard from you. Incidentally, we do not agree that Facebook Defendants have cooperated in this forensic discovery, and that the Rules and Order do not support our informal requests, but we'll save it for the judge.

Additionally, as you know, the deposition of Facebook is currently scheduled for February 8, 2006. Because Facebook Defendants have not agreed to produce documents and provide interrogatory answers substantially before that date and have not provided their position regarding producing the documents sought by ConnectU's third set of requests, we are rescheduling the deposition. Please let us know if you and the witness(es) will be available February 15, 16, or 17, 2006. Also, please identify the witness(es). We expect that such witness(es) will be fully prepared and capable of providing the testimony sought by the Rule 30(b)(6) notice and the Court's November 18 Order, consistent with the statements made by Judge Collings in court on November 18, 2005.

As permitted by the November 18, 2005 Order and Judge Collings' comments in court, we also wish to depose Mr. Zuckerberg, Mr. Moskovitz, and Mr. McCollum regarding the efforts they made to locate and recover the missing code and facemash online journal. Please provide some dates of availability.

**B.    CD Bates Numbered TFB000084**

Our review of the CD indicates that it does not contain the entirety of the image of "the hard drive from Mark Zuckerberg's original computer he used at Harvard." Rather, it contains data selectively copied from the image to the CD. Specifically, the CD contains files created in October 2003; February, April, May, and June of 2004; and January, February, March, April, and July of 2005. Missing from the data copied onto the CD are all files from November and December 2003 and January 2004, the time during which Mr. Zuckerberg allegedly worked on the Harvard Connection code and was working on thefacebook.com. Additionally, all files created from July 2004 to December 2004 are also missing. None of the files contained on the CD include any code written by Mr. Zuckerberg, even though Facebook Defendants represent that the CD contains "the PHP and HTML source code recovered from the hard drive from Mark Zuckerberg's original computer he used at Harvard." Facebook Defendants' opposition to ConnectU's motion to compel responses to Interrogatory Nos. 19-23 represents that such CD contains Facebook code but it does not.

Robert D. Nagel, Esq.
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

In light of these deficiencies, we must insist that the Facebook Defendants produce (1) the entire hard drive for imaging by a forensic expert, and (2) the image Facebook Defendants made of such hard drive (during the November 18 hearing, Neel said "we notified them yesterday. We think we've found some additional material. We're not sure what it is, and we're trying to take the forensic images and provide that information to them if it's responsive"; Trans. at 21). It is important that we obtain the hard drive and the images Facebook Defendants made of such device. An image of the hard drive (rather than limited data selectively copied to a CD, which is what you have given to us) would allow the expert, among other things, to:

(a)  confirm the existence of, and perhaps recover, deleted files;
(b)  ascertain directory creation dates (the data copied to the CD shows the date the directory was copied, not the date it was created);
(c)  ascertain file activity dates (the data copied to the CD shows only the last-modified date);
(d)  analyze computer and program activity dates (not available on the CD);
(e)  find authorized user identifications and related links (not available on the CD);
(f)  consider the original complete directory structure (rather than the directory structure chosen by the person who prepared the CD); and
(g)  determine the extent to which deleted data was overwritten through use of the device after Mr. Zuckerberg was placed on notice of ConnectU's claims.

The data contained on TFB000084 was copied on January 7, 2006 from an image of the hard drive made from "Mark Zuckerberg's original computer he used at Harvard." That image was made after the November 18, 2005 hearing. We also insist that Facebook Defendants produce the hard drives and other devices imaged before the November 18 hearing and the images they made before the hearing. During the hearing, the following exchange occurred:

> MR. CHATTERJEE: --some evidence simply may not exist anymore. We, we've looked thoroughly for it, and I'm not sure the Draconian relief of mirror imaging every single one of these systems is going--
> THE COURT: You're saying it would do no good because you've already done it, and you can't find it.
> MR. CHATTERJEE: Yes, Your Honor.
> THE COURT: That's your position.
> MR. CHATTERJEE: Yes, Your Honor.

Trans. at 22. Later:

> THE COURT: Hold on. Are, are you looking, is your search including a search for deleted documents that may be on the hard drive that an expert would have

Robert D. Nagel, Esq.
Page 4

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

> been able to retrieve?
> MR. CHATTERJEE: Your Honor, we've searched for, for code anywhere on these devices.
> THE COURT: Answer the question specifically.
> MR. CHATTERJEE: Yes.
> THE COURT: At, does your, has the search that you've conducted involve a search that would involve the search of deleted items that might be recovered?
> MR. CHATTERJEE: Yes, and it continues to this day.

Trans. at 24-25. Later:

> THE COURT: . . . do you object to them doing the mirror imaging of those computers in the manner and according to the protocol they've mentioned?
> MR. CHATTERJEE: Your Honor, we do object because there's no--
> THE COURT: On what basis do you object?
> MR. CHATTERJEE: --because, and argue, the law requires the have a, they have to give a showing of a particular likelihood of finding the materials, when, we, we've searched them and they're not.

Trans. at 39-40. The following exchange also points to Facebook Defendants' examination and imaging of other devices:

> THE COURT: Okay. Now when you say you searched, what have you done with respect to hard drives?
> MR. CHATTERJEE: We have, do you mean have we imaged them, is that your question? We--
> THE COURT: Have you looked for deleted items on them?
> MR. CHATTERJEE: Yes. We've, I mean obviously there's--
> THE COURT: Have you, have you done what they, if they got the mirror image, have you done what they're going to do?
> MR. CHATTERJEE: We've done some of it.

Trans. at 20-21. Neel also said:

> MR. CHATTERJEE: We, we've produced everything we've been able to find and we've searched fairly thoroughly of all, all the electronic devices we've been able to find to date,

Trans. at 21. The devices referred to by Neel in these passages must be different from the "hard drive from Mark Zuckerberg's original computer he used at Harvard," data from which is copied onto TFB000084. Neel said:

> The person at the fulcrum is Mark Zuckerberg and if, if we, we don't have the, the computer we, we are still looking for it, and we may find it, that he had during the

Robert D. Nagel, Esq.
Page 5

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

> relevant time period, that's the issue. But, if we wanted to image, for example, his hard drive and look for source code on that hard drive during any of the relevant time periods on his personal computer, that might be one thing we could do . . .

Trans. at 29. In fact, at least some of the devices to which Neel was referring were devices in the possession, custody, or control of Mr. Moskovitz, Mr. McCollum, and Mr. Hughes:

> THE COURT: Well I suppose as I, I should just put the question to you again, Mr. Chatterjee. Other than, as to the individual defendants that you represent, even though you indicate that you claim they don't have the codes on their hard drives, do you, do you object to them doing the mirror imaging of those computers in the manner and according to the protocol they've mentioned?
> MR. CHATTERJEE: Your Honor, we do object because there's no--
> THE COURT: On what basis do you object?
> MR. CHATTERJEE: --because, and argue, the law requires the have a, they have to give a showing of a particular likelihood of finding the materials, when, we, we've searched them and they're not.
>
> . . .
>
> THE COURT: Mr. Chatterjee basically represents to me that his client has done what you're going, what you propose to do with respect to the hard drives of the individuals that he represents and the, and the servers of the, any hard drives within his custody, control or possession of he or any of his clients.

(Trans. at 39-40)

Please let us know if and when Facebook Defendants will produce such devices and images.

Robert D. Nagel, Esq.
Page 6

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

We look forward to your response.

Sincerely,

FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER LLP

By: _____
John F. Hornick

JFH/MAE/sjb

cc: Monte M.F. Cooper, Esq.
　　Robert B. Hawk, Esq.
　　Joshua H. Walker, Esq.
　　Daniel K. Hampton, Esq.
　　Steven M. Bauer, Esq.
　　G. Hopkins Guy, III, Esq.
　　Gordon P. Katz, Esq.
　　Jeremy P. Oczek, Esq.
　　Bhanu K. Sadasivan, Esq.
　　Jonathan M. Gelchinsky, Esq.