**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC,<br><br>                    Plaintiff,<br><br>    v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>                 Defendants. | CIVIL ACTION NO. 1:04-cv-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG and FACEBOOK, INC.,<br><br>               Counterclaimants,<br><br>    v.<br><br>CONNECTU LLC,<br><br>               Counterdefendant,<br><br>    and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>      Additional Counterdefendants. | |

**PLAINTIFF'S REPLY TO FACEBOOK DEFENDANTS' OPPOSITION
TO CONNECTU'S MOTION TO COMPEL FACEBOOK
<u>DEFENDANTS' ANSWERS TO INTERROGATORY NOS. 19-23</u>**

I.    **Introduction**

Facebook Defendants' opposition brief implicitly acknowledges that Facebook Defendants have not answered the propounded interrogatories.  Arguing, incorrectly, that ConnectU's interrogatories are duplicative or covered by other pending motions, or allegedly are answered in correspondence between the parties, does not relieve Facebook Defendants of their duty to answer interrogatories fully and accurately.  These interrogatories seek crucial information regarding ConnectU's claims and damages.  Because Facebook Defendants understand the importance of this information to ConnectU's case, they refuse to participate in any meaningful discovery.  Facebook Defendants' unjustified refusal to provide legitimate discovery has forced ConnectU to file yet another motion to compel.  ConnectU simply shouldn't need to expend so much money and effort to obtain discovery.  It appears that only an order from this Court will compel Facebook Defendants to provide the discovery they should provide without a fight.

II.    **ConnectU's Motion Is Not Duplicative of Any Prior Pending Motion**

Facebook Defendants repeatedly assert that ConnectU's present motion raises issues mooted by discovery or re-argues issues already before the Court.  Although the pending motions obviously are interrelated, these assertions are simply untrue.  Consider, for example, the numbered paragraphs on page 1 of Facebook Defendants' Opposition to ConnectU LLC's Motion to Compel Answers to Interrogatory Nos. 19-23 ("Opp." at 1).

In paragraph (1), Facebook Defendants state that "Interrogatory Nos. 19 and 20 seek detailed disclosures relating to the *same* hard drives on which the Court already

2

ruled at the November 18, 2005 hearing" (emphasis in original).  The Court, however,

has not yet ruled on that motion.  Rather, the Court held the motion in abeyance while

allowing ConnectU to take discovery and develop the record regarding Facebook

Defendants' search for missing source code.  More importantly, however, the issue of

identification of hard drives was not a part of the "imaging" motion and therefore was not

before the Court during the November 18, 2005 hearing.

        In paragraph (2), Facebook Defendants claim that they have provided the names

of their server providers.  As detailed below, Facebook Defendants' response is

inadequate.

        In paragraph (3), Facebook Defendants argue that Interrogatory No. 22 asks for

information relating to trade secrets and refers the Court to two pending motions

(Docket Nos. 43, 63).  Facebook Defendants fail to note that the information sought by

Interrogatory 22 is different from the information covered by the pending motions.

        In paragraph (4), Facebook  Defendants claim that the information sought by

Interrogatory No. 23 (regarding Facebook's investors) is the subject of a pending

motion.  Although Interrogatory No. 23 deals with the same general subject matter of

other requests, such as Interrogatory No. 9, it seeks different information.  More

importantly, Facebook Defendants have not answered <u>any</u> discovery request seeking

investor information.  Facebook Defendants' reliance on other pending motions

therefore is misplaced.

### III.    ConnectU Complied with All Meet and Confer Requirements

        Facebook Defendants want ConnectU to wait until all of the pending motions are

decided before raising the issues presented in this motion.  (Opp. at 1.)  This course of

action fails on two levels.  First, the prior motions do not address the issues presented in the current motion. Second, waiting until the other motions are decided would prejudice ConnectU.  Indeed, had ConnectU waited, Facebook Defendants surely would have argued that the motion should have been filed more contemporaneously with the meet and confer efforts.  The proper course, and the course ConnectU has taken, is to seek the discovery to which it is entitled diligently and relentlessly, including requesting supplemental responses both in writing and in a meet and confer teleconference, and seeking the Court's help when all else fails.

Facebook Defendants argue that ConnectU short-circuited the Court's meet and confer requirements.  (Opp. at 4.)  In reality, it was Facebook Defendants who repeatedly stalled the meet and confer process and finally refused to respond fully to the disputed interrogatories.

To begin the meet and confer process, ConnectU wrote a detailed letter dated November 4, 2005, clearly communicating the inadequacy of Facebook Defendants' responses.  (Motion, Docket No. 122, Ex. 4.)  Facebook Defendants deflected ConnectU's requests for a discovery conference until November 16, 2005.  (Ex. 9.)  When Facebook Defendants finally met and conferred with ConnectU on November 16, 2005, ConnectU repeated its position.  Facebook Defendants did not respond until November 30, 2005, when they identified the specific production documents they had been referencing in their Responses to Interrogatory Nos. 21 and 23.  (Docket No. 127, Ex. 4.)  After ConnectU received and analyzed the letter and the production documents identified therein, ConnectU explained in its December 6, 2005 letter that the proffered documents did not answer Interrogatory Nos. 21 and 23 adequately and that counsel for

4

ConnectU could not find a complete answer to the interrogatories in the documents they identified.  (Docket No. 133, Ex. H.)

When Facebook Defendants finally supplemented their responses to Interrogatory Nos. 21 and 23 on December 9, 2005, they included the ***identical*** documents identified on November 30, which ConnectU expressly stated were inadequate on December 6, 2005.  (Motion, Docket No. 122, Ex. 5, filed under Seal.) ConnectU thereby clearly communicated its objections to both the original and supplemental interrogatory responses, despite Facebook Defendants' efforts to stall the meet and confer process.

Facebook Defendants did not supplement the other interrogatories (nos. 19-20 and 22), instead stating that "Facebook Defendants do not have additional responsive documents to produce at this time" and that "Facebook Defendants may continue to withhold related discovery subject to the Court's rulings."  (Motion, Docket No. 122, Ex. 1.)  Expecting no further information or documents from Facebook Defendants, and after over eight weeks of trying to resolve this discovery dispute without involving the Court, ConnectU considered the meet and confer process a dead end and shortly thereafter filed the present motion.

**IV.    Procedural Background**

   **A.    Facebook Defendants Have Blocked Discovery**

Facebook Defendants' claims of discovery compliance are far from accurate, their spinning of the facts more indicative of politicians than officers of the Court. Indeed, Facebook Defendants have blocked almost all of ConnectU's discovery efforts. If they had their way, ConnectU would get no discovery whatsoever, except information

Facebook Defendants deem helpful to their defense.  Facebook Defendants' ambiguous and inaccurate statements regarding the contents of their document production exemplify their refusal to cooperate.  They represented to the Court that they have produced "two different versions of Facebook's source code, plus a CD with additional Facebook code extracted from Mark Zuckerberg's recently located hard drive, that date all the way back to February 2004."  (Opp. at 2.)  Contrary to such representation, the two versions of the Facebook source code do not contain any Facebook or Zuckerberg code back to February 2004, and the CD produced on January 7, 2006 does not contain **any** Zuckerberg or Facebook code at all, regardless of the date.[1]

Similarly, Facebook Defendants' meager production of several dozen pages of post-May 21, 2004 financial documents is not a sign of reasonable compromise (Opp. at 2).  Rather, it establishes willful suppression of relevant evidence because Facebook Defendants refused to produce all other documents post-May 21, 2004, including documents that they admit to be relevant.  Indeed, documents generated after May 21, 2004 are precisely the documents that would contain information regarding Facebook Defendants' reaction to the launch of the ConnectU website, including any cover-up by Facebook Defendants of any misappropriation or infringement of the Harvard Connection code and ideas.

Facebook Defendants also argue that ConnectU has not identified its trade secrets with sufficient specificity.  This argument is without merit, and in any event is already the subject of another fully briefed motion.  (Docket No. 67.)

---

[1] Although Facebook Defendants have not corrected their misrepresentation to the Court, they produced another CD on February 3, 2006 after ConnectU informed them that such representations were incorrect.  ConnectU has not yet analyzed this CD.

**B.    The Current Discovery Dispute Goes to the Heart of the Matter**

Facebook Defendants claim the Court's November 18, 2005 Order held that Interrogatory Nos. 19 and 20 were overbroad.  (Opp. at 4.)  Facebook Defendants incorrectly interpret the Court's Order.  First, Interrogatory Nos. 19 and 20 were not before the Court during the hearing on the motion to compel imaging.  Moreover, the Court indicated that the imaging motion was to be held in abeyance pending ConnectU's discovery regarding Facebook Defendants' pre-hearing forensic search efforts.  Also incorrect is Facebook Defendants' assertion that Interrogatory Nos. 22 and 23 depend on the outcome of already pending motions.

**C.    ConnectU's Discovery Requests are Proper and Unambiguous**

Facebook Defendants argue that the parties' discovery disputes stem from ConnectU's alleged refusal to respond to the question: "What do you actually need?" (Opp. at 4.)  Facebook Defendants' position turns discovery on its head.  The Federal Rules allow for broad discovery because it is impossible for a party seeking discovery to know, *prior to discovery*, what information the other party actually has.  Facebook Defendants' proposed discovery standard puts ConnectU in the classic whipsaw:  When ConnectU serves narrow requests, Facebook Defendants say they do not have such information or documents and can withhold anything not specifically requested (preventing ConnectU from ever obtaining that information unless it happens to guess correctly and Facebook Defendants are in a benevolent mood).  But if ConnectU serves broad requests, Facebook Defendants say they are too broad and that ConnectU needs to tell them specifically what it  wants.  Because it is impossible to know what

information and documents Facebook Defendants may have, or how they may categorize their documents and other information, broad requests are necessary.

**V.    Arguments Regarding Specific Interrogatory Responses**

    **A.    Interrogatory Nos. 19-20 (Identification of Hard Drives and Memory Devices)**

Facebook Defendants fail to respond to many of the arguments in ConnectU's opening brief.  Most noticeably missing is any argument by Facebook Defendants that the documents they identified under Rule 33(d) provide a complete answer to this interrogatory.  They completely fail to address any of the arguments on pages 7-10 of the motion regarding TFB52-55.  ConnectU also pointed out the shortcomings of Facebook Defendants' identification of documents.  Facebook Defendants never even tried to argue that they have provided a responsive answer, or responded to any of the other arguments on pages 7-10 of ConnectU's Motion.

Interrogatory Nos. 19-20 do not seek the mirror imaging of any of the 600-800 electronic memory devices that Facebook Defendants say they possess.  Rather, ConnectU asked Facebook Defendants to identify their memory devices (including the location and custodian of each device).  These interrogatories merely ask Facebook Defendants to identify the universe of electronic memory devices that Facebook Defendants possess and on which they relied in their opposition to ConnectU's imaging motion (i.e., the 600-800 devices).  Only after the universe is properly identified can ConnectU figure out which devices are most relevant, where they are, when they were used, etc., and which ones need to be searched or imaged.

Facebook Defendants' arguments wrongly imply that these interrogatories relate only to finding the Harvard Connection code.  Although the Harvard Connection code is

a prominent issue, Facebook Defendants' memory devices are also relevant to finding

the missing facebook.com code, coursematch code, and facemash code.  With respect

to Harvard Connection code, Facebook Defendants admit that at least some of the

memory devices are relevant to finding this code.  (Opp. at 7-9.)  Despite admitting that

it is likely that the Harvard Connection code may be found on devices used in the first

few months after thefacebook.com launched (Opp. at 7-8), and that at least some such

devices "are within the proper scope of discovery" (Opp. at 8), Facebook Defendants

still refuse to identify the devices that were used in the first few months after

facebook.com's launch, thereby failing to cooperate even as to those memory devices

that they admit are relevant.  ConnectU is entitled to learn what and where these 600-

800 devices are.  At present, only Facebook Defendants know what devices it has,

where the devices are located, when they were used, and what information they are

likely to contain.  ConnectU needs this information for further discovery, such as the

Rule 30(b)(6) deposition ConnectU has noticed regarding Facebook Defendants'

alleged imaging of its own memory devices prior to the November 18, 2005 hearing.

Although not all memory devices may turn out to be relevant, a complete identification

of the memory devices possessed by Facebook Defendants would allow ConnectU  to

determine which are most likely to contain relevant data.  Importantly, Facebook

Defendants mention that some of their memory devices are "no longer in use" (Opp. at

8).  Such devices could be highly relevant.

Facebook Defendants imply that their offer of rolling discovery (made after the

November 18, 2005 hearing) would somehow affect the current motion.[2]  Rather than

---

[2]  This "offer" was not made immediately after the hearing in person, but was later made
in writing.  The statement in the Nagel Affidavit at paragraph 3 therefore is not correct.  The

diverging from the discovery that the Court ordered, ConnectU has been pushing
Facebook Defendants to follow the procedure ordered by the Court and conduct
discovery on the memory device searching and imaging Facebook Defendants
represented they did before the November 18, 2005 hearing.  The present motion for
identification of Facebook Defendants' memory devices is entirely consistent with taking
the court-ordered discovery regarding the steps Facebook Defendants allegedly took to
search their computers for missing or deleted code and other relevant information.
Regardless of whether imaging is on a rolling basis or on some other basis,
identification of Facebook Defendants' memory devices is necessary to carry out the
Court's Order and the discovery that it authorized.  ConnectU needs responses to
Interrogatory Nos. 19 and 20 so that it can determine, systematically and reliably, which
memory devices Facebook Defendants have, which ones they have imaged (as they
represented at the November 18, 2005 hearing[3]), which ones still need to be searched
or imaged, and which ones are probably irrelevant.[4]

---

conversation after the hearing concerned scheduling a deposition pursuant to the Court hearing
and did not include any discussion of conducting imaging on a rolling basis.

   [3] At the November 18, 2005 hearing Facebook Defendants made the following
representations, among others:

> MR. CHATTERJEE:  --some evidence simply may not exist anymore.  We, we've looked
> thoroughly for it, and I'm not sure the Draconian relief of mirror imaging every single one
> of these systems is going--
> THE COURT:  You're saying it would do no good because you've already done it, and
> you can't find it.
> MR. CHATTERJEE:  Yes, Your Honor.
> THE COURT:  That's your position.
> MR. CHATTERJEE:  Yes, Your Honor.

(Ex. 10, Hearing Tr. at 22.)

> THE COURT:  Hold on.  Are, are you looking, is your search including a search for
> deleted documents that may be on the hard drive that an expert would have been able to
> retrieve?

For the reasons set forth above and in ConnectU's opening brief, the Court should order Facebook Defendants to provide complete written responses to Interrogatory Nos. 19 and 20.  That Facebook Defendants argued that they have 600-800 devices was their own doing, and a smokescreen to avoid the imaging of any of

---

MR. CHATTERJEE:  Your Honor, we've searched for, for code anywhere on these devices.

THE COURT:  Answer the question specifically.

MR. CHATTERJEE:  Yes.

THE COURT:  At, does your, has the search that you've conducted involve a search that would involve the search of deleted items that might be recovered?

MR. CHATTERJEE:  Yes, and it continues to this day.

(Tr. at 24-25.)

THE COURT:  . . . do you object to them doing the mirror imaging of those computers in the manner and according to the protocol they've mentioned?

MR. CHATTERJEE:  Your Honor, we do object because there's no--

THE COURT:  On what basis do you object?

MR. CHATTERJEE:  --because, and argue, the law requires the have a, they have to give a showing of a particular likelihood of finding the materials, when, we, we've searched them and they're not.

(Tr. at 39-40.)

THE COURT:  Okay.  Now when you say you searched, what have you done with respect to hard drives?

MR. CHATTERJEE:  We have, do you mean have we imaged them, is that your question?  We--

THE COURT:  Have you looked for deleted items on them?

MR. CHATTERJEE:  Yes.  We've, I mean obviously there's--

THE COURT:  Have you, have you done what they, if they got the mirror image, have you done what they're going to do?

MR. CHATTERJEE:  We've done some of it.

(Tr. at 20-21.)

MR. CHATTERJEE:  We, we've produced everything we've been able to find and we've searched fairly thoroughly of all, all the electronic devices we've been able to find to date,

(Tr. at 21.)

[4] As ConnectU argued at the November 18, 2005 hearing, many of Facebook Defendants' devices may be irrelevant (Ex. 10, Tr. at 15-16 and 18), such as the 500 devices identified in the document Facebook Defendants have designated as their only answer to this interrogatory (Docket No. 122, Ex. 1 and 2, both filed under Seal), which were acquired by Facebook Defendants in a single shipment in July 2005, more than 17 months after the facebook.com website launched.

11

them.  ConnectU needs them identified so it can do what Facebook Defendants should have done long ago:  identify the relevant devices and determine if they contain relevant code.

**B.    Interrogatory No. 21 (website hosting and other services)**

Facebook Defendants' response to Interrogatory No. 21 does not properly identify persons or services, as required by Local Rule 26.5(c) and the definitions set forth in ConnectU's Second Set of Interrogatories.  Their terse phrases do not adequately describe the services that each company performed and when they performed such services.  Nor is the level of detail sufficient for ConnectU to seek third party discovery from the entities listed in the response.

Moreover, the information provided in Facebook Defendants' response cannot be accurate in light of the facts regarding its web hosting services.  For example, in the motion to compel imaging, ConnectU set forth evidence from news reports that facebook.com was originally running on a single server at launch, and then ran on five servers by March 31, 2004, then moved to a server hosting service near Mr. Zuckerberg's hometown on April 14, 2004.  (Docket No. 38, at 12.)  This information is consistent with the quote of ConnectU's counsel on page 7 of the opposition to the present motion.  (Opp. at 7.)  Yet Facebook Defendants' response does not even provide date ranges for any of the server companies.  Facebook Defendants' response should be consistent with the facts.

Facebook Defendants' supplemental response is inadequate for additional reasons.  First, by their own admission, Facebook Defendants supplemented their responses on December 9, but failed to supplement to include all of the third parties

they had identified in other correspondence required by the Court.  For example, in

Facebook's December 1, 2005 letter, they identified Managed.com and Savvy Networks

as entities that provided servers and web hosting services for Facebook.  (Motion,

Docket No. 122, Ex. 7.)  But these companies are not listed in the interrogatory

response.  A company called Managed Solutions Group, Inc. was listed in the response,

but it is not clear if this is the same company as Managed.com.  Savvy Networks was

never listed in the response.  Nor are these companies properly identified in the

supplemental response, which only listed document bates numbers.  Moreover,

Facebook Defendants' December 1, 2005 letter is inconsistent with media accounts.

The letter identifies two providers, one of which provided services from the launch of

thefacebook.com website in February 2004 to September 2004, and the other of which

provided services from May 2004 to September 2004.   By comparison, the media

reported that facebook.com was originally running on a single server at launch, and

then ran on five servers by March 31, 2004, then moved to a server hosting service

near Mr. Zuckerberg's hometown on April 14, 2004.  (Docket No. 38, at 12.)  Facebook

Defendants are believed to have changed server providers again at a later date.

　　Additionally, on November 30, 2005,  Facebook Defendants identified the

documents they planned to identify in their supplemental response.  ConnectU promptly

objected on December 6, 2005 (Ex. H of Opposition), informing Facebook Defendants

that the documents identified do not answer Interrogatory No. 21 adequately, and that

ConnectU could not find a complete answer to the interrogatory in the documents

Facebook Defendants identified.  ConnectU therefore insisted that Facebook

Defendants provide a complete written answer.  *See*, *e.g.*, *Petroleum Ins. Agency Inc. v.*

*Hartford Accident & Indemnity Co.*, 111 F.R.D. 318, 320 (D. Mass. 1983) (if responding party cannot point to place in record where answer is found, the responding party must provide the answer in the form of a written answer to the interrogatory).  Facebook Defendants refused and merely "supplemented" their response to include only the documents already listed in the December 6, 2005 letter.

For the reasons set forth above and in ConnectU's opening brief, the Court should order Facebook Defendants to provide a complete written response to Interrogatory No. 21.

      **C.**          **Interrogatory No. 22 (third party websites or other public domain sources that contained elements identified in response to Defendants' Interrogatory No. 2)**

Facebook Defendants do not contest that their only response to this Interrogatory was a reference to their pending motion to compel (Docket No. 63).  Nor do they argue that a reference to a motion to compel is in compliance with the Federal Rules of Civil Procedure, because it is not.  If Facebook Defendants are wrong and ConnectU's trade secret identification is sufficient, they have offered no arguments for not answering this interrogatory.

Their motion to compel is distinct from the issue here:  whether Facebook Defendants must provide a complete list of third party sites and sources that were known to them prior to facebook.com's launch, and on which they will rely to support their defenses.  Facebook Defendants cannot assert that such third party sources exist, as they did to support their motion to compel, and then refuse to identify such sources in a proper interrogatory answer.  ConnectU is entitled to discovery related to such third

party sites and sources -- if any do exist.  If such sources do not exist, Facebook Defendants should be ordered to say so.

Facebook Defendants incorrectly argue that ConnectU's trade secret designation is "an empty placeholder." (Opp. at 12.)  By refusing to answer the interrogatory, Facebook Defendants display the weakness of their argument.  By not responding, Facebook Defendants imply that they are not aware of any third party sources that have any of the elements of ConnectU's trade secret combination identified in response to Facebook Defendants' Interrogatory No. 2.  This admission should be made explicit in a response to Interrogatory No. 22.

Facebook Defendants assert an incomprehensible rationale for refusing to answer, namely, that if they respond to ConnectU's interrogatory they will be changing the position taken in their motion to compel trade secret identification.  This simply doesn't follow.  Quite to the contrary, if Facebook Defendants can answer the interrogatory (i.e., if they identify third party sources that contained any of the elements identified in response to Defendants' Interrogatory No. 2 prior to February 4, 2004), the Court could -- in theory -- still grant their motion.  In other words, identifying third party sources of the elements of ConnectU's trade secret combination is not inconsistent with Facebook Defendants' argument that such combination is not sufficiently defined.  However, if they cannot answer the interrogatory, their motion should be denied because ConnectU's trade secret combination obviously is sufficient because it has no identifiable precedent.

ConnectU is not asking Facebook Defendants to define what ConnectU's trade secrets are -- ConnectU has already done this.  (Docket No. 78, including Ex. 2 thereof.)

Rather, ConnectU is asking Facebook to provide the information they used to support their motion, which means they can provide an answer without compromising their position.  On the other hand, Facebook Defendants' position is compromised if they do not provide an answer.

For the reasons set forth above and in ConnectU's opening brief, the Court should order Facebook Defendants to provide a complete written response to Interrogatory No. 22.

### D.    Interrogatory No. 23 (investments and investors)

This interrogatory requests information regarding investors and investments in Facebook, Inc. or the facebook.com website.  Facebook Defendants' objections confirm their outright refusal to provide discovery obviously relevant to ConnectU's damages.

Facebook Defendants' initial objection -- that the interrogatory is compound -- is completely unsupported and does not withstand scrutiny.  What Facebook Defendants identify as completely separate interrogatories are clearly logical extensions of the main question: the identification of investments and investors, and, among other things, the value of Facebook, Inc. estimated by or for each investor.  For example, Facebook Defendants identify the question "state the basis for asserting such value" as being **not** a logical extension of the main question to identify the value.  Stating the basis for calculating a monetary figure is clearly a logical extension of a question asking to identify the monetary figure, and Local Rule 26.5(c)(8) defines "state the basis" as requiring the responding party to, among other things: identify the documents and communications which form the source of the party's information regarding the facts or legal conclusions referred to by the interrogatory; and state and identify the nature, time

and place of the acts, and persons involved in the acts, which form the party's
information regarding the facts or legal conclusions.  If a request for the basis for a
calculation is not a logical extension of a basic interrogatory, how could any subpart not
count as a separate interrogatory?  Moreover, Facebook Defendants offer absolutely no
analysis to support their argument that this interrogatory "contains at least five different
interrogatories."[5]

Facebook Defendants posture as though they have been cooperative, but their
interrogatory response on its face does not include even the most basic information
about the two entities they listed as allegedly "significant holders" of stock.  Nor do their
reference to 20 pages of outdated documents provide an answer to the interrogatory.
These selectively produced documents only contain 18 pages of pre-May 21, 2004
internal emails that do not identify any actual investors, and a two-page cash flow
statement of questionable relevance to the value of the company as a whole.  None of
these documents appears to relate to the two investors that Facebook Defendants
mentioned in their supplemental response, who invested in April 2005 (Docket No. 38,
Ex. 9, 10), nor do these selective pages indicate the amounts that any such investors
have invested.

Contrary to Facebook Defendants' argument, the interrogatory does not seek
incredibly detailed information and is reasonable in scope.  The interrogatory only asks
for the identity of investors, investments, value, ownership interests, and documents

---

[5] Even if requesting facts and the identification of documents evidencing such facts are
two different interrogatories, as Facebook Defendants argue but ConnectU does not concede,
ConnectU has asked only 25 interrogatories.  ConnectU and Facebook Defendants agreed that
the two interrogatories ConnectU propounded about Facebook Defendants' alleged memory
device imaging would not count toward the interrogatory limit.  (Docket No. 122, Ex. 7, at 2.)

17

relating thereto.  This information is clearly relevant.  Information is relevant, for discovery purposes, if it "bears on, or … reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case."  *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).  As the Court expressed during the November 18, 2005 hearing, the scope of discovery is broad.  (Ex. 10, Tr. at 41-42).  The burden of showing the requested discovery is not relevant to the issues in this litigation is clearly on Facebook Defendants.  *Spell v. McDaniel*, 591 F. Supp. 1090, 1114 (E.D.N.C. 1984).

ConnectU went into great detail in the motion and the meet and confer letters regarding the relevance of such information, which cannot be contested, since ConnectU will be required to prove damages resulting from its claims.  It is difficult to imagine anything more relevant to the determination of damages than the valuation of Facebook, Inc. performed by Accel Partners and Mr. Breyer prior to their investment. One aspect of ConnectU's damages would be Facebook Defendants' profits or gains; another would be Facebook Inc.'s value.  This interrogatory is directed to the latter.

Facebook Defendants provide no support for their argument that ConnectU must accept a net value amount that Facebook Defendants might provide (but have thus far not provided).  Even if such a net valuation was sufficient, the requested information is critical to test any net value calculation Facebook Defendants may eventually provide.

Facebook Defendants also argue that there is no reason to provide current information.  This is ridiculous.  ConnectU's damages here have grown exponentially with facebook.com's exponential growth.  To calculate its damages, ConnectU needs answers regarding the current value of Facebook, Inc. and its growth.

Facebook Defendants also offer a new objection -- that producing this information would cause damage to Facebook's investor relationships -- and that therefore that "a stricter, more tailored standard of relevance [should] be applied." (Opp. at 16.)  Facebook Defendants cite no case law for such a standard of relevance. Facebook Defendants' unsupported argument that Facebook, Inc.'s investors allegedly want their investments (or details thereof) to be secret is not a proper basis for resisting discovery, particularly where, as here, the Court has entered a Stipulated Protective Order.  Facebook Defendants' argument that such Order is insufficient is wrong, particularly because documents marked as "confidential" are limited to review by outside counsel and experts and would never be seen by any "competitor."

Facebook Defendants offer another novel objection, introduced for the first time in its opposition brief, that disclosing its investors would somehow constitute trade secret discovery that is the subject of the Facebook Defendants' motion for protective order and motion to compel (Docket Nos. 43 and 63).  Facebook Defendants offer no proof that providing information regarding  Facebook's investors would reveal any trade secrets of Facebook Defendants.  Even if this argument were true, ConnectU's discovery on damages is relevant to all claims, not just the trade secret claim, and the Stipulated Protective Order protects Facebook Defendants' trade secrets.

Facebook Defendants also argue that ConnectU will see Facebook's presentations to investors, and somehow tailor its trade secret allegations to match them.  This argument makes no sense.  How can ConnectU supplement its trade secret identification with information from Facebook Defendants' investor information? ConnectU has already identified its trade secrets and says the identification is complete.

Surely Facebook Defendants are not arguing that ConnectU would be allowed to supplement its trade secret identification with information from Facebook Defendants' response to this interrogatory.

For the reasons set forth above and in ConnectU's opening brief, the Court should order Facebook Defendants to provide a complete written response to Interrogatory No. 23.

## IV.    <u>Conclusion</u>

For the reasons set forth in ConnectU's opening brief and in this reply, ConnectU urges the Court to grant its motion to compel Facebook Defendants to provide complete answers to Interrogatory Nos. 19-23.

DATED:  February 7, 2006

/s/ Troy E. Grabow
Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA  02142
Telephone:  (617) 452-1600
Facsimile:   (617) 452-1666
larry.robins@finnegan.com
jon.gelchinsky@finnegan.com

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Troy E. Grabow (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Plaintiff and Counterclaim Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on February 7, 2006.