# EXHIBIT 10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Civil Action No. 04-11923-DPW

**CONNECTU LLC**
    Plaintiff

v.

**MARK ZUCKERBERG, et al**
    Defendants

. . . . . . . . . . . . . . . .

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE ROBERT B. COLLINGS
UNITED STATES MAGISTRATE JUDGE
HELD ON NOVEMBER 18, 2005

APPEARANCES:

For the plaintiff: John F. Hornick, Esquire, Jonathan M. Gelchinsky, Esquire, Margaret A. Esquenet, Esquire, Troy Grabow, Esquire, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, 901 New York Avenue, N.W., Washington, DC 20001, (202) 408-4000.

For the defendants: Daniel K. Hampton, Esquire, Holland & Knight, LLP, 10 St. James Avenue, Boston, MA 02116, (617) 523-6850 and I. Need Chatterjee, Esquire, Robert D. Nagel, Esquire Orrick, Herrington & Sutcliffe, LLP, 4 Park Plaza, Suite 1600, Irvine, CA 02614-2558, (949) 567-6710.

Jeremy P. Oczek, Esquire, Proskauer Rose, LLP, One International Place, Boston, MA 02110, (617) 526-9600.

For defendant Eduardo Saverin: Daniel Hampton, Esquire, Holland & Knight, LLP, 10 St. James Avenue, Boston, MA 02116, (617) 523-2700 and Robert Hawk, Esquire, Heller Ehrman, LLP, 275 Middlefield Road, Menlo Park, CA 94025, (650) 324-7156.

Court Reporter:

Proceedings recorded by digital sound recording, transcript produced by transcription service.

---

*MARYANN V. YOUNG*
Certified Court Transcriber
240 Chestnut Street
Wrentham, Massachusetts 02093
(508) 384-2003

1 get them?

2        MR. HORNICK: Well, we hadn't, we, in, in response to
3 this motion the defendants put in a declaration saying there
4 were 600 to 800 memory devices plus computers. And so we
5 served an interrogatory, identify them. Well, we got was a
6 printout that identified serial numbers for 500 of something,
7 we don't know what. We don't know what the date of it was or
8 anything. We don't know what it was 500 of. So we've been
9 meeting and conferring to try to get an identification as that
10 word is defined in the local rules of what memory devices they
11 have. But you see, although we want to get that, and I think
12 we're entitled to get that information in response to an
13 interrogatory, we believe we can find the code by taking a more
14 surgical approach to particular memory devices. We can't
15 identify them with specificity because we haven't been given
16 that information, but I can certainly say that we'd like to
17 image whatever memory devices were being used up to the time of
18 launch and at the time of launch, and then after the time of
19 launch, assuming we don't find what we're looking for in there,
20 we'd want to look at the servers that were used for the
21 FaceBook after launch. At the time of launch it was launched
22 at one server at a server company. Server companies back up.
23 They have to back up. They'd have huge liability if they
24 don't. And in addition to that, the defendants were on notice
25 of these claims six days after launch, so they certainly should

1  have informed their server companies to maintain whatever they
2  had.  They should have maintained whatever they had in their
3  own possession.  Now within two months after launch, the
4  FaceBook was on five servers, so if we can't find what we need
5  on those original, that original one server, we go to the five.
6  On April 14th of 2004, it was moved to a different server.  If
7  we can't find what we need in the earlier things, we go to that
8  one.  And then after that, we can simply look at whatever
9  servers are used to run the FaceBook in various colleges, and
10 I'd start with Harvard.  So we don't need 600 memory devices.
11 We don't even need to take them offline to do this.  All we
12 need is to get access to their personal hard drives and other
13 devices, the server companies they no longer use, so there's no
14 burden there--
15         THE COURT:  What's this there's, and I'm not, I will
16 tell you right up front that I'm not someone who's
17 technologically expert, what is the distinction between a
18 server and hard drive?
19         MR. HORNICK:  Yes, well, in some sense there isn't a
20 big distinction, you Honor, but basically what happens is if
21 you were to create a website, if you would, and you did it on
22 your computer, it would be stored on the hard drive on your
23 computer.  You might back it up to some other memory device,
24 like a disk maybe, or one of those little drives that plugs
25 into the back of the computer.  You might also back it up to

18

1   some third party server. He uploads it to that server. The
2   server then runs it, runs the website. They no longer use that
3   server, so you'd want to go that one, image it and it's not
4   going to be any burden to, I mean, they don't have to take down
5   the business to do that. And then at some point in time, they
6   moved to another server. So what I'm saying is that if we
7   start with the personal computers and the server on the date of
8   launch, we may find what we need and we might not have to go
9   any farther.
10           THE COURT: Okay. We may hear from the defendant.
11           MR. CHATTERJEE: Your Honor, it just, it seems to me
12  that this is a very focused issue they want to get certain
13  code. We've searched for it. We have--
14           THE COURT: How have you searched for it? Tell me
15  what you've done.
16           MR. CHATTERJEE: We, we, we have actually gone to the
17  facilities. We've actually gone to Marc Zuckerberg, the
18  founder of FaceBook and really the person with the fulcrum of
19  this case. We've gone to his home and we've actually
20  physically searched his home without, without him participating
21  and we've gone--
22           THE COURT: Now, how have you searched his home?
23           MR. CHATTERJEE: We've actually gone through, you
24  know, all of his, you know, his room where he keeps all of his
25  electronic equipment. We've gone through the, the other people

*YOUNG TRANSCRIPTION SERIVCES*
**(508) 384-2003**

1            MR. CHATTERJEE:  Your Honor, I, I think there's one
2   refinement on that.  It's, when you say the source code--
3            THE COURT:  Or source codes.
4            MR. CHATTERJEE:  Right, the, I, I think after a
5   certain point in time, the source codes totally change and
6   there's really no, no need or relevance for that, but, however,
7   during the relevant time period, the pre-launch--
8            THE COURT:  Is there a dispute as to the relevant
9   time period?
10           MR. CHATTERJEE:  I think there is, Your Honor.  That,
11  that's actually the second part.
12           THE COURT:  What do you say the, oh, that's the, the
13  May 21, 2004 issue?
14           MR. CHATTERJEE:  Yes, Your Honor, although we have
15  produced the source codes.
16           THE COURT:  Okay.  Now when you say you searched,
17  what have you done with respect to hard drives?
18           MR. CHATTERJEE:  We have, do you mean have we imaged
19  them, is that your question?  We--
20           THE COURT:  Have you looked for deleted items on
21  them?
22           MR. CHATTERJEE:  Yes.  We've, I mean obviously
23  there's--
24           THE COURT:  Have you, have you done what they, if
25  they got the mirror image, have you done what they're going to

1  do?

2         MR. CHATTERJEE: We've done some of it. We're trying
3  to do some more of it because, we notified them yesterday. We
4  think we've found some additional material. We're not sure
5  what it is, and we're trying to take the forensic images and
6  provide that information to them if it's responsive.

7         THE COURT: Well, it seems to me that the way, the
8  way things work is that the plaintiff makes a request for
9  evidence that's relevant to the claims and defenses of either
10 party of which they're entitled to under the rules. If they've
11 requested this stuff and you have not objected to it, then it
12 seems to me it's your burden to produce it. And I normally
13 would not go to allowing one party to have a mirror image of
14 another party's computer unless I was, unless I had some reason
15 to believe number one that it wasn't being, that, you know,
16 that the defendant wasn't doing it to the extent that they were
17 obligated to do it under the federal rules, or there was some
18 sort of chicanery involved, and I think that's, that's where we
19 are on, on this particular things.

20        MR. CHATTERJEE: We, we've produced everything we've
21 been able to find and we've searched fairly thoroughly of all,
22 all the electronic devices we've been able to find to date, and
23 we continue to do that. So, Your Honor, I mean, we've produced
24 the code that we've been able to find. Now what the plaintiff
25 wants to find, is they want to find the Harvard connection

```
 1  code--
 2          THE COURT:  Right.
 3          MR. CHATTERJEE:  --on these laptops.  It isn't there.
 4  They may not be happy about that, but that's a truism.  They
 5  want to find Harvard connection code copied into the FaceBook
 6  code that that we produced.  That isn't there.  They're not
 7  happy about that.  We've, there are some pieces of
 8  information--
 9          THE COURT:  Well, they're not convinced it's not
10  there.  That, that's the issue.
11          MR. CHATTERJEE:  Right, and Your Honor, we searched
12  and, and--
13          THE COURT:  Right.
14          MR. CHATTERJEE:  --some evidence simply may not exist
15  anymore.  We, we've looked thoroughly for it, and I'm not sure
16  the Draconian relief of mirror imaging every single one of
17  these systems is going--
18          THE COURT:  You're saying it would do no good because
19  you've already done it, and you can't find it.
20          MR. CHATTERJEE:  Yes, Your Honor.
21          THE COURT:  That's your position.
22          MR. CHATTERJEE:  Yes, Your Honor.
23          THE COURT:  All right.
24          MR. HAMPTON:  Your Honor, if I might be heard
25  briefly--
```

1   we are on that issue now, but as I just heard his proposal
2   today, he would still propose that we provide the image of Mr.
3   Saverin's individual hard drive, and there's no record evidence
4   whatsoever that that is reasonably calculated to lead to
5   anything that's relevant in the case, particularly the source
6   code that they claim is really what they're after here.
7           MR. HORNICK:  Your Honor, if I might?
8           THE COURT:  Go ahead.
9           MR. HORNICK:  There's a very important reason to do
10  imaging other than what we've heard.  They say, and this is the
11  first we've heard that they've made these steps, there's a lot
12  of unexplained things about the background of this code, but
13  there's a very important reason to do imaging other than to
14  find the code and that's to find if it was deleted, for example
15  after claims were asserted in this case.  That's something
16  that, that an expert would look for.  Five years ago, ten years
17  ago--
18          THE COURT:  Wait a minute, hold on.
19          MR. HORNICK:  Yes.
20          THE COURT:  Hold on.  Are, are you looking, is your
21  search including a search for deleted documents that may be on
22  the hard drive that an expert would have been able to retrieve?
23          MR. CHATTERJEE:  Your Honor, we've searched for, for
24  code anywhere on these devices.
25          THE COURT:  Answer the question specifically.

1    MR. CHATTERJEE: Yes.

2    THE COURT: At, does your, has the search that you've
3 conducted involve a search that would involve the search of
4 deleted items that might be recovered?

5    MR. CHATTERJEE: Yes, and it continues to this day.

6    THE COURT: Continue, Mr. Hornick.

7    MR. HORNICK: So the issue is not just whether the
8 information might have been deleted, but when it was deleted
9 and in what situation, what concept.

10   THE COURT: Well, if they can't find the deleted
11 items, how are they going to find when it was deleted?

12   MR. HORNICK: Well an expert may be able to confirm
13 those things. Five years ago, ten years ago, imaging hard
14 drives was unusual. But today--

15   THE COURT: I know.

16   MR. HORNICK: --it has become very common.

17   THE COURT: I know, but it's uncommon for one side in
18 a dispute to get a mirror image of another side's computer.
19 That is not the usual way the things are done in litigation.
20 That, that, that's an extraordinary remedy which is the reason
21 that I'm trying to assess the need, your asserted need and what
22 their position is.

23   MR. HORNCICK: Well, Your Honor, I would say that
24 although that it is unusual that it may not happen on the every
25 day course, but it is not so drastic because all it is is the

1           THE COURT: I know, what, on what basis was the
2 basis for its refusal?
3           MR. HORNICK: I don't recall specifically at the
4 moment, Your Honor. There were, there was more than plain
5 objections to all of these requests and that one, I believe was
6 104, 103, something like that.
7           MR. CHATTERJEE: Your Honor, they asked us to
8 identify the, the web hosting services and we did. We listed
9 Equinex right here in the interrogatory response. They didn't
10 ask for the dates of particular usage, but we can provide them.
11 I mean I don't have an issue with providing them with the
12 earliest server company we worked with.
13           THE COURT: Well I suppose as I, I should just put
14 the question to you again, Mr. Chatterjee. Other than, as to
15 the individual defendants that you represent, even though you
16 indicate that you claim they don't have the codes on their hard
17 drives, do you, do you object to them doing the mirror imaging
18 of those computers in the manner and according to the protocol
19 they've mentioned?
20           MR. CHATTERJEE: Your Honor, we do object because
21 there's no--
22           THE COURT: On what basis do you object?
23           MR. CHATTERJEE: --because, and argue, the law
24 requires the have a, they have to give a showing of a
25 particular likelihood of finding the materials, when, we, we've

1   searched them and they're not.

2   THE COURT: All right. This is what I'm going to do.
3   First of all, you can, I, I want the defendants to turn over to
4   the plaintiffs the who information with respect to this outfit
5   that evidently was the one that they uploaded the codes on in
6   order to launch the thing and that you can go ahead and take
7   discovery with respect to that organization. I will also allow
8   the plaintiff to take discovery as to, and you may, I don't
9   know if you want to wait on this or not, but you may take
10  discovery as to what the defendants have done to look for these
11  codes. I mean it seems to me that, that even though it is
12  somewhat simple and it is a situation where, you know, the
13  basic rule that the producing party has the obligation to find
14  this stuff and turn it over if it's relevant and we're not
15  hearing anything like you know, the *Zubalight* (ph) case where
16  there, it is an undue burden to look at this stuff and find
17  this stuff. Mr. Chatterjee basically represents to me that his
18  client has done what you're going, what you propose to do with
19  respect to the hard drives of the individuals that he
20  represents and the, and the servers of the, any hard drives
21  within his custody, control or possession of he or any of his
22  clients. And upon that representation, I'm not sure you're
23  entitled to an order of the Court that you get, be able to
24  mirror image this. But I think you're entitled to do
25  discovery, to, you know, find out exactly what they've done and

1    then come back and tell me if what they've done is less than
2    what you do and that you had some basis for saying if you were
3    allowed to do it, you're going to find something. So that,
4    that's the way I'm going to, I'm going to handle this
5    particular motion.
6             MR. HORNICK: Could I respond, Your Honor.
7             THE COURT: Sure.
8             MR. HORNICK: Just a couple of points. One is that
9    I'd be very interested to know if the defendants have made
10   images of any devices. If they haven't, I don't know how they
11   could have done what we want to do. Secondly, this approach
12   doesn't, will never allow us to find out whether this code was
13   deleted by one of the defendants, and third--
14            THE COURT: Well it will if they've done what you are
15   planning to do. He's indicated to me that they've gone through
16   the, and looked for among the deleted documents. But see
17   that's the reason, but you don't know exactly what they've
18   done, which is the reason I, I think before I make a ruling,
19   I'd like to have a more substantial record and have you know
20   exactly what they've done. And I'm, you know, I'm willing to
21   if, if this discovery reveals that these representations that
22   are made to me here, that they've done exactly what you would
23   have done are untrue, I'll shift, I'll do some, you know, some
24   cost shifting. But, you know, the way it works is that you
25   seek discovery from the other side. It's their obligation to

1   give it to you if it's relative to claim or defense of the
2   party. They say they've done it, and they've done exactly what
3   you would, your independent expert would do. And in the face
4   of that, I don't think that I am, the record is such that I can
5   order them over their objection to let you do mirror images of
6   their hard drives. But the server's a different question, the
7   server that they launched it from is a different question
8   because they haven't, I don't know what they've done to that,
9   but I don't' think they've made a mirror image of that, which
10  is the reason I'm going to let you go right ahead and do
11  discovery on that. But that's the, that's the reason for doing
12  it the way I'm doing it. Now, you find out exactly what
13  they're doing and if, if it turns out that these
14  representations that have been made to me, are, they're untrue,
15  that's obviously going to affect the next step.
16           MR. HORNICK: Your Honor, I'm going to assume that
17  privilege, attorney/client privilege and work product aren't
18  going to get in the way of this discovery.
19           THE COURT: Well, we haven't heard anything about
20  that yet. As I, as I--
21           MR. CHATTERJEE: I doubt that the individuals had
22  anything to do with this. This is all something that would
23  have been done by counsel with experts, and I can see a lot of
24  objections coming to the discovery that--
25           THE COURT: No, they, you can do discovery on what