**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, | |
| Plaintiff, | CIVIL ACTION NO. 1:04-cv-11923 (DPW) |
| v. | District Judge Douglas P. Woodlock |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC., | Magistrate Judge Robert B. Collings |
| Defendants. | |
| MARK ZUCKERBERG and FACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
| Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, | |
| Additional Counterdefendants. | |

**SUMMARY OF MARCH 3, 2006 STATUS REPORT AND REQUESTS RELATED
TO DISCOVERY PERMITTED BY NOVEMBER 18, 2005 ELECTRONIC ORDER**

As a courtesy to Facebook Defendants, and as they requested near the end of

the March 3, 2006 hearing, ConnectU provides this summary of the report and requests

it presented to the Court related to the "forensic" discovery permitted by the Court's

November 18, 2005 Order ("Order") and the Court's comments made during the

November 18, 2005 hearing ("Hearing").[1]  ConnectU includes the evidence it mentioned

at the March 3, 2006 hearing but did not provide to the Court.

## A.    Summary of Introductory Remarks

The Order and Hearing permitted ConnectU to conduct discovery on the

following issues:

1.    Did Defendants do all ConnectU would have done to search for and recover the missing Harvard Connection code, facebook.com code, facemash code, and coursematch code, and facemash online journal? (Order; Exhibit 1 at 40, 40-41, 41, 42, 42-43, 43)

2.    Did Facebook Defendants produce before November 18, 2005 all responsive information and documents found to that date?  (Order)

3.    Were Facebook Defendants truthful with the Court at the November 18, 2005 hearing?  (Order; Ex. 1 at 41, 42)

On January 5, 2006, ConnectU served forensic discovery requests, to which

Facebook Defendants responded on February 6, 2006 (Confidential Ex. 20 and 21).[2]

In response to ConnectU's forensic discovery production requests, Facebook

Defendants produced three DVDs containing a huge amount of mostly irrelevant code

(TFB000084-86).  On March 1, 2006, Facebook, Inc. provided an inadequately

prepared 30(b)(6) witness on forensic discovery issues (Confidential Ex. 3).

Facebook Defendants' unequivocal representations at the Hearing, in response

to the Court's direct questions, were clearly false.[3]  They imaged and forensically

---

[1]    During a February 23, 2006 discovery conference, ConnectU informed Facebook Defendants that it would be raising the status of forensic discovery at the March 3, 2006 hearing.

[2]    Prior to serving such requests, ConnectU unsuccessfully attempted to obtain such discovery from Defendants voluntarily, under Local Rule 26.1(A)(1) (Ex. 2).

[3]  THE COURT:  Hold on.  Are, are you looking, is your search including a search for deleted documents that may be on the hard drive that an expert would have been able to retrieve?
MR. CHATTERJEE:  Your Honor, we've searched for, for code anywhere on these devices.
THE COURT:  Answer the question specifically.
MR. CHATTERJEE:  Yes.
THE COURT:  At, does your, has the search that you've conducted involve a search that would involve the search of deleted items that might be recovered?

searched no memory devices before the Hearing (Confidential Ex. 4).  Facebook

Defendants' Rule 30(b)(6) witness confirmed this (Confidential Ex. 3 at 223).  Facebook

Defendants imaged one device on November 16, 2005, but did not examine the image

until later (Confidential Ex. 4, TFB000088; Confidential Ex. 3 at 47; Ex. 1 at 29).

---

MR. CHATTERJEE:  Yes, and it continues to this day. (Ex. 1 at 24-25.)

THE COURT:  Well I suppose as I, I should just put the question to you again, Mr. Chatterjee. Other than, as to the individual defendants that you represent, even though you indicate that you claim they don't have the codes on their hard drives, do you, do you object to them doing the mirror imaging of those computers in the manner and according to the protocol they've mentioned?
MR. CHATTERJEE:  Your Honor, we do object because there's no--
THE COURT:  On what basis do you object?
MR. CHATTERJEE:  --because, and argue, the law requires the have a, they have to give a showing of a particular likelihood of finding the materials, when, we, we've searched them and they're not. (Ex. 1 at 39-40.)

THE COURT:  Okay.  Now when you say you searched, what have you done with respect to hard drives?
MR. CHATTERJEE:  We have, do you mean have we imaged them, is that your question?  We--
THE COURT:  Have you looked for deleted items on them?
MR. CHATTERJEE:  Yes.  We've, I mean obviously there's--
THE COURT:  Have you, have you done what they, if they got the mirror image, have you done what they're going to do?
MR. CHATTERJEE:  We've done some of it.  We're trying to do some more of it because, we notified them yesterday.  We think we've found some additional material.  We're not sure what it is, and we're trying to take the forensic images and provide that information to them if it's responsive. (Ex. 1 at 20-21.)

MR. CHATTERJEE:  We, we've produced everything we've been able to find and we've searched fairly thoroughly of all, all the electronic devices we've been able to find to date …".  (Ex. 1 at 21)

THE COURT:  Well, they're not convinced it's not there.  That, that's the issue.
MR. CHATTERJEE:  Right, and Your Honor, we searched and, and--
THE COURT:  Right.
MR. CHATTERJEE:  --some evidence simply may not exist anymore.  We, we've looked thoroughly for it, and I'm not sure the Draconian relief of mirror imaging every single one of these systems is going--
THE COURT:  You're saying it would do no good because you've already done it, and you can't find it.
MR. CHATTERJEE:  Yes, Your Honor.
THE COURT:  That's your position.
MR. CHATTERJEE:  Yes, Your Honor. (Ex. 1 at 22.)

The COURT:  . . .Mr. Chatterjee basically represents to me that his client has done what you're going, what you propose to do with respect to the hard drives of the individuals that he represents and the, and the servers of the, any hard drives within his custody, control or possession of he or any of his clients.  And upon that representation, I'm not sure you're entitled to an order of the Court that you get, be able to mirror image this.  But I think you're entitled to do discovery, to, you know, find out exactly what they've done and then come back and tell me if what they've done is less than what you do and that you had some basis for saying if you were allowed to do it, you're going to find something.  So that, that's the way I'm going to, I'm going to handle this particular motion. (Ex. 1 at 40-41.)

**B.      Summary of Remarks Relating to Spoliation and Suppression of Evidence**

ConnectU found evidence of spoliation and suppression of evidence in the

TFB000084-86 DVDs.[4]

**1.      Spoliation**

1.      Mr. Zuckerberg's hard drive, identified by Facebook Defendants as Device

No. 371-01, part of which was copied onto TFB000084 and produced (Ex. 5;

Confidential Ex. 6; Ex. 7; Confidential Ex. 3 at 31, 111, 183), contains no facebook.com

code or Harvard Connection code, even though this is the hard drive he used at

Harvard while working on the Harvard Connection code and developing the

facebook.com code and website (roughly November 2003 through early-February 2004)

(*Id.*).  Data from before and after this period is present (Confidential Ex. 8, facemash

online hacking journal, circa October 31, 2003;[5] Confidential Ex. 9, file dated February

16, 2004), so Mr. Zuckerberg must have deleted the Harvard Connection code,

facebook.com code, facemash code, and coursematch code from that device.

Facebook Defendants' Rule 30(b)(6) witness confirmed that Mr. Zuckerberg was the

sole user of this device (Confidential Ex. 3 at 31, 66, 111, 112).

2.      On another device (No. 371-02), ConnectU also found a file that deletes

old versions of code.

---

[4]      ConnectU expects to file a motion for appropriate sanctions for this and other spoliation and suppression, but hopes first to be able to analyze the memory device images made by Facebook Defendants, and the devices themselves.

[5]      This was one of the missing documents, and was found on the partial copy of the image of Mr. Zuckerberg's hard drive.

### 2.    Suppression

1.    Facebook Defendants claimed that Mr. Zuckerberg's hard drive (Device No. 371-01) was lost (see below).  They also claim they allegedly "found" that device in mid-November 2005 (Ex. 11, Ex. 12, Ex. 1 at 21), and counsel turned it over to their expert November 15, 2005 (Confidential Ex. 4, TFB000088).

2.    Facebook Defendants' May 31, 2005 response to ConnectU's Request No. 30 said that Mr. Zuckerberg's facemash code "was lost when the hard drive of Mr. Zuckerberg's computer malfunctioned".[6]  In opposition to ConnectU's motion to compel imaging (Dkt. 37), Facebook Defendants said:

> Plaintiff incorrectly makes much of the absence of Zuckerberg's computer that is no longer in his possession.  Defendant Zuckerberg would be willing to provide the hard drive he had during the winter of 2003-2004, but despite extensive searches, he does not have it.  ConnectU is therefore improperly seeking to compel production of a thing outside Zuckerberg's possession, custody, or control.

Opp. to Motion to Compel Imaging, filed August 18, 2005, at 15 (Dkt. 43).[7]  Facebook Defendants admitted in their opposition to ConnectU's motion to compel responses to Request Nos. 184-185 (Dkt. 134 at 9) that Mr. Zuckerberg's hard drive referred to in response to Request No. 30 and the hard drive referred to in the preceding quote are one and the same.

3.    ConnectU and Facebook Defendants met and conferred regarding the facemash code, facebook.com code, and Harvard Connection code, and the whereabouts of Mr. Zuckerberg's hard drive for about six hours in July 2005,

---

[6]    Ex. 7 to ConnectU Motion to Compel Imaging (Dkt. 37), Response to Request No. 30.

[7]    Facebook Defendants have admitted that Device No. 371-01 is the device Mr. Zuckerberg used at Harvard during the 2003-2004 academic year (Confidential Ex. 6; Ex. 7; Confidential Ex. 3 at 70-71).

specifically, July 13, 14, and 26, 2005.  Facebook Defendants maintained such hard

drive was lost.

4.      But files on TFB000084 (copied from Mr. Zuckerberg's hard drive, Device

No. 371-01, and produced to ConnectU) and testimony of Facebook Defendants' Rule

30(b)(6) witness show that Mr. Zuckerberg used it until mid-July 2005 (Confidential Ex.

13, showing use through July 19, 2005, at page 2202; Confidential Ex. 3 at 31, 66, 111,

112).  This was within days of the parties' July 14 and 26, 2005 discovery conferences,

1 ½ months after Defendants' May 31, 2004 responses to ConnectU's Production

Request No. 30 (in which they represented that such hard drive crashed), and only one

month before Facebook Defendants represented in opposition to ConnectU's motion to

compel imaging that such hard drive was lost.

5.      Facebook Defendants' Rule 30(b)(6) witness testified that Mr. Zuckerberg

turned over Device No. 371-01 to Facebook Inc.'s Director of Operations, Mr. Heyman,

in July 2005 (Confidential Ex. 3 at 112), and that Mr. Heyman **TURNED THE DEVICE**

**OVER TO COUNSEL IN AUGUST 2005** (Confidential Ex. 3 at 149-150), which is

precisely when counsel wrote in opposition to ConnectU's motion to compel imaging

that:

> Plaintiff incorrectly makes much of the absence of Zuckerberg's computer that is
> no longer in his possession.  Defendant Zuckerberg would be willing to provide
> the hard drive he had during the winter of 2003-2004, but despite extensive
> searches, he does not have it.  ConnectU is therefore improperly seeking to
> compel production of a thing outside Zuckerberg's possession, custody, or
> control.

Opp. to Motion to Compel Imaging, filed August 18, 2005, at 15 (Dkt. 43).[8]

---

[8]      The Court reporter misspelled Mr. Heyman's name as "Hamman."  ConnectU's counsel
misspoke at the March 3 hearing when he reported that Mr. Zuckerberg turned the device over to Mr.
Heyman in August or September 2005.  The events are as stated in no. 5 above, according to Facebook
Defendants' Rule 30(b)(6) witness.

6.    On November 15, 2005, Facebook Defendants allegedly "found" the hard drive they suppressed for 5 ½ months (Ex. 11; Ex. 12; Ex. 1 at 21).

**C.    Summary of Remarks Relating to Relevant Code**

**1.    Facebook.com Code**

The facebook.com code and database definition ("DBD") from pre-launch, launch, or post-launch have not been found, contrary to Facebook Defendants' statements in opposition to ConnectU's Motion to Compel Responses to Interrogatory Nos. 19-23 that such code has been produced (Dkt. 132 at 2), contrary to February 14, 2006 representations from Facebook Defendants' counsel to ConnectU's counsel, and contrary to Facebook Defendants' counsel's February 26, 2006 letter (Ex. 14). Facebook Defendants' Rule 30(b)(6) witness didn't know if such code has been found or produced (Confidential Ex. 3 at 40-42, 76, 268).  During a February 23, 2006 discovery conference, Facebook Defendants refused to say if all facebook.com launch code was produced.[9]

Instead of producing the facebook.com code and other code ConnectU seeks, Facebook Defendants produced all code found on the devices they imaged, most of which is not facebook.com code and none of which is Harvard Connection code. ConnectU is incurring the enormous expense of looking for this needle in a haystack, and there is no needle.  Why the shell game?

---

[9]    On March 6, 2006, as ordered, Facebook Defendants produced a directory of source code files they have produced.  ConnectU found some random code in various places in the directory, which may be parts of the facebook.com code from post-launch time frame, but no complete pre-launch, launch, or post-launch code and database definitions.

###### 2.    Other Code

The Harvard Connection code Mr. Zuckerberg worked on has not been found, nor have Mr. Zuckerberg's facemash code and coursematch code.  Facebook Defendants did not search for the Harvard Connection code (Confidential Ex. 3 at 287).

### D.    Summary of Remarks Relating to Steps ConnectU Would Have Taken

Facebook Defendants have not done all ConnectU would have done to locate and recover the missing code.  Facebook Defendants' so-called "expert", Berryhill Computer Forensics ("Berryhill"), imaged ten memory devices, including Mr. Zuckerberg's hard drive (Confidential Ex. 3 at 166), but ConnectU knows little of Berryhill's methodology.  Facebook Defendants refuse to produce the reports of their analyses or to describe their methods, and their 30(b)(6) witness did not review them before his deposition (Confidential Ex. 3 at 137-138, 199-200, 213, 216).

Berryhill's work was sloppy.  They are not EnCase certified (ironically, Facebook Defendants' Rule 30(b)(6) witness is EnCase certified, but he was not involved in the imaging process and did not see the reports (Confidential Ex. 3 at 22-23, 137-138, 199-200, 213, 216)).[10]  Berryhill logged chain of custody for some devices, not others (see Confidential Ex. 4, showing chain of custody forms for some but not all of Device Nos. 371-01 through 371-10; and Ex. 15, Facebook Defendants' March 7, 2006 email stating that all such forms prepared by Berryhill were produced).  Berryhill also searched the images only for the file name extensions "PHP", "PHPT", "PL", "HTML", and "HTM" (Confidential Ex. 3 at 73, 120-122).  Such a search strategy would miss archive files with file extensions such as "TAR", "TGZ", and "BAK", and version-number and backup-

---

[10]      EnCase is the forensic discovery software tool Berryhill used to image Facebook Defendants' memory devices (Confidential Ex. 3 at 216).

8

date file extensions.  Facebook Defendants also did no key word searches (Confidential Ex. 3 at 135, 137).  ConnectU would have searched for such extensions and performed key word searches.

Facebook Defendants' search strategy would also miss signature mismatches (i.e., files in which the file extension has been changed from the extension automatically provided by the program, such as changing ".PHP" to ".TXT") (see Confidential Ex. 3 at 186, 214-215).  Facebook Defendants also did no text string searches (Confidential Ex. 3 at 214).  ConnectU would have also made text string searches inside the files, which would identify relevant code in signature mismatched files.

Facebook Defendants also did not search for the facebook.com code's database definitions ("DBD") (Confidential Ex. 3 at 73-74, 92, 105, 138).  Facebook.com's DBD files would have a ".DOC" file extension, not "PHP", "PERL", "HTML", or "HTM" (Confidential Ex. 3 at 44).  They could also have a ".TXT" or ".SQL" file extension.  ConnectU would have searched for facebook.com's DBD, without which all facebook.com code produced by Facebook Defendants is incomplete and ConnectU cannot perform a code comparison for its copyright and trade secret claims.[11]

Because Facebook Defendants refuse to produce the reports of their imaging and analysis, ConnectU does not know if they attempted to restore deleted files or fragments of deleted files.  However, Facebook Defendants' Rule 30(b)(6) witness testified that Facebook Defendants did not separate deleted and recovered code

---

[11]    Until the March 3 hearing, Facebook Defendants pretended not to understand the term "database definition" (See Ex. 16 at 2).  Yet they said in response to Request No. 180 that they searched for them and will produce them (Ex. 3 to Motion to Compel Answers to Interrogatory Nos. 19-23, at 10-11 (Dkt. 122)), and that they produced them (Reply to Opp. to Motion to Compel ConnectU Deposition Testimony, at 9 (Dkt. 106)).  This was an expensive word game to suppress crucial evidence, as proven by Facebook Defendants' Rule 30(b)(6) witness, who knew exactly what database definitions are, and stated that Facebook Defendants didn't search for them (Confidential Ex. 3 at 73-74, 92, 105, 138).  Mr. Zuckerberg also understands the term (see Confidential Ex. 8 at page 5/7).

extracted from the memory device images, so ConnectU cannot tell if any produced code was ever deleted (Confidential Ex. 3 at 42-43, 72, 89-92, 98, 99, 133).  ConnectU would have done this and the images of the devices would show this information.

There is no evidence Facebook Defendants searched for information that only the images would show (as compared to the copies produced to ConnectU) (see § E below).  ConnectU would have examined such information.

There is no evidence Facebook Defendants imaged and examined all memory devices from facebook.com's pre-launch to five months after launch, or many of the devices they identified in response to Interrogatory Nos. 25-26 (Ex. 17 at 7).  ConnectU would have imaged some or all such devices.

**E.    Summary of ConnectU's Requests to the Court**

In view of Facebook Defendants' spoliation and suppression of evidence and misstatements to the Court, and in view of the fact that they did not do all ConnectU would have done, Connect U requested as follows:

1.    The images Facebook Defendants made of Device Nos. 371-01 through 371-10, and the devices themselves.

Facebook Defendants have said three times that they have no objection to ConnectU imaging Mr. Zuckerberg's hard drive, or to producing such device:[12]

> 1.    During the Hearing:  "I'm fine with that [imaging] with respect to Mr. Zuckerberg"  (Ex. 1 at 34).

---

[12]    This device (No. 371-01) is also sought by Request Nos. 184-185, which are covered by ConnectU's motion to compel documents in response to Request Nos. 171, 174-182, and 184-187 (Dkt. 127).

2.    In their October 5, 2005 response to ConnectU's Request No. 184, which

seeks the "hard drive referred to in Defendants' response to Plaintiff's

Production Request No. 30," Facebook Defendants stated "Facebook

Defendants have already performed a reasonable search and produced

responsive material, but will produce additional responsive matter to the

extent it is newly discovered."  They say they found the hard drive in mid-

November 2005.

3.    In opposition to ConnectU's motion to compel imaging, Facebook

Defendants said:

> Defendant Zuckerberg would be willing to provide the hard drive he
> had during the winter of 2003-2004, but despite extensive
> searches, he does not have it.  (Dkt. 43 at 15).

ConnectU needs the devices imaged by Facebook Defendants to assure the

images are complete, especially in view of the sloppy job by Facebook Defendants'

non- EnCase certified so-called expert.  The images also contain crucial information the

DVD copies lack.  Facebook Defendants would not allow their Rule 30(b)(6) witness to

testify on this issue.  (Confidential Ex. 3 at 187).  Examples of information that the

image would show, but a copy of the image would not show, are as follows:

a.    files and fragments that were not recovered or restored, such as the

facebook.com database definitions (for which Facebook Defendants did

not search (Confidential Ex. 3 at 73-74, 92, 105, 138));

b.    directory creation dates.  Confidential Ex. 18, which ConnectU presented

at the March 3, 2006 hearing, shows that the "Facebook" folder on the

copy of the image from Device No. 371-09 (Mr. Moskovitz's hard drive, Ex.

22) was copied from the image to the TFB000084 DVD on February 14,
2006. The image would show when this folder was actually created.
Such date must be on or before December 22, 2003 (see subsection "c"
below);

c.      file creation, last-modified, and last-accessed dates. Confidential Ex. 18,
which ConnectU presented at the March 3, 2006 hearing, shows that the
"Facebook" folder on the copy of the image from Device No. 371-09
(copied from the image to the TFB000084 DVD on February 14, 2006)
contains two files named "coursename" and "courseparse", with last-
modified dates of December 23, 2003 and December 22, 2003,
respectively. The image (but not the copy produced to ConnectU) would
show the dates on which these files were created, modified, and last-
accessed. Such dates may be earlier than December 22, 2003. Because
these files are contained in the Facebook folder, and because the folder is
a copy of the image (which is a copy of the device), the Facebook folder
must have been created on or before December 22, 2003.[13]

---

[13]      These files show that Facebook Defendants' supplemental response to Interrogatory No.
1 (Ex. 8 to Reply to Opposition to Motion to Compel Responses to Request for Production Nos. 171, 174-
182, and 184-187, Dkt. 142), which states that Mr. Zuckerberg started working on facebook.com on or
about January 11, 2004, is false, and that he lied to ConnectU and the Harvard ethics board when he said
he didn't start working on facebook.com until after January 14, 2004 (Ex. 19; Confidential Ex. 9 to Reply
to Opposition to Motion to Compel, Dkt. 142). These files, which are located on Co-Defendant
Moskovitz's hard drive, also show that Facebook Defendants have been suppressing this evidence.
Facebook Defendants' counsel represented at the Hearing that:

THE COURT:  --this gentleman has a particular problem, which I'll get to, but, do any of the other
defendants besides Saverin have a problem?   You represent all of them, except for him.
MR. CHATTERJEE:  I represent all of them and, and none of them were doing code
development. That, that's their issue. They don't, they, they haven't been involved in the code at all. And
they certainly don't--
THE COURT:  Well, are there, there, I haven't looked at the papers in a while. Are there
affidavits from them indicating that the codes were never on their computers?
MR. CHATTERJEE:  We did and we'd be happy to submit that.
THE COURT:  I mean are you representing that to me?
MR. CHATTERJEE:  I, I am representing that to you.

d.      computer and program activity dates (see Confidential Ex. 3 at 197-98),

including dates and times of usage and uploading of Harvard Connection

and facebook.com code to the server;

e.      authorized user identifications (e.g., who was authorized to use the

device?, who was using it when?);

f.      links showing use of external devices connected to the device;

g.      original complete directory structure (see Confidential Ex. 3 at 198; Ex.

18);

h.      extent to which data was deleted and/or overwritten through use of the

device after notice of ConnectU's claims on February 10, 2004.

Facebook Defendants proposed that an independent expert review the images,

but during the February 23, 2006 discovery conference refused to allow such expert to

look for this information.  Facebook Defendants have cost ConnectU enough money,

unnecessarily, and ConnectU does not want the extra expense of an independent

expert (ConnectU's expert will be analyzing the results of any analysis by an

independent expert).  Thus, ConnectU's expert should be allowed to analyze the

images and reports made by Facebook Defendants and the devices themselves, and to

image unimaged devices at ConnectU's option, all at Facebook Defendants' expense.

2.      At the Hearing, the Court said ConnectU can depose all Defendants on forensic

discovery issues (Ex. 1 at 43).  Defendants' position is that ConnectU may depose the

individual Defendants once each for seven hours, on all case-related issues.  Because

---

THE COURT:  Other than Mr. Zuckerberg, none, no code was ever on the, any of the computers
of any of the other individuals?
        MR. CHATTERJEE:  That, that's my understanding, Your Honor.
(Ex. 1 at 34-35; see also Confidential Ex. 3 at 25, 288-89).

Defendants are withholding so much discovery, ConnectU does not wish to depose the individual Defendants at this time on any issues other than forensic discovery issues. ConnectU therefore asks that it be permitted to depose the individual Defendants only on forensic discovery issues at this time, and that such depositions do not count toward the seven hour limit for each witness.

4.      Facebook Defendants identified several devices they did not image or examine, in response to ConnectU's Interrogatory Nos. 25-26 (Ex. 17 at 7; Confidential Ex. 20). ConnectU requests the option of imaging such devices.

5.      At a discovery conference on February 23, 2006, ConnectU and Facebook Defendants reached an impasse regarding the deficiencies in Facebook Defendants' responses to ConnectU's forensic discovery requests (Confidential Ex. 20 and 21).  In response to Interrogatory Nos. 25-26, Facebook Defendants refused to disclose their:

> 1.      pre-November 18, 2005 efforts to image and search memory devices and recover missing code (no such efforts were made before such date, so their response should so state);
>
> 2.      methodology to image devices, forensically examine them, and search for and recover the missing code;
>
> 3.      methodology for determining if, when, and how code was lost; and
>
> 4.      the results of their analyses.

In response to Production Request Nos. 188-198, Facebook Defendants refused to produce documents relating to:

> 1.      pre-November 18, 2005 efforts to image and search memory devices and recover missing code (no such efforts were made before such date, so

Facebook Defendants' response should state that they have no

documents other than TFB000088, showing that Device No. 371-01 was

imaged on November 16, but not examined until later);

2.    facebook.com code and database definitions from pre-launch, launch,

post launch;

3.    their efforts and methodology to image devices, forensically examine

them, and search for and recover the missing code (Request Nos. 188-

195, 198);

4.    reports of analyses of imaging, search, and recovery efforts (Request Nos.

190, 196, 197).

6.    A properly prepared Rule 30(b)(6) witness (see Confidential Ex. 3, *e.g.*, at 23, 27,

34, 41-43, 57-59, 62-65, 71-74, 76-77, 90-93, 97-110, 123, 128, 137-138, 143, 152,

167, 174, 203-04, 207-216) regarding any efforts **anyone**[14] made to locate and recover

the missing code.

7.    A written response to ConnectU's Interrogatory Nos. 19 and 20, which seek an

identification of Mr. Zuckerberg's memory devices (No. 19) and the other Facebook

Defendants' memory devices (No. 20).

---

[14]    THE COURT:  No, they, you can do discovery on what they did to, what counsel did and what anyone did to obtain the discovery that you've requested and, because that's where the, that's where the issue is.  (Ex. 1 at 42-43.)

Respectfully submitted,

DATED:  March 10, 2006

/s/ John F. Hornick_____
Lawrence R. Robins (BBO# 632610)
Jonathan M. Gelchinsky (BBO# 656282)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
55 Cambridge Parkway
Cambridge, MA  02142
Telephone:  (617) 452-1600
Facsimile:   (617) 452-1666
larry.robins@finnegan.com
jon.gelchinsky@finnegan.com

John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Troy E. Grabow (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Attorneys for Plaintiff and Counterclaim
Defendants

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 10, 2006.