31

1  individuals, and I don't know how many they have.  Let's
2  assume they each have one laptop or one computer, so there are
3  five individuals, and by the way those individuals are
4  important because Mr. Moskovitz, Mr. Zuckerberg has said in the
5  press, Mr. Moskovitz, this was as much his website as it was
6  mine.
7           THE COURT:  Okay.
8           MR. HORNICK:  And Mr. McCollum, he's a programmer
9  too, and he's a graphics guy, neither of the other two are, so
10 he would have probably been involved in the graphics.
11          THE COURT:  So you've got five individuals.
12          MR. HORNICK:  Five individuals plus whatever server
13 was used to run that launch.  Now if it was one of their
14 individual computers, we've already, that's already on the
15 list, but if it was a third party computer, it would be--
16          THE COURT:  I thought he, they represented to you
17 that it was launched, the website was launched from an
18 individual computer and it was only later that it was expanded,
19 isn't that what you told me?
20          MR. CHATTERJEE:  Yes, Your Honor.
21          THE COURT:  Okay.
22          MR. HORNICK:  Fine, so we've got that one on the
23 list.  Then, the moment that it went on to some third party
24 server, which was sometime between February 4th and sometime in
25 March of 2004, we want to go to that company, and we don't know

32

1  who it was. We, we have a suspicion of who it was but we
2  don't really know.
3         THE COURT: That's the one that they said they asked
4  and they couldn't--
5         MR. HORNICK: I assume so. I don't really know that.
6         THE COURT: Okay.
7         MR. HORNICK: We want to go to that company and we
8  want to go and look at whatever server they were using to run
9  the FaceBook. And then if we didn't find it there, on April
10 14th they went to yet a different company. We'd want to go to
11 them. And then by the end of May they were on yet a different
12 company, I believe, and we'd want to go to them. So I assume
13 they only need one server to run Harvard at the time that they
14 were just shortly after launch. They, I think they had 30
15 schools by the end of May, if I recall correctly. So if we
16 were to look at the server that was running Harvard in that
17 time period, we'd probably find what we were looking for or not
18 find it at all. So to go back and recap the list--
19        THE COURT: Well why wouldn't we at least start with
20 the individuals and then the server of the, of the company that
21 had the server on the, at the time of launch? Why wouldn't we
22 start with that and see if that got you the information you
23 wanted before you went to others?
24        MR. HORNICK: That's what I'm saying, Your Honor, a
25 rolling basis.

33

1      THE COURT:  Well I'm not, I'm, you're saying
2  rolling, that means it rolls without any court intervention.
3  I, what I was, and what I, what I'm thinking of is, you know,
4  allowing it as to a certain, sort of holding the rest in
5  abeyance.
6      MR. HORNICK:  At, that actually, the more the Court
7  is involved in it, the happier I would be, Your Honor.  So--
8      THE COURT:  I'm not sure the happier I'd be, but,
9  okay, go ahead.
10     MR. CHATTERJEE:  Your Honor, we don't, to the best of
11 my knowledge, and I could be wrong on this, I'd have to check
12 with my client, we don't have a relationship with that company
13 anymore.  So, I, I'm not that they can even be heard on this
14 issue.
15     THE COURT:  Have you, have they asked you the name of
16 the company?
17     MR. CHATTERJEE:  They, I believe the name of the
18 company was Equinex (ph).
19     THE COURT:  No, did they ask you on interrogatories
20 what the name of the company was?
21     MR. CHATTERJEE:  I don't think they did.  I can't
22 recall for certainty.  They may have.  But I, I can't--
23     THE COURT:  Well, do you have any problems letting
24 them know the name of the company and the address of the
25 company?

34

1   MR. CHATTERJEE: No.

2   THE COURT: Okay. All right. Well, I, you know, if
3   it's not within your possession, custody or control, then it's
4   going to require another method of obtaining discovery.
5   Anything else you wanted to say on this.

6   MR. CHATTERJEE: Your Honor, as I've said, we've, all
7   places that Mr. Hornick is recommending--

8   THE COURT: I know, but if, they, if you don't object
9   except on the grounds of burden and it's not a burden to you,
10  and it's at their expense and you have all the protections, I
11  don't see a basis for denying it.

12  MR. CHATTERJEE: Your Honor, I'm fine with that with
13  respect to Mr. Zuckerberg. It's the other individual
14  defendants--

15  THE COURT: Well, I know the--

16  MR. CHATTERJEE: --that are not involved--

17  THE COURT: --this gentleman has a particular
18  problem, which I'll get to, but, do any of the other defendants
19  besides Saverin have a problem? You represent all of them,
20  except for him.

21  MR. CHATTERJEE: I represent all of them and, and
22  none of them were doing code development. That, that's their
23  issue. They don't, they, they haven't been involved in the
24  code at all. And they certainly don't--

25  THE COURT: Well, are there, there, I haven't looked

YOUNG TRANSCRIPTION SERIVCES
(508) 384-2003

35

1  at the papers in a while. Are there affidavits from them
2  indicating that the codes were never on their computers?
3          MR. CHATTERJEE: We did and we'd be happy to submit
4  that.
5          THE COURT: I mean are you representing that to me?
6          MR. CHATTERJEE: I, I am representing that to you.
7          THE COURT: Other than Mr. Zuckerberg, none, no code
8  was ever on the, any of the computers of any of the other
9  individuals?
10          MR. CHATTERJEE: That, that's my understanding, Your
11 Honor.
12          THE COURT: All right.
13          MR. HORNICK: Your Honor, interestingly when we were
14 doing this briefing, Saverin did put in declarations. None of
15 the other people put in declarations. And if you looked at the
16 briefs, there's very little information about what really
17 happened. I'm hearing a lot of it for the first time today.
18 What Mr. Zuckerberg said in the press, this site is as much
19 Mr. Moskovitz' as it is mine. And he was doing code
20 development, and there are documents to show that.
21 Mr. McCollum, same thing is true. Mr. Hughes, maybe not. But
22 I'll tell you something about Mr. Saverin, on January 12th of
23 2004, Mr. Zuckerberg sent an email saying I want to show you
24 the website, this website that was being developed. And it's
25 entirely possible that the website might have been emailed to

36

1  Mr. Saverin.  He didn't deny that in his declaration.  He just
2  said he never had the code on his computer.  But it's possible
3  that he may have received emails, and there could have been
4  attachments to emails.  So, even Mr. Saverin could have
5  something on his computer, which isn't covered by his
6  declaration.  Now, I would object to there being declarations
7  filed today that say that none of these people ever had
8  anything on their computer when those should have been provided
9  in the briefing process.  It would have been a natural thing to
10 do.  Saverin did it.  We didn't get any explanation whatsoever,
11 any declarations whatsoever from the other defendants.
12          THE COURT:  Well I - yes, go ahead.
13          MR. HAMPTON:  Well, Your Honor, I, I, I think that
14 you understand the position with Mr. Saverin.  We've heard an
15 interesting theory as to how it's conceivably possible that
16 there might be code on Mr. Saverin's computer but that doesn't,
17 that's not the kind of showing that you would need in the face
18 of Mr. Saverin's declaration that there's no code there.  The
19 plaintiff's have a theory here that they're desperately in
20 search of some evidence to support it.  I would suggest that
21 they ought to start looking in the logical places, and if
22 during that process they come up with some actual information
23 to suggest that Mr. Saverin's perjured himself and his
24 declaration says he doesn't have any code, that would the
25 appropriate time to talk about imaging his hard drive.

37

1        THE COURT: Was the name of the company that he
2   mentioned the one that you suspected it was?
3        MR. HORNICK: Yes, it was, Your Honor. And we did
4   ask for that information in discovery--
5        THE COURT: And now who was, who were, what it the
6   name of the corporation and where are they located?
7        MR. HORNICK: Equinex. I don't know where they are
8   located.
9        THE COURT: Where are they located? What's their
10  business address?
11       MR. CHATTERJEE: I can't recall off the top of my
12  head, Your Honor. My, I, I'd have to go back to--
13       THE COURT: I take it it's on this planet, right.
14       MR. CHATTERJEE: It's in the U.S. and it's on the
15  east coast.
16       THE COURT: It's in the U.S., all right, okay. It's
17  on the, what coast?
18       MR. CHATTERJEE: I think it's on the east coast, Your
19  Honor.
20       THE COURT: East coast.
21       MR. HORNICK: They are the, what's called the master
22  service agreement from Equinex is confidential Exhibit 20 to
23  our motion, and we suspected it because there's a date that's
24  almost illegible on it, but the, the document itself is almost
25  illegible and this is, part of the problem is we've been asking

38

1  for all of this information about server companies that they
2  use, and we haven't been able to get, that's covered by their
3  motions as a matter of fact.  So we do have something that
4  identifies Equinex, but we don't have any, enough information
5  to go on for purposes of doing a, a subpoena for example.
6          THE COURT:  What do you need?
7          MR. HORNICK:  Well, we need to know where they are,
8  their--
9          THE COURT:  Right.
10         MR. HORNICK:  --address and that would probably be
11 enough.
12         THE COURT:  Is their address readily accessible to
13 the defendants?
14         MR. CHATTERJEE:  Your Honor, I can, I can check with
15 my client.  I'm, I'm fairly certain I should be able to find
16 that out.
17         MR. HORNICK:  Your Honor, we'd also like to know the
18 dates that they actually used Equinex.  We don't know that
19 either.
20         THE COURT:  And this, this was asked for in discovery
21 and refused?
22         MR. HORNICK:  Yes, Your Honor.
23         THE COURT:  On what basis was--
24         MR. HORNICK:  We have, that's covered by other
25 motions--

39

1  THE COURT: I know, what, on what basis was the
2  basis for its refusal?
3  MR. HORNICK: I don't recall specifically at the
4  moment, Your Honor. There were, there was more than plain
5  objections to all of these requests and that one, I believe was
6  104, 103, something like that.
7  MR. CHATTERJEE: Your Honor, they asked us to
8  identify the, the web hosting services and we did. We listed
9  Equinex right here in the interrogatory response. They didn't
10 ask for the dates of particular usage, but we can provide them.
11 I mean I don't have an issue with providing them with the
12 earliest server company we worked with.
13 THE COURT: Well I suppose as I, I should just put
14 the question to you again, Mr. Chatterjee. Other than, as to
15 the individual defendants that you represent, even though you
16 indicate that you claim they don't have the codes on their hard
17 drives, do you, do you object to them doing the mirror imaging
18 of those computers in the manner and according to the protocol
19 they've mentioned?
20 MR. CHATTERJEE: Your Honor, we do object because
21 there's no--
22 THE COURT: On what basis do you object?
23 MR. CHATTERJEE: --because, and argue, the law
24 requires the have a, they have to give a showing of a
25 particular likelihood of finding the materials, when, we, we've

40

1   searched them and they're not.
2           THE COURT: All right. This is what I'm going to do.
3   First of all, you can, I, I want the defendants to turn over to
4   the plaintiffs the who information with respect to this outfit
5   that evidently was the one that they uploaded the codes on in
6   order to launch the thing and that you can go ahead and take
7   discovery with respect to that organization. I will also allow
8   the plaintiff to take discovery as to, and you may, I don't
9   know if you want to wait on this or not, but you may take
10  discovery as to what the defendants have done to look for these
11  codes. I mean it seems to me that, that even though it is
12  somewhat simple and it is a situation where, you know, the
13  basic rule that the producing party has the obligation to find
14  this stuff and turn it over if it's relevant and we're not
15  hearing anything like you know, the *Zubalight* (ph) case where
16  there, it is an undue burden to look at this stuff and find
17  this stuff. Mr. Chatterjee basically represents to me that his
18  client has done what you're going, what you propose to do with
19  respect to the hard drives of the individuals that he
20  represents and the, and the servers of the, any hard drives
21  within his custody, control or possession of he or any of his
22  clients. And upon that representation, I'm not sure you're
23  entitled to an order of the Court that you get, be able to
24  mirror image this. But I think you're entitled to do
25  discovery, to, you know, find out exactly what they've done and