

**FINNEGAN**
**HENDERSON**
**FARABOW**
**GARRETT &**
**DUNNER**LLP

901 New York Avenue, NW ■ Washington, DC 20001-4413 ■ 202.408.4000 ■ Fax 202.408.4400
www.finnegan.com

**JOHN F. HORNICK**
202.408.4076
john.hornick@finnegan.com

February 16, 2006

**VIA FACSIMILE**

Robert D. Nagel, Esq.
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025

> ConnectU LLC v. Zuckerberg, Facebook, Inc. *et al.*
> Civil Action No. 1:04-CV-11923

Dear Rob:

This letter responds to your February 6, 2006 letter and Facebook Defendants' responses to ConnectU's Interrogatory Nos. 25-26 and Production Request Nos. 188-98.

**A.    Depositions Relating to November 18, 2005 Order**

We have not heard from you regarding dates for the Rule 30(b)(6) deposition of Mr. Kelly. We are available February 21-24. Please provide Mr. Kelly on one of those dates. If you will not provide Mr. Kelly for deposition on one of these dates, we plan to call Judge Collings' chambers on Wednesday February 22 to request a conference call to discuss this issue. We will do so at a time convenient for someone from your firm, or your local counsel.

You state in your letter that Facebook Inc.'s Rule 30(b)(6) witness will testify "consistent with the Court's November 18, 2005 Order." Facebook Defendants took the position in their responses to ConnectU's Interrogatory Nos. 25-26 that the November 18, 2005 Order limited the discovery ConnectU may take as the result of that Order to "steps the defendants would have taken to search for obtain and produce the codes." (See footnote 1 of Facebook Defendants' response.) We do not see the wording of the Order as limiting such discovery in any way. The Court made clear in the Order and at the hearing that ConnectU can conduct discovery to determine (1) if Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) if Facebook Defendants produced all responsive information and documents they located before November 18, 2005 (and produced it before that date), and (3) if

Robert D. Nagel, Esq.
Page 2

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Facebook Defendants' counsel was truthful with the Court at the November 18 hearing. In the Order, the Court said (emphasis added):

> Since defendants represent that they have **done everything to search for codes which the plaintiff proposes to do** by obtaining mirror images **and have produced everything that has been found responsive to plaintiff's requests**, the Court will . . . permit plaintiff to take discovery as to the steps the defendants have taken to obtain and produce the codes. . . . **If defendants' counsel's representations turn out to be inaccurate**, the Court may allow the plaintiff to make mirror images of defendants' hard drives.

Thus, the Court ordered Defendants to permit ConnectU to conduct discovery regarding whether Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, whether Defendants produced all responsive information and documents that they found before the November 18 hearing, and the veracity of the many representations made by Facebook Defendants' counsel at the hearing. Moreover, at the hearing the Court said:

> You can do discovery on what they did to, what counsel did and what anyone did to obtain the discovery that you requested and, because that's where the, that's where the issue is. They say they've done everything that you would do and it's not there. You disagree with them. Well, I'm going to let you do some discovery and make a record if you can that there's stuff they haven't done and and if you are able to do that we'll, we'll take further action.

Trans. at 42-43. The Court also said:

> Mr. Chatterjee basically represents to me that his client has done what you're going, what you propose to do with respect to the hard drives of the individuals that he represents and the, and the servers of the, any hard drives within his custody, control or possession of he or any of his clients. And upon that representation, I'm not sure you're entitled to an order of the Court that you get, be able to mirror image this. But I think you're entitled to do discovery, to, you know, find out exactly what they've done and then come back and tell me if what they've done is less than what you do and that you had some basis for saying if you were allowed to do it, you're going to find something. So that, that's the way I'm going to, I'm going to handle this particular motion.

Trans. at 40-41. If your position is that ConnectU cannot take discovery to determine (1) if Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) if Facebook Defendants produced all responsive information and documents they located before November 18, 2005 (and produced it before that date), and (3) if Facebook Defendants' counsel was truthful with the Court at the November 18 hearing, then we request a discovery conference by February 21, 2006 on this issue. If this issue cannot be resolved during such discovery conference,

Robert D. Nagel, Esq.
Page 3

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

we will include this issue with those we ask Judge Collings on February 22 to discuss on a conference call.

Also, Facebook, Inc. is not the only Defendant with discovery obligations. In fact, all of the Facebook Defendants have equal discovery obligations. Mr. Kelly, as a 30(b)(6) witness, can testify only on behalf of the corporate Defendant, Facebook, Inc. The individual Facebook Defendants must testify on their own behalf regarding the efforts each Defendant made to search for and recover the missing codes and online journal, as counsel represented they had done before the November 18 hearing. As stated in our January 25, 2006 letter, we wish to depose Mr. Zuckerberg, Mr. Moskovitz, Mr. McCollum, and Mr. Hughes at this time regarding the efforts they made to locate and recover the missing codes and facemash online journal, both before and after November 18, 2005. However, because Defendants are withholding so much discovery, ConnectU does not wish to depose the individual Facebook Defendants on other case-related issues at this time. Judge Collings did not limit the discovery permitted by the November 18 Order to Facebook, Inc. Judge Collings was clear that ConnectU can take discovery of all of the Defendants on these issues, and need not wait to depose them on all case-related issues at the same time. Judge Collings said as follows in his November 18, 2005 Order (emphasis added):

> Since **defendants** represent that they have done everything to search for codes which the plaintiff proposes to do by obtaining mirror images and have produced everything that has been found responsive to plaintiff's requests, the Court will not at this time require the production of mirror images of hard drives within the custody, control and/or possession of **defendants** but permit plaintiff to take discovery as to the steps the **defendants** have taken to obtain and produce the codes. If defendants' counsel's representations turn out to be inaccurate, the Court may allow the plaintiff to make mirror images of **defendants'** hard drives.

At the hearing, the Judge said:

> I will also allow the plaintiff to take discovery as to, and you may, I don't know if you want to wait on this or not, but you may take discovery as to what the defendants have done to look for these codes. I mean it seems to me that, that even though it is somewhat simple and it is a situation where, you know, the basic rule that the producing party has the obligation to find this stuff and turn it over if it's relevant.

Transcript at 40. The Judge also said (emphasis added):

> you can do discovery on what they did to, what counsel did **and what anyone did** to obtain the discovery that you've requested

Trans. at 42-43. And:

Robert D. Nagel, Esq.
Page 4

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

> plaintiffs may take discovery of the efforts that you've made, the defendants have
> made to obtain discovery that's sought and is the subject of this motion.

Trans. at 43. And:

> They may take discovery of the defendants, including Mr. Saverin, yes.

Trans. at 43-44.

Please let us know when each of the individual witnesses is available for deposition. We do not view these depositions as counting toward the seven hour limit. If your position is that you refuse to provide the individual Facebook witnesses at this time for depositions unless Plaintiff agrees to depose them on all case-related issues at this time, and/or that such depositions shall count toward the seven hour limit for each witness, then we request a discovery conference by February 21, 2006 on these issues. Furthermore, we expect Facebook Inc.'s Rule 30(b)(6) witnesses, and the individual defendants, to be prepared to testify on the technical, temporal, and substantive details of the searches, imaging, and examinations allegedly performed before November 18, 2005. We also expect Facebook, Inc.'s Rule 30(b)(6) witness to testify as to what anyone, including counsel, did to obtain the discovery ConnectU has requested. (See footnote 1, infra). If these issues cannot be resolved during such discovery conference, we will include these issues with those we ask Judge Collings on February 22 to discuss on a conference call.

### B.    Production of Memory Device Images and/or the Devices Themselves

Facebook Defendants refuse to produce the image of Mr. Zuckerberg's hard drive from which TFB000084 was made, and the hard drive itself. Facebook Defendants' current position with respect to the image is inconsistent with their position taken at the November 18, 2005 hearing:

> THE COURT: I know, but if, they, if you don't object [to imaging] except on the grounds of burden and it's not a burden to you, and it's at their expense and you have all the protections, I don't see a basis for denying it.
> MR. CHATTERJEE: Your Honor, I'm fine with that with respect to Mr. Zuckerberg. It's the other individual defendants . . .

Trans. at 34. Accordingly, we must insist that Facebook Defendants produce the image from which TFB000084 was made. Because Facebook Defendants told the Court they have no objection to allowing ConnectU to image the hard drive from Mr. Zuckerberg's computer, they cannot possibly object to producing the image they made of such hard drive. And assuming that such image is an image of the entire hard drive, they can have no objection to producing the hard drive itself so that an expert can confirm that the image is complete. ConnectU needs the hard drive to assure that the image is complete and needs the image, among other reasons, to:

Robert D. Nagel, Esq.
Page 5

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNERLLP

    (a)    confirm the existence of, and perhaps recover, deleted files;

    (b)    ascertain directory creation dates (the data copied to the CD shows the date the directory was copied, not the date it was created);

    (c)    ascertain file creation and activity dates (the data copied to the CD shows only the last-modified date, not the date the file was created or last modified during the relevant period);

    (d)    analyze computer and program activity dates (not available on the CD);

    (e)    find authorized user identifications and related links (not available on the CD);

    (f)    consider the original complete directory structure (rather than the directory structure chosen by the person who prepared the CD); and

    (g)    determine the extent to which, and when, data was deleted and/or overwritten through use of the device after Mr. Zuckerberg was placed on notice of ConnectU's claims.

You did not address these points, which were set forth in our January 25, 2006 letter, and which constitute major deficiencies in Facebook Defendants' production of TFB000084 (and TFB000085, discussed below). None of this information can be determined from TFB000084. Producing "everything they [Facebook Defendants] have been able to find and . . . . [continuing] to do so based on a thorough, diligent search," as you say in your letter, will not provide such information to ConnectU, no matter how thorough and diligent the search allegedly may be. Producing the CD-ROM and not the image and device itself is also inadequate because ConnectU is unable to determine from such CD-ROM (1) if Defendants did all that ConnectU would have done to search for and recover the missing code and online journal (and is unable to do such things), (2) if Facebook Defendants produced all responsive information and documents before November 18, 2005, and (3) if Facebook Defendants' counsel was truthful with the Court at the November 18 hearing. Thus, we must insist that Facebook Defendants produce the image from which TFB000084 was made, and the device itself.

You offer the same reason for not producing "the hard drives and other devices imaged before the November 18 hearing and the images they made before the hearing." That Facebook Defendants did not image or examine any memory devices before the November 18 hearing, which is clear from their responses to Interrogatory Nos. 25-26, is one of the issues on which the Court specifically ordered discovery. On this basis alone, ConnectU is entitled to production of such images. In addition, even if any images were made (or any devices were examined) before the November 18 hearing, and even if Facebook Defendants have produced "everything they [Facebook Defendants] have been able to find and . . . . [are continuing] to do so based on a thorough, diligent search," only an examination of the devices will reveal if such images are complete, and only an examination of the images will provide the information listed above (and other information), and enable ConnectU to determine if Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and facemash online journal. Thus, we must insist that Facebook

Robert D. Nagel, Esq.
Page 6

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER ᴸᴸᴾ

Defendants produce all devices imaged before the November 18 hearing, and the images themselves.

    With respect to TFB000085, we must insist that Facebook Defendants produce the images from which TFB000085 was made, and the devices themselves, for the same reasons as set forth above. This is particularly important for Device 371-01; our expert may succeed in imaging where Facebook Defendants' expert failed.

    Moreover, TFB000085 is deficient for the following additional reasons:

    1.    During a February 14, 2006 telephone conversation, Hopkins Guy informed us that TFB000085 allegedly contains six facebook.com code files from February/March 2004. We have found no facebook.com code files on TFB000085 containing February or March 2004 last-modified dates, or that otherwise appear to be from that period. Please identify their precise location on TFB000085. Assuming Mr. Guy is correct that such files are contained on TFB000085, this is another reason that we must have the image from which this CD was made. If such files are in fact contained on TFB000085, their alleged February/March 2004 last-modified dates were changed when the files were copied from the image to the CD. There is no way for ConnectU to know the actual creation or last-modified dates of such files without examining the image itself.

    2.    TFB000085 does not contain the facebook.com database definition from the time of launch, prior to launch, or for anytime at all. Without the database definition, the most we can see are static screen shots and it is impossible to run any facebook.com code files, and view them in action, in the dynamic way that a user would use facebook.com. Because facebook.com will not run without its database definition, your search of the images copied onto TFB000085 is faulty or incomplete (you searched only for PHP files and it may not be a PHP file, as your clients well know), or your copying of files onto the CD is selective and incomplete. Thus, we must insist that Facebook Defendants produce the images from which TFB000085 was made so that ConnectU's expert can search for and possibly recover the missing database definition.

    3.    Even if there are six facebook.com files on the CD from February/March 2004, the current version of facebook.com consists of at least 130 files, so six files is a very small percentage of the total facebook.com code and database definition. Thus, your search of the images copied onto TFB000085 is faulty or incomplete, or your copying of files onto the CD is selective and incomplete. We must insist that Facebook Defendants produce the images from which TFB000085 was made so that ConnectU can search for and possibly recover the remainder of the facebook.com code from prior to launch, launch, and after launch through September 2004.

    4.    Even if there are six facebook.com files on the CD from February/March 2004, there is no evidence that they were actually part of the launch code, or if they

Robert D. Nagel, Esq.
Page 7

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

were actually used in the live facebook.com website. Thus, we must insist that Facebook Defendants either produce the images from which TFB000085 were made so that ConnectU can look for artifacts showing that such code was or was not used in the live site, or represent in writing that such files were never used in the live facebook.com website (Facebook Defendants' representation that such files were used in the live website will not be an equal evidentiary substitute for the image itself).

All of the searching, recovery efforts, and analysis described above are steps that ConnectU would take to locate and recover the missing code and online journal. Facebook Defendants' refusal to produce the images (and the devices themselves to assure that the images are complete) prevents ConnectU from taking these steps, and from determining if Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal. Your offer to turn the devices over to an independent expert is unnecessary to resolve the issues identified herein. We are asking for the images and devices to perform steps that Facebook Defendants either have not performed, or with respect to which they have not produced the results of their analysis.

Facebook Defendants' responses to Interrogatory Nos. 25-26 (discussed in detail below) also identify the following memory devices that do not appear to have been imaged and examined:

1.    Mr. Zuckerberg's "second hard drive used in his computer," which allegedly crashed in May 2004;

2.    the numerous computers observed at University Avenue, which allegedly were purchased in Summer 2005 or thereafter) (there is no reason why relevant files could not have been copied onto these new computers);

3.    either the "hard drive used as an external drive for an IBM ThinkPad" or the "Western Digital hard drive" or the "Maxtor hard drive" appears to be Device 371-04, and the other two devices appear not to have been imaged and examined, and nothing has been produced from them;

4.    McCollum's Sony Viao laptop is identified as both Device 371-01 and 371-07. If it is both, please amend your answer to explain. If it is one or the other, please amend your response to explain the discrepancy;

5.    the Penguin servers;

6.    the servers located at Equinix.

We must insist that ConnectU's expert be permitted to image these devices.

Robert D. Nagel, Esq.
Page 8

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

If it is Facebook Defendants' position that they refuse to produce any of the devices and images discussed above, we wish to discuss such position in a discovery conference by February 21, 2006.

## C.    Deficiencies in Facebook Defendants' Responses to Int. Nos. 25-26

As discussed above, Facebook Defendants' took the position in their responses to ConnectU's Interrogatory Nos. 25-26 that the November 18, 2005 Order limited the discovery ConnectU may take as the result of that Order to "steps the defendants have taken to obtain and produce the codes." (See footnote 1 of Facebook Defendants' response.) Facebook Defendants have been ordered to permit ConnectU to conduct discovery to determine (1) if Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) if Facebook Defendants located and produced all responsive information and documents before November 18, 2005, and (3) if Facebook Defendants' counsel was truthful with the Court at the November 18 hearing. Thus, to the extent that Facebook Defendants are withholding information responsive to Interrogatory Nos. 25-26 on the basis of the objection set forth in footnote 1 of their responses (and echoed throughout the responses), we insist that Facebook Defendants supplement their responses to include such withheld information.

Moreover, to the extent that Facebook Defendants are withholding any responsive information, based on their objections of privilege or work product, or any other objection, relating to the issues of (1) whether Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) whether Facebook Defendants produced all responsive information and documents they located before November 18, 2005, and (3) whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing, we insist that they amend their answers to provide such information.

Facebook Defendants' responses are also incomplete because:

1.    they identify no efforts from October 2003 through November 17, 2005 to image and recover any Content (Int. No. 25), and no efforts from October 2003 through November 17, 2005 to forensically examine any and all Computers (Int. No. 26), and, with respect to such pre-November 18 efforts, the other information requested by the Interrogatories was not provided (this is directly relevant to whether Facebook Defendants produced all responsive information and documents they located before November 18, 2005, and whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing);

2.    they do not fully "state the basis" for the responses, as required by Local Rule 26.5(C)(8) (for example, the responses omit the details of all of the efforts they generally describe);

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

3.      they do not explain how and why such Computers or places were selected or reviewed for search (this is directly relevant to whether Facebook Defendants searched in the right Computers and places, searched in all relevant Computers and places, and whether Defendants did all that ConnectU would have done to search for and recover the missing code and online journal);

4.      they do not provide any details of your search methodology; the measures taken to preserve, find, recover, retrieve, and/or image any lost, deleted, or corrupted Content; or the measures taken to determine if, when, and how any such Content was lost, deleted, or corrupted, and by whom (this is directly relevant to whether Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, and whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing);

5.      they do not identify who at Berryhill Computer Forensics (or elsewhere, such as the "others on their behalf" mentioned in the responses) performed the searches, analyses, or measures (this is directly relevant to whether Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing, and who ConnectU deposes);

6.      they rely on the nonsensical term (in this context): "non-evasive";

7.      they do not identify the date and time each search or analysis was conducted or such measures were performed  (this is directly relevant to whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing);

8.      they do not describe the results of each search, analysis, or such measures regarding the deficiencies described above (this is directly relevant to whether Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, and whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing);

9.      they do not describe the development and revision history of any Content in your possession, custody, or control, or in the possession, custody, or control of your website hosting service provider(s) at any time (this is directly relevant to whether Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal);

10)     they do not describe the development and revision history of Mr. Zuckerberg's alleged contributions to any Content (this is directly relevant to whether Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal);

Robert D. Nagel, Esq.
Page 10

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

11) the Maverick server was not used until five months after launch. The responses describe no efforts to identify, search, and forensically examine the servers used for the facebook.com website at the time of launch and up to the time that the Maverick server was used.

Please supplement Facebook Defendants' responses to remedy these deficiencies. If you will not do so, we wish to discuss these deficiencies during a discovery conference by February 21, 2006.

## D.    Deficiencies in Facebook Defendants' Responses to Production Request Nos. 188-198

Facebook Defendants' took the position in their responses to ConnectU's Request Nos. 188-198 that the November 18, 2005 Order limited the discovery ConnectU may take as the result of that Order to "steps the defendants have taken to obtain and produce the codes." (See page 2 of Facebook Defendants' response.) Facebook Defendants have been ordered to permit ConnectU to conduct discovery to determine (1) if Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) if Facebook Defendants located and produced all responsive information and documents before November 18, 2005, and (3) if Facebook Defendants' counsel was truthful with the Court at the November 18 hearing. Thus, to the extent that Facebook Defendants are withholding documents responsive to Request Nos. 188-198 on the basis of such objection (and echoed throughout the responses), we insist that Facebook Defendants produce such documents.

Moreover, to the extent that Facebook Defendants are withholding any responsive documents, based on their objections of privilege or work product, or any other objection, relating to the issues of (1) whether Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) whether Facebook Defendants located and produced all responsive information and documents before November 18, 2005, and (3) whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing, we insist that they produce such documents.

Facebook Defendants state in response to Request Nos. 188, 189, 191-196, and 198 that they "will produce any responsive, non-privileged documents in the Facebook Defendants' possession found upon a reasonable search, to the extent such documents exist." This response is deficient for several reasons:

1.    To date, Facebook Defendants have produced no documents other than TFB000084 and TFB000085. The information on such CD-ROMs is not responsive. Regardless of any code that may or may not be contained on such CD-ROMs, Facebook Defendants have produced no documents regarding their efforts and process that are the subject of at least Request Nos. 188-195 and 198.

Robert D. Nagel, Esq.
Page 11

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

2.    To date, Facebook Defendants have produced no responsive documents for the period October 2003 through November 17, 2005.

3.    Privilege is not a proper reason to withhold documents if it interferes with ConnectU's discovery regarding (1) whether Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, (2) whether Facebook Defendants located and produced all responsive information and documents before November 18, 2005, and (3) whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing. At the hearing, ConnectU's counsel raised this very issue (Trans. at 42-43):

MR. HORNICK:  Your Honor, I'm going to assume that privilege, attorney/client privilege and work product aren't going to get in the way of this discovery.

THE COURT:  Well, we haven't heard anything about that yet. As I, as I--

MR. CHATTERJEE:  I doubt that the individuals had anything to do with this.  This is all something that would have been done by counsel with experts, and I can see a lot of objections coming to the discovery that--

THE COURT:  No, they, you can do discovery on what they did to, what counsel did and what anyone did to obtain the discovery that you've requested and, because that's where the, that's where the issue is.  They say they've done everything that you would do and it's not there.  You disagree with them.  Well, I'm going to let you do some discovery and make a record if you can that there's stuff they haven't done and and if you are able to do that we'll, we'll take further action.[1]

4.    It is unclear from this response whether Facebook Defendants will in fact be producing any documents.

5.    It is unclear from the response whether Facebook Defendants are withholding any documents.

6.    TFB000085 allegedly contains six facebook.com code files from February/March 2004.  We have found no facebook.com code files on TFB000085

---

[1]    Based on counsel's comments, ConnectU suspects that Mr. Kelly will not be able to testify fully on the topics of ConnectU's Rule 30(b)(6) notice. ConnectU reminds Facebook Defendants of their obligation to produce a well-educated Rule 30(b)(6) witness prepared to testify as to what anyone, including counsel, did to obtain the discovery ConnectU has requested. *Calzaturficio S.C.A.R.P.A. v. Fabiano Shoe Co.*, 201 F.R.D. 33, 36 (D. Mass. 2001).

Robert D. Nagel, Esq.
Page 12

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

containing February or March 2004 last-modified dates, or that otherwise appear to be from such period. Please identify their precise location on TFB000085.

    7.    TFB000085 does not contain the facebook.com database definition from the time of launch, prior to launch, or for anytime at all. We must insist that Facebook Defendants produce the facebook.com database definition from the time prior to launch, launch, and after launch through December 2004.

    8.    At most, Facebook Defendants have produced only 6 of 130 plus facebook.com files from around the time of launch. Thus, we must insist that Facebook Defendants produce the entire facebook.com code from prior to launch, launch, and after launch through September 20004.

Accordingly, we have the following questions regarding Request Nos. 188, 189, 191-196, and 198:

    1.    What documents will Facebook Defendants produce in response to these requests, and when?

    2.    What documents are Facebook defendants withholding?

    3.    When will Facebook Defendants amend their responses, as requested above?

    4.    As covered by Request No. 194, will Facebook Defendants produce the images they have made of the devices identified in response to Interrogatory Nos. 25-26?

With respect to Request Nos. 190 (documents concerning efforts to analyze Content), and 197 (documents concerning results of analyses, etc., of any Content), Facebook Defendants have refused to produce any documents. With respect to Request No. 196 (documents concerning results of analyses, etc., of any Computers), Facebook Defendants have objected to producing documents concerning analyses of any Computers. Facebook Defendants' efforts described in Request Nos. 190, 196, and 197 are directly relevant to (1) whether Facebook Defendants did all that ConnectU would have done to search for and recover the missing code and online journal, and (2) whether Facebook Defendants' counsel was truthful with the Court at the November 18 hearing. We must insist that Facebook Defendants amend their responses and produce documents responsive to these requests.

Robert D. Nagel, Esq.
Page 13

FINNEGAN
HENDERSON
FARABOW
GARRETT &
DUNNER LLP

Please supplement or amend Facebook Defendants' responses to remedy these deficiencies. If you will not do so, we wish to discuss these deficiencies during a discovery conference by February 21, 2006.

Sincerely,

FINNEGAN, HENDERSON,
FARABOW, GARRETT & DUNNER LLP

By: _____
John F. Hornick

JFH/sjb

cc:    Monte M.F. Cooper, Esq.
       Robert B. Hawk, Esq.
       Joshua H. Walker, Esq.
       Daniel K. Hampton, Esq.
       Steven M. Bauer, Esq.
       Neel I. Chatterjee, Esq.
       G. Hopkins Guy, III, Esq.
       Gordon P. Katz, Esq.
       Jeremy P. Oczek, Esq.
       Bhanu K. Sadasivan, Esq.
       Jonathan M. Gelchinsky, Esq.