IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>        Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>        Defendants. | Civil Action No. 1:04-CV-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>        Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>        Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>        Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' RESPONSE TO CONNECTU'S RENEWED "FORENSIC RECOVERY" ARGUMENTS FROM THE MARCH 3, 2006 MOTIONS HEARING**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

    A.    Brief Summary of Facebook's Efforts To Locate Code and Software ................ 2

II.   TO ENSURE  A COMPLETE PRODUCTION, THE FACEBOOK
DEFENDANTS HAVE ADOPTED THE PROCEDURE SET FORTH BY
CONNECTU TO THE GREATEST EXTENT POSSIBLE ............................................ 4

    A.    The Facebook Defendants' Post-Hearing Duplication of Mr. Berryhill's
Efforts with "EnCase-certified" Forensic Specialists ........................................ 4

    B.    The Efforts of Mr. Butterworth and Guidance Unequivocally Prove that
ConnectU's Alleged Need for Forensic Imaging of the Facebook
Defendants' Devices Is Unwarranted .................................................................. 7

        1.    Mr. Berryhill Produced Information from .tar, .bak. and .tgz Files ........... 7

        2.    There Was No Error by Mr. Berryhill in Identifying Signature Mis-
Matches ..................................................................................................... 7

        3.    Guidance Confirms that Facebook's Prior Efforts to Identify
"Database Definitions" Was Proper ........................................................ 8

        4.    Guidance Confirms that File Fragments, or "Slack Space," Is
Overly Burdensome to Search ................................................................. 9

        5.    Production of Information Concerning Directory Creation, File
Creation, Last Modified, Last Accessed Dates and the Like ................. 10

III.  THE ADDITIONAL ENCASE CERTIFIED REVIEW PROVES THERE IS NO
EVIDENCE OF SPOLIATION OR SUPPRESSION OF EVIDENCE ........................ 12

    A.    Guidance Confirms that No Evidence of Spoliation Exists, as ConnectU
Has Alleged Via Attorney Argument .................................................................. 12

    B.    The Arguments ConnectU Offers for Suppression of Evidence Are
Likewise Flawed .................................................................................................. 13

IV.   CONNECTU'S ADDITIONAL DEMAND FOR DEPOSITIONS ARE
UNWARRANTED ................................................................................................ 16

V.    CONNECTU ITSELF HAS UNDERTAKEN NONE OF THE PROCEDURES
IN ITS OWN PRODUCTION THAT IT DEMANDS OF FACEBOOK ...................... 17

VI.   CONCLUSION .................................................................................................... 18

Defendants Mark Zuckerberg ("Zuckerberg"), Dustin Moskovitz, Andrew McCollum, Christopher Hughes, and Facebook, Inc. ("Facebook") (collectively, "Facebook Defendants")[1] hereby respond to the arguments offered by plaintiff ConnectU LLC ("ConnectU") in support of its renewed request made during the March 3, 2006 motions hearing for forensic retrieval and imaging of all electronic devices within the Facebook Defendants' custody and control.

## I.    INTRODUCTION

ConnectU's renewed request for forensic copies of hard drives is the same sort of discovery tactic that the Court has already described as a "fishing expedition," and is nothing more than a reflection of the fact that because ConnectU has no evidence of copyright infringement or trade secret misappropriation, it now contends there has been spoliation.  *See* Declaration of Monte Cooper in Support of Facebook Defendants' Response to ConnectU's Renewed Forensic Recovery Arguments, Exhibit A (Transcript of March 3, 2006 Hearing), at 136:9-14 ("Cooper Decl., Ex. A").  At every opportunity, Facebook Defendants have complied with ConnectU's numerous requests for information from the various recovered electronic devices, even when the requests were of questionable relevance.  Rather than trying to work out reasonable solutions to these various issues through the meet and confer process, ConnectU has chosen not to specifically identify what it wants (or defend why), and instead seeks court relief by seeking increasingly onerous and unworkable approaches that ConnectU itself could not comply with.

As set forth herein, ConnectU has no basis to request forensic copies and, indeed, some of ConnectU's claimed "remedies" to the Facebook Defendants' alleged forensic recovery

---

[1]  Defendant Eduardo Saverin is represented by separate counsel in this matter.  The term "Defendants," as used herein, refers to all Defendants, including Mr. Saverin.  The "Facebook Defendants" may be used herein to refer to all Defendants *except* Mr. Saverin.

deficiencies are nearly impossible to implement.  Indeed, ConnectU's own production reveals that it has not done a similar search of its own electronic data nearly as invasive as it requests from the Facebook Defendants. ConnectU's initial motion was to seek forensic imaging to recover source code.  The Facebook Defendants have gone to extraordinary efforts to produce that code.  The Facebook Defendants continue in their efforts to search for more electronic devices from the numerous college students involved.  Despite ConnectU's original request, it now seeks to broaden its requested relief and expand its motion considerably.

The Facebook Defendants respectfully request that the Court deny ConnectU's ever-expanding requests and end this fishing expedition.  Accordingly, the Facebook Defendants request that ConnectU's motion be denied.  Alternatively, the Facebook Defendants renew their request that the Court appoint an independent expert to implement code retrieval from the electronic devices.  Given the highly sensitive nature of the other irrelevant data contained on the Facebook Defendants' devices, not to mention the likelihood that some information may relate to attorney-client communications and work product, only a Court-appointed expert should be trusted for any additional analysis.  However, that alternative solution is unnecessary, as the forensic efforts of the Facebook Defendants have been more than adequate.

**A.    Brief Summary of Facebook's Efforts To Locate Code and Software**

The Facebook Defendants already have undertaken numerous actions to identify, recover, and produce all existing code or software generated before December 31, 2004.  These activities include the following:

- Facebook on May 31, 2005, produced to ConnectU copies of its source code and website software from October and December, 2004, the earliest and most complete copies it could locate at that time.  *See* Cooper Decl. Ex. N.

- Prior to and after the November 18, 2005 hearing, Defendants located 10 additional electronic devices containing some source code and software, and arranged to have such media imaged and examined via a computer

forensic examiner, Jon Berryhill.[2]  These devices were searched based upon file extensions for the types of code at issue in this case (*e.g.*, .php, .htm, .c, etc.).   Between January 7, 2006 and February 15, 2006,the Facebook Defendants produced the responsive code that they could determine was created on or before December 31, 2004.  *See* Cooper Decl. Exhs. D-F.  The Facebook Defendants also independently created and produced a "source log" documenting those efforts, and produced it to Defendants on March 6, 2006 following the hearing, per court order  *See id.* Exh. G.

- On March 1, 2006, Facebook produced a Rule 30(b)(6) witness, Max Kelly, who is a former investigator for the Federal Bureau of Investigation.  Mr. Kelly testified regarding the Facebook Defendants' efforts to locate code and software from electronic devices, as well Mr. Berryhill's forensic efforts to recover such information from those devices.  *See generally* ConnectU's Status Conference Ex. 3 (Transcript of Rule 30(b)(6) deposition of Max Kelly).

- Following the March 3, 2006 hearing, Facebook repeated its source code extraction via an EnCase-certified expert, James Butterworth of Guidance Software, Inc.  Mr. Butterworth implemented the approach set forth by ConnectU to the greatest extent practicable, such as searching additional files on the electronic devices with new file-name extensions (*e.g.*, .doc, .gz, .tar, .zip etc.) *See* Declaration of James Butterworth in Support of the Facebook Inc.'s Response to ConnectU's Renewed Forensic Recovery Arguments ("Butterworth Decl.").[3]

As can be seen, the Facebook Defendants' efforts have been comprehensive, fair, and calculated

to end this dispute concerning forensic imaging.

---

[2] ConnectU incorrectly claims that the Facebook Defendants misrepresented the imaging of hard drives.  *See* Cooper Decl. Ex. A, at 5:7-24.  *See also* ConnectU's Summary of March 3, 2006 Status Report and Requests Related to Discovery Permitted by November 18, 2005 Electronic Order ("ConnectU's Status Report";  filed March 10, 2006), at 2-3  To the contrary, at the November 18, 2005 hearing on ConnectU's motion, counsel for the Facebook Defendants advised the Court that it was in the process of imaging and searching electronic devices that it had located.  *See* Cooper Decl. Ex. B (Transcript of November 18, 2006 Hearing), at 20:24-21:6.  ConnectU was advised of the existence of these additional devices before the November 18, 2005 hearing.  *See* Cooper Decl. Ex. C.  Counsel for the Facebook merely identified what was believed to be the state of recovery based upon the instructions given to Mr. Berryhill before the hearing.
[3] Mr. Butterworth is a former Naval intelligence officer, is EnCase certified and has a number of other computer forensic credentials.  Butterworth Decl. ¶¶ 1, 2.

II.    **TO ENSURE  A COMPLETE PRODUCTION, THE FACEBOOK
DEFENDANTS HAVE ADOPTED THE PROCEDURE SET FORTH BY
CONNECTU TO THE GREATEST EXTENT POSSIBLE**

Although ConnectU attacks the Facebook Defendants' forensic retrieval efforts, the

independent analyses conducted both by Mr. Berryhill and Mr. Butterworth to identify any

relevant code on the Facebook Defendants' electronic devices was entirely proper.   These

experts have adopted, where possible, the very procedures that ConnectU argues should be

followed in attempting to recover code.  Where ConnectU's proposed procedures were not

followed, it was because it either was unnecessary or well beyond the norm contemplated in

typical eDiscovery, and hence overly burdensome.

A.    **The Facebook Defendants' Post-Hearing Duplication of Mr.
Berryhill's Efforts with "EnCase-certified" Forensic Specialists**

Despite his recovery of a large volume of code material, ConnectU incorrectly claims that

Mr. Berryhill was "sloppy."  Notably, for the first time, ConnectU also has asserted that Mr.

Berryhill's efforts were improper because he was not "EnCase-certified" to perform the forensic

work that is the focus of his business, even though Mr. Berryhill used EnCase software.  *See*

Cooper Decl. Exh. A, at 10:8-13.[4]

Yet, these new challenges are unsupportable under the law, since Courts specifically have

concluded that EnCase certification is not required in order to establish that forensic recovery

efforts were proper.  *See*, *e.g.*, *Willford v. State*, No. 11-02-00074-CR 2004 WL 67560, at *2

(Tex. App. Jan. 15, 2004) (affirming trial court's ruling permitting evidence of how a detective

used EnCase software to retrieve forensic data despite not being an expert on EnCase and its

reliability, noting that EnCase "is the equivalent of a photocopier for computers" such that "the

---

[4] There is no reference in ConnectU's original Motion to Compel Production of Forensic
Images of the Facebook Defendants' Electronic Devices to EnCase certification.

user of EnCase does not have to be an expert on its scientific theory, scientific technique, or reliability to operate it properly"). *Accord Sanders v. State*, No. 10-05-00030-CR 2006 Tex. App. LEXIS 1872 (Tex. App. March 8, 2006), at *10 n.1. Indeed, ConnectU offers virtually no evidence that it ever has attempted to recover any code, including Harvard Connection code, from its own resources using EnCase certified specialists.

Nevertheless, while the Facebook defendants believe that Mr. Berryhill's work is reasonable and includes all necessary code, the Facebook Defendants engaged Guidance Software, Inc. ("Guidance"), the creators of the EnCase software, and whose employees (including James Butterworth) are all EnCase-certified, to repeat the review of the electronic devices previously imaged by Mr. Berryhill and adopt the approach suggested by ConnectU to the greatest extent practicable. *See* Butterworth Decl. ¶¶ 4, 5, 6.

In that regard, Guidance independently performed a collection of data from ten (10) devices. Guidance reviewed the results of Mr. Berryhill's work and determined that he already produced approximately 1GB of data and that his search was reasonable and reliable. *Id.* ¶ 4. Any new code will be produced to ConnectU should any code beyond that already retrieved by Mr. Berryhill be identified.

Guidance also analyzed ten (10) device images (EnCase .E01-.En files) using "EnCase version 5.05a" software. Each image was scanned for deleted files and folders. Butterworth Decl. ¶¶ 6, 6.a. Files with extensions .tar, .gz,. .zip, .tgz, all of which ConnectU contends may include additional relevant information to that already identified by Mr. Berryhill, also were searched. *Id.* ¶ 6.b. Again, should these efforts produce any additional code not previously identified by Mr. Berryhill, it too will be produced.

Guidance also conducted a "link file" analysis to search for all .lnk files and to determine

if files were copied to removable media.  Contrary to the suspicions of ConnectU, this search

revealed zero instances where a link file contained a reference to removable media and/or any

source code.  *Id.* ¶ 6.c.

To address ConnectU's numerous statements related to its alleged need for metadata

information, Guidance also created a "condition" (filter) to identify all code files with the

following additional criteria:

- Files with created date of December, 2004 or earlier;

- File with extension being either .pl, .php, .phpt, .htm, .html, .sql, or .mdb;

- Files that have .sql, .php as part of their name (like abc.php.bak);

- Files that are either not deleted or deleted but not overwritten on disk.

Butterworth Decl.  ¶ 6.d.  The metadata generated, including created "date," "last

modified date" and "last written date" for identified code files was then exported to a report per

device image.  These results were then set out in spreadsheets.  *Id.*  A condition (filter) also was

created to identify all files having extensions of either .txt or .doc that were created on or before

December 31, 2004.  *Id.* ¶ 6.e.  Metadata for these files was generated and can be produced to

ConnectU if it simply identifies the particular files in which it is interested.  *Id.*

Guidance further confirmed that it, just like Mr. Berryhill, was unable to completely

image Device No. 371-01 (one of Mark Zuckerberg's hard-drives), which is corrupted.

Guidance attempted to recover relevant data from that device using three different well-

established technical methods.  Butterworth Decl. ¶ 5.  In all three instances, however, the drive

would indicate it was "spinning up," and would not allow for what is known as an entire "bit

stream copy" to be produced.  *Id.*

**B.    The Efforts of Mr. Butterworth and Guidance Unequivocally Prove that ConnectU's Alleged Need for Forensic Imaging of the Facebook Defendants' Devices Is Unwarranted.**

Based upon the numerous and repeated efforts by the Facebook Defendants to recover code, including efforts to implement the very procedure most recently articulated by ConnectU, ConnectU should not be entitled to the invasive relief it requests. Guidance and Mr. Butterworth confirmed that many of the alleged reasons that ConnectU offers for why it should independently forensically image and search the Facebook Defendants' devices are specious.

**1.    Mr. Berryhill Produced Information from .tar, .bak. and .tgz Files**

For instance, in arguing for independent review by its own expert, ConnectU incorrectly complained that Mr. Berryhill did not search for .tar, .tgz and .bak files. *See* Cooper Decl. Exh. A, at 10:15-11:10. Guidance reviewed the same files already produced to ConnectU as a result of Mr. Berryhill's forensic analysis and confirmed that files contained in these compressed archives were, in fact, produced to ConnectU as a result of Mr. Berryhill's work. Butterworth Decl. ¶ 7.

**2.    There Was No Error by Mr. Berryhill in Identifying Signature Mis-Matches**

ConnectU also incorrectly argued that Mr. Berryhill's search strategy missed what it described to the Court as "signature mismatches" — that is, files in which the file extension apparently has been changed from the extension automatically provided by the program, such as changing ".PHP" to ".TXT". *See* Cooper Decl. Exh. A, at 11:1-10; ConnectU's Status Report, at 9. However, Guidance confirms that conducting a "text" file signature analysis/comparison against the altogether different "binary" types of files identified by ConnectU in its arguments is not reliable, and would not likely lead to additional code. Butterworth Decl. ¶ 8. Specifically, text files and binary files have what are known as different types of "headers" — a fact

apparently not considered by ConnectU when it suggested Mr. Berryhill should have attempted to identify signature mismatches.  *Id.*

### 3.    Guidance Confirms that Facebook's Prior Efforts to Identify "Database Definitions" Was Proper

Without setting forward any explanation as to their relevance, ConnectU nonetheless also has repeatedly complained that Facebook has not provided what it calls "database definition" files.  For the first time ever, in the Status Report it filed on March 10, 2006, ConnectU alleged that these definitions might be found in file extensions with .doc, .txt, or .sql (which were not searched by Mr. Berryhill), rather than those with .php, .pl, .html, or .htm extensions (which even ConnectU concedes were searched).  *See* ConnectU's Status Report at 9.

This new detail underscores the ever-expanding demands by ConnectU and the degree to which its arguments constitute an expanding fishing expedition.  Beginning in the summer of 2005, and continuing to as recently as five days before the March 3, 2006 hearing, **the Facebook Defendants** repeatedly requested that **ConnectU** specifically identify what were the database definitions it was attempting to locate, and where in its own code production this same information existed.  *See* Cooper Decl. Exh. H.  However, ConnectU at all times refused to provide the Facebook Defendants with such a definition of "database definitions," an identification of their code elements (let alone the identity of possible file extensions), or even a cogent explanation of their relevance to this case.

In any event, Guidance has confirmed that what it understands are database definition files act or, more appropriately, can act, as a reference file for how a database should create tables which record information.  Butterworth Decl. ¶ 9.   That is to say, a database definition file is not a fixed file format that can simply be located in  imaging absent specific search parameters.  *Id.*  Accordingly, even EnCase-certified experts agree that ConnectU has not

provided the information necessary that to adequately search for a database definition file on the submitted computer media.  *Id.* ¶¶ 9, 10.

Therefore, the examination process is far better served by searching for a specific unique set of keywords which may define the records.  Hence, for any meaningful searching of the alleged missing database definitions, ConnectU must precisely define those definitions for purposes of the further search.

### 4.    Guidance Confirms that File Fragments, or "Slack Space," Is Overly Burdensome to Search

ConnectU also has argued that Mr. Berryhill's prior forensic recovery efforts were deficient, because it contends what is known as computer "slack space" (*i.e.*, unallocated memory) also needed to be searched.  Cooper Decl. Exh. A, at 12:8-13:10.  *See also*  ConnectU's Status Report, at 11.   However, Guidance now has confirmed what counsel for the Facebook also advised the Court at the March 3, 2006 hearing — namely, that any such search is overly burdensome and prohibitively expensive.

Specifically, Guidance confirms that searches for information found in slack or unallocated space is wholly improper in civil litigation because such "file slack" is exclusively fragmented and unallocated space is highly circumstantial.  Butterworth Decl. ¶ 11.    In other words, a file fragment may exist, but there may be no other information about it that will shed light on file activity.  *Id.*  Analysis of file slack space thus is overly burdensome, expensive and, virtually always, fruitless in civil matters such as this because it must be done entirely manually. *Id.*

Indeed, Guidance's forensic specialist who performed the independent review of Mr. Berryhill's efforts has completed forensic examinations on literally thousands of computers.  *Id.* He specifically has noted that ConnectU's assertion that a fragment of a file located in the

unallocated (*i.e.*, unused area) space of a drive, or potentially be located in file slack of an unrelated file, is flawed. *Id.* A file fragment is simply that, a fragment. *Id.* An examiner will be unable to piece the fragments together. *Id.* The tool that Guidance makes, sells, and is currently in use by a high percentage of all computer forensic examiners in the world, attempts to do this automatically by parsing through various table records and analyzing the file extensions. *Id.* Without knowing the file extensions, there is simply no way an examiner would be able to link these fragments together. *Id.* ConnectU has provided no such information — and its demand for searches of slack space is arguably the quintessential proof that its demands amount to an ever expanding – and expensive -- fishing expedition.

> **5.     Production of Information Concerning Directory Creation,
> File Creation, Last Modified, Last Accessed Dates and the Like**

ConnectU further incorrectly claimed at the March 3, 2006 hearing that the absence of certain "metadata" information in the file folders the CDs produced to it suggests that their own independent expert needs to image the Facebook Defendants' relevant devices. *See* Cooper Decl. Exh. A, at 17:9-22:4. In that regard, in its Status Report, ConnectU via attorney argument further claims it needs directory creation, file creation, last-modified, last-accessed dates, computer and program activity dates, as well as the original directory structure. *See* ConnectU's Status Report, at 11-13.

However, as Guidance experts have noted, some of the metadata information demanded by ConnectU can be easily produced if it will simply advise the Facebook Defendants what it needs. Moreover, Guidance confirms that the logic for why ConnectU believes it needs certain other types of information is fatally flawed. Butterworth Decl. ¶ 12.

For instance, as part of its further production, Guidance anticipates it will easily be able to provide the directory creation dates, thus mooting that issue. *Id.* However, the arguments

ConnectU presented at the March 3, 2006 hearing concerning folder information, such as file creation, last-modified, and last accessed dates is based on an incorrect understanding of forensic recovery efforts, and does not warrant the relief ConnectU requests. Specifically, ConnectU claimed that unlike the folder information within its possession, an independent image retrieved from Facebook's devices would show the dates on files were created, modified, and last accessed. Cooper Decl. Exh. A, at 20:11-20. As Guidance confirms, however, ConnectU's attorneys' understanding was inaccurate. Butterworth Decl. ¶ 12. A folder like those shown to the Court at the hearing is its own entity and possesses its own attributes. Files can be copied from it, in it, and to it by any number of methods, and it will depend upon the method selected as to what date and time file attributes occur. *Id.* Therefore, ConnectU cannot obtain the type of information it claims — at least not in the manner it alleges.

Nonetheless, Guidance also notes that if ConnectU desires to obtain file attributes that include information on dates when a file is last accessed, last created, etc., as opposed to metadata relating to those subjects, such information can (and will) be produced by Facebook, provided ConnectU specifies the particular files. *Id.* To date, perhaps because of its incorrect understanding of the imaging information, ConnectU has not made any such requests.

With respect to computer and program activity dates, Guidance has confirmed that, again contrary to ConnectU's attorneys' assumptions, given the source of the relevant electronic information — including the fact that it exists at least on some devices on Linux-based servers — no journal activity will exist. Butterworth Decl. ¶ 13. Likewise, the likelihood that these file attributes would be expected for any Windows-based programs also is unreasonable, *Id.* Nonetheless, Guidance intends to further confirm the lack of computer and program activity dates. If its beliefs prove un-founded, and such information can reasonably be retrieved, it will

be produced (or reasons will be offered why the effort will not produce further information).

Finally, ConnectU suggested it needs to independent image the devices to see (a) authorized user identifications; (b) links showing use of external devices connected to the device; and (c) the complete original directory structure. Cooper Decl. Exh. A, at 20:25-21:16; ConnectU's Status Report at 13. However, Guidance again confirms that these needs are wholly abnormal for eDiscovery, not reasonably calculated to lead to relevant information about **missing code or software**, and among the most obvious examples of why ConnectU's demand for its own imaging actually amounts to an extension of its admitted fishing expedition. *See* Butterworth Decl. ¶¶ 6.c., 14.

## III.    THE ADDITIONAL ENCASE CERTIFIED REVIEW PROVES THERE IS NO EVIDENCE OF SPOLIATION OR SUPPRESSION OF EVIDENCE

Given that essentially all of the arguments ConnectU offered why it needs its own forensic imaging of the Facebook Defendants' electronic devices have been refuted by the independent examination of two specialists, it is hardly surprising that ConnectU's principal claims that it has uncovered evidence of spoliation and/or suppression of evidence also fail.

### A.    Guidance Confirms that No Evidence of Spoliation Exists, as ConnectU Has Alleged Via Attorney Argument

In that regard, ConnectU argued at the March 3, 2006 hearing that because device 371-01 is a hard drive that Mark Zuckerberg used in the 2003-2004 timeframe, and it contains no facebook.com code, Harvard Connection code, facemash code, or coursematch code, Mr. Zuckerberg must have deleted all relevant code or software from that device. *See* Cooper Decl. Exh. A, at 5:25-6:14; ConnectU's Status Report, at 4. ConnectU further claimed that it found a "file or program" on one other device, which it later identified in its Status Report as device 371-02, "that deletes old versions of code." Cooper Decl, Exh. A at 6:15-18; ConnectU's Status Report, at 4. However, both of these arguments lack merit and are again largely refuted by the

independent examinations of Mr. Berryhill and Mr. Butterworth.

In that regard, ConnectU's first argument is that because it has no facts to support its case from Mr. Zuckerberg's hard drive, the Court must infer spoliation. ConnectU's premise is absurd. The absence of evidence is a failing of ConnectU's case and nothing more. Further, device 371-01 is the corrupted device for which data cannot be recovered from the damaged portions.

As noted, ConnectU also claims there is evidence of spoliation because it found a file that "deletes old versions of code" on Device No. 371-02. Notably, though, since the March 3, 2006 hearing, ConnectU has refused to divulge any details concerning that file when the Facebook Defendants inquired. *See* Cooper Decl. Exhs. I-K.

Nonetheless, Guidance examined Device No. 371-02 and concluded that ConnectU must be referring to a program called "Subversion," which allows software developers to maintain versions of their software. Butterworth Decl. ¶ 15. However, Guidance further noted that the existence of that program on a software server is wholly expected and in no way evidence of any improper intent to delete files. *Id.* To the extent that this is the file to which ConnectU refers, its silence on the subject proves that it too understands the version control software is not actually designed to delete relevant code.

**B.    The Arguments ConnectU Offers for Suppression of Evidence Are Likewise Flawed**

ConnectU separately suggested at the March 3, 2006 hearing that alleged inconsistencies concerning the whereabouts of one of Mr. Zuckerberg's hard drives (and alleged promises to produce it) in the Facebook Defendants' prior interrogatory responses, motions, and statements at the November 18, 2005 hearing, all reflected that the Facebook Defendants are deliberately suppressing evidence of Mr. Zuckerberg's (and the Facebook's) copying of Harvard Connection

code.  *See* Cooper Decl. Exh. A, at 6:18-8:19;  34:25-39:22.

A fundamental problem with all of ConnectU's arguments, however, is that they were raised for the first time at the March 3, 2006, hearing in what amounted to an attempted "sand-bag" attack on counsel for Defendants that led to unnecessary confusion.  Any misunderstanding with respect to earlier representations concerning hard drives should have been directed in the first instance to counsel to ensure prior discovery responses were not misleading and, if necessary, corrected.  Instead, ConnectU rushed to the Court in the hope that the attack on counsel would bolster the main (and incorrect) arguments it was presenting concerning why it believed earlier forensic efforts were deficient, and why it should receive Mr. Zuckerberg's hard drive in particular.

As a result, ConnectU apparently wholly misunderstood what were the hard drives that had been imaged, and what promises had been made about their production.  For instance, at the March 3, 2006 hearing, ConnectU, citing statements contained at page 34 of the hearing transcript of the November 18, 2005 hearing, argued incorrectly that the Facebook Defendants previously offered to produce one of Mark Zuckerberg's hard drives to ConnectU for forensic imaging, if it was located.  *See* Cooper Decl. Exh. A, at 34:4-35:15.  However, as counsel for Facebook noted, a careful reading of the entire passage from the November 18, 2005 transcript beginning at page 33, proved that the discussion actually concerned what devices were within the Facebook Defendants' custody or control.  *See* Cooper Decl. Ex. B, at 33:15-35:2.  That exchange in no way suggested that the Facebook Defendants ever offered to produce Mark Zuckerberg's hard drive to ConnectU — let alone that it was now suppressing evidence to avoid that promise.

The Facebook Defendants also produced two Interrogatory Responses on February 6,

2006, that set forth in detail the history of all of the relevant devices that had been imaged — *i.e.*, when they had been used by the Defendants, where they existed, when they had been imaged, etc. *See* Cooper Decl. Exh. L (Facebook's Responses to Interrogatories 25-26). Notably, the Facebook Defendants even permitted ConnectU to serve one extra interrogatory beyond the presumptive limit precisely to ensure these responses clarified what were its prior efforts. **None of ConnectU's arguments suggests those responses were inadequate** — indeed, ConnectU did not even refer to the responses during its arguments on March 3, 2006. If these Responses somehow had created any ambiguity with respect to earlier interrogatory responses or statements of counsel, ConnectU should have raised that issue with counsel before rushing to Court, so that any necessary supplementation could be made.

Indeed, at the hearing, ConnectU actually compounded the confusion by conflating references to the various hard drives that had been imaged. In particular, ConnectU argued that prior interrogatory responses and statements from counsel suggested that Device 371-01, a corrupted hard drive that Mark Zuckerberg used from 2003-2004, had been lost, when in fact it was in use through Summer 2005 and at all times was within the Facebook Defendants' custody or control. Moreover, ConnectU argued it had been turned over in August, 2005. However, the device was located by Facebook personnel in August, but was not given to Facebook's counsel until late October 2005 because Facebook personnel knew that the device had malfunctioned and did not expect it to contain anything recoverable, including source code.[5]

The problem is that the "lost" hard drive to which the Facebook Defendants previously referred existed on a different laptop — the laptop from which Device 371-05 was eventually

---

[5] Facebook Defendants will amend its responses to Interrogatories 25 and 26 to reflect this promptly.

produced, and which also at one time belonged to Mr. Zuckerberg.  *See* ConnectU's Status

Report, Ex. 3, at 100:10-101:14.[6]  Although Device 371-01 also was used by Mr. Zuckerberg,

the confusion stemmed from the fact he owned two different computers in the 2003-2004 time

frame (the 371-01 and 371-05 laptops) and in 2003 had replaced the hard drive that originally

was used with the laptop from which Device 371-05 eventually was extracted.  Further

compounding the problem, the second owner of the laptop may have re-formatted the hard drive

then used in Device 371-05 when he took possession of that laptop.

In order to avoid any further confusion, the Facebook Defendants will attempt to clarify

whether a second, additional hard drive ever existed on the laptop from which Device 371-05

was produced, or whether Device 371-05 was in fact the hard drive used in 2003-2004 by Mr.

Zuckerberg to create the original facebook.com software and the information was lost due to re-

formatting.  If any existing discovery responses are incorrect or ambiguous, the Facebook

Defendants will, of course, supplement them.

However, regardless of whether such supplementation is necessary, the record

unequivocally reflects that there has not been any suppression of evidence, as suggested by

ConnectU.  Rather, ConnectU simply misunderstood the nature of the record, and could have

easily remedied that misunderstanding had it addressed them in the first instance with the

Facebook Defendants, rather than rushing to Court.

## IV.    CONNECTU'S ADDITIONAL DEMAND FOR DEPOSITIONS ARE UNWARRANTED

ConnectU separately argues that due to its ongoing forensic recovery investigations, it

should be permitted to take depositions of each of the individual Defendants, as well as of

---

[6] This "lost" hard drive was used with Device 371-05 and Facebook Defendants'
responses to Interrogatories 25 and 26 will be amended immediately to reflect this.

Facebook again, which depositions will not count towards the presumptive limit of ten (10) depositions contemplated by the Federal Rules of Civil Procedure. *See* Cooper Decl. Exh. A, at 15:18-17:8. Such depositions are unwarranted.

ConnectU has not explained why it needs separate depositions of any individual defendant other than Mark Zuckerberg. With respect to Mr. Zuckerberg, his deposition has been noticed in the California litigation to occur on April 6, 2006. Because both actions involve the same document production, Defendants have informed ConnectU's counsel that he may ask questions related to forensic recovery efforts in the deposition, so long as they are not duplicated in this action. *See* Cooper Decl Exh. M.

## V.  CONNECTU ITSELF HAS UNDERTAKEN NONE OF THE PROCEDURES IN ITS OWN PRODUCTION THAT IT DEMANDS OF FACEBOOK

Perhaps no evidence demonstrates that ConnectU's demands are unwarranted as does its own efforts to date to locate Harvard Connection code from its own witnesses. Since the March 3, 2006 hearing, the Facebook Defendants through Guidance have reviewed the contents of the 4 CD's of ConnectU source code production labeled: (a) C011338; (b) C005288; (c) C011339; and (d) C011143. Butterworth Decl. ¶ 16. Guidance has made an initial review of this material, using the same criteria that it has used in analyzing the devices provided by the Facebook Defendants. *Id.* At best, there are only 171.69 Megabytes of information spanning the 4 CD's, which data appears to be nothing more than a back up of the Harvard Connection website (HCSite.zip), along with some other "SQL table" dumps with some folders containing entire copies of websites. *Id.*

In fact, there are virtually no references to recovery of deleted items, to file fragments, or to searching in file slack on these four CDs. *Id.* There also is no indication that multiple versions of the software was produced. If this information is truly relevant to this action, as

ConnectU so vehemently argues, the Court may well wonder why ConnectU has not produced it. Moreover, all of these files are archived in their corresponding folders. *Id.* One of the CDs, labeled C011338, has folders which were created on August 15, 2005, just two weeks prior to the CD's being produced to Facebook. *Id.* This is not a forensically sound production, and a far cry from the efforts of the Facebook Defendants. *Id.*

As if those failures did not by themselves undermine ConnectU's argument, another CD, labeled C005288, contains a single file entitled "Connectu_sourcecode.txt" which has a file created date of June 2, 2005 at 5:44 PM. *Id.* That is the time the CD itself was prepared, indicating that this process did not preserve the original files, metadata, or any of the other information it claims Mr. Berryhill should have himself sought. *Id.*

The Facebook Defendants have for months advised ConnectU that any forensic efforts that ConnectU demands from the Facebook Defendants must be emulated by ConnectU and each of the Counter-Defendants. *See* Cooper Decl. Exh. L. ConnectU has remained silent every time this issue has been raised. *Id.* Clearly, however, if this Court orders the Facebook to undertake any further forensic actions, such as production of electronic devices to an independent expert, it also should ensure that ConnectU also undertakes measures to ensure it too produces the same forensic information.

## VI.  CONCLUSION

For the foregoing reasons, Facebook Defendants respectfully request that the Court deny ConnectU's renewed Motion to Compel Production of electronic devices for imaging by ConnectU's own expert. Alternatively, if the Court harbors any doubts concerning the Facebook Defendants' previous forensic recovery efforts attempting to locate code or software, the Facebook Defendants request that the devices be turned over to a Court-appointed expert for independent analysis. The party whose position that expert deems least defensible shall be

charged the expense of such additional recovery efforts.  Moreover, the Court should order that

ConnectU certify that it too has undergone all of the forensic recovery procedures that it

demands the Facebook Defendants abide by.


Dated:  March 29, 2006.                          Respectfully submitted,

                                                 /s/  Monte M.F. Cooper
                                                 Monte M.F. Cooper*
                                                 I. Neel Chatterjee*
                                                 G. Hopkins Guy, III*
                                                 Robert D. Nagel*
                                                 ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                 1000 Marsh Road
                                                 Menlo Park, CA  94025
                                                 Telephone:  (650) 614-7400
                                                 Facsimile:  (650) 614-7401
                                                 hopguy@orrick.com
                                                 nchatterjee@orrick.com
                                                 mcooper@orrick.com
                                                 rnagel@orrick.com

                                                 Steven M. Bauer
                                                 Jeremy P. Oczek
                                                 PROSKAUER ROSE LLP
                                                 One International Place, 22nd Floor
                                                 Boston, MA 02110-2600
                                                 Telephone:     (617) 526-9600
                                                 Facsimile:     (617) 526-9899
                                                 sbauer@proskauer.com
                                                 joczek@proskauer.com

                                                 ATTORNEYS FOR MARK ZUCKERBERG,
                                                 DUSTIN MOSKOVITZ, ANDREW
                                                 MCCOLLUM, CHRISTOPHER HUGHES, and
                                                 THEFACEBOOK, INC.

                                                 * Admitted Pro Hac Vice

DOCSSV1:452964.5

- 19 -