# EXHIBIT H



Not Reported in F.Supp.                                                                    Page 1
Not Reported in F.Supp., 1994 WL 376046 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

John BAILEY, Plaintiff,

v.

NEW YORK CITY TRANSIT AUTHORITY,
Manhattan and Bronx Surface Transit Operating
Authority, Denson Rosser, William T. McKnight,
and William I. Buchanan, Defendants.

**Nos. 92 Civ. 2674 (PKL), 93 Civ. 0209 (PKL).**

July 18, 1994.

MEMORANDUM ORDER

LEISURE, District Judge:

**\*1** Plaintiff *pro se* John Bailey filed two Complaints for wrongful termination of employment, pursuant to 42 U.S.C. § 1983. The first Complaint, 92 Civ. 2674 (PKL), was filed on April 14, 1992, and the second Complaint, 93 Civ. 0209 (PKL), was filed on January 14, 1993. The cases were referred to the Honorable Theodore H. Katz, United States Magistrate Judge, Southern District of New York, for all purposes including dispositive motions, on April 17, 1992, and March 1, 1992, respectively. On March 5, 1993, the two Complaints, both alleging the same cause of action arising out of the same events, were consolidated. On July 14, 1993, defendants New York City Transit Authority, Manhattan and Bronx Surface Transit Operating Authority, Denson Rosser, William T. McKnight, and William I. Buchanan (collectively "defendants") moved to dismiss the Complaints on the ground that plaintiff's claims were barred by the applicable statute of limitations. On July 16, 1993, Magistrate Judge Katz issued an Order that he would consider the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56(c) since both parties submitted documents in addition to the pleadings. On March 23, 1994, Magistrate Judge Katz filed a Report and Recommendation recommending that summary judgment be granted in favor of defendants and that the consolidated action be dismissed. Report and Recommendation (the "Report"), dated March 23, 1994.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days after being served with a copy of the Report, to file written objections to Magistrate Judge Katz's Report and Recommendation. *See also* Fed.R.Civ.P. 6(a) and (e). On April 22, 1994, plaintiff delivered to this Court objections to the Report. Plaintiff's Objections to the Report and Recommendation ("Objections"), dated April 13, 1994. Since the Objections were delivered to the Court on April 22, 1994, beyond the 10-day period, with no request for an extension of time for filing objections having been made, and further, since plaintiff never filed the Objections with the Clerk of the Court, the Court need not consider plaintiff's Objections. Nevertheless, the Court has considered plaintiff's objections and has undertaken a *de novo* review of the record. Based upon that review, the Court, as discussed below, adopts the Report and Recommendation in its entirety over plaintiff's Objections, dismisses the consolidated action, and denies plaintiff's motion to amend his Complaint.

BACKGROUND

Plaintiff was employed as a bus operator for defendant Manhattan and Bronx Surface Transit Operating Authority ("MaBSTOA"), a subsidiary of the New York City Transit Authority ("NYCTA"), from June 2, 1980, until his dismissal by defendant Denson Rosser, General Superintendent at the Hudson Pier Depot, on August 15, 1988. Plaintiff's dismissal was based on his testing positive for cannabinoids, a controlled substance. Report at 3. Pursuant to the "New York City Transit Authority Policy/Instruction" on the subject of "Drugs and Controlled Substances" issued March 10, 1987, all MaBSTOA employees can be ordered to submit to drug screening testing and are forbidden to use controlled substances, which includes cannabinoids. Affidavit of John Bailey, sworn to on August 15, 1992 at Ex. 1A ("NYCTA P/I"). Plaintiff submitted to a drug screening test on August 5, 1988, as part of an annual on-the-job physical examination. Report at 3; *see generally* NYCTA P/I § 5.3. Plaintiff did not work for MaBSTOA at any time after his August 15, 1988 discharge, although plaintiff erroneously received a holiday pay check dated January 7, 1989. *Id.* at 4 & n. 3.

**\*2** On August 26, 1988, a "Third Step Appeal Hearing" was conducted, at which defendant William

Not Reported in F.Supp.                                                                                                Page 2
Not Reported in F.Supp., 1994 WL 376046 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

T. McKnight, a hearing officer, was present. *Id.* at 4-5. The hearing sustained plaintiff's dismissal. *Id.* at 5. Plaintiff's union representative, who was present at the hearing, indicated his decision to appeal to an impartial arbitrator. *Id.* The arbitration hearing was held on September 6, 1988, immediately following which plaintiff and defendant McKnight signed a document entitled "Step I Decision." *Id.* The "Step I Decision" sustained plaintiff's dismissal but provided for possible reinstatement if plaintiff completed the New York City Transit Authority's counseling program, known as the Employee Assistance Program ("EAP"). *Id.* at 6; *see generally* NYCTA P/I § 9.0. While plaintiff enrolled in the counseling program, plaintiff failed to complete it. *Id.* at 7. By memorandum dated December 23, 1988, an EAP counselor advised defendant McKnight, that plaintiff had been discharged from the program. *Id.* In a memorandum dated January 18, 1989, the Manhattan Division of NYCTA recommended that plaintiff, as a result of his dismissal from EAP, be permanently terminated from MaBSTOA. *Id.* at 8. Defendants describe this memo as "calendar action," the administrative means of clearing the budgetary line which had been reserved for plaintiff pending the determination of his eligibility for reinstatement upon completion of EAP. *Id.* at n. 9.

On April 11, 1989, an arbitration hearing was conducted. The board concluded that due to plaintiff's failure to enroll in EAP, plaintiff should be dismissed. While the board incorrectly found that plaintiff did not enroll in EAP, it is beyond cavil that plaintiff failed to meet the requirements for reinstatement since he was dismissed from EAP. Plaintiff does not deny that he was dismissed from EAP, nor does plaintiff allege facts suggesting his dismissal from EAP was wrongful. *Id.* at 8-9. By letter, dated March 22, 1990, a review of the arbitration decision was requested. *Id.* at 9. Defendant William I. Buchanan, II, Director of Labor Relations, by letter dated April 2, 1990, declined to review the matter further. *Id.*

Plaintiff filed suit pursuant to 28 U.S.C. § 1983, alleging wrongful termination of employment. Defendants moved to dismiss on the grounds that plaintiff's claims were barred by the applicable statute of limitations. Judge Katz's Report recommended that defendants be granted summary judgment. The Report found that (1) plaintiff's claim accrued no later than September 6, 1988, (2) the limitations period was not tolled, (3) defendants were not estopped from pleading the limitations defense, (4) the limitations period expired September 7, 1991, and

(5) plaintiff's Complaints, filed December 5, 1991, and March 20, 1992, were untimely and therefore must be dismissed. Plaintiff objects to the Report arguing that plaintiff sufficiently alleged a continuing violation thereby avoiding the statute of limitations bar. Plaintiff also seeks permission to amend the Complaint pursuant to Fed.R.Civ.P. 15(b).

### DISCUSSION

### I. PLAINTIFF'S CONTINUING VIOLATION CLAIM

**\*3** Plaintiff objects to the Magistrate Judge's finding that plaintiff's claim is time-barred. Plaintiff contends that his Complaint and Affidavits sufficiently allege a continuing violation of his civil rights. The Court finds, however, that plaintiff has not shown a continuing violation and, therefore, the commencement of the statute of limitations was not delayed and, accordingly, plaintiff's claim was untimely.

Plaintiff argues that he is entitled to the continuing violation exception because he has demonstrated a series of related acts, one of which, the April 11, 1989 arbitration decision, falls within the statute of limitations period. Plaintiff's purported related acts consist of the 1988 physical examination, his discharge from MaBSTOA, the arbitration proceedings, and his removal from EAP. This Court finds, however, that plaintiff has failed to allege a continuing violation.

While the Second Circuit has applied continuing violation theory to delay the commencement of the statute of limitations governing § 1983 actions, *see Cornwell v. Robinson,* No. 93-7618, slip op. (2d Cir. May 3, 1994), "[g]enerally, courts in this circuit look upon continuing violations arguments unfavorably, however, and thus, only approve them in 'compelling circumstances.' " *Ishikawa v. City of New York Dep't of Cultural Affairs,* No. 91-7269, 1993 WL 362393 at * 9 (S.D.N.Y. Sept. 14, 1993) (citing *LaBeach v. Nestle Co., Inc.,* 658 F.Supp. 676, 687 (S.D.N.Y.1987)). "[D]iscrete incidents of discrimination that are not related to discriminatory policies or mechanisms may not amount to a continuing violation." *Cornwell,* No. 93-7618, slip op. at 3845 (2d Cir. May 3, 1994). "[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1994 WL 376046 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id.*

In the instant case, plaintiff has alleged a series of related acts, however, the acts neither amount to, nor are they pursuant to, a discriminatory policy. Plaintiff's dismissal from MaBSTOA, and the events that followed, relate to NYCTA's policy forbidding the use of controlled substances by its employees. *See generally* NYCTA I/P. This is not a discriminatory policy. The Court finds, therefore, that plaintiff's allegations will not support a continuing violation claim. Accordingly, the running of the statute of limitations was not delayed, and plaintiff's complaint was not timely filed. Appropriately, summary judgment is granted in favor of all defendants.

## II. PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

Plaintiff has moved for permission to file an amended complaint pursuant to Fed.R.Civ.P. 15(b) ("Rule 15(b)"). Rule 15(b) provides in pertinent part:
[w]hen issues not raised by the pleadings are *tried* by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time even after judgment.

**\*4** Fed.R.Civ.P. 15(b) (emphasis added). At this stage in the proceedings, plaintiff's reliance on Rule 15(b) is misplaced. "Rule 15(b) is reserved for those '[i]nstances in which the need to [amend the pleadings] does not become apparent until so close to trial, or after the trial has actually commenced, that the request for a change can be made only when the trial is under way.' " *Mayes v. Local 106, Int'l Union of Operating Engineers,* No. 86-41, 1992 WL 335964 (N.D.N.Y. Nov. 12, 1992) (citing 6A Wright & Miller, Federal Practice and Procedure § 1491 (West 1990)). At this early stage in the instant litigation, the evidence and issues to be tried have not been presented, therefore, plaintiff's motion to amend pursuant to Rule 15(b) is premature. Accordingly, the Court denies plaintiff's request to amend his Complaint pursuant to Rule 15(b).

While plaintiff's motion to amend the pleadings was brought pursuant to Fed.R.Civ.P. 15(b), the Court notes that even if plaintiff were to have raised his

motion under Fed.R.Civ.P. 15(a), leave to amend would be denied. Fed.R.Civ.P. 15(a) provides in relevant part:
A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served.... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

The United States Supreme Court has emphasized that a district court's "outright refusal to grant the leave without any justifying reason appearing for the denial is [an] abuse of ... discretion." *Foman v. Davis,* 371 U.S. 178, 182 (1962). Leave to amend should be denied only under limited circumstances "such as undue delay, bad faith, or ... futility of amendment, etc." *Id.* "Obviously where a defect in the complaint cannot be cured by amendment, it would be futile to grant leave to amend." *Cortec Industries v. Sum Holding L.P.,* 949 F.2d 42, 50 (2d Cir.1991).

In the instant case, granting leave to amend the time-barred complaint would be futile. The Court has already found that plaintiff cannot avoid the statute of limitations bar to his action. There are no grounds for an equitable estoppel argument against defendants, *see* Report at 19-22, a finding which plaintiff has not objected to. Further, as discussed above, the Court finds that plaintiff's attempt to advance a claim based on a continuing violation claim in order to avoid the statute of limitations also fails. There are no facts before the Court which demonstrate that the Complaint's untimeliness can be cured. Accordingly, a request to amend the Complaint pursuant to Fed.R.Civ.P. 15(a) would be denied.

## CONCLUSION

For the foregoing reasons, the Report and Recommendation of Magistrate Judge Katz, dated March 23, 1994, is adopted in its entirety over plaintiff's Objections. Accordingly, the action consolidating 92 Civ. 2674 (PKL) and 93 Civ. 0209 (PKL) is dismissed as to all defendants. Further, plaintiff's motion to amend the Complaint is hereby denied.

**\*5** SO ORDERED.

S.D.N.Y.,1994.
Bailey v. New York City Transit Authority

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 4
Not Reported in F.Supp., 1994 WL 376046 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**


Not Reported in F.Supp., 1994 WL 376046 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:93cv00209 (Docket) (Jan. 14, 1993)
• 1:92cv02674 (Docket) (Apr. 14, 1992)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



166 F.3d 332                                                                                             Page 1
166 F.3d 332, 1998 WL 808367 (C.A.4 (Md.))
**(Cite as: 166 F.3d 332)**

C

Briefs and Other Related Documents

NOTICE: THIS IS AN UNPUBLISHED OPINION.(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA4 Rule 36 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Fourth Circuit.

E. DAVID GABLE & ASSOCIATES, Plaintiff-Appellant,

v.

DEAN WITTER REYNOLDS, INCORPORATED, Defendant-Appellee.

**No. 97-1499.**

Argued: Sept. 24, 1998.
Decided: Nov. 23, 1998.

Appeal from the United States District Court for the District of Maryland, CA-96-1534-HAR; John R. Hargrove, Senior District Judge.

Richard Louis Gershberg, GERSHBERG & PEARL, L.L.P., Owings Mills, Maryland, for Appellant. Kathleen A. Ellis, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellee.
ON BRIEF: Lewis A. Dardick, Tina Sharma McCormack, GERSHBERG & PEARL, L.L.P., Owings Mills, Maryland, for Appellant. John R. Wellschlager, PIPER & MARBURY, L.L.P., Baltimore, Maryland, for Appellee.

Before LUTTIG and MOTZ, and BULLOCK, C.J.

**OPINION**

PER CURIAM.

**\*1** Appellant E. David Gable & Associates brought this diversity action alleging, *inter alia*, breach of contract, breach of fiduciary duty, negligence, and intentional interference with contract, arising out of appellee Dean Witter Reynolds's suspension of trading in appellant's stock account with Dean Witter. The district court granted summary judgment in favor of Dean Witter on all counts. For the reasons that follow, we affirm.

I.

In March, 1996, E. David Gable opened two trading accounts with account executive Mark Stull at the Baltimore office of Dean Witter Reynolds, Inc.-one in the name of Gable & Associates and the other in the name of Grandname Ltd. ("Grandname"), a foreign corporation for whom Gable served as an agent.

On March 12, 1996, Gable deposited 100,000 shares of Texas American Group, Inc. ("TXAG") stock into each account. On that date, he informed Stull that he was also holding six million shares of TXAG on behalf of Grandname. Stull encouraged Gable, then and on several occasions thereafter, to deposit all six million shares with Dean Witter. Between March 29 and April 12, Gable ordered a number of sales from the Gable & Associates account, and on April 10 deposited the six million shares of TXAG stock into the Grandname account. On Friday, April 12, Gable ordered 300,000 shares to be transferred from the Grandname account to the Gable & Associates account. Later that day, a trader in Dean Witter's New York office informed Stull that Dean Witter would not trade TXAG shares from the Gable & Associates account until an investigation of those shares could be completed. Stull immediately informed Gable that there was "a temporary stop on trading ... because of an SEC investigation."

The next business day, Monday, April 15, Stull and his manager, Daniel Deegan, tried to determine the reason for the trading suspension. In the process, Dino Sainati, a Dean Witter employee in the Restricted Securities Department, advised Stull to fill out a questionnaire about the TXAG shares and call TXAG's transfer agent to determine how many shares were outstanding. Meanwhile, Sainati called Alan Humphrey, president of TXAG, to find out whether there were any restrictions on the sale of the shares. Humphrey informed him that the shares were subject to a one or two year holding period, during which they were not to be sold.

On Tuesday, April 16, Stull advised Gable that the investigation was an internal, rather than SEC, investigation. The next day, Gable and his attorney David Pearl visited Stull's office and demanded either the proceeds from sales on April 11 and 12 and the resumption of trading or the turnover of all the Gable & Associates and Grandname shares. After several more meetings, Dean Witter informed Gable and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Pearl that it would no longer sell any of the TXAG shares.

On Monday, April 22, 1996, ten days after the initial trading suspension, Pearl faxed Dean Witter letters requesting transfer of all TXAG shares to other brokerage firms. Dean Witter informed Pearl that it could not accept faxed signatures, so the next day Pearl hand-delivered letters with the same request. Three days later, on April 26, Dean Witter transferred all 320,000 shares in the Gable & Associates account to Merrill Lynch and all but 100,000 of the shares in the Grandname account to Legg Mason. On May 1, while reviewing a stock ledger of Grandname's account, Pearl discovered Dean Witter's failure to transfer the 100,000 shares. Pearl called Dean Witter on that date, and the broker transferred the remaining 100,000 shares, as it had originally been ordered, to the Legg Mason account. Between April 12, when Dean Witter suspended trading, and April 26, when all but the 100,000 shares were transferred, TXAG stock price dropped from $1.43 per share to $0.63.

*2 Gable & Associates filed this lawsuit on May 15, 1996. On November 18, 1996, Dean Witter filed a motion for summary judgment, and by February 3, 1997, briefing on that motion had been completed. Four days later, plaintiffs filed a Motion for Leave to Amend the Complaint and a proposed amended complaint. The district court denied plaintiff's motion to amend and granted the defendant's motion for summary judgment on all counts. Gable & Associates appeals the district court's orders denying its motion to amend and granting summary judgment in favor of the defendant Dean Witter.

## II.

Gable & Associates first contends that the district court abused its discretion by denying appellant's motion to amend its complaint in light of evidence acquired from Dean Witter's eleventh-hour production of relevant documents. The district court denied the motion, which was made after all briefs had been submitted on defendant's motion for summary judgment, on the grounds that it was "prejudicial to the opposing party and unduly late." Because we find that the timing of appellant's motion provided ample justification for the district court's denial, we affirm the order.

Appellant argues that it did not have access to Dean Witter's internal policy manuals until they were produced late in the discovery process, and that it

merely sought to amend its complaint to conform to this newly acquired evidence. However, the theory appellant advanced in its amended complaint, that appellee Dean Witter breached its contract and fiduciary duty by not conducting its investigation in a timely manner, was available to appellant from the outset. As appellee argues, the internal policies to which appellant refers in its amended complaint simply reflect SEC regulations and case law to which appellant had access at the time of its original pleadings. The district court correctly concluded that appellee would be unduly prejudiced if appellant were permitted to shift the focus of its complaint-from a claim that appellee breached its contractual and fiduciary duties merely by suspending trading to one that the suspension and investigation were lawful but untimely-in response not to newly acquired evidence but to a persuasive summary judgment submission.

Similarly, the "newly acquired" information assertedly justifying appellant's attempt to amend Counts I and II, in which appellant alleged appellee breached their contract by failing to trade on April 9 and on or about April 10, was actually information that was peculiarly within appellant's possession. An investor alleging liability for failure to execute its trade orders may be expected to possess information at the time of its complaint, or at least before extensive briefing has been conducted, regarding the volume and timing of its own sell demands. As a result, the district court did not abuse its discretion by denying a motion to amend *after* the summary judgment briefs had been filed. See *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc., 43 F.3d 922, 941 (4th Cir.1992).* This is especially so where, as here, the motion appears to be no more than "an apparent attempt to avoid the likely effect of summary judgment." *Kleinhans v. Lincoln Savings Profit Sharing Trust, 810 F.2d 618, 625 (7th Cir. 1987). See also Jameson v. Arrow Co., 75 F.3d 1528, 1535 (11th Cir.1996)* (affirming denial of motion to amend filed one month after motion for summary judgment); *Cleveland v. Porca Co., 38 F.3d 289, 297-98 (7th Cir.1994)* (affirming denial of motion to amend filed after close of discovery and briefing on motion for summary judgment). Because the district court did not abuse its discretion in concluding that an amendment of the complaint at such a late stage in the case would unfairly prejudice appellee, we affirm the order denying appellant's motion to amend.

## III.

**\*3** Appellant also argues that the district court erred in granting appellee's motion for summary judgment on its *unamended* complaint. Because we find that the evidence in this case, after adequate time for discovery, "is so one-sided that one party must prevail as a matter of law," *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), we affirm the district court's grant of summary judgment with regard to all but a single count of appellant's complaint.

Three of the ten counts in appellant's complaint alleged damages arising out of appellee's breach of its brokerage contract. In counts I and II, appellant alleged that appellee breached its contract by failing to execute sales ordered on *April 9, 1996* and *on or about April 10, 1996,* for *20,000* and *62,000* shares, respectively, of TXAG stock. In response to appellee's brief in support of its motion for summary judgment, after it had become clear that the claim had no factual basis, appellant asked the district court to "construe" counts I and II instead to allege that appellee had failed to trade *10,000* shares on *April 12, 1996.* **FN1** The district court refused to so construe the claim, and because appellant had alleged no set of facts to support its breach of contract allegations, granted the motion for summary judgment. Even were we to "construe" the complaint as appellant would have us do, evidence in the record clearly establishes that appellee sold 40,000 of the 50,000 shares it was instructed to sell on April 12, and no evidence was introduced to support the conclusion that Dean Witter failed to trade the remaining 10,000 shares for any reason other than an absence of buyers.

As another reason for granting summary judgment on Counts I and II, the district court found that the contract, styled a "Partnership Certification of Investment Powers," in unambiguous terms permitted Dean Witter, "subject to [its] policies" to "choose which instructions to follow and which to disregard." Thus, according to the district court, a suspension of trading in order to investigate suspicious accounts did not violate the express terms of the contract, which the court was required by Maryland law to "enforce[ ] as written." *Catalina Enterprises v. Hartford Fire Ins. Co.,* 67 F.3d 63, 65 (4th Cir.1995) (applying Maryland law). Appellant contends on appeal that, in fact, a genuine dispute exists as to the meaning of the contractual provision in question and that summary judgment was therefore not appropriate. Because appellant did not raise this argument in its opposition to summary judgment below, we will consider it on appeal only where refusal to do so would be plain

error or would result in a fundamental miscarriage of justice. *Muth v. United States,* 1 F.3d 246, 250 (4th Cir.1993). **FN2** We decline to find either plain error or a fundamental miscarriage of justice in the district court's literal reading of the unambiguous contractual terms in this case. Thus, because appellant did not present any evidence to suggest that Dean Witter had failed to trade in accordance with appellant's instructions and because, in any event, it makes its argument of contractual interpretation for the first time on appeal, we affirm the district court's grant of summary judgment on these claims.

**\*4** In Count III, appellant alleged that appellee breached its contract by failing to transfer the 320,000 shares of TXAG remaining in the Gable account to Merrill Lynch until April 26, 1996, nine days after appellant now contends it had orally instructed appellee to do so. The district court granted summary judgment on this claim as well, concluding that the transfer instruction was not given until either April 22, by fax, or April 23, by letter, and that a three or four day delay was reasonable and therefore could not constitute a breach of the contract. With regard to the effective date of the transfer order, appellant itself alleged in its unamended complaint that the transfer order was given on April 22. In its brief in opposition to Dean Witter's motion for summary judgment, and again on appeal, appellant contended nevertheless that it authorized the transfer on April 17. Even were we inclined to construe appellant's complaint to allege a transfer order on the earlier date, this claim is negated by the undisputed fact that, on April 17, appellant had not yet opened another account into which the shares *could* be transferred. The district court was therefore correct in concluding that the record evidence could not support a finding that appellant ordered the shares transferred on April 17 rather than upon receipt of the written requests on April 22 and 23. Similarly, the district court could only conclude that there was no genuine issue of material fact as to the reasonableness of a three or four day delay, as appellant presented *no* evidence to dispute the deposition testimony in the record that such transfers could take anywhere from ten days to a month and a half. J.A. at 164-167 (testimony of George Johnson). Thus, summary judgment in favor of appellee was appropriate on this third breach of contract claim as well.

## IV.

The district court properly granted appellee's motion for summary judgment on the claims of intentional

interference with contract (Count VII), breach of fiduciary duty (Count VIII), and negligence (Count X) primarily on the grounds that Dean Witter had a legal obligation to suspend trading in order to conduct an investigation, and that it conducted that inquiry in a reasonable fashion. Under SEC regulations, broker-dealers like appellee have a duty to investigate suspicious trading. "[W]hen a dealer is offered a *substantial block of a little known security* ... where the surrounding circumstances raise the questions as to whether or not the ostensible sellers may be merely intermediaries for controlling persons or statutory underwriters, then *searching inquiry* is called for." SEC Release No. 33-4445 (1962)(emphasis added), *quoted in* Br. of Appellee at 16. In this instance, Dean Witter was presented with a large number of low-priced shares of foreign origin issued by a relatively unknown company, thus triggering its obligation to conduct such an inquiry.

In its original complaint, appellant alleged liability arising out of appellee's decision to conduct the investigation at all. In its proposed amended complaint, the rejection of which by the district court we affirm herein, appellant based its claims instead on the *timing* of the investigation. Thus, although appellant now concedes that the circumstances indeed warranted a "searching inquiry," it insists that Dean Witter was required to conduct the inquiry *before* trading in the account was begun. As appellee argues in response, however, SEC rules requiring investigation are derived from the Securities Act of 1933 and the Securities Exchange Act of 1934, both of which were designed for the protection of *investors.* Ernst & Ernst v. Hochfelder, 425 U.S. 185, 195 (1978). We cannot agree with appellant that this obligation to protect *investors* simply evaporates after trading has begun.

**\*5** With this understanding of appellee's legal obligation in mind, we proceed to consider the district court's grant of summary judgment on counts relating to the conduct of the investigation. The district court granted summary judgment on Count VII, tortious interference with appellant's contract with Grandname, because appellant failed to produce evidence of appellee's "intentional acts, without justification or privilege, designed to induce [a] third party to breach [its] contract" with appellant, an element of the tort under Maryland law. *See, e.g.,* Macklin v. Robert Logan Assocs., 334 Md. 287, 296-98, 639 A.2d 112 (1994). Appellant claimed that its relationship with Grandname was harmed when representatives of Dean Witter contacted executives of TXAG to inquire whether there were restrictions

on the sale of the shares. Because the broker-dealer in conducting an investigation may not rely upon the assurances of its customers or their counsel, SEC v. Culpepper, 270 F.2d 241, 251 (2d Cir.1959), or the absence of a restrictive legend on the share certificate, Quinn & Co. v. SEC, 452 F.2d 943, 947 (10th Cir.1971), we conclude that appellee had sufficient justification for its limited inquiries of TXAG. Furthermore, appellant's claim, based as it is upon appellee's discharge of its legal obligation, is foreclosed by the well-settled Maryland rule that there can be no recovery for tortious interference with contractual relations unless the alleged "interference" is either wrongful or unlawful. Traveler's Indemnity Co. v. Merling, 326 Md. 329, 343, 605 A.2d 83 (1992). Accordingly, because appellant produced no evidence that could establish the elements of a tortious interference claim, we affirm the grant of summary judgment as to Count VII.

In Count VIII, appellant claimed that appellee had breached its fiduciary duty by failing to trade as requested. The district court declined to consider whether the broker-client relationship is a fiduciary one, instead following Maryland state law in concluding that Dean Witter in its capacity as agent had a duty to act in appellant's best interests and to communicate truthfully all relevant information to appellant. J.A. at 353 (district court order *citing* Huppman v. Tighe, 100 Md.App. 655, 668 (1994)). Because Dean Witter was required by law and internal policy to investigate the origin of the shares, however, we conclude as did the district court that it would have acted improperly had it *continued* to trade the shares during the pendency of its inquiry.

In its tenth count, appellant alleged damages from appellee's negligent conduct of its investigation. Again, appellant's *amended* complaint stressed the untimely nature of the investigation, while the *original* complaint merely alleged that appellee violated its duty "by conducting [its] investigation in an inappropriate, inconclusive, and unreasonable manner, *by not contacting the Plaintiff, Plaintiff's securities counsel, or Plaintiff's transfer agent, when the existence and identity of each were known or could have been easily determined by the Defendant.*" J.A. at 20 (emphasis added). In the unamended complaint, which is the only one we need consider, the allegation of negligence is clearly limited to an objection to the specific manner in which the investigation was conducted. As we have previously noted, in conducting its "searching inquiry," appellee was under no obligation to begin

or end its investigation by directing its inquiries to the customer whose shares were being investigated. Thus, the district court did not err in holding that Dean Witter did not act negligently in choosing instead to contact TXAG directly regarding restrictions on trading that may have been placed on the stock when it was initially conveyed to Grandname. **FN3**

V.

**\*6** In Count XI, appellant alleged a breach of fiduciary duty arising out of appellee's failure to transfer 100,000 of Grandname's shares to the new Legg Mason account until May 1, 1996. In its original complaint, appellant alleged that Dean Witter improperly transferred those 100,000 shares to its transfer agent, resulting in Grandname's loss of confidence in Gable and its consequent withdrawal of signing authority. In granting summary judgment on this count, the district court correctly found that there was *no* evidence in the record to support the claim that the shares were transferred to appellee's transfer agent, and concluded that the *delay* in transferring the shares was merely an "oversight." On appeal, appellant has abandoned its contention that the shares were transferred to a transfer agent, and alleges harm from the decline in value of the shares during the nine days in which they remained, improperly, in appellee's possession. Br. of Appellant at 42. Because this allegation of harm arising out of simple *delay* was not raised below, it should not be considered on appeal. *Muth,* 1 F.3d at 250. Even were we to consider this revised claim, there is no evidence to support a finding of any harm caused by the delay in transferring the shares, as none of the 5.65 million shares that were properly transferred to the Legg Mason account on April 26 was sold until July 8, 1996-more than two months *after* the disputed shares were ultimately transferred. Finally, in Count IX, appellant alleged a breach of fiduciary duty arising out of Mark Stull's initial statement on April 12 that it was the SEC, as opposed to Dean Witter, that had launched an investigation. The district court acknowledged that Dean Witter had a duty to inform appellant "of the investigation and the investigator's true identity." J.A. at 354. Nonetheless, the district court granted summary judgment to Dean Witter, stating that a "mere" four day delay in revealing the investigator's true identity was "clearly insignificant."

We do not believe that as a matter of law a delay of four days-or two business days-in the delivery of such relevant information will always be

insignificant. However, in this instance, appellant has forecast no evidence to establish material harm from Dean Witter's delay. Even when appellant ultimately learned on April 16th that it was Dean Witter that had stopped trading and begun an investigation, it did not order a transfer until April 22nd or April 23rd, which transfer was not completed until the 26th, when the shares traded at an average price of $.63 per share. Appellant is of course entitled to the inference that it would have acted with the same degree of dispatch had it learned the correct identity of the investigator on April 12th-especially given that it had on that date no account into which the shares could be transferred. Appellant is therefore entitled to the inference that it would have ordered the transfer either four or five business days later-on the 18th or 19th-and that the transfer would have been completed on the 24th, when the share price averaged $.57, or six cents *less* than on the 26th. Thus, because appellant presented no evidence to suggest that it would have, or could have, executed a transfer any more quickly had it learned of the investigator's identity on April 12th rather than 16th, we can only conclude that the delay was, in this case, legally insignificant.

**\*7** *CONCLUSION*

For the reasons stated herein, we affirm the judgment of the district court.

*AFFIRMED*

> **FN1.** Appellant also contends that the district court should have amended the pleadings to conform to the evidence pursuant to Fed.R.Civ.P. 15(b). However, the district court properly refused to do so, as Rule 15(b) refers to "issues not raised by the pleadings ... *tried* by express or implied consent of the parties." (emphasis added). As its terms would suggest, Rule 15(b) is generally invoked when parties have actually gone to trial. *See, e.g., Aiken County v. BSP Division of Envirotech Corp.,* 866 F.2d 661 (4th Cir.1989) (reversing district court's *sua sponte* 15(b) *post-trial* amendment of the pleadings). In addition, appellee has done nothing to suggest "consent," express or implied, to the trial of issues outside the four corners of appellant's original complaint.

> **FN2.** Appellant contends that it addressed

166 F.3d 332                                                                                    Page 6
166 F.3d 332, 1998 WL 808367 (C.A.4 (Md.))
**(Cite as: 166 F.3d 332)**

the issue of the contract's ambiguity in its brief opposing summary judgment, but in those pages appellant actually *concedes* the literal interpretation it now rejects, relying instead on a broader argument about the intent of the parties and the implied covenant of good faith. *See* J.A. at 103 (Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment) ("Although the written agreement between Gable and Dean Witter states that Dean Witter may decide not to follow certain instructions, it was never the intent of the parties to allow the defendant [such] sweeping authority."); *id.* at 104 ("In order to determine the true intent of the parties in a fiduciary relationship, it is sometimes necessary to look not just into the writing but also the nature of the parties' relationship and dealings.").

FN**3.** The district court's consideration of the timeliness issue with regard to the negligence claim was unnecessary, but we do agree with its conclusion that it is "ludicrous to suggest that Defendant forfeited all rights to investigation by failing to investigate the shares at the opening of the accounts." J.A. at 356.

C.A.4 (Md.),1998.
E. David Gable & Associates v. Dean Witter Reynolds, Inc.
166 F.3d 332, 1998 WL 808367 (C.A.4 (Md.))

Briefs and Other Related Documents (Back to top)

• 1997 WL 33492099 (Appellate Brief) Reply Brief of Appellant (Nov. 24, 1997) Original Image of this Document (PDF)
• 1997 WL 33492097 (Appellate Brief) Brief of Appellee Dean Witter Reynolds, Inc. (Oct. 06, 1997) Original Image of this Document with Appendix (PDF)
• 1997 WL 33492098 (Appellate Brief) Brief of Appellant (Sep. 02, 1997) Original Image of this Document (PDF)
• 97-1499 (Docket) (Apr. 18, 1997)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                          Page 1
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
**(Cite as: 1992 WL 335964 (N.D.N.Y.))**



**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
George A. MAYES, Plaintiff,
v.
LOCAL 106, INTERNATIONAL UNION OF
OPERATING ENGINEERS, Willard J. LaBarge,
Business Manager, Diane O'Hare, Office Manager
and Lester Jones, President,
Defendants.
**No. 86-CV-41.**

Nov. 12, 1992.
George A. Mayes, plaintiff pro se.

Lombardi Reinhard Walsh & Harrison, Albany, N.Y.
(Thomas J. Jordan, of counsel), for defendants.

MEMORANDUM-DECISION AND ORDER

McCURN, Chief Judge.

### INTRODUCTION

**\*1** Presently before the court are plaintiff's motions to have this court review three of Magistrate Judge Smith's orders, two of which are dated March 10, 1992, and the third of which is dated March 18, 1992. In the first of these orders, Magistrate Judge Smith granted the motion of defendants and non-party witnesses to quash the subpoenas of James Tommaney, Frank Lomio, Gordon Kilby, and Dan Lewis and for a protective order against the depositions and documents demanded in these subpoenas. By means of the second order, Magistrate Judge Smith granted defendants' motion for a protective order from plaintiff's Second Request for Admissions and Seventh Demand for the Production of Documents. This order also granted defendants' motion to compel plaintiff to comply with defendants' discovery demands and, in particular, to provide full and complete answers to paragraphs 2, 4, 7, 27, and 28 of Defendants' Demand to Produce Documents. Finally, the third order, among other things, denied plaintiff's request for leave to file a second amended complaint and to conduct further depositions of defendant Diane O'Hare.

### BACKGROUND

Plaintiff filed this action against his union, Local 106, and three of its officers and employees in January 1986. [FN1] Plaintiff's claims are based upon alleged discrimination and favoritism in work referrals by Local 106 and its agents. Plaintiff asserts that Local 106 treated him in a discriminatory manner in retaliation for plaintiff having run for union office and for his efforts to exercise his rights pursuant to the Labor Management Reporting and Disclosure Act, 29 U.S.C. § § 411(a) and 431(c). During the last six years, the parties have conducted extensive discovery which has required this court's intervention on numerous occasions to resolve disputes concerning, among other things, the scope and necessity of this discovery. Therefore, in an effort to reach a final and expeditious resolution of this litigation, this court referred the case for all future pretrial matters to Magistrate Judge Smith pursuant to 28 U.S.C. § 636(b)(1)(A). *See* Order dated December 26, 1991.

In January 1992, plaintiff served subpoenas on four non-party witnesses, James Tommaney, Frank Lomio, Gordon Kilby and Dan Lewis, which required them to appear for depositions. [FN2] In a timely manner, defendants and these non-party witnesses filed motions to quash these subpoenas and for a protective order against the depositions and the documents demanded in them. Magistrate Judge Smith granted these motions. *See* Order dated March 10, 1992.

Defendants also moved for a protective order from Plaintiff's Second Request for Admissions and Seventh Demand to Produce Documents. Magistrate Judge Smith granted this motion. *See* Order dated March 10, 1992. In addition, he granted defendants' motion to compel plaintiff to comply with defendants' discovery demands and, in particular, to provide full and complete answers to paragraphs 2, 4, 7, 27, and 28 of Defendants' Demand for Production of Documents. *See* Order dated March 10, 1992.

**\*2** Finally, after a conference on March 17, 1992, Magistrate Judge Smith issued an order which, in part, denied plaintiff's request for leave to file and serve a second amended complaint. His decision was based upon the fact that the deadline to file amended pleadings and to add new parties had

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                        Page 2
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
(Cite as: 1992 WL 335964 (N.D.N.Y.))

expired on May 1, 1988. *See* Order dated March 18, 1992. In addition, this order denied plaintiff's motion to conduct further depositions of defendant Diane O'Hare for the purpose of, among other things, authenticating certain documents with which defendants had provided him. In denying this request, Magistrate Judge Smith concluded that because Ms. O'Hare had already been deposed on two occasions and had filed at least seven sets of answers to interrogatories, any further deposition would constitute harassment. *See id.* Furthermore, defendants agreed to concede to the authenticity of the documents which were to constitute much of the subject matter of plaintiff's further depositions of Ms. O'Hare. *See id.*

Dissatisfied with these orders, plaintiff now asks this court to review these decisions pursuant to 28 U.S.C. § 636(b)(1)(A). The court will discuss plaintiff's objections to both of the March 10, 1992, orders together. It will then discuss plaintiff's objections to the October 18, 1992, order.

### DISCUSSION
*I. The October 10, 1992, Orders*

In his order granting the motion of defendants and non-party witnesses to quash plaintiff's subpoenas and for a protective order against the depositions and documents demanded therein, Magistrate Judge Smith did not set forth the reasons for his decision. *See* Order dated March 10, 1992. Given the applicable law, however, this court can assume that Magistrate Judge Smith based his decision on one of two factors. Either he found that to require these non-party witnesses to comply with these subpoenas would subject them to an undue burden, or he concluded that these new requests for discovery served no legitimate purpose.

This court's review of the decisions of magistrate judges concerning non-dispositive issues is governed by 28 U.S.C. § 636(b)(1)(A). Pursuant to this statute, this court "[m]ay reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is *clearly erroneous or contrary to law.*" [FN3] 28 U.S.C. § 636(b)(1)(A) (emphasis added). "A finding is 'clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Nikkal Indus., Ltd. v. Salton, Inc.,* 689 F.Supp. 187, 189 (S.D.N.Y.1988) (citing *Agricultural Servs. Ass'n v. Ferry-Morse Seed Co.,* 551 F.2d 1057, 1071 (6th Cir.1977) (quoting in

turn *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 541-42, 92 L.Ed.2d 746, ---- (1948))).

Furthermore, with respect to non-dispositive discovery disputes, the magistrate judge is afforded broad discretion which a court should not overrule unless this discretion is clearly abused. *See Snowden v. Connaught Lab., Inc.,* 136 F.R.D. 694 (D.Kan.1991); *Nikkal Indus., Ltd.,* 689 F.Supp. at 189 (citing *Empire Volkswagen, Inc. v. World Wide Volkswagen Corp.,* 95 F.R.D. 398, 399 (S.D.N.Y.1982), *aff'd,* 814 F.2d 90 (2d Cir.1987); *Detection Sys., Inc. v. Pittway Corp.,* 96 F.R.D. 152, 154 (W.D.N.Y.1982)). Such broad discretion is necessary because in resolving discovery disputes no one factor controls. *See Citicorp v. Interbank Card Ass'n,* 87 F.R.D. 43, 46 (S.D.N.Y.1980). Rather, in making her determination, the magistrate judge must balance the party's need for the information sought, which depends to a great extent on the availability of alternative sources for this information, against the witnesses' burden to produce the information and their exposure to irreparable harm. *See id.* (citation omitted).

*\*3 Rule 45 of the Federal Rules of Civil Procedure ("Rule 45")* sets forth certain factors which, if present, mandate that the court quash or modify a subpoena. Pursuant to Rule 45,

> [o]n timely motion, the court by which a subpoena was issued *shall* quash or modify the subpoena if it (i) fails to allow reasonable time for compliance; (ii) requires a person who is not a party ... to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, ..., or (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or (iv) subjects a person to undue burden.

Fed.R.Civ.P. 45(c)(3)(A) (1991 Rev.Ed.) (emphasis added).

In the present case, the only factor arguably present which would require this court to quash plaintiff's subpoenas is the "undue burden" element contained in subparagraph (iv). For purposes of Rule 45, it is the party seeking to quash the subpoena that must demonstrate that compliance would subject it to an undue burden. *See United States v. International Business Machs. Corp.,* 83 F.R.D. 97, 104 (S.D.N.Y.1979). Defendants and the non-party witnesses, however, do not object to plaintiff's subpoenas on this ground. Instead, their objections rest upon their assertion that the testimony plaintiff

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                    Page 3
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
**(Cite as: 1992 WL 335964 (N.D.N.Y.))**

seeks to obtain from these witnesses is irrelevant to the issues involved in this lawsuit. *See* Davenport Affidavit at ¶ 23. Therefore, the court concludes that Rule 45 could not serve as the basis for Magistrate Judge Smith's decision to grant defendants' motion to quash these subpoenas.

This conclusion, however, does not end the court's inquiry. Rule 26 of the Federal Rules of Civil Procedure ("Rule 26") provides that the court shall limit the frequency or extent of the use of discovery

[i]f it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the discovery is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation....

Fed.R.Civ.P. 26(b)(1) (1991 Rev.Ed.).

With these factors in mind, the court will review Magistrate Judge Smith's order quashing plaintiff's subpoenas, thereby limiting plaintiff's discovery, to determine whether this decision was clearly erroneous or contrary to law.

Plaintiff contends that the information he seeks from these non-party witnesses is necessary for his trial preparation. *See* Mayes Affidavit dated April 21, 1992, at ¶ 53. In this regard, plaintiff states that he needs to depose Mr. Tommaney because his statements as to the number and types of contracts entered into between Local 106 and Lewis Crane Service are inconsistent with Mr. Lewis's statements about these same contracts. *See id.* In addition, plaintiff asserts that he is entitled to depose Mr. Tommaney because he is mentioned in one of defendants' counterclaims against plaintiff and is likely to testify at trial. *See id.* As might be expected, plaintiff's stated reasons for his need to depose Mr. Lewis are identical to those given with respect to Mr. Tommaney. *See id.*

**\*4** With respect to Mr. Kilby, plaintiff asserts that because Mr. Kilby is Chairman of the Northeast Contractors Association he is the person who would be most knowledgeable about contract conditions and the type of grievances between Local 106 and contractors who had signed collective bargaining agreements with Local 106. *See* Mayes Affidavit dated March 24, 1992, at ¶ 21. In addition, plaintiff maintains that he needs to depose Mr. Kilby to learn

how contractors ordered the employment of union members. *See id.*

Finally, plaintiff seeks to depose Mr. Lomio because Mr. Lomio has been associated with the Westerlo Training Site since 1980. *See* Mayes Affidavit dated April 21, 1992, at ¶ 54. Plaintiff contends that due to his position Mr. Lomio would be the person most knowledgeable about how the training site was managed, how training was provided, and how equipment was used. *See id.* Moreover, plaintiff claims that Mr. Lomio would have knowledge concerning the members' use of the retraining programs. *See id.* Finally, plaintiff contends that because he was denied jobs based upon statements by Local 106 officials that he was not qualified, plaintiff needs to depose Mr. Lomio to discover the qualifications of those who were assigned to these jobs in his place. *See id.*

Defendants and non-party witnesses object to all of plaintiff's subpoenas on the ground that the information sought is irrelevant. *See* Davenport Affidavit at ¶ 23 and Exhibits D and E. Defendants concede that Mr. Tommaney held the position of Recording-Secretary during the tenure of defendant William J. LaBarge and that both Mr. Tommaney and Mr. Lewis are mentioned in defendants' counterclaims. *See id.,* Exhibit D at ¶ 4. Defendants, nevertheless, assert that any right plaintiff had to pursue his discovery against these two non-party witnesses should be balanced against the fact that plaintiff has had the opportunity to depose them for the last six years and has chosen not to do so. *See id.,* Exhibit D at ¶ 5. Defendants also assert that despite the fact that plaintiff's intention to depose certain individuals has been openly discussed between the parties during the last five years, there has never been any mention of deposing these four non-party witnesses. *See id.*

Defendants further concede that with respect to their counterclaims to recover costs based upon plaintiff's frivolous charges against union members, Mr. Tommaney and Mr. Lewis do possess relevant information. *See* Davenport Affidavit, Exhibit D at ¶ 6. Nevertheless, defendants assert that plaintiff must have possessed all of the information he needed about these counterclaims in 1988 because he made a motion for summary judgment to dismiss these counterclaims at that time. *See id.* Furthermore, with respect to plaintiff's claim that he should be able to depose Mr. Lewis and Mr. Tommaney because they are likely to be witnesses at trial, defendants assert that both of these individuals submitted

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                               Page 4
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
**(Cite as: 1992 WL 335964 (N.D.N.Y.))**

detailed affidavits, clearly stating their positions, in opposition to plaintiff's motion for summary judgment. *See id.* at ¶ 24 and Exhibit D at ¶ 6. Therefore, defendants contend that plaintiff cannot now claim that he would be surprised if defendants called either of these parties as witnesses at trial. *See id.* Finally, with respect to the documents that plaintiff has requested that Mr. Lewis bring with him to his deposition, defendants contend that these papers have no relevance to the issues involved in this case. *See* Davenport Affidavit at ¶ 24.

**\*5** In opposition to plaintiff's subpoena to depose Mr. Lomio, defendants contend that plaintiff is attempting to obtain information concerning issues totally outside the scope of this lawsuit. *See id.* at ¶ 25. In this regard, defendants assert that Mr. Lomio is affiliated with the union training fund which has nothing to do with plaintiff's claims. *See id.* Furthermore, defendants contend that plaintiff was warned at a discovery conference held before Magistrate Judge Smith on January 15, 1992, that using this lawsuit to obtain this type of information was inappropriate. *See id.* Defendants also assert that plaintiff's argument that the training fund has some bearing on the referral system is refuted by defendant Diane O'Hare's affidavit in which she stated that the training members receive at this training school does not determine the members' qualifications for purposes of the out-of-work book. *See* Davenport Affidavit at ¶ 26 and Exhibit D at ¶ 7. Rather, it is the members' own statements regarding their qualifications that are recorded for purposes of making job assignments. *See* Davenport Affidavit at ¶ 26 and Exhibit B.

Finally, with respect to plaintiff's subpoena to depose Mr. Kilby, defendants assert that plaintiff has no legally sufficient reason for this deposition. *See* Davenport Affidavit, Exhibit D at ¶ 9. Defendants contend that although Mr. Kilby is involved in the union training fund as a trustee, any attempt to interpose a claim against this fund in this law suit should be barred as untimely. *See id.*

Looking at the record as a whole, this court concludes that Magistrate Judge Smith's order quashing plaintiff's subpoenas and granting a protective order against the depositions and the documents requested pursuant to them was not an abuse of discretion. This litigation has been pending in this court since January 1986. Since that time, both parties have had ample opportunity to conduct discovery. Moreover, the court has been more than lenient in granting plaintiff's previous requests for

discovery despite the burden placed upon defendants to respond. Given the factors set forth in Rule 26 upon which a court may rely to limit discovery, Magistrate Judge Smith's order was neither clearly erroneous nor contrary to law. Accordingly, this court denies plaintiff's motion to reconsider Magistrate Judge Smith's March 10, 1992, order with respect to the quashing of plaintiff's subpoenas.

Plaintiff also seeks to have this court review Magistrate Judge Smith's March 10, 1992, order which granted defendants' motion for a protective order from plaintiff's Second Request for Admissions and Seventh Demand to Produce Documents. In addition, plaintiff seeks to have this court review that part of the order which compelled plaintiff to comply with defendants' discovery demands and, in particular, to provide full and complete answers to paragraphs 2, 4, 7, 27, and 28 of Defendants' Request for Production of Documents.

**\*6** It appears that plaintiff's Second Request for Admissions concerns the existence of an allegedly secret "hold list" and the union's allegedly discriminatory referrals based upon this list. According to defendants, this request alleges 120 new discriminatory referrals which will require them to prepare more than 400 separate responses. *See* Davenport Affidavit, Exhibit C at ¶ 11. Defendants contend that this Second Request for Admissions "[i]gnore [s] the orderly progression of discovery ... [and that] to require defendants to respond to this [request] is a clear breach of the discovery agreements in this case, will place an unreasonable burden on all the parties, and will unduly prolong discovery at least another year." *See id.*

According to defendants, plaintiff's Seventh Demand for Production of Documents seeks to inquire into the attorney-client relationship between Local 106 and its law firm. *See* Davenport Affidavit, Exhibit C at ¶ 19. For example, plaintiff requests retainer agreements and billings for the union for the five years immediately prior to this lawsuit as well as the five years after this lawsuit was filed. *See id.,* Exhibit C at ¶ 20. Plaintiff also seeks to inquire into the attorney-client privilege of several members of the union who requested representation from defendants' law firm and the billing associated with this representation. *See id.,* Exhibit C at ¶ 21. According to defendants, these union members sought representation because they were subpoenaed by plaintiff's counsel and needed to respond to his inquiries. *See id.*

Not Reported in F.Supp.                                                                                  Page 5
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
**(Cite as: 1992 WL 335964 (N.D.N.Y.))**

Plaintiff contends that the information about these retainer agreements is relevant because unless the members personally paid for the legal services of defendants' attorneys there is implied coercion. *See* Mayes Affidavit dated March 24, 1992, at ¶ 26. In this regard, plaintiff contends that a rejection of this free legal service by any member of Local 106 could be treated as opposition to Local 106's officials. *See id.*

With respect to Plaintiff's Second Request for Admissions, the court finds that there is ample evidence to support Magistrate Judge Smith's order granting defendants' motion for a protective order against this request. To allow plaintiff to nearly double the scope of discovery at this late date given the burden on defendants to produce the required information would be unduly burdensome and would serve no purpose other than to prolong discovery unnecessarily. Given the broad discretion afforded to magistrate judges to resolve discovery disputes, the court concludes that this decision was neither clearly erroneous nor contrary to law. Accordingly, the court denies plaintiff's motion to reconsider Magistrate Judge Smith's October 10, 1992, order in this regard.

As to plaintiff's Seventh Request to Produce Documents, the court fails to see how any of this information is relevant to plaintiff's case. Although plaintiff claims that the union's offer to provide free legal service to its members who were forced to participate in this lawsuit is coercive, he offers no support for this bald assertion. Accordingly, the court denies plaintiff's motion to reconsider Magistrate Judge Smith's October 10, 1992, order in this regard.

**\*7** Finally, plaintiff objects to that part of Magistrate Judge Smith's March 10, 1992, order which compelled plaintiff to respond to defendants' discovery requests and, in particular, to provide complete answers to paragraphs 2, 4, 7, 27, and 28 of Defendants' Request for Production of Documents. Basically, defendants' requests seek plaintiff's long distance telephone records for the period September 1, 1980, from January 1986 and copies of all NLRB documents in plaintiff's possession. *See* Davenport Affidavit, Exhibit C at ¶ 23. Defendants contend that these telephone records are relevant to plaintiff's claims that he called for job referrals and requests for appointments to review records during this period. *See id.* In addition, defendants claim that these records will be important for cross-examination if plaintiff claims he phoned defendants during this

period and defendants have no record of any such calls. *See id.* Finally, with respect to the NLRB records, defendants assert that they have tried to obtain these records directly from the NLRB but have been unable to do so. *See id.*

Although plaintiff objects to producing his telephone records, this dispute appears to have been resolved in a discovery conference held before Magistrate Judge Smith on March 17, 1992. [FN4] In an order issued after this conference, Magistrate Judge Smith stated that "[i]t was agreed that plaintiff ... will provide copies of all telephone toll records ... except that he will redact from those copies all calls not related to the subject matter of this action. He will also not provide toll records from October 1981 through April 21, 1983...." *See* Order dated March 18, 1992. Since plaintiff agreed to provide the appropriate records, the court sees no reason to reconsider Magistrate Judge Smith's October 10, 1992, order with respect to these records.

In addition, although plaintiff filed objections to Magistrate Judge Smith's March 10, 1992, order regarding the production of NLRB records in his possession, this dispute also appears to have been resolved at the March 17, 1992, discovery conference. [FN5] In his order dated March 18, 1992, Magistrate Judge Smith stated that "[i]t was agreed that plaintiff will provide, and defendants will be satisfied with, all NLRB records in his possession after redacting from them any notations he may have made thereon ..." *See* Order dated March 18, 1992. Based upon this agreement, the court sees no reason to reconsider Magistrate Judge Smith's October 10, 1992, order with respect to these records.

*II. The October 18, 1992, Order*

Plaintiff has two objections to Magistrate Judge Smith's October 18, 1992, order. The first of these pertains to the denial of plaintiff's request to conduct additional depositions of Defendant O'Hare. The basis for this decision was Magistrate Judge Smith's finding that defendant O'Hare "[h]as already been deposed on two occasions and filed at least seven sets of answers to interrogatories and any further deposition would constitute harassment...." *See* Order dated October 18, 1992. In addition, this order stated that "[m]uch of the requested O'Hare deposition was to be devoted to authentication of records provided by defendants in discovery. Defense counsel has agreed that all such records turned over to the plaintiff will be conceded by defendants to be authentic thus obviating the need to

Not Reported in F.Supp.                                                                                    Page 6
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
**(Cite as: 1992 WL 335964 (N.D.N.Y.))**

depose O'Hare further...."  *See* Order dated October 18, 1992.

 **\*8** Apparently, the basis for plaintiff's request to have this court reconsider Magistrate Judge Smith's decision is that there is new evidence which contradicts her statements in her last deposition, thus making it necessary for plaintiff to depose Ms. O'Hare again.  *See* Mayes Affidavit dated March 31, 1992, at ¶ 37.  Given defendants' concession that the documents in question are authentic, however, the court concludes that Magistrate Judge Smith was well within his discretion to disallow further discovery on this issue pursuant to Rule 26.  Accordingly, the court denies plaintiff's motion to reconsider Magistrate Judge Smith's October 18, 1992, order in this regard.

 Plaintiff's second objection concerns Magistrate Judge Smith's denial of her request to file a second amended complaint which would add at least six new defendants and a number of new causes of action. Magistrate Judge Smith based his decision on the fact that the "[d]eadline for filing an amended complaint expired on May 1, 1988, as did the deadline for adding new parties.  Despite a number of extensions of discovery and motion deadlines over the years ..., the deadlines for filing new pleadings and adding new defendants were not extended...."  *See* Order dated October 18, 1992.

 Plaintiff sought leave to amend his complaint pursuant to Rule 15(b) of the Federal Rules of Civil Procedure ("Rule 15").  *See* Mayes Affidavit dated March 31, 1992, at ¶ 5.  Plaintiff contends that Magistrate Judge Smith erred when he denied this request based solely upon the "[d]iscovery schedule signed by Judge McCurn which set a deadline of May 1, 1988 for amendments and the adding of parties," *see id.* at ¶ 6, without ever discussing Rule 15(b). He, therefore, asks this court to reconsider this decision based upon Rule 15(b).  *See id.* at ¶ 7.

 Plaintiff's reliance upon Rule 15(b) appears to be misplaced.  This rule provides, in pertinent part, that
   [w]hen issues not raised by the pleadings *are tried* by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.  Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; ...
   Fed.R.Civ.P. 15(b) (emphasis added).
   Quite simply, any reliance upon Rule 15(b) to

amend the pleadings is premature at this stage of the litigation.  Rule 15(b) is reserved for those "[i]nstances in which the need to [amend the pleadings] does not become apparent until so close to trial, or after the trial has actually commenced, that the request for a change can be made only when the trial is under way."  6A Wright & Miller, *Federal Practice and Procedure* § 1491 (West 1990). Accordingly, the court denies plaintiff's motion to reconsider Magistrate Judge Smith's order denying his request to amend his complaint on the basis of Rule 15(b).

 **\*9** Plaintiff also asks this court to reconsider Magistrate Judge Smith's decision in light of Rule 15(a)'s liberal standards for amendment.  If plaintiff had requested leave to file an amended complaint within the deadlines established by the Rule 16 stipulation, he would be correct in his assertion that Rule 15(a) provides the proper standard by which this court should measure his request.  The fact that this request occurred almost four years after this deadline had expired, however, brings Rule 16 of the Federal Rules of Civil Procedure ("Rule 16") into play.  Rule 16(b) provides, in pertinent part, that
   [t]he judge, ..., shall, after consulting with the attorneys for the parties, ..., enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings;  (2) to file and hear motions;  and (3) to complete discovery....  The order shall issue as soon as practicable but in no event more than 120 days after filing of the complaint.  A *schedule shall not be modified except by leave of the judge ... upon a showing of good cause.*
   Fed.R.Civ.P. 16(b) (1991 Rev.Ed.) (emphasis added).  For purposes of Rule 16, a showing of "good cause" requires "[t]he party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."  6A Wright & Miller, *Federal Practice and Procedure* § 1522.1 (West 1990).

 In the present case, the parties have stipulated to, and the court has approved, numerous extensions of the time to complete discovery and to make motions. The parties, however, have never stipulated to, nor requested, an extension of the time to join additional parties or to amend the pleadings. Moreover, plaintiff has not demonstrated why this court should overlook his failure to comply with the deadlines set forth in this stipulation.  Given plaintiff's failure to demonstrate good cause and the fact that plaintiff's request comes nearly four years after the deadline set by the Rule 16 order has passed, the court concludes

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                Page 7
Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)
**(Cite as: 1992 WL 335964 (N.D.N.Y.))**

that Magistrate Judge Smith was well within his discretion to deny plaintiff's request. Accordingly, the court denies plaintiff's motion to reconsider Magistrate Judge Smith's October 18, 1992, order denying plaintiff's request to file a second amended complaint.

CONCLUSION

For the reasons stated above, plaintiff's motions to have this court review Magistrate Judge Smith's three orders dated October 10, 1992, and October 18, 1992, are, in all respects, denied. Finally, should either party decide to move for summary judgment, such a motion should be filed with this court no later than December 15, 1992.

IT IS SO ORDERED.

FN1. Although initially represented by counsel, plaintiff currently proceeds *pro se* as a result of this court's order granting plaintiff's attorney's motion to withdraw. *See* Order dated November 15, 1991.

FN2. Plaintiff served subpoenas requiring Mr. Tommaney and Mr. Lomio to appear for depositions on two separate occasions. The first subpoenas, served on January 8, 1992, did not comply with the current version of Rule 45 of the Federal Rules of Civil Procedure ("Rule 45") which became effective on December 1, 1991. Therefore, plaintiff reserved these non-party witnesses on January 28, 1992, this time in compliance with Rule 45. In addition, he served subpoenas requiring Mr. Kilby's and Mr. Lewis' appearance at depositions on January 22, 1992.

The first subpoenas served upon Mr. Tommaney and Mr. Lomio requested that they bring certain documents with them to their depositions. Mr. Lewis' subpoena also requested that he bring documents with him to his deposition. The later subpoenas served upon Mr. Tommaney and Mr. Lomio, however, requested no documents. For purposes of reviewing Magistrate Judge Smith's order with respect to these subpoenas, the court will consider that the only subpoenas of Mr. Tommaney and Mr. Lomio which are in effect are those which plaintiff served on January 28, 1992.

FN3. Although plaintiff requested a *de novo* review of Magistrate Judge Smith's orders,

he is not entitled to such review. Rather, because these orders concern non-dispositive matters, this court's review is governed by the "clearly erroneous or contrary to law" standard set forth in 28 U.S.C. § 636(b)(1)(A). On the other hand, if these orders had concerned dispositive matters, they would have been subject to this court's *de novo* review pursuant to 28 U.S.C. § 636(b)(1)(B). *See Merritt v. International Bhd. of Boilermakers,* 649 F.2d 1013 (5th Cir.1981).

FN4. Plaintiff's problems with this discovery request are based, in large part, on his objection to having to provide telephone records for the period of time he was in Florida. He maintains that he is willing "[t]o cooperate in the production of his phone records based on a specific request by the Union identifying a particular job or incident and a reasonable span of time that plaintiff's phone record might cover...." *See* Mayes Affidavit dated March 24, 1992, at ¶ 28. It appears that these are the very issues that were addressed and resolved at the March 17, 1992, conference.

FN5. Plaintiff's problems with this request are similar to those he had with the telephone records. *See supra* note 4.

Not Reported in F.Supp., 1992 WL 335964 (N.D.N.Y.)

**Motions, Pleadings and Filings (Back to top)**

• 5:86cv00041 (Docket) (Jan. 10, 1986)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                       Page 1
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
**(Cite as: 2005 WL 1073624 (M.D.Ga.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
M.D. Georgia, Macon Division.
THE MEDICAL CENTER OF CENTRAL
GEORGIA, INC., Plaintiff,
v.
DENON DIGITAL EMPLOYEE BENEFITS PLAN;
Denon Digital, LLC; and J. Smith Lanier &
Co. Administrators, Inc., Defendants.
No. 5:03CV32 (DF).

May 4, 2005.

Mr. John A. Draughon, Neil Alan Halvorson, Julia
H. Magda, Macon, GA, for Plaintiff.

Mr. William Clifton, Macon, GA, Mr. Robert Carl
Cannon, Atlanta, GA, for Defendants and Other Party
Names.

Mr. Roger S. Sumrall, Russell E. Owens, Atlanta,
GA, for Other Party Names.

*ORDER*

FITZPATRICK, J.

 *1 This matter is before the Court on three pending
motions: (1) Defendant J. Smith Lanier & Co.
Administrators, Inc.'s Motion for Leave to Amend its
Cross-Claim for Indemnification against Defendant
Denon Digital, LLC (tab 88); (2) Defendant J. Smith
Lanier & Co. Administrators, Inc.'s Motion for
Attorney's Fees against Plaintiff Medical Center of
Central Georgia, Inc. (tab 82); and (3) Defendant
Denon Digital, LLC's Motion to exclude from trial
certain testimony and documents set forth in J. Smith
Lanier & Co. Administrators, Inc .'s pre-trial
disclosures (tab 96). [FN1] The Court has given these
motions due consideration and sets forth its findings
below.

> FN1. Denon's objections to the pre-trial
> disclosures are not brought in a motion, but
> instead are simply "disclosed" and filed with
> the Court as contemplated by Rule 26(a)(3)

of the Federal Rules of Civil Procedure. The
Court, however, elects to treat the listed
objections as a motion "in limine" and, to
the extent possible, rule upon the objections
in advance of trial. *See* Fed. R. Civ. Pro. 26
advisory committee's note.

 I. FACTS

 This case originated as an ERISA action for payment
of Plan benefits brought by Plaintiff Medical Center
of Central Georgia, Inc. ("MCCG") against
Defendants Denon Digital Employee Benefits Plan,
Denon Digital, LLC (collectively "Denon"), and J.
Smith Lanier & Co. Administrators, Inc. ("JSLA").
[FN2] The Court granted JSLA's motion for summary
judgment with respect to Plaintiff's claims on July 13,
2004, and granted Denon's motion for summary
judgment with respect to Plaintiff's claims on
November 1, 2004.

> FN2. The Hartford Insurance Company was
> also named as a defendant, but was
> subsequently dismissed by stipulation of the
> parties on April 3, 2003 (tab 11).

 The Court's disposition of those summary judgment
motions left one original claim pending for
consideration; JSLA's cross-claim against Denon
seeking indemnification for expenses and attorney's
fees incurred as a consequence of defending itself in
this litigation. *See* JSLA's Ans., tab 8, at 8. JSLA--the
third-party administrator of an employee benefits
plan administered by Denon-- argues that such
indemnification is required under the terms of the
Administrative Services Agreement it entered with
Denon. JSLA moved for summary judgment on its
cross-claim on October 29, 2004, but the Court
denied its motion as untimely filed (tab 79). The
parties have not been able to work out a settlement,
and this claim is currently scheduled for trial.
However, JSLA now seeks leave, pursuant to Rule 15
of the Federal Rules of Civil Procedure, to amend its
cross-claim by adding a claim for attorney's fees and
expenses against Denon under O.C.G.A. § 13-6-11
(Lexis Supp.2004) (tab 88). JSLA argues that leave
to amend should be "freely given" under Rule 15.
Denon disagrees, maintaining that JSLA's motion is
untimely under the terms of the scheduling order and
that, as a consequence, such leave should be
considered under the "good cause" standard of Rule

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                     Page 2
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
**(Cite as: 2005 WL 1073624 (M.D.Ga.))**

16.

In addition to its motion for leave to amend, JSLA
has filed a motion for attorney's fees against MCCG
pursuant to the Employee Retirement Income
Security Act of 1974 ("ERISA"), 29 U.S.C.A. §
1132(g)(1). JSLA argues that an award of fees and
expenses is appropriate because MCCG's claims
"lacked any basis, were pursued in bad faith, and
failed as a matter of law."

JSLA filed its Rule 26(a)(3) pre-trial disclosures on
March 23, 2005. The pre-trial order was entered
shortly thereafter on April 4, 2005. Denon originally
expressed reservations in the pre-trial order about
certain aspects of JSLA's pre-trial disclosures. Two
days later, on April 6, 2005, Denon filed a list of
objectsions, requesting that certain information be
excluded from trial under Rule 37(c)(1) of the
Federal Rules of Civil Procedure.

**\*2** Each motion will be addressed in turn.

II. LEGAL DISCUSSION

A. Motion for Leave to Amend

Typically, Rule 15(a) governs the pre-trial
amendment of pleadings and provides that, once a
responsive pleading has been served, "a party may
amend the party's pleading only by leave of court ...
[and] leave shall be freely given when justice so
requires ." Fed. R. Civ. Pro. 15(a) (West 2005). Rule
15(b), on the other hand, governs the amendment of
pleadings during trial or after trial "[w]hen issues not
raised by the pleadings are *tried by express or
implied consent* of the parties" and amendment is
necessary to conform to the pleadings to the
evidence. Fed. R. Cir. Pro. 15(b). Amendment under
Rule 15(b) may be made "upon motion of any party
at any time" and shall be freely granted unless doing
so would prejudice the opposing party. *Id.* Neither
provision sets forth a particularly stringent standard
for amending pleadings. However, because of the
current posture of this case--with several weeks
left until the trial begins--the Court must take into
consideration an additional rule of procedure in
deciding whether JSLA is entitled to amend its cross-
claim under Rule 15(a).

Rule 16 permits trial courts wide discretion in
matters of docket management, particularly with
respect to the facilitation of pre-trial issues. The rule
directs district courts to enter a scheduling order "that
limits the time ... to join other parties and to amend

the pleadings." Fed. R. Civ. Pro. 16(b). Once such an
order has been entered, it "shall not be modified
except upon a showing of good cause and by leave of
the district judge." *Id.* As is clear from the language
used in each, there is a noticeable difference between
Rule 15 and Rule 16 regarding what a party must
show in order to amend his pleadings: Rule 15(a)
contemplates that motions for leave to amend should
be "freely given" when justice so requires, while Rule
16(b) contains a heightened "good cause" standard
which is triggered once such a motion has been filed
past the deadline prescribed in the court's scheduling
order. JSLA's motion to amend highlights these
differences.

The scheduling order at issue here, entered on June
18, 2003, is cited by both JSLA and Denon in support
of their respective positions. The order provides that
"[t]he time to amend the pleadings will be made in
accordance with Rule 15(a)." Tab 17, at 2. In the
following paragraph, setting forth the deadlines for
filing various motions, the order requires that "[t]he
parties will file *dispositive* motions no later than 45
days after the close of discovery ... [and that] [t]he
parties will file *all other* motions, except motions in
limine, no later than 30 days after the close of
discovery." Tab 17, at 2.

In support of its motion, JSLA cites both sections (a)
and (b) of Rule 15 and, although each serves a
different purpose, makes no distinction between the
two. After reviewing its motion under each section,
the Court finds that there is no basis for permitting
JSLA to amend its cross-claim.

*1. Motion to Amend Under Rule 15(a)*

**\*3** Because the scheduling order states that "the time
to amend the pleadings will be made in accordance
with Rule 15(a)," JSLA appears to argue that its
motion to amend is timely because Rule 15(a)
prescribes no deadline for the filing of such motions.
JSLA is correct in this respect; Rule 15(a) contains
no filing deadline. However, JSLA fails to
acknowledge the section of the scheduling order
which specifically sets forth the deadline for filing *all
non-dispositive* motions (except motions in limine)--
30 days after the close of discovery. A motion for
leave to amend is not dispositive and, of course, does
not qualify as a motion in limine. Consequently, in
order to avoid the "good cause" standard of Rule
16(b), a motion of this sort should have been filed no
later than 30 days after the close of discovery. The
reference to Rule 15(a) in the scheduling order
merely indicates that timely filed motions to amend

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                          Page 3
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
**(Cite as: 2005 WL 1073624 (M.D.Ga.))**

will be considered in light of the standards set forth in Rule 15(a).

Since its motion for leave to amend was filed after the non-dispositive-motion filing deadline set forth in the scheduling order, JSLA will not be permitted to amend its cross-claim unless it is able to show "good cause" for doing so under Rule 16(b).

The Eleventh Circuit, along with a number of its sister circuits, has held that Rule 16(b) governs motions to amend pleadings when such motions are untimely filed under the terms of the trial court's scheduling order. See Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir.1998). The court in Sosa noted that "[i]f [plaintiff's] motion for leave to amend had been filed within the time prescribed by the scheduling order, Rule 15(a) would be our primary focus, as well. However, because [her] motion to amend was filed after the scheduling order's deadline, she must first demonstrate good cause under Rule 16(b) before we will consider whether amendment is proper under Rule 15(a)." Id.; see also S & W Enterprises, L.L.C. v. South Trust Bank of Alabama, NA, 315 F.3d 533, 537 (5th Cir.2003); Parker v. Columbia Pictures Indus., 204 F.3d 326, 342 (2d Cir.2002); In re Mild Prods. Antitrust Litig., 195 F.3d 430, 437 (8th Cir.1999); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 610 (9th Cir.1992); Riofrio Anda v. Ralston Purina Co., 959 F.2d 1149, 1154-55 (1st Cir.1992).

Rule 16(b)'s good cause standard "precludes modification [of the scheduling order's filing deadlines] unless the schedule cannot 'be met despite the diligence of the party seeking the extension.' " ' Sosa, 133 F.3d at 1418 (quoting Fed. R. Civ. Pro. 16 advisory committee's note). As justification for its recently filed motion, JSLA maintains that it could not have added a bad faith claim against Denon any earlier because the evidence did not support it. JSLA argues that "Denon's bad faith and stubborn litigiousness in this action is necessarily cumulative" and that "Denon is unreasonably proceeding to trial." JSLA's Reply Brief in Supp. of Mot. for Leave to Amend, tab 101, at 2- 3. However, these reasons are insufficient to ground a claim for attorney's fees under O.C.G.A. § 13-6-11.

**\*4** "Bad faith [as used in O.C.G.A. § 13-6-11] refers to the transaction out of which the cause of action arose rather than the motive with which the defense is made." Cade v. Roberts, 175 Ga.App. 800, 334 S.E.2d 379, 380 (Ga.Ct.App.1985); see also Computer Communications Specialists, Inc. v. Hall, 188 Ga.App. 545, 373 S.E.2d 630, 633 (Ga.Ct.App.1988) ("It is well settled that the 'bad faith' contemplated by this Code section is bad faith connected with 'the transaction and dealings out of which the cause of action arose,' rather than bad faith in defending or resisting the claim after the cause of action has already arisen."); see also Salsbury Lab., Inc. v. MerieuxLab., Inc., 735 F.Supp. 1555, 1572 (M.D.Ga.1989). The term "refers to a time prior to the institution of the action." Brannon Enterprises, Inc. v. Deaton, 159 Ga.App. 685, 285 S.E.2d 58, 60 (Ga.Ct.App.1981). JSLA has not pointed to any evidence of bad faith on Denon's part in entering the ASA--the transaction which forms the basis of JSLA's cross-claim. To the contrary, JSLA argues that its motion to amend "is based on evidence which did not exist early in this case, but rather was generated by Denon's bad faith ... in this action." JSLA's Reply Brief in Supp. of Mot. for Leave to Amend, tab 101, at 5.

"Recovery of attorney fees for stubborn litigiousness is not authorized where there is a 'bona fide controversy.' " ' Nestle' Co., Inc. v. J.H. Ewing & Sons, 153 Ga.App. 328, 265 S.E.2d 61, 65 (Ga.Ct.App.1980); see also Backus Cadillac-Pontiac, Inc. v. Brown, 185 Ga.App. 746, 365 S.E.2d 540, 541 (Ga.Ct.App.1988). JSLA, in an attempt to show that there is no bona fide controversy between itself and Denon, asserts that "Denon's insistence on proceeding to trial on a contractual obligation to which it has no good faith defenses is itself substantial evidence of stubborn litigiousness." JSLA's Reply Brief in Supp. of Mot. for Leave to Amend, tab 101, at 5. The Court notes that Denon's defense to the cross-claim centers on its interpretation of the language in the ASA agreement. While its interpretation is obviously different than that of JSLA--indeed, one that JSLA finds unreasonable--the Court concludes that there exists a bona fide controversy between the parties with respect to JSLA's cross-claim. Therefore, JSLA's charge of stubborn litigiousness does not support an award of attorney's fees under the statute.

To the extent that JSLA's motion for leave to amend is necessarily a pre-trial motion under Rule 15(a), it must be considered in light of and justified by Rule 16(b)'s good cause requirement since it was filed after the scheduling order's deadline for filing non-dispositive motions. Good cause for leave to amend cannot be shown where there is no legal basis to support such an amendment. Because JSLA has not demonstrated an adequate foundation for its claim under O.C.G.A. § 13-6-11, it cannot show that good

Not Reported in F.Supp.2d                                                                                    Page 4
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
(Cite as: 2005 WL 1073624 (M.D.Ga.))

cause exists for the amendment of its cross-claim. Accordingly, JSLA's motion for leave to amend under Rule 15(a) is denied.

*2. Motion to Amend under Rule 15(b)*

**\*5** JSLA also maintains that its motion is justified under Rule 15(b), arguing that its cross-claim must be amended so that it will conform to the evidence in the case. However, the language of **15(b)**, and the cases interpreting it, make clear that this Rule is not a mechanism for amending pleadings **before trial**. Rule **15(b)** provides that "[w]hen issues not raised by the pleadings are *tried* by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary ... may be made *upon motion of any party at any time.*" Fed. R. Civ. Pro. 15(b) (emphasis added). JSLA, relying on the words emphasized in the prior sentence, insists that it is never too late to seek an amendment for the purpose of conforming the pleadings to the evidence in a case. JSLA is correct; a party may move to amend the pleadings at any time under this Rule, even after the entry of judgment. [FN3]

> FN3. In contrast to pre-trial motions to amend under Rule 15(a), the time for filing a motion under Rule 15(b) is of necessity not limited by the filing deadlines contained in a Rule 16(b) scheduling order. *See Wallin v. Fuller,* 476 F.2d 1204, 1210 (5th Cir.1973) (noting that Rule 16 should be interpreted in light of the purposes to be served by Rule 15(b)). To interpret the Rules otherwise would make a dead letter out of Rule 15(b).

However, JSLA's reliance on this portion of the Rule ignores the significance of the first sentence, which requires that the issues in question in fact be *tried by express or implied consent. See E. David Gable & Assoc. v. Dean Witter Reynolds, Inc.,* 166 F.3d 332, ----7 (4th Cir.1998) ("As its terms would suggest, Rule 15(b) is generally invoked when parties have actually gone to trial."); *see also Gold v. Local 7 United Food and Commercial Workers Union,* 159 F.3d 1307, 1309 n. 3 (10th Cir.1998) ("[The party's] ostensible Rule **15(b)** motion was made **before trial**, when no issues had or could have been tried. Rule **15(b)** seems a totally inappropriate vehicle for a motion to amend prior to trial."), *overruled on other grounds by Styskal v. Weld County Comm'rs.,* 365 F.3d 855 (10th Cir.2004). Here, the trial of this matter has yet to occur. Therefore, under the

language of Rule 15(b), JSLA's pre-trial motion is premature. In addition, and to no one's surprise, the issues highlighted by JSLA as warranting amendment of the pleadings--that Denon has acted in bad faith and been stubbornly litigious--have not been consented to by Denon, either expressly or impliedly. Consequently, JSLA's motion for leave to amend under Rule 15(b) is denied. Should JSLA find it necessary to invoke Rule 15(b) based on evidence elicited during trial, such a motion and any objections thereto will be treated in accordance with the terms of the Rule at that time.

B. Motion for Attorney's Fees

JSLA has moved for an award of attorney's fees against MCCG pursuant to 29 U.S.C.A. § 1132(g)(1) (West 1999) which states, in pertinent part: "In an action under this subchapter ... by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." Eligibility for attorney's fees under this statute, unlike some others, does not hinge on one's status as a prevailing party. In determining whether an award of fees and costs is appropriate under § 1132(g)(1), courts typically apply five factors: (1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing party would deter other persons acting under similar circumstances; (4) whether the party requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. *Freeman v. Continental Ins. Co.,* 996 F.2d 1116, 1119 (11th Cir.1993). In this Circuit, "[n]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address." *Id.* A district court may, in its discretion, consider only those factors it deems important. *See Florence Nightingale Nursing Serv. v. Blue Cross/Blue Shield,* 41 F.3d 1476, 1485 (11th Cir.1995). In some cases additional considerations may be relevant to the determination. *Freeman,* 996 F.2d at 1119.

**\*6** The thrust of JSLA's argument in support of its motion for attorney's fees is that MCCG pursued its claim against JSLA in bad faith. JSLA--as third party administrator of Denon's employee benefit plan-- insists that MCCG's claim for breach of fiduciary duty was frivolous and without legal or factual basis. JSLA maintains that MCCG advanced its claim with

Not Reported in F.Supp.2d                                                                                          Page 5
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
**(Cite as: 2005 WL 1073624 (M.D.Ga.))**

full knowledge of its legal and factual deficiency. JSLA's argument, while understandably made, is unpersuasive.

 Mindful of the factors to be applied in this context, the Court finds that the simplest and most straightforward way to test the non-moving party's culpability--*i.e.* whether he pursued a claim in bad faith--is to examine whether the claim brought against the moving party has any arguable merit. Thus, the first and fifth factors used to gauge the propriety of awards under § 1132(g)(1) overlap to a considerable degree. For the reasons outlined below, the Court finds that the bad-faith and relative-merits factors, taken together, are dispositive of JSLA's motion.

 *1. Bad faith / Relative Merits*

 MCCG, in opposing JSLA's motion for attorney's fees, argues that it prosecuted a colorable claim throughout these proceedings. A review of the law bears this out.

 "ERISA does not regulate the duties of non-fiduciary plan administrators." *Howard v. Parisian, Inc.,* 807 F.2d 1560, 1564 (11th Cir.1987). Only those who qualify as fiduciaries have obligations under ERISA. A fiduciary, in turn, is any person or entity who, with regard to a plan, "exercises any discretionary authority or ... control respecting management of such plan or ... respecting management or disposition of its assets." 29 U.S.C.A. § 1002(21)(A)(i) (West 1999). One may also be considered a fiduciary if "he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C.A. § 1002(21)(A)(iii). Fiduciary status under the latter subsection is imposed "on those who exercise discretionary authority, regardless of whether such authority was ever granted." *Olson v. E.F. Hutton & Co., Inc.,* 957 F.2d 622, 625 (8th Cir.1992). There is some authority for the proposition that one may be deemed a fiduciary if he exercises the authority "to grant, deny, or review denied claims ." *Kyle Railways, Inc. v. Pacific Admin. Serv., Inc.,* 990 F.2d 513, 518 (9th Cir.1993).

 JSLA's position throughout this litigation has been (1) that it served merely as a third-party administrator with respect to Denon's employee benefits plan; (2) that it neither had nor exercised any discretionary authority with respect to the plan; and (3) that it was therefore not a fiduciary for purposes of ERISA. The Court, after reviewing the evidence developed during discovery agreed with this position, granting JSLA's

motion for summary judgment as to the claims of MCCG.

 Nevertheless, even though its claims did not withstand summary judgment, MCCG argues that an award of attorney's fees to JSLA would be inappropriate under the circumstances. MCCG denies that it acted culpably or in bad faith by naming JSLA as a defendant in this action. According to MCCG, at the time the suit was filed, it had reason to suspect that JSLA exercised some degree of discretion with respect to the administration of Denon's plan in general and with respect to the denial of the insured's claim in particular. In an effort to substantiate these suspicions through the discovery process, MCCG named JSLA as a defendant.

 *7 After discovery was complete, MCCG maintained, in response to JSLA's motion for summary judgment, that a genuine issue of material fact existed regarding whether JSLA's actions in administering the plan were sufficient to create fiduciary status under 29 U.S.C. § 1002(21)(A). While the Court ultimately disagreed with MCCG's characterization of the evidence, the arguments it asserted were at least colorable. It does not appear, as JSLA would now suggest, that MCCG's stance was wholly frivolous, without merit, and pursued in bad faith. Though the claims presented by MCCG in this matter were ultimately unsuccessful, they were not so baseless and unfounded as to support a finding of bad faith or culpability. *See First Nat. Life Ins. Co. v. Sunshine-Jr. Food Stores,* 960 F.2d 1546, 1553-54 (11th Cir.1992) (affirming district court's denial of attorney's fees where the plaintiff had not acted in bad faith in bringing the lawsuit). Accordingly, there is no basis for an award of attorney's fees under § 1132(g)(1).

 C. Motion to Exclude Testimony and Documents Under Rule 37(c)(1)

 JSLA indicates in its pre-trial disclosures that it may introduce the following evidence at trial: (1) the live testimony of Jerry Hedgepeth, a representative from JSLA's corporate headquarters who is expected to testify that JSLA, and not its insurer, paid the attorney's fees in this case; (2) the live testimony of Rosemary Parks, a member of the accounting staff at Hall, Booth, Smith, & Slover, P.C., who is expected to authenticate the firm's accounting documents and explain payments received by the firm with respect to JSLA; (3) the deposition testimony of Linda Delinge, Anne Muhammad, Ella Perry, Lucille Bartuswicz, and H. Lynn Branch; (4) certain documents--such as,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 6
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
**(Cite as: 2005 WL 1073624 (M.D.Ga.))**

invoices, bills, account summaries, etc.--intended to support JSLA's claim for attorney's fees; and (5) JSLA's computation of damages. None of these individuals or items were identified in JSLA's Rule 26(a)(1) initial disclosures.

With respect to Jerry Hedgepeth and Rosemary Parks, Denon argues that JSLA is precluded from calling them as witnesses at trial because they were not identified in JSLA's Rule 26(a)(1) initial disclosures. A party's initial disclosures must include "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses...." Fed. R. Civ. Pro. 26(a)(1)(A) (West 2005). The remedy for failing to comply with this requirement is found in Rule 37(c)(1), which states: "A party that without substantial justification fails to disclose information required by Rule 26(a) ... is not, unless such failure is harmless, permitted to use as evidence at a trial ... any witness or information not so disclosed." Fed. R. Civ. Pro. 37(c)(1). While it is not clear whether JSLA's failure to list these witnesses was substantially justified, the Court believes that any resultant harm to Denon can be cured by allowing Denon to depose these witnesses prior to trial, should it desire to do so. Accordingly, they will not be prohibited from testifying at trial under Rule 37.

**\*8** Denon objects to the introduction of the deposition testimony of the five individuals identified by JSLA on relevancy grounds under Rules 401 and 403 of the Federal Rules of Evidence. The Court, therefore, finds it best to deal with this evidence in the context of the trial, rather than in a pre-trial motion. JSLA will be permitted to proffer deposition testimony from these individuals as it deems necessary, subject, of course, to any relevancy objections made by Denon.

Denon objects to the way certain documents were described in JSLA's pre-trial disclosures. Specifically, Denon maintains that the documents JSLA intends to use to support its claim have not been individually identified as required by Rule 26(a)(3)(C). Rather, JSLA simply listed in its pre-trial disclosures certain *categories* of documents which it intends to use at trial. The Rule in question provides that "a party must provide to other parties ... an appropriate identification of *each* document or other exhibit ... which the party expects to offer and those which the party may offer if the need arises." Fed. R. Civ. Pro. 26(a)(3)(C). Accordingly, JSLA is directed to compile a list identifying and specifying

each document it "expects to offer" or "may offer" at trial. [FN4] This list shall be served on Denon within 10 days of the date of this order. The Court recognizes that an exhaustive description of each document is not necessary; however, such description must be sufficient to put Denon on notice of exactly which documents it can expect to see at trial. The Rule is designed to prevent surprises, and the Court finds that this directive is tailored to that end.

> FN4. Contrary to JSLA's assertion, invoices prepared by Hall, Smith, Booth & Slover, P.C., and JSLA's own records of payment for the law firm's services are not protected by the attorney-client privilege. "[I]t is the law of this circuit [absent a 'limited and rarely available' exception] that information involving receipt of attorneys' fees from a client is not generally privileged." *O'Neal v. United States,* 258 F.3d 1265, 1276 (11th Cir.2001) (citing *In re Slaughter,* 694 F.2d 1258, 1260 (11th Cir.1982)). The court in *O'Neal* noted that a party "may not assert entitlement to a monetary benefit on the one hand, and then hide behind a claim of privilege on the other." *Id.*

Finally, the Court finds that the failure of JSLA to include in its initial disclosures a computation of damages is harmless to Denon and, therefore, not subject to exclusion under Rule 37(c)(1). Denon is aware of the grounds on which JSLA's claim for attorney's fees rests, the amount of money sought, and the number of hours of work for which JSLA demands compensation.

III. CONCLUSION

For the foregoing reasons, the Court finds as follows:

1. JSLA's Motion for Leave to Amend is hereby DENIED.

2. JSLA's Motion for Attorney's Fees pursuant to 29 U.S.C.A. § 1132(g)(1) is hereby DENIED.

3. Denon's objections to JSLA's pre-trial disclosures will be handled as follows:

a. Denon may depose Jerry Hedgepeth and Rosemary Parks in anticipation of their potential testimony at trial.

b. The Court will postpone any ruling on the proposed deposition testimony of the five witnesses identified above until trial in accordance with the Federal Rules of Evidence.

c. JSLA is directed to comply with Rule 26(a)(3)(C) by compiling a list identifying and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

specifying each document it "expects to offer" or "may offer" at trial. This list shall be served on Denon within 10 days of the date of this order.

 SO ORDERED.

 Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)

**Motions, Pleadings and Filings (Back to top)**

• 2005 WL 1552775 (Trial Motion, Memorandum and Affidavit) Post-Trial Brief of Denon Digital, LLC (Jun. 08, 2005)

• 2005 WL 1364885 (Trial Motion, Memorandum and Affidavit) Brief of the Medical Center of Central Georgia, Inc. in Support of its Motion to Strike and in Response to Defendant J. Smith Lanier & Co. Administrator, Inc.'s Motion for Award of Attorneys Fees and Costs (Apr. 26, 2005)

• 2005 WL 1364884 (Trial Motion, Memorandum and Affidavit) Brief of the Medical Center of Central Georgia, Inc. in Support of its Motion to Strike and in Response to Defendant J. Smith Lanier & Co. Administrator, Inc.'s Motion for Award of Attorneys Fees and Costs (Apr. 22, 2005)

• 2004 WL 3375820 (Trial Motion, Memorandum and Affidavit) Response in Opposition to Motion for Summary Judgment of Defendant J. Smith Lanier & Co. Administrators, Inc. on Cross Claim Against Denon Digital, LLC and Denon Digital Employee Benefits Plan (Dec. 06, 2004)

• 2004 WL 3375819 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion for summary Judgment of Defendant J. Smith Lanier & Co. Administrators, Inc. on Cross Claim Against Denon Digital (Oct. 27, 2004)

• 2004 WL 3375818 (Trial Motion, Memorandum and Affidavit) Response of Plaintiff the Medical Center Of Central Georgia, Inc. to Defendant Denon Digital, LLC Employee Benefits Plan and Denon Digital, LLC's Motion to Strike Paragraphs 15-21 of the Affidavit of Douglas R. McSwane (Jun. 28, 2004)

• 2004 WL 3375816 (Trial Motion, Memorandum and Affidavit) The Denon Digital, LLC Employee Benefits Plan's and Denon Digital, LLC's, Motion to Strike Paragraphs 15-21 of the Affidavit of Douglas R. McSwane (May. 20, 2004)

• 2004 WL 3375817 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of the Denon Digital, LLC Employee Benefits Plan's, and Denon Digital, LLC's, Motion for Summary Judgment (May. 20, 2004)

• 2004 WL 3375815 (Trial Motion, Memorandum and Affidavit) Denon Digital, LLC Employee Benefits Plan's, and Denon Digital, LLC's, Response in Opposition to Motion of the Medical Center of Central Georgia, Inc. to Strike Portions of the Declaration of Foss Hodges (May. 19, 2004)

• 2004 WL 3375812 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to the Denon Defendants' Motion for Summary Judgment (Apr. 14, 2004)

• 2004 WL 3375813 (Trial Motion, Memorandum and Affidavit) Plaintiff the Medical Center of central Georgia, Inc.'s Memorandum of Law in Response to the denon Defendants' Motion for Summary Judgment (Apr. 14, 2004)

• 2004 WL 3375814 (Trial Motion, Memorandum and Affidavit) Response of Plaintiff the Medical Center of Central Georgia, Inc. to the Denon Defendants' Statement of Material Facts as to Which There Exists No Genuine Issue of Fact for Trial (Apr. 14, 2004)

• 2004 WL 3375811 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Support of the Denon Defendants' Motion for Summary Judgment (Mar. 22, 2004)

• 2003 WL 24071241 (Trial Motion, Memorandum and Affidavit) Reply Brief in Support of Denon Digital, LLC Employee Benefits Plan, And Denon Digital, LLC's Motion to Strike Inadmissible Portions of the Affidavit of H. Lynn Branch (Nov. 26, 2003)

• 2003 WL 24071238 (Trial Motion, Memorandum and Affidavit) Response of Plaintiff the Medical Center of Central Georgia, Inc. To Defendant Denon Digital, LLC Employee Benefits Plan and Denon Digital, LLC's Motion to strike Inadmissible Portions of the Affidavit of H. Lynn Branch and J. Smith Lanier & Co. Admi nistrator, Inc.'s Motion to Strike Inadmissible Portions of the Affidavit of H. Lynn Branch (Nov. 07, 2003)

• 2003 WL 24071233 (Trial Motion, Memorandum and Affidavit) Brief in Reply to Plaintiff's Response to Motion for Summary Judgment of Defendant J.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1073624 (M.D.Ga.)
**(Cite as: 2005 WL 1073624 (M.D.Ga.))**

Smith Lanier & Co. Administrators, Inc. (Oct. 09, 2003)

• 2003 WL 24071229 (Trial Motion, Memorandum and Affidavit) Denon Digital, LLC Employee Benefits Plan, And Denon Digital, LLC'S Motion to Strike Inadmissible Portions of the Affidavit Of H. Lynn Branch (Sep. 25, 2003)

• 2003 WL 24071223 (Trial Motion, Memorandum and Affidavit) Plaintiff's Brief in Opposition to Motion for Summary Judgment of Defendant J. Smith Lanier & Co. Administrators, Inc. (Sep. 09, 2003)

• 2003 WL 24071218 (Trial Motion, Memorandum and Affidavit) Brief in Support of Motion for Summary Judgment of Defendant J. Smith Lanier & Co. Administrators. Inc (Aug. 19, 2003)

• 2003 WL 24071215 (Trial Pleading) Answer of Denon Digital, LLC to Cross-Claim of J. Smith Lanier & Co. Administrators. Inc. (Apr. 10, 2003)

• 2003 WL 24071204 (Trial Pleading) Answer of Denon Digital, LLC and the Denon Digital, LLC Employee Benefits Plan (Mar. 21, 2003)

• 2003 WL 24071207 (Trial Pleading) Answer and Cross-Claim of J. Smith Lanier & Co. Administrators, Inc. (Mar. 21, 2003)

• 5:03CV00032 (Docket) (Jan. 22, 2003)

• 2003 WL 24071187 (Trial Pleading) Complaint (Jan. 01, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                                    Page 1
Not Reported in F.Supp.2d, 1998 WL 683770 (W.D.N.Y.)
**(Cite as: 1998 WL 683770 (W.D.N.Y.))**

**H**

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, W.D. New York.
Michelle TOUT, Plaintiff,
v.
COUNTY OF ERIE, Board of Trustees of Erie
Community College, Dennis DiGiacomo,
Individually and in his Official Capacity, and Rose
Moore, Individually and in
her Official Capacity, Defendants.
**No. 95-CV-66H.**

Sept. 9, 1998.

DECISION AND ORDER

HECKMAN, Magistrate J.

 **\*1** The parties have consented to have the
undersigned conduct any and all further proceedings
in this case, including the entry of final judgment, in
accordance with 28 U.S.C. § 636(c). Defendants
have filed a motion *in limine* pursuant to Federal
Rules of Evidence 401, 402 and 403 seeking to
exclude from trial reference to several matters on the
grounds of relevance (Item 38). Plaintiff has
responded to the motion, and has moved for leave to
amend the complaint in order to clarify the pleadings
(Item 42). For the reasons that follow, defendants'
motion *in limine* is granted in part and denied in part.
Plaintiff's motion to amend is denied.

*BACKGROUND*
 The factual and procedural background of this case
has been set forth at length in this court's prior
decision and orders, and will be repeated here only as
necessary to the determination of the pending
motions. *See Tout v. County of Erie, 2 F.Supp.2d 320
(W.D.N.Y. March 30, 1998); Tout v. Erie Community
College, 923 F.Supp. 13 (W.D.N.Y. December 6,
1995).* On January 27, 1995, while employed as a
counselor at Erie Community College ("ECC"),
plaintiff brought this action *pro se* pursuant to Title
VII of the Civil Rights Act of 1964, 42 U.S.C. § §
2000e *et seq.,* against ECC and individual ECC
employees Dennis DiGiacomo and Rose Moore

alleging employment discrimination based on race,
color and sex (Item 1). Plaintiff had worked at ECC
North Campus since February, 1988. On March 2,
1995, she was notified by letter from Dr. Louis M.
Ricci, President of ECC, that her employment had
been terminated because of "prolonged absence from
the college and ... failure to appear at [a] hearing"
held on December 12, 1994 (Item 25, Ex. C).
Following her discharge, plaintiff filed a union
grievance which went to arbitration.

 Plaintiff subsequently retained counsel, and on
January 31, 1996, filed an amended complaint in this
action naming as defendants the County of Erie, the
Board of Trustees at ECC, and Dennis DiGiacomo
and Rose Moore individually and in their official
capacities. Plaintiff alleged that, throughout the
course of her employment, "defendants engaged in
discriminatory employment practices and
discriminatory treatment of minority students," and
retaliated against plaintiff for her opposition to
defendants' conduct, in violation of Title VII, 42
U.S.C. § § 1981, 1982, 1983 and 1985, the New
York Human Rights Law, and the common law of the
State of New York (Item 15). She claimed that, in
January, 1991, she filed grievances with the Faculty
Federation of Erie Community College ("FFECC")
and ECC's Affirmative Action/Equal Employment
Opportunity ("EEO") office complaining about the
conduct of DiGiacomo and Moore, and that Mr.
DiGiacomo and his staff "stepped up their pattern of
discriminatory and harassing treatment" in retaliation.
Plaintiff alleged that, as a result of defendants'
conduct, she suffered stress-related physical and
mental illness which forced her to seek leave without
pay in 1992 and 1994 (*id* ).

 **\*2** On October 21, 1996, an arbitration hearing was
held on plaintiff's union grievance, and on March 6,
1997, arbitrator James R. McDonnell issued a
decision reinstating plaintiff to her position without
back pay but with full seniority. She was placed on
probation for two years commencing from the date of
reinstatement with respect to attendance-related
issues (Item 30, Ex. O, p. 7).

 On June 2, 1997, defendants moved for partial
summary judgment in this action on the grounds that
(1) plaintiff had failed to demonstrate a *prima facie*
case of discriminatory termination, (2) plaintiff's
retaliation and discriminatory discharge claims were

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1998 WL 683770 (W.D.N.Y.)
(Cite as: 1998 WL 683770 (W.D.N.Y.))

barred because she did not raise them in a complaint filed with the Equal Employment Opportunity Commission ("EEOC") on January 7, 1994, (3) plaintiff's claims of employment-related injury were barred by a New York State Workers' Compensation Board ruling dated July 16, 1996, and (4) defendants DiGiacomo and Moore could not be sued individually. On March 30, 1998, this court issued its decision and order granting defendants' motion and dismissing plaintiff's complaint to the extent that it alleged a claim for retaliation based on plaintiff's filing of grievances with the FFEEC and Affirmative Action/EEO offices in January, 1991, since she had failed to include that claim in her January 7, 1994 EEOC charge. *See Tout v. County of Erie, supra,* 2 F.Supp.2d at 328. The court also granted defendants' motion dismissing "all claims against defendants DiGiacomo and Moore in their individual capacities." *Id.* at 330. The court denied the motion in all other respects. A jury trial was scheduled for August 31, 1998 (Item 33).

 On July 30, 1998, a final pretrial conference was held with counsel. On that same date, defendants filed their motion *in limine* seeking exclusion from trial evidence of, or reference to, the following:
   1. Alleged acts of discrimination by ECC staff against minority students;
   2. Alleged acts of "stepped up" discriminatory treatment of plaintiff in retaliation for having filed grievances in 1991;
   3. The arbitration and award reinstating plaintiff; and,
   4. Punitive damages.
 On August 6, 1998, plaintiff responded to defendants' motion *in limine,* and also moved to amend the complaint in order to clarify her retaliation claims.

## DISCUSSION
I. Defendants' Motion *In Limine.*

 A. Evidence Regarding Discrimination Against Minority Students at ECC.

 In her pretrial statement, plaintiff lists several witnesses expected to give testimony at trial "regarding unequal treatment of minority students at ECC North" (Item 37, p. 8). Defendants contend that such testimony would have no bearing to the ultimate issue presented in this case--whether the plaintiff herself was treated unequally: Plaintiff argues that such testimony would provide evidence relevant to her "racially hostile environment" claim.

 Although not specifically pleaded in her amended complaint, [FN1] defendants apparently concede that plaintiff has alleged a "hostile environment" employment discrimination claim under the applicable civil rights statutes. To prevail on a hostile work environment claim, a plaintiff must demonstrate: "(1) that her workplace was permeated with discriminatory intimidation that was sufficiently severe or pervasive to alter the conditions of her work environment, and (2) that a specific basis exists for imputing the conduct that created the hostile environment to the employer." *Van Zant v. KLM Royal Dutch Airlines,* 80 F.3d 708, 715 (2d Cir.1996); *see also Schwapp v. Town of Avon,* 118 F.3d 106, 110 (2d Cir.1997). The conduct alleged must be severe and pervasive enough to create an environment that "would reasonably be perceived, and is perceived, as hostile or abusive." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993); *see also Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 444 (7th Cir.1994) ("the conduct in question is to be judged by both an objective and a subjective standard"). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris, supra,* 510 U.S. at 23.

    FN1. For example, plaintiff alleges as follows:
    From the start of her assignment in the counseling unit, plaintiff was subjected to discriminatory and harassing treatment through the acts and/or omissions of defendant DiGiacomo, Dean of students and his subordinates, including defendant Rose Moore, in the form of heightened policing of her activities and sabotaging, unprofessional and/or ineffective support staff assistance. (Item 15, ¶ 15).

 **\*3** As noted by the Second Circuit in *Schwapp v. Town of Avon,* "[t]he Supreme Court has cautioned [courts] to consider the totality of circumstances in cases such as this." *Schwapp v. Town of Avon, supra,* 118 F.3d at 111. In *Schwapp,* the plaintiff claimed that he was subjected to a racially hostile environment in his employment as the only black officer in the Town of Avon police department. He alleged the occurrence of several incidents which took place at the department prior to his employment, or which he did not personally witness. In granting the defendants' motion for summary judgment on plaintiff's hostile environment claim, the court refused to consider evidence of incidents which took place outside of the plaintiff's presence. The Second

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                      Page 3
Not Reported in F.Supp.2d, 1998 WL 683770 (W.D.N.Y.)
**(Cite as: 1998 WL 683770 (W.D.N.Y.))**

Circuit reversed, finding as follows:

> [T]he incidents [not directly involving the plaintiff] may be of limited probative value, but cannot be ignored on summary judgment. Whether [the plaintiff] was aware of them during his employment, and, more significantly, whether in light of these incidents, the incidents [plaintiff] experienced more directly "would reasonably be perceived, and [were] perceived, as hostile or abusive," are factual issues that should be resolved by a trier of fact.

*Schwapp v. Town of Avon, supra,* 118 F.3d at 112 (quoting *Harris, supra,* 510 U.S. at 22).

Similarly, in *Perry v. Ethan Allen, Inc.,* 115 F.3d 143 (2d Cir.1997), a hostile environment sexual harassment case, the Second Circuit reversed the district court's *in limine* ruling which excluded from trial evidence of harassment of other women not witnessed personally by the plaintiff. The Second Circuit found that:

> Since one of the critical inquiries with respect to a hostile environment claim is the nature of the environment itself, evidence of the general work atmosphere is relevant.... And since the issue was not whether [the plaintiff] had notice of the harassment of others but whether there was a pervasive hostile environment, it is unclear why the [district] court would not allow the other women themselves to testify as to the harassment directed at them.

*Id.* at 150-51. The court also found that the evidence of harassment of women other than the plaintiff was not "more prejudicial than probative" under Fed.R.Evid. 403. *Id.* As explained by the Second Circuit:

> Rule 403 allows the trial court to exclude relevant evidence on the ground of prejudice to the party against whom it is offered "if its probative value is substantially outweighed by the danger of unfair prejudice." As the terms of the Rule indicate, for relevant evidence to be excluded on this basis, the imbalance must be substantial, and the prejudice must be unfair. "The prejudice that Rule 403 is concerned with involves some adverse effect ... beyond tending to prove the fact or issue that justified its admission into evidence." Although any evidence that tends to establish liability is prejudicial to the interests of the defendant, the prejudice is unfair only if the evidence has "an undue tendency to suggest decision on an improper basis."

**\*4** Evidence of the harassment of women other than [the plaintiff], if part of a pervasive or continuing pattern of conduct, was surely relevant

to show the existence of a hostile environment at [the company where the plaintiff worked] and could have been found probative of the company's notice of that environment within the period that the district court viewed as relevant. The district court did not identify any respect in which the prejudice that might result from such probative evidence would have been unfair.

*Id.* at 151.

Under these rulings, I find in this case that testimony about the treatment of minority students by faculty and staff at ECC North during the time that plaintiff worked there would be relevant to show the existence of a "racially hostile environment." Having conceded that this is a hostile environment case, defendants have not shown how the probative value of this evidence would be outweighed by any unfair prejudice. Accordingly, defendants' motion is denied to the extent that it seeks to exclude evidence of discriminatory treatment of minority students at ECC North during the period of plaintiff's employment.

B. Evidence Regarding Retaliation for Filing Grievances in 1991.

As discussed above, the court has dismissed plaintiff's complaint insofar as it alleged that defendants "stepped up" their discriminatory treatment of plaintiff in retaliation for filing grievances in 1991. The dismissal was based on plaintiff's failure to include facts in her January 7, 1994 EEOC charge from which a reasonable inference of retaliation could be drawn. *See Tout v. County of Erie, supra,* 2 F.Supp.2d at 327-28. Defendants now seek an order excluding from trial "any fact or evidence regarding retaliation" (Item 38, p. 5).

Although not particularly well-pleaded, and although not addressed by the court in its March 30, 1998 decision, plaintiff's amended complaint can be read to allege a retaliation claim under 42 U.S.C. § 1981, to which the exhaustion requirements of Title VII do not apply. *See, e.g., Andrews v. Lakeshore Rehabilitation Hosp.,* 140 F.3d 1405, 1413 (11 th Cir.1998) (plaintiff's claims that her employer retaliated by terminating her for filing an EEOC charge is cognizable under amended § 1981); *Pointer v. Columbia University,* 1997 WL 86387, at \*5 (S.D.N.Y. February 28, 1997) (claims relating to terms and conditions of employment brought under Title VII, dismissed for failure to exhaust administrative remedies, could be pursued under § 1981); *Campbell v. Grayline Air Shuttle, Inc.,* 930

F.Supp. 794, 800 (E.D.N.Y.1996) (employee may bring action against employer under amended § 1981 without exhausting Title VII's administrative procedures); *Lightner v. Ariton,* 902 F.Supp. 1489, 1495-96 (M.D.Ala.1995) (claims grounded in retaliatory conduct are actionable under § 1981); *Brown v. City of New York,* 869 F.Supp. 158, 170 (S.D.N.Y.1994). Therefore, while it did not so specify, the only reasonable reading to be given this court's March 30, 1998 order dismissing plaintiff's retaliation claims for failure exhaust is that it pertained only to retaliation claims based on Title VII.

 **5** In addition, the amended complaint can be construed to allege that plaintiff was retaliated against for her filing of both the EEOC charge and the complaint in this action. For example, plaintiff alleges that in "early 1994" Mr. DiGiacomo denied her request for leave without pay, and that she was terminated in March, 1995 (Item 15, ¶ ¶ 24, 25). These claims are separate and distinct from the claims of retaliation based on the grievances filed in 1991 which this court has dismissed for failure to exhaust. *See, e.g., Malarkey v. Texaco, Inc.,* 983 F.2d 1204, 1208-09 (2d Cir.1993) (considering claims for retaliatory acts arising subsequent to EEOC filing to be "reasonably related" to allegations raised with EEOC).

 Accordingly, defendants' motion *in limine* is denied to the extent that it seeks to exclude all evidence of retaliatory conduct.

 C. Evidence of the Arbitration and Award.

 The trial court has the discretion to admit an arbitrator's decision into evidence, balancing its probative value against its potential for unfair prejudice under Fed.R.Evid. 403. *See Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Jackson v. Bunge Corp.,* 40 F.3d 239, 245 (7th Cir.1994); *McAlester v. United Air Lines, Inc.,* 851 F.2d 1249, 1259 (10 th Cir.1988). In assessing probative value, courts have considered such factors as whether the collective bargaining agreement contained provisions in substantial conformance with Title VII, the degree of procedural fairness in the arbitral forum, the adequacy of the record with respect to the issue of discrimination, and the special competence of the arbitrator. *Alexander v. Gardner-Denver Co., supra,* 415 U .S. at 60 n. 1. "Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight." *Id.*

 Based on the text of the arbitrator's decision, the sole issue determined by the arbitrator was whether termination was the appropriate remedy for plaintiff's legitimate health-related absences, in light of her improved medical condition. The issue of the employer's discriminatory conduct was not considered at all. Although the decision may assist plaintiff in demonstrating that she was wrongfully terminated, it does not address the issue of whether the employer acted based on a discriminatory motive. Thus, the decision may be somewhat probative, but it is not conclusive.

 Accordingly, I find that the best approach is to allow evidence at trial establishing the fact that the parties arbitrated plaintiff's wrongful termination claim, and that the arbitrator ruled in plaintiff's favor on reinstatement and seniority, and in defendants' favor on back pay and benefits. The text of the arbitration decision and the arbitration transcript will be excluded upon objection at trial. *See Wilmington v. J.I. Case Co.,* 793 F.2d 909, 919 (8th Cir.1986). The parties are encouraged to develop a stipulation covering this issue, along with a cautionary jury instruction.

 D. Punitive Damages/Individual Capacity.

 **6** Defendants seek to exclude evidence relating to punitive damages. Plaintiff concedes that she cannot recover punitive damages against a municipal entity, or municipal employees sued in their official capacities. *See, e.g., City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Ivani Contracting Corp. v. City of New York,* 103 F.3d 257, 262 (2d Cir.), *cert. denied,* ___U.S. ___, 520 U.S. 1211, 117 S.Ct. 1695, 137 L.Ed.2d 821 (1997). However, plaintiff contends that punitive damages evidence should be allowed at trial because those damages are recoverable under § § 1981 and 1983 against individual defendants sued in their individual capacities. *See, e.g., Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983) (punitive damages recoverable under § 1983 against governmental officials sued in individual capacities when conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others"); *Ivani Contracting Corp. v.. City of New York, supra,* 103 F.3d at 262 (same for § 1981); *Greiner v. County of Greene,* 811 F.Supp. 796, 801 (N.D.N.Y.1993).

 In the March 30, 1988 decision and order, this court

dismissed "all claims against defendants DiGiacomo and Moore in their individual capacities." *Tout v. County of Erie, supra,* 2 F.Supp .2d at 330. This dismissal was predicated in part on this court's previous decision, dated December 6, 1995, in which the court denied defendants' prior motion to dismiss plaintiff's *pro se* Title VII complaint. *See Tout v. Erie Community College,* 923 F.Supp. 13, 16-17 (W.D.N.Y.1995). As set forth in the December 6, 1995 decision, the parties stipulated at a preliminary pre-trial conference held on November 13, 1995 that ECC, DiGiacomo and Moore--the parties originally sued by plaintiff-were not properly named as defendants. The court also noted "that defendants DiGiacomo and Moore cannot be sued in their individual capacity." *Id.* (citing *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313-1317 (2d Cir.1995)).

 Plaintiff subsequently retained counsel, and on January 31, 1996 filed an amended complaint adding claims under 42 U.S.C. § § 1981, 1982, 1983 and 1985 naming Mr. DiGiacomo and Ms. Moore in both their official and individual capacities (Item 15). However, in her summary judgment brief dated July 23, 1997, plaintiff acknowledged "that defendants DiGiacomo and Moore cannot be sued individually" and stated that she "will stipulate to amend [her] complaint to reflect the fact that [defendants DiGiacomo and Moore] are named only in their official capacity" (Item 28, p. 9). This court specifically relied on this acknowledgment in its March 30, 1998 dismissal of "all claims against defendants DiGiacomo and Moore in their individual capacities." *Tout v. County of Erie, supra,* 2 F.Supp.2d at 330.

 Thus, plaintiff has twice represented to the court her intent to proceed against DiGiacomo and Moore in their official capacities only. Plaintiff did not seek reconsideration of this court's March 30, 1998 decision and order. Defense counsel has at all times proceeded in defense of the case under the assumption that DiGiacomo and Moore would not be exposed to individual liability for punitive damages. To allow proof of punitive damages at trial would not only prejudice that defense at this advanced stage of proceedings, but it would also create the potential for a disqualifying conflict of interest for the county attorney. *See, e.g., Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2d Cir.) (joint representation of municipalities and their employees presents possibility for disqualifying conflict of interest because "[a]municipality would avoid liability by showing that the employee was not acting within the scope of his official duties" and "[t]he employee, by

contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties ..."), *amended on other grounds,* 748 F.2d 69 (2d Cir.1984); N.Y.Pub.Off.Law § 18 (setting forth requirements, rights and obligations with respect to defense and indemnification of public employees).

 **\*7** Accordingly, defendants' motion *in limine* is granted to the extent that it seeks to preclude all evidence relating to punitive damages.

 E. Individual Evidentiary Issues.

 In their reply papers, defendants have supplemented their original motion *in limine* by seeking exclusion of several documents submitted by plaintiff as part of Exhibit 1 (See Item 55, Exs. A-D). Upon review, I find that each of these documents contain information which may be relevant to plaintiff's "hostile environment" claim. Accordingly, defendants' supplemental motion *in limine* is denied.

 II. Plaintiff's Motion to Amend.

 Plaintiff requests leave to amend her complaint in order to clarify her retaliation claims. I find that leave to amend is unnecessary, for several reasons.

 First, plaintiff has not submitted a proposed second amended complaint. Therefore, court has no basis to determine the necessity for granting leave to amend. Second, as discussed above, the court has already determined that the first amended complaint can be read to allege a retaliation claim under 42 U.S.C. § 1981, which was not subject to dismissal under the court's previous ruling on summary judgment. Third, based on the record presently before the court, assessment of whether amendment is necessary in order to cause the pleadings to conform to the evidence must **wait** until trial. See Fed.R.Civ.P. 15(b). [FN2]

 FN2. Fed.R.Civ.P. **15(b)** provides:
 Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these

Not Reported in F.Supp.2d, 1998 WL 683770 (W.D.N.Y.)
**(Cite as: 1998 WL 683770 (W.D.N.Y.))**

> issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

Accordingly, plaintiff's motion to amend the complaint is denied, without prejudice to renew at trial.

*CONCLUSION*

For the foregoing reasons, and to the extent discussed herein, defendants' motions *in limine* (Items 38 & 55) are granted in part and denied in part. Plaintiff's motion to amend (Item 41) is denied.

SO ORDERED.

Not Reported in F.Supp.2d, 1998 WL 683770 (W.D.N.Y.)

**Motions, Pleadings and Filings** **(Back to top)**

• 1:95cv00066 (Docket) (Jan. 27, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.