IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>       Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>       Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>       Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>       Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>       Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A REPLY TO FACEBOOK DEFENDANTS' RESPONSE TO CONNECTU'S "FORENSIC RECOVERY" ARGUMENTS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................ 1

II. THE MOTION TO FILE A REPLY SHOULD BE DENIED BECAUSE THE REPLY BRIEF IS IMPROPER AND RAISES NO NEW FACTS OR ISSUES ............. 2

    A. ConnectU's Motion to File a Reply Should Be Denied Because It Fails to Offer Any New Reasons Why ConnectU's Forensic Recovery Will Locate Relevant Evidence Beyond That Already Produced by the Facebook Defendants ................................................................................................................ 2

        1. The First Circuit Does Not Permit Forensic Recovery of Electronic Devices to Support "Fishing Expeditions." ............................................... 3

    B. ConnectU's Moving Discovery Target Makes It Impossible For Facebook To Meet ConnectU's Impossible Demands ........................................................... 3

        1. ConnectU's Shifting Positions Regarding Forensic Recovery of Code, and Facebook Defendants' Response with Expert Testimony ........ 4

        2. ConnectU Fails to Address the Alternative Argument that if Any Expert Should Be Allowed Access to Facebook Defendants' Forensic Data, It Should Be Court-Appointed ......................................... 5

III. CONNECTU MAKES NO PARTICULARIZED SHOWING THAT ANY ADDITIONAL EXPERT WILL IDENTIFY RELEVANT FORENSIC DATA BEYOND THAT ALREADY PRODUCED ..................................................................... 6

    A. ConnectU's Demand For Production of Defendants' Computers is Burdensome, Intrusive and Unnecessarily Expensive ............................................ 7

    B. Facebook Has Not Suppressed Evidence .............................................................. 8

    C. If The Court is Not Satisfied That Facebook Defendants Have Done All That Is Possible to Locate Software Code, It Should Appoint An Independent Expert to Perform an Additional Analysis .................................... 10

IV. CONCLUSION .................................................................................................................. 11

I.  **INTRODUCTION**

At the request of the Court, on March 29, 2006, the Facebook filed both an expert Declaration ("Butterworth Dcl.") and a pleading entitled "Facebook Defendants' Response to ConnectU's 'Renewed Forensic Recovery' Arguments from the March 3, 2006 Motions Hearing" ("March 3, 2006 Hearing Response"; Docket Nos. 154-161). Those papers were simply the Facebook Defendants'[1] response to oral arguments ConnectU raised *sua sponte* on March 3, 2006 regarding its pending "Motion to Compel the Production of Mirror Images of Defendants' Hard Drives and Other Electronic Memory Devices." (Docket No. 37). That motion to compel has been fully briefed, supplemented, and argued. Neither the Court nor Facebook Defendants contemplated that any further pleadings would be filed, and in fact it was not even calendared for argument on March 3, 2006 when ConnectU presented its positions.

Nonetheless, ConnectU now has filed a Motion for Leave to file a "Reply Brief" in support of the "Summary of March 3, 2006 Status Report" (Docket No. 148), which it also filed without invitation from the Court. ConnectU's proposed Reply Brief relies upon un-supported attorney arguments to demand that it be allowed unfettered access to Facebook's and the individual Defendants' electronic memory files, including every privileged, confidential, personal, private, and irrelevant piece of electronic data created by any of the Defendants. Accordingly, Facebook Defendants, Inc., oppose ConnectU's recent Motion for Leave to File a Reply to "Facebook Defendants' Response To ConnectU's Renewed 'Forensic Recovery' Arguments from the March 3, 2006 Motions Hearing," which is nothing more than an extension of Plaintiff's ongoing and admitted "fishing expedition."

---

[1] Defendant Eduardo Saverin is represented by separate counsel in this matter. The term "Defendants," as used herein, refers to all Defendants, including Mr. Saverin. The "Facebook Defendants" may be used herein to refer to all Defendants *except* Mr. Saverin.

## II. THE MOTION TO FILE A REPLY SHOULD BE DENIED BECAUSE THE REPLY BRIEF IS IMPROPER AND RAISES NO NEW FACTS OR ISSUES

In seeking permission to file a Reply Brief, ConnectU contends that it needs to "correct new issues" and "clarify the record for the Court." Notably, though, Facebook Defendants actually raised no new issues in its March 3, 2006 Hearing Response, and instead provided corroborating expert testimony to prove that the forensic efforts described in earlier pleadings was so encompassing that no independent, objective expert would be expected to produce different results. Indeed, ConnectU points to no new issues in its proposed Reply Brief, and it offers no expert testimony of its won to refute the expert declaration the Facebook Defendants attached to their March 3, 2006 Hearing Response.

Given the failure of ConnectU to raise any new issues or support its Reply Brief with any new expert testimony contravening the statements made by the Facebook Defendants' own expert, the proposed Reply is wholly unnecessary and improper.

### A. ConnectU's Motion to File a Reply Should Be Denied Because It Fails to Offer Any New Reasons Why ConnectU's Forensic Recovery Will Locate Relevant Evidence Beyond That Already Produced by the Facebook Defendants.

ConnectU's proposed Reply Brief re-characterizes and then rehashes its previous fully-briefed attorney arguments, providing virtually no facts or expert testimony to support them. What ConnectU's proposed Reply does is show that regardless of Facebook Defendants' efforts to ensure that its production of code is complete, ConnectU becomes more unreasonable in its demands. This fact by itself warrants denial of its request to file a Reply Brief, especially because ConnectU cannot satisfy the burden for permitting any third party access to mirror images of the Facebook Defendants' forensic data.

>    1.   **The First Circuit Does Not Permit Forensic Recovery of Electronic Devices to Support "Fishing Expeditions."**

As noted in the Facebook Defendants' March 3, 2006 Hearing Response, the Court itself agrees that ConnectU is engaged in a "fishing expedition" of the Facebook Defendants' documentation.[2] Notably, ConnectU has never denied that fact – nor could it, given the Court's prior observations.

However, ConnectU's proposed Reply Brief wholly ignores the critical issue that the imaging of hard drives and other memory devices is permitted only where **particularized likelihood of finding discoverable material**, which is never appropriate where the matter at hand amounts to being such a "fishing expedition." *Fennell* v. *First Step Designs, Ltd.*, 83 F.3d 526, 532-33 (1st. Cir. 1996). *See also Williams v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 144 (D. Mass. 2005); *Cognex Corp. v. Electro Scientific*, No. Civ.A. 01CV10287RCL, 2002 WL 32309413 (D. Mass. July 2, 2002). ConnectU makes no attempt in its proposed Reply Brief to show that any further forensic efforts beyond those undertaken by the Facebook Defendants will meet the standard of "particularly likelihood of finding discoverable evidence." By itself, therefore, this failure to meet a critical burden warrants both denial of the motion to file a reply, and of the underlying motion to compel.

>    B.   **ConnectU's Moving Discovery Target Makes It Impossible For Facebook To Meet ConnectU's Impossible Demands.**

Aside from the fact that its Reply Brief offers no arguments that suggest the Plaintiff's own expert is likely to recover relevant electronic information beyond that already produced by

---

[2] *See* Transcript of March 3, 2006 Motions Hearing (Docket No. 151), at 136:9-14:
MR. COOPER: If this isn't a fishing expedition, I don't know what is. We have 198 requests for production.
THE COURT: **I think actually Mr. Hornick specifically said it was a fishing expedition**, not in so many words, when he said I make it broad so I can, basically I can go fishing and see if there's any evidence. (Emphasis added).

the Facebook Defendants, the Reply Brief also amounts to being the latest shift in position by ConnectU in response to its frustration at being unable to prove its case.  The fact the electronic production does not support ConnectU's theories is, however, no reason to grant ConnectU's motion.  It is actually an independent reason to deny the request.

        **1.**      <u>**ConnectU's Shifting Positions Regarding Forensic Recovery of Code, and Facebook Defendants' Response with Expert Testimony.**</u>

In its original motion papers, ConnectU conceded that it was "amenable" to procedural "safeguards" such as allowing the court to appoint its "own expert to serve as [its] officer, make the mirror images, and attempt to recover the lost evidence."  Memorandum in Support of Motion to Compel the Production of Mirror Images (Docket No. 38), at 13-14 n.6.  Indeed, nowhere in its original motion papers did ConnectU argue that any forensic recovery expert, whether it was the Plaintiff's or the Court's, would (1) search for what is known as "slack space"; (2) search for any intentional over-writing;  (3) conduct a content-based (as opposed to file-extension based) search of memory content, including unallocated clusters;  (4) seek to verify the un-readability of damaged memory devices;  or (5) conduct any other analyses suggested by ConnectU.   Instead, plaintiff generically requested that its expert be permitted to image defendants electronic devices to locate code without any discussion of the methodology it proposed be employed.

Accordingly, in a show of their good faith why the motion was unwarranted, the Facebook Defendants engaged **two forensic recovery experts** to produce what relevant code could be obtained from the various memory devices that ConnectU demanded be turned over to its own expert.  As reflected in the Declaration of James Butterworth – an EnCase certified forensic specialist -- filed in conjunction with the Facebook Defendants' March 3, 2006 Hearing Response, those recovery efforts were extensive, standard within the electronic data retrieval

-4-

industry, and considerably more encompassing than ConnectU's own efforts to locate code.

Once the expert testimony was offered, however, ConnectU started asserting for the first time that the methodologies employed were inadequate. Indeed, ConnectU assails in its proposed "Reply Brief" the fact that Facebook Defendants' original forensics consultant was not EnCase-certified, and claims that Mr. Butterworth, who is EnCase-certified, still did not address each and every concern ConnectU felt should be addressed. The arguments presented in the proposed Reply Brief bear no resemblance to the arguments originally raised in the motion to compel (which they are supposed to support). Indeed, ConnectU offers virtually nothing more than attorney argument to support its fifteen (15) pages of Reply positions.

It is enough to note that absent supporting documentation from its own expert showing exactly how and why the Facebook Defendants' efforts to locate code have been inadequate, ConnectU effectively admits that Facebook's efforts go above and beyond what is required under any reasonable interpretation of the discovery rules.

   **2.    ConnectU Fails to Address the Alternative Argument that if Any Expert Should Be Allowed Access to Facebook Defendants' Forensic Data, It Should Be Court-Appointed.**

In addition, in its proposed Reply, ConnectU ignores Facebook Defendants' suggestion that the Court engage an independent expert, rather than ConnectU's own expert, to review the computer images if the Court determines that Facebook Defendants' efforts to-date to locate code are somehow inadequate. This is remarkable, **because ConnectU at the November 18, 2005 Hearing on the Motion to Compel itself specifically advised the Court that it wanted the Court to appoint an independent expert in lieu of using its own**. *See* November 18, 2005 Hearing Transcript (Docket No. 130), at 26:17-27:1.[3] The very fact ConnectU ignores its own

---

[3] JOHN HORNICK: But we've built into the particular that we're proposing protections against finding and using information that is not what we're looking for. **First of all, we originally**

previously stated positions reflects that it understands the Facebook Defendants' forensic recovery efforts have been both proper and adequate – and it simply does not want the Court to recognize that fact by confirmation through its own special master.

The complete "about-face" by ConnectU is further proof that the motion to compel itself should be denied.

### III. CONNECTU MAKES NO PARTICULARIZED SHOWING THAT ANY ADDITIONAL EXPERT WILL IDENTIFY RELEVANT FORENSIC DATA BEYOND THAT ALREADY PRODUCED.

Another reason the motion to file the Reply Brief should be denied is because it raises no new arguments that warrant granting the underlying motion to compel. A review of ConnectU's myriad positions set forth in its proposed Reply Brief demonstrates that no expert – whether appointed by the Court or hired by ConnectU – will identify any new forensic data containing source code beyond that already located by the Facebook Defendants.

Facebook and the individual Defendants should not be required to turn their computers over to ConnectU to enable its "expert" to leaf through irrelevant, private information belonging to the individual Defendants. The subject computers have been used not only for developing code, but by young men with private lives and other interests besides software development. Without some particular showing by ConnectU that all of the data on the computers is relevant to its causes of action or will actually lead to the discovery of admissible evidence, the Facebook Defendants should not be required to make their personal and business lives an open book for ConnectU to review.

---

**proposed our own expert would do this. We don't want it to be our own expert now for various reasons.** And the independent expert is to look only for code. And the independent expert, we will not be present while he does his work. He'll sign the protective order. There will, nothing that he does will disclose any attorney-client privilege. (Emphasis added)

### A. ConnectU's Demand For Production of Defendants' Computers is Burdensome, Intrusive and Unnecessarily Expensive.

ConnectU spends a fair amount of time in its proposed Reply Brief discussing all of the efforts that it would have undertaken to uncover "the missing code." Until ConnectU makes a showing that there is a need for such extraordinary efforts, ConnectU is not entitled to the information it seeks. Indeed, requiring production of computers in use by the Facebook Defendants would create extraordinary burden, expense and intrusion on Facebook Defendants and their business.[4] ConnectU's desperation to find "missing code" does not outweigh the burden and unnecessary intrusion Facebook defendants face. Instead, it only emphasizes that ConnectU has no evidence of wrongdoing by Facebook or the individual Defendants. In addition, ConnectU's desire to find such code ignores the fact that it may not exist.

Notwithstanding Facebook Defendants' engagement of an expert to address each of ConnectU's concerns raised at the march 3, 2006 hearing, ConnectU now contends that those concerns were only "examples" of the efforts they would have made to locate code. ConnectU's ability to contrive additional concerns is not a basis for the Court to require Facebook Defendants to produce their computers without restriction.

ConnectU asks why Mr. Butterworth does not explain the absence of the elusive "missing code." No expert - not even ConnectU's expert - can explain why data is not on any particular computer. If data does not exist, and cannot be located using even the most effective and advanced forensics software (*i.e.*, EnCase), no forensics expert can say with certainty why the data is not on the computer. Any such thoughts on the "missing code" is mere conjecture -

---

[4] ConnectU asks the Court to have defendants' computers turned over to ConnectU. Guidance Software, the maker of the EnCase forensics program, spent nearly a week imaging these devices. ConnectU's request, if it is granted, will only succeed in unnecessarily shutting down Facebook's business. Such an intrusion is unwarranted and should not be permitted.

whether its Facebook Defendants' expert or ConnectU's expert providing the explanation. The proper, and most reliable, means for obtaining information explaining why the code is not on the computers is through deposition testimony of the users or interrogatories on the subject.

ConnectU also provides a list of the **additional** analysis its expert would have performed.[5] These additional "examples" of analysis are not in any way designed to locate the source code. Instead, ConnectU appears to focus its efforts on showing the alleged nefarious acts engaged in by Facebook Defendants. If ConnectU really is interested in avoiding expense and burden, it must move forward with the results obtained by Guidance Software and cease trying to create issues where none exist. Conjuring up new methods of ways to trap Facebook Defendants does nothing to advance this litigation or avoid unnecessary burden, intrusion and expense.

Though ConnectU contends that it would cost Facebook Defendants virtually nothing to turn over their computers to ConnectU's expert, ConnectU ignores that such a production gives it carte blanche to delve needlessly into the individual Defendants' personal lives. Such an invasion is completely unnecessary and inappropriate absent some independent showing that Facebook Defendants have destroyed or attempted to hide evidence. ConnectU has not and cannot provide such a showing.

      B.    **Facebook Has Not Suppressed Evidence.**

Through pure attorney argument (and no factual support whatsoever), ConnectU contends that Facebook Defendants suppressed or "spoiled" evidence. To this end, ConnectU argues that Facebook Defendants 1) do not explain why the "missing code" code cannot be found; 2) have not produced spreadsheets of metadata; and 3) continue to withhold "crucial

---

[5] ConnectU incorrectly asserts that Mr. Butterworth relied on Mr. Berryhill's computer images. This assertion has no basis in fact; using the most recent and advanced version of EnCase, Mr.

-8-

database definitions."

As described above, the fact that there is no "missing code" to be found demonstrates only that ConnectU has no basis for filing its copyright infringement and trade secret misappropriation claims. In its desperation, ConnectU is furiously looking for something that simply does not exist on Facebook Defendants' computers. As a result, ConnectU claims that a search of the "slack space" will yield the results it seeks. Unfortunately, as Facebook Defendants' expert explained, "file slack is exclusively fragmented," and while a part of a file may exist on the subject computer, there likely will be no other retrievable information to shed light on file activity or the significance of the information found. Finding a piece of data that may or may not contain code, does not necessarily lead to the conclusion that the code actually existed and was improperly deleted from the system. The partial data shows only that the "missing code" **could have been** on the hard drive, not that it **must have been** on the hard drive.

ConnectU also implies that Facebook Defendants long ago prepared spreadsheets of metadata and are now withholding them. In fact, the spreadsheets were prepared recently by Guidance Software and Mr. Butterworth. Facebook Defendants intend to produce the information shortly, and is in the process of preparing this data (as well as any additional code it can locate) for production.

ConnectU's assertion that Facebook Defendants are withholding database definitions ignores that, despite using the best tools available, Mr. Butterworth was not able to locate a database definition file without specific search parameters. As Facebook Defendants and their expert have repeatedly stated, a search for such definitions will be more efficient and productive if ConnectU provides specific search terms or key phrases to enable a viable search. Otherwise,

---

Butterworth and his team created new images from the original electronic devices.

Facebook Defendants are being asked to search in large amounts of electronic space for something that may be what ConnectU calls a "database definition." Such a random search, without a specific goal in mind, is expensive, burdensome and completely avoidable.

### C. If The Court is Not Satisfied That Facebook Defendants Have Done All That Is Possible to Locate Software Code, It Should Appoint An Independent Expert to Perform an Additional Analysis.

Oddly enough, it was counsel for ConnectU that demanded an EnCase-certified expert to perform the analysis of the Facebook Defendants' hard drives. In response, Facebook Defendants went to the source and retained the makers of EnCase and its resident experts to perform an analysis and retrieve code to address ConnectU's concerns. Despite Facebook Defendants' extraordinary and openhanded efforts, ConnectU continues to complain that the process is inadequate. ConnectU can make all the adverse inferences it wishes based on Facebook Defendants' desire not to turn over its computers to its main competitor and adversary. The simple truth is, however, the individual Defendants are people who have lives and interests outside of developing source code for Facebook. Evidence of those lives is contained on the individual Defendants' computers. The information is private, personal and wholly irrelevant to ConnectU's claims against the individual Defendants. Moreover, to the extent Facebook Defendants are working on new products or code unrelated to its current website, such data is proprietary and highly confidential. ConnectU should not be given unfettered access to any of this information.

Facebook Defendants have repeatedly suggested that, should the Court determine that Facebook Defendants' efforts are somehow insufficient, the Court should appoint an independent expert. ConnectU does not address this suggestion at all. If the Court agrees, however, that more analysis is appropriate and may yield additional, useful information, it should appoint an independent expert. Should the expert determine that Facebook Defendants' efforts were

adequate and reasonable under the circumstances, the costs for the independent expert should be borne by ConnectU.

## IV.     CONCLUSION.

For ALL the foregoing reasons, ConnectU's Motion for Leave to File Plaintiff ConnectU LLC's Reply to Facebook Defendants' Response to ConnectU's "Forensic Recovery" Arguments should be denied and Plaintiff ConnectU LLC's Reply to Facebook Defendants' Response to ConnectU's "Forensic Recovery" Arguments stricken.

///

///

Dated: April 24, 2006.                                  Respectfully submitted,

                                                        /s/ Monte M.F. Cooper /s/
                                                        G. Hopkins Guy, III*
                                                        I. Neel Chatterjee*
                                                        Monte M.F. Cooper*
                                                        Robert D. Nagel*
                                                        ORRICK, HERRINGTON & SUTCLIFFE LLP
                                                        1000 Marsh Road
                                                        Menlo Park, CA  94025
                                                        Telephone:  (650) 614-7400
                                                        Facsimile:   (650) 614-7401
                                                        hopguy@orrick.com
                                                        nchatterjee@orrick.com
                                                        mcooper@orrick.com
                                                        rnagel@orrick.com

                                                        Steve M. Bauer
                                                        Jeremy P. Oczek
                                                        PROSKAUER ROSE, LLP
                                                        One International Plaza, 14th Floor
                                                        Boston, MA 02110-2600
                                                        Telephone:     (617) 526-9600
                                                        Facsimile:      (617) 526-9899
                                                        sbauer@proskauer.com
                                                        joczek@proskauer.com

                                                        ATTORNEYS FOR MARK ZUCKERBERG,
                                                        DUSTIN MOSKOVITZ, ANDREW
                                                        MCCOLLUM, CHRISTOPHER HUGHES, and
                                                        FACEBOOK, INC.

                                                        * Admitted Pro Hac Vice

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on April 24, 2006.

Dated: April 24, 2006.                              Respectfully submitted,

                                                             /s/ Monte M.F. Cooper /s/
                                                                 Monte M.F. Cooper