February 15, 2006

*Via Facsimile and U.S. Mail*

Ken W. Curtis, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
Two Freedom Square, 11955 Freedom Drive
Reston, VA 20190-5675

 Re: *ConnectU LLC v. Mark Zuckerberg et al* – Subpoenas to Peter Thiel and Clarium Capital Management LLC

Dear Mr. Curtis:

  I write in response to your meet and confer letter of February 9, 2006, regarding the subpoenas issued by ConnectU LLC to Peter Thiel and Clarium Capital Management LLC. As you note, the subpoenas are essentially identical and, for ease of mutual reference, I will treat them as such where possible.

*Purported Procedural Defects In the Objections*
  Your letter initially concerns itself with purported procedural and typographical defects in Thiel/Clarium's Objections and the proofs of service attached thereto, including a typo in the party name (the inadvertent confusion of "ConnectU" with "X Technologies"). I regret the typo, though given that ConnectU's subpoenas are seemingly without proofs of service (a fact raised in the Objections and not responded to), a critical flaw which my clients nevertheless agreed to overlook, I hope that we can move beyond issues of typographical error.[1] With respect to the log attached to Exhibit A, while I do not agree with your client's position on the log, I have attached an updated log containing additional information as a compromise.

*Undue Burden*
  In the Objections and in our telephonic discussion, I have repeatedly stated that your clients seek to impose an undue burden on Mr. Thiel and Clarium. Your letter responds that Mr. Thiel and Clarium are not the "innocent" third parties Rule 45 intends to protect from undue burden because "Clarium and Thiel" invested in Facebook and because Mr. Thiel serves on Facebook's board. Rule 45 is concerned with such factors as relevance, the issuer's need for documents, the breadth of the request, the particularity with which documents are described, and the responder's status as a party or non-party, rather than questions of "innocence." Here, Mr. Thiel and Clarium are unquestionably

---

[1] You cite two further purported defects in the Objections: the fact that the "proof of service indicates that documents were placed in a sealed envelope and mailed with Federal Express" but that such documents were not received, and that the Response to Request No. 16 is incomplete. As to the first, Federal Express indicates that Scott Mosko of your firm, who issued the subpoenas in the first instance, did in fact receive the documents (the Objections), a fact readily confirmed by this meet and confer correspondence. As to the second matter, the Responses to Requests No. 16 are indeed complete; the final sentences of the Responses appear on their respective signature pages to assure your clients that they have received unitary documents.

non-parties who deserve protection under Rule 45. Your contention that Mr. Thiel's economic interest in the Facebook somehow obligates him to produce documents is without support and incompatible with the established system of shareholder capitalism, as it would legitimize the procedure of directing harassing subpoenas at shareholders simply on the basis of their economic rights.[2]

Proceeding to your supposition that the Requests should pose a lesser burden because Mr. Thiel "presumably has a well-established due diligence checklist" that copiously encapsulates in one place the information ConnectU seeks, I note that this is only ConnectU's supposition. As your letter notes, Facebook was a small company with a limited track record at the time of Mr. Thiel's investment and the volume of documents that company sent to Mr. Thiel is correspondingly abbreviated. While some information exists in a few readily identifiable paper files, some of the material sought is contained in email which, notwithstanding your assumption regarding the ease of retrieval, is not at all easy to retrieve. Mr. Thiel adopted new e-mail software and procedures in the fall of 2005, with the result that a complete search would require reference to archive tapes and word-searches of thousands of e-mails across several platforms, a burden unjustified in light of the irrelevant nature of the information sought and its availability from the parties.

Expanding on the important question of the alternative availability of documents sought, I note that except as to Mr. Thiel's private analyses of Facebook, most or all of the documents sought are in the possession of the defendants in this case. Indeed, during our telephonic conference, you indicated that it was the defendants' refusal to produce these documents – a refusal currently under consideration by the Court – that your client resorted to subpoenaing Mr. Thiel and Clarium. Clearly, then, most or all of the documents sought *are* available from the parties. Indeed, your letter concedes this fact:

> In fact, under the terms of [Mr. Thiel's] investment, Facebook, Inc. is probably obligated to provide copies of all of *its* financial records, projections and plans to Thiel on a regular basis to enable Thiel to determine the security of their [sic] investment. All of the documents generated as a result of Thiel's investment in TheFacebook, Inc. are either in their custody or obtainable by them as a matter of right, or through an agreement, and must be produced. (emphasis added)[3]

Thus, your letter admits that the documents sought are in Facebook's possession in the first instance. By propounding subpoenas to obtain documents your client knows to be in the possession of a party, your client has by definition imposed an undue burden on Mr. Thiel and Clarium. *See, e.g., Liberty Mut. Ins. Co. v. Diamente*, 194 F.R.D. 20, 23 (D. Mass 2000) (quashing subpoena seeking information about non-party wife's whereabouts from non-party husband where discovery remedies against non-responsive wife were not exhausted and imposing sanctions on the issuing party). Moreover, because the

---

[2] The contention that Clarium has invested in Facebook is factually incorrect, a point of which I informed you during our telephonic meet and confer.
[3] It is unclear whether the use of the third person plural possessive ("their custody") refers to Mr. Thiel and Clarium or Facebook. If it refers to Mr. Thiel and Clarium, then the final sentence implies that it is *from* Facebook – a party – that Mr. Thiel and Clarium are supposed to obtain the documents. If the latter, then it is again Facebook that is the possessor of the documents in question. Either way, the request is improper.

appropriate scope of discovery is under consideration by the Court, the subpoenas constitute an attempt to end-run judicial disposition of the relevant discovery issues and are improper for that reason as well.

*Relevance*

Beyond the special issue of undue burden in the context of subpoenas, relevance is a bedrock consideration in determining the scope of discovery. The Court is currently considering the relevance of requests for information concerning damages (which your letter, at page 7, concedes is the gravamen of the Subpoenas).[4] As such, a production by Mr. Thiel and Clarium is premature. Further, because the Complaint fails to specifically allege what trade secrets Facebook purportedly appropriated, the relevance of damages is fatally overbroad. The request for a virtually limitless universe of damages documents – especially when those documents are sought from third parties – cannot be supported by the vague allegation that ConnectU has been somehow damaged by Facebook.

*Specific and General Objections*

Your letter asserts that the General and Specific Objections to the subpoenas are inoperative boilerplate and insensitive to the individuated requests for documents, an assertion that is not well taken. As already noted, virtually all of the specific requests seek damages-related information, much touching on Mr. Thiel's personal financial information, and most of which was generated by the Facebook and thus available from a party to the litigation with whom parallel discovery requests are both pending and under consideration by the Court. Thus, the claim that the large number of objections as to relevance, confidential information, and the ready availability of such documents from the parties (your letter, page 4), do not reflect wanton use of boilerplate objections so much as the uniformly overbroad, unduly burdensome, and irrelevant nature of requests themselves.

Expanding on the issue of confidential information, you state that Mr. Thiel's financial information will be readily protected by the Protective Order entered in this case. However, the copy of the Protective Order your office forwarded is apparently not the most current protective order issued by the Court, nor does it specifically contemplate the confidentiality of third party information. The parties should either amend the protective order to make explicit its protection of third party information or ConnectU should seek discovery through Mr. Thiel through pending requests to Facebook. *See, e.g.,* FED R. CIV. PRO. 45(c)(3)(B)(i).

As for Thiel and Clarium's objections as to terms, I cannot agree that they are "particularly inappropriate in light of the nature of the business of Clarium and the education, training, and experience of Thiel." The terms "relating or referring" are overbroad because nothing in the requests in which they appear provides a limit to

---

[4] Your letter makes reference to other categories of documents sought and states, without specifics, that their relevance is "also obvious." Presumably, this is because they also embody questions of damages. If so, the Requests are defective for the reasons set forth above. If not, the relevance of "marketing, advertising, sales," and so on are not obviously relevant to the trade secrets at issue in this case from either the face of the Requests or your letter.

inquiry. *See McIntyre's Mini Computer Sales Group, Inc. v. Creative Synergy Corp.,* 117 F.R.D. 492, 495 (D. Mass 1987). A reimbursement receipt for a lunch meeting could be argued to refer or relate to the subject of the requests. This is simply too broad. Similarly, the term "potential investor" is overbroad because there is no limit on what level of interest suffices to make an individual a "potential" investor. With respect to the terms "plan," "value," "worth," and "financial strength and stability," they, too, are fatally overbroad, because these terms have highly subjective meanings. If ConnectU were willing to employ more technical and less ambiguous terms, such as "enterprise value" or "shareholder's equity," a different response could be fashioned.

For the reasons set forth, the subpoenas issued by ConnectU are procedurally defective, seek irrelevant information, constitute an undue burden, request information that ConnectU admits it could obtain from Facebook but for the impediment of the Court's pending consideration of motions regarding the very same subject matter, and for that reason, could be concluded to be largely a product of a desire to harass Facebook's shareholders, many of whom have apparently received highly similar subpoenas. The vast search demanded by the subpoenas is accordingly unwarranted.

In the interests of compromise, I propose the following, although I reiterate that neither the agreement to compromise nor the production of documents in any way waives the objections previously asserted. First, a more detailed privilege Log has been prepared and is enclosed. This should satisfy ConnectU's questions regarding the assertion of the privilege.

Second, my clients are willing to undertake a production of physical documents consisting of approximately one redwell, prior to a modification of the Protective Order, providing that you consent to Facebook designating such materials as "confidential" thereunder and that the plaintiffs will treat such materials as confidential under the Protective Order and agree to not challenge the confidential nature of the production with respect to the fact that the designation was made for the benefit of my clients. If you agree to this procedure, I will have the documents couriered to your Silicon Valley office the business day following the receipt of your written acknowledgement. If you disagree, my clients will undertake a production upon the appropriate modification of the Protective Order.

Third, upon the disposition by the Court of the cross-motions to compel, and as to non-electronic documents, Mr. Thiel and Clarium will undertake a further production consistent with the scope of discovery as refined by the Court.

Very truly yours,

Bruce C. Gibney
Attorney for Peter Thiel
and
Clarium Capital Management LLC

Encl.

LOG/AMENDMENT

F.R.C.P. 45(d)(2)

| DATE | TYPE OF DOCUMENT | SUBJECT | PRIVILEGE ASSURED | SENDER/RECEIVER |
|---|---|---|---|---|
| 9/9/2004 | Emails (3) | Litigation pending against Facebook – counsel's impression and conclusions | A/C | Internal/External Counsel |
| 9/9/2004 | Memo | Litigation pending against Facebook – counsel's impression and conclusions | A/C | Internal/External Counsel |
| 9/10/2004 | Emails (1) | Litigation pending against Facebook – counsel's impressions and conclusions | A/C | Internal Counsel/Peter Thiel |

<u>Via Facsimile and US Mail</u>

Ken W. Curtis, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner LLP
Two Freedom Square, 11955 Freedom Drive
Reston, VA 20190-5675

February 24, 2006

Re: *ConnectU LLC v. Mark Zuckerberg et al* – Subpoena to Peter Thiel and Clarium Capital Management LLC

Dear Mr. Curtis:

This letter responds to your February 22, 2006 letter regarding Mr. Thiel and Clarium's objections and responses to ConnectU's subpoena.

Two facts provide the overriding context in our discovery discussions: first, ConnectU has failed to meaningfully respond to our objections regarding undue burden and second, Mr. Thiel and Clarium are, in contrast to ConnectU, willing to make actual concessions, in this case by producing physical documents notwithstanding the unduly burdensome and irrelevant nature of ConnectU's subpoenas. ConnectU's proposed compromise is that my clients provide it with physical document immediately, without any limitation on scope, and that additional details be provided regarding the burdens of electronic discovery (leaving aside the dispositive fact of the burden imposed by the overbroad, duplicative and harassing subpoenas themselves). That is hardly a compromise.

Clarium and Mr. Thiel, respectively, made numerous objections to the extensive discovery sought by ConnectU. Notwithstanding these objections based on lack of relevance, undue burden, vagueness, ambiguity, confidential information and/or privilege, ConnectU has persisted in ignoring valid objections. ConnectU is required to engage in a meaningful meet and confer process. I will therefore again raise my objections in the hope that ConnectU responds to them before burdening the Court with a premature and baseless motion.

**<u>Undue Burden and Relevance</u>**

First, ConnectU refuses to temper its requests, despite the incontrovertible assertion that the information sought is readily available from Facebook, a party to this action. *See* Letter from Bruce Gibney to Ken Curtis, Feb 15, 2005 at 1-3. You have proffered no reasonable explanation for seeking to burden two non-parties for the same information. Rule 45(c)(1) clearly states that

Ken Curtis
February 24, 2006

ConnectU is to take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. ConnectU has requested broad categories of information, from a non-party, more appropriately sought from the defendant in the action, which bears little likelihood to yield the discovery of admissible evidence. The burden to Clarium and Mr. Thiel of locating and producing the information far outweighs any benefit to ConnectU.

ConnectU has offered no meaningful response to the aforementioned points, instead offering an attempt to distinguish an authority cited in my letter. Tellingly, ConnectU offers no response to the fact that the documents it seeks <u>are available from a party already served with requests seeking the same broad categories of information, a fact which ConnectU has not disputed.</u> Rule 45 is not a substitute for discovery from the parties. *See Bada v. Montgomery Ward & Co.*, 32 F.R.D. 208, 210 (E.D. Tenn. 1963) ("These witnesses are not parties to the action, and they should not be burdened with the annoyance and expense of producing the documents sought unless the plaintiff is unable to discover them from the defendant."). That my clients have certain documents relating to Facebook is therefore irrelevant in the current posture; much as in *Bada* and *Liberty Mutual*, ConnectU is abusing the subpoena process to coerce from one group what it has been unable to obtain from another.

Furthermore, as I explained to you in my earlier letter, Clarium changed email storage platforms in the fall of 2005. No emails prior to that date are stored in the new platform. Rather, emails from prior to that date and in the responsive time period, are not stored in a readily searchable format. Those emails are stored on a different database which in order to search would require Clarium to purchase third-party software costing about $2000; train its already overburdened IT personnel on its use; devote several days of resources to running searches on as of yet unidentified key terms; convert the emails into a different format for print and review; print out those emails; and then review those emails for relevance, privilege and confidentiality. The process is clearly unduly burdensome in terms of time, money, the availability of the information from parties to the action, and the information's lack of relevance.

**Relevance**

ConnectU's February 22 letter makes little attempt to set forth the relevance of the documents sought, stating only that the relevance of the documents sought are "clearly relevant" and "indisputable." ConnectU's self-serving conclusions do not support a finding of relevance. Nor is your assertion that the "resolution by the Massachusetts court of any motion to compel is not relevant" well taken. Rule 45 does not exist in a vacuum: the requirement of relevance binds ConnectU in its use of Rule 45 as much as it does in its use of Rule 26. As the relevance of damages documents is, as you know, the subject of judicial dispute between the parties, ConnectU's attempt to obtain documents before the Court's determination is a subversion of the discovery rules. Indeed, you informed me of such during our telephonic conference, stating that ConnectU had issued the subpoenas to my clients because it could not obtain the documents directly from Facebook. The fact that a determination of these issues may not take place in the court presently deciding the discovery dispute between the parties is worse than irrelevant; it is an attempt to use one court to obtain what cannot be had from another.

Ken Curtis
February 24, 2006

### Vague and Ambiguous Requests

ConnectU has also failed to provide any response to my request for clarification of the vague and ambiguous terms identified in my previous letter. Unless ConnectU provides clarification, my clients will have to employ their own definitions of the terms in any production.

### Protective Order

Connect U has also not addressed the objection that the protective order between the parties to the action does not contemplate confidential information produced by non-parties. There is no protective order regarding the treatment of confidential information between Clarium and ConnectU, nor is there a protective order between Mr. Thiel and ConnectU. Our production today is subject to your agreement to the compromise regarding the Confidentiality Order set forth in my previous letter.

### Privilege Log

Finally, ConnectU's complaints regarding the sufficiency of the privilege log are either founded on a misconception or meritless. In referring to "external counsel" in the privilege log, I referred to <u>my client's</u> outside counsel. Discussions between in-house and outside counsel are clearly privileged when they concern "counsel's impressions and conclusions" regarding pending litigation. Any additional description could potentially compromise the privilege. No further detail will be added to the privilege log.

My clients wish to resolve these matters without the use of motion practice. However, ConnectU's intransigence with respect to accommodating valid objections and concerns is unreasonable.

I am enclosing responsive documents with this letter to be treated as Confidential pursuant to the terms of the "Second Stipulated Protective Order" between the parties, as agreed to by you in your February 22 letter.

Very truly yours,

Bruce C. Gibney
Attorney for Peter Thiel
and
Clarium Capital Management LLC

Encl.