## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>                    Plaintiff,<br><br>          v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN,<br>DUSTIN MOSKOVITZ, ANDREW MCCOLLUM,<br>CHRISTOPHER HUGHES, FACEBOOK, INC.,<br><br>                    Defendants. | Civil Action No. 1:04-cv-11923 (DPW)<br><br>District Judge Douglas P. Woodlock<br><br>Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG and<br>FACEBOOK, INC.,<br><br>                    Counterclaimants,<br><br>          v.<br><br>CONNECTU LLC,<br><br>                    Counterdefendant,<br><br>          and<br><br>CAMERON WINKLEVOSS, TYLER<br>WINKLEVOSS, and DIVYA NARENDRA,<br><br>                    Additional Counterdefendants. | |

## PLAINTIFF'S MEMORANDUM OF LAW IN COMPLIANCE WITH
## THE COURT'S JUNE 22, 2006 ORDER REGARDING LEGAL ARGUMENTS
## <u>RAISED BY FACEBOOK DEFENDANTS</u>

## TABLE OF CONTENTS

I.     INTRODUCTION.................................................................................................. 1

II.    THE DECLARATIONS DO NOT VIOLATE THE PAROL EVIDENCE RULE ........ 1

   A.    The Parol Evidence Rule Does Not Apply Here At All ...................................... 1

   B.    The Parol Evidence Rule Does Not Apply to Prior Agreements........................ 2

   C.    Third Parties Cannot Rely on the Parol Evidence Rule ................................... 3

III.   NEITHER JUDICIAL ESTOPPEL NOR OTHER AUTHORITY ALLOWS THIS
      COURT TO STRIKE OR IGNORE THE NARENDRA DECLARATION............... 4

   A.    Facts Surrounding the Response to California Interrogatory No. 14................. 4

   B.    Narendra's June 12, 2006 Declaration is Admissible to Explain his Position and
   Agreement with ConnectU ................................................................................ 6

      1.    The Judicial Estoppel Doctrine Does Not Apply........................................ 7

      2.    Facebook Defendants' Reliance Upon The *Stefanik* Case Is Misplaced ..................... 11

IV.    THE EVIDENCE PRESENTED SHOWS THAT MARK ZUCKERBERG WAS A
      CALIFORNIA CITIZEN ON SEPTEMBER 2, 2004 .................................. 12

V.     CONNECTU LLC'S FAILURE TO REGISTER IS NOW A MOOT ISSUE.......... 12

VI.    FILING OF THE SUPPLEMENTAL BRIEF WAS PROPER................................. 15

VIII.  CONCLUSION ................................................................................. 19

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alternative System Concepts, Inc. v. Synopsys, Inc.,*
 374 F.3d 23 (1st Cir. 2004) ................................................................................ 8

*Board of License Commissioners v. Pastore,*
 469 U.S. 238 (1985) ........................................................................................... 17

*Boyle v. Merrimack Bancorp, Inc.,*
 756 F. Supp. 55 (D. Mass. 1991) ...................................................................... 17

*Brown v. Baeke,*
 No. 04-2291-JWL, 2005 WL 309940 (D. Kan. Feb. 2, 2005) ............................ 18

*Davis v. Allstate Insurance Co.,*
 No. 5:01CV200(DCB)(JCS), 2005 WL 1362959 (S.D. Miss. June 3, 2005) .......... 18

*Fieldwork Boston, Inc. v. United States,*
 344 F. Supp. 2d 257 (D. Mass. 2004) ............................................................ 7-8

*Franco v. Selective Insurance Company,*
 184 F.3d 4 (1st Cir. 1999) .................................................................................. 10

*Full Service Beverage Co. v. Blue Ox Distributors LLC,*
 No. CIVAA05CV00655MEHMJW, 2006 WL 753211 (D. Colo. March 22, 2006) ........... 17-18

*Fusari v. Steinberg,*
 419 U.S. 379 (1975) ....................................................................................... 16-17

*Gens v. Resolution Trust Corporation,*
 112 F.3d 569 (1st Cir. 1997) ............................................................................ 8-9

*Gonzalez vs. United States,*
 284 F.3d 281 (1st Cir. 2002) .............................................................................. 3

*Grupo v. Dataflux v. Atlas Global Group,* L.P.,
 541 U.S. 567 (2004) ............................................................................................. 1

*McMellon v. Safeway Stores, Inc.,*
 945 F.Supp. 1402 (D.C. Or. 1996) ..................................................................... 12

*New Hampshire v. Maine,*
 532 U.S. 742 (2001) ...................................................................................... 7, 10

*Parker & Parsley Petroleum Co. v. Dresser Indus.,*
 972 F.2d 580 (5th Cir. 1992) ............................................................................. 17

*Pramco, LLC v. San Juan Bay Marina, Inc.*,
    435 F.3d 51 (1st Cir. 2006) .................................................................................... 16

*Root v. John T. Robinson Co.*,
    55 F.2d 303 (D. Mass. 1931) ...................................................................................... 3

*Shackelford v. Latchum*,
    52 F. Supp. 205 (D. Del. 1943) ................................................................................... 3

*Singleton v. Board of Education USD 500*,
    894 F. Supp. 386 (D. Kan. 1995) ......................................................................... 11, 12

*Stefanik v. Friendly Ice Cream Corporation*,
    183 F.R.D. 52 (D. Mass. 1998) ................................................................................. 11

*Trans-World Int'l, Inc. v. Smith-Hemion Productions, Inc.*,
    No. CV 94-6960-LEW, 1996 U.S. Dist. LEXIS 21761 (C.D.Cal. July 18, 1996) .................... 9

*Viqueira v. First Bank*,
    140 F.3d 12 (1st Cir. 1998) ...................................................................................... 17

*Willy v. Costal Corp.*,
    503 U.S. 131 (1992) ............................................................................................. 18-19

*Zola v. Fordham University*,
    No. 85 Civ 783 (WK), 1987 U.S. Dist. LEXIS 15082 (S.D.N.Y. March 19, 1987) ................. 9

## STATE CASES

*Cadle Co. v. Paras*,
    823 N.E.2d 823, 2005 WL 588882 (Mass. App. Ct. March 14, 2005) ..................................... 12

*Cooke v. Walter Kidde & Co.*,
    394 N.E.2d 968 (Mass. App. 1979) ........................................................................................... 14

*Good Hope Industries v. Ryder Scott*,
    389 N.E.2d 76, n.18 (Mass. 1979) ............................................................................................ 14

*Goodwin Brothers Leasing, Inc. v. Katherine Nousis*,
    366 N.E.2d 38 (Mass. 1977) ..................................................................................................... 14

*National Fertilizer v. Fall River Five Cents Savings Bank*,
    82 N.E. 671 (Mass. 1907) ................................................................................................... 13,14

*Otis, Third v. Arbella Mutual Insurance Company*,
    824 N.E. 2d 23 (Mass. 2005) ............................................................................................... 7, 10

*Scott-Douglas Corp. v. Greyhound Corp.*,
    304 A.2d 309 (Del. Super. Ct. 1973) .......................................................................................... 3

*Town of Hopedale v. Alderman & Macneigh Inc.*,
    13 Mass. L. Rptr. 91 (Mass. Super. Ct. 2001) ......................................................................... 15

## FEDERAL STATUTES

28 U.S.C. § 1367(c) ........................................................................................................................ 20

28 U.S.C. § 1653 ............................................................................................................................. 19

Fed. R. Civ. P. 25 ........................................................................................................................... 19

## STATE STATUTES

6 Delaware Code Ann. §§ 18-101(7), 301(a)(2) (2006) ................................................................. 3

California Penal Code § 502 ............................................................................................................ 4

Massachusetts Business Corporation Act, Ch.156D, Part5A, 15.02(a)-(c) ................................. 15

Massachusetts General Laws, Chapters 156C and 156D ......................................................... 13-14

Massachusetts LLC Act, Ch. 156C § 54(a) ................................................................................. 13

Massachusetts General Law, Chapter 181, § § 3,4, and 9 ........................................................... 14

Massachusetts General Law, Chapter 1903, p. 444, c.437, § 60 ................................................. 14

## OTHER AUTHORITIES

Restatement (Second) of Contracts § 213 (1981) ........................................................................... 3

18 Charles Alan Wright & Arthur R, Miller, Federal Practice and Procedure, Civil
   2d §1350 ................................................................................................................................ 17

## I.    INTRODUCTION

Facebook Defendants' arguments raised at the June 22, 2006 hearing repeat those set forth in their response to ConnectU's June 10, 2006 Supplemental Brief, which they styled as an opposition to ConnectU's motion for leave to file the Supplemental Brief ("Opposition to Motion for Leave", Dkt. 192). Such arguments, which seek a procedural dismissal and the rejection of ConnectU's Supplemental Brief and the Declarations of Divya Narendra and Cameron and Tyler Winklevoss, should be rejected and their motion to dismiss should be denied.

All of the parties agree that subject matter jurisdiction is premised on the state of facts that existed on the date the Complaint was filed, namely, September 2, 2004. All of the evidence that existed on September 2, 2004 establishes that there was complete diversity between the parties.

## II.    THE DECLARATIONS DO NOT VIOLATE THE PAROL EVIDENCE RULE

### A.    The Parol Evidence Rule Does Not Apply Here At All

The Operating Agreement on which Facebook Defendants premise their argument was signed on August 5, 2005 and made Narendra a ConnectU Member retroactively to ConnectU's April 2004 formation. Facebook Defendants seek to exclude the Declarations of Narendra and the Winklevoss brothers, which describe the oral agreement between them at the time the Complaint was filed, based on the parol evidence rule. Facebook Defendants' invocation of the parol evidence rule violates the time-of-filing rule, which requires that all challenges to subject-matter jurisdiction premised upon diversity of citizenship must be measured against the state of facts that existed at the time of filing. *Grupo v. Dataflux Atlas Global Group*, *L.P.*, 541 U.S. 567, 570-71 (2004).

The specious nature of Facebook Defendants' parol evidence rule argument is best illustrated by examining its reverse. Had there not been diversity on September 2, 2004 because an oral agreement made Narendra a ConnectU LLC Member on that date (and assuming

1

*arguendo* that Mr. Zuckerberg was a New York citizen on that date), a later-executed, retroactive agreement stripping Narendra of Membership in ConnectU LLC as of September 2, 2004 would not have saved diversity. [1]  Just as a contract cannot reach back to *create* diversity where none existed, a contract also cannot reach back and *destroy* diversity by retroactive application.

Facebook Defendants should answer this question in their reply:  Would they concede that a retroactive operating agreement would save diversity if the facts were reversed as stated above?  The answer is clearly no and their parol evidence rule argument should end here.

### B.   The Parol Evidence Rule Does Not Apply to Prior Agreements

The parol evidence rule also is not applicable under these circumstances.  The August 2005 Operating Agreement and the prior oral agreement between Divya Narendra, Tyler Winklevoss, and Cameron Winklevoss are two different agreements wholly separate in time. (Dkt. 182, Ex. 8; Dkt. 183, 184, and 185.)  ConnectU is not attempting to use the oral agreement between the Winklevoss brothers and Narendra to do anything but show that such agreement existed on the date the Complaint was filed.

The Court must evaluate facts as they existed on the Complaint's filing date.  The Operating Agreement, signed by the parties in the summer of 2005, did not exist on September 2, 2004.  It is therefore irrelevant to the state of facts on that date.[2]  Since no one disputes that only an oral agreement regarding ConnectU's Members existed on September 2, 2004, and that no

---

[1] ConnectU does not concede that Mr. Zuckerberg was a citizen of New York on September 2, 2004.  It simply assumes so in this hypothetical to illustrate the inapplicability of the August 5, 2005 Operating Agreement to the diversity issue.

[2] Similarly, any other documents that did not exist on or before September 2, 2004 are irrelevant.  These would include ConnectU LLC's 2004 Federal and State Tax Filings, which were prepared over a year after the filing of the Complaint, on October 6, 2005.  Facebook Defendants alluded to these documents at the June 22 hearing, and ConnectU submits them with this response.  (Dkt. 194, Ex. H; Declaration of Meredith H. Schoenfeld "Schoenfeld Decl.," Ex. 1, Ex. 2)  Although these documents reflect the retroactive effect of the August 5, 2005 Operating Agreement and therefore treat Narendra as a ConnectU LLC Member for the 2004 tax year, none of this was true and these documents did not exist on September 2, 2004.

document existing on September 2, 2004 names Narendra as a ConnectU Member, the Court

may and should consider parol evidence to determine the terms of that earlier agreement. *See*

*Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 315 (Del. Super. Ct. 1973) (holding

that use of parol evidence is permissible to prove a separate agreement).[3]  As Facebook

Defendants concede, the Court may review evidence and declarations when evaluating whether

the Court possessed subject matter jurisdiction at the time of filing the original Complaint.

(Defendants' Motion to Dismiss, Dkt. 94 at 10, *citing Gonzalez vs. United States*, 284 F.3d 281,

288 (1st Cir. 2002))  The Narendra and Winklevoss Declarations, which describe the oral

agreement in effect on September 2, 2004, therefore are proper, relevant evidence.

### C.   Third Parties Cannot Rely on the Parol Evidence Rule

Even if the Court determines that the Declarations constitute parol evidence regarding the

terms and contents of the August 5, 2005 ConnectU LLC Operating Agreement, the parol

evidence rule cannot be invoked by a third party, such as the Facebook Defendants, seeking to

rely on an agreement in which it does not have privity. *Shackelford v. Latchum*, 52 F. Supp. 205,

207 (D. Del. 1943).[4]  The parol evidence rule bars a party to an agreement from attempting to

change or explain the terms of the agreement through parol evidence in order to disadvantage

another party to the agreement. *See* Restatement (Second) of Contracts § 213 (1981).   It does

not permit third parties to challenge the interpretation of a contract agreed upon by the parties to

that contract. *Shackelford,* 52 F. Supp. at 207.  Thus, Facebook Defendants, as non-parties to the

Operating Agreement, cannot argue that Narendra and the Winklevoss brothers are precluded

---

[3] Members of a Delaware LLC may be specified in an oral or written agreement.  6 Del. Code Ann. §§ 18-101(7), 301(a)(2) (2006).  Thus, Delaware law governs such oral agreement.

[4] If the parol evidence rule applies here at all, ConnectU agrees with Facebook Defendants (Dkt. 192 at 7) that Delaware law should apply to this issue.   However, Massachusetts law also prevents a third party from relying on the parol evidence rule. *See Root v. John T. Robinson Co.*, 55 F.2d 303 (D. Mass. 1931) (finding that the parol evidence rule is a form of estoppel, and therefore applies only between parties to the writing).

from explaining the terms of the ConnectU LLC Operating Agreement or its predecessor oral

agreement.

## III.    NEITHER JUDICIAL ESTOPPEL NOR OTHER AUTHORITY ALLOWS THIS COURT TO STRIKE OR IGNORE THE NARENDRA DECLARATION

### A.    Facts Surrounding the Response to California Interrogatory No. 14

Approximately one year after ConnectU filed this action against Facebook, Inc. and its

principals, Facebook, Inc. filed an action in the California State Court alleging that ConnectU,

Narendra, and the Winklevoss brothers violated a California statute prohibiting the

misappropriation of data from computers and computer systems.  *See* Cal. Penal Code § 502.

Narendra and the Winklevoss brothers successfully moved to quash the service of the California

Complaint.

Narendra and the Winklevoss brothers asserted, and the court agreed, that a California

court could not exercise jurisdiction over them because they did not have sufficient minimum

contacts with California.  Prior to granting their Motion to Quash, the California Court allowed

limited discovery directly and solely related to the issues concerning the jurisdictional challenges

Narendra and the Winklevoss brothers asserted.  Facebook propounded several discovery

requests, including Interrogatory No. 14, to Narendra and the Winklevoss brothers.  It reads:

> IDENTIFY current AND former directors, officers, employees, AND agents of
> CONNECTU (including without limitation, Members, Managers AND Board of
> Managers as defined in the Limited Liability Company Operating Agreement of
> ConnectU,    LLC--bates    numbers    C011285    through    011335),
> HARVARDCONNECTION, AND WINKLEVOSS COMPANIES, including
> without limitation, dates in these positions, duties, job descriptions authorities
> AND responsibilities.

(Schoenfeld Decl., Ex. 3)

Narendra served two responses to Interrogatory No. 14.  The first provided:

> Subject to the general objections and the objections to the definitions and
> instructions incorporated herein, Responding party answers as follows.   This

4

interrogatory also calls for information regarding the "Winklevoss Companies", as identified in the definition section. As such, this interrogatory seeks information that is irrelevant and not calculated to lead to the discovery of admissible evidence concerning personal jurisdiction, and Responding party possesses no such information. This interrogatory is vague and overbroad. It is compound, complex, and effectively represents at least six separate interrogatories. Responding party is informed and believes that subject to objections, ConnectU's responses to either Plaintiff's First Set of Interrogatories, or First Request for Production of Documents may include information about ConnectU L.L.C. and its directors, officers and employees, to the extent is has them. To the extent such documents and/or responses include or involve Responding party, he incorporates such by this reference.

(Schoenfeld Decl., Ex. 4)

The amended response, served March 9, 2006, provided:

Responding Party incorporates his initial response and objections herein to this amended response. In addition, Responding Party responds as follows: Members of ConnectU include Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and Divya Narendra, as set forth in the Limited Liability Company Operating Agreement recited in the Interrogatory ("Operating Agreement") and found at bates numbers C011285 through C011335. These persons have all been Members since ConnectU was formed. . .

(Schoenfeld Decl., Ex. 5)

Facebook's brief opposing the Motion to Quash did not assert that the information provided in the response to Interrogatory No. 14 was in any way relevant or important to the issues before that Court. (Dkt. 182, Ex. 9) Facebook did not mention such information in the hearing on the Motion to Quash, nor did the California Court's Order granting the Motion to Quash rely on any information provided in response to Interrogatory No. 14. (Schoenfeld Decl., Ex. 6) In fact, Facebook, Inc. argued as follows in its May 11, 2006 opposition to the Motion to Quash, which was 2 months after Narendra served his March 9, 2006 amended response to Interrogatory No. 14:

[Narendra and the Winklevoss brothers] "do not have any [company] shield to hide behind. The Operating Agreement of ConnectU LLC was not executed by any of the Individual Defendants until August 5, 2005, well after Individual Defendants

[allegedly] accessed and took [allegedly proprietary] data from Facebook's website in Spring 2005.  Therefore, although ConnectU may have been set up before Individualized Defendants engaged in the wrongful acts and directly profited from them, none of the Individual Defendants was a member of ConnectU; therefore, no alleged ConnectU shield existed for them, until well after the [allegedly] wrongful acts began."

(Dkt. 182, Ex. 9, at 8)

Here, despite Narendra's earlier, amended response to Interrogatory No. 14, Facebook was relying on the fact that Narendra was **NOT** a ConnectU Member to argue that the Court had jurisdiction over him.  For the doctrine of judicial estoppel to apply to Narendra's Declaration in this case, Facebook, Inc. would have had to argue exactly the opposite in California and the Court's denial of jurisdiction would have had to be based on the amended interrogatory answer (see § III.B, *infra*).  Facebook should be held to this argument, in which it **agrees** with the Narendra Declaration.  Facebook should not be allowed to argue from one side of its mouth that ConnectU had no Members prior to September 2, 2004 (to trap Narendra and the Winklevoss brothers into personal jurisdiction in the California case), and also to argue from the other side in this case that Narendra was a ConnectU Member on September 2, 2004 to destroy diversity.

## B.  Narendra's June 12, 2006 Declaration is Admissible to Explain his Position and Agreement with ConnectU

Neither the judicial estoppel doctrine nor any other authority precludes Narendra from explaining his arrangement with the Winklevoss brothers as it relates to ConnectU.  The June 12 Declaration in this action outlines Narendra's membership arrangement with ConnectU, and provides an explanation why the Winklevoss brothers reached this agreement with Narendra. (Dkt. 184)  As such, it is not inconsistent with Narendra's response to Interrogatory No. 14. Because the Operating Agreement is retroactive to ConnectU's formation, Narendra stated in his amended response to Interrogatory No. 14 that he has been a Member since ConnectU's formation.  However, this was not true on September 2, 2004, as he explained in his Declaration,

because the Operating Agreement had not yet been signed. The only relevant ConnectU corporate documents existing on that date identify only the Winklevoss brothers as ConnectU's Members. No document names Narendra as a ConnectU Member before August 5, 2005. (See Supplemental Brief, Dkt. 187, § III.C and D).

Moreover, to the extent that the interrogatory response and the Declaration appear inconsistent, Narendra explained during his June 16, 2006 deposition that the interrogatory response was incorrect. (Schoenfeld Decl., Ex. 7 at p. 173-174)[5] Further, and in any event, because the California state court never relied upon or took a position regarding the substance of the response to Interrogatory No. 14, there is no basis for this Court to disregard Narendra's Declaration or his deposition testimony, in which he explains the arrangement he had with the Winklevoss brothers.

### 1.   The Judicial Estoppel Doctrine Does Not Apply[6]

This Court has recognized that two conditions must be satisfied before judicial estoppel can be applied to disregard a prior statement. First, the prior statement, in this case Narendra's response to Interrogatory No. 14, and the subsequent Declaration "must be 'mutually exclusive' and 'clearly inconsistent' with one another". *Fieldwork Boston, Inc., v. United States,* 344 F.

---

[5] In fact, Facebook Defendants deposed Narendra from 1:21pm to 8:13pm on June 16, with less than 90 minutes of breaks, and at least 50 pages of the deposition are dedicated to questioning on his Declaration (*Id.* at 48-50, 108, 119-130, 143-154, 161-165, 170-73, 189-91, 222, 230-31, 236-39, 261-71) That Facebook Defendants developed no evidence during such deposition that anyone other than the Winklevoss brothers were ConnectU's Members on September 2, 2004 is shown by Facebook Defendants' failure to cite at the June 22 hearing or in their Opposition to Motion for Leave any testimony from such deposition in support of their position. ConnectU also offered to provide the Winklevoss brothers for depositions prior to the June 22 hearing, but Facebook Defendants declined. (See ConnectU's Opposition to Motion to Strike, Dkt. 201)

[6] ConnectU does not provide an analysis of whether state or federal law controls in this situation because the First Circuit and the Commonwealth of Massachusetts apply the judicial estoppel doctrine consistently. (*Compare Fieldwork Boston, Inc., infra,* with *Otis, Third v. Arbella Mutual Insurance Co.,* 824 N.E. 2d 23 (Mass. 2005)).

Supp. 2d 257, 267 (D. Mass. 2004) (J. Collings) (*citing Alternative System Concepts, Inc. v. Synopsys, Inc.,* 374 F.3d 23, 33 (1st Cir. 2004), and *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001)). Second, the party estopped "must 'have succeeded in persuading a court to accept its prior position.'" *Id.* Another consideration, although "not a formal element of a claim for judicial estoppel, 'is whether the party asserting the alleged inconsistent position would gain an unfair advantage.'" *Id.* None of the elements and considerations relevant to judicial estoppel is present in this situation.

First, in comparing the interrogatory response to the June 12 Declaration, they are not "clearly inconsistent with one another." The interrogatory response does not provide a date as to when ConnectU was formed. The Declaration, on the other hand, explicitly identifies an oral agreement date, and further explains the circumstances surrounding that oral agreement. Moreover, the interrogatory itself is vague, particularly because it cites a document that post-dated the oral agreement between ConnectU's founders, and asks several distinct questions, including one about membership. Narendra and ConnectU answered Interrogatory No. 14 as though it asked for membership of ConnectU as of the date the agreement referenced in the interrogatory was signed. (Schoenfeld Decl., Ex. 7, ConnectU's amendment to its second amended response.) Consequently, the poorly written question, combined with the fact that the answer to it is not inconsistent with the subsequent Declaration, indicates that this Court should not apply the judicial estoppel doctrine and should consider the Narendra Declaration, as well as the Declarations submitted by the Winklevoss brothers.

In applying the second prong of the judicial estoppel doctrine, there is absolutely no proof that "the first forum [i.e. the California State Court] accepted the legal or factual assertion alleged to be at odds with the position advanced in the current forum [i.e. the District Court of

Massachusetts]." *Gens v. Resolution Trust Corp.,* 112 F.3d 569, 572 (1st Cir. 1997). In the California state court proceeding, Narendra and the Winklevoss brothers successfully argued that the court could not assert general or special jurisdiction because they lacked sufficient minimum contacts with California. As argued by Facebook, Inc. in its opposition to the Motion to Quash (Dkt. 182, Ex. 9, at 8), membership in ConnectU was not relevant to the California court's jurisdiction determination and ConnectU allegedly had no Members before August 2005. The court instead had to consider each of the defendants' contacts regardless of whether the contacts occurred during the time the defendant was a Member of ConnectU. So, the interrogatory response was not relied upon by the California court.

In *Zola v. Fordham University,* the plaintiff in a lawsuit alleging discrimination responded to a contention interrogatory in which she stated that she did not contend that the defendant failed to follow a specific policy. No. 85 Civ. 783 (WK), 1987 U.S. Dist. LEXIS 15082 (S.D.N.Y. March 19, 1987). The defendant then attempted to invoke the judicial estoppel doctrine in a motion for summary judgment after the plaintiff included a statement somewhat contradictory to her interrogatory response. The court rejected the defendant's suggestion that judicial estoppel barred the subsequent statement, holding "[t]here has been no judicial acceptance of the position asserted in the plaintiff's interrogatory answer. Thus, judicial estoppel is inapplicable here." *Id.* at 23. Indeed, "statements made during discovery [are] not . . . enough to give rise to judicial estoppel: the doctrine only applies if the trial court actually adopted as true the earlier statement of a party ...." *Trans-World Int'l, Inc. v. Smith-Hemion Productions, Inc.,* No. CV 94-6960-LEW, 1996 U.S. Dist. LEXIS 21761 at *28 (C.D. Cal. July 18, 1996).

Here, the California court never made a finding of when Narendra became a Member of ConnectU because that issue was irrelevant to whether the Court could exercise jurisdiction over

him or the other individual defendants in that case.  Consequently, if Narendra's interrogatory response is interpreted to mean that he was a Member of ConnectU as of April 2004, he is not judicially estopped from providing an explanation or declaring another position consistent with such explanation.

Moreover, judicial estoppel should not apply when a party's prior position was based on inadvertence or mistake.  *Otis,* 824 N.E.2d at 30 (*citing New Hampshire,* 532 U.S. at 753). Narendra gave a deposition at which he was asked to explain this interrogatory response.  He stated that he interpreted the interrogatory to inquire about membership in ConnectU as of the date of the document referenced in the interrogatory, i.e. the Limited Liability Operating Agreement.  Narendra testified that to the extent the interrogatory seeks information about membership as of the date of the oral agreement to form the entity, his answer was a "mistake". (Schoenfeld Decl., Ex. 7)

> Q:  And when say they had, these persons have all been members since ConnectU was formed, do you agree that conflicts with your statement that only Cameron and Tyler were members of ConnectU LLC prior to September 2nd, 2004 in your declaration?
> A:  I think this actually may be misstated.  What I'm referring to here is the operating agreement .  .  . Right so in interrogatory response Number 14 when I say, or when it says that these persons have all been members since ConnectU was formed, I'm referring to the dates as of this Limited Liability Company Agreement in the sentence before.

Finally, Facebook cannot claim Narendra or ConnectU gained an "unfair advantage" as a result of Narendra's interrogatory response.  "Unfair advantage generally requires that a party has succeeded previously with a position directly inconsistent with the one it currently espouses."  *Franco v. Selective Insurance Co.,* 184 F.3d 4, 12 (1st Cir. 1999).  As shown above, the interrogatory response and the Declaration are not inconsistent.  And, in any event, the

California court never adopted or relied upon Narendra's interrogatory response because it was irrelevant to the issues before that court.

### 2. Facebook Defendants' Reliance Upon The *Stefanik* Case Is Misplaced

Facebook Defendants apparently contend that *Stefanik v. Friendly Ice Cream Corp.,* 183 F.R.D. 52 (D. Mass. 1998), requires that this Court disregard Narendra's Declaration in light of his interrogatory response. *Stefanik* concerned a *pro se* plaintiff who alleged in his Complaint that he was a Massachusetts citizen, and later submitted a declaration asserting he was a Florida resident. The defendant moved for summary judgment because the Court did not have subject matter jurisdiction. In granting the defendant's motion the court said, "the plaintiff is simply not permitted to offer, without explanation, evidence directly contradicting the allegations of his own complaint, in the face of a motion for summary judgment." *Id.* at 53-54. The court relied upon a First Circuit case where a party gave "clear answers to unambiguous questions" and later submitted a declaration "clearly contradictory" to his deposition. *Id.*

As demonstrated above, the interrogatory response and the Declaration are not contradictory. To the extent there is a contradiction, Narendra provided the explanation that he believed the interrogatory was more limited than Facebook Defendants apparently contend. And, in any event, this interrogatory cannot in any sense be deemed "unambiguous." This Court should not rely upon *Stefanik* to disregard Narendra's Declaration or his deposition.

A more reasoned approach is found in *Singleton v. Board of Education USD 500*, 894 F. Supp. 386 (D. Kan. 1995), where the court articulates circumstances when it might strike an inconsistent statement. There the plaintiff responded to an interrogatory concerning the circumstances surrounding a physical search. Later, the plaintiff signed an affidavit that was in conflict with this interrogatory response. Defendant moved to strike the affidavit. The court

11

declined, stating, "[p]laintiff did not make the earlier statement by testimony, but rather through

a brief interrogatory response most likely prepared by his attorney.  Because the interrogatory

response contains little detail of the events in question, the court cannot conclude that the

affidavit was an attempt to create a sham fact issue." *Id. at* 389.  *See also McMellon v. Safeway*

*Stores, Inc.,* 945 F.Supp. 1402, 1407 (D. Or. 1996) (where employee could explain seemingly

contradictory responses, statement should not be stricken).

During his deposition, Narendra explained and reconciled his interpretation of the

interrogatory, his response, and his Declaration.  Such explanation, particularly in light of the

ambiguous interrogatory, establish that the Declaration is not a sham.  As in *Singleton* and

*McMellon,* this Court should not strike or otherwise disregard the Narendra Declaration.

## IV.    THE EVIDENCE PRESENTED SHOWS THAT MARK ZUCKERBERG WAS A CALIFORNIA CITIZEN ON SEPTEMBER 2, 2004

Contrary to Facebook Defendants' Opposition to Motion for Leave (Dkt. 192, § II.A.4),

the record shows that ConnectU sustained its burden of showing that Defendant Zuckerberg was

a citizen of the State of California on September 2, 2004.  ConnectU incorporates the evidence

and arguments presented at the June 22, 2006 hearing and in its Supplemental Brief (Dkt. 187,

III.E.).

## V.    CONNECTU LLC'S FAILURE TO REGISTER IS NOW A MOOT ISSUE

ConnectU LLC was only required to register as a foreign corporation in Massachusetts

prior to filing suit if it was doing business in Massachusetts.  Massachusetts LLC Act, Mass.

Gen. Laws Ann. ch. 156C § 54(a) (West 2005).  It is Facebook Defendants' burden to establish

that ConnectU was transacting business in Massachusetts and should have registered, but did not,

and therefore is temporarily disqualified from maintaining this lawsuit.  *Cadle Co. v. Paras*, 823

N.E.2d 823  (Table), 2005 WL 588882 at*2 (Mass. App. Ct. March 14, 2005) (Evidence that

party is not registered to do business in the Commonwealth is not enough to establish that party

cannot maintain suit without registration).  Facebook Defendants offered no such evidence and

therefore failed to meet their burden.

In any event, any such deficiency can be easily cured and is not grounds for dismissal.

Massachusetts LLC Act, Ch. 156C § 54(a), provides as follows (emphasis added):

> A foreign limited liability company doing business in the
> commonwealth which fails to register with the state secretary shall,
> for each year that such failure shall continue, be fined not more
> than five hundred dollars. No such failure shall affect the validity
> of any contract involving the foreign limited liability company, nor
> is a member or a manager of a foreign limited liability company
> liable for the obligations of the foreign limited liability company
> solely by reason of such failure, but no action shall be ***maintained***
> or recovery had by the foreign limited liability company in any of
> the courts of the commonwealth ***as long as such failure continues***.
> The failure of a foreign limited liability company to register with
> the state secretary shall not prevent the foreign limited liability
> company from defending any action, suit or proceeding in any of
> the courts of the commonwealth.

The language of the statute is instructive, stating that no action should be *maintained*, rather than

*brought*.

In *Goodwin Bros. Leasing, Inc. v. Katherine Nousis*, the court noted that "[t]he words 'no

action shall be maintained' indicate an implicit legislative intent…The Legislature, in placing

other limitations on the bringing of suit, has utilized the words 'shall be brought,'… or 'shall be

commenced'… We believe that it is properly characterized as remedial in nature."  366 N.E.2d

38, 41 (Mass. 1977).

A plaintiff's ability to cure its failure to register to do business in Massachusetts has been

the law of the Commonwealth for almost 100 years.  *National Fertilizer v. Fall River Five Cents*

*Savings Bank*, 82 N.E. 671, 672-73 (Mass. 1907), involved one of the predecessor statutes to

Massachusetts General Laws, Chapters 156C and 156D, which also required foreign

13

corporations to register in order to maintain an action. The language of Massachusetts General

Law, § 1903, p. 444, c. 437, § 60 read:

> [N]o action shall be maintained or recovery had in any of the courts of this
> commonwealth by any such foreign corporation so long as it failsto comply with the
> requirements of said sections.

In support of its holding, the Court explained in detail why the statute must be construed to allow

foreign corporations to cure a failure to register.  In fact, this is the sole subject of the two-page

decision.

The Massachusetts Supreme Court, addressing another predecessor statute,

Massachusetts Gen. Laws Ann. ch. 181, §§ 3, 4, and 9, followed *National Fertilizer* in *Good*

*Hope Industries v. Ryder Scott*, 389 N.E.2d 76, n.18 (Mass. 1979), noting that:

> although the defendant's affidavit indicates none of the four plaintiff subsidiary
> corporations of Industries was registered to do business in Massachusetts when the
> complaint was filed, each of them had so registered before the judge ruled on the motion
> to dismiss.  These four plaintiffs were, therefore, eligible to maintain this action against
> the defendant in the courts of the Commonwealth.

Thus, to moot this issue, ConnectU, Inc., the direct successor of ConnectU LLC, is now

in the process of registering to do business in the Commonwealth of Massachusetts and has filed

the necessary paperwork.[7]  (Schoenfeld Decl., Ex. 9).

On May 23, 2006, ConnectU LLC merged into ConnectU, Inc., a Connecticut

corporation.  (Dkt. 182, Ex. 3)  Contrary to Facebook Defendants' argument, for which it cited

no cases (Dkt. 192 at 9), ConnectU's reorganization as a corporation does not present an obstacle

to its ability to cure.  Similar facts arose in *Cooke v. Walter Kidde & Co.*, 394 N.E.2d 968, 970

(Mass. App. 1979), where the court found that the original plaintiff's failure to register to do

business in Massachusetts was not fatal to the suit when the successor was in fact registered.

---

[7] ConnectU, Inc.'s registration is not an admission that it was in fact required to register to do business in
Massachusetts.

Additionally, the Massachusetts Business Corporation Act contemplates that a successor to a foreign entity that failed to register may obtain the required certification. Massachusetts Business Corporation Act, Ch.156D, Part5A, 15.02(a)-(c), provides as follows:

> (a) A foreign corporation transacting business in the commonwealth without delivering to the secretary of state for filing the certificate required by section 15.03 shall not maintain a proceeding in any court in the commonwealth until the certificate is delivered and filed.
>
> (b) The successor to a foreign corporation that transacted business in the commonwealth without delivering to the secretary of state for filing the certificate required by section 15.03 and the assignee of a cause of action arising out of that business shall not maintain a proceeding based on that cause of action in any court in the commonwealth until the foreign corporation or its successor delivers the certificate and it is filed.
>
> (c) A court may stay a proceeding commenced by a foreign corporation, its successor, or assignee until it determines whether the foreign corporation or its successor is required to deliver to the secretary of state for filing the certificate required by section 15.03. If it so determines, the court may further stay the proceeding until the foreign corporation or its successor delivers the certificate and it is filed.

Thus, even if ConnectU LLC incorrectly failed to register (which Facebook Defendants have not established), ConnectU, Inc.'s current registration will allow it to maintain the pending lawsuit. ConnectU will submit proof of its registration to do business in Massachusetts as soon as the registration process has been completed.

## VI.    FILING OF THE SUPPLEMENTAL BRIEF WAS PROPER

On June 12, 2006, ConnectU filed a Supplemental Brief to assist the Court and clarify the record. Contrary to Facebook Defendants' Opposition to Motion for Leave (Dkt. 192, § II.C), a supplemental brief is an appropriate way to address the Court. *Town of Hopedale v. Alderman & Macneigh Inc.*, 13 Mass. L. Rptr. 91, fn. 1 (Mass. Super. Ct. 2001) (instructing counsel to file supplemental briefs instead of letters to the court).

15

ConnectU's Supplemental Brief was necessitated by a shift in the law resulting from the First Circuit's decision in *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006), and by new evidence developed when investigating *Pramco's* effects on this case. The effects of *Pramco,* which controls Facebook Defendants' Motion to Dimsiss, had never been briefed, nor had the law of determining citizenship for diversity purposes (in their Opposition to Motion for Leave, Facebook Defendants ignored the case law cited in the Supplemental Brief for the rule that citizenship of an LLC depends solely on the citizenship of its Members, and that ConnectU LLC's state of orgainzation is irrelevant; see Supplemental Brief, Dkt. 187, § III.B).[8] *Pramco* also made the issue of ConnectU's Members on September 2, 2004 an important issue for the first time.[9] Addtionally, Facebook Defendants' May 1, 2006 amended response to ConnectU's Interrogatory No. 10 (prompted by the Court's March 31 Order, Dkt. 164) identified Thefacebook LLC, which ConnectU then independently investigated (in their Opposition to Motion for Leave, Facebook Defendants completely ignored these new facts; see Supplemental Brief, Dkt. 187, § II.B and III.A). (Dkt. 182, Ex. 2) The identity of ConnectU LLC's Members on September 1, 2004 and the existence of Thefacebook LLC and its founding Members is highly relevant to Facebook Defendants' Motion to Dismiss.

ConnectU was obligated to inform the court of the ramifications of both *Pramco* and the newly discovered evidence, and chose to do so by filing a Supplemental Brief. *See Fusari v. Steinberg*, 419 U.S. 379, 391 (1975) (Burger, J, concurring) (strongly rebuking both parties for

---

[8] Based on the same legal principle, ConnectU does not exist separately from its Members. Such principle, along with Narendra's and the Winklevoss brothers' intent at the time of filing, swallows Defendants' argument that ConnectU LLC had no rights related to the Harvard Connection website, and that ConnectU was not the real party in interest on September 2, 2004. (Dkt. 183, 184, 185; Supplemental Brief, Dkt. 187 at n. 6) Facebook Defendants also failed to respond to this point in their Opposition to Motion for Leave.

[9] Facebook Defendants argue that "ConnectU claims for the first time that Narendra was not a Member…" (Dkt. 192 at 3). Prior to *Pramco,* the issue of Membership was not relevant and neither party presented arguments on this issue.

failing to notify the Court of a change in Connecticut law, noting that "counsel have a continuing duty to inform the Court of any development which may conceivably affect an outcome"); *Board of License Commissioners v. Pastore*, 469 U.S. 238, 240 (1985) (reminding counsel that they have a "'continuing duty to inform the Court of any development which may conceivably affect the [sic] outcome' of this litigation." (quoting Fusari, 419 U.S. at 391)).

Defendants have not been prejudiced by the Supplemental Brief.  ConnectU consented to their response to it and Facebook Defendants did so.

## VII.     THE COURT HAS THE POWER TO ALLOW CONNECTU TO REFILE THE COMPLAINT AND PICK UP WHERE THIS CASE LEFT OFF

As set forth in ConnectU's Supplemental Brief (Dkt. 187 at 17-19) and as Facebook Defendants concede (Dkt. 94 at 12), ConnectU can refile this case if it is dismissed for lack of diversity on September 2, 2004.  Complete diversity exists today and ConnectU's federal claim remains (see Supplemental Brief, Dkt. 187, § V).To the extent the Court has discretion to permit amendment of the existing Complaint rather than requiring ConnectU to refile, ConnectU will amend. *See, i.e., Boyle v. Merrimack Bancorp, Inc.*, 756 F. Supp. 55, 62 (D. Mass. 1991) (granting plaintiff thirty days to amend after dismissal for lack of subject matter jurisdiction). ConnectU also requests leave to amend  to add allegations of fact necessary to support diversity jurisdiction.  *See Viqueira v. First Bank*, 140 F.3d 12, 20 (1st Cir. 1998), 18 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, Civil 2d § 1350 at n. 57.

If the Complaint must be refiled, ConnectU can and will do so.  In either event, and contrary to Facebook Defendants' Opposition to Motion for Leave (Dkt. 192, § III), the Court has the discretion to pick up the case where it left off.  *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588 (5th Cir. 1992) (noting that the parties would not have to repeat the effort and expense of discovery); *Full Service Beverage Co. v. Blue Ox Distributors*

*LLC*, No. CIVAA05CV00655MEHMJW, 2006 WL 753211 at *2 (D. Colo. March 22, 2006) (ordering that upon refiling, all discovery accomplished should be carried over to the new case); *Davis v. Allstate Insurance Co.*, No. 5:01CV200(DCB)(JCS), 2005 WL 1362959 at *1 (S.D. Miss. June 3, 2005) (as a condition of the allowance of the dismissal, discovery should not start anew); *Brown v. Baeke*, No. 04-2291-JWL , 2005 WL 309940 at *3 (D. Kan. Feb. 2, 2005) (discussion of prior dismissal which required that discovery and the pretrial order from the previous case would be carried over).

Contrary to Facebook Defendants' argument, *Willy v. Costal Corp.*, 503 U.S. 131 (1992), does not preclude the Court from picking up the case where it left off, if ConnectU must refile it.[10]  In fact, *Willy* is barely applicable here.  It does not involve picking up a refiled case where it left off when it was dismissed for lack of diversity on the filing date, or anything of the kind.  It does, however, illustrate that a court retains some power over a case even after a dismissal for lack of subject matter jurisdiction.  In *Willy*, the Supreme Court upheld the district court's award of Rule 11 sanctions, which were affirmed by the Court of Appeals at the same time it dismissed for lack of subject matter jurisdiction and remanded to the district court to determine the amount of the sanction.  *Id.* at 133-34.  Contrary to Facebook Defendants' interpretation (Dkt. 192 at 10), the discretion of a district court to carry a case over after refiling is not addressed, affected, or circumscribed by *Willy*.   In fact, the Court stated that although a determination of lack of subject matter jurisdiction precludes further adjudication of the merits of the case (*id.* at 137-38), "such a determination does not automatically wipe out all proceedings had in the district court at a time

---

[10]  Facebook Defendants apparently abandoned this argument because it was not one of the arguments identified during the June 22, 2006 hearing.  Although the Court asked Facebook Defendants to identify their arguments related to Narendra's alleged membership in ConnectU on the filing date, they identified two such arguments and one relating to ConnectU's ability to maintain this action, but did not raise their *Willy* argument. (See June 22, 2006 Hearing Transcript at 233-234)

when the district court operated under the misapprehension that it had jurisdiction." *Id*. at 137
The Court also noted that "it is well established that a federal court may consider collateral issues
after an action is no longer pending." *Id*. at 138.

Precluding a district court from exercising its inherent power to carry the status and
pending motions of the current case over into the refiled case would be a huge and unnecessary
waste of judicial and party resources, forcing the parties and a new court to re-litigate an action
already well underway. Facebook Defendants' conduct of this case also has made it
extraordinarily expensive, and ConnectU should not be made to duplicate that expense by
starting the case over from scratch. Moreover, carrying the case over would not prejudice
Facebook Defendants in any way, as they too would enjoy the benefit of the current procedural
posture of the case and the discovery conducted to date.

## VIII.  CONCLUSION

For the reasons set forth herein, ConnectU respectfully urges the Court to reject Facebook
Defendants' arguments raised at the June 22 hearing and in their Opposition to Motion for
Leave, and accept ConnectU's Supplemental Brief and the Declarations of Tyler and Cameron
Winklevoss and Divya Narendra. ConnectU also respectfully urges the Court to deny Facebook
Defendants' Motion to Dismiss. Upon such denial, ConnectU requests leave to amend the
Complaint to substitute ConnectU Inc. under Fed. R. Civ. P. 25, to allege diversity on the filing
date and the date of the Amended Complaint under 28 U.S.C. § 1653, and otherwise to amend as
described in the Supplemental Brief (Dkt. 187 at 15-17) and ConnectU's pending Motion for
Leave to Amend the Complaint (Dkt. 163). In the event of dismissal, ConnectU will refile the
Complaint based on complete diversity today and federal question jurisdiction, as described in
the Supplemental Brief (Dkt 187 at 17-20), and urges the Court to pick up this case where it left

off.  Diversity on September 2, 2004, October 28, 2004, and today swallows Facebook

Defendants' argument that ConnectU's state and common law claims overshadow the copyright

claim, and that the Court should decline to exercise jurisdiction over such claims under 28

U.S.C. § 1367(c).   After amending or refiling, the Court will have original jurisdiction over the

federal, state, and common law claims.

                                                Respectfully submitted,

DATED:  July 13, 2006                           /s/ John F. Hornick _____
                                                Lawrence R. Robins (BBO# 632610)
                                                Jonathan M. Gelchinsky (BBO# 656282)
                                                FINNEGAN, HENDERSON, FARABOW,
                                                GARRETT & DUNNER, L.L.P.
                                                55 Cambridge Parkway
                                                Cambridge, MA  02142
                                                Telephone:  (617) 452-1600
                                                Facsimile:   (617) 452-1666
                                                larry.robins@finnegan.com
                                                jon.gelchinsky@finnegan.com

                                                John F. Hornick (*pro hac vice*)
                                                Margaret A. Esquenet (*pro hac vice*)
                                                Meredith H. Schoenfeld (*pro hac vice*)
                                                FINNEGAN, HENDERSON, FARABOW,
                                                GARRETT & DUNNER, L.L.P.
                                                901 New York Avenue N.W.
                                                Washington, DC  20001
                                                Telephone:  (202) 408-4000
                                                Facsimile:   (202) 408-4400

                                                Attorneys for Plaintiff and Counterclaim
                                                Defendants

## CERTIFICATE OF SERVICE

        I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)
and paper copies will be sent to those indicated as non registered participants on July 13, 2006.

                                                /s/ John F. Hornick  _____
                                                John F. Hornick