IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>　　　　　Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>　　　　　Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>　　　　　Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>　　　　　Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' OPPOSITION TO PLAINTIFF'S
MEMORANDUM OF LAW IN COMPLIANCE WITH THE COURT'S
JUNE 22, 2006 ORDER REGARDING LEGAL ARGUMENTS
RAISED BY FACEBOOK DEFENDANTS**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................. 1

II.  BACKGROUND ................................................................................. 2

    A.  ConnectU and Mr. Narendra Consistently Represented That Mr. Narendra Was A Member Of The LLC At The Time Of Formation ................................... 2

        1.  Facebook, Inc. v. ConnectU LLC, California Superior Court ................. 2

        2.  ConnectU Filed Composite Tax Returns For 2004 Which Identify Mr. Narendra As A Member Of The LLC ............................................... 4

        3.  Pramco Briefing ................................................................................ 4

    B.  ConnectU Manufactured The "LLC" Issue After The Court's March 31, 2006, Memorandum and Procedural Order ........................................................... 4

III.  ARGUMENT .................................................................................... 5

    A.  The Operating Agreement Binds Mr. Narendra And ConnectU As A Matter Of Law ................................................................................................ 5

        1.  The Proffered Parol Evidence Is Not Admissible To Contradict The Express Terms Of The Operating Agreement ................................... 5

        2.  The Facebook Defendants May Rely On The Parol Evidence Rule To Preclude The Purported "Prior Oral Agreement" ............................... 7

    B.  ConnectU Is Estopped From Recanting Its Prior Statements That Mr. Narendra Was A Member of ConnectU LLC Since its Inception ................. 8

        1.  ConnectU Is Judicially Estopped ...................................................... 8

            a.  ConnectU's Current Position Is Inconsistent With The Position It Took In The Related California Action ...................... 9

            b.  ConnectU Prevailed In The California Action ........................... 11

            c.  ConnectU May Not "Kick Over The Chess Board In The Face Of Checkmate" ................................................................. 12

        2.  The Doctrine Of "Quasi-Estoppel" Also Precludes ConnectU From Claiming That Mr. Narendra Was Not A Member On September 2, 2004 ............................................................................ 13

    C.  ConnectU LLC Lacked Standing to Sue in Massachusetts ............................. 14

        1.  ConnectU LLC Failed to Register Pursuant to Massachusetts LLC Act, Ch. 156C, Section 54 ............................................................... 14

        2.  ConnectU LLC was Doing Business in the State of Massachusetts without Proper Authorization ........................................................... 15

**TABLE OF CONTENTS**
**(continued)**

Page

3.    ConnectU LLC Cannot Cure Because It No Longer Exists.................... 16

4.    The Plain Meaning of G.L. ch. 156C, Section 54 Does Not Provide for a Successor in Interest to Cure a Failure to Register........................ 17

IV.    CONCLUSION........................................................................................... 18

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Aetna Insurance Co.* v. *Newton*, 274 F.Supp. 566 ................................................................. 6, 7, 8

*Amtrust, Inc.* v. *Larson*, 388 F.3d 594 .................................................... 14

*Bailey* v. *Railroad Co.*, 84 U.S. 96 ........................................................... 5

*In re Denadai*, 259 B.R. 801 ..................................................................... 7

*Fieldwork Boston, Inc.* v. *United states of America*, 344 F.Supp.2d 257 ..................................... 8

*Lederer* v. *John Snow, Inc.*, 411 F.Supp.2d 25 ................................................. 5

*Maletis* v. *United States*, 200 F.2d 97 ........................................... 14

*McManus* v. *C.I.R.*, 583 F.2d 443 ........................................................ 14

*Patriot Cinemas* v. *General Cinema Corp.*, 834 F.2d 208 ........................................ 12

*Pramco LLC* v. *San Juan Bay Marina, Inc.*, 435 F.3d 51 ........................................ 4, 11

*Safer* v. *Nelson Fin. Group*, 422 F.3d 289 ........................................... 5

*Shackelford* v. *Latchum*, 52 F.Supp. 205 ........................................... 6, 8

*Singleton* v. *Board of Education USD 500*, 894 F.Supp. 386 ................................... 13

*Stefanik* v. *Friendly Ice Cream Corp.*, 183 F.R.D. 52 ........................................ 12, 13

*Vision Graphics, Inc.* v. *E.I. Du Pont de Nemours & Co.*, 41 F.Supp.2d 93 ......................... 7

## STATE CASES

*Cottone v. Cedar Lake, LLC*, 19 Mass. L. Rep. 206 ........................................ 17

*Fay* v. *Federal Nat'l Mortgage Assoc.*, 419 Mass. 782 ........................................ 12

*Lewis* v. *Club Realty Co.*, 264 Mass. 588 ........................................ 17

*Scott-Douglas Corp.* v. *Greyhound Corp.*, 304 A.2d 309 ........................................ 6

**TABLE OF AUTHORITIES**
**(continued)**

                                                                            **Page**

*Smyth* v. *Marshall Field*, 40 Mass.App.Ct. 625 .................................................................16, 17

*Turner* v. *Hostetler*, 359 Pa.Super. 167 ........................................................................ 8

**STATE STATUTES**

California's Penal Code Section 502 ............................................................................... 2

## I.    <u>INTRODUCTION</u>

ConnectU LLC has the burden of demonstrating that Divya Narendra, one of its members, was not a Member at the time the original complaint was filed.  It cannot do so because: a) Divya Narendra was a Member under ConnectU LLC's Operating Agreement on April 6, 2004, as a matter of law; and b)  ConnectU is estopped from introducing any evidence that contradicts Mr. Narendra's and ConnectU's sworn statements and testimony in the related California case, *Facebook, Inc. v. ConnectU LLC*, as well as factual statements made in Federal and State tax returns.

Dismissal also is warranted because ConnectU lacks standing to maintain a lawsuit against the Facebook Defendants.  ConnectU was required to register with the Commonwealth prior to bringing suit, but it failed to do so.  Because ConnectU LLC no longer exists, it cannot now cure this defect under the express language of Massachusetts General Law Chapter 156C.

At the June 22, 2006, evidentiary hearing, the Facebook Defendants argued that they should prevail on these arguments as a matter of law.  The Court requested briefing on these issues alone.  On July 13, 2006, ConnectU filed a Memorandum of Law on these issues, as well as several others.[1]  ConnectU's arguments are incorrect.  As a result, the complaint should be dismissed.

---

[1] ConnectU also included argument that a) Mr. Zuckerberg was a California citizen on September 2, 2004; b) the filing of the Supplemental Brief was proper; and c) even if the Court dismisses the complaint, ConnectU should be permitted to pick up where it left off on this case. These arguments exceed the scope of the Court's instructions at the hearing, and completely disregard the Court's explicit refusal to consider ConnectU's Supplemental Brief. Trans., I-217. Accordingly, these additional arguments are improperly included in this filing.  The Facebook Defendants, therefore, do not address them.

## II.    BACKGROUND

### A.    ConnectU and Mr. Narendra Consistently Represented That Mr. Narendra Was A Member Of The LLC At The Time Of Formation[2]

#### 1.    *Facebook, Inc. v. ConnectU LLC,* California Superior Court

On August 17, 2005, Facebook, Inc. filed a complaint against ConnectU LLC and its members, Messrs. Winklevoss and Mr. Narendra, alleging violations of California's Penal Code Section 502(c) and common law misappropriation — *Facebook, Inc. v. ConnectU LLC, Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and Divya Narendra*, California Superior Court, Case No. 1-05-CV-047381 (the "California Action"). *Sutton Decl.*, Ex. A. The individual defendants filed a Motion to Quash Service of Summons and Complaint for Lack of Personal Jurisdiction. *Id.*, Ex. B.

Based on the filing of the Motion to Quash, the parties engaged in discovery related to personal jurisdiction over the individual defendants. *Id.*, ¶ 5. As part of that discovery, Facebook propounded a set of special interrogatories on all defendants, one of which (Interrogatory No. 14) sought the identity of ConnectU's current and former Members, Managers, and Board of Managers, as defined in the Operating Agreement, as well as the dates of their membership. *Id.*, Ex. D. In their initial responses, all four of ConnectU's members, as well as ConnectU, objected to the interrogatory without providing a substantive response. *Id.*, Ex. E. Facebook filed a Motion to Compel further responses. *Id.*, Ex. F. The court granted Facebook's motion. After the court granted Facebook's motion, the parties declared under oath that the:

> Members of ConnectU include Cameron Winklevoss, Tyler
> Winklevoss, Howard Winklevoss, and Divya Narendra, as set forth

---

[2] As a starting point, ConnectU's complaint alleges that Mr. Narendra was a founder. Docket No. 13, ¶ 11. *See also, Id.*, ¶ 15, where ConnectU alleges that its "founders wanted to launch their website before their June 2004 graduation."

> in the Limited Liability Company Operating Agreement recited in the Interrogatory ("Operating Agreement") and found at bates numbers C011285 through C011335. **These persons have all been Members since ConnectU was formed.**

*Id.*, Ex. H. (Emphasis added.) Mr. Narendra was fully aware of those proceedings and the court order compelling a response.

Facebook also served form interrogatories, which are interrogatories approved by the California Legislature (and separate from the "special" interrogatories, which are the equivalent of interrogatories in this Court). *Id.*, Ex. L. These interrogatories asked Mr. Narendra (and the other defendants) to identify on whose behalf certain actions were taken.[3] The defendants refused to respond. Facebook moved to compel a response. The court compelled each of the defendants to identify in supplemental form interrogatory responses what information each of them had downloaded from the Facebook website. *Id.*, Ex. G. After being forced to make this disclosure, Messrs. Winklevoss and Narendra served supplemental interrogatory responses, and filed declarations stating that all downloads occurred prior to the end of July 2004, and only in each defendant's capacity as a member of ConnectU. *Id.*, Exs. M, P; *see also* Ex. O.

In support of their Motion to Quash, the individual defendants argued that the California court could not exercise personal jurisdiction over them because "Plaintiff's claims do not arise out of any personal contacts between the Individual Defendants and the forum." *Id.*, Ex. B, 4:25-26. "The Individual Defendants," they argued, "did not take any acts regarding Plaintiff outside their positions as members of an LLC, and Plaintiff has no evidence that they did." *Id.* at 6:25-26. On June 1, 2006, the California court granted the individual defendants' Motion to Quash,

---

[3] Facebook also served each defendant with a set of Requests for Admission. *Sutton Decl.*, Ex. N. In response, Mr. Narendra admitted that he accessed Facebook's website "but only in his capacity as a member of ConnectU." *Id.* Importantly, in a recent supplemental declaration filed by Mr. Narendra (and the other defendants in the California Action, Mr. Narendra admits that his access to the Facebook website "occurred prior to the end of July, 2004." *Id.*, Ex. P, ¶ 2.

thereby dismissing them individually from the case. *Id.*, Ex. C.  The court provided no analysis in its decision.  *Id.*

### 2.    ConnectU Filed Composite Tax Returns For 2004 Which Identify Mr. Narendra As A Member Of The LLC

ConnectU's 2004 composite tax returns show that Mr. Narendra was a Member of ConnectU LLC during that tax year.  *Sutton Decl.*, Ex. J.  These tax returns were filed.

### 3.    *Pramco* Briefing

At no point prior to March 31, 2006, did ConnectU LLC ever argue that Mr. Narendra was not a member of the LLC at the time the complaint was filed.  Subsequent to the parties' briefing on the Facebook Defendants' Motion to Dismiss, the First Circuit issued an opinion in *Pramco LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006), in which the court found that an LLC's citizenship for purposes of diversity is determined by the citizenship of its Members.  The Facebook Defendants filed a Notice of New Authority re *Pramco*.  Docket No. 169.  On April 26, 2006, ConnectU filed a response to that Notice.  Docket No. 171.  In its response, ConnectU did not argue that Mr. Narendra was not a Member of the LLC, but instead asserted only that Mr. Zuckerberg was not a New York citizen at the time the complaint was filed.  *Id.*

### B.    ConnectU Manufactured The "LLC" Issue After The Court's March 31, 2006, Memorandum and Procedural Order

Following the filing of the *Pramco* Notice, the Court set an evidentiary hearing on the issue of Mr. Zuckerberg's and Mr. Narendra's citizenship at the time the original complaint was filed.  Docket No. 172.  In that Memorandum and Procedural Order, the Court authorized discovery on the topic of citizenship, and ordered Messrs. Zuckerberg and Narendra to appear at the hearing.  *Id.*, at pg. 12.

In response to the Court's Memorandum and Order, ConnectU filed a Motion for Leave

to File a Supplemental Brief and argued for the first time that Mr. Narendra was not a Member of ConnectU at the relevant time. Docket No. 181. In support of its Motion, ConnectU filed three identical declarations from Cameron and Tyler Winklevoss and Mr. Narendra. Docket Nos. 183, 184, 185. Each declaration describes a prior oral agreement reached among Messrs. Winklevoss and Mr. Narendra, in which they contend they agreed not to make Mr. Narendra a Member of ConnectU when it was formed. *Id.*, ¶ 1; *see also* Exhibit K to the Sutton Declaration, which is a chart detailing evidence demonstrating that the submitted declarations are false. The Facebook Defendants opposed (and continue to oppose) that Motion. Docket No. 192;

III. **ARGUMENT**

A. **The Operating Agreement Binds Mr. Narendra And ConnectU As A Matter Of Law**

ConnectU incorrectly claims the Court can consider whether a prior oral agreement existed among Mr. Narendra, Tyler Winklevoss and Cameron Winklevoss. ConnectU's Memorandum ignores that the Operating Agreement is a fully integrated contract and, as a matter of law, any other agreement (oral or otherwise) is irrelevant to its interpretation. *Lederer v. John Snow, Inc.*, 411 F. Supp. 2d 25, 29 (D. Mass. 2006). The Facebook Defendants' lack of privity to that agreement does not affect the preclusive effect of the parol evidence rule.

1. **The Proffered Parol Evidence Is Not Admissible To Contradict The Express Terms Of The Operating Agreement**

ConnectU argues that parol evidence is admissible to "prove a separate agreement." Docket No. 212, pg. 3. As the Court recognized at the June 22, 2006, hearing, the purported "prior oral agreement" is not a collateral (or separate) agreement. Docket No. 220. Both agreements relate to the same subject matter and are not, therefore, separate agreements. *Bailey v. Railroad Co.*, 84 U.S. 96, 108 (1872); *See also Safer v. Nelson Fin. Group*, 422 F.3d 289, 296 (5th Cir. 2005). Because the agreements relate to the same subject matter, "the parol evidence

rule bars the admission of oral evidence to contradict, vary, add to, subtract from, or otherwise modify the terms of an unambiguous written contract." *Aetna Insurance Co. v. Newton*, 274 F.Supp. 566, 571 (D. Del. 1967); *Scott-Douglas Corp. v. Greyhound Corp.*, 304 A.2d 309, 315 (Del. Super. Ct. 1973). The parol evidence rule's purpose is to "protect[] a completely integrated writing from being varied and contradicted by" extrinsic evidence. Corbin on Contracts, § 575. ConnectU does not dispute that the Operating Agreement is a fully integrated writing.[4] Any prior oral agreement, therefore, is irrelevant to the meaning of the written, integrated contract. *Shackelford v. Latchum,* 52 F. Supp. 205, 206 (D. Del. 1943) *citing* Restatement of the Law of Contracts, Comment (b), Section 230 ("It is well established that such a writing [a written agreement] supersedes all previous understandings and the intent of the parties must be ascertained from the writing.").

The *Aetna* court refused to admit evidence that would contradict the express terms of a fully integrated written agreement. *Id.* at 572. In that case, like the present matter, the agreement between the parties contained an integration clause that expressly indicated when the agreement would become effective (*i.e.*, when it was executed) and that it was the "entire agreement" between the parties. *Id.* at 569. For this reason, the court found that the "parol evidence relied on by [the moving party] would be inadmissible because it would contradict the specific terms of the agreement." *Id.* at 572. Furthermore, the court found that the agreement, itself, was indicia that the claim supported by the offered parol evidence (*i.e.*, that the agreement did not become effective when it was signed, but rather after certain conditions were met) was irrelevant. The same is true here.

---

[4]  Section 14.1 of the Operating Agreement says: "This Agreement, the Exhibits and Schedules hereto, and the other documents delivered pursuant hereto constitute the full and entire understanding and agreement between the parties with regard to the subjects hereof … ."  Docket

The District Court for the District of Massachusetts came to a similar conclusion when it found that "Delaware law and the parol evidence rule bar enforcement of oral representations made prior to a written contract." *Vision Graphics, Inc. v. E.I. Du Pont de Nemours & Co.*, 41 F. Supp. 2d 93, 98 (D. Mass. 1999). The court found that the integration clause of the agreement at issue "preclude[d] the consideration of antecedent oral agreements which would vary or contradict the written language." *Id*. at 98. The *Vision Graphics* integration clause, which read "This Agreement constitutes the entire understanding between the parties with respect to the subject matter hereof," *id*., is virtually identical to the language used in the ConnectU Operating Agreement's integration clause. *See also In re Denadai*, 259 B.R. 801, 804 (2001) (where the Bankruptcy Court for the District of Massachusetts refused to consider an affidavit purporting to modify an agreement, finding that "extrinsic evidence is generally prohibited where a complete contract is unambiguous").[5] As a result, any purported "prior oral agreement" is irrelevant to the interpretation of the written Operating Agreement and should not be relied upon.

### 2.    The Facebook Defendants May Rely On The Parol Evidence Rule To Preclude The Purported "Prior Oral Agreement"

ConnectU incorrectly argues that the Facebook Defendants may not invoke the parol evidence rule because they are not a party to the Operating Agreement. The *Aetna* court specifically addressed this issue and determined that, while some cases hold that parol evidence would be "admissible when offered for or against a third party … no such distinction is warranted." *Aetna*, at 573 *citing* Corbin on Contracts. In that case, Aetna sought to prevent the introduction of parol evidence to contradict the terms of an agreement entered into between two of the defendants. Aetna was successful. Such an outcome is logical given that the purpose

---

No. 95, Ex. 6.
[5]  The Court also noted that the affidavit was filed after pre-hearing submissions were due, and could be excluded on that basis alone. *Id*. at 802-804.

behind the parol evidence rule is to prevent fraud or perjury by prohibiting "the addition to, or varying of, the terms of a written agreement by the introduction of evidence beyond the document itself." *Turner v. Hostetler*, 359 Pa. Super. 167, 174 (Pa. Super. Ct. 1986); Corbin on Contracts, § 575.  The purpose stands regardless of who supports or opposes the proffered extrinsic evidence.

ConnectU cites *Shackelford v. Latchum*, 52 F.Supp. 205 (D. Del 194) to support its proposition that a third party may not invoke the parol evidence rule.  ConnectU's reliance on *Shackelford* is misplaced.  The quote cited is dicta, and the court provided no analysis for its conclusion.  In addition, in *Shackelford*, one of the contracting parties was not even before the court.  The *Aetna* case, on the other hand, compels a different legal holding than *Shackelford*.  Specifically, both parties to the *Aetna* contract were parties to the litigation.  The same is true here.  ConnectU, by nature of the Operating Agreement, stands in the shoes of its members who signed the agreement.  As a practical matter, all relevant parties are before this Court and part of this litigation.  The *Aetna* court found this especially relevant to its decision to permit Aetna, who was not a party to the agreement, to invoke the parol evidence rule.  Accordingly, the *Aetna* case and analysis presented should govern.

**B.    ConnectU Is Estopped From Recanting Its Prior Statements That Mr. Narendra Was A Member of ConnectU LLC Since its Inception**

**1.    ConnectU Is Judicially Estopped**

As this Court has found, the "doctrine of judicial estoppel or 'preclusion of inconsistent positions' prevents a party from asserting a position in one legal proceeding which is antithetical to a position previously taken in an earlier proceeding." *Fieldwork Boston, Inc. v. United states of America*, 344 F. Supp. 2d 257, 266 (D. Mass. 2004).  In order for judicial estoppel to apply, two conditions must be satisfied.  *Id.*, at 267.  First, "the previously asserted position or

estopping position, and the presently asserted position or estopped position, must be 'mutually exclusive' and 'clearly inconsistent.'" *Id.* Second, "the party to be estopped … must 'have succeeded in persuading a court to accept its prior position.'" *Id.* (citations omitted).

Throughout this litigation and the related California Action, ConnectU, Messrs. Winklevoss and Mr. Narendra repeatedly maintained that Mr. Narendra was a Member of ConnectU LLC since its formation and that all actions taken by him were on behalf of ConnectU. *Sutton Decl.*, Ex. K.   These statements were made after the court twice compelled the defendants to provide this information, which was integral to the defendants' successful argument that they only committed the tortious acts as members of ConnectU prior to September 2, 2004.  Furthermore, relying on the position set forth by Mr. Narendra, he (as well as Messrs. Winklevoss) was dismissed as an individual defendant from the California Action, leaving ConnectU LLC as the sole defendant.  *Id.*, Ex. C.  Because it stands to have its complaint dismissed in the present action, ConnectU now asserts that Mr. Narendra was not a Member of ConnectU at the relevant time.  ConnectU's newly manufactured position directly and unequivocally contradicts, not only all of its prior sworn statements and arguments in this case but, its prior sworn statements made in the related California Action.  ConnectU is estopped from taking a position in this litigation that directly contradicts its ultimately successful position in California.

### a.    ConnectU's Current Position Is Inconsistent With The Position It Took In The Related California Action

ConnectU argues that its current position in this litigation (that Mr. Narendra was not a Member of the LLC on September 2, 2004) is consistent with the position it took in the California Action (that Mr. Narendra was a founding Member and was so since its creation on April 6, 2004).  Docket No. 212, pg. 8.  This argument is belied by the prior sworn testimony of

all four members of ConnectU (as well as ConnectU, itself) in interrogatory responses in California, (*Sutton Decl.*, Ex. H), as well as the Members' position taken in successfully moving to quash service of the summons and complaint in that action. *Id.*, Exs. B, C.

In their court-ordered verified amended responses to interrogatories propounded in the California Action, Mr. Narendra, Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and ConnectU each separately admitted that Mr. Narendra was a Member of ConnectU LLC from the time it was formed (*i.e.*, on April 6, 2004). *Id.*, Ex. H. This admission was the result of a favorable ruling for Facebook on its Motion to Compel further responses to this interrogatory in the California Action. *Sutton Decl.*, Ex. G. Initially, ConnectU and its Members refused to provide a substantive answer, but instead asserted various objections. *Id.*, Ex. E. The court, without requiring any modifications to the interrogatory, ordered ConnectU and its Members to provide a substantive response. *Id.*, Ex. Y.

In addition, in moving to quash service of the summons and complaint in California, Messrs. Narendra and Winklevoss argued that, to the extent Mr. Narendra engaged in the wrongful acts, he did so as a member of ConnectU LLC, and not individually. *Id.*, Ex. B. Despite these unambiguous sworn statements that Mr. Narendra has been a Member "since ConnectU was formed" in April 2004, ConnectU seeks to introduce evidence (in the form of three identical declarations) in the present action that, in fact, Mr. Narendra and Messrs. Winklevoss orally agreed that Mr. Narendra would not be a founding Member of the LLC. Docket Nos. 183, 184, 185.

ConnectU attempts to explain away the inconsistency by claiming that "the interrogatory response was incorrect" (Docket No. 212, pg. 7), and the interrogatory was vague. *Id.*, pg. 8. As discussed above, ConnectU's "vagueness" objection is meritless in light of the California court's

order that ConnectU provide a response the interrogatory as written, despite ConnectU's objection at that time that the request was vague. Moreover, given the plethora of contrary evidence available in this matter and the California Action, ConnectU's explanations are untenable. The facts demonstrate that, prior to any discussion being raised about Mr. Narendra's membership status, the parties did not dispute that Mr. Narendra was a Member in September 2004. After the Notice re *Pramco*, ConnectU changed its argument. ConnectU's argument that its positions in the related cases are consistent is belied by the facts and should be rejected.[6]

**b.    ConnectU Prevailed In The California Action**

ConnectU argues that it should not be judicially estopped because the California court did not specifically rely on ConnectU's and its Members' position that Mr. Narendra was a Member of the LLC since its inception. Docket 212, pg. 8-9. A key argument in Messrs. Narendra and Winklevoss' motion to quash service of summons and complaint for lack of personal jurisdiction was that even if Messrs. Winklevoss and Narendra engaged in the alleged acts, each individual defendant did so in his capacity as a Member of ConnectU. *Sutton Decl.*, Ex. B; *see also id.*, Exs. G, M, O. Ultimately, Messrs. Winklevoss and Narendra's argument prevailed, as the California court granted the Motion to Quash and dismissed the individual defendants from that lawsuit. *Id.*, Ex. C. ConnectU LLC remains a defendant. *Id.*

///

///

---

[6] ConnectU argues that, in the California Action, the Facebook Defendants took a position inconsistent with the one asserted here. Notwithstanding ConnectU's mischaracterization of Facebook's position in the California Action, Facebook's position in that case is entirely irrelevant to the question before the Court. Judicial estoppel does not prevent a losing party from changing its position. See 17B James Wm. Moore et al., Moore's Federal Practice § 134.33 (3d ed. 2006). ("Absent success in the earlier proceeding, a party's later inconsistent position poses little threat to judicial integrity"). Moreover, the issue before the Court is whether ConnectU and Mr. Narendra have made inconsistent statements in order to prevail against the Facebook

US_WEST:260063571.2

ConnectU argues that judicial estoppel is not applicable here because the California court did not expressly indicate in its Order Granting Motion to Quash that it relied upon ConnectU's statement that Mr. Narendra has been a Member of the LLC since its formation. Docket No. 212, pp. 8-9. The court is not required to articulate its specific reliance on a prevailing party's statement in order to hold it to that statement in a later proceeding. *See Fay v. Federal Nat'l Mortgage Assoc.*, 419 Mass. 782, 788 (Mass. 1995) ("Suffice it to say that [the court] would apply the doctrine of judicial estoppel at least where a party successfully asserted his or her inconsistent position in a previous proceeding and neither privity nor reliance are essential requirements"); *see also Patriot Cinemas v. General Cinema Corp.*, 834 F.2d 208 (1st Cir. 1987).

Moreover, although the California court did not detail its reasoning behind the order dismissing the individual defendants, because the individual defendants relied so heavily on their position, it is reasonable to believe that the Court was influenced by their argument. *See Patriot Cinemas v. General Cinema Corp.,* 834 F.2d 208 (1st Cir. 1987). Having (at a minimum) entertained Mr. Narendra's position that he could not, as an individual, be subject to the court's jurisdiction *because he acted solely in his capacity as a Member of ConnectU LLC prior to September 2, 2004*, the California court dismissed him (and other individual defendants) from the action.

### c.  ConnectU May Not "Kick Over The Chess Board In The Face Of Checkmate"

Plaintiff contends that Facebook's reliance on *Stefanik v. Friendly Ice Cream Corp.*, 183 F.R.D. 52 (D. Mass. 1998), is misplaced. *Stefanik* involved a plaintiff who attempted to manufacture diversity jurisdiction by submitting an affidavit that was "clearly contradictory" to

---

Defendants' Motion to Dismiss.

his complaint and prior deposition, which he submitted only after defendants filed for summary judgment. *Id.* at 53-54. The court held that the contradictory affidavit should be disregarded and that plaintiff "was not permitted to kick over the chess board in the face of checkmate." *Id.*

The facts of *Stefanik* are similar to the present case. Here, ConnectU has filed a Supplemental Brief in order to save diversity only after the Massachusetts order for the evidentiary hearing. Similarly, ConnectU faces dismissal for lack of subject matter jurisdiction and seeks to change its initial responses in an attempt to manufacture diversity. As found in *Stefanik*, the Court should strike the supplemental declarations. ConnectU's prior and current statements regarding Mr. Narendra's membership status are clearly inconsistent. Furthermore, any challenges to the interrogatory questions are without merit as they were court ordered and ConnectU provided an in-depth answer following the order.

Additionally, ConnectU's reliance on *Singleton v. Board of Education USD 500*, 894 F. Supp. 386 (D. Kan. 1995), is misplaced. *Singleton* was a 13-year old plaintiff whose responses were prepared by an attorney. *Singleton* also failed to provide any other testimony of his search other than the interrogatory response. Unlike the instant case, this case and the California Action have been carefully litigated. Mr. Narendra, a grown man, has submitted numerous statements under oath and, for some, was under court order to do so. The facts here compel a different result than in *Singleton*.

### 2. The Doctrine Of "Quasi-Estoppel" Also Precludes ConnectU From Claiming That Mr. Narendra Was Not A Member On September 2, 2004

ConnectU is estopped from taking any position inconsistent with the factual assertions made in its tax returns. ConnectU prepared a composite tax return for the year 2004, in which it indicated that Mr. Narendra was a Member of the LLC from April 2004 through December 2004. *Sutton Decl.*, Ex. J. The tax returns were executed by each Member, as well as the accountant

who presumably prepared them. *Id.*

ConnectU admits that these tax returns were prepared and that they indicate that Mr. Narendra was a member of the LLC at the relevant time. Docket No. 212, FN2. ConnectU contends, however, that the portion applicable to Mr. Narendra's status as a Member was not true. *Id.* Courts have addressed this type of about-face and reject any attempts to do so. "'Quasi-estoppel' is invoked by courts to estop parties from asserting a position in judicial proceedings different than what was reported on their income tax returns." *Amtrust, Inc. v. Larson*, 388 F.3d 594. "[A] taxpayer may not be heard to challenge his prior election of the existence of a business entity for tax purposes once the existence of that entity becomes inconvenient." *See McManus v. C.I.R.*, 583 F.2d 443, 447 (9th Cir. 1978) ("A taxpayer is estopped from later denying the status he claimed on his tax returns.").

ConnectU readily admits that the tax forms indicate the Members of the LLC during 2004, including that Mr. Narendra was one such Member. It argues, however, that the information contained in those forms – forms that were filed with a governmental agency to obtain a tax benefit – is incorrect. This assertion is of no consequence. "The burden is on the taxpayer to see to it that the form of business he has created for tax purposes, and has asserted in his returns to be valid, is in fact not a sham or unreal." *Maletis v. United States*, 200 F.2d 97, 98 (9th Cir. 1952).

### C.    ConnectU LLC Lacked Standing to Sue in Massachusetts

#### 1.    ConnectU LLC Failed to Register Pursuant to Massachusetts LLC Act, Ch. 156C, Section 54

The Massachusetts LLC Act, Ch. 156C, Section 48 requires a foreign limited liability company to register with the Secretary of State within 10 days after it has commenced doing business in the Commonwealth in order to transact business there. G.L. ch. 156C, Section 48.

The Massachusetts "door closing" statute mandates that:

> A foreign limited liability company doing business in the commonwealth which fails to register with the state secretary shall...be fined...[and] no action shall be maintained or recovery had by the foreign limited liability company in any of the courts of the commonwealth  as long as such failure continues.

G.L. ch. 156C, Section 54, emphasis added.  Without such registration, a foreign limited liability company, such as ConnectU LLC, is not authorized to file or maintain a lawsuit in Massachusetts.

### 2.    ConnectU LLC was Doing Business in the State of Massachusetts without Proper Authorization

ConnectU argues that the Facebook Defendants have not shown that ConnectU was transacting business in Massachusetts.  ConnectU's position is absurd.  Section 48 of Massachusetts General Law Chapter 156C provides that a foreign limited liability company shall be considered to be doing business  if the company owns or leases real estate in the commonwealth or engages in any other activity requiring performance of labor there.  G.L. chs. 156C, § 48 and 156D, § 15.01. Under this standard, ConnectU LLC was doing business in Massachusetts.

ConnectU leased office space in Amherst, Massachusetts.  *Sutton Decl.*, Ex. Q. ConnectU entered into contractual relationships with companies and individuals residing in Massachusetts.   For example, Joseph Jackson, a software programmer in Cambridge, Massachusetts provided work for the Harvard Connection software; and Marc Pierrat of iMarc LLC, hired for software development for ConnectU.com, has a Newburyport, Massachusetts address.  *Id.*, Ex. R, S, T.  Harvardconnection.com, ConnectU's original website, was targeted to Harvard students.  *Id.*, Ex. U.  Moreover, ConnectU targeted colleges and universities, including those located in Massachusetts.  *Id.*, Ex. V, W.  In fact, the inspiration for connectu.com was

-15-

triggered by Cameron Winklevoss' perceived need to network with more Boston University students while he was an undergraduate at Harvard University. *Id.*, Ex. X. Because it failed to register as a foreign limited liability company, it may not maintain an action in the courts of the Commonwealth.

### 3.     ConnectU LLC Cannot Cure Because It No Longer Exists

ConnectU, organized as a Delaware company, has been cancelled as a business entity rendering it impossible for ConnectU LLC to maintain this action in Massachusetts absent the revival the LLC in the state of Delaware. *See Smyth v. Marshall Field*, 40 Mass. App. Ct. 625 (Mass. App. Ct. 1996). While the failure to register presents a bar to bringing an action that may be cured, ConnectU LLC cannot cure because it cancelled its registration in the state of Delaware. *Id.* at 630.

In *Smyth v. Marshall Field*, a general partnership filed for a certificate of limited partnership with the secretary of State in Delaware, but never registered the partnership as a foreign limited partnership in Massachusetts as required by G.L. c. 109 § 49. *Id.* at 627. Due to financial distress, the partnership executed a certificate of cancellation of limited partnership in Delaware. *Id.* at 628. The court held that the plaintiffs (who brought a derivative suit on behalf of the partnership) lacked standing because "the right to maintain a derivative action can be no greater than ... the right of the ... partnership to maintain the action ... ." *Id.* at 629. The court of appeals affirmed, holding that because the partnership had failed to register to do business in Massachusetts, it was barred from bringing any action in Massachusetts. *Id.* (emphasis added). The relevant language of the closed door statute in the *Smyth* case, G.L. c. 109 § 55(a), as appearing in St. 1982, c. 202 § 1, is identical to (aside from the type of business entity) the language of General Law Chapter 156C, in that "no action shall be maintained or recovery had by the foreign limited partnership in any of the courts of the commonwealth as long as such

failure [to register] continues." *Id*. The *Smyth* court held that plaintiffs would continue to lack standing until the partnership was revived in Delaware. *Id*. at 630-631. Moreover, the court noted that "to permit the limited partners to maintain the action would have defeated the legislative mandate that a foreign limited partnership could not have applied for relief in Massachusetts without proper and timely registration." *Id*. 629-630. *See also, Lewis v. Club Realty Co*., 264 Mass. 588, 590 (Mass. 1928) (Holding that "[p]lainly the foreign corporation itself could not maintain the action in its own name. It would be plain also that an assignee taking with notice could not maintain an action. To permit that to be done would in effect nullify the statute").

Under the reasoning of *Smyth*, ConnectU is barred from bringing an action in the courts of Massachusetts. In order to cure, ConnectU LLC must be revived in Delaware as a prerequisite. Absent an action of revival of ConnectU LLC, this case may appropriately be dismissed.

**4.      The Plain Meaning of G.L. ch. 156C, Section 54 Does Not Provide for a Successor in Interest to Cure a Failure to Register**

ConnectU argues that the Massachusetts Business Corporations Act, Chapter 156D allows successors to a foreign corporation to cure a predecessor's failure to register. To the contrary, the plain language of Section 54 of the Massachusetts LLC Act "unambiguously restricts an unregistered foreign LLC from maintaining an action or recovery only in the courts of the commonwealth." *Cottone v. Cedar Lake, LLC*, 19 Mass. L. Rep. 206 (Mass. Super. Ct. 2005). The unambiguous language of Section 54 does not provide for a successor-in-interest's ability to cure with respect to LLCs.

Section 156D does not apply to this case. Rather, Chapter 156C does, as Chapter 156C governs limited liability companies. Section 156D was amended in 2003 to allow for

successors-in-interest to cure. Despite numerous amendments to Chapter 156C since then, none

has changed the law to cover successors-in-interest.

If the Massachusetts Legislature intended for 156C to allow successors-in-interests to

cure defects, it would have provided such relief, particularly since Chapter 156C refers to

specific provisions of Chapter 156D where it intended cross-application. Absent explicit

provisions in the Massachusetts LLC Act to provide that a successor can cure the failure to

register, ConnectU, Inc. may not stand in the shoes of ConnectU LLC to maintain this action.

Because ConnectU LLC never registered in Massachusetts, it lacked standing to bring an

action under the laws of the Commonwealth. Furthermore, because ConnectU LLC has been

cancelled as a business entity and merged into ConnectU, Inc., it is impossible for ConnectU

LLC to cure this defect. As a result, it is proper for the Court to dismiss this case.

## IV.    <u>CONCLUSION</u>

ConnectU has not met its burden of establishing that Mr. Narendra was not a Member of

ConnectU LLC at the time the original complaint was filed. As discussed above, ConnectU

cannot, as a matter of law, do so. Accordingly, the complaint must be dismissed.

///

///

US_WEST:260063571.2

Dated:  July 27, 2006.                    Respectfully submitted,

                                          /s/ I. Neel Chatterjee /s/
                                          _____
                                          G. Hopkins Guy, III*
                                          I. Neel Chatterjee*
                                          Monte M.F. Cooper*
                                          Robert D. Nagel*
                                          Theresa A. Sutton*
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          1000 Marsh Road
                                          Menlo Park, CA  94025
                                          Telephone:  (650) 614-7400
                                          Facsimile:   (650) 614-7401
                                          hopguy@orrick.com
                                          nchatterjee@orrick.com
                                          mcooper@orrick.com
                                          rnagel@orrick.com
                                          tsutton@orrick.com

                                          Steve M. Bauer
                                          Jeremy P. Oczek
                                          PROSKAUER ROSE, LLP
                                          One International Plaza, 14th Floor
                                          Boston, MA 02110-2600
                                          Telephone:     (617) 526-9600
                                          Facsimile:      (617) 526-9899
                                          sbauer@proskauer.com
                                          joczek@proskauer.com

                                          ATTORNEYS FOR MARK ZUCKERBERG,
                                          DUSTIN MOSKOVITZ, ANDREW
                                          MCCOLLUM, CHRISTOPHER HUGHES, and
                                          FACEBOOK, INC.

                                          * Admitted Pro Hac Vice

US_WEST:260063571.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on July 27, 2006.

Dated:  July 27, 2006.                         Respectfully submitted,

                                                             /s/ I. Neel Chatterjee /s/
                                                       _____
                                                             I. Neel Chatterjee