# **EXHIBIT A**

LEXSEE 2006 DEL. CH. LEXIS 54

In re Grupo Dos Chiles, LLC

Civil Action No. 1447-N

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

2006 Del. Ch. LEXIS 54

January 30, 2006, Submitted
March 10, 2006, Decided
March 10, 2006, Filed

**NOTICE:** [*1] THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION IN THE PERMANENT LAW REPORTS. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL.

**SUBSEQUENT HISTORY:** Costs and fees proceeding at *In re Grupo Dos Chiles, LLC, 2006 Del. Ch. LEXIS 153 (Del. Ch., Aug. 17, 2006)*

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff managing partner petitioned for reformation of a certificate of formation for a limited liability company (LLC) to the effect that the managing partner and defendant managing copartner were the members of the LLC, a finding that the LLC was not properly returned to good standing with the State of Delaware, and an order dissolving the limited liability company.

**OVERVIEW:** The partner and the copartner had a personal relationship when they formed the LLC to operate a restaurant. A certificate of formation for the LLC, which named the copartner's son as the initial member, was filed with the Delaware Secretary of State. The partner and the copartner then executed an LLC agreement naming themselves as the managing partners. The relationship between the partners later ended. The LLC lost its good standing with the State of Delaware, under *Del. Code Ann. tit. 6, § 18-1107(h)*, for failure to pay taxes. The partner then filed an action in Virginia to dissolve the LLC. However, the copartner, without consulting with the partner, paid the LLC's back taxes to restore the LLC to good standing with the State of Delaware. The court found that the LLC agreement, which superseded the certificate of formation, and the documentary evidence made it clear that the partner and the copartner were the members of the LLC. Further, the LLC's good standing was not properly restored as the copartner could not unilaterally restore the LLC's good standing, pursuant to *Del. Code Ann. tit. 6, § 18-1107(i)*, when she and the partner were involved in litigation to dissolve the LLC.

**OUTCOME:** The court concluded that the partner and the copartner were the members of the LLC and that the LLC was not in good standing in the State of Delaware.

**LexisNexis(R) Headnotes**

*Business & Corporate Law > Limited Liability Companies > General Overview*
[HN1] Limited liability companies are designed to afford the maximum amount of freedom of contract, private ordering, and flexibility to the parties involved. Substance is supposed to be paramount over form.

*Business & Corporate Law > Limited Liability Companies > Formation*
[HN2] The certificate of formation is a relatively brief and formal document that is the first statutory step in creating a limited liability company (LLC) as a separate legal entity. The certificate does not contain a comprehensive agreement among the parties. Rather, the Delaware Limited Liability Company Act contemplates that the certificate of formation is to be complemented by the terms of the LLC agreement.

*Business & Corporate Law > Limited Liability Companies > Members & Other Constituents*
[HN3] The Delaware Limited Liability Company Act is a statute designed to permit members maximum flexibility in entering into an agreement to govern their relationship.

***Business & Corporate Law > Limited Liability Companies > Formation***
[HN4] *Del. Code Ann. tit. 6, § 18-202(b)* of the Delaware Limited Liability Company Act provides that a certificate of formation for a limited liability company shall be amended if it becomes false in any material respect or was false when made.

***Business & Corporate Law > Limited Liability Companies > Formation***
[HN5] Under *Del. Code Ann. tit. 6, § 18-211(a)*, any certificate authorized to be filed with the Delaware Secretary of State that inaccurately records the action referred to or is defective or erroneously executed may be corrected.

***Business & Corporate Law > Limited Liability Companies > Formation***
***Business & Corporate Law > Limited Liability Companies > Members & Other Constituents***
[HN6] The Delaware Limited Liability Company Act does not require that the members of a limited liability company be set out in the certificate of formation. *Del. Code Ann. tit. 6, § 18-201(a)*.

***Business & Corporate Law > Limited Liability Companies > Formation***
***Business & Corporate Law > Limited Liability Companies > Management Duties & Liabilities***
***Business & Corporate Law > Limited Liability Companies > Members & Other Constituents***
[HN7] See *Del. Code Ann. tit. 6, § 18-202(b)*.

***Business & Corporate Law > Limited Liability Companies > Formation***
[HN8] See *Del. Code Ann. tit. 6, § 18-211(a)*.

***Business & Corporate Law > Limited Liability Companies > Formation***
[HN9] See *Del. Code Ann. tit. 6, § 18-201(a)*.

***Business & Corporate Law > Limited Liability Companies > General Overview***
[HN10] A limited liability company that fails to pay its taxes to the State of Delaware when due ceases to be in good standing. *Del. Code Ann. tit. 6, § 18-1107(h)*. Pursuant to *Del. Code Ann. tit. 6, § 18-1107(i)* of the Delaware Limited Liability Company Act, however, a limited liability company may regain its good standing simply by paying the tax owed, along with any penalties.

**COUNSEL:** Rick S. Miller, Esquire, Ferry Joseph & Pearce, P.A., Wilmington, DE.

Bruce W. McCullough, Esquire, McCullough & McKenty, P.A., Wilmington, DE.

**JUDGES:** DONALD F. PARSONS, JR., VICE CHANCELLOR.

**OPINION BY:** DONALD F. PARSONS , JR.

**OPINION:**

This is a dispute over the membership and future of Grupo Dos Chiles LLC ("Grupo"), a Delaware limited liability company. Petitioner seeks reformation of Grupo's Certificate of Formation to the effect that he and Respondent Yolanda Martinez ("Martinez") are the members of the LLC, a finding that Grupo was not properly returned to good standing with the State of Delaware and an order dissolving the limited liability company. This Court bifurcated the question of whether Grupo should be dissolved and held a trial on October 26, 2005 to determine the members of Grupo and whether Grupo was properly returned to good standing. At argument on January 30, 2006, the parties informed the Court that trial in an earlier filed, related case was to begin in Virginia on March 3 to determine whether Grupo should be dissolved and requested [*2] a ruling before that date. In a teleconference on March 2, the Court communicated its ruling to the parties and indicated that a written opinion embodying the Court's post-trial findings of fact and conclusions of law would follow.

For the reasons stated in this letter opinion, the Court concludes that Petitioner and Martinez are the members of Grupo and that Grupo was not properly returned to good standing with the State of Delaware.

### I. BACKGROUND

Petitioner is Alfred "Trip" Shriver ("Shriver"). Respondents are Yolanda Martinez (a/k/a Yolanda Rivera) and her son Jamie Rivera ("Rivera"). n1 Grupo is a Delaware LLC whose business is the operation of a restaurant called Dancing Peppers Cantina in Alexandria, Virginia. n2 Shriver and Martinez had a personal relationship and lived together at the time they formed Grupo. n3 By July 2003 at the latest, their relationship had ended. n4

n1 Pretrial Stip. PP 3, 5.

n2 *Id.* P 5.

n3 Tr. at 46 (Shriver). Citations in this form are to the trial transcript ("Tr.") and indicate the page and, where it is not clear from the text, the witness testifying.

[*3]

n4 *See* Tr. at 62 (Shriver) (testifying that he and Martinez's relationship ended in July 2002); Tr. at 170-71 (testifying that she and Shriver's relationship ended in July of 2002 or 2003).

A Certificate of Formation ("CoF") for Grupo was filed with the Delaware Secretary of State in or about February 2000 naming Rivera as the "initial member." n5 In or about March 2000, Shriver and Martinez executed an "LLC Agreement" for Grupo (the "Agreement") naming themselves "managing partners." n6 The Agreement is relatively short and provides in its entirety as follows:

> Yolanda Martinez and Alfred W. Shriver, III manage Grupo Dos Chiles, DBA Dancing Peppers Cantina. Each has signature authority for all aspects of the business. In the event one managing partner is unable to perform their duties the other will assume responsibility in their absence.
>
> Should either party decide to leave the business the sole remaining partner will be given total control of the business. However, any personnel [sic] guaranties will not be released without written approval from the appropriate entity [*4] and the remaining partner.
>
> At the present time Jamie Rivera is registered agent for the LLC. However, he has no other interest in the company, including signing authority, or a managerial role. n7

Both Shriver and Martinez signed the Agreement. n8

n5 DX 2.

n6 DX 4.

n7 *Id.*

n8 Tr. at 49 (Shriver); Tr. at 161 (Martinez).

Grupo lost its good standing with the State of Delaware on June 1, 2003 because of a failure to pay Delaware taxes. n9 In or about December 2004, Shriver filed an action in Virginia seeking an order to wind up Grupo's affairs and the appointment of a liquidating trustee (the "Virginia Action"). n10 According to Shriver, the Delaware Secretary of State had cancelled Grupo's status as an LLC and thus Grupo had been dissolved by operation of law. n11 Shriver further argued that he and Martinez were at an impasse. n12 Shriver served Martinez with his Virginia petition in or about December 2004. n13

n9 PX 4 ("The aforesaid limited liability company is no longer in existence and good standing under the laws of the State of Delaware having become canceled the first day of June, A.D. 2003, by reason of its neglect, refusal, or failure to pay it's [sic] annual taxes.").

[*5]

n10 PX 87 (Petition for Order [in the Virginia Action] to Wind Up Business Affairs and Appoint a Liquidating Trustee).

n11 *Id.* PP 2-3.

n12 *Id.* PP 49-51.

n13 Pretrial Stip. P 9.

In or about January 2005, Martinez, without consulting with Shriver, paid Grupo's back taxes and had Grupo restored to good standing with the State of Delaware. n14 Shriver then filed this action.

n14 DX 5. Martinez also restored Grupo's status as a foreign limited liability company in Virginia. *See* DX 6 (letter from the Virginia State Corporation Commission to Martinez providing, in pertinent part, "This is your receipt for $

125.00, to cover the fees for filing an application for reinstatement with this office.").

## II. ANALYSIS

There is a certain irony in this case. [HN1] Limited liability companies are designed to afford the maximum amount of freedom of contract, private ordering and flexibility [*6] to the parties involved. n15 Substance is supposed to be paramount over form. Yet, Respondents advance a very technical argument that Rivera is the sole member of Grupo. They contend that because Grupo's CoF listed Rivera as an "initial member," the membership of Grupo cannot change without an amendment to the CoF to reflect the change. Petitioner argues for a more flexible approach.

n15 *See Elf Atochem N. Am., Inc. v. Jaffari, 727 A.2d 286, 290 (Del. 1999)* (observing that "the LLC is an attractive form of business entity because it combines corporate limited liability with partnership-type flexibility and tax advantages. The [Delaware Limited Liability Company] Act can be characterized as a flexible statute' because it generally permits members to engage in private ordering with substantial freedom of contract to govern their relationship. . . .") (internal citations omitted).

With respect to the restoration of Grupo's good standing, the positions are reversed. Petitioner argues that [*7] the payment of Grupo's back taxes and the restoration of its good standing required a vote of Grupo's membership, not just a unilateral decision by one member, Martinez. Petitioner cites statutory provisions that purportedly support this argument. Respondents, in contrast, contend that the Delaware Secretary of State cancelled Grupo's status as an LLC because of a ministerial oversight by Martinez, *i.e.*, the failure to pay taxes. Thus, Respondents posit, Martinez herself had the authority to correct the lapse without input from Shriver.

Both sides to this dispute have put too much emphasis on formalities. The Court considers the underlying facts and course of dealing among the parties at least equally important. Thus, the Court will examine the arguments based on the formalities in light of the facts and evidence of the parties' intentions.

### A. The Members of Grupo

Shriver argues that this Court should reform or amend Grupo's CoF to "reflect the true intention and agreement of the parties," *i.e.*, that he and Martinez are the members of Grupo. n16 Respondents contend that the CoF was correct when filed and represents the intent of the parties to make Rivera the sole [*8] member of Grupo. n17 The Court need not and does not decide whether the CoF was correct when filed. Rather, the Court concludes that it is immaterial whether Rivera was, in fact, the "initial member" of Grupo when Martinez filed the CoF in February 2000.

n16 Pet'r's Post-Trial Br. ("POB") at 4.

n17 Post-Trial Br. of Resp'ts [Martinez and Rivera] ("ROB") at 6-7.

It is immaterial because regardless of whether the parties intended Rivera to be the initial member or even *the* member of Grupo, the Agreement, entered into in March 2000, makes it clear that Shriver and Martinez are the members. The Agreement superceded the CoF. As the Delaware Supreme Court has noted: [HN2] "The certificate of formation is a relatively brief and formal document that is the first statutory step in creating the LLC as a separate legal entity. The certificate does not contain a comprehensive agreement among the parties. . . ." n18 Rather, the Delaware Limited Liability Company Act ("DLLCA") "contemplates that the certificate [*9] of formation is to be complemented by the terms of the Agreement." n19 Here, the "comprehensive agreement among the parties" is the Agreement, a document which accurately describes how Shriver and Martinez operated Grupo until their falling out.

n18 *Elf Atochem, 727 A.2d at 288* (internal citation omitted).

n19 *Id.* (internal citation omitted).

Respondents point out that the Agreement refers to Shriver and Martinez as the "Managing Partners" of Grupo, not as the members. The Court does not consider the parties' failure to use the term "member" significant because [HN3] the "[DLLCA] is a statute designed to permit members maximum flexibility in entering into an agreement to govern their relationship." n20

n20 *Id. at 293* (internal citations omitted); *see also id. at 291* ("It is the policy of [the Act] to

give the maximum effect to the principle of freedom of contract and the enforceability of limited liability company agreements.") (internal citation omitted).

[*10]

Further, the documentary evidence makes clear that the parties intended Shriver and Martinez to be the members of Grupo. For example, Petitioner adduced a loan document between Grupo and Advanceme, Inc., a restaurant lender, n21 dated February 5, 2003. n22 This document identifies Shriver and Martinez as owners of Grupo and is signed by both of them. n23 Similarly, Petitioner's Exhibit 29 is a loan document between Grupo and Advanceme dated November 11, 2003. Once again, Shriver is identified as the owner of Grupo, while both Shriver and Martinez personally guaranteed the debt. n24 Shriver and Martinez each signed this document. n25

n21 Tr. at 77 (Shriver) (testifying that Advanceme, Inc. is "a company that will advance businesses money based on what they do with credit card sales" and agreeing that "it is fair to say they're a restaurant lender").

n22 PX 28.

n23 *Id.*; Tr. at 77-78 (Shriver); Tr. at 170 (Martinez).

n24 PX 29.

n25 Tr. at 79 (Shriver); Tr. at 172 (Martinez).

[*11]

About seventeen months later, in a letter to a Ms. Cheryl Swanson n26 dated March 22, 2005, Shriver and Martinez identified themselves as the members of Grupo. n27 Both Shriver and Martinez signed this letter. n28 There are several other documents in evidence in which Shriver, Martinez or both identify themselves as the members, managers or owners of Grupo. n29

n26 Swanson had guaranteed a credit application for a prior venture of Shriver and Martinez. PX 77 ("Several years ago, Dancing Peppers, Inc., established an account with Sysco food distribution, and we acknowledge that you were kind enough to serve as a surety on this account.").

n27 PX 77.

n28 Tr. at 89 (Shriver); Tr. at 154 (Martinez).

n29 *See, e.g.*, PX 11 (identifying Martinez as a member and manager); PX 39 (identifying Shriver as the managing member).

In contrast, Respondents identified only one document that indicates that Rivera is the "Managing Partner." n30 Rivera acknowledged signing that document, but testified that the [*12] title "Managing Partner" under his signature was not in his handwriting. n31 Having reviewed this document, along with all of the other documentary evidence and testimony, n32 the Court remains convinced from the clear weight of the evidence that the March 22, 2000 Agreement superceded the CoF filed on February 3, 2000. Thus, at all times relevant to this action, Shriver and Martinez were the members of Grupo.

n30 DX 7 (Customer Account Application for Sysco of Baltimore dated January 25, 2001).

n31 Tr. at 211. The evidence does not conclusively show who wrote "managing partner" on the document. It is possible, for example, that Sysco's representative inserted that term.

n32 Shriver's testimony on the formation of Grupo was credible; Martinez's and Rivera's was not. Rivera's testimony, in particular, was marked by inconsistencies and defied common sense. For example, Rivera testified that if Grupo were sold, he would get to decide who would receive the proceeds, even though he put no money into the business and had limited involvement with it. Tr. at 225-28. The Court does not find that testimony credible.

[*13]

Respondents half-heartedly argue that removing Rivera as the initial member of Grupo required an amendment to the CoF. n33 The Court concludes otherwise. [HN4] *Section 18-202(b) n34 of the DLLCA* provides that a certificate of formation shall be amended if it becomes false in any material respect or was false when made. In addition, [HN5] under *Section 18-211 (a)*, n35 any certificate authorized to be filed with the

Secretary of State that inaccurately recorded the action referred to or was defective or erroneously executed may be corrected. It appears to the Court, however, that none of these circumstances ever occurred in this case. Assuming the parties intended Rivera to be the initial member then the CoF was correct when filed and never became false. n36 When Shriver and Martinez executed the Agreement, they became the members of Grupo, but that would not make the CoF naming Rivera as the *initial* member false. Further, because [HN6] the DLLCA does not require that the members of an LLC be set out in the certificate of formation, n37 there does not appear to be a continuing obligation to amend a certificate of formation anytime the members change.

n33 *See* ROB at 7 ("The procedure to amend the Certificate of Formation for a limited liability company is set forth in *6 Del. C. § 18-202*.").

[*14]

n34 *6 Del. C. § 18-202(b)* ([HN7] "A manager or, if there is no manager, then any member who becomes aware that any statement in a certificate of formation was false when made, or that any matter described has changed making the certificate of formation false in any material respect, shall promptly amend the certificate of formation.").

n35 *6 Del. C. § 18-211(a)* ([HN8] "Whenever any certificate authorized to be filed with the office of the Secretary of State under any provision of this chapter has been so filed and is an inaccurate record of the action therein referred to, or was defectively or erroneously executed, such certificate *may* be corrected by filing with the office of the Secretary of State a certificate of correction of such certificate.") (emphasis added).

n36 The parties disagree as to whether Shriver approved the listing of Rivera in the CoF as the initial member of Grupo. Martinez approved that listing and contends Shriver did, as well. Although Shriver denies approving the listing, the Court does not believe the mere existence of a dispute among the current members of Grupo as to the identity of the initial member, if any, requires an amendment of the CoF under *section 18-202(b)*.

[*15]

n37 *see 6 Del. C. § 18-201(a)* ([HN9] providing that a limited liability company's certificate of formation shall set forth the name of the company, the address of the registered office and the name of the registered agent and any other matters the members determine to include).

**B. Martinez's Attempt to Return Grupo to Good Standing**

Petitioner argues that paying Grupo's back taxes and restoring its good standing required a vote of Grupo's membership. n38 Respondents contend that the acts were "ministerial" and thus did not require a vote of Grupo's membership. n39 [HN10] A limited liability company that fails to pay its taxes to the State of Delaware when due ceases to be in good standing. n40 Pursuant to *Section 18-1107(i) of the DLLCA*, however, a limited liability company may regain its good standing simply by paying the tax owed, along with any penalties.

n38 POB at 21.

n39 ROB at 7-8.

n40 *6 Del. C. § 18-1107(h)*.

[*16]

On June 1, 2003, the Delaware Secretary of State canceled Grupo's status as a Delaware LLC because of a failure to pay the taxes Grupo owed the State under the DLLCA. In January 2005, Martinez, with full knowledge of Shriver's Virginia action to dissolve Grupo, paid the owed taxes and penalties and caused the Delaware Secretary of State to restore Grupo's good standing. Martinez knew that Shriver would not agree with her decision to restore Grupo's good standing; indeed, she knew Shriver wanted Grupo dissolved.

In deciding whether Martinez's restoration of Grupo's good standing is valid, the Court considers it unnecessary to reach the question of whether restoring the good standing of an LLC that has been cancelled by the Delaware Secretary of State for failure to pay taxes is a ministerial act that any member or manager may take or whether it requires a vote of the members. The facts of this case present a much narrower issue. That issue is whether once an LLC has lost its good standing for nonpayment of its taxes and the member attempting to restore good standing represents less than a majority of the voting power of the LLC and knows that there is a dispute as to whether the company [*17] should continue and where another co-equal member of the LLC

has initiated litigation to dissolve the company, the member with that knowledge can unilaterally restore the LLC to good standing. In other words, could Martinez unilaterally restore Grupo's good standing when she and Shriver were involved in litigation to dissolve Grupo? Martinez's action strikes this Court as contrary to the intent of the Agreement and therefore impermissible without Shriver's consent. Thus, the Court voids the Delaware Secretary of State's January 4, 2005 restoration of Grupo's good standing and concludes, in the unique circumstances of this case, that Grupo's good standing was not properly restored. n41

n41 *Cf. Laster v. Waggoner*, 1989 Del. Ch. LEXIS 138, 1989 WL 126670, at * 13 (Del. Ch. Oct. 13, 1989) (according little weight to a certificate of correction filed after the initiation of litigation that purported to give a board of directors the very power the plaintiffs contended the board did not have), *aff'd sub nom.*, 581 A.2d 1127 (Del. 1990).

[*18]

### III. CONCLUSION

For the reasons stated, the Court concludes that: (1) Shriver and Martinez are the members of Grupo Dos Chiles LLC and have been since at least the execution of the LLC Agreement in March 2000; and (2) Grupo was not properly restored to good standing and therefore is not presently a Delaware LLC in good standing. n42

n42 No order accompanies this Letter Opinion because the Court ordered the effectuation of its conclusions when it delivered its oral ruling on March 3, 2006. Oral Ruling Tr. at 15.

/s/Donald F. Parsons, Jr.

Vice Chancellor