**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, | |
| Plaintiff, | Civil Action No. 1:04-cv-11923 (DPW) |
| v. | District Judge Douglas P. Woodlock |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, FACEBOOK, INC., | Magistrate Judge Robert B. Collings |
| Defendants. | |
| MARK ZUCKERBERG and FACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
| Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS , and DIVYA NARENDRA, | |
| Additional Counterdefendants. | |

**PLAINTIFF'S POST-HEARING BRIEF IN
<u>COMPLIANCE WITH THE COURT'S OCTOBER 25, 2006 ORDER</u>**

I.    INTRODUCTION ................................................................................................. 1

II.   WHEN DETERMINING FEDERAL DIVERSITY JURISDICTION, A POST-
FILING AGREEMENT OR STATE LAW CANNOT ALTER THE FACTS EXISTING
ON THE FILING DATE ............................................................................................. 1

   A.   Federal Law Unequivocally States That Jurisdiction Is Determined At The Time Of
   Filing ................................................................................................................... 2

   B.   State Statutes Cannot Control Federal Diversity ............................................ 3

   C.   The Operating Agreement Cannot be Viewed as Memorializing Historical Fact ............. 4

   D.   Allowing The Operating Agreement To Reach Back And Affect Diversity Would Violate
   Public Policy ........................................................................................................ 4

III.  UNDER DELAWARE LLC LAW DIVYA NARENDRA WAS NOT A MEMBER
OF CONNECTU LLC ON SEPTEMBER 2, 2004 ..................................................... 6

   A.   Delaware Law Specifies Limited Ways of Becoming a Member ....................... 6

   B.   Legal Principles ............................................................................................. 7

   C.   Determining Members Before or At Formation ................................................ 8

   D.   Determining Members After Formation .......................................................... 10

   E.   Statements in the California Case .................................................................... 11

   F.   ConnectU LLC's Business Records .................................................................. 12

IV.   FACEBOOK DEFENDANTS' PRE-HEARING STATEMENT DOES NOT
RESOLVE THE ISSUE OF DIVYA NARENDRA'S MEMBERSHIP ............................... 13

   A.   Facebook Defendants' Pre-Hearing Statement Lacks Evidence, Contradicts Its Earlier
   Arguments, and Ignores the Law, Facts, and Parties' Intent ................................... 13

   B.   Facebook Defendants' Cases Support The Conclusion That Divya Narendra Was Not A
   Member On September 2, 2004 .............................................................................. 15

   C.   There Was Never Any Conversion From HarvardConnection To ConnectU  LLC ......... 17

V.    CONCLUSION ................................................................................................. 18

# TABLE OF AUTHORITIES

**Federal Cases**

*611 LLC v. US Lubes LLC*,
    NO. CCB-05-3417, 2006 U.S. Dist. LEXIS 52727 (D. Md. July 18, 2006) ........................ 8, 16

*City of Indianapolis v. Chase Nat'l Bank*,
    314 U.S. 63 (1941) ..................................................................................................... 5

*Duffy v. Sarrault*,
    702 F. Supp. 387 (D.R.I. 1988) ................................................................................. 3

*Gibbons v. Ogden*,
    22 U.S. (9 Wheat) 1, 210 (1824) ............................................................................... 3

*Grupo v. Dataflux Atlas Global Group, L.P.*,
    541 U.S. 567 (2004) ................................................................................................... 2

*Herrick Co. v. SCS Communications, Inc.*,
    251 F.3d 315 (2d Cir. 2001) ...................................................................................... 4

*Insurance Corp. of Ireland v. Compagnie des Bauxites du Guinee*,
    456 U.S. 694, 702 (1982)………………………………………………………………5

*Johnson v. United States,*
    163 F. 30 (1st Cir. 1908) ........................................................................................... 5

*Kramer v. Caribbean Mills, Inc.*,
    394 U.S. 823 (1969) ................................................................................................... 5

*Mullen v. Torrance*,
    22 U.S. 537 (1824) ..................................................................................................... 2

*Muschany v. United States*,
    342 U.S. 49 (1945) ..................................................................................................... 5

*Navarro Sav. Ass'n v. Lee,*
    446 U.S. 458, 459 (1980) ........................................................................................... 2

*Railway Co. v. Whittons,*
    80 U.S. 270 (1871) ..................................................................................................... 3

*W.R. Grace & Co. v. Rubber Workers*,
    461 U.S. 757 (1983) ................................................................................................... 4

**State Cases**

*Elf Atochem v. Jaffari,*
    727 A.2d 286 (Del. 1999) ......................................................................................... 7

*Grupo Dos Chiles LLC,*
    No. Civ.A. 1447-N, 2006 Del. Ch. Lexis 54 (Del. Ch. Mar. 10, 2006) ................. 7, 15, 16, 17

*Radding v. Freedom Choice Mort.,LLC*
  6 Conn. App. 366 (Conn. App. Ct. 2003) ............................................................. 17


**Constitution**

U.S. CONST. art. III, § 2. ....................................................................................... 3

U.S. CONST. art. VI, cl. 2. ...................................................................................... 3


**Statutes**

28 U.S.C. § 1332 ............................................................................................. 2, 3, 5

28 U.S.C. § 1359 .................................................................................................... 5

6 Del. Code Ann. §18-101(7)(2004) ................................................................. 7, 10

6 Del. Code Ann. §18-101(11)(2004) ..................................................................... 6

6 Del. Code Ann. §18-201(a)(2004) ...................................................................... 8

6 Del. Code Ann. §18-201(d)(2004) ............................................................... 2, 3, 7

6. Del. Code. Ann. §18-301 ........................................................... 6, 7, 12, 15

6 Del. Code Ann. §18-301(a)(2004) ......................................................... 6, 8, 9, 12

6 Del. Code Ann. §18-301(b)(2004) ........................................ 6, 7, 9, 10, 11, 12

6 Del. Code Ann. §18-214(c) .......................................................................... 17, 18


**Other Authorities**

15-79 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 79.2 ..................................... 4, 5

Martin I. Lubaroff &  Paul M. Altman, *Delaware Limited Liability Companies* in DELAWARE
LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 20.4 (R. Franklin Balotti & Jesse A.
Finklestein eds., 1999)……………………………………………………………………7

## I.      INTRODUCTION

At the end of the October 24-25, 2006 hearing, the Court raised an issue that should be covered by the post-hearing briefs, namely, whether Delaware law relating to limited liability company agreements might affect a determination of diversity jurisdiction.  ConnectU believes this is the same issue discussed and decided in the Court's August 24, 2006 Order.  (Dkt. 230.)  Just as a contract cannot reach back to *create* diversity where none existed, a contract also cannot reach back and *destroy* diversity by retroactive application, regardless of what Delaware law -- or any state's law -- may say.  ConnectU's July 13, 2006 Memorandum of Law posed the question of whether a retroactive operating agreement could save diversity if the facts were reversed.  (Dkt. 212 at 1-2.)  Facebook Defendants have never answered that question -- but as discussed below -- the answer must be no.

In their pre-hearing statement, and again at the October 24-25, 2006 hearing, Facebook Defendants ignored the applicable Delaware statutes governing the admission of Members to a limited liability company and attempted to muddy ConnectU LLC's membership waters with extraneous evidence of Divya Narendra's course of dealing with the HarvardConnection website, the connectu.com website and its vendors, and the Winklevoss twins.  Such course of dealing is irrelevant under the applicable statutes.  As set forth below, applying the applicable Delaware statutes as of the lawsuit's filing date can yield only one result:  Divya Narendra had not been a ConnectU LLC Member by that date.

## II.     WHEN DETERMINING FEDERAL DIVERSITY JURISDICTION, A POST-FILING AGREEMENT OR STATE LAW CANNOT ALTER THE FACTS EXISTING ON THE FILING DATE

**A.      Federal Law Unequivocally States That Jurisdiction Is Determined At The Time Of Filing**

On August 5, 2005, almost a year after this lawsuit was filed, Divya Narendra signed an Operating Agreement -- governed by Delaware law -- that made him a Member of ConnectU LLC.  (Dkt. 182, Ex. 8, § 14.11.)  Delaware law expressly provides that an LLC can (1) be formed without an operating agreement; (2) create an operating agreement after formation, and (3) the operating agreement "may be made effective as of the formation" of the company.  *See* 6 Del. Code Ann. §18-201(d)(2004).[1]

As set forth in Section III below, Divya Narendra's membership in ConnectU LLC is governed by very specific rules codified in the Delaware law.  However, Delaware law does not, and cannot, govern the question of federal diversity.  A limited liability company agreement and Delaware law cannot possibly have the power to trump federal law and affect the jurisdiction of federal courts.

Title 28 U.S.C. § 1332 permits citizens of different states to litigate in federal court. Numerous U.S. Supreme Court decisions have interpreted 28 U.S.C. § 1332 as requiring diversity between the parties on the day the Complaint is filed.  *See Grupo v. Dataflux Atlas Global Group*, *L.P.*, 541 U.S. 567, 570-71 (2004); *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 459 (1980); *Mullen v. Torrance*, 22 U.S. 537, 539 (1824) (federal jurisdiction depends on state of things when action is filed).  As noted by the *Grupo* Court, the time-of-filing rule is a long-standing rule that has been consistently applied and "is hornbook law (quite literally) taught to first-year law students in any basic course on federal civil procedure."  541 U.S. at 570-71.

---

[1] ConnectU has identified no case law, from Delaware or elsewhere, that permits a retroactive agreement to affect membership for purposes of federal jurisdiction.

Allowing an LLC agreement to operate retroactively and affect jurisdiction would eviscerate the time-of-filing rule.  As recognized by this Court, "subsequent action of the parties cannot alter the state of the facts as they existed on the pertinent date."  (Dkt. 230 at 7-8.) ConnectU LLC's Operating Agreement did not exist on September 2, 2004, and therefore cannot be used to destroy diversity jurisdiction (or, for that matter, to create it if the facts were reversed), regardless of what Delaware law -- or any state's law -- may say.

**B.      State Statutes Cannot Control Federal Diversity**

A federal district court's diversity jurisdiction is a creature of federal law.  The legislative grant of federal jurisdiction over diversity cases, 28 U.S.C. § 1332, is derived from the United States Constitution and tracks the wording in Article III, Section 2.  U.S. CONST. art. III, § 2. When Congress legislates pursuant to its delegated powers, conflicting state law and policy must yield.  U.S. CONST. art. VI, cl. 2 (Supremacy Clause); *Gibbons v. Ogden* 22 U.S. (9 Wheat) 1, 210, 211 (1824).  Accordingly, any argument that a state statute affects federal court jurisdiction must fail, because "[a] state has no right to limit federal court jurisdiction." *Duffy v. Sarrault*, 702 F. Supp. 387, 394 (D.R.I. 1988) (district court had jurisdiction despite state statute that authorized complaint to be filed only in state court); *Railway Co. v. Whittons*, 80 U.S. 270, 286 (1871) (state statute not permitted to force enforcement of right to be litigated in state court only).

While §18-201(d) of the Delaware Limited Liability Company Act permits an operating agreement to be made effective as of the formation of the limited liability company, it cannot be read to affect federal jurisdiction at a time before the agreement existed.  Delaware law simply

cannot influence federal jurisdiction through retroactive effect, and ConnectU LLC's Operating

Agreement cannot be interpreted to change the facts as they existed on September 2, 2004.[2]

### C.     The Operating Agreement Cannot be Viewed as Memorializing Historical Fact

Defendants may argue that ConnectU LLC's Operating Agreement should be viewed as

expressing the state of ConnectU LLC's membership at the time of filing.  Even this approach

violates the time-of-filing rule.  To apply the rule properly, the Court must step back in time to

September 2, 2004 and apply the Delaware law for determining membership.  Any other

approach risks allowing a later agreement to change a jurisdictional determination that would

have been made on the filing date by applying Delaware law.  If a later operating agreement jives

with such a determination, fine.  But if not, using the agreement to determine membership would

violate the time-of-filing rule.

### D.     Allowing The Operating Agreement To Reach Back And Affect Diversity Would Violate Public Policy

A court may not interpret a provision of a contract in a manner that contradicts public

policy.  When an interpretation of a private contract would violate the United States Constitution,

a state Constitution, common or statutory laws, or judicial decisions, it is violative of public

policy.  *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766 (1983); 15-79 ARTHUR L.

CORBIN, CORBIN ON CONTRACTS § 79.2.  Although ConnectU's Operating Agreement made

Divya Narendra a Member of ConnectU LLC retroactively to April 6, 2004, interpreting that

agreement in any way inconsistent with the time-of-filing rule would be unenforceable for public

policy reasons.

---

[2]  Similarly, ConnectU's 2004 tax returns, which were filed in October 2005, after the Operating Agreement was signed, not only did not exist on September 2, 2004, but ConnectU's tax preparer seriously questioned whether Divya Narendra should have been named in such tax returns as a ConnectU LLC Member for the 2004 tax year.

The clearest and most obvious source of statements of the public policy of the jurisdiction of the federal courts is legislation, such as statutes and constitutions. *Johnson v. United States*, 163 F. 30, 32 (1st Cir. 1908) (the Legislature has the power to decide what the policy of the law shall be and that policy should be recognized and obeyed); 15-79 ARTHUR L. CORBIN, CORBIN ON CONTRACTS § 79.2. The judicial branch itself is a further source of statements of public policy. *Muschany v. United States*, 324 U.S. 49, 66-67 (1945) (stating that public policy in contract cases is to be ascertained by "reference to the laws and legal precedent."). A court might look to precedent for a statement of the public policy of the jurisdiction. *Id.* Here, an amalgam of federal law elucidates public policy regarding federal diversity jurisdiction.

The time-of-filing rule has risen to the level of public policy by virtue of the federal statutes, combined with clear directives from the Supreme Court. As discussed in Section II.B, *supra*, Title 28 U.S.C. § 1332 gives federal courts diversity jurisdiction and the Supreme Court long ago adopted the time-of-filing rule. Consistent with this rule, an agreement of the parties cannot confer jurisdiction, nor can their consent. *Insurance Corp. of Ireland v. Compagnie des Bauxites du Guinee*, 456 U.S. 694, 702 (1982) (consent of parties to subject matter jurisdiction is irrelevant); *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 76 (1941) (settled restrictions against bringing local disputes into the federal courts cannot be circumvented by agreement). Title 28 U.S.C. § 1359 is further recognition of the "time-of-filing" rule and the policy against manufacturing jurisdiction. In fact, the manufacture of federal jurisdiction is the very thing Congress intended to prevent when it enacted 28 U.S.C. § 1359, and its predecessors. *Kramer v. Caribbean Mills, Inc.* 394 U.S. 823, 828 (1969). It denies federal jurisdiction where a party, "by assignment or otherwise, has been improperly or collusively made or joined" to invoke the jurisdiction of the court. 28 U.S.C. § 1359.

5

ConnectU LLC's Operating Agreement cannot be interpreted to change jurisdictional facts as they existed on September 2, 2004 because such an interpretation would violate the public policy underlying the time-of-filing rule.

### III.   UNDER DELAWARE LLC LAW DIVYA NARENDRA WAS NOT A MEMBER OF CONNECTU LLC ON SEPTEMBER 2, 2004

#### A.   Delaware Law Specifies Limited Ways of Becoming a Member

ConnectU LLC was a Delaware limited liability company ("LLC") on September 2, 2004, when the Complaint was filed.  Under Delaware law, a person becomes a Member of an LLC only in specific ways, none of which was met here[3].  6 Del. Code Ann. §18-101(11)(2004) defines a "Member" of an LLC as "a person who has been admitted to [an LLC] as a member as provided in §18-301."   Section 18-301 distinguishes between Members admitted before or at the time of formation, and Members admitted after formation.

Before or at the time of formation, one becomes a Member only if:

    a.    his "admission" is reflected in the LLC's records; or
    b.    the relevant persons agree he will be a Member; or
    c.    he meets the time and compliance requirements of an LLC agreement.

6 Del. Code Ann. §18-301(a)(2004) (*discussed infra*).

After formation, one becomes a Member only if:

    a.    he meets time and compliance requirements of an LLC agreement; or
    b.    all existing Members consent
                AND
    his "admission" is reflected in the LLC's records.

---

[3] Copies of the Delaware Limited Liability Company Act as of September 2, 2004 are attached as Ex. 1 to the Declaration of Meredith H. Schoenfeld ("Schoenfeld Declaration")  that accompanies this brief.

6 Del. Code Ann. §18-301(b)(1)(2004) (*discussed infra*).  Evidence relating to any other issue or

course of dealing is irrelevant for purposes of determining if Divya Narendra was a Member of

ConnectU LLC on September 2, 2004.[4]

**B.    Legal Principles**

Three basic principles of Delaware law are also important here:

First, 6 Del. Code Ann. §18-101(7)(2004) provides that an LLC agreement means:

  a.  any agreement, regardless of its name;
  b.  whether written or oral;
  c.  that is an agreement of the Members;
  d.  as to the affairs of the LLC and the conduct of its business; and
  e.  an agreement of an LLC having only one Member shall not be
    unenforceable because it only has one person who is a party to the
    agreement.

Because an LLC agreement is defined in part as an agreement of the Members, the definition

obviously presupposes that Members have been decided, and §18-301 (discussed below) so

provides.

Second, 6 Del. Code Ann. §18-201(d)(2004) provides that an LLC agreement:

  a.  may be entered into before, after, or at the time of the filing of a
    certificate of formation; and
  b.  may be effective as of the formation of the LLC.

Third, one may have a financial interest in an LLC, but not be a Member. The Delaware

LLC Act "generally permits members to engage in private ordering with substantial freedom of

contract to govern their relationship" *Elf Atochem v. Jaffari*, 727 A.2d 286, 290 (Del. 1999), and

gives parties to an LLC agreement "virtually unfettered discretion" to contract.  Martin I.

Lubaroff &  Paul M. Altman, *Delaware Limited Liability Companies* in DELAWARE LAW OF

---

[4]  Facebook Defendants are expected to argue that any course of dealing is fair game for establishing
membership, and they are likely to cite *In Re Grupo Dos Chiles LLC,*  No. Civ.A. 1447-N, 2006 Del. Ch. Lexis 54
(Del. Ch. Mar. 10, 2006).  However, the only relevant course of dealing is a course consistent with §18-301.  Even
in *Grupo*, the court relied only on the company's business records (e.g., the March 2000 Agreement, two post-
formation loan documents, and a business letter,), *id.* at * 9-12 and n. 29, which is precisely what §18-301 requires.

CORPORATIONS & BUSINESS ORGANIZATIONS § 20.4 (R. Franklin Balotti & Jesse A. Finklestein eds., 1999).  (Schoenfeld Declaration, Ex. 2.)  This principle was recognized in *611 LLC v. US Lubes LLC*, where the court stated "[t]he agreement thus expressly recognizes situations in which an entity can possess a financial interest in the company without possessing the rights of a Member."  No. CCB-05-3417, 2006 U.S. Dist. LEXIS 52727 at *6 (D. Md. July 18, 2006) (applying Delaware law).  This principle is also reflected in ConnectU LLC's August 5, 2005 Operating Agreement.  (*See* Dkt. 182, Ex. 8, Article X.)

The relevance of these principles is discussed below.

## C.    Determining Members Before or At Formation

ConnectU LLC specified no Members in its certificate of formation, which is permitted under 6 Del. Code Ann. §18-201(a)(2004).[5]  Section 18-301(a) says:

> (a) In connection with the formation of [an LLC], a person is admitted as a member of the [LLC] upon the later to occur of:
>
> > (1) the formation of the [LLC]; or
> >
> > (2) the time provided in and upon compliance with the [LLC] agreement or, if the [LLC] agreement does not so provide, when the person's admission is reflected in the records of the [LLC].

Section 18-301(a)(1) does not say how persons to be admitted as Members at the time of formation are decided.  Assuming that **__ANY__** Members were admitted at ConnectU LLC's formation, who got to decide who they would be?  Members can't decide.  That would be circular.  There are only two possibilities, which ConnectU argues in the alternative:

---

[5] Section 18-201(a) provides as follows:

(a) In order to form a limited liability company, 1 or more authorized persons must execute a certificate of formation. The certificate of formation shall be filed in the office of the Secretary of State and set forth:

(1) The name of the limited liability company;

(2) The address of the registered office and the name and address of the registered agent for service of process required to be maintained by § 18-104 of this title; and

(3) Any other matters the members determine to include therein.

8

1. Tyler Winklevoss had the sole right to decide because he authorized The Company Corporation to form the LLC, **OR**
2. Tyler Winklevoss, Cameron Winklevoss, and Divya Narendra had the right to decide.

As to the first alternative, Tyler Winklevoss believes he had that right, was the sole initial Member, and soon admitted Cameron Winklevoss as a Member. As to the second alternative, Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss agree that Divya Narendra was not admitted as a Member at formation. Under either alternative, the relevant people agree that Divya Narendra was not a Member at formation.[6]

Section 18-301(a)(2) must refer to pre-formation or the time of formation because §18-301(b) covers post-formation. Stepping back in time to April 6, 2004, there is no evidence that Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss agreed to become Members together at the time of formation or before formation. In fact, they say the opposite. More importantly, there is no evidence of any agreement of the Members (whoever they were) as to the "affairs of the [LLC] and the conduct of its business" at that time. Because there is no evidence of such an agreement, there was certainly no agreement that specified a time when Divya Narendra would be admitted as a Member or compliance requirements for Divya Narendra to be admitted as a Member, both of which are required by §18-301(a)(2). Furthermore, the admission of Divya Narendra as a ConnectU LLC Member was not reflected in ConnectU LLC's records at the time of formation.[7]

Thus, under the requirements of §18-301(a), Divya Narendra could not possibly have been a Member of ConnectU LLC at the time of formation.

---

[6] Because the relevant persons agree, the Court need not decide the question of who has the right to decide Members at the time of formation.

[7] Defendants make much of Divya Narendra's pre-formation contribution of $10,000. But investing in an LLC does not make one a Member, as discussed in Section III.B, *supra,* **or** under §18-301(a) and (b).

### D.    Determining Members After Formation

After ConnectU LLC's formation, Divya Narendra (who is not an assignee of an LLC interest) could be admitted as a Member only under §18-301(b)(1), under the following circumstances:

1.    at the time provided in and upon compliance with an LLC agreement
       **OR**
2.    if the LLC agreement does not so provide, upon the consent of all Members **AND** when the person's admission is reflected in the LLC's records.

Thus, §18-301(b) requires either an LLC agreement (as defined by §18-101(7)) with time and compliance requirements **OR** the consent of all Members **AND** such person's admission must be reflected in the LLC's records.

In the present case, there does not appear to have been an agreement after formation "as to the affairs of the [LLC] and the conduct of its business" until August 2005 and there certainly was no such agreement before August 2005 specifying a time for Divya Narendra to be admitted as a Member or compliance requirements to be admitted as Member, both of which are required by §18-301(b)(1).  After ConnectU LLC's formation, either Tyler Winklevoss and Cameron Winklevoss, or Tyler Winklevoss, Cameron Winklevoss, and Divya Narendra, were in agreement that only Tyler Winklevoss and Cameron Winklevoss would be admitted as Members and run the company.  Because an "[LLC] agreement does not so provide," Divya Narendra therefore could become a Member only upon agreement of all the Members **AND** when his admission was reflected in ConnectU LLC's records. There is no evidence that Cameron and Tyler Winklevoss consented to the admission of Divya Narendra as a Member until August 2005, and the only Members reflected in ConnectU LLC's records  -- which ConnectU entered into evidence at the October 24-25, 2006 hearing -- as of September 2, 2004 were Tyler and Cameron Winklevoss.

10

Thus, under the requirements of §18-301(b)(1), Divya Narendra could not possibly have been admitted as a Member of ConnectU LLC after formation, until the Operating Agreement was signed in August 2005.

###    E.    Statements in the California Case

Defendants also make much of Divya Narendra's, Cameron Winklevoss's, and Tyler Winklevoss's post-Operating Agreement statements made in the California case, but the Plaintiff in that case, Facebook, Inc., who is represented by exactly the same attorneys as in the present case, did not use any of those statements in the California case to support its arguments. Facebook, Inc. never argued that Divya Narendra was a Member before August 2005, and in fact argued that the individual defendants were **NOT** Members before August 5, 2005, and therefore were not protected by a corporate shield.  Specifically, they argued that Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss:

> "do not have any [company] shield to hide behind.  The Operating Agreement of ConnectU LLC was not executed by any of the Individual Defendants until August 5, 2005, well after Individual Defendants [allegedly] accessed and took [allegedly proprietary] data from Facebook's website in Spring 2005 … none of the Individual Defendants was a member of ConnectU; therefore, no alleged ConnectU shield existed for them, until well after the [allegedly] wrongful acts began."

(Quoted in ConnectU's brief filed July 13, 2006, (Dkt. 212 at 5-6); Facebook's actual brief is an exhibit to ConnectU's Supplemental Brief filed June 12, 2006.  (Dkt. 182, Ex. 9 at 8.)) Facebook, Inc. should be held to this argument.

More importantly, in view of the evidence existing as of September 2, 2004, if Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss had been called upon to prove the statements made in the California case regarding membership prior to September 2, 2004, other than with the retroactive Operating Agreement -- i.e., with evidence existing on September 2,

2004 that satisfies § 18-301-- they could not have done so.  And in fact, that was Facebook, Inc.'s position in that case.

### F.    ConnectU LLC's Business Records

On the issue of Divya Narendra's membership, Defendants deposed Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (Divya Narendra twice), issued 129 broad production requests, subpoenaed 23 third parties for documents (including Divya Narendra's parents, Harvard University, Princeton University, and ConnectU's counsel, Finnegan Henderson Farabow Garrett and Dunner LLP), subpoenaed 17 third parties for depositions, and took 10 depositions.  Despite this extensive and expensive discovery, there is no more evidence today that Divya Narendra was a Member of ConnectU LLC on September 2, 2004 than existed at the June 22, 2006 hearing, or when Facebook, Inc. argued in the California case that Divya Narendra was not a Member until the Operating Agreement was signed.

Today as then, no document existing on September 2, 2004 names Divya Narendra as a Member, and certainly no document "reflects his admission" as a Member, as required by §18-301(a)(2) and (b)(1).  ConnectU LLC's records as of that date identify only Cameron and Tyler Winklevoss as Members.  On or before September 2, 2004, Divya Narendra did not act or hold himself out as a Member and did not and would not loan money to ConnectU LLC, act as its guarantor, sue anyone for ConnectU LLC (and be responsible for the costs), access its books, co-manage ConnectU LLC, share its losses and expenses, or have access to its bank account.  After ConnectU LLC formed, Divya Narendra had some involvement with the connectu.com website, but none of this made him a Member under the Delaware code.

The clincher here is the information provided by ConnectU LLC to Wachovia to open its checking account in January 2005.  The Wachovia documents required the identification of all

Members at that time, and to inform the bank of later changes in ConnectU LLC's membership. There is no evidence that Divya Narendra was a Member before January 2005, then ceased to be one before the Wachovia account was opened.  Thus, if he were a Member on September 2, 2004, he would have been listed in the Wachovia documents, but he was not.

Thus, based on ConnectU LLC's business records, Divya Narendra could not possibly have been a Member of ConnectU LLC on September 2, 2004.

## IV.    FACEBOOK DEFENDANTS' PRE-HEARING STATEMENT DOES NOT RESOLVE THE ISSUE OF DIVYA NARENDRA'S MEMBERSHIP

### A.    Facebook Defendants' Pre-Hearing Statement Lacks Evidence, Contradicts Its Earlier Arguments, and Ignores the Law, Facts, and Parties' Intent

Facebook Defendants' pre-hearing statement is notable for its lack of any evidence citations to support its arguments.  Although Facebook Defendants call it a "Statement of Law" (Dkt. 251 at 1), it is heavy on factual assertions but light -- featherlight -- on supporting evidence.  Facebook Defendants' arguments also ignore the requirements for becoming a Member under Delaware law, as discussed *supra*.

Facebook Defendants' also make the following arguments, which do not resolve the issue of Divya Narendra's membership and are inconsistent with earlier arguments they made in connection with the Motion to Dismiss:

1.      "[t]he principals of the [alleged HarvardConnection] partnership received membership interests in ConnectU in exchange for an assignment of all rights, title, and interests each had vested in the partnership."  (Dkt. 251 at 1.)  Assuming they are referring to pre-suit assignments supporting the alleged receipt of pre-suit membership interests, there is no evidence of such a pre-filing *quid pro quo* for such assignment.  Moreover, this argument contradicts their argument set forth on at least pages 9 and 12 (respectively) of their Motion to Dismiss (Dkt. 94)

that ConnectU "did not own the claims at issue at the time it filed its original complaint" and "Plaintiff was not assigned any of the state law claims until August 5, 2005, at the earliest." In view of Facebook Defendants' new argument, their argument in the Motion to Dismiss that ConnectU lacked standing to sue on September 2, 2004 must now be dead.

2.      "Mr. Narendra, Cameron Winklevoss and Tyler Winklevoss formed HarvardConnection, later known as ConnectU, to attempt to found a business for profit and own it jointly." (Dkt. 251 at 2.)  This argument is directly contrary to their position that "the Individual Counterdefendants communicated to Zuckerberg that the [HarvardConnection] website was not a commercial venture and their desire was only to 'make waves' on the Harvard campus." (Dkt. 14, at ¶ 11 of Counterclaims.)  Moreover, this argument is irrelevant to the issue of whether Divya Narendra was a Member on the filing date.

3.      paragraph 13.5 of the Operating Agreement "memorializes the parties' intent that the [so-called] general partnership assets would be transferred for membership interests in the LLC." (Dkt. 251 at 3.)  This argument directly contradicts the argument at page 8 of their Motion to Dismiss (Dkt. 94) that "while trade secret claims might arguably have been conveyed through § 13.5 of the Operating Agreement at the time the Agreement was signed, the specific language of the contract reflect [sic] that no other rights were specifically and clearly conveyed."  In view of Facebook Defendants' new argument, this prior argument must also be dead.

These examples, along with Facebook, Inc.'s they-were-not-Members-argument from the California case (see Section III.E, *supra*), demonstrate that Facebook Defendants have thrown consistency to the wind in their desperate attempts to save their ill-fated Motion to Dismiss.

Facebook Defendants' most recent arguments also completely ignore the intent of the parties, as presented at the October 24-25, 2006 hearing, and argue instead for an automatic

operation of law (see below) that ignores such intent.  In view of the relevant persons' intent with

respect to ConnectU LLC's formation, HarvardConnection's legal status (or lack thereof) prior

to ConnectU LLC's formation is also irrelevant to the issue before the Court.

However, even if HarvardConnection was a Massachusetts partnership, there is no

evidence that it converted to a Delaware LLC.  Facebook Defendants ignore the possibility that if

such partnership existed, it may have existed in parallel with ConnectU LLC, just as

Thefacebook LLC coexisted with Facebook, Inc. (see ConnectU's Supplemental Brief, Dkt. 187

at 2.)  In fact, this is the logical conclusion of Facebook Defendants' argument if

HarvardConnection was a partnership but was not dissolved (as Facebook Defendants argue),

and if the parties did not intend to convert such partnership to a Delaware LLC and did not take

the proper legal steps to do so (see Section IV.C, *infra*).

> **B.    Facebook Defendants' Cases Support The Conclusion That Divya Narendra Was Not A Member On September 2, 2004**

None of the cases cited by Facebook Defendants in their October 24, 2006 Prehearing

Statement (Dkt. 251) relates to a determination of membership for the purposes of diversity

jurisdiction, and certainly none of them requires a finding that Divya Narendra was a Member of

ConnectU LLC on September 2, 2004.  In fact, the opposite is true.  The cases cited by Facebook

Defendants, to the extent they are relevant, fully support ConnectU's contentions.

Quoting *In Re Grupo Dos Chiles LLC,* No. Civ.A. 1447-N, 2006 Del. Ch. Lexis 54 at * 7

(Del. Ch. Mar. 10, 2006), Facebook Defendants argue that the issue of membership should be

based on "the formalities in light of the facts and evidence of the parties' intentions."  (Dkt. 251

at 6.)  However, the underlying facts and evidence of the relevant persons' intentions, as applied

to the formalities of §18-301, show that Divya Narendra was not admitted as a Member by

September 2, 2004.  The only two documents identified by Facebook Defendants as showing

15

Divya Narendra's membership did not come into existence until the latter half of 2005.  (Dkt. 251 at 1.)

As discussed in Section III.C, *supra*, Divya Narendra's pre-formation contribution of time and money, and his post-formation contributions of time, also did not make him a Member of ConnectU LLC.  *See e.g., 611 LLC v. US Lubes LLC*, NO. CCB-05-3417, 2006 U.S. Dist. LEXIS 52727 (D. Md. July 18, 2006) (applying Delaware law and acknowledging an agreement that recognized situations in which an entity can possess a financial interest in a company without possessing the rights of a Member).  Although Facebook Defendants stated that "[l]oan documents, credit applications, agreements, and other communications with third parties identifying the parties as 'owners,' 'managers' or 'members'"(Dkt. 251 at 5) constitute evidence regarding membership, they failed to present any such evidence.

In *In Re Grupo Dos Chiles LLC*, on which Facebook Defendants rely (Dkt. 251 at 5-7), a Certificate of Formation for Grupo was filed with the Delaware Secretary of State in or about February 2000 naming Rivera as the "initial member."  No. Civ.A. 1447-N, 2006 Del. Ch. Lexis 54 at *3 (Del. Ch. Mar. 10, 2006).  In or about March 2000, Shriver and Martinez executed an LLC Agreement for Grupo, naming themselves "managing partners." *Id.*  The court then found that Shriver and Martinez were the Members of Grupo Dos Chiles LLC and had been since "at least the execution of the LLC Agreement in March 2000" (emphasis added).  *Id*. at *18. However, the court also acknowledged that Rivera may have been the initial and sole Member of Grupo when it was formed.  *Id.* at *7-*8.

*Grupo Dos Chiles* therefore lends credence to the proposition that the person who forms the LLC is the initial or sole Member if there is no agreement that states otherwise.[8]  Facebook

---

[8] Defendants will seek to distinguish *Grupo* on the basis that the Certificate of Formation in that case named an initial Member, but ConnectU's Certificate of Formation did not.  But this is not ConnectU's point.  The

Defendants mischaracterize the holding of *Grupo Dos Chiles* when they claim that "a certificate of formation is immaterial to the determination of membership." In fact, the court found only that the Certificate of Formation need not be amended to update the membership, stating that "[w]hen Shriver and Martinez executed the Agreement, they became the Members of Grupo, but that would not make the [Certificate of Formation] naming Rivera as the *initial* member false." *Id.* at *13. Delaware law "contemplates that the certificate of formation is to be complemented by the terms of the Agreement" (Id. at *8-*9), but never suggests that the certificate of formation is immaterial to membership. In fact, a Certificate of Formation is an LLC business record under §18-301. Moreover, retroactivity and its effect (or noneffect) on diversity jurisdiction were not issues in *Grupo Dos Chiles*.

Facebook Defendants also cite *Radding v. Freedom Choice Mort., LLC*, 76 Conn. App. 366 (Conn. App. Ct. 2003). (Dkt. 251 at 6.) In *Radding,* the court concluded that the plaintiff became a Member of the company <u>on the date that the operating agreement was amended</u>" (emphasis added). 76 Conn. App. 373. *Radding* fails to address destroying diversity with a backdated agreement and does not apply Delaware law.

## C.    There Was Never Any Conversion From HarvardConnection To ConnectU LLC

To convert from an entity into a limited liability company in Delaware, a certificate of conversion is filed with the Secretary of State. 6 Del. Code Ann. §18-214(c). Among other things, the certificate of conversion shall state the date and jurisdiction where the other entity first came into being, the name of the other entity immediately prior to the filing of the certificate of conversion to a limited liability company, and the name of the limited liability company as set

---

point is that if a single person forms an LLC, the issues become: who are its Members and who has the right to decide who they will be (see Section III.C *supra*)?

forth in its certificate of formation.  6 Del. Code Ann. §18-214(c).  Facebook Defendants do not

contest that no such document exists.  Indeed, it does not exist because no such conversion ever

took place, as demonstrated by the parties' intent, as described at the October 24-25, 2006

hearing.  Therefore, Facebook Defendants' argument that HarvardConnection was converted to

ConnectU LLC (Dkt 251 at 3-5) is without merit.

## V.    CONCLUSION

For the reasons set forth herein, ConnectU respectfully urges the Court to find that Divya

Narendra had not been admitted as a Member of ConnectU LLC by September 2, 2004 and that

diversity existed when the original Complaint was filed.  Therefore, ConnectU respectfully urges

the Court to deny Facebook Defendants' Motion to Dismiss.[9]


Respectfully submitted,


DATED:  November 10, 2006                    /s/ John F. Hornick _____
                                             John F. Hornick (*pro hac vice*)
                                             Email:  john.hornick@finnegan.com
                                             Margaret A. Esquenet (*pro hac vice*)
                                             Emails:  margaret.esquenet@finnegan.com
                                             Meredith H. Schoenfeld (*pro hac vice*)
                                             meredith.schoenfeld@finnegan.com
                                             FINNEGAN, HENDERSON, FARABOW,
                                               GARRETT & DUNNER, L.L.P.
                                             901 New York Avenue N.W.
                                             Washington, DC  20001
                                             Telephone:  (202) 408-4000
                                             Facsimile:   (202) 408-4400

---

[9] For other arguments related to Defendants' motion to dismiss that are beyond the scope of this brief, ConnectU refers the Court to its Supplemental Brief filed June 12, 2006.  (Dkt. 187.)

Daniel P. Tighe (BBO# 556583)
Email: dtighe@gtmllp.com
Scott McConchie (BBO# 634127)
Email: smcconchie@gtmllp.com
GREISINGER, TIGHE, and
  MAFFEI, L.L.P.
Boston, MA  02110
Telephone:  (617) 452-9900
Facsimile:   (617) 452-0900
dtighe@gtmllp.com
smcconchie@gtmllp.com

Attorneys for Plaintiff and Counterclaim
Defendants

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on November 10,

2006.

/s/ John F. Hornick
John F. Hornick