IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU, LLC,<br><br>       Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>       Defendants.<br>———————————————<br>MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>       Counterclaimants,<br><br>v.<br><br>CONNECTU, LLC,<br><br>       Counterdefendant,<br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>       Additional Counterdefendants. | Civil Action No. 04-CV-11923-DPW |

**FACEBOOK'S OPPOSITION TO CONNECTU, LLC'S
OCTOBER 25, 2006 POST HEARING BRIEF**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTS ........................................................................................................... 2

III.  ARGUMENT .................................................................................................. 4

    A.   CONNECTU LLC HAS THE BURDEN OF PROOF REGARDING
        SUBJECT MATTER JURISDICTION ................................................... 4

    B.   DELAWARE LAW CONTROLS FOR THE PURPOSE OF DECIDING
        FEDERAL DIVERSITY JURISDICTION ............................................. 4

        1.   It Is Hornbook Law that State Law Controls in Determining
            Diversity for Artificial Entities ................................................ 4

    C.   DIVYA NARENDRA IS DEEMED A MEMBER OF CONNECTU LLC
        AS OF  SEPTEMBER 2, 2004 ................................................................ 7

        1.   The LLC's Operating Agreement Governs Admission of Members ......... 7

        2.   The 611, LLC Case is Persuasive Authority ............................................. 8

        3.   ConnectU's Members Are Bound To The Terms Of Its Operating
            Agreement From April 6, 2004 ............................................................. 11

        4.   Enforcing The Terms Of The Operating Agreement Does Not
            Frustrate Public Policy .......................................................................... 13

IV.   CONCLUSION ............................................................................................. 14

# TABLE OF AUTHORITIES

Page

## CASES

*611, LLC* v. *US Lubes, LLC,*
2006 WL. 2038615 (D. Md. July. 18, 2006)........................................................2, 6, 8, 10

*Airlines Reporting Co.* v. *S and N Travel,*
58 F.3d 857 (2d Cir. 1995)........................................................................................13

*Bass* v. *Texas Power & Light Co.,*
432 F.2d 763 (5th Cir. 1970) ....................................................................................13

*Carbine* v. *Xalapa Farm Ltd. Partnership,*
980 F. Supp. 860 (E.D. La. 1997) ..................................................................4, 6, 11, 12

*Carden* v. *Arkoma Assoc.,*
494 U.S. 185 (1990)....................................................................................................5

*Colliers Lanard & Axilbund* v. *Lloyds of London,*
458 F.3d 231 (3d Cir. 2006).......................................................................................11

*Elf Atochem North America, Inc.* v. *Jafari, Del Supr.,*
727 A.2d 286 (1999) ...................................................................................................7

*Erie R.R.* v. *Tompkins,*
304 U.S. 64 (1938)......................................................................................................5

*Harrell & Sumner Contracting Co., Inc.* v. *Peabody Petersen Co.,*
546 F.2d 1227 (5th Cir. 1977) ...................................................................................12

*Indiana Port Comm'n* v. *Bethlehem Steel Corp.,*
702 F.2d 107 (7th Cir. 1983) ......................................................................................5

*In Re Grupo Dos Chiles, LLC,*
2006 Del. Ch. LEXIS 54 (2006) ..........................................................................8, 9, 10

*Int'l Paper Co.* v. *Denkmann Assoc.,*
116 F.3d 134 (5th Cir. 1997) ......................................................................................6

*Kier Bros. Investments, Inc.* v. *White,*
943 F. Supp. 1 (D.D.C. 1996) ..................................................................................4, 6

OHS West:260134913.2

## TABLE OF AUTHORITIES
### (continued)

Page

*Kokkonen* v. *Guardian Life Ins. Co. of America*,
511 U.S. 375 (1994).................................................................................4

*Moor* v. *County of Alameda*,
411 U.S. 713 (1973).................................................................................5

*Nadherny* v. *Roseland Prop. Co.*,
390 F.3d 44 (1st Cir. 2004)...................................................................11

*People of Puerto Rico* v. *Russell & Co.*,
288 U.S. 476 (1933).................................................................................5

*Pramco, LLC* v. *San Juan Bay Marina, Inc.*,
435 F.3d 51 (1st Cir. 2006)...............................................................1, 10

*Ripalda* v. *Am. Operations Corp.*,
977 F.2d 1464 (D.C. Cir. 1992)...............................................................6

*Schiavone Const. Co. v. City of New York*,
99 F.3d 546, 15 .................................................................................5, 6

*Sweetman* v. *Strescon Industries, Inc.*,
389 A.2d 1319 (1978)............................................................................11

*Toste Farm Corp.* v. *Hadbury, Inc.*,
70 F.3d 640 (1st Cir. 1995)...................................................................13

*United Nat'l Ins. Co.* v. *Waterfront N.Y. Realty Corp.*,
907 F. Supp. 663 (S.D.N.Y. 1995).........................................................6

*Wild* v. *Subscription Plus, Inc.*,
292 F.3d 526 (7th Cir. 2002) .................................................................6

*Walker* v. *Resource Dev. Co. Ltd., LLC*,
291 A.2d 799 (2000).........................................................................7, 8

### STATUTES

28 U.S.C. Section 1359.................................................................................13

6 Del. Code Ann. § 18-201(d) .......................................................................7

## TABLE OF AUTHORITIES
### (continued)

Page

Delaware Code § 18-301(a)...........................................................................................................8

**OTHER**

*California Practice Guide: Federal Civil Procedure Before Trial* ¶ 2:322.2 (2006)......................5

## I.    <u>INTRODUCTION</u>

As recognized by the First Circuit, Limited Liability Companies are hybrid entities between partnerships and corporations.  Under *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F. 3d 51 (1st Cir. 2006), courts look to the members, much the same way that a court would look to a partner in a partnership, to determine diversity jurisdiction.  In this instance, Divya Narendra was a contributing member of ConnectU LLC and the ConnectU.com website at the time of the filing of the complaint.  The Operating Agreement memorialized this fact.  Applicable law supports the notion that the operating agreement should control for purposes of diversity. ConnectU cannot now run away from the agreement it purported to make retroactive to reflect the status of the LLC at the time of filing.

At the conclusion of the evidentiary hearing, this Court asked the parties to provide briefing on two issues. [1]  Below are the two issues and summary answers.

> **Issue No. 1:**  Does Delaware law control for purposes of deciding membership with respect to federal diversity jurisdiction?
>
> **Short Answer No. 1:**  For diversity jurisdiction purposes, applicable state law— here the law of Delaware—controls in determining who are the members of the business entity or association.
>
> **Issue No. 2:**  As a matter of Delaware law, can Divya Narendra be deemed a member of ConnectU LLC as of September 2, 2004 because of a later executed Operating Agreement?

---

[1]  ConnectU's Post-Hearing Brief in Compliance with the Court's October 25, 2006 Order goes well beyond the Court's narrow inquiry into two questions affecting the subject matter jurisdiction of this case and also argues: (a) what ConnectU contends was the evidence proven at the hearing (Post-Hearing Brief at 8-11); (b) what ConnectU believes was the effect of statements made in the California case (*id.* at 11-12); (c) what was the nature of ConnectU's business records (*id.* at 12-13); (d) whether there are alleged inconsistencies in Facebook's positions with respect to others raised in its Motion to Dismiss (*id.* at 13-15); and (e) what is ConnectU's position concerning the possibility of conversion of HarvardConnection into ConnectU LLC (*id.* at 17-18).  Facebook objects to all such matters addressed by ConnectU's brief as going beyond the scope of the two questions the Court actually requested be briefed.  However, Facebook is willing to provide supplemental briefing on any of ConnectU's extraneous issues should this Court so require.

OHS West:260134913.2

**Short Answer No. 2:** The Delaware Limited Liability Company Act explicitly allows a later executed Operating Agreement to be effective from the date of formation. Pursuant to ConnectU LLC's Operating Agreement, Divya Narendra has been a member of the LLC since April 6, 2004.

One other court has addressed these issues and has resolved them in favor of Defendants' position in this case. *See 611, LLC v. US Lubes, LLC*, 2006 WL 2038615 (D. Md. July. 18, 2006). This case, as well as a more detailed analysis, follows. For the reasons stated herein, dismissal is warranted.

## II.    FACTS

The following facts are not in dispute. On April 6, 2004, ConnectU LLC filed its certificate of formation with the Delaware Secretary of State. *See 10/24/06 Pl. Ex. 38.* As is permitted by Delaware law, the members of ConnectU LLC on August 5, 2005 executed a written operating agreement governing the rights and obligations of the entity. *10/24/06 Pl. Ex. 43.* That Operating Agreement specifically indicates that it is governed by Delaware law. *Id.* at § 14.11 (C011331). *See also Id.* at C011287 (definition of "Act").

Several other provisions of the Operating Agreement unambiguously reflect that the members of the LLC, including Divya Narendra, intended to be bound by its terms effective as of April 6, 2004. Specifically, on the first page of the Operating Agreement under the title "Limited Liability Company Operating Agreement of ConnectU, LLC" it explicitly states that it is "Dated as of April 6, 2004." *See Id.* at C011285. This sentiment is repeated on the second page, in the first paragraph, where the Agreement indicates that, "This LIMITED LIABILITY COMPANY OPERATING AGREEMENT, ***is intended to be effective as of April 6, 2004 . . . of CONNECTU, LLC . . . by and among Cameron Winklevoss, . . . Tyler Winklevoss . . . Howard Winklevoss, . . . and Divya Narendra***. *Id.* at C011286 (emphasis added). Notably, the Operating Agreement defines "Agreement Date" to have "the meaning set forth in the

preamble," or April 6, 2004.  *Id.* at C011287.

Further, Divya Narendra, Cameron Winklevoss, Tyler Winklevoss and Howard Winklevoss are defined in the Operating Agreement to be "Founding Members."  *Id.* at C011291.  Founding Members are distinct from other types of individuals defined by the Operating Agreement, such as an "Assignee" who is not admitted as a Member, or a "Substitute Member" who is an assignee that "has been admitted to all rights of membership pursuant to this Agreement."  *See Id.* at C011288-89, C011296.  Moreover, the referenced Schedule A provides a break-down of capital contributions of each Founding Member, with Divya Narendra attributed a five (5) per cent equity stake.  *Id.* at C011335.

Similarly, the Operating Agreement contemplates that it will be effective for the "Fiscal Year" ending on December 1, 2004 (*see Id.* at C011291) – a fact which ultimately proved to be true when ConnectU filed their Federal income tax returns for 2004 naming, among others, Divya Narendra as a Member.  *See 10/25/06 Pl. Ex. 47.*  The Operating Agreement states that it is "the full and entire understanding between the parties with regard to the subjects hereof" *10/24/06Pl. Ex. 43* at C011330, § 14.1), and  indicates that because it includes "legally binding provisions," all signatories have "had the opportunity to consult with her lawyer of her or her own choice."  *Id.* at C011331 (§ 14.15).  Finally, on the last page of the Operating Agreement bearing the members' signatures, the plain language provides that each executing member, "confirms receipt and acceptance of the terms and conditions of this Agreement, which is to be duly executed ***as of the effective date of the Company's incorporation***," or April 6, 2004.  *Id.* at C011334.

III.    **ARGUMENT**

    A.    **CONNECTU LLC HAS THE BURDEN OF PROOF REGARDING SUBJECT MATTER JURISDICTION**

As ConnectU is the party seeking to involve this Court's jurisdiction, it bears the burden of **disproving** Divya Narendra was a Member of the LLC as of September 2, 2004, as stated in the Operating Agreement. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994) ("Federal courts are courts of limited jurisdiction. . . . It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction."); *Carbine v. Xalapa Farm Ltd. Partnership*, 980 F. Supp. 860, 862 (E.D. La. 1997) ("Because the Partnership is the party seeking to invoke this Court's jurisdiction, it bears the burden of disproving that plaintiff and her brothers are limited partners"). ConnectU has failed to meet its burden.

    B.    **DELAWARE LAW CONTROLS FOR THE PURPOSE OF DECIDING FEDERAL DIVERSITY JURISDICTION**

        1.    **It Is Hornbook Law that State Law Controls in Determining Diversity for Artificial Entities**

ConnectU incorrectly argues that state law does not control when determining citizenship of a fictional entity. *See* ConnectU's Post-Hearing Brief, at 2-4. The law is well-settled that courts must look to the law of the state where a fictitious entity was established to determine membership/partnership for purposes of diversity jurisdiction.

"[I]n order to determine the citizenship of a state-created entity for purposes of determining whether diversity exists, ***federal courts have relied upon applicable state law***." *Kier Bros. Investments, Inc. v. White,* 943 F. Supp. 1, 3-4 (D.D.C. 1996) (emphasis added; holding that under North Carolina statutes governing partnerships, a particular individual was a limited partner of the plaintiff whose presence destroyed diversity jurisdiction). *See also*

OHS West:260134913.2

W. Schwarzer, *et. al.*, *California Practice Guide: Federal Civil Procedure Before Trial* ¶ 2:322.2 (2006) (stating that courts look to state law to determine who are members of a business entity with respect to diversity jurisdiction) citing *Schiavone Const. Co. v. City of New York*, 99 F.3d 546, 548 (2d Cir. 1996));  15 James Wm. Moore, et al., *Moore's Federal Practice* § 102.57[1] (3d ed. 2006) ("A person's status as a partner [for purposes of diversity jurisdiction] is determined under the law of the state that governs the partnership agreement").

        This rule is the logical extension of the Supreme Court's decision in *Carden v. Arkoma Assoc.*, 494 U.S. 185, 192-196 (1990).  *Carden* held that to determine the citizenship of a partnership for purposes of diversity jurisdiction, the court must look to the citizenship of all partners, limited and general.  The court specifically recognized that "[t]he 50 states have created, and will continue to create, a wide assortment of artificial entities possessing different powers and characteristics, and composed of various classes of members with varying degrees of interest and control." *Id.* at 197.  *See also Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).  Because all of the entities mentioned by the court are fictitious, the "varying degrees of interest and control" necessarily must be determined by state statute and applicable law.  *cf. People of Puerto Rico v. Russell & Co.*, 288 U.S. 476, 480-81 (1933) (looking to the rights and obligations established by Puerto Rico's Civil Code to determine that a *sociedad en comandita* should be treated like a corporation for purposes of diversity jurisdiction, rather than a partnership or other unincorporated association);  *Moor v. County of Alameda*, 411 U.S. 713, 717-722 (1973) (directing courts to look to state law to determine whether political subdivisions are, or are not, "alter egos" of the state for purposes of determining whether diversity jurisdiction exists);  *Indiana Port Comm'n v. Bethlehem Steel Corp.*, 702 F.2d 107, 109-110 (7th Cir. 1983) (holding that Indiana Port Commission was an independent political subdivision from the state of Indiana

whose presence did not destroy diversity jurisdiction, and noting that "[t]he *alter ego*' status of a
political subdivision is generally determined by examining state law").

Several other courts in contexts analogous to the present case have applied state law to
determine whether diversity jurisdiction existed with respect to a fictitious entity.  For example,
in *611, LLC v. U.S. Lubes, LLC,* 2006 WL 2038615, at *2-*6 (D. Md. Jul. 18, 2006), the court
applied Delaware law and looked to the terms of an Operating Agreement to determine who
were members of an LLC for purposes of diversity jurisdiction.  Likewise, in *Carbine*, 980 F.
Supp. at 862-64, the court applied Kentucky law and the terms of a partnership agreement to
determine that the daughter of one of the partnership's partners had satisfied all of the
requirements to become a partner, thus destroying diversity jurisdiction.  *See also Schiavone
Const. Co.*, 99 F.3d at 548-50 (evaluating New Jersey's statutes governing joint ventures to
conclude no diversity jurisdiction existed); *Int'l Paper Co. v. Denkmann Assoc.,* 116 F.3d 134,
136-37 (5th Cir. 1997), (holding that a partner in a partnership whose interest was not recorded
pursuant to Louisiana law nonetheless was a partner for purposes of diversity jurisdiction,
because the failure to comply with state registration requirements did not invalidate the partner's
interest); *Kier Bros.,* 943 F. Supp. at 3-4 (D.D.C. 1996) (holding that a Maryland resident
remained a partner under North Carolina partnership law at the time a diversity suit was filed);
*United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.,* 907 F. Supp. 663, 668-71 (S.D.N.Y. 1995)
(holding that the estate of a deceased partner was not a substituted limited partner in defendant
partnership because the applicable New York Partnership Law statute and  partnership
agreement's requirements for substitution were not met).[2]

---

[2] Courts have likewise held that courts should look to state statutes governing corporations to
determine if a dissolved corporation is "extant" at the time of a diversity action so as to be
permitted to bring suit.  *See Ripalda v. Am. Operations Corp.*, 977 F.2d 1464, 1468-69 (D.C. Cir.

### C.     DIVYA NARENDRA IS DEEMED A MEMBER OF CONNECTU LLC AS OF SEPTEMBER 2, 2004

#### 1.     The LLC's Operating Agreement Governs Admission of Members

ConnectU's Operating Agreement states that it is governed by Delaware law, particularly the Delaware Limited Liability Company Act. *See 10/24/06 Pl. Ex. 43* at C011287 (definition of "Act") & C011331 (§ 14.15). The Delaware LLC Act provides that a later executed operating agreement can be made effective from the date of formation. As recited in the Delaware Code:

> (d) A limited liability company agreement may be entered into either before, after, or at the time of the filing of the certificate of formation and, whether entered into before, after or at the time of such filing, ***may be made effective as of the formation of the limited liability company*** or at such other time or date as provided in the limited liability company agreement.

6 Del. Code Ann. § 18-201(d). ConnectU fully concedes that pursuant to this statute, "an operating agreement [may] be made effective as of the formation of the limited liability company." *See* ConnectU's Post-Hearing Brief, at 3.

The Operating Agreement contemplated by the Act is the cornerstone of a Delaware LLC. The Operating Agreement constitutes the entire agreement among the members with respect to the members' rights, including the admission of members. *Walker v. Resource Dev. Co. Ltd., LLC,* 291 A.2d 799, 813 (2000) (quoting *Elf Atochem North America, Inc. v. Jafari*, Del Supr., 727 A.2d 286, 291 (1999)). As stated by the Delaware Supreme Court, "[t]he basic approach of the Delaware [LLC] Act is to provide members with broad discretion in drafting the [Operating] Agreement and to furnish default provisions ***when the members' agreement is silent***." *Id.* (emphasis added). Where the parties have taken the time to memorialize the rules

---

1992) ("Thus, despite having already been dissolved for other purposes, under Delaware law AOC continued in existence at the time this action was filed"); *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528-29 (7th Cir. 2002) (permitting what it called "retroactive reinstatement" to confer diversity jurisdiction where the corporate charter of one of the defendants had been

by which the company's business affairs are to be conducted and the members exercise their contractual freedom in their limited liability company agreement, they can be virtually certain that the agreement will be enforced in accordance with its terms. *Walker,* 291 A.2d at 813.

Nonetheless, ConnectU incorrectly argues that the unambiguous statements in its Operating Agreement concerning Divya Narendra's "founding" membership as of April 6, 2004 should be ignored and that instead only the individuals who contacted the Delaware Secretary of State to receive the certificate of formation should be deemed the LLC's original members. *See*, *e.g.*, ConnectU's Post-Hearing Brief, at 8-11. ConnectU also incorrectly argues that membership should be determined under Delaware Code § 18-301(a), and that the LLC Operating Agreement does **not** establish the terms of initial membership even if it says it does. *See* ConnectU's Post-Hearing Brief at 6-9. Section 18-301(a) does not help ConnectU, because consistent with that provision Divya Narendra did not become a member when he executed the Operating Agreement, but merely confirmed that he already was a member as of April 6, 2004, as expressed in the very terms of the Operating Agreement. ConnectU's argument thus is incorrect as a matter of law. *See also In Re Grupo Dos Chiles, LLC*, 2006 Del. Ch. Lexis 54, *8 (2006) (holding that the LLC's operating agreement rather than the certificate of formation identify who were the members of an LLC, because the certificate of formation was deemed **not** to be controlling under Delaware law on the issue of membership, whereas the Operating Agreement was considered the more formal recitation of the parties' intent).

### 2.    The *611, LLC* Case is Persuasive Authority

A recent district court decision addressing the effect of Delaware's on limited liability corporations, *611, LLC,* 2006 WL 2038615, is instructive. In *611, LLC* (a case cited by ConnectU for a different purpose), the court looked to the terms of the relevant operating

---

revoked prior to suit, but reinstated following the institution of the action). *Id.*

agreement of a limited liability company to determine whether a particular member was a member for purposes of diversity jurisdiction. In that regard, the *611, LLC* court held that the determination of membership for purposes of both Delaware law and diversity jurisdiction is to be largely gleaned from the Operating Agreement itself. *See also In Re Grupo Dos Chiles, LLC,* 2006 Del. Ch. Lexis 54, *8 (holding that the LLC's operating agreement rather than the certificate of formation identify who were the members of an LLC, because the certificate of formation was deemed not to be controlling under Delaware law on the issue of membership, whereas the Operating Agreement was considered the more formal recitation of the parties' intent).

The *611, LLC* case involved a dispute between two LLCs originating in a dissolution/self-dealing disagreement, where the Defendant LLC removed the action alleging diversity jurisdiction existed, even though the plaintiffs alleged they were "substitute members" of the Defendant LLC according to the Operating Agreement. The question the court faced was whether two of the plaintiffs were Substitute Members rather than mere Assignees within the meaning of the Operating Agreement at the time of filing, in which case complete diversity would not exist between the parties. Because it deemed the plaintiffs' status to be "ambiguous," the Maryland District Court evaluated the facts and circumstances of the parties' conduct in light of the definitions in the Operating Agreement and their behavior before and after the litigation arose to conclude that the two plaintiffs were, in fact, substitute members of the Defendant LLC whose presence destroyed diversity. *Id.* at *4 - *6.

In resolving the ambiguity related to membership under the Operating Agreement, the *611, LLC* court also relied upon the parties' tax filings and failure to separate out the plaintiffs' capital contributions from the other members as evidence of their intent regarding membership.

*611, LLC,* 2006 WL 2038615 at *5 ("had U.S. Lubes considered 611 to be a mere Assignee, it would have separated out 611's capital from this category"; "[i]n addition, the plaintiffs have presented tax documents filed by U.S. Lubes which refer to 611 as a member"). The court also found it relevant that the Defendant only changed its position on the issue of who was and was not a member as a result of the litigation. *Id.* ("While no individual instance constitutes ironclad proof, together they generate persuasive evidence that U.S. Lubes has considered 611 to be a member since Clements' letter and has changed its position only for the purpose of this litigation").

The present case bears many similarities to *611, LLC.* ConnectU made independent representations to the government in its tax filings for 2004 that Divya Narendra was a member of ConnectU LLC from April 6, 2004 to December 31, 2004 – the very same fiscal tax year contemplated by the Operating Agreement. *10/25/06 Pl. Ex. 47.* As demonstrated at the evidentiary hearing, ConnectU changed its position regarding Divya Narendra's membership only after the possibility of dismissal of their case after the First Circuit's decision in *Pramco, LLC,* 435 F. 3d 51.

The case before this Court is even more compelling than *611, LLC* because of some differences. Unlike the situation in *611, LLC,* Divya Narendra's status as a "Founding Member" within the meaning of the Operating Agreement is unambiguous, such that the Operating Agreement is by itself sufficient evidence by itself to conclude Divya Narendra was, as a matter of law, a member of ConnectU on September 2, 2004. However, even if the Court were to find some ambiguity and look beyond the express terms of the Operating Agreement to interpret his status, the same factors noted by the court in *611, LLC* are relevant to the present lawsuit and support Defendants' position. Whether viewed solely in light of the Operating Agreement or in

-10-

light of the conduct of the parties, Divya Narendra was pursuant to Delaware law a member of

ConnectU LLC as of April 6, 2004.

> **3.     ConnectU's Members Are Bound To The Terms Of Its Operating Agreement From April 6, 2004**

Delaware law provides that when a party executes a contract that is effective on a prior

date, the party establishes its contractual obligations as of the prior date and accepts events that

have occurred since that date.  *Sweetman v. Strescon Industries, Inc.,* 389 A.2d 1319, 1322

(1978).  Where there is unambiguous contract language, the determination of what the parties

intended by their contractual commitments is a question of law.  *Colliers Lanard & Axilbund v.*

*Lloyds of London,* 458 F.3d 231, 236 (3d Cir. 2006) ("The construction of an unambiguous

contract is a matter of law and subject to plenary review"); *Nadherny v. Roseland Prop. Co.,* 390

F.3d 44, 48 (1st Cir. 2004) ("Contract interpretation questions, under Massachusetts law, are

ordinarily questions of law for a court …").  Assigning a date to a contract that antedates

execution of a contract, in absence of express language showing contrary intention, makes a

contract effective on the date which the contract bears. *Sweetman v. Strescon Indus., Inc.*, 389

A.2d 1319, 1322 (1978).

This rule has been applied in diversity cases where a dispute exists as to a party's status

as a partner under state law.  In *Carbine,* 980 F. Supp. 860, the court relied on the express terms

of the partnership agreement in determining diversity jurisdiction was lacking, and in doing so

looked to "Kentucky law and to the actual Partnership agreement in deciding whether the

plaintiff and her brothers should properly be considered limited partners."  *Carbine*, 980 F. Supp.

at 863.  The court invoked the following rule: "As a creature of contract, a partnership is defined

by the intent of the parties."  *Id.*  This conclusion applies equally to the present case.  Where, as

here, a comprehensive Operating Agreement exists that defines membership status for purposes

of Delaware's LLC Act, "the court must look first to such agreement as the expression of the

parties' intent and may not look to extrinsic evidence of the parties' intent unless a contract

provision is found to be ambiguous." *Id.*[3]

In one instance, the Operating Agreement Definitions refer to a date other than April 6,

2004.  ConnectU defines "Founding Members" as those "who are Members as of October 1,

2004 and identified on Schedule A to this Agreement." *10/24/06 Pl. Ex. 43.* at C011291. This

reference belies ConnectU's contention that Divya Narendra was only a member beginning from

the date he executed the ConnectU Operating Agreement because  the date referred to,

October 1, 2004, is prior to the date of the members' execution.  No evidence exists of any

change between September 2, 2004 and October 1, 2004 that would have changed Narendra's

status as a founding member of ConnectU LLC.  Rather, the definition memorializes the fact that

Narendra was a Founding Member of ConnectU LLC.

The express terms of the Operating Agreement show no contrary intention that the

executing members be bound to its provisions from ConnectU's incorporation on April 6, 2004.

Accordingly, Delaware's LLC Act, the law interpreting it, and general principles of

contract law all consistently reflect that the ConnectU Operating Agreement can establish that

Divya Narendra was a Member as of April 6, 2004, even though the Operating Agreement was

---

[3] ConnectU LLC's position on the retroactivity of its Operating Agreement calls for dismissal of
its case, retroactive or not.  At the time of the filing of the complaint, ConnectU LLC lacked
standing to sue because it was not the real party in interest, as it did not own the rights to the
Harvard Connection website. The Operating Agreement executed on August 5, 2005 is the only
evidence of assignment of the "founders'" "intellectual property" interests to the LLC.  Given
ConnectU's position that Divya Narendra was not a member until he executed it in
August 2005, ConnectU could not argue that the assignment was retroactive to April 2004
without contradiction.   If the Agreement was not retroactive, Facebook is prepared to argue that
Divya Narendra is an indispensable party to this action.  Where several persons contract as joint
venturers with another, each is an indispensable party in an action to enforce the contract.

OHS West:260134913.2

executed on August 5, 2005.[4]

**4.      The Existing Sham Exception In Diversity Citizenship Jurisprudence Is Fully Sufficient to Address Any Concerns Regarding Abuse Of This Proposed Rule**

ConnectU cites to 28 U.S.C. Section 1359 to support its position.  However, Section 1359

supports Defendants, not ConnectU LLC.  That Section, which denies federal jurisdiction where

a party, "by assignment or otherwise, has been improperly or collusively made or joined" to

invoke the jurisdiction of the federal courts, as well as the ample case law which has interpreted

that statutory section, provides a more than sufficient basis for a court to address any sham

devices to manufacture diversity jurisdiction in a particular case.  See 28 U.S.C. § 1359; *see also*,

*e.g.*, *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640 (1st Cir. 1995) (affirming dismissal for lack

of diversity jurisdiction under Section 1359 where Rhode Island corporation was merged into

New York corporation for the purpose of creating diversity jurisdiction); *Airlines Reporting Co.*

*v. S and N Travel*, 58 F.3d 857, 862 (2d Cir. 1995) ("[W]e construe section 1359 broadly to bar

any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."); *Bass v. Texas*

*Power & Light Co.*, 432 F.2d 763 (5th Cir. 1970) (reversing under 28 U.S.C. § 1359 the district

court's ruling that diversity jurisdiction existed in a wrongful death action where an out-of-state

administrator was appointed for the sole purpose of creating diversity of citizenship).   In this

case, ConnectU LLC has engaged in manipulation to try to manufacture jurisdiction, not destroy

it.  In any event, the actions by ConnectU to try to undermine the express language of the LLC

Act create the very sham device forbidden by Section 1359.

---

*Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977).

[4]  Although Defendants have focused in this brief on the effect of the Operating Agreement under Delaware law, they note that there is a wealth of additional evidence introduced at the evidentiary hearing that independently establishes Divya Narendra was a member of ConnectU LLC as of September 2, 2004.  Defendants are prepared to cite that evidence in any further

IV.     **<u>CONCLUSION</u>**

Divya Narendra became a member of ConnectU LLC on April 6, 2004 under the Delaware LLC Act as a matter of law.  ConnectU, LLC drafted its own operating agreement to gain the benefits and protections afforded to it under the Delaware LLC Act and chose to make the agreement effective from April 6, 2004.  Based on the backdated agreement, it has made representations to the government in its tax filings for 2004 that Divya Narendra was a member of ConnectU LLC from April 6, 2004.  ConnectU LLC should not be allowed to selectively choose when Delaware's laws apply to its business affairs.  This Court should follow the well recognized law of applying state law to bind fictitious business entities.  As such, this case should be dismissed for lack of subject matter jurisdiction in a diversity case.

---

supplemental briefing or closing arguments that the Court requests.

OHS West:260134913.2

Dated:  November 30, 2006                    Respectfully submitted,


                                             /s/ I. Neel Chatterjee /s/
                                             G. Hopkins Guy, III*
                                             I. Neel Chatterjee*
                                             Monte Cooper*
                                             Theresa Ann Sutton*
                                             ORRICK, HERRINGTON & SUTCLIFFE LLP
                                             1000 Marsh Road
                                             Menlo Park, California  94025
                                             Telephone:    (650) 614-7400
                                             Facsimile:    (650) 614-7401
                                             hopguy@orrick.com
                                             nchatterjee@orrick.com
                                             mcooper@orrick.com
                                             tsutton@orrick.com

                                             Steven M. Bauer
                                             Jeremy P. Oczek
                                             PROSKAUER ROSE, LLP
                                             One International Plaza, 14th Floor
                                             Boston, MA 02110-2600
                                             Telephone:     (617) 526-9600
                                             Facsimile:     (617) 526-9899
                                             sbauer@proskauer.com
                                             joczek@proskauer.com

                                             * Admitted Pro Hac Vice

OHS West:260134913.2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on November 30, 2006.

Dated:  November 30, 2006.                              Respectfully submitted,

                                                                        /s/ I. Neel Chatterjee /s/
                                                                        I. Neel Chatterjee

OHS West:260134913.2