**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, <br><br>     Plaintiff, <br><br>  v. <br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, FACEBOOK, INC., <br><br>     Defendants. | Civil Action No. 1:04-cv-11923 (DPW) <br><br> District Judge Douglas P. Woodlock <br><br> Magistrate Judge Robert B. Collings |
| MARK ZUCKERBERG and FACEBOOK, INC., <br><br>     Counterclaimants, <br><br>  v. <br><br>CONNECTU LLC, <br><br>     Counterdefendant, <br><br>  and <br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, <br><br>     Additional Counterdefendants. | |

**PLAINTIFF'S REPLY TO FACEBOOK DEFENDANTS' AND SAVERIN'S OPPOSITIONS TO POST-HEARING BRIEF IN COMPLIANCE WITH THE COURT'S OCTOBER 25, 2006 ORDER**

**TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ....................................................................................................................... 1

    A. The Time-Of-Filing Rule Controls ............................................................................ 1

    B. Divya Narendra Was Not A Member On the Filing Date ......................................... 3

    C. 28 U.S.C. § 1359 Does Not Support Defendants' Arguments ................................... 4

    D. The Delaware LLC Act Must Be Applied ................................................................. 5

    E. Defendants' Cases Apply the Time-of-Filing Rule .................................................... 6

    F. There Is No Risk Of Infringing The Rights Of State Courts ..................................... 7

III. CONCLUSION .................................................................................................................... 7

## TABLE OF AUTHORITIES

### FEDERAL CASES

*611, LLC v. U.S. Lubes, LLC*,
   Civil No. CCB-05-3417, 2006 U.S. Dist. LEXIS 52727 (D. Md. July 18, 2006) ...................6

*Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*,
   688 F.2d 76 (1st Cir. 1982)..........................................................................................7

*Carbine v. Xalapa Farm Ltd. Partnership*,
   980 F. Supp. 860 (E.D. La. 1997)................................................................................7

*Duffy v. Sarrault*,
   702 F. Supp. 387 (D.R.I. 1988).....................................................................................2

*Federal Deposit Insurance Corp. v. Elefant*,
   790 F.2d 661 (7th Cir. 1986) ........................................................................................1

*Freeport-McMoRan, Inc. v. K N Energy, Inc.*,
   498 U.S. 426 (1991).....................................................................................................4

*Grupo Dataflux v. Atlas Global Group, L.P.*,
   541 U.S. 567 (2004).....................................................................................................1

*Mercer v. Brunt*,
   99 F. Supp. 2d, 21 (D. Conn. 2004)..............................................................................1

*Railway Co. v. Whittons*,
   80 U.S. 270 (1871).......................................................................................................2

*Rosado v. Wyman*,
   397 U.S. 397 (1970).....................................................................................................1

*Wild v. Subscription Plus, Inc.*,
   292 F.3d 526 (7th Cir. 2002), cited by Defendants ..............................................6, 7

### STATE CASES

*In Re Grupo Dos Chiles, LLC, No. Civ. A. 1447-N*,
   2006 Del. Ch. LEXIS 54 (Del. Ch. Mar. 10, 2006).....................................................5

### FEDERAL STATUTES

28 U.S.C. § 1332................................................................................................................1

28 U.S.C. § 1359................................................................................................................4

## DELAWARE STATUTES

6. Del. Code. Ann. § 18-301 ...............................................................................................3, 5

6. Del. Code. Ann.  § 18-301(a)(2004) ....................................................................................5

## I.    INTRODUCTION

Subsequent events do not confer or destroy jurisdiction.  In its August 24, 2006 Order, this Court recognized that "subsequent action of the parties cannot alter the state of the facts as they existed on the pertinent date." (Dkt. 230 at 7-8).  The Court was following U.S. Supreme Court precedent, e.g., *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 580 (2004).  Facebook Defendants even argued this basic rule in their Motion to Dismiss (Dkt. 100 at 10), where they cited *Federal Deposit Ins. Corp. v. Elefant*, 790 F.2d 661, 667 (7th Cir. 1986), for the proposition that "something that happened later" is insufficient to affect federal jurisdiction.

As a post-filing event, ConnectU LLC's Operating Agreement can no more reach back and destroy diversity by retroactive application than it could create it if the facts were reversed.  To assess diversity, the Court must step back in time to September 2, 2004 and apply Delaware law to the facts as they existed on that date, as outlined in ConnectU's Post Hearing-Brief.  (Dkt. 255 at 6-11).  The later-signed Operating Agreement is therefore totally irrelevant to such inquiry, yet that is all Defendants discussed in their post-hearing briefs.  The only relevance of the Operating Agreement is to the issue of whether a retroactive agreement can affect federal diversity jurisdiction.  It cannot, for the reasons set forth in Plaintiff's Post-Hearing Brief (Dkt. 255 at 1-6), and any arguments Defendants offer to the contrary cannot be right, as further discussed below.

## II.    ARGUMENT

### A.    The Time-Of-Filing Rule Controls

The time-of-filing rule is a manifestation of the federal diversity statute, 28 U.S.C. § 1332, and is based on numerous U.S. Supreme Court decisions (*see* this Court's August 24, 2006 Order, Dkt. 230 at 7-8, and ConnectU's Post-Hearing Brief, Dkt. 255 at 2).  It is *stare desisis*.  Supreme Court decisions are mandatory authority for district courts. *Mercer v. Brunt*, 99 F. Supp. 2d 21, 28 (D. Conn. 2004).

In this case, state law determines Plaintiff's Members, but in the event of a conflict between state law and the federal time-of-filing rule, the federal rule must govern.  As ConnectU

1

said in its Post-Hearing Brief, "A limited liability company agreement and Delaware law cannot possibly have the power to trump federal law and affect the jurisdiction of federal courts." (*See* ConnectU's Post-Hearing Brief, Dkt. 255 at 2-4). The cases cited by ConnectU, *Duffy v. Sarrault*, 702 F. Supp. 387, 394 (D.R.I. 1988), and *Railway Co. v. Whittons*, 80 U.S. 270, 286 (1871), are not inapposite to this issue, as Saverin argued (Dkt. 265 at 12, n.4). These cases stand for the proposition that the enforcement of a right in federal court is "not subject to state limitation." *See Railway*, 80 U.S. at 286. Even if the relevant state law is only a component of the diversity analysis, as Saverin argued (Dkt. 265 at 12, n. 4), the effect of applying the Operating Agreement retroactively would be to change federal jurisdiction on the filing date. But here there is no conflict if the Court follows the time-of-filing rule and applies Delaware law to the facts as they existed on September 2, 2004.

  As acknowledged by Saverin, the purpose of the time-of-filing rule is to provide courts with a bright-line rule to minimize litigation. (Dkt. 265 at 8). Saverin proposes a "new rule" (Dkt. 265 at 10-11) that would allow "the terms of an LLC agreement which are given effect by state law to determine membership of an LLC in the diversity" analysis. (Dkt. 265 at 9). However, contrary to Saverin (*id.*), such a rule would not promote certainty and clearly demonstrates why a retroactive LLC agreement cannot be used to determine membership at the time a Complaint was filed. If later-executed documents can be used to determine diversity, there will be no "quick and easy way to address the situation." To the contrary, to determine diversity on the filing date the parties -- plaintiffs and defendants -- will need a crystal ball to foresee any future contracts on either side that may retroactively change diversity-determining facts existing on the filing date. In this action, the Operating Agreement could not be "exchanged," as Saverin suggests, because it did not exist. The parties could not have followed Saverin's proposed procedure until almost a full year after the filing date. On the filing date, ConnectU LLC did not know who its Members would be 11 months later, or even if the Operating Agreement would be retroactive. Thus, under Saverin's Crystal Ball Rule, ConnectU LLC could not have known on the filing date if diversity existed or not.

### B. Divya Narendra Was Not A Member On the Filing Date

The Operating Agreement also cannot be viewed as memorializing ConnectU LLC's membership on the filing date. Contrary to Defendants (Dkt. 266 at 8; Dkt. 265 at 2), there is no evidence that the Operating Agreement confirmed that Divya Narendra was already a Member as of April 6, 2004 or at any time between that date and September 2, 2004. The Operating Agreement does not say so, and Defendants have provided no support for that position. (*See* Dkt. 266 at 8). Defendants also must be wrong because their argument begs the question: How and when did Mr. Narendra become a Member on or before September 2, 2004, under Delaware law? ConnectU addressed this issue. Defendants have not, and cannot.

Additionally, the fact that another date is referred to in the Operating Agreement (i.e., October 1, 2004, for "Founding Members") does nothing to strengthen Defendants' position. (*Id.* at 12.) Nothing in Facebook Defendants' argument -- or in reality -- precludes what actually happened: Divya Narendra was retroactively declared a "Founding Member" as of October 1, 2004 when the Operating Agreement was signed. There is no evidence to the contrary. Applying § 18-301 on the filing date, there is no evidence in ConnectU LLC's pre-Operating Agreement business records, or elsewhere, that Divya Narendra had been admitted as a Member on or before that date, or before the Operating Agreement was signed, as Defendants effectively conceded by ignoring the issue and applicable Delaware law (*see* ConnectU's Post-Hearing Brief, Dkt. 255 at 12-13). As ConnectU observed, Facebook Inc. made precisely that argument in the California litigation. (Dkt. 255 at 11-12).[1]

Viewing the ConnectU Operating Agreement as a memorialization of ConnectU's membership on the filing date also would be inconsistent with related facts. The Operating Agreement also made Howard Winklevoss a Member. Like Divya Narendra, Howard Winklevoss was not named as a Member in any ConnectU business records until the Operating

---

[1] Defendants should not have ignored any issues raised by ConnectU. The Court did not limit the legal issues the parties could brief (Hearing Transcript, 10/25/06, Dkt. 263 at II-107-114). Together Defendants had 10+ available pages, but they chose silence on the most important issues.

Agreement was signed. Not even Defendants could seriously contend that Howard Winklevoss was a Member prior to signing the Operating Agreement, yet the Operating Agreement makes Howard Winklevoss a Member retroactively to ConnectU's formation and a Founding Member retroactively to October 1, 2004. Thus, the Operating Agreement cannot be viewed as a reliable statement of ConnectU's membership on the filing date.

### C. 28 U.S.C. § 1359 Does Not Support Defendants' Arguments

Defendants have still not addressed ConnectU's repeated argument that just as an LLC agreement cannot reach back to *create* diversity where none existed, it cannot reach back and *destroy* diversity by retroactive application, regardless of what Delaware law -- or any state's law -- may say. (*See* ConnectU's July 13, 2006 Brief, Dkt. 212 at 1-2; ConnectU's Post-Hearing Brief, Dkt. 255 at 1). Defendants repeatedly ignore this argument because it is unanswerable.

Defendants' argument that the sham exception to 28 U.S.C. § 1359 will prevent any abuse of Saverin's Crystal Ball Rule (Dkt. 265 at 10-11; Dkt. 266 at 13) cannot be the answer.[2] Defendants' cases find that the parties' actions were solely for the purpose of creating diversity and therefore shams. (Dkt. 265 at 10-11; Dkt. 266 at 13). But it is entirely possible that parties would have legitimate reasons to make post-filing, retroactive Member changes that would -- incidentally-- also affect diversity. *See Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428-429 (1991) (diversity jurisdiction persisted despite introduction of nondiverse party; contrary rule could deter normal business transactions during pendency of litigation). Assuming that an LLC might have legitimate business reasons to change its Members retroactively, and such retroactive changes create (or destroy) diversity at the time of filing where it had not (or had) existed on that date, the time-of-filing rule would be violated.

### D. The Delaware LLC Act Must Be Applied

---

[2] Contrary to Defendants, ConnectU has not "boldly taken contradictory positions in different legal proceedings." (Dkt. 265 at 10, *see also* Dkt. 266 at 10, 13) In this case, ConnectU **never** argued that Divya Narendra was a Member prior to August 5, 2005. The individual defendants took a legal position in the California case, based on a retroactive Operating Agreement that did not exist when ConnectU LLC filed the Complaint in this case.

4

Defendants go to great lengths to argue the undisputed point that Delaware law applies to the determination of membership (*see* Dkt. 265 at 5-8; Dkt. 266 at 4-6), yet somehow Defendants neglect to actually apply it.  Defendants cite very few Delaware cases, or even cases applying Delaware law.  Defendants even brushed aside § 18-301 of the Delaware LLC Act (Dkt. 266 at 8, Dkt. 265 at 5).  This is quite amazing.  The purpose of § 18-301 is precisely to resolve the issue before the Court, i.e., the limited ways in which a person may become a Member of a Delaware LLC.[3]

All of Defendants' analysis pertains to interpreting an agreement that did not exist at the relevant time.  Thus, the argument that "Divya Narendra was a member of ConnectU LLC on the date this action was filed because the terms of its Operating Agreement say he was" (Dkt. 265 at 2) cannot win the day.  If it could, the evidentiary hearing would not have been necessary.  In its August 24, 2006 Order (Dkt. 230 at 7), the Court had already dispensed with the arguments that consume Defendants' post-hearing briefs: "[t]he issue to be decided is whether Mr. Narendra was a member of ConnectU on September 2, 2004, the date the complaint was filed.  When considering this question, the "time-of-filing rule" controls, not the language of a later executed contract."  But of course Defendants took this tack.  They have no other argument and cannot prevail if they even admit that § 18-301 applies.

As discussed in great detail in ConnectU's Post-Hearing Brief (Dkt. 255 at 6-12), under the Delaware Limited Liability Act a Member is a person who has been admitted as provided in § 18-301.  (Dkt. 255 at 6).  Therefore, this Court must determine, by applying § 18-301 on the filing date, if Divya Narendra was admitted as a Member as of September 2, 2004.  Contrary to Defendants, ConnectU is not trying to create a "federal common law governing the internal

---

[3] Facebook Defendants say that ConnectU "incorrectly argues that membership should be determined under Delaware Code § 18-301(a)" (Dkt. 266 at 8), but does not say why § 18-301 does not apply.  In addition, they argue that the Operating Agreement establishes initial membership, citing *In Re Grupo Dos Chiles, LLC*, 2006 Del. Ch. Lexis 54 (Del. Ch. Mar. 10, 2006).  However, as discussed in ConnectU's Post-Hearing Brief (Dkt. 255 at 16-17), *Grupo Dos Chiles* does not discount that in the absence of an LLC agreement, the Certificate of Formation may be used to glean membership.  Since ConnectU did not have an LLC agreement at the time of filing, initial membership may therefore be gleaned from the relevant details of obtaining the Certificate of Formation.

affairs of state-created judicial entities" or arguing that state law does not control membership on the filing date (*see* Dkt. 265 at 15; Dkt. 266 at 4). Nor is ConnectU suggesting, as Saverin has, any new rules or procedures. If the Operating Agreement had existed at the time of filing, and if it stated that it was retroactive in any manner, it would been given effect, as permitted by Delaware law. But it didn't exist, so it is irrelevant to the application of § 18-301.

### E. Defendants' Cases Apply the Time-of-Filing Rule

The numerous cases cited by Defendants in support of the notion that state law should be applied to determine membership fully support the time-of-filing rule and ConnectU's argument. (Dkt. 265 at 5-10; Dkt. 266 at 4-7). In all of the cases cited by Defendants the court was analyzing the facts at the time of filing. In stating that "[i]n each of the foregoing cases, the court relied solely upon state law to determine the 'state of facts that existed at the time of filing,'" Saverin acknowledges as much. (Dkt. 265 at 8).[4]

For example, in *611, LLC v. U.S. Lubes, LLC*, Civil No. CCB-05-3417, 2006 U.S. Dist. LEXIS 52727 (D. Md. July 18, 2006), which Facebook Defendants argue is instructive (Dkt. 266 at 8), the court was not analyzing a retroactive agreement. The court based the diversity decision purely on the jurisdictional facts as they existed at the time of filing.

No court has addressed the precise issue of whether a retroactive LLC agreement can affect diversity. (*See* Saverin's Brief, Dkt. 265 at 12). And in fact, courts have not relied on retroactivity to determine the status of a business entity at the time of filing. In *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002), cited by Defendants, the court recognized that allowing retroactive reinstatement to confer jurisdiction would be contrary to the time-of-filing rule. However, it found that because state law permitted a corporation whose charter has been revoked to continue to operate as a corporation for purposes of suing and being sued, the time-of-filing rule would not be violated by retroactive reinstatement because such

---

[4] Facebook Defendants (Dkt. 266 at 4) and Saverin (Dkt. 265 at 16) also say ConnectU argues that state law does not control the determination of citizenship. ConnectU applied Delaware law -- at length -- to show that Divya Narendra was not a Member on September 2, 2004. Citizenship was not an issue.

6

reinstatement would not change diversity on the filing date. *Id.* That Oklahoma also had a statute making reinstatement of a corporation's charter retroactive was merely "icing on the cake." *Id.* at 529.

Facebook Defendants also seem to argue (Dkt. 266 at 11) that *Carbine v. Xalapa Farm Ltd. Partnership*, 980 F. Supp. 860 (E.D. La. 1997), applied an agreement retroactively to determine partners for diversity purposes. To the contrary, the court in *Carbine* relied on a partnership agreement that was executed over a year before the lawsuit was filed. *Id.* at 861.

### F.    There Is No Risk Of Infringing The Rights Of State Courts

Saverin argues that this case should be dismissed because courts are "bound to construe the statutory requirements of complete diversity strictly against federal jurisdiction so as not to infringe the rights of state courts."[5] This consideration is not relevant here because this case will simply be refiled in this court if it is dismissed. Today, there is both complete diversity and a federal question.[6] (*See* ConnectU's Supplemental Brief, Dkt. 181, Ex. A, at 17-19).

### III.    CONCLUSION

For the reasons set forth herein, ConnectU respectfully urges the Court to find that Divya Narendra had not been admitted as a Member of ConnectU LLC by September 2, 2004 and that diversity existed when the original Complaint was filed. Therefore, ConnectU respectfully urges the Court to recommend denying Defendants' Motion to Dismiss.

---

[5] The case cited by Saverin, *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 688 F.2d 76 (1st Cir. 1982), does not fully support this proposition. Moreover, the parenthetical is incorrect as *Acton* does not address the issue of removal and remand.

[6] Although Facebook Defendants are now trying to backpeddle (Dk. 266 at 12, n.3), their argument that ConnectU lacked standing to sue must now be dead. (See ConnectU's Post-Hearing Brief, Dkt. 255 at 13-14). Nothing mandates that the founders' assignment of IP rights sufficient for ConnectU LLC to sue, or their intent that ConnectU own such rights on the filing date, must be in writing, and they have testified regarding such undisputed (with facts, not unsupported argument) assignment and intent.

Respectfully submitted,

DATED: December 7, 2006

/s/ John F. Hornick_____
John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Meredith H. Schoenfeld (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Daniel P. Tighe (BBO# 556583)
Scott McConchie (BBO# 634127)
GREISINGER, TIGHE, and
MAFFEI, L.L.P.
Boston, MA  02110
Telephone:  (617) 452-9900
Facsimile:   (617) 452-0900
dtighe@gtmllp.com
smcconchie@gtmllp.com

Attorneys for Plaintiff and Counterclaim Defendants

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December 7, 2006.

/s/ John F. Hornick_____
John F. Hornick

8