UNITED STATES DISTRICT COURT

DISTRICT

OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>         Plaintiff,<br><br> v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES AND THEFACEBOOK, INC.,<br><br>         Defendants. | CIVIL ACTION No.: 1:04-cv-11923 (DPW) |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>         Counterclaimants,<br><br> v.<br><br>CONNECTU LLC, CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>         Counterdefendants. | |

**DEFENDANT EDUARDO SAVERIN'S CORRECTED BRIEF IN RESPONSE TO THE COURT'S OCTOBER 25, 2006 ORDER**

# TABLE OF CONTENTS

Page

INTRODUCTION AND SUMMARY OF ARGUMENT ................................................................2

ARGUMENT ....................................................................................................................................4

I. DELAWARE LAW PERMITTING RETROACTIVITY OF MEMBERSHIP IN LLCS IS FULLY CONSISTENT WITH THE TIME-OF-FILING RULE AND COMPELS THE FINDING THAT NARENDRA WAS A MEMBER OF CONNECTU LLC AT THE TIME OF FILING FOR PURPOSES OF THE DIVERSITY OF CITIZENSHIP ANALYSIS..............................................................................4

   A. Delaware Law Gives Legal Effect To The Retroactive Terms Of LLC Agreements............................................................................................ 4

   B. State Law Has Been Consistently Held To Govern The Determination Of Citizenship Of Juridical Entities For Purposes Of The Diversity Jurisdiction Analysis. ........................................ 5

   C. Determining An LLC's Membership Under State Law, Even If Retroactive, Is Fully Consistent With The Underlying Policy Of The "Time-Of-Filing" Rule. ..................................... 8

   D. The Existing Sham Exception In Diversity Citizenship Jurisprudence Is Fully Sufficient To Address Any Concerns Regarding Abuse Of This Proposed Rule. ................................. 10

II. EVEN IF THERE WERE A CONFLICT BETWEEN THE TIME-OF-FILING RULE AND DELAWARE LLC LAW, DELAWARE LLC LAW SHOULD SUPPLY THE RULE OF DECISION. ..................................................11

CONCLUSION................................................................................................................................17

TABLE OF CONTENTS.................................................................................................................. I

TABLE OF AUTHORITIES ...........................................................................................................II

# TABLE OF AUTHORITIES

Page

**CASES**

*611 LLC v. U.S. Lubes, LLC*,
   No. CCB-05-3417, 2006 WL 2038615 at *2 (D. Md. Jul. 18 2006) ........................................................5
*Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*,
   668 F.2d 76 (1st Cir. 1982) ........................................................................................................11
*Airlines Reporting Co. v. S and N Travel*,
   58 F.3d 857 (2d Cir. 1995) ........................................................................................................10
*American Bankers Ins. Co. v. Maness*,
   101 F.3d 358 (4th Cir. 1996) ....................................................................................................14
*Bass v. Texas Power & Light Co.*,
   432 F.2d 763 (5th Cir. 1970) ....................................................................................................11
*Butner v. United States*,
   440 U.S. 48 (1979) ...................................................................................................................14
*Carbine v. Xalapa Farm Ltd. Partnership*,
   980 F. Supp. 860 (E.D. La. 1997)............................................................................................12
*Carden v. Arkoma Assoc.*,
   494 U.S. 185 (1990) ...................................................................................................................5
*Costain Coal Holdings, Inc. v. Resource Investment Corp.*,
   15 F.3d 733 (7th Cir. 1994) ..................................................................................................7, 12
*Delancey v. Chicago Ins. Co.*,
   No. 04-2355, 2004 WL 2694910 at *2 (E.D.La. 2004)..........................................................6, 7
*Duffy v. Sarault*,
   702 F. Supp. 387 (D.R.I. 1988) ................................................................................................12
*Elf Atochem North America, Inc. v. Jaffari*,
   727 A.2d 286, 291 (Del. 1999)...................................................................................................4
*Erie R. Co. v. Tompkins*,
   304 U.S. 64 (1937) .............................................................................................................13, 16
*Gasperini v. Center for Humanities, Inc.*,
   518 U.S. 415 (1996) .................................................................................................................13
*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) ..........................................passim
*Hoagland v. Sandberg, Phoenix & Van Gontard*,
   385 F.3d 737 (7th Cir. 2004) ......................................................................................................6
*Int'l Paper Co. v. Denkmann Assoc.*,
   116 F.3d 134 (5th Cir. 1997) ......................................................................................................6
*Kier Bros. Investments v. White*,
   943 F. Supp. 1 (D.D.C. 1996)....................................................................................................5
*Massachusetts Diet Drug Litigation*,
   338 F. Supp. 2d 198, 202 (D. Mass. 2004)..............................................................................12
*Mollan v. Torrance*,
   9 Wheat. 537, 6 L.Ed. 154 (1824) .............................................................................................8
*Mudge Rose Guthrie Alexander & Ferdon v. Pickett*,
   11 F. Supp. 2d 449 (S.D.N.Y. 1998) .........................................................................................8
*Newman-Green, Inc. v. Alfonzo-Larrain*,
   490 U.S. 826 (1989) ...................................................................................................................7
*Northwest Airlines, Inc. v. Transport Workers Union*,
   451 U.S. 77................................................................................................................................14
*Old Orchard Bank and Trust Co. v. Rodriguez*,
   654 F. Supp. 108 (N.D. Ill. 1987).............................................................................................15

*O'Melveny & Myers v. F.D.I.C.*,
    512 U.S. 79 (1994) ...................................................................................................................16
*Pramco, LLC v. San Juan Bay Marina, Inc.*,
    435 F.3d 51 (1st Cir. 2006) ........................................................................................................5
*Railway Co. v. Whittons*,
    80 U.S. 270 (1871) ...................................................................................................................12
*Ripalda v. American Operations Corp.*,
    977 F.2d 1464 (D.C. Cir. 1992)..................................................................................................7
*Royal Ins. Co. of America v. Quinn-L Capital Corp.*,
    3 F.3d 877 (5th Cir. 1993) .........................................................................................................6
*S.E.C. v. Elmas Trading Corp.*,
    683 F. Supp. 743 (D. Nev. 1987)..............................................................................................14
*Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell*,
    710 F.2d 87 (2d Cir. 1983) .........................................................................................................6
*Schiavone v. City of New York*,
    99 F.3d 546 (2d Cir. 1996) .........................................................................................................8
*Toste Farm Corp. v. Hadbury, Inc.*,
    70 F.3d 640 (1st Cir. 1995) ......................................................................................................10
*U.S. v. Crown Equipment Corp.*,
    86 F.3d 700 (7th Cir. 1996) ..............................................................................................15, 16
*United National Ins. Co. v. Waterfront N.Y. Realty Corp.*,
    907 F. Supp. 663 (S.D.N.Y. 1995) .............................................................................................6
*United States v. Kimbell Foods Inc.*,
    440 U.S. 715 (1979) .................................................................................................................14
*VKK Corp. v. National Football League*,
    244 F.3d 114 (2d. Cir. 2001) ....................................................................................................15
*Wild v. Subscription Plus, Inc.*,
    292 F.3d 526 (7th Cir. 2002) ........................................................................................... 6, 7, 12

**TREATISES**

6 Del. C. § § 18-1101(b) ....................................................................................................................4
6 Del. Ch. § 18-201(d) .......................................................................................................................5
6 Del. Ch. §§ 18-301(a)(2) and (b)(1) ...............................................................................................5
The Delaware LLC Act (6 Del. C. § § 18-101 et seq.) ......................................................................4

**13**

28 U.S.C. § 1332 ....................................................................................................................... 13, 16
28 U.S.C. § 1359 ....................................................................................................................... 10, 11
Fed. R. Evid. 501 ..............................................................................................................................14
Martin I. Lubaroff & Paul M. Altman, "Delaware Limited Liability Companies," *Delaware Law of Corporations & Business Organizations*, § 20.1 (R. Franklin Balotti & Jesse A. Finkelstein, eds. 1998)..........................4

# 4219473_v3

## INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Eduardo Saverin respectfully submits this post-hearing memorandum in response to the question raised by the Court at the close of evidence on October 25, 2006: whether Delaware law governing the internal affairs of limited liability companies is itself dispositive of the identity of the members of ConnectU LLC ("ConnectU") at the time of filing the Complaint, even if such a rule would give effect to the concept of retroactivity in state law. We respectfully submit that the answer to this question is "yes," as detailed below.

Divya Narendra was a member of ConnectU LLC on the date that this action was filed because the terms of its Operating Agreement say he was, and those very terms are given legal force and effect under Delaware law. The Delaware Limited Liability Company Act, consistent with its policy goals of freedom of contract and of enforceability of LLC agreements, allows parties to make an LLC agreement effective retroactive to the date of the LLC's formation, and provides that the terms of such agreements be enforced. Here, ConnectU's own members chose to draft an LLC agreement that identified Mr. Narendra as a founding member and made its terms retroactive to the date of ConnectU's formation. Part IA, *infra*.

Because an LLC is an artificial entity created by state law, its status and characteristics, including its membership on a particular date, can only be defined by the law of the state which created the LLC. Indeed, it is well-settled that state law provides the rule of decision in determining the membership of LLCs at the time of filing for the purposes of diversity jurisdiction analysis. This Court should accord conclusive weight to Delaware law and the terms of ConnectU's Operating Agreement in resolving that Mr. Narendra was a member of ConnectU at the time of filing for diversity purposes. Part IB, *infra*.

Allowing the terms of the Operating Agreement to govern the question of ConnectU's membership at the time of filing is fully consistent with the objective of the "time-of-filing" rule: to provide certainty to courts and litigants on matters critical to the determination of jurisdiction. Simple reference to an LLC agreement, which Delaware law contemplates as the comprehensive agreement governing the membership of an LLC, provides a ready and clear basis for determining an LLC's membership at the time of filing for diversity purposes. In contrast, the rule that ConnectU urges on this Court – to disregard retroactive LLC agreements given legal effect under state law – virtually ensures the kind of expensive, time-consuming and complex litigation over the collateral issue of jurisdiction which has occurred here, the very harm the "time of filing" rule was designed to prevent. Part IC, *infra*.

Of course, this rule like any rule carries with it some risk that members of an LLC in a particular case may try to abuse it. But the existing "sham" exception contained in the federal jurisdiction statute is sufficient to address any such attempts to improperly manufacture jurisdiction. Part ID, *infra*.

Finally, even assuming there is a conflict between the "time-of-filing" rule and Delaware LLC law – and there is not – relying solely on Delaware LLC law for the purposes of determining membership in ConnectU at the time of filing is supported by the principle enunciated in *Erie*, its progeny, and analogous case law that in considering substantive matters of state law, state law provides the rule of decision. Part II, *infra*.

This Court should give ConnectU's Operating Agreement dispositive effect, hold Divya Narendra a member of ConnectU at the time of filing, and dismiss this lawsuit.[1]

---

[1] In an effort to avoid duplication with the Facebook Defendants, Saverin addresses herein only the purely legal question of whether the Delaware concept of retroactivity should be permitted to govern the LLC membership analysis. This is in no way intended to undermine the
*(Footnote continued)*

3

# ARGUMENT

I. **DELAWARE LAW PERMITTING RETROACTIVITY OF MEMBERSHIP IN LLCS IS FULLY CONSISTENT WITH THE TIME-OF-FILING RULE AND COMPELS THE FINDING THAT NARENDRA WAS A MEMBER OF CONNECTU LLC AT THE TIME OF FILING FOR PURPOSES OF THE DIVERSITY OF CITIZENSHIP ANALYSIS.**

   A. **Delaware Law Gives Legal Effect To The Retroactive Terms Of LLC Agreements.**

The Delaware LLC Act (6 Del. C. §§ 18-101 et seq.) governs membership in ConnectU LLC at the time of filing. The policy of the Act is to "give maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements." 6 Del. C. § 18-1101(b). Consequently, the Act's basic approach is to "provide members with broad discretion in drafting the Agreement and to furnish default provisions when the members' agreement is silent." *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 291 (Del. 1999). To that end, the Act is replete with provisions made subject to modification in the LLC Agreement (*i.e.*, many of the Act's provisions begin with the phrase, "Unless otherwise provided in a limited liability agreement . . ."). *See id.* at 191 & n.26. Indeed,

> the Act gives members virtually unfettered discretion to define contractually their business understanding, and then provides assurance that their understanding will be enforced in accordance with the terms of their limited liability company agreements.

Martin I. Lubaroff & Paul M. Altman, "Delaware Limited Liability Companies," *Delaware Law of Corporations & Business Organizations*, § 20.1 (R. Franklin Balotti & Jesse A. Finkelstein, eds. 1998).

---

conclusion, which Saverin strongly supports, that the evidence presented at the hearings held on October 24 and 25, 2006 firmly establishes that Mr. Narendra was in fact a member of ConnectU at the time of filing, irrespective of any concept of retroactivity.

Consistent with those policies, the Act provides that a person may be admitted as a member of an LLC, whether before or after formation of the LLC, as of "the time provided in and upon compliance with the limited liability company agreement." 6 Del. Ch. § 18-301(a)(2), (b)(1). Further, the Act provides that a limited liability company agreement "may be made effective as of the formation of the limited liability company or at such other time or date as provided in the limited liability company agreement." 6 Del. Ch. § 18-201(d). Here, ConnectU's own members drafted an Operating Agreement which provides that Divya Narendra is a founding member and, though it is executed on August 5, 2005, consistent with the Act, the Agreement is made effective as of ConnectU's date of formation, April 6, 2004.

### B. State Law Has Been Consistently Held To Govern The Determination Of Citizenship Of Juridical Entities For Purposes Of The Diversity Jurisdiction Analysis.

Federal diversity jurisdiction requires complete diversity of citizenship between the parties at the time the action is commenced. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). The citizenship of an unincorporated entity such as an LLC is determined by the citizenship of each of its members. *Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990); *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006).

In determining the membership of an LLC or any other state-created unincorporated association for the purposes of diversity jurisdiction analysis, state law provides the rule of decision. *See, e.g., Kier Bros. Investments v. White*, 943 F. Supp. 1, 3 (D.D.C. 1996) ("In order to determine the citizenship of a state-created entity for purposes of determining whether diversity exists, federal courts have relied on applicable state law."); *611 LLC v. U.S. Lubes, LLC*, No.CCB-05-3417, 2006 WL 2038615 at *2 (D. Md. Jul. 18 2006) ("[M]embership in U.S.

Lubes [LLC] is governed by the Agreement and Delaware law.").[2]  Indeed, federal law has nothing to say on the question of membership in a state law-governed entity such as an LLC.  Because LLCs are creatures of state law, the status and characteristics of the LLC, including its membership, can only be determined by reference to the law of the state in which the LLC was formed.  *Cf. Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) (Posner, J.) ("the question of what state a corporation is a citizen of if its corporate charter has been revoked depend[s] on the status of such an entity under the law of the state that granted (and later revoked) the charter."); *Delancey v. Chicago Ins. Co.*, No. 04-2355, 2004 WL 2694910 at *2 (E.D.La. 2004) (for the purposes of diversity of citizenship analysis, "an entity's corporate status is determined in accordance with state law because corporations are purely a creation of state law.").

---

[2] *Accord, e.g., Int'l Paper Co. v. Denkmann Assoc.*, 116 F.3d 134, 136-137 (5th Cir. 1997) (in determining membership of a Louisiana partnership for diversity of citizenship analysis, court examined Louisiana law to determine if an individual was a partner at the time of filing); *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 882-883 (5th Cir. 1993) (in determining citizenship of Texas Lloyd's plan insurer, court relied on Texas law to determine whether an attorney-in-fact was a member of a Lloyd's plan insurer); *United National Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663 (S.D.N.Y. 1995) (holding that an estate should not be considered partner of a partnership for diversity of citizenship analysis even though the estate held an interest in the partnership because the estate had not satisfied the requirements for partnership under state law and the partnership agreement).

Courts have also relied on state law in a variety of other contexts in the determination of diversity jurisdiction.  For example, in determining whether a state-created business entity was a corporation for diversity purposes (in which case diversity is determined by the citizenship of its state of incorporation and principal place of business), courts have relied on state law characterization of the entity's status.  *See Hoagland v. Sandberg, Phoenix & Van Gontard*, 385 F.3d 737 (7th Cir. 2004) (holding that the definition accorded to an entity under state law is determinative for diversity purposes as well:  if the entity is a "corporation" under state law, it is a "corporation" for diversity purposes); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell*, 710 F.2d 87, 89 (2d Cir. 1983) (holding that a professional corporation "is a corporation under New York law and is therefore a citizen of New York" for the purposes of diversity jurisdiction).

In *Wild*, the Seventh Circuit addressed the question of whether diversity jurisdiction existed where, at the time the complaint was filed, the charter of one of the defendant corporations had been revoked by the state of its incorporation, Oklahoma, and was reinstated only after the action was filed. *Wild*, 292 F.3d at 528.[3] Judge Posner, writing the opinion of the court, stated that the question could be resolved only by reference to the status of the corporation under Oklahoma law. *Id.* at 528. Under Oklahoma law, a corporation whose charter was revoked continues to exist as a corporation for the purposes of suing and being sued until it is actually dissolved. *Id.* at 528-529. Further, the Oklahoma law also made reinstatement of a corporation's charter retroactive. *Id.* at 529. Consequently, the court held that the corporation was a citizen of Oklahoma at the time of filing for the purpose of establishing diversity jurisdiction . *Id.*

Similarly, in *Ripalda v. American Operations Corp.*, 977 F.2d 1464 (D.C. Cir. 1992), the court considered the citizenship of a Delaware corporation which had been dissolved at the time the action was filed. The court reasoned that because the Federal Rules of Civil Procedure provide that a corporation's capacity to sue and be sued is determined by the law under which it was organized, Delaware law also governed the citizenship, if any, of the dissolved corporation for diversity purposes. *Id.* at 1468. The court found that Delaware law provided for the continued existence of a dissolved corporation the purpose of prosecuting and defending lawsuits, and, thus, held that it was a citizen of Delaware at the time of filing. *Id.* at 1468; *accord Costain Coal Holdings, Inc. v. Resource Investment Corp.*, 15 F.3d 733 (7th Cir. 1994); *Delancey*, 2004 WL 2694910, at *1.

---

[3] Although not explicitly stated in the opinion, a finding that the dissolved corporation was not a citizen of any state would mean that diversity jurisdiction would be precluded. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).

Courts have also relied upon state statutes extending the existence of a partnership after dissolution in determining the membership of a partnership at the time of filing for the purposes of diversity analysis. *See Schiavone v. City of New York*, 99 F.3d 546 (2d Cir. 1996). In *Schiavone*, the Second Circuit considered whether a company that had divested its interests in a joint venture before the lawsuit was filed nonetheless remained a member of the joint venture at the time of filing for the purposes of diversity of citizenship analysis. *Id.* at 547-48. If the company was a member at the time of filing, diversity would be destroyed. *Id.* The court held that state partnership law was determinative of the company's membership in the joint venture at the time of filing. *Id.* at 548. Under relevant state law, the company's divestment of its interest dissolved the joint venture, but that the joint venture nevertheless was deemed to continue to exist with respect to all pre-existing matters not wound up. *Id.* at 549-50. Accordingly, the court held that the company was still a member of the joint venture and diversity was destroyed. *Id.; accord Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 11 F. Supp. 2d 449 (S.D.N.Y. 1998).

In each of the foregoing cases, the courts relied solely upon state law to determine the "state of facts that existed at the time of filing." *Grupo Dataflux*, 541 U.S. at 571.

### C. Determining An LLC's Membership Under State Law, Even If Retroactive, Is Fully Consistent With The Underlying Policy Of The "Time-Of-Filing" Rule.

The "time-of-filing" rule is a court-created rule which provides that "the jurisdiction of the Court depends upon the state of things at the time of the action brought." *Mollan v. Torrance*, 9 Wheat. 537, 539, 6 L.Ed. 154 (1824). The primary purpose of the rule is to minimize litigation over jurisdiction by providing courts with a bright-line rule to establish whether or not jurisdiction exists in a particular case. *See Grupo Dataflux*, 541 U.S. at 580-81. Indeed, "[t]he time-of-filing rule is what it is precisely because the facts determining jurisdiction

8

are subject to change, and because constant litigation in response to that change would be wasteful." *Id.* at 580.

Allowing the terms of an LLC agreement which are given effect by state law to determine membership of an LLC in the diversity of citizenship analysis plainly serves the same goal of certainty promoted by the "time-of-filing" rule. The Delaware statutory scheme provides that the LLC operating agreement typically will constitute the comprehensive agreement among its members and contain comprehensive provisions addressing the admission and withdrawal of members. *See, e.g.*, *Elf Atochem*, 727 A.2d at 288. Because Delaware law provides that LLC agreements will be made retroactive, parties will order their transactions accordingly.

This permits an LLC who proposes to be a plaintiff in a lawsuit to understand with precision and clarity whether it can meet the threshold requirement for invoking diversity jurisdiction before it files suit based upon an existing body of law that governs its internal affairs. An LLC defendant likewise would quickly know whether complete diversity actually existed, and be provided a quick and easy way to address the situation with a plaintiff if not.. Further, a defendant considering removal in an action brought by an LLC plaintiff may simply ask to examine the Operating Agreement to determine the propriety of its action, or if unable to do so prior to removal, quickly determine whether it should consent to remand once a plaintiff LLC later produces it and demonstrates a lack of complete diversity. Adverse LLCs could simply exchange operating agreements and chart their membership to determine whether complete diversity exists. These contemplated results promote the certainty and efficiency that are the hallmarks of the time of filing rule. On the other hand, creating a hodgepodge of federal common law decisions about LLC citizenship deprives the litigants and the court of this kind of

9

ready analysis, and virtually ensures the kind of complicated, expensive, and time-consuming litigation over jurisdiction that the "time of filing" rule was designed to prevent.

As the Court stated in *Grupo Dataflux*, "[u]ncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful." *Id*. at 582. Relying on the terms of state law, particularly where, as here under Delaware law, an extant operating agreement is given dispositive effect, facilitates the purpose of the "time-of-filing" rule.

> **D.  The Existing Sham Exception In Diversity Citizenship Jurisprudence Is Fully Sufficient To Address Any Concerns Regarding Abuse Of This Proposed Rule.**

Nor will adopting this rule enhance the opportunities for manipulation of the subject matter jurisdiction of the federal courts. It is hard to imagine a circumstance more clearly demonstrating that manipulation by members of LLCs will occur in the absence of a clear rule than this case, where Mr. Narendra and his cohorts have boldly taken contradictory positions in different legal proceedings. Of course, any rule is potentially subject to abuse, but 28 U.S.C. Section 1359 is fully up to the task. That Section, which denies federal jurisdiction where a party, "by assignment or otherwise, has been improperly or collusively made or joined" to invoke the jurisdiction of the federal courts, as well as the ample case law which has interpreted that statutory section, provides a more than sufficient basis for a court to address any sham devices to manufacture diversity jurisdiction in a particular case. *See* 28 U.S.C. § 1359; *see also, e.g., Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640 (1st Cir. 1995) (affirming dismissal for lack of diversity jurisdiction under Section 1359 where Rhode Island corporation was merged into New York corporation for the purpose of creating diversity jurisdiction); *Airlines Reporting Co. v. S and N Travel*, 58 F.3d 857, 862 (2d Cir. 1995) ("[W]e construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."); *Bass v. Texas*

10

*Power & Light Co.*, 432 F.2d 763 (5th Cir. 1970) (reversing under 28 U.S.C. § 1359 the district court's ruling that diversity jurisdiction existed in a wrongful death action where an out-of-state administrator was appointed for the sole purpose of creating diversity of citizenship).

ConnectU has done nothing to demonstrate that the rule proposed by Defendants would make the potential for manipulation any worse. Indeed, in this case, the Operating Agreement works to *destroy* diversity jurisdiction. That fact in itself counsels for dismissal here since courts are bound to construe the statutory requirement of complete diversity strictly against federal jurisdiction. *See Acton Co., Inc. of Mass. v. Bachman Foods, Inc.,* 668 F.2d 76, 79 (1st Cir. 1982); *In re Massachusetts Diet Drug Litigation*, 338 F. Supp. 2d 198, 202 (D. Mass. 2004) ([T]he removal and diversity jurisdiction statutes should be strictly construed against federal jurisdiction to avoid infringing the rights of state courts to determine matters of state law . . . Any doubts concerning the court's jurisdiction should be resolved against removal and in favor of remand to state court.").

## II.     EVEN IF THERE WERE A CONFLICT BETWEEN THE TIME-OF-FILING RULE AND DELAWARE LLC LAW, DELAWARE LLC LAW SHOULD SUPPLY THE RULE OF DECISION.

ConnectU does not deny that state law generally governs the determination of membership in an LLC, and, indeed, relies on selective portions of the Delaware LLC Act and Delaware case law in claiming that Divya Narendra was not a member of ConnectU at the time this action was commenced. (ConnectU's Post-Hearing Brief at 6-12). At the same time, however, it asks the Court to disregard the provision of the Delaware LLC Act which enforces retroactive operating agreements, claiming that giving dispositive effect to a retroactive LLC agreement would allow Delaware law to "govern the question of federal diversity." (ConnectU's

Post-Hearing Brief at 2). Yes, Saverin respectfully submits, this is precisely what should occur in this circumstance.[4]

As an initial matter, although diversity jurisdiction is governed by federal law, because a business entity and its characteristics are defined by state law, state law, as it must, supplies the content of the diversity analysis on the question of membership in a state-created business entity. *See, e.g.*, *Carbine v. Xalapa Farm Ltd. Partnership*, 980 F. Supp. 860, 863 (E.D. La. 1997) ("Despite plaintiff's contentions . . . it is necessary in this case to look at Kentucky law and to the actual Partnership Agreement in deciding whether the plaintiff and her brothers should properly be considered limited partners."); *Kier Brothers Investments*, 943 F. Supp. at 3, n.3 ("Plaintiff's argument that the Court must apply federal law in its diversity analysis to the exclusion of state law is not persuasive."). Although no court has addressed the precise issue of whether a retroactive LLC operating agreement given effect under state law is determinative for the purposes of establishing members of the LLC at the time of filing, as set out above in greater detail, courts consistently have relied upon state legal principles, including retroactivity, in determining the status of a business entity at the time of filing. *See Wild*, 292 F.3d at 529 ("Oklahoma also has a statute making reinstatement of a corporation's charter retroactive. We conclude that the revocation of Subscription Plus's corporate charter did not affect its status for diversity purposes.") (internal citation omitted); *Costain*, 15 F.3d at 734, n.3 (determining that

---

[4] The cases cited by plaintiff, *Duffy v. Sarault*, 702 F. Supp. 387, 394 (D.R.I. 1988) and *Railway Co. v. Whittons*, 80 U.S. 270, 286 (1871) (ConnectU's Post-Hearing Brief at 3), which stand for the proposition that state statues vesting exclusive jurisdiction over a dispute in state courts cannot limit federal jurisdiction, are inapposite to the issue presented before the Court. Relying on state law to determine membership in an state-created business entity at the time of filing, a *component* of the diversity analysis, does not limit federal diversity jurisdiction. Indeed, the identity of an entity's membership does not, by itself, influence jurisdiction. It is the citizenship of those members, which is determined by federal law, that limits or confers jurisdiction in a particular case.

retroactive reinstatement of the Delaware company's charter conferred jurisdiction for diversity purposes).

In considering substantive matters of state law, state law generally provides the rule of decision unless there is a federal law or federal rule in existence on point. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1937) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996). The time-of-filing rule is neither a federal statute nor rule, but rather a policy decision. *See Grupo Dataflux*, 541 U.S. at 583, 574, 580-81 ("[Chief Justice Marshall] did not extract this time-of-filing rule from any constitutional or statutory text . . . time of filing rule 'represents a policy decision'") (internal citations omitted) (Dissent).

Nothing in 28 U.S.C. § 1332 indicates that Congress authorized courts to fashion the time of filing rule to displace Delaware LLC law or any other state law on membership in a LLC for diversity purposes. Strikingly, Section 1332 does not include a section on citizenship of limited liability corporation, while specifically including a section on citizenship of corporations, legal representative of estate of a decedent, and legal representative of infant or incompetent. *See* 28 U.S.C. § 1332(c).[5] The presumption that Congress did not desire to alter or supplement state

---

[5] 28 U.S.C. § 1332(c) provides: "For the purpose of this section and section 1441 of this title—(1) a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business; and
 (2) the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent, and the legal representative of an infant or incompetent shall be deemed to be a citizen only of the same State as the infant or incompetent."

laws of citizenship for LLCs is strong in light of detailed and specific provisions on citizenship of certain persons and entities. *See, e.g., Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 97 ("the presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement").

Rather, state law can and has furnished the content of federal law. *See, e.g., United States v. Kimbell Foods Inc.*, 440 U.S. 715 (1979) (holding that while federal law governs the priority of liens stemming from federal lending programs, incorporating state law as a component of the federal law to determine whether liens arising from federal loans take precedence over private liens is appropriate); *Butner v. United States*, 440 U.S. 48 (1979) (holding that in bankruptcy proceeds, the question of whether a security interest in property extended to rents and profits derived from that property was resolvable by reference to state law, not a federal rule of equity because property is a state law created right and there was no federal statute governing the issue.) ((specific holding superseded by Bankruptcy Code; *See American Bankers Ins. Co. v. Maness*, 101 F.3d 358, 363 (4th Cir. 1996) (stating that "[a]lthough the Bankruptcy Code superseded the specific holding of *Butner,* the Supreme Court has subsequently reiterated the *Butner* approach."); *S.E.C. v. Elmas Trading Corp.*, 683 F. Supp. 743, 748-49 (D. Nev. 1987) (citing Fed. R. Evid. 501 for the proposition that the state law supplies the rule of decision in federal court with respect to state privilege).

In *Kimbell*, the Supreme Court considered a three-part test in determining whether state law could be incorporated: (1) Does the issue require "a nationally uniform body of law"; (2) "application of state law would frustrate specific objectives of the federal programs;" and (3) "application of a federal rule would disrupt commercial relationships predicated on state law."

14

*Kimbell,* 440 U.S. at 728-29.  The Court concluded that a uniform rule determining priority of liens is unnecessary to protect federal interests and application of state law is "in no way inconsistent with adequate protection of the federal interests." *Id*. at 729.  Other courts applying the *Kimbell* test have reached a similar result of looking to state law to provide the content of the federal law.  *See e.g., VKK Corp. v. National Football League*, 244 F.3d 114, 122 (2d. Cir. 2001) (looking to New York state law to provide content of the federal law regulating the validity of a release of private antitrust claims); *U.S. v. Crown Equipment Corp.*, 86 F.3d 700, 707 (7th Cir. 1996) (concluding that Wisconsin law should govern the appropriate measure of damages).  As set forth in detail above, the interests of relying exclusively on state law in determining the membership of a state-created business entity at the time of filing, which are considerable, actually promote the federal interest embodied in the time of filing rule.

      Similarly, in *Old Orchard Bank and Trust Co. v. Rodriguez*, the Court determined that for the purposes of a federal statute authorizing a tax levy, "property" is a concept drawing its content from state law, not federal law.  654 F. Supp. 108 (N.D. Ill. 1987).  The Court held that state law creates and defines the taxpayer's property interest, but that federal law defines the remedies.  *Id*.  This is analogous to the situation here: determining whether diversity exists is a matter of federal law, but state law supplies the content to certain aspects of the determination, such as the membership of an unincorporated association.

      What we have here is a choice of law problem and the choice presented is not a choice among the States, but instead a choice whether to allow state law to govern this particular issue in the diversity citizenship analysis or to fashion a body of federal common law instead.  Neither this Court nor any other should take the remarkable step of creating a federal common law governing the internal affairs of state-created juridical entities, the consequence of which could

15

reverberate throughout an existing and well-established system for the governance of such persons. The federal courts should not supplant the Delaware Chancery Court as a principal source of doctrine governing the internal affairs of juridical entities in this nation. As the Supreme Court stated in *O'Melveny & Myers v. F.D.I.C.,* "Uniformity of law might facilitate the FDIC's nationwide litigation of these suits, eliminating state-by-state research and reducing uncertainty-- but if the avoidance of those ordinary consequences qualified as an identifiable federal interest, we would be awash in 'federal common-law' rules." 512 U.S. 79, 88 (1994).

Although the time-of-filing rule provides one principle for consideration in determining the existence of diversity of jurisdiction, the overall citizenship determination necessarily requires reference to substantive state law. A diversity jurisdiction analysis that does not give effect to the whole of substantive state law, but rather creates an entirely novel way of determining membership, would be entirely inappropriate under Section 1332, the principles enunciated in *Erie* and *Kimbell* and other analogous authorities grappling with issues of federal-state comity in the choice of law arena.

In sum, state law should determine membership of an LLC at the time of filing irrespective of any seeming inconsistency with the time-of-filing rule because: (a) it would not frustrate, but actually further the interests of the time of filing rule, which is certainty with respect to jurisdiction; and (b) disregarding retroactivity would hinder the interests of state LLC law in promoting freedom of contract and enforceability of LLC agreements. In these circumstances, "the prudent course is to adopt the readymade body of state laws as the federal rule of decision until Congress strikes a different accommodation." *Kimbell*, 440 U.S. at 740.

## CONCLUSION

Divya Narendra was in fact and in law a Member of ConnectU LLC at the time the original Complaint in this action was filed. Accordingly, the Court should dismiss this case for lack of subject matter jurisdiction.

DATED: December 11, 2006

>/s Daniel K. Hampton
>Gordon P. Katz (BBO# 261080)
>Daniel K. Hampton (BBO# 634195)
>HOLLAND & KNIGHT, LLP
>10 St. James Avenue
>Boston, MA  02116
>Telephone:  (617) 523-2700
>dan.Hampton@hklaw.com
>gordon.katz@hklaw.com
>
>Annette L. Hurst (*pro hac vice*)
>HELLER EHRMAN LLP
>333 Bush Street
>San Francisco, CA  94104
>Telephone:  (415) 772-6000
>
>Bhanu K. Sadasivan (*pro hac vice*)
>HELLER EHRMAN LLP
>275 Middlefield Road
>Menlo Park, CA  94025
>Telephone:  (650) 324-7197
>
>Attorneys for Defendant Eduardo Saverin

### **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on December __, 2006.

Dated:  December __, 2006.

>Daniel K. Hampton

17