IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>       Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and THEFACEBOOK, INC.,<br><br>       Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>       Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>       Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>       Additional Counterdefendants. | |

**FACEBOOK'S SUPPLEMENTAL OPPOSITION TO CONNECTU, LLC'S OCTOBER 25, 2006 POST HEARING BRIEF**

OHS West:260151789.10

## I.    **INTRODUCTION**

ConnectU's case should be dismissed because Divya Narendra was a member of ConnectU LLC on September 2, 2004, and also because he was at all times a real party in interest to this dispute.  While Mr. Narendra most certainly was a member of ConnectU LLC under any applicable legal test, he also was a diversity destroying real party in interest.  As a result, the legal issue of Mr. Narendra's membership or non-membership in ConnecU LLC is irrelevant, as dismissal will be warranted in either case.  In short, no circumstance exists where ConnectU LLC can meet its heavy burden to prove that diversity jurisdiction existed at the time of filing.

First, the applicable legal standards and evidence reflect that under Delaware law, Mr. Narendra was a member of ConnectU LLC when it filed its original complaint.  Presuming the Operating Agreement does not control, determination of membership status in a limited liability company takes into account whether Mr. Narendra made a contribution to the LLC and whether Mr. Narendra reasonably expected to reap benefits from the LLC as a result of the contribution.  Delaware law affords an inherently flexible standard by which the Court has great discretion to evaluate the evidence to understand the true intentions of the parties in forming ConnectU LLC.  To that end, the Operating Agreement is still deemed the most relevant evidence, but ConnectU's tax filings, documents such as emails related to major corporate transactions, actions, and pre- and post-litigation behavior also can be considered.  In the context of litigation, Delaware law instructs that the Court may further consider judicial and evidentiary admissions when assessing jurisdiction.  In this case, evaluation of such factors leads to an inescapable conclusion that Mr. Narendra was a member of ConnectU LLC on September 2, 2004.

Second, even if the Court were somehow to conclude Mr. Narendra was not a member of

ConnectU LLC when the original complaint was filed, he nonetheless was a real party in interest and an indispensable party whose presence destroyed diversity at the time this action was filed. Mr. Narendra, as the founder and creator of the Harvard Connection idea, owned many of the asserted rights at the time of filing and was a required party to this case. As set forth in earlier briefing, many of these rights were nontransferable, and others were not properly assigned despite the execution of the Operating Agreement. As a result, Mr. Narendra was a diversity-destroying real party in interests irrespective of membership.

## II. THE COURT HAS WIDE LATITUDE UNDER DELAWARE LAW TO CONSIDER EVIDENCE IN DETERMINATION OF MEMBERSHIP

Delaware law allows courts wide latitude in determining membership in LLCs and permits a number of factors, including (but not limited to) the terms of the Operating Agreement, to be considered. This is consistent with the flexible nature of the Delaware LLC statute. *See In re Grupo Dos Chiles, LLC*, 2006 Del. Ch. Lexis 54 (2006); *Elf Atochem North America, Inc. v. Cyrus A. Jaffari*, 727 A.2d 286 (Del. 1999); *611, LLC v. U.S. Lubes, LLC,* 2006 WL 2038615 (D. Md. Jul. 18, 2006).

### A. A Member Is Someone Who Contributes Something of Value, Shares in the Profits and Losses, and Expects to Receive Distributions

The threshold inquiry for the Court is "what is a member" for purposes of the LLC Act? Remarkably few courts have addressed this question. The definition of "member" set forth in Del. Code. Ann. § 18-101(11), which simply describes a member as someone admitted as provided by Del. Code Ann. § 18-301, also provides little guidance. *See, e.g.* ConnectU's Post-Hearing Brief, at 8 (admitting that § 18-301(a)(1) "does not say how persons are to be admitted as Members at the time of formation are decided"). In part, this absence of authority is because the LLC act can be characterized as a "flexible statute" that generally permits members to engage in private ordering with substantial freedom to contract to govern their relationship.

*Elf Atochem North America, Inc. v. Curis A. Jaffari*, 727 A.2d 286, 293 (Del. 1999). In the end, the LLC is simply the joint business vehicle for a common enterprise. *Id.* (citing 6 Del. C. §18-101(7)).

The Delaware LLC Act explicitly states that contributions of value, especially financial contributions, are indicative of membership in an LLC. 6 Del. C. § 18-101(7) (A person may be admitted as a member of a limited liability company, even without executing the limited liability agreement, "if such person (or representative authorized by such person orally, in writing or by other action such as payment for a limited liability interest) complies with the conditions for becoming a member . . . as set forth in the limited liability company agreement or any other writing"). Consistent with the flexibility of Delaware law, the LLC Act allows the contribution to be nearly anything. Del. Code Ann. §18-501, titled "Form of Contribution," states "The contribution of a member to a limited liability company may be in cash, property or services rendered, or a promissory note or other obligation to contribute cash or property or to perform services." 6 Del. C. § 18-501. Mr. Narendra contributed a considerable amount to ConnectU LLC. Mr. Narendra came up with the Harvard Connection idea, solicited Mark Zuckerberg, and was actively involved in the development and operation of the connectu.com website at all times from before ConnectU LLC registered as an LLC on April 6, 2004, through when the website launched in May, 2004. Prior to April 6, 2004, Mr. Narendra contributed $10,000 to the enterprise. Mr. Narendra remained involved in various decisions of the company after the launch of the website, such as discussions of a possible merger in August and September, 2004, and his suggestion in January, 2005 that the press be told that he was "still in contact with [Cameron and Tyler Winklevoss] on strategic issues regarding the website."

OHS West:260151789.10

Members also share in the profits and losses of the LLC and have a right to receive distributions from the company.  *See Matthews v. D'Amore*, 2006 WL 3095817 (Oh. App. Nov. 2, 2006).  Indeed, Del. Code Ann. §18-503 indicates that profits and losses of an LLC are ordinarily allocated among members in accordance with the terms of an Operating Agreement.  *See also Walker v. Res. Dev. Co.*, 791 A.2d 799, 813 (Del. Ch. 2000) ("Thus, LLC members' rights begin with and typically end with the operating agreement").

However, "[i]f the limited liability company agreement does not so provide, profits and losses shall be allocated [among the members] on the basis of the agreed value (as stated in the records of the limited liability company) of the contributions made by each member to the extent they have been received by the limited liability company and have not been returned."  Del. Code Ann. §18-503. *See also 611, LLC v. U.S. Lubes, LLC*, 2006 WL 2038615 at *5 (finding it relevant to the determination under Delaware Law whether a party was a member rather than a mere assignee that "had U.S. Lubes considered 611 to be a mere Assignee, it would have separated out 611's capital from this category").  No one disputes that Mr. Narendra, at all relevant times, risked his time and his money invested and expected to participate in the success or failure of ConnectU LLC's primary assets, connectu.com and this lawsuit.

In diversity cases, the Supreme Court has cautioned against requiring too much control when evaluating participation in a fictional entity.  *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990).  In *Carden*, the court evaluated whether a limited partner was relevant when assessing diversity.  The court held:

> That only the general partners have exclusive and complete control
> over the partnership's operations and the litigation is irrelevant.
> This Court's decisions have never held that an artificial entity can
> invoke diversity jurisdiction based on the citizenship of some but

not all of its members.

*Id.*, 195-196.

A very recent decision from the Ohio Court of Appeals, *Matthews v. D'Amore*, 2006 WL 3095817, at *9-12 (Ohio App. Nov. 2, 2006), is instructive and confirms this practical approach compelled by Delaware Supreme Court jurisprudence. *Matthews* held that, in the absence of an operating agreement, sharing in the profits and losses and having a right to receive distributions establishes membership in an LLC. In *Matthews*, the trial court held that the appellant was not a member of an LLC prior to executing an operating agreement on the basis that the person's name did not appear on the "records" of the company as an owner of a membership interest. The Ohio Court of Appeals disagreed and found the appellant to be a member because the appellant had contributed $25,000 eight months before execution of the operating agreement. The *Matthews* case is consistent with the present action because the member had contributed something of value and expected to participate in the profits and losses as well as receive distributions. *See Id.* at *8-9.[1]

In support of its flawed argument, ConnectU claims that "[o]n or before September 2, 2004, Divya Narendra did not act or hold himself out as a Member and did not and would not loan money to ConnectU LLC, Act as its guarantor, sue anyone for ConnectU LLC (and be responsible for the costs), access its books, co-manage ConnectU LLC, share its losses and expenses, or have access to its bank account." ConnectU's Post-Hearing Brief at 12. This argument is factually and legally incorrect. The reality is that Mr. Narendra contributed his ideas, his time, and his money. He expected to participate in the success of the venture and receive distributions. He also ran the risk of losing the value of his investment. Under Delaware

---

[1] ConnectU may argue that Ohio specifies membership interests in the definitions, whereas Delaware does not. This is a distinction without a difference because the Delaware law (cited

OHS West:260151789.10

law, Mr. Narendra was a member.

### B.    The Court has Wide Discretion to Evaluate the Facts to Determine Membership

ConnectU incorrectly argues that the Court's legal inquiry should be construed very narrowly under Del. Code Ann. § 18-301(a) and argues that the term "member" must be specifically reflected in all business records, particularly ConnectU's 2005 banking records. *See* ConnectU's Post-Hearing Brief at 12-13.  ConnectU makes such argument notwithstanding the fact that these same "business records" were not included in a March 3, 2006 Declaration filed in California (DE 83), which by Court order required the identification of all business records reflecting formation and membership in ConnectU LLC.[2]  Moreover, although ConnectU contends that neither its Operating Agreement nor its tax records can be cited as "business records" for purposes of § 18-301(a) because these documents were created after September 2, 2004, ConnectU notably does claim Connecticut bank records executed in 2005 are permissible records on which the Court may rely.  *See* Post-Hearing Brief at 12-13.  ConnectU's approach is incorrect as a matter of law.

Delaware courts expressly recognize that "the basic approach of the Delaware [Limited Liability] Act is to provide members with broad discretion in drafting the [Operating] Agreement and to furnish default provisions when the members' agreement is silent." *Elf Atochem N. Am., Inc.  v. Jaffari*, 727 at 291.  In evaluating the facts, the Court can review a wide penumbra of facts, including the acts, dealings, conduct, admissions, and other direct evidence. *In Re Grupo De Los Chiles* at *8*;  *611, LLC v. US Lubes, LLC*, 2006 WL 2038615, at *5 ("While no individual instance constitutes ironclad proof, together they generate persuasive

---

therein) achieves the same result and basically imports the same definition of membership.
[2] Notably, ConnectU did refer to its August 5, 2005, Operating Agreement, as well as the April 5, 2004 email from Marc Pierrat (DE 83 at C008043 & C011286-335).

OHS West:260151789.10

evidence that U.S. Lubes has considered 611 to be a member since Clements' letter and has changed its position only for the purposes of this litigation").  *See also Hynansky v. Vietri*, 2003 WL 21976031, at *5 - *6 (Del. Ch. Aug. 7. 2003) (holding that to determine whether a partnership exists, the acts, dealings, conduct, admissions, the partnership agreement, tax records and declarations of the purported partners, in addition to other direct evidence, may be utilized.); *Clothier v. McCloskey*, 1986 WL 15715 at *5 (Del. Ch. July 10, 1986) ("The existence of such a partnership may be proven by evidence of the acts, dealings, conduct, admissions and declarations of the purported partners as well as by other direct evidence"), *aff'd*, 541 A.2d 598 (Del. 1988); *Brown v. Galvin*, 1979 WL 178470, at *3 (Del. Ch. Jul. 10, 1986) (same).[3]

Consistent with this broad, flexible approach, Delaware law defines a "record" as "information that is inscribed on a tangible medium or that is stored in an electronic or other medium and is retrievable in perceivable form." 6 Del. C. § 1-201.  This definition encompasses anything that is transcribed as a potential "record" wherein evidence of membership or ownership can be found, such as business communications and email, tax records, corporate records, and accounting records.  *See Arbor Place, L.P. v. Encore Opportunity Fund*, 2002 Del. Ch. LEXIS 102, at 8 (Del. Ch. Jan. 29, 2002) ("The list of "records" found in the LLC Act contains much more than just books of account; it also includes, among many other things, federal tax returns").   Courts adopt a more flexible approach in evaluating membership and merely use the records as evidence.  For example, many cases addressing this topic state that the citizenship of an LLC is determined by the citizenship of its "owners" or use the terms "owner" and "member" interchangeably.  *See e.g., Muhlenbeck v. Ki, LLC*, 304 F.Supp.2d 797, 798-99

---

[3] The three cited cases are each partnership cases.  As the Delaware LLC Act has been modeled on the Delaware LP Act, it can be used as persuasive authority with respect to the LLC act.*See Elf Atochem*, 727 A.2d at 291-292.

OHS West:260151789.10

(E.D.Va. 2004); *Tri-Partners, 2001 WL 333096, at *1. See also, 611, LLC v. U.S. Lubes, LLC*, 2006 WL 2038615 at *11 ("The case law, however, is not so rigid. Instead, the case law demonstrates that, because Plaintiff 611, at the very least, possesses an ownership interest in Defendant (even if it does not meet the requirements under the Agreement to be a member," it is a member or owner of Defendant U.S. Lubes for purposes of determining its citizenship"); and *In re Grupo* at *6 ("Substance is supposed to be paramount over form" with respect to membership inquiries).

1.    **Under Delaware Law, ConnectU's Operating Agreement is the Most Relevant Evidence on the Issue of Divya Narendra's Membership**

The Operating Agreement can be afforded considerable weight in determination of membership status. *See In re Grupo* at *8; *Walker, LLC*, 791 A.2d 799; *see also 611, LLC,* 2006 WL 2038615, at *4 - *6 (The determination of membership for purposes of both Delaware law and diversity jurisdiction is to be largely gleaned from the Operating Agreement itself). For example, "'[o]nce members exercise their contractual freedom in their limited liability company agreement, they can be virtually certain that the agreement will be enforced in accordance with its terms.'" *Walker,* 791 A.2d at 813 (quoting R.F. Balotti & J.A. Finkelstein, *The Delaware Law of Corporations & Business Organizations,* § 20.4 (2000)). The Delaware Chancery Court has recognized that "the broad freedom of members of LLCs to define their obligations *inter sese* by contract is germane to the formation and interpretation of LLC agreements." *Senior Tour Players 207 Mgmt. Co. LLC v. Golftown 207 Holding Co. LLC*, 853 A.2d 124, 129 (Del. Ch. 2004).

While the Operating Agreement was signed after this lawsuit was filed, it can be considered as evidence to determine a particular fact as of September 2, 2004. *Walker,* 791 A.2d at 813 *In Re Grupo Dos Chiles, LLC,* 2006 Del. Ch. Lexis 54, at *8. Mr. Narendra has claimed

that he was not a member at any point in 2004. The Operating Agreement, however, expressly

describes Mr. Narendra as a "Founding Member" on October 1, 2004, and ConnectU can expect

to be bound to that statement. *See* 6 Del. Code Ann. § 18-101(7) ("A member or manager of a

limited liability company or an assignee of a limited liability company interest is bound by the

limited liability agreement whether or not the member or assignee executes the limited liability

agreement").

### 2.    Tax Records are Highly Probative of Membership

Courts applying Delaware law specifically consider an LLC's tax records in

determining membership, because such returns are considered "records" of the company for

purposes of the LLC Act. *See e.g., 611, LLC,* 2006 WL 2038615, at *5 ("[i]n addition, the

plaintiffs have presented tax documents filed by U.S. Lubes which refer to 611 as a member");

*Arbor Place, L.P.*, 2002 Del. Ch. LEXIS 102, at 8-9; Del. Code Ann. § 18-305. *See also*

*Hynansky v. Vietri*, 2003 WL 21976031, at *6 & n.43 (looking to an individual's tax records,

including the absence of a Federal K-1 form, in evaluating whether the individual was treated as

a partner under Delaware partnership law). Indeed recent case law suggests that ConnectU's tax

returns should be treated as one of the most persuasive factors to determine membership for

diversity purposes. In *611, LLC,* the question the court faced was whether two of the plaintiffs

were Substitute Members rather than mere Assignees within the meaning of the Operating

Agreement at the time of filing. The Court analyzed this issue to determine diversity. In

reaching its decision, the court relied heavily upon the parties' tax filings and as evidence of their

intent regarding membership. *611, LLC,* 2006 WL 2038615, at *5.

The representations in ConnectU's 2004 tax records that Mr. Narendra was a

member as of April 6, 2004 who contributed $10,000, also are independently admissible under

Connecticut Statutes Section 34-131(b), which applies to foreign LLCs like ConnectU that are

registered in Delaware. That Section provides that "If the articles of organization provide that management of the limited liability company is vested in a manager or managers: (1) An admission or representation made by a manager concerning the business or affairs of a limited liability company within the scope of his authority as provided for by sections 34-100 to 34-242, inclusive, is evidence against the limited liability company . . . ." Conn. Gen. Stat. § 34-131 (emphasis added).

Here, the representations in the tax filings that Mr. Narendra was a member of ConnectU in 2004 were signed and filed by Howard Winklevoss, one of the Board of Managers of ConnectU. *See* PE 44; DE 56. These representations thus must be treated as evidence "against the LLC" pursuant 34-131(b), notwithstanding ConnectU's myriad arguments that the statements are incorrect and that there was no such investment by Mr. Narendra.

### 3. The Court May Consider The Course of Performance of the Parties to Assess ConnectU's Membership

As recognized by recent Delaware law, the course of performance in light of the facts also must be considered to determine membership of an LLC. *In re Grupo De Los Chiles at *8-10* (analyzing membership under course of performance standard). Mr. Narendra was at all times a principal of the Harvard Connection partnership as a partner and continued his principal affiliation as a member of ConnectU LLC. As previously stated, the Company's records memorialize the course of dealings of Mr. Narendra and the other members that demonstrate Mr. Narendra was a member of ConnectU LLC from the time of its inception. While course of performance is properly considered, actions taken as a result of litigation issues should be afforded little weight. *611, LLC*, 2006 WL 2038615 at *5; *see also Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency*, 149 F.3d 794 (8th Cir. 1998). Nearly all of the evidence cited by plaintiff is litigation-inspired.

OHS West:260151789.10

**4. Divya Narendra Acted as A Member in Compliance with ConnectU's Operating Agreement**

Contrary to ConnectU LLC's position in its earlier briefing, the Delaware LLC Act also states that a financial contribution can be indicative of membership. 6 Del. C. § 18-101(7) (A person may be admitted as a member of a limited liability company, even without executing the limited liability agreement, "if such person (or a representative authorized by such person orally, in writing **or *by other action such as payment*** for a limited liability company interest) complies with the conditions for becoming a member **. . .** as set forth in the limited liability company agreement or any other writing"). In this case, Mr. Narendra clearly contributed cash to ConnectU LLC to build and exploit the connectu.com website.

**C. ConnectU's Judicial and Taxpayer Statements Regarding Narendra's Membership may be Properly Considered by the Court in Assessing Membership**

**1. Narendra's Judicial and Evidentiary Admissions are Properly Considered on a Motion to Dismiss**

The Court may properly rely upon statements made by ConnectU in pleadings to determine diversity jurisdiction. Indeed, ConnectU is bound to certain statements that cannot now be controverted as they are judicial admissions made in pleadings. *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir. 1992) (quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)). *See also Aretakis v. General Signal, Inc.*, No. 05-10257-DPW, 2006 WL 1581781, at *1 (D. Mass. June 7, 2006); *United States v. Belculfine,* 527 F.2d 941, 944 (1st Cir. 1975) (emphasis added). These admissions preclude any argument that Mr. Narendra was not a member.

Mr. Narendra was indisputably a Founder of ConnectU LLC. ConnectU LLC's original complaint filed on September 2, 2004 states that ConnectU LLC was formerly known as Harvard Connection, and identifies Mr. Narendra as one of the "founders" of "Plaintiff

ConnectU LLC f/k/a Harvard Connection." DE 64, Compl., line 1.  *See also id.* ¶¶ 11-12, 14-15,

19.  Similarly, ConnectU's October 28, 2004 Amended Complaint incorporates a September 2,

2004 letter from its counsel to each of the individual defendants that again referred to "ConnectU

and its founders, Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra . . . ."  DE 65,

Exhibit A.  Numerous other pleadings include similar statements.  *See, e.g.*, Docket No. 107.  In

addition, the Rule 26 disclosures confirmed the statement made in earlier pleadings and stated

that Divya Narendra was a "Founder, ConnectU LLC."  DE 66, at 2.

        Responses to contention interrogatories concede Mr. Narendra's membership

status at the time of filing.  Responses to contention interrogatories are judicial admissions.  *See*

*Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 1999 WL 672902, at *2 (S.D.N.Y. Aug.

27, 1999) (answers to interrogatories are "judicial admissions that generally estop the answering

party from later seeking to assert positions omitted from, or otherwise at variance with, those

responses"); *United States ex rel. Garibaldi v. Orleans Parish School Bd.*, 46 F. Supp. 2d 546,

554 (E.D. La. 1999) ("If the court were to allow the defendant to equivocate on its answers to

interrogatories, the doctrine of judicial admissions would lose its meaning and effectiveness.").

On August 22, 2005, in response to an Interrogatory No. 7, which required ConnectU to

"[i]dentify all facts in support of [its] contention that HarvardConnection is a predecessor in

interest to ConnectU," plaintiff once again swore that the "founders" all "incorporated as

ConnectU LLC on April 6, 2004," and cited "the LLC Operating Agreement produced by

ConnectU at C011285-C011335, which formalized the founders' relationship and ConnectU's

rights relevant to this lawsuit."  DE 67, at 17-18.[4]

---

[4] As the Court is aware, ConnectU LLC and its members also repeatedly stated that ConnectU
LLC's members were members of the LLC as of April 6, 2004 in the California Action. *See*
*United States v. Raphelson*, 802 F.2d 588, 592 (1st Cir. 1986) ("Although a pleading in one case

2.    **Taxpayer estoppel precludes Narendra from disputing membership as of September 2, 2004**

Mr. Narendra and ConnectU are estopped from stating Mr. Narendra was not a member as of September 2, 2004 under the doctrine of "quasi-estoppel." That doctrine has been invoked by courts to estop parties from asserting a position in judicial proceedings different from that taken with the government. Quasi-estoppel, also known as the "duty of consistency," applies "to a misstatement of fact" on which "the government reasonably relied, in the sense that it neither knew, nor ought to have known, the true nature of the transaction mischaracterized by the taxpayer." *Lewis v. Commissioner*, 18 F.3d 20, 26 (1st Cir. 1994). Significantly, among the factual issues to which quasi-estoppel applies is a taxpayer's status. *See McManus v. C.I.R.,* 583 F.2d 443, 447 (9th Cir. 1978) ("A taxpayer is estopped from later denying the status he claimed on his tax returns."), *cert. denied*, 440 U.S. 959 (1979); *United States v. Guy*, 1991 WL 253007, at *4 n.3 (S.D. Ohio Sep 25, 1991) ("It seems clear that the spouse who actually signed the return and represented that the tax reported was a joint liability is bound by his representations and thus Garth Guy may not contest the status of the original return as a joint return"), *aff'd*, 978 F.2d 934 (6th Cir. 1992). In this case, ConnectU filed tax returns identifying Mr. Narendra as a member. ConnectU cannot now be heard to recant its representation to the government.

III.    **DISMISSAL IS WARRANTED IRRESPECTIVE OF MEMBERSHIP, AS DIVYA NARENDRA IS A REAL PARTY IN INTEREST.**

The ConnectU LLC operating agreement executed by Mr. Narendra on August 5, 2005 is the only evidence of assignment of his "intellectual property" to ConnectU LLC. The Agreement is unclear as to what rights were being assigned. The agreement is purported to be effective as of April 6, 2004, but given ConnectU's position regarding the agreement's

---

is not a conclusive judicial admission in a later one, it is treated as an ordinary admission which can be contradicted by other evidence").

retroactive affect on Mr. Narendra's membership interest, *i.e.*, that he was not a member until he executed it in August 2005, ConnectU cannot argue that the assignment was retroactive to April 2004 without contradiction.  Either the value of the claim was part of ConnectU LLC on September 2, 2004, thereby making Mr. Narendra a member, or it was not, in which case ConnectU LLC was not the real party in interest.

### A.    The Real Party in Interest Doctrine Applies Directly to the Rights Holder

The person holding title to the claim or property involved, as opposed to others, is the real party in interest.  Under Section 1332(a), diversity "is tested by the citizenship of the real parties to the controversy, and the citizenship of an agent who merely sues on behalf of the real parties must be ignored." *Associated Ins. Mgmt. Corp.*, 149 F.3d at 794.  *See Navarro Sav. Assn'n v. Lee*, *446 U.S. 458 (1980)*.  To establish the real parties in interest, plaintiff must allege facts sufficient to reveal that it suffered an injury, that the injury was caused by defendant's illegal conduct, and that his injury could be redressed by a favorable outcome to the lawsuit. *Seckler v. Star Enterprise* 124 F.3d 1399, 1406(11th Cir. 1997).  ConnectU LLC cannot establish it was the real party in interest at the time of filing its original complaint.

The basis of plaintiff's complaint stems from alleged injuries purportedly suffered by Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss — prior to the formation of ConnectU LLC.  As stated in Facebook Defendants' motion to dismiss, many if not all of the non-copyright claims in ConnectU's complaint are unassignable.  *See* Defendants' Mot. To Dismiss, 16-17.  Assuming that such claims were assigned, the only evidence of a possible assignment of the rights averred to in the complaint is with ConnectU's operating agreement, which was not effective until Mr. Narendra executed it in August 2005.  Mr. Narendra, not ConnectU LLC, was the real party in interest when this case was filed.

ConnectU's attempt to convey rights through the Operating Agreement does not

cure this defect.  As this Court is aware, the district court cannot retroactively create diversity jurisdiction if it did not exist when the complaint was filed.  *Assoc. Ins. Mgmt. Corp.*, 149 F.3d at 796.  Therefore, a case must be dismissed where ratification or joinder of the real party in interest under 17(a) would destroy diversity.  If a plaintiff files suit on a claim *before* it has been assigned to plaintiff, the subsequent assignment does not cure the real party in interest problem.  The action must be dismissed.  *See United States for Use &Benefit of Wulff v. CMA, Inc. 890 F.2d. 1070, 1074-1075 (9th Cir. 1989)*.  The so-called "ratification" put forward by ConnectU pursuant to Fed. R. Civ. P. 17(a) does not cure the problem since such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.  In such a case, the Court would be required to treat this case as if it had been filed by Mr. Narendra under a plain reading of Rule 17(a).  Diversity would be destroyed.

**B.    Divya Narendra is an Indispensable Party**

The facts that give rise to ConnectU LLC's real party in interest problems also support  that Mr. Narendra is an indispensable party to this case, whose joinder would also destroy this Court's jurisdiction if the Court found he was not a member as of September 2, 2004.  In determining whether a party is "indispensable," the court must evaluate the facts as they existed when the case was filed and not by what happens later.  *Freeport-McMoRan, Inc. v. K N Energy, Inc.,* 498 U.S. 426, 428 (U.S. 1991).

**1.    Divya Narendra is a Necessary Party Under FRCP 19(a)**

"Rule 19 of the Federal Rules of Civil Procedure provides for the joinder to a suit of parties needed for its just adjudication."  *Acton Co. of Massachusetts v. Bachman Foods, Inc.,* 668 F.2d 76, 78 (1st Cir. 1982).  Plaintiff is required to join as parties to the action all persons whose interests are so directly involved that their presence is needed for just adjudication, if their joinder is feasible.  *FRCP 19(a)*.  In an action based on the breach of an agreement, a party to the

agreement should be joined to the action if feasible. *Acton Co. of Massachusetts*, 668 F.2d 76, 78 (1st Cir. 1982) ("There is little doubt that Acton, as a party to the letter of intent and to the purchase agreement, should be joined to this action if feasible … as it played a substantial role in negotiating both agreements").

ConnectU's breach of contract claim arises out of an alleged agreement between Mark Zuckerberg, the Winklevoss twins and Mr. Narendra in their individual capacities in November 2003. ConnectU LLC did not exist as of November 2003 and was not a party to the alleged contract with Mr. Zuckerberg. In fact, ConnctU's complaint alleges that, ConnectU's founders, Cameron Winklevoss, Tyler Winklevoss and Divya Narendra (*Comp.*, ¶ 11) began development of a business plan for Harvard Connection (*Id.*, ¶12) and hired fellow Harvard students, including Mark Zuckerberg, to develop the software necessary for the Harvard Connection code (*Id.*, ¶14). If there was in fact an agreement, the parties to that agreement include Divya Narendra, Cameron Winklevoss, and Tyler Winklevoss and are necessary parties to this lawsuit. Unless Mr. Narendra and his partners are bound by the results of the ConnectU lawsuit, they would remain free to commence a new action on their own claims. *Acton Co. of Massachusetts*, 668 F.2d 76, 78 (1st Cir. 1982). Such a circumstance would have required joinder of Mr. Narendra, thereby destroying diversity.

## 2.    <u>Narendra is Indispensable, Warranting Dismissal</u>

Because joinder of Mr. Narendra would destroy the subject matter jurisdiction of this Court, Fed. R. Civ. P. 19(b) requires the court to determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed" by considering the four factors enumerated in the rule. *Acton Co. of Massachusetts*, 668 F.2d 76, 78 (1st Cir. 1982); *Harrell & Sumner Contracting Co., Inc. v. Peabody Petersen Co.*, 546 F.2d 1227, 1229 (5th Cir. 1977). Where several persons contract as partners or joint venturers with

OHS West:260151789.10

another, each is an indispensable party in an action to enforce the contract. *Harrell & Sumner Contracting Co., Inc.*, at 1229 (5th Cir. 1977) ("The rule generally applied by federal courts is where two or more parties are joint obligees, they are indispensable parties in an action for enforcement of that obligation . . . Federal courts have held that in an action brought on a partnership contract, all members of the partnership are indispensable parties plaintiff.") *See also, In re: Great Scott Food Market, Inc.*, 180 Bankr. Lexis 5150 (1980) ("The general rule is that only joint obliges (those to whom the duty is owed) . . . are indispensable parties"). Because Mr. Narendra, Cameron Winklevoss and Tyler Winklevoss are allegedly co-joint obligees in a contract with Mark Zuckerberg, complete relief cannot be afforded in the absence of any of them. *Harrell & Sumner Contracting Co., Inc.*, 546 F.2d. at 1229.

The factors to be considered under Rule 19(b) weigh heavily in favor of dismissal. Facebook defendants need to be protected from a multiplicity of lawsuits and the possibility of inconsistent judgments in different judicial forums that the Mr. Narendra and Messrs. Winklevoss may bring in their individual capacities.[5]

## IV.   **CONCLUSION**

For the reasons stated herein, this case should be dismissed.

---

[5] ConnectU LLC may claim that it has since had all necessary rights transferred to it, thereby alleviating any concern. ConnectU is wrong. The Operating Agreement is eminently unclear as to what rights are transferred to ConnectU LLC and what rights are not. Also, as set forth in previous briefing, many of the claims asserted by ConnectU LLC are not assignable from Narendra, thereby creating the same problem of potential duplication of litigation.

OHS West:260151789.10

Dated:  January 8, 2007.                    Respectfully submitted,

                                _/s/ I. Neel Chatterjee /s/_
                                G. Hopkins Guy, III*
                                I. Neel Chatterjee*
                                Monte M.F. Cooper*
                                ORRICK, HERRINGTON & SUTCLIFFE LLP
                                1000 Marsh Road
                                Menlo Park, CA  94025
                                Telephone:  (650) 614-7400
                                Facsimile:  (650) 614-7401

                                Steve M. Bauer
                                Jeremy P. Oczek
                                PROSKAUER ROSE, LLP
                                One International Plaza, 14th Floor
                                Boston, MA 02110-2600
                                Telephone:    (617) 526-9600
                                Facsimile:    (617) 526-9899

                                ATTORNEYS FOR MARK ZUCKERBERG,
                                DUSTIN MOSKOVITZ, ANDREW
                                MCCOLLUM, CHRISTOPHER HUGHES, and
                                THEFACEBOOK, INC.

                                Annette L. Hurst*
                                HELLER EHRMAN LLP
                                333 Bush Street
                                San Francisco, CA 94104
                                Telephone: (415)-772-6000

                                Bhanu K. Sadasivan*
                                HELLER EHRMAN LLP
                                275 Middlefield Road
                                Menlo Park, CA 94025
                                Telephone: (650)-324-7000

                                Gordon P. Katz (BBO# 261080)
                                Daniel K. Hampton (BBO# 634195)
                                HOLLAND & KNIGHT, LLP
                                10 St. James Avenue
                                Boston, MA 02116
                                Telephone: (617)-523-2700

                                ATTORNEYS FOR EDUARDO SAVERIN

                                * Admitted Pro Hac Vice

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 8, 2007.

Dated: January 8, 2007.                 Respectfully submitted,

                                   /s/ I. Neel Chatterjee/s/
                     _____
                                   I. NEEL CHATTERJEE

OHS West:260151789.10

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................................................ 2

II.  THE COURT HAS WIDE LATITUDE UNDER DELAWARE LAW TO
     CONSIDER EVIDENCE IN DETERMINATION OF MEMBERSHIP ........................ 3

     A.   A Member Is Someone Who Contributes Something of Value, Shares in
          the Profits and Losses, and Expects to Receive Distributions ............................ 3

     B.   The Court has Wide Discretion to Evaluate the Facts to Determine
          Membership ................................................................................................... 7

          1.   Under Delaware Law, ConnectU's Operating Agreement is the
               Most Relevant Evidence on the Issue of Divya Narendra's
               Membership ........................................................................................... 9

          2.   Tax Records are Highly Probative of Membership ................................. 10

          3.   The Court May Consider The Course of Performance of the Parties
               to Assess ConnectU's Membership ....................................................... 11

          4.   Divya Narendra Acted as A Member in Compliance with
               ConnectU's Operating Agreement ........................................................ 12

     C.   ConnectU's Judicial and Taxpayer Statements Regarding Narendra's
          Membership may be Properly Considered by the Court in Assessing
          Membership ................................................................................................. 12

          1.   Narendra's Judicial and Evidentiary Admissions are Properly
               Considered on a Motion to Dismiss ....................................................... 12

          2.   Taxpayer estoppel precludes Narendra from disputing membership
               as of September 2, 2004 ...................................................................... 14

III. DISMISSAL IS WARRANTED IRRESPECTIVE OF MEMBERSHIP, AS
     DIVYA NARENDRA IS A REAL PARTY IN INTEREST ....................................... 14

     A.   The Real Party in Interest Doctrine Applies Directly to the Rights Holder ........ 15

     B.   Divya Narendra is an Indispensable Party ....................................................... 16

          1.   Divya Narendra is a Necessary Party Under FRCP 19(a) ...................... 16

          2.   Narendra is Indispensable, Warranting Dismissal .................................. 17

IV.  CONCLUSION ............................................................................................... 18

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Acton Co. of Massachusetts* v. *Bachman Foods, Inc.*, 668 F.2d 76 .......................................16, 17

*Associated Ins. Mgmt. Corp.* v. *Arkansas Gen. Agency*, 149 F.3d 794 ...........................11, 15, 16

*Bellefonte Re Ins. Co.* v. *Argonaut Ins. Co.*, 757 F.2d 523.......................................................... 12

*C.T. Carden* v. *Arkoma Assoc.*, 494 U.S. 185............................................................................. 5, 6

*Freeport-McMoRan, Inc.* v. *K N Energy, Inc.*, 498 U.S. 426 ....................................................... 16

*In re: Great Scott Food Market, Inc.*, 180 Bankr. LEXIS 5150 ................................................. 18

*Harrell & Sumner Contracting Co., Inc.* v. *Peabody Petersen Co.*, 546 F.2d 1227..............17, 18

*Lewis* v. *Commissioner*, 18 F.3d 20 ........................................................................................... 14

*McManus* v. *C.I.R.*, 583 F.2d 443 (9th Cir. 1978)
   *cert. denied*, 440 U.S. 959................................................................................................... 14

*Muhlenbeck* v. *Ki, LLC*, 304 F.Supp.2d 797................................................................................. 8

*Navarro Sav. Assn'n* v. *Lee*, 446 U.S. 458.................................................................................. 15

*Schott Motorcycle Supply, Inc.* v. *American Honda Motor Co.*, 976 F.2d 58 ............................ 12

*Seckler* v. *Star Enterprise*, 124 F.3d 1399.................................................................................. 15

*United States ex rel. Garibaldi* v. *Orleans Parish School Bd.*, 46 F.Supp.2d 546 ...................... 13

*United States for Use &Benefit of Wulff* v. *CMA, Inc.*, 890 F.2d 1070....................................... 16

*United States* v. *Belculfine*, 527 F.2d 941....................................................................................12, 13

*United States* v. *Raphelson*, 802 F.2d 588.................................................................................. 13

## STATE CASES

*Arbor Place, L.P.* v. *Encore Opportunity Fund*, 2002 Del.Ch. LEXIS 102............................. 8, 10

## TABLE OF AUTHORITIES

**Page**

*Elf Atochem North America, Inc.* v. *Cyrus A. Jaffari*, 727 A.2d 286................................3, 4, 7, 8

*In re Grupo Dos Chiles, LLC*, 2006 Del.Ch. LEXIS 54........................................................3, 7, 9

*Senior Tour Players 207 Mgmt. Co. LLC* v. *Golftown 207 Holding Co. LLC*, 853 A.2d
    124 ........................................................................................................................... 9, 10

*Walker* v. *Res. Dev. Co.*, 791 A.2d 799 ............................................................................. 5, 9

### DOCKETED CASES

*611, LLC,* 2006 WL 2038615, at 4 - 6................................................................. 3, 5, 7 9, 10, 11

*Wechsler* v. *Hunt Health Sys., Ltd.*, No. 94 Civ. 8294, 1999 WL 672902 ................................. 13

### FEDERAL STATUTES

Fed.R.Civ.P. 19 ...............................................................................................................17, 18

Fed. R. Civ. P. 17 ................................................................................................................ 16

### STATE STATUTES

6 Del. Code Ann. § 18-101 .................................................................................. 3, 4, 8, 10, 12

6 Del. Code Ann. § 18-301 ............................................................................................... 3, 7

6 Del. Code Ann. § 18-305 ................................................................................................. 10

6 Del. Code Ann. §18-501 .................................................................................................... 4

6 Del. Code Ann. §18-503 .................................................................................................... 5

Conn. Gen. Stat. § 34-131.................................................................................................... 11