## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC, | Civil Action No. 1:04-cv-11923 (DPW) |
| Plaintiff, | |
| v. | District Judge Douglas P. Woodlock |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, FACEBOOK, INC., | Magistrate Judge Robert B. Collings |
| Defendants. | |
| MARK ZUCKERBERG and FACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
| Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, | |
| Additional Counterdefendants. | |

## PLAINTIFF'S REPLY TO DEFENDANTS' CORRECTED SUPPLEMENTAL
## OPPOSITION TO CONNECTU LLC'S POST-HEARING BRIEF

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   SECTION 18-301 OF THE DELAWARE LLC ACT PROVIDES THE
      FRAMEWORK FOR DETERMINING MEMBERSHIP ................................................ 1

III.  DEFENDANTS' EVIDENCE FAILS TO REFUTE CONNECTU'S EVIDENCE
      THAT DIVYA NARENDRA WAS NOT A MEMBER OF CONNECTU LLC ON
      SEPTEMBER 2, 2004 ........................................................................................ 4

      A.   Contributions to an LLC Do Not Equate To Membership ................................ 4

      B.   ConnectU Will Not Revisit Defendants' Operating Agreement Arguments ..................... 5

      C.   The Tax Records Do Not Support A Finding That Divya Narendra Was A Member Of
           ConnectU LLC On September 2, 2004 .................................................................. 6
           1.   The Tax Records Are Not Probative Evidence ............................................ 6
           2.   Taxpayer Estoppel Does Not Apply .......................................................... 7

      D.   "Judicial Admissions" Do Not Support A Finding That Divya Narendra Was A Member
           Of ConnectU LLC On September 2, 2004 .......................................................... 8

      E.   The Wachovia Bank Documents Support The Finding That Divya Narendra Was NOT A
           Member Of ConnectU LLC On September 2, 2004 ................................................ 9

IV.   SUIT WAS PROPERLY FILED BY CONNECTU LLC ................................................ 10

      A.   At The Time Of Filing Divya Narendra Had Assigned All Of His Rights To ConnectU
           LLC ........................................................................................................ 10

      B.   Divya Narendra Was Not and Is Not A Real Party or Ratifier Under Rule 17(a) ............ 14

      C.   Divya Narendra Was Not and Is Not A Necessary Party Under Rule 19(a) ..................... 16

      D.   Even If Rule 19(a) Applies, Rule 19(b) Does Not Require Dismissal ............................ 17

      E.   Even If Divya Narendra Is Joined, Diversity Will Not Be Destroyed ............................. 18

V.    DEPENDING ON THIS COURT'S RULING, CONNECTU WISHES TO AMEND,
      OR WILL REFILE ............................................................................................ 19

VI.   CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES

**Federal Cases**

*611, LLC v. US Lubes, LLC*,
  No. CCB-05-3417, 2006 U.S. Dist. WL 2038615 (D. Md. July 18, 2006) ........................... 4, 6

*Carlton v. BAWW, Inc.*,
  751 F.2d 781 (5th Cir. 1985) ............................................................................................. 18

*Drankwater v. Miller*,
  830 F. Supp. 188 (S.D.N.Y. 1993) ..................................................................................... 18

*Eagan v. United States*,
  80 F.3d 13 (1st Cir. 1996) ................................................................................................ 7-8

*E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*,
  2003 WL 22064257 (S.D.N.Y. Sept. 5, 2003) ...................................................................... 17

*Generadora De Electricidad del Caribe, Inc. v. Foster Wheeler Corp.*,
  92 F. Supp. 2d 8 (D.P.R. 2000) ......................................................................................... 16

*Great Lakes Chemical Corp. v. Monsanto Co.*,
  96 F. Supp. 2d 376 (D. Del 2000) ...................................................................................... 8

*Herrington v. Comm'r*,
  854 F.2d 755 (5th Cir. 1988) ............................................................................................. 8

*Infodek, Inc. v. Meredith-Webb Printing Co.*,
  830 F.Supp. 614 (N.D. Ga. 1993) ...................................................................................... 13

*Lincoln Property Co. v. Roche*,
  126 S.Ct. 606 (2005) ..................................................................................................... 17-18

*Motta v Resource Shipping & Enter. Co.*,
  499 F. Supp. 1365 (S.D.N.Y. 1980) ................................................................................... 14

*Vermont Agency of Nat'l Resources v. United States ex rel.Stevens*,
  529 U.S. 765, 773 (2000) .................................................................................................. 13

**State Cases**

*Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*,
  No. Civ.A. 18928, Del Ch. 2002 WL 205681 (Del. Ch. January 29, 2002) ............................ 6

*Elf Atochem N. Am. v. Jaffari*,
  727 A.2d 286 (Del. 1999) .................................................................................................. 3

*Hynansky v. Vietri*,
  No. 14645-NC, Del. Ch. 2003 WL 21976031 (Del. Ch. August 7, 2003) ............................. 5, 6

*In re Estate of Fenimore*,
  No. 7680, 1999 Del Ch. WL 959204 (Del. Ch. Oct. 8, 1999) ................................................ 3

*Matthews v. D'Amore*,
  No. 05Ap-1318, 2006 Ohio App. WL 3095817(Ohio App. Nov. 2, 2006) ............................... 2

**Federal Statutes**

28 U.S.C. § 1331 ................................................................................................ 20

28 U.S.C. § 1332 ................................................................................................ 20

28 U.S.C. § 1367(c) ........................................................................................... 19

28 U.S.C. § 1653 ................................................................................................ 19

26 U.S.C. § 6501 ................................................................................................. 8

26 U.S.C. § 6502 ................................................................................................. 8

26 U.S.C. § 6511 ................................................................................................. 8

**State Statutes**

6. Del. Code. Ann. §18-101(11) ...................................................................... 1, 2

6. Del. Code. Ann. §18-101(7) ............................................................................ 5

6. Del. Code. Ann. §18-301 ........................................................................ passim

**Other Authorities**

6A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure
    § 1542 (2d ed. 1990) ................................................................................... 13

**Rules**

Fed. Rule Civ. P. 17(a) .................................................................................. 13-15

Fed. Rule Civ. P. 19 (a) ................................................................................. 15-17

Fed. Rule Civ. P. 19 (b) ................................................................................ 17-18

Fed. Rule Civ. P. 21 ........................................................................................... 18

Fed. Rule Civ. P. 33(c) ........................................................................................ 8

## I.       INTRODUCTION

The Court ordered Defendants to "file further briefs which deal with all the legal issues concerning how it is determined whether or not Narendra was a Member of the LLC on September 2, 2004." (Dkt. 269 at 2.)  Even with a direct order from this Court, Defendants once again failed to provide an analysis of the applicable Delaware LLC membership statute and have reopened unrelated issues from earlier briefs.  Defendants' joint supplemental brief is a hodgepodge of law and theories presented so as to avoid applying the only directly relevant Delaware law: Delaware LLC Act §§ 18-101(11) and 18-301.[1]

To assess diversity, the Court must step back in time to September 2, 2004 and apply Delaware law to the facts as they existed on that date.  Although Defendants offer a new crop of theories on why this case should be dismissed, all of which are refuted below, they have never disputed ConnectU's application of Delaware law, as outlined in ConnectU's Post-Hearing Brief. (Dkt. 255 at 6-11.)  Under Delaware law, a person can become a Member of an LLC only in specific ways, none of which was met by Divya Narendra before the filing date.

## II.      SECTION 18-301 OF THE DELAWARE LLC ACT PROVIDES THE FRAMEWORK FOR DETERMINING MEMBERSHIP

Limited Liability Companies are creatures of state statute.  Thus, the analysis of Membership in an LLC must begin with the Delaware LLC Act.

The purpose of §§ 18-101(11) and 18-301 of the Delaware LLC Act is precisely to resolve the issue before the Court, i.e., the limited ways in which a person may become a Member of a Delaware LLC.  In their final brief on this most important issue, Defendants immediately brush aside § 18-101(11) by representing to the Court, without bothering to quote

---

[1] For the Court's convenience, ConnectU submits herewith a list of all briefs filed in connection with Defendants' Motion to Dismiss.  (Declaration of Meredith H. Schoenfeld ("Schoenfeld Decl."), Ex. G.

the provision, that the "definition of 'member' set forth in Del. Code. Ann. § 18-101(11), which simply describes a member as someone admitted as provided by Del. Code Ann. § 18-301, . . . provides little guidance." (Dkt. 272 at 2.)  In this one sentence, Defendants dismissed an entire statute -- indeed, the governing statute and the one on which this Court has requested guidance in two orders.  Contrary to Defendants' representation, § 18-101(11) directly and precisely provides the guidance the Court has requested, stating without qualification that "'Member' means a person who has been admitted to a limited liability company as a member as provided in § 18-301 . . ."

As discussed in great detail in ConnectU's Post-Hearing Brief (Dkt. 255 at 6-12), § 18-301 sets forth specific requirements for how someone can be **admitted** as an LLC Member.  The concept of admission is important in § 18-301, but Defendants completely ignore it.  This Court must determine, by applying § 18-301 to the facts as they existed on the filing date, if Divya Narendra was admitted as a Member as of September 2, 2004.

As noted in ConnectU's Post-Hearing Brief (Dkt. 255 at 7 n.4), the only relevant course of dealing is a course consistent with § 18-301.  In all of the cases cited by Defendants, the courts looked to the relevant LLC Act as the starting point for their analysis.  In fact, in *Matthews v. D'Amore*, which Defendants urge this Court to consider (Dkt. 272 at 5), the Ohio Court of Appeals performed an analysis similar to the one provided by ConnectU.  No. 05Ap-1318, 2006 Ohio App. WL 3095817 at *10 (Ohio App. Nov. 2, 2006).  The trial court confirmed that, pursuant to the relevant Ohio statute, R.C. 1705.14(A), a person may become a Member either at the time the LLC is formed or at any time specified in the records of the company for becoming a Member.  *Id.*  The appellate court agreed with the trial court's finding that the time specified in the company records for becoming a Member was the time of execution of the

operating agreement. *Id.* Inexplicably, Defendants represented to this Court that the appellate

court in *Matthews* reversed the trial court's findings regarding D'Amore's membership in the

LLC. (Dkt. 272 at 5). In fact, the appellate court affirmed the trial court's holding that D'Amore

was **not** a Member of the LLC, despite having some involvement with the LLC. *Id.* at *16.

  Additionally, partnership cases are not persuasive authority for determining membership

in an LLC. *Elf Atochem N. Am. v. Jaffari*, the case Defendants rely on for this argument (Dkt.

272 at 7 n.3), compares only one limited section of the Delaware LLC Act and the Delaware

Partnership Act. 727 A.2d 286, 291-92 (Del. 1999). However, the LLC Act has a provision

regarding membership (§ 18-301), which has no counterpart in the Partnership Act. Under the

latter, the fundamental inquiry in determining whether the parties created a partnership is the

intention of those parties, therefore necessitating that the court consider a broad spectrum of

evidence. *See, e.g.*, *In re Estate of Fenimore,* No. 7680, 1999 Del Ch. WL 959204 at *5 (Del.

Ch. Oct. 8, 1999) ("Nonetheless, one must show the existence of the partnership by a

preponderance of the evidence, and to do so one may demonstrate an intention to share profits

and losses, and may use acts, the dealings and conduct of the parties, and admissions of the

parties to do so."). This analysis does not carry over to Delaware LLCs, where § 18-301

provides a statutory framework within which only relevant facts need be examined.[2]

---

[2] In this regard, Defendants misquote ConnectU, arguing it admitted that § 18-301(a)(1) "does not say how persons are to be admitted as Members at the time of formation are decided" [sic]. (Dkt. 272 at 2.) ConnectU actually wrote "Section 18-301(a)(1) does not say how persons **to be** admitted as Members at the time of formation are **decided**." (Emphasis added) Moreover, contrary to Defendants' argument and as explained in ConnectU's Post-Hearing Brief (Dkt. 255 at 8-9), the operative word here is "decided".

III.  **DEFENDANTS' EVIDENCE FAILS TO REFUTE CONNECTU'S EVIDENCE THAT DIVYA NARENDRA WAS NOT A MEMBER OF CONNECTU LLC ON SEPTEMBER 2, 2004**

A.  **Contributions to an LLC Do Not Equate To Membership**

As ConnectU explained in its Post-Hearing Brief, one may have a financial interest in an LLC, but not be a Member.  (Dkt. 255 at 7-8.)  This principle was recognized in *611, LLC v. US Lubes, LLC*, where the court stated "[t]he agreement thus expressly recognizes situations in which an entity can possess a financial interest in the company without possessing the rights of a Member." No. CCB-05-3417, 2006 U.S. Dist. WL 2038615 at *2 (D. Md. July 18, 2006). Nothing cited by Defendants refutes this principle.  Moreover, Defendants' characterization of this case is false and misleading.[3]  (Dkt. 272 at 7-8.)  The *611, LLC* court did **not** find that an ownership interest was sufficient to make the defendant a Member for purposes of determining its citizenship.  Although plaintiff 611 advanced that theory, the court declined to consider it.  *Id*. at *1 n.3.  Instead, the court found that 611 was a Substitute Member based on the LLC Agreement and the actions of the parties, which helped clarify the "ambiguous agreement."  *Id*. at *6 ("In light of the Agreement's ambiguities and the parties' conduct, the plaintiffs had reasonable grounds for believing then, and claiming now, that 611 satisfied the requirements for becoming a Substitute Member of U.S. Lubes.")[4]

---

[3]  Specifically, Defendants included in a parenthetical citation a quotation that came from one of the parties' briefs (Schoenfeld Decl., Ex. H at 18-19), not from the court's decision, which does not accurately reflect the court's later holding.  Defendants even filed a corrected brief to emphasize this quotation.  (Compare Dkt. 271 at 8-9 to Dkt. 272 at 7-8.)

[4]  ConnectU used the collective term "founders" as a shorthand reference for Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra, and chose such term precisely because they were not all Members but needed to refer to them collectively.  Defendants hope the Court will use "founders" and "Members" interchangeably.  Although a few courts have used "owners" and "Members" interchangeably (Dkt. 272 at 7-8), such treatment is irrelevant and unnecessary to this Court's analysis.  Section 18-301 provides a clear statutory framework for determining

4

Contributions of value are not indicative of membership (as stated by Defendants, Dkt. 272 at 5), and nothing in § 18-301 is to the contrary. Defendants cite § 18-101(7) to support the argument that "The Delaware LLC Act explicitly states that contributions of value . . . are indicative of membership in an LLC." (Dkt. 272 at 3, 11.) Not only does their quotation from § 18-101(7)(a)(2) not support their argument, but they fail to apply the quoted statutory provision, which requires a written LLC agreement or other writing with conditions for becoming a Member, and compliance with such conditions. Moreover, § 18-101(7) relates to how an LLC or other agreement may allow a person to be admitted as a Member and not to how one becomes a Member, which is governed by § 18-301. Here, there was no LLC agreement or writing on or before September 2, 2004.

To support their contention that Mr. Narendra acted as a Member in compliance with ConnectU's Operating Agreement (Dkt. 272 at 11), Defendants state that he "clearly contributed cash to ConnectU LLC to build and exploit the connectu.com website." (*Id.*) The last monetary contribution made by Divya Narendra was over 1½ years prior to the existence of the Operating Agreement, and in fact was made before ConnectU LLC even existed. His contribution could not be in "compliance" with an agreement that did not exist.

Defendants also cite *Matthews* for the proposition that "Members also share in the profits and losses of the LLC and have a right to receive distributions from the company." (Dkt. 272 at 4.) This presupposes that Members have been admitted and § 18-301 governs their admission.

### B. ConnectU Will Not Revisit Defendants' Operating Agreement Arguments

Defendants argue yet again that the Operating Agreement "can be considered as evidence to determine a particular fact as of" the filing date, and repeat their "Founding Member"

---

Members. Whether a founder or owner is also a Member depends on the application of § 18-301.

argument. (Dkt. 272 at 8-9) ConnectU fully addressed these arguments in its Post-Hearing

briefs (Dkt. 255 at 4; Dkt. 263 at 3).

### C. The Tax Records Do Not Support A Finding That Divya Narendra Was A Member Of ConnectU LLC On September 2, 2004

#### 1. The Tax Records Are Not Probative Evidence

Defendants rely primarily on *611* for the proposition that courts "consider an LLC's tax

records in determining membership because such returns are considered 'records' of the

company . . . " (Dkt. 272 at 9). The tax return discussion in the *611* decision can be

distinguished from the facts here. Although the *611* court rightly recognized tax returns as LLC

records, the returns it considered were filed in 2003, before suit was filed in 2005. *611, LLC* at *

5. Here, ConnectU's returns were submitted in October 2005, well after the September 2, 2004

Complaint and after the August 2005 Operating Agreement was signed. Because the returns

significantly post-date the Complaint, they are not probative of the identity of ConnectU's

Members on that all-important date. Moreover, ConnectU's returns are based on the provisions

of the August 2005 Operating Agreement, which also do not reflect ConnectU's membership on

September 2, 2004. Applying § 18-301, ConnectU could not have claimed that Divya Narendra

(or Howard Winklevoss) were Members in 2004 if it had filed its 2004 tax return before the

Operating Agreement was signed. Thus, unlike in *611,* ConnectU's tax returns shed no light on

the question of Divya Narendra's membership or non-membership in ConnectU LLC on the date

the Complaint was filed.

Seeing that the *611* decision is insufficient to support their position, Defendants further

cite two unpublished Delaware Chancery Court decisions, *Hynansky v. Vietri*, No. 14645-NC,

Del. Ch. 2003 WL 21976031 (Del. Ch. August 7, 2003), and *Arbor Place, L.P. v. Encore*

*Opportunity Fund, L.L.C.*, No. Civ.A. 18928, Del Ch. 2002 WL 205681 (Del. Ch. January 29, 2002). (Dkt. 272 at 9). Neither case stands for the proposition asserted by Defendants.

In *Hynansky*, the plaintiff was attempting to claim that he and the defendant were partners in a failed real estate venture and that the defendant owed the plaintiff money in light of the venture's large losses. On plaintiff's motion for summary judgment, the defendant claimed there were significant disputes of material fact regarding the alleged partnership. Citing plaintiff's testimony that he treated the assets and losses of the venture as his own and never issued a K-1 partnership form, the court denied plaintiff's summary judgment motion on the ground that material issues of fact existed. *Hynansky* at * 6. The court's decision to deny summary judgment because the defendant was able to show disputes of material fact does not suggest that the court found the records to be persuasive evidence of membership (or lack there of).

Contrary to Defendants' citation (Dkt. 272 at 9), *Arbor Place* does not in any way address the impact of tax records on the issue of determining membership. Rather, the *Arbor Place* court simply recognized that tax returns are LLC records for the purposes of an audit of the LLC by a Member, and thus ordered Defendants to produce such records. *Arbor Place* at *2-3.

## 2.    Taxpayer Estoppel Does Not Apply

Defendants' reliance on the doctrine of taxpayer estoppel (Dkt. 272 at 13), also known as the duty of consistency, is also misplaced. "The duty of consistency arises when the following elements are present: '(1) a representation or report by the taxpayer; (2) on which the Commission[er] has relied; and (3) an attempt by the taxpayer after the statute of limitations has run to change the previous representation or to recharacterize the situation in such a way as to harm the Commissioner.'" *Eagan v. United States*, 80 F.3d 13, 16-17 (1st Cir. 1996), citing

*Herrington v. Comm'r,* 854 F.2d 755, 758 (5th Cir. 1988), *cert. denied,* 490 U.S. 1065, 109 S.Ct.

2062, 104 L.Ed.2d 628 (1989).  First Circuit law requires the presence of all three elements for a

finding of taxpayer estoppel.  None is present here.

      Moreover, Defendants never cited the elements or attempted to apply them to the facts of

this case.  First, an LLC is not itself a taxpayer.  *See Great Lakes Chemical Corp. v. Monsanto*

*Co.*, 96 F. Supp. 2d 376, 383 (D. Del 2000) (explaining that the Members of an LLC pay taxes,

not the LLC itself).  Rather, it is a pass-through entity, which places the tax-paying burden on its

Members. *Id.*  Second, there must be evidence that the Commissioner relied on the

representation.  Defendants provide no evidence that the Commissioner of the Internal Revenue

Service has in any way relied on ConnectU LLC's 2004 tax documents.  Third, Defendants did

not assert that the statute of limitations had run on ConnectU's 2004 return, nor did they explain

how ConnectU's position that Divya Narendra was not a Member of ConnectU LLC on

September 2, 2004 in any way harms the Commissioner.  In fact, no statute of limitations has

run. *See e.g.* 26 U.S.C. § 6501 (three year audit statute); 26 U.S.C. § 6502 (10 year debt-

collection statute); and 26 U.S.C. § 6511 (3 year refund statute).  On these bases alone,

Defendants' taxpayer estoppel argument must be rejected.

### D.  "Judicial Admissions" Do Not Support A Finding That Divya Narendra Was A Member Of ConnectU LLC On September 2, 2004

      As explained *supra,* mere use of the word "founder" to describe Divya Narendra is not

enough to make him a Member in the eyes of Delaware law.  Also, the response to Interrogatory

No. 7 does not concede Divya Narendra's Membership on September 2, 2004.  First, ConnectU

objected to the interrogatory as premature under Fed. Rule Civ. P. 33(c).  (Defendants' October

24-25, 2007 Hearing Exhibit 67 at 18.)  Second, the response was served after, and in light of,

the Operating Agreement.  Third, Defendants mischaracterize ConnectU's response.  Defendants

say the "'founders' all 'incorporated as ConnectU LLC on April 6, 2004.'" (Dkt. 272 at 12.)  The

response does not state that **all** founders incorporated.  Moreover, formation of an LLC and

admission as a Member are two different things, governed by two different sections of the

Delaware LLC Act.  Whether or not Divya Narendra was involved in the formation of the LLC,

§ 18-301 controls whether he was admitted as a Member.  Additionally, the statements in the

California case that were not stricken from the record by this Court's Order (Dkt. 264) do not

show that Divya Narendra was a Member of ConnectU LLC on the filing date, for the reasons set

forth in ConnectU's Post-Hearing Brief.  (Dkt. 255 at 11.)

### E.   The Wachovia Bank Documents Support The Finding That Divya Narendra Was <u>NOT</u> A Member Of ConnectU LLC On September 2, 2004

This Court must determine, by applying § 18-301 on the filing date, if Divya Narendra

was admitted as a Member as of September 2, 2004.  Defendants argue (Dkt. 272 at 6) that if the

Court cannot consider the Operating Agreement and the tax returns, it should not consider the

Wachovia documents, all of which post-date the filing date.  The Operating Agreement cannot

control for all of the reasons ConnectU presented in its July 13, 2006 brief, Post-Hearing Brief,

and Post-Hearing Reply Brief.  The tax returns should not be determinative because they were

prepared after the Operating Agreement, with reference thereto, and cannot be relied on as an

accurate reflection of the facts on September 2, 2004.  In contrast, the Wachovia documents are

indicative of the facts on September 2, 2004, for the reasons set forth in ConnectU's Post-

Hearing Brief.  (Dkt. 255 at 12-13).[5]

---

[5] Defendants state that nearly all of the evidence cited by ConnectU is "litigation-inspired."  (Dkt. 272 at 11).  Defendants have not provided any examples or support for that allegation and in fact none of the evidence that Divya Narendra was not a Member of ConnectU on the filing date (except the Wachovia documents) was generated after this action began.  Moreover, there is no evidence that the Wachovia documents were "litigation-inspired."  Defendants also complain that the Wachovia documents were not produced under an order in the California case (Dkt. 272 at 6).  As ConnectU explained at the October 24-25, 2006 hearing,

# IV.    SUIT WAS PROPERLY FILED BY CONNECTU LLC

Federal Rule of Civil Procedure 17(a) and the real party issue were fully briefed in the first round of briefs related to the motion to dismiss, including ConnectU's argument that Defendants' real party objection was untimely (Dkt. 107 at 15-16 & n. 12). These are not issues on which the Court requested briefing, but Defendants have reopened them nonetheless, thereby subjecting ConnectU to further unnecessary expense.

The real party section of Defendants' brief is full of inconsistencies with their other briefs, as shown below. They also confuse and conflate the concepts and law of real parties at the time of filing and at the time of ratification, standing, ratification, indispensable parties, and diversity. ConnectU attempts to sort them out below.

Defendants' current argument appears to be that ConnectU was not a real party had no right to sue, that Divya Narendra was the real, indispensable party on the filing date, and that if he had been joined on the filing date, as they say he should have been, he would have defeated diversity. However, as explained below, Mr. Narendra was not a real party on the filing date because his intent was that ConnectU own his pre-filing rights, and ConnectU derived the right to sue through such intent and through its diverse Members, Cameron and Tyler Winklevoss.

## A.    At The Time Of Filing Divya Narendra Had Assigned All Of His Rights To ConnectU LLC

Defendants argue there is no evidence of a pre-filing assignment of the founders' intellectual property rights and rights to sue, related to harvardconnection.com and connectu.com. (Dkt. 272 at 13.) To the contrary, each of the founders signed a declaration on June 12, 2006 stating that "As of September 2, 2004, I viewed ConnectU LLC as the formal

---

such documents were not located until shortly before they were produced in this case, and the parties have an agreement that documents produced in either case can be used in the other case.

entity to run the connectu.com website, and it was my intention that it owned all rights I held as a

Harvard Connection founder." Those declarations were submitted to the Court on June 12, 2006

(Dkt. 183-185) with ConnectU's Supplemental Brief (Dkt. 181, 187). Divya Narendra and

Cameron Winklevoss were deposed regarding such statement and affirmed it. Defendants had

the opportunity to depose Tyler Winklevoss regarding such statement during his October 3, 2006

deposition, but chose not to do so. (Schoenfeld Decl., Ex. A at 154-56, 158-59; Ex. B at 270-73;

Ex. C at 63-64, 171-72, 206-07, 317-21, 324-26.)[6] Cameron Winklevoss testified to the same

effect as the Rule 30(b)(6) witness for ConnectU. (Schoenfeld Decl., Ex. D at 221-22, 289-93).[7]

---

[6] The declarations are part of the record (see August 24, 2006 Order, Dkt. 230 at 4-6). The Court cited a different portion of Divya Narendra's declaration and recognized Defendants' opportunity to cross-examine Mr. Narendra regarding the declaration (*id*. at 12-13, 16). The Court instructed the parties not to cite to the record. However, Defendants' arguments go beyond the scope of the October 24-25, 2006 hearing and reopen issues from earlier briefs filed in connection with Defendants' motion to dismiss. ConnectU therefore requests the Court's indulgence and acceptance of the attached exhibits, without which, in fairness, ConnectU cannot respond to Defendants' new arguments.

[7] On page 221 of the ConnectU Rule 30(b)(6) transcript, Facebook Defendants pointedly asked the witness if the Harvard Connection founders had any pre-July 2005 nonprivileged discussions regarding transferring to ConnectU their trade secret rights or claims against Defendants. He essentially answered no. Defendants made much of this in their original motion to dismiss and amended reply brief (Dkt. 100 at 8; Dkt. 111 at 9), ignoring the fact that they expressly limited their question to nonprivileged discussions, and did not ask if any such privileged discussions occurred. Each of the founders' June 12, 2006 declarations also states that "Prior to July 2005, I had discussions with counsel about ConnectU's ownership of my rights in the website that was to be known as Harvard Connection, and my rights in the connectu.com website." Divya Narendra and Cameron Winklevoss were deposed on this statement as well, and Defendants could have asked Tyler Winklevoss about this statement during his October 3, 2006 deposition but chose not to do so. (Schoenfeld Decl., Ex. A at 159-60; Ex. C at 322-24) In their original motion to dismiss, Defendants also made much of the fact that one of the original programmers of the Harvard Connection code, Mr. Mavinkurve, had not assigned his copyrights to ConnectU (Dkt. 100 at 6, 15). ConnectU responded to this argument (Dkt. 107 at 10-11), and since that time Mr. Mavinkurve has assigned all of his rights in the Harvard Connection code, including copyrights, to ConnectU (Schoenfeld Declaration, Ex. E). As explained in ConnectU's original opposition (Dkt. 107 at 8-11), its copyright claim is still held hostage by Defendants' stranglehold on discovery, and they still have not produced facebook.com launch code or pre-launch code, which they either failed to preserve or destroyed.

Paragraph 13.5 of the Operating Agreement confirms the founders' declaration and deposition testimony, and their pre-filing intent, that ConnectU held whatever pre-filing rights they may have had, including intellectual property rights and rights to sue.  Facebook Defendants concede this (although ConnectU disagrees with their characterizations):  "ConnectU's operating agreement memorializes the parties' [pre-filing] intent that the general partnership assets would be transferred for membership interests in the LLC in paragraph 13.5."  (Facebook Defendants' Pre-Hearing Statement, Dkt. 251 at 3)  This should put to rest Defendants' other, inconsistent argument that Paragraph 13.5 is vague and that the rights it transferred from the founders to ConnectU LLC are uncertain.  (Dkt. 272 at 13-14.)

Defendants cite no law requiring the founders' pre-filing assignments to be in writing. Facebook Defendants also conceded the founders' pre-filing assignment of such rights (although ConnectU disagrees with the supposed *quid pro quo*, and that Divya Narendra was a Member of ConnectU LLC on the filing date):  "The principals of the [Harvard Connection] partnership received membership interests in ConnectU LLC in exchange for an assignment of all rights, title, and interests each had vested in the partnership.  . . . Mr. Narendra was a Member of ConnectU LLC at its formation."  (*Id.* at 1; *see also id.* at 3:  'Narendra continued as a partner . . . up until the time the LLC was formed, and his interest automatically converted into a membership interest in exchange for his transferring his rights in the partnership.")  Also, under Defendants' retroactive Operating Agreement argument (Dkt. 266 at 11), the Operating Agreement establishes that ConnectU was the real party, with standing, on the filing date. Although ConnectU argues that the Operating Agreement cannot affect diversity on the filing date, Defendants should be held to the full logical implications of their retroactivity argument.

So, as of the filing date, who was the real party, with the right to sue?  The answer is as follows:

1.  ConnectU, because the founders intended that it own any pre-filing rights they may have had; and/or

2.  ConnectU, because Cameron and Tyler Winklevoss were Members on the filing date and ConnectU essentially stands in the shoes of the Members;[8] and/or

3.  Cameron and Tyler Winklevoss, because they were Members on September 2, 2004.

Because the founders gave up all their rights, ConnectU owned all of the rights belonging to the founders, and because the founders have agreed to be bound by the results of this action (Dkt. 107 at 14), ConnectU had standing to sue,[9] was the real party in interest on the filing date, and was the only necessary party to the suit at that time.

---

[8] Facebook Defendants also conceded in a June 15, 2006 letter that a suit by ConnectU is really a suit by its Members: "Even if your assertion were correct that they [the Winklevoss twins] are NOT plaintiffs, a proposition with which Facebook disagrees, they are parties nonetheless, because they are counter-defendants." (emphasis added) (Schoenfeld Declaration, Ex. F).

[9] In *Vermont Agency of Nat'l Resources v. United States ex rel. Stevens*, the Supreme Court stated in no uncertain terms that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor." 529 U.S. 765, 773 (2000); *see also* ConnectU's Opp. to Mot. to Dismiss, Dkt. 107 at 14. Defendants' discussion of standing in their Reply (Dkt. 111 at 2) relates solely to standing to invoke the jurisdiction of a federal court based on a federal claim. In their briefs, Defendants have used the terms "standing" and "real party in interest" interchangeably. One prominent commentator has stated that "courts and attorneys frequently have confused the requirements for standing with those used in connection with real party in interest." 6A C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 1542 at 330-31 (2d ed. 1990). In an attempt to shed some light on the confusion, the same commentator has explained that the standing doctrine "has been very much tied to litigation asserting the illegality of governmental action . . . [and] [c]laims of private wrongdoing ordinarily are asserted by persons obviously having the enforceable interest . . . such problems as arise commonly are handled in terms of defining private causes of action or of identifying the real party in interest." *Id.* § 3531 at 340-41. As this is a private cause of action, and there is no issue related to the illegality of governmental action, the issues should be addressed by identifying the real party in interest, and not through use of the standing doctrine. *See Infodek, Inc. v. Meredith-Webb Printing Co.,* 830 F.Supp. 614, 619 (N.D. Ga. 1993) ("Because Plaintiff alleges a personal injury fairly traceable to the Defendant's conduct and likely to be redressed by the requested relief, it has established standing to sue. Nevertheless, Defendant disputes whether Plaintiff possesses the interest sought to be enforced, which is actually a question of Plaintiff's status as a real party in interest. . .") (internal citations omitted). Accordingly, to the extent Defendants argue that ConnectU did not have standing to file suit, their argument is misplaced.

### B.   Divya Narendra Was Not and Is Not A Real Party or Ratifier Under Rule 17(a)

To date, the parties have focused on the real party issue and ratification under Fed. R.

Civ. P. 17(a) as if the Operating Agreement never existed.  This may sound suspect, in view of

the fact that references to the Operating Agreement permeate the 21 briefs the parties have filed

in connection with this motion.  But consider Defendants' argument:  they say the Harvard

Connection founders were the real parties (Defendants' Motion to Dismiss, Dkt. 100 at 4: ". . .

one or more of Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra ('the Real

Parties')"), and that they must be the ratifiers under Rule 17(a).  This argument ignores the

founders' assignment to ConnectU of their intellectual property rights and rights to sue, and the

fact that the motion to dismiss was filed after the Operating Agreement was signed.  Moreover,

contrary to Defendants argument (Dkt. 100 at 15), the issue is not who the real party was when

the Complaint was filed, but who is the real party at the time ratification is called for.  *Motta v.*

*Resource Shipping & Enter. Co.*, 499 F. Supp. 1365, 1369 (S.D.N.Y. 1980) (rejecting

defendant's argument that because action was not originally brought by real party in interest,

ratification was nullity, court stated that "defendant's argument is soundly countered by the Rule

on which it seeks to rely.").  Fed. R. Civ. P. 17 assumes that the real party did NOT file the

lawsuit, and looks to the real party to ratify, join, or substitute when the issue arises.  Defendants

recognize this principle ("[t]he person holding title to the claim . . . is the real party in interest",

(Dkt. 272 at 14), but misapply it to the analysis.

It was the founders' intent -- before the Complaint was filed -- that all their rights would

be owned by ConnectU (*see supra* Section III.A), and they formalized such intent in the

Operating Agreement.  But let's assume, as does Defendants' argument, that such assignments

never occurred, and that ConnectU filed suit on September 2, 2004.  If Defendants later argued

that ConnectU was not the real party and that the founders were the real parties because they

14

never assigned their rights, then ratification by the founders under Rule 17(a) would "have the same effect as if the action had been commenced in the name of the real party in interest," namely, the founders.

Now let's add the founders' assignments to the analysis. For purposes of this point, we can ignore for the moment the founders' pre-filing intent that ConnectU would own their rights.[10] When the founders signed the Operating Agreement on August 5, 2005, ConnectU was confirmed in writing as the real party. Defendants said so in their first brief on this motion (Dkt. 100 at 12: "Plaintiff was not assigned any of the state law claims until August 5, 2005 . . . As a result no Article III case or controversy existed as to those claims until two months ago.").[11] Then, on October 14, 2005, Defendants filed a motion to dismiss. At that point in time, if the Operating Agreement itself did not ratify the filing by ConnectU, the proper party to ratify the filing of the Complaint was ConnectU. Under Rule 17(a), ratification by ConnectU had "the same effect as if the action had been commenced in the name of the real party in interest," namely, ConnectU. If only the founders had been the original plaintiffs, Defendants surely would have argued that they were not the real party after the Operating Agreement was signed.

In signing the Operating Agreement, the founders were either ratifying their pre-filing intent and assignment (ConnectU's argument) or assigning their rights to ConnectU for the first

---

[10] The effect of the founders' pre-filing intent was that Divya Narendra was not a real party on the filing date. Such intent was later confirmed in the Operating Agreement. The reason we can ignore such intent at the moment is that Defendants raised the real party argument after the Operating Agreement was signed. If they had raised the argument before the Operating Agreement was signed, a different analysis could apply.

[11] In their Amended Reply to ConnectU's opposition to the motion to dismiss (Dkt. 118 at 1), Facebook Defendants argued that "Plaintiff was not the purported real party in interest as to any of the state-law claims until August 2005." In their July 27, 2006 court-ordered brief, Facebook Defendants said "ConnectU, by nature of the Operating Agreement, stands in the shoes of its members who signed the agreement." (Dkt. 225 at 8). Thus, Facebook Defendants have acknowledged that ConnectU was the real party after the Operating Agreement was signed.

time (Defendants' argument).  In either case, ConnectU was the real party when Defendants

raised the issue, and therefore ConnectU was the proper party to ratify.[12]

### C.    Divya Narendra Was Not and Is Not A Necessary Party Under Rule 19(a)

Merely having an interest in a litigation does not make a party necessary.  *Generadora*

*De Electricidad del Caribe, Inc. v. Foster Wheeler Corp.*, 92 F. Supp. 2d 8, 15-17 (D.P.R. 2000).

Divya Narendra transferred his rights to ConnectU and waived any right to file a separate action.

Fed. R. Civ. P. 19(a) provides in relevant part that:

> A person who is subject to service of process and whose joinder
> will not deprive the court of jurisdiction over the subject matter of
> the action shall be joined as a party in the action if (1) in the
> person's absence complete relief cannot be accorded among those
> already parties, or (2) the person claims an interest relating to the
> subject of the action and is so situated that the disposition of the
> action in the person's absence may (i) as a practical matter impair
> or impede the person's ability to protect that interest or (ii) leave
> any of the persons already parties subject to a substantial risk of
> incurring double, multiple, or otherwise inconsistent obligations by
> reason of the claimed interest. If the person has not been so joined,
> the court shall order that the person be made a party.

None of these descriptions applies to Divya Narendra.  Here, Mr. Narendra's absence will

not result in a situation where "complete relief cannot be accorded among those already parties."

---

[12] ConnectU argued in its original opposition that the Operating Agreement ratified ConnectU's right to sue (Dkt. 107 at 14).  Counsel, speaking for the founders, also said that the founders authorized the filing and maintenance of the action and agree to be bound by the result, and that this statement alone satisfies Rule 17(a), citing cases (Dkt. 107 at 13) (this -- and ¶ 13.5 of the Operating Agreement -- are also the response to Defendants' argument, citing *Acton*, 668 F.2d 76, 78 (1st Cir. 1982), that "Unless Mr. Narendra and his partners are bound by the results of the ConnectU lawsuit, they would remain free to commence a new action on their own claims;" Dkt. 272 at 17).  On further reflection, although these statements are true, they are unnecessary because Defendants raised the real party issue after ConnectU had become the real party.  As of August 2005, ConnectU had the right to ratify the filing.  If Defendants had raised the real party issue before the Operating Agreement was signed, these points may have been more important.

As Facebook Defendants argued in their court-ordered July 27, 2006 Brief, "[a]s a practical matter, all relevant parties are before this Court and part of this litigation." (Dkt. 225 at 8).

The litigation will not "impair or impede" Mr. Narendra's ability to protect his interests since all of his interests are and have been owned by ConnectU LLC since before the filing date. Finally, Defendants will in no way be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations" inasmuch as Mr. Narendra has had no right to sue on the current claims since before the filing date, and he waived any right to assert any such separate claims. *See E-Z Bowz, L.L.C. v. Prof'l Prod. Research Co.*, No. 00 Civ 8670 CTS GWG, U.S. Dist. 2003 WL 22064257 at *4-5 (S.D.N.Y. Sept. 5, 2003) (holding that the defendant would not be subject to a substantial risk of incurring inconsistent obligations where the former co-owner of certain patents had relinquished her interest in the patents as well as any rights of action relating to the patents and concluding that the rights of the parties could be fairly adjudicated without joinder of the absent former co-owner).

### D.    Even If Rule 19(a) Applies, Rule 19(b) Does Not Require Dismissal

Defendants are arguing that deprivation of subject matter jurisdiction is an example of lack of feasibility under Fed. R. Civ. P. 19(a). This is incorrect. Under Fed. R. Civ. P. 19(b), joinder cannot be imposed, whether feasible or not, for the purpose of defeating subject matter jurisdiction.

If it is determined that the joinder of Divya Narendra would destroy diversity (which as discussed below it should not), then joinder is not feasible. The purpose of Fed. R. Civ. P. 19 (and Fed. R. Civ. P. 17) is to assure that the case is prosecuted by all of the real parties in interest. Neither rule can be used to create or defeat diversity. As the Supreme Court in *Lincoln Property Co. v. Roche* stated, "Both Rules [17(a) and 19], we note, address party joinder, not federal-court subject-matter jurisdiction. See Rule 82 ('[The Federal Rules of Civil Procedure]

17

shall not be construed to extend or limit the jurisdiction of the United States district courts . . . .'); Advisory Committee's Notes on Fed. Rule Civ. Proc. 19, 28 U.S.C. App., pp 696-698."  126 S.Ct. 606, 613-14 (2005).

Defendants acknowledge that the Court is then required to determine "whether in equity and good conscience the action should proceed."  (Dkt. 272 at 16-17.)  However, Defendants never discuss this analysis or why the Court should dismiss this action despite the policy that courts will dismiss only when serious harm results from nonjoinder.  *See, e.g., Drankwater v. Miller*, 830 F. Supp. 188, 191 (S.D.N.Y. 1993) (preference for non-dismissal).

The factors to be considered by the Court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.  Fed. Rule Civ. P. 19(b).  None of these factors weighs in favor of dismissal since Divya Narendra's rights have been owned by ConnectU LLC since before the filing date (ConnectU's argument), or since the Operating Agreement (Defendants' argument), and in any event he has waived any right to assert separate claims.

### E.      Even If Divya Narendra Is Joined, Diversity Will Not Be Destroyed

If a party is added without whom the case cannot continue, the Court must reassess jurisdiction at the time of the change.  *See Carlton v. BAWW, Inc., 751 F.2d 781, 785 (5th Cir. 1985);* Fed. Rule Civ. P. 21.  Since the filing of this suit, Defendant Zuckerberg became a citizen of California and more recently Divya Narendra became a citizen of Massachusetts.  Mr. Narendra is also no longer a Member of ConnectU LLC because ConnectU LLC was merged

into ConnectU, Inc.  Joinder of Divya Narendra today, although not necessary, therefore would not destroy diversity.[13]

## V.    DEPENDING ON THIS COURT'S RULING, CONNECTU WISHES TO AMEND, OR WILL REFILE

For the reasons fully set forth in ConnectU's Supplemental Brief in Opposition to Motion to Dismiss (Dkt. 182 at 1-4, 15-17) and ConnectU's July 13, 2006 brief (Dkt. 212 at 16-17, 19), if the Court finds diversity as of September 2, 2004, ConnectU wishes to amend, under 28 U.S.C. § 1653 and the Court's May 1, 2006 Order (Dkt. 172 at 7-8), to allege diversity as of the filing date and the date of the Amended Complaint.  ConnectU also wishes to make the amendments set forth in its Motion to Amend (Dkt. 163, which ConnectU withdrew on September 27, 2006, Dkt. 236), to change the original Complaint's allegations of Defendants' residence states to their citizenship states (see May 1, 2006 Order, Dkt. 172 at n. 4), to add Thefacebook LLC as a Defendant, to substitute ConnectU, Inc. for ConnectU LLC (this is also the subject of ConnectU's pending motion, Dkt. 227, 228), and possibly to make other amendments.  Such amendments swallow Defendants' argument that ConnectU's state and common law claims overshadow the copyright claim, and that the Court should decline to exercise supplemental jurisdiction over such claims under 28 U.S.C. § 1367(c).  After such amendments, the Court will have original jurisdiction over the federal, state, and common law claims as of the filing date and the date of the First Amended Complaint.

---

[13] Defendants argued in their motion to dismiss that two to ConnectU's claims are not assignable, namely, its breach or fiduciary duty and fraud claims (Dkt. 100 at  16).  ConnectU responded to such arguments.  (Dkt. 107 at  11)  Defendants now argue without further exposition that "many if not all of the non-copyright claims" (Dkt. 272 at 14) and "many" of ConnectU's claims (Dkt. 272 at 2, 17, n. 5) are not assignable.  Without Defendants' further explanation as to which additional claims are allegedly nonassignable, ConnectU sees no need for a further response.

For the reasons fully set forth in ConnectU's Supplemental Brief (Dkt. 182 at 17-20) and ConnectU's July 13, 2006 brief (Dkt. 212 at 17-19), if the Court finds a lack of diversity on the filing date, the case law requires that any dismissal be without prejudice and gives ConnectU the right to amend or refile, pick up where the case left off before the Court administratively denied some pending motions on September 25, 2006, and carry over discovery from this case to the refiled case. As discussed in ConnectU's Supplemental Brief (*id.*), the parties are completely diverse today and any statute of limitations is tolled.

## VI.    CONCLUSION

For the reasons set forth herein and in the other briefs filed by ConnectU and identified in Ex. G, and in view of the evidence presented at the evidentiary hearings, ConnectU has clearly shown that Divya Narendra was not a Member of ConnectU LLC on the filing date, and was not a real party, and that diversity existed on the filing dates of the original Complaint and First Amended Complaint. Defendants' motion to dismiss therefore should be denied, in which case leave to amend to allege diversity and to make other amendments should be granted. The motions administratively denied on September 25, 2006 should then be reinstated and decided, as set forth in the Court's September 25, 2006 Order. The Court should then issue a scheduling order closing fact discovery four months after the motions are decided, as set forth in the Court's November 18, 2005 Order. In the alternative, if diversity was lacking on September 2, 2004, ConnectU respectfully urges that this Court's Report & Recommendation should recommend that leave to refile should be granted and that the refiled case should pick up where this case stood on September 24, 2006. In either case, the effect of Defendants' motion to dismiss is to assure that this Court has original jurisdiction under both 28 U.S.C. § 1331 and § 1332.

Respectfully submitted,

DATED: January 12, 2006

/s/ John F. Hornick
John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Meredith H. Schoenfeld (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, L.L.P.
901 New York Avenue N.W.
Washington, DC  20001
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

Daniel P. Tighe (BBO# 556583)
Scott McConchie (BBO# 634127)
GREISINGER, TIGHE, and
MAFFEI, L.L.P.
Boston, MA  02110
Telephone:  (617) 452-9900
Facsimile:  (617) 452-0900
dtighe@gtmllp.com
smcconchie@gtmllp.com

Attorneys for Plaintiff and Counterclaim
Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non registered participants on January 12,

2007.

/s/ John F. Hornick _____
John F. Hornick