IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | | |
|---|---|---|
| 611, LLC, et al. | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. CCB-05-3417 |
| U.S. Lubes, LLC, et al. | * | |
| | * | |
| Defendants. | | |

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

## MOTION TO REMAND

Plaintiffs 611, LLC ("611") and American First Management, Inc., ("American First") (collectively "Plaintiffs"), through their undersigned counsel, hereby move to remand this action from this Court to the Circuit Court for Baltimore City.

## INTRODUCTION

On November 14, 2005, Plaintiffs filed this action in the Circuit Court for Baltimore City, alleging breach of contract and breach of fiduciary duty against U.S. Lubes, LLC ("U.S. Lubes"), U.S. Lubes Investors, LLC ("Investors"), William Packer, Sr. ("Packer, Sr."), William Packer, Jr. ("Packer, Jr."), Robert A. Ayerle ("Ayerle"), and David F. Wrubel ("Wrubel") (collectively "Defendants").

In July 2000, Defendant U.S. Lubes was formed under the laws of the State of Delaware.   Complaint ("Compl.") ¶ 13.   The U.S. Lubes Operating Agreement (the "Agreement," attached as Exhibit 1 to the Complaint) was entered into between Defendant Investors, Kendall Energy Group, LLC ("Kendall"), Steven Riviera, Robert Sikora, Robert K. Smith, and Plaintiff American First.  Compl. ¶ 13.   At the time of the

Agreement, Plaintiff American First was a Member of U.S. Lubes, as that term is defined by the Agreement. *Id*. at ¶ 2.

Defendant U.S. Lubes is managed by a Board of Managers ("Board"), which consists of seven managers. *Id*. at ¶ 14. Under the Agreement, Defendant Investors, the majority Member of Defendant U.S. Lubes, has the right to appoint four managers to the Board, while the remaining Members have the right to appoint three managers to the Board. *Id*. at ¶ 14. Under the Agreement, a majority vote of the managers is required to make most decisions on behalf of Defendant U.S. Lubes. *Id*. at ¶ 16. On July 26, 2000, Defendant Investors appointed Defendant Packer, Sr., Defendant Packer, Jr., Defendant Ayerle, and Defendant Wrubel as Managers of Defendant U.S. Lubes. *See* Members Designation of Managers, attached as Exhibit 2 to the Complaint. On the same date, the remaining Members, including Plaintiff American First, appointed Robert K. Smith, James F. Clements ("Clements"), and Robert H. Sikora as Managers of U.S. Lubes. *Id*. On December 23, 2003, Plaintiff American First transferred its Member interest to Plaintiff 611 in accordance with the Agreement. *See* Letter from James Clements to Defendant Packer, Sr. ("December 23, 2003 letter"), attached hereto as Exhibit 1.

This suit arises out of the mismanagement of Defendant U.S. Lubes by Defendants Investors, Packer, Sr., Packer, Jr., Ayerle, and Wrubel. In July 2000, when Defendant U.S. Lubes was formed, Defendant Investors, in addition to its capital contribution and guarantee, loaned an additional $410,000 to Defendant U.S. Lubes. Compl. ¶ 18. In July 2003, Defendant Investors received an additional approximately five percent member interest for either loans made or guarantees on loans made by other entities to Defendant U.S. Lubes from formation through December 31, 2001. *Id*. at ¶ 19.

Defendant Investors, however, included the initial loan of $410,000 in calculating both Defendant Investors' initial equity in Defendant U.S. Lubes and again in July 2003 when Defendant Investors' equity was increased by an additional five percent. *Id.* at ¶ 20. As a result of this "double-dipping" by Defendant Investors, Plaintiffs' member interest was significantly diluted. *Id.* at ¶ 21.

In perpetrating this scheme, Defendant Investors also breached the Agreement by failing to comply with funding notice provisions designed to provide notice to minority interests, including Plaintiffs, of any capital contributions. *Id.* at ¶¶ 28-33. Furthermore, Defendants breached, and continue to breach, the Agreement by denying Plaintiffs access to company records. *Id.* at ¶¶ 34-37.

Defendants also engaged in improper interested transactions with affiliates of Defendants Packer, Sr. and Packer, Jr. that constitute self-dealing and are unfair to Defendant U.S. Lubes. *Id.* at ¶¶ 38-42. These interested transactions were entered into by managers representing the controlling member of Defendant U.S. Lubes, Defendant Investors, and have caused Defendant U.S. Lubes to enter into several transactions with Defendants Packer, Sr. and Packer, Jr. that are interested transactions. *Id.*

Plaintiffs filed this suit in the Circuit Court for Baltimore City on November 14, 2005. On November 22, 2005, Plaintiffs served Defendants U.S. Lubes and Investors by delivering a copy of the summons and Complaint by hand to their designated agents in Delaware. On December 9, 2005, Plaintiffs served Defendants Packer, Sr., Packer, Jr., Ayerle, and Wrubel by delivering copies of the summons and Complaint via Federal Express to their authorized counsel in New York. Defendants filed a Notice of Removal ("Removal Notice") on December 21, 2005 stating that removal was proper based on

diversity jurisdiction. In order for this Court to have diversity jurisdiction under 28 U.S.C. §1332, there must be "complete diversity" between the parties; in other words, no defendant may be a citizen of the same state as any plaintiff. *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 187 (1990). For purposes of determining the citizenship of a limited liability company ("LLC"), courts look to the citizenship of the members or owners of the LLC. *See, e.g., General Tech. Applications, Inc. v. Exro LTDA*, 388 F.3d 114, 121 (4th Cir. 2004). Defendants, however, claim that neither Plaintiff was a "Member" of Defendant U.S. Lubes at the time of suit. Removal Notice ¶¶ 20-29. Defendants argue that, because Plaintiff American First assigned its ownership interest to Plaintiff 611, Plaintiff American First is no longer a Member of Defendant U.S. Lubes. *Id.* at ¶ 26. Defendants thus argue that Plaintiff 611 is not a Member of Defendant U.S. Lubes because it failed to fulfill the requirements, as outlined in the Agreement, for becoming a Substitute Member of Defendant U.S. Lubes. *Id.* at 25. As demonstrated below, Plaintiff 611 did in fact fulfill the requirements for becoming a Substitute Member as set forth in the Agreement. Even if Plaintiff 611 did not fulfill the requirements to be a Substitute Member, Defendants should be estopped from asserting that Plaintiff 611 is not a Member because it has consistently considered Plaintiff 611 to be a Member, a position upon which Plaintiff 611 has relied to its detriment. Furthermore, even if Plaintiff 611 is somehow not a Member, Plaintiff American First remains, under the Agreement, in its status as a Member of U.S. Lubes. Finally, because Plaintiff 611 possesses, at the very least, an ownership interest in Defendant U.S. Lubes, it is considered a member or owner, and its citizenship must be considered in determining the citizenship of Defendant U.S. Lubes. Accordingly, because both Defendant U.S. Lubes

and Plaintiffs are citizens of the State of Maryland, complete diversity does not exist and this case must be remanded to the Circuit Court for Baltimore City.

**ARGUMENT**

### I.      Plaintiff 611 is a Member of Defendant U.S. Lubes Under the Agreement because it Satisfied All Requirements for Transfer of a Member Interest Under the Agreement.

Under the Agreement, an entity is a "Member" of U.S. Lubes if that entity is an "Initial Member, a Substitute Member or an Additional Member." Agreement § 1.30.  In this case, Plaintiff 611 satisfies all requirements under the Agreement to be a Substitute Member of U.S. Lubes.

The Agreement defines a Substitute Member as "an Assignee who has been admitted as a Member pursuant to Section 12.2 [of the Agreement]." Agreement § 1.35. Section 12.2, in relevant part, provides:

> An assignee of a [sic] Interest shall be admitted as a Substitute Member and admitted to all the rights of the Member who Disposed an Interest to such Assignee only upon (a) the approval of a Majority of the Members unless such Disposition was in accordance with the provisions of Section 10 and (b) upon such Assignee's execution and delivery of an Admission Agreement.  The Members may grant or withhold the approval of such admission for any reason in their sole and absolute discretion.  If so admitted, the Substitute Member shall have all the rights and powers and be subject to all the restrictions and liabilities of the Member which shall have Disposed an Interest to such Substitute Member to the extent of the Interest so disposed. The admission of a Substitute Member, without more, shall not release the Member assigning an Interest to such Substitute Member from any liability to Company that may have existed prior to such admission.

In this case, Plaintiff 611 is a Substitute Member of Defendant U.S. Lubes because it (a) acquired a Member interest in Defendant U.S. Lubes as the result of a

permitted disposition under § 10 of the Agreement, and (b) Plaintiff 611 executed and delivered an "Admission Agreement."

Section 10.2 of the Agreement sets forth the "permitted dispositions" by which a Member interest may be assigned from one entity to another:

> (a) Dispositions from one Member to another;
> (b) Dispositions from a Member, including a deceased Member or his estate, spouse, parents, descendants, or to a trust or trusts for the benefit of any one or more of the foregoing;
> **(c) Dispositions from a Member to an Affiliate of such Member;**
> (d) Dispositions from a Member which is not a natural person to the owners of the equity interest in such Member; and
> (e) If the Additional Capital Date shall occur, pledges of or grants of security interests in a Member's Interest to a commercial lending institution as security for loans, the proceeds of which shall be used by such Member solely to make Contributions or Member Loans pursuant to Section 6.2.

(emphasis added).

In this case, the transfer of the Member interest from Plaintiff American First to Plaintiff 611 was a permitted disposition because Plaintiff 611 was an Affiliate of Plaintiff American First, who was a Substitute Member under the Agreement. *See* Agreement § 12.2.2 (providing for the admission of Plaintiff American First, among others, as Substitute Members). Section 1.5 of the Agreement defines "Affiliate" as:

> (a) with respect to any corporation or limited liability company, any officer, any director, manager or beneficial owner (and any parent, spouse or adult child of such beneficial owner) of 10% or more of the outstanding equity securities of such corporation or limited liability company, (b) with respect to any partnership, any general partner or beneficial owner (and any parent, spouse or adult child of such beneficial owner) of 10% or more of the equity interests in such partnership, and (c) with respect to any entity (including a corporation, a limited liability corporation or a partnership) any person or entity directly

> or indirectly, controlling, controlled by or under common control with, such person or entity, and, for purposes of this definition, **"control"** shall mean the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity, whether through the ownership of voting securities, by contract or otherwise.

In this case, Plaintiff 611 was an Affiliate of Plaintiff American First because, at the time of the transfer, both entities were under the common control of Susan M. Ruberg ("Ruberg"). *See* Affidavit of James F. Clements, at ¶¶ 5-7, attached as Exhibit 2 (hereinafter "Clements Affidavit"). At the time of the transfer, Ruberg was a member of Plaintiff 611 who possessed the power to direct or cause the direction of the management and policies of Plaintiff 611 through the ownership of a majority member interest. *Id*. at ¶ 6. At the time of the transfer of the Member interest from Plaintiff American First to Plaintiff 611, Ruberg was a majority shareholder of Plaintiff American First with possession of the power to direct or cause the direction of the management and policies of Plaintiff American First through the ownership of these shares. *Id*. at ¶ 5. Because, at the time of the transfer of the Member interest, both Plaintiff 611 and Plaintiff American First were "controlled" (as that term is defined in the Agreement) by Ruberg, these two entities were "Affiliates" as that term is defined by the Agreement. *Id*. at ¶ 7. Therefore, because the transfer of the Member interest in Defendant U.S. Lubes was from one entity to its Affiliate, that transfer satisfies the requirements for a "Permitted Disposition" under § 10.2 of the Agreement.

Moreover, Plaintiff 611 satisfied the requirements of § 12.2.1 by executing and delivering an Admission Agreement. In the December 23, 2003 letter, Clements, on behalf of both Plaintiff 611 and Plaintiff American First, sent to Defendants a memorandum informing them that Plaintiff American First conveyed its interest in

Defendant U.S. Lubes to Plaintiff 611. *See* Exh. 1. This Admission Agreement, which on its face reflects the transfer of the Member Interest between Plaintiffs (and Affiliates) 611 and American First, was therefore executed and delivered to Defendants.

Once the Admission Agreement was executed and delivered to Defendant U.S. Lubes, Plaintiff 611 satisfied the requirements to be a "Substitute Member," and thereafter possessed all rights and powers of a Member under the Agreement. *See* Agreement § 12.2 (stating that a "Substitute Member shall have all the rights and powers and be subject to all the restrictions and liabilities of the Member which shall have Disposed an Interest to such Substitute Member"). As a Member of Defendant U.S. Lubes, the citizenship of Plaintiff 611 is determinative of the citizenship, for diversity of citizenship purposes, of Defendant U.S. Lubes. Because Plaintiff 611 is a citizen of the State of Maryland, Defendant U.S. Lubes is therefore also a citizen of the State of Maryland. The existence of two adverse litigants from the same state destroys diversity jurisdiction, and thus this action must be remanded to the Circuit Court for Baltimore City.

## II. Defendant U.S. Lubes Should be Estopped from Asserting that Plaintiff 611 is Not a Member.

Despite their receipt of the December 23, 2003 letter, Defendants now assert that Plaintiff 611 is not a Member of Defendant U.S. Lubes because Plaintiff 611 "never filed with U.S. Lubes a copy of the instrument by which it obtained American First's Interest, and it has never executed and delivered an Admission Agreement." Removal Notice ¶ 26. Such an assertion, however, is not only false, as demonstrated above, but also contradicts the position consistently taken by Defendant U.S. Lubes since December 2003, a position upon which Plaintiffs have relied in their interactions with Defendants.

Defendants should not be permitted to advance a position for the sole purpose of supporting their Removal that is completely contrary to the position they have taken since Plaintiff 611 acquired the Member interest of Plaintiff American First in December 2003.

Ever since their receipt of the December 23, 2003 letter, Defendants have considered Plaintiff 611 to be a Member of Defendant U.S. Lubes.  Although Defendants were made aware of the transfer of the Member Interest, at no point prior to the filing of the Removal Notice did they assert that Plaintiff 611 was not a Member nor did they ever require or request any additional documentation or information from Plaintiff 611. Instead, from that point forward, Defendants treated Plaintiff 611 as a Member, without ever informing Plaintiff 611 or Clements that they had purportedly not satisfied the requirements to be a Member of Defendant U.S. Lubes.

Records executed and maintained by Defendants indicate that they treated Plaintiff 611 as a Member from at least the receipt of the December 23, 2003 letter.  On Defendant U.S. Lubes's records for the year 2003, entitled "Balance-Sheets Compiled" and attached hereto as Exhibit 3, Defendant U.S Lubes compiled a table setting forth the current liabilities and long term debt of the Company, including the capital of all of its Members.  The balance sheets clearly provide for "Members' Capital" to be listed in chart form.  At no point, however, does this record indicate the equity or capital of any non-Member entity.  Had Plaintiff 611 not been a Member of Defendant U.S. Lubes, as Defendants *now* contend, a record of the liabilities, debts, and assets of Defendant U.S. Lubes would logically not have included Plaintiff 611's capital within the classification "Members' Capital."   By including Plaintiff 611's capital within the classification

"Members' Capital," this document demonstrates that Defendants considered Plaintiff 611 to be a Member of Defendant U.S. Lubes as early as 2003.

This conclusion is bolstered by Defendant U.S. Lubes's tax return for the year 2003. On its 2003 IRS Form 1065, entitled U.S. Return of Partnership Income, Defendant U.S. Lubes includes a Schedule K-1 for each Member of Defendant U.S. Lubes, including Plaintiff 611. The inclusion of the Schedule K-1 for Plaintiff 611, attached hereto as Exhibit 4, demonstrates, at the very least, that Defendant U.S. Lubes recognized the transfer of the Member interest from Plaintiff American First to Plaintiff 611 in 2003. More importantly, however, when prompted on the Schedule K-1 to identify the status of Plaintiff 611 in its business framework, Defendant U.S. Lubes clearly and unequivocally identified Plaintiff 611 as a "limited liability company member" by affirmatively checking a box indicating such a status. Despite this affirmative identification of Plaintiff 611 as a "limited liability company member" on its 2003 tax return, a document that was filed under penalty of perjury, Defendants now disingenuously choose to adopt the opposite position.

This affirmative identification as a "Member" on the 2003 tax return was not an isolated occurrence. Instead, Defendant U.S. Lubes's 2004 tax return indicates its steady and persistent adherence to its position, now abandoned, that Plaintiff 611 is a Member. On the 2004 K-1, completed by Defendant U.S. Lubes and filed with its 2004 IRS Form 165, attached hereto as Exhibit 5, Defendant U.S. Lubes once again affirmatively identifies Plaintiff 611 as a "Limited partner or other LLC member." Furthermore, the 2004 K-1 contains a chart entitled "Current Year Increases (Decreases)). On this chart, Defendant U.S. Lubes has included information pertaining to Plaintiff 611. This

information includes "Accrued Interest to Member" and "Accrued Wages to Members." Had Defendant U.S. Lubes not considered Plaintiff 611 to be a Member, it would not have included information under this label. Despite its consistent and affirmative identification of Plaintiff 611 as a Member, Defendant U.S. Lubes now flees from such a characterization.

Other tax documents indicate clearly that Defendant U.S. Lubes consistently considered Plaintiff 611 to be a Member prior to the filing of the Removal Notice. For example, as part of its 2004 tax returns, Defendant U.S. Lubes completed and filed a Connecticut state tax form entitled, "Schedule CT K-1 Member's Share of Certain Connecticut Items, attached hereto as Exhibit 6. When prompted to complete a box entitled "Member's Information," Defendant U.S. Lubes entered information relating solely to Plaintiff 611. Defendant U.S. Lubes's clear and affirmative identification of Plaintiff 611 as a Member on this form demonstrates its longstanding belief that Plaintiff 611 has been a Member ever since the transfer of the Member interest.

Defendants' consideration of Plaintiff 611 as a Member, however, is not limited to these documents. Documents authored by Defendant Packer, Sr. indicate that he considered Plaintiff 611 to be a Member of Defendant U.S. Lubes from the time of its acquisition of the Member interest of Plaintiff American First. In a letter dated June 21, 2005, attached hereto as Exhibit 7, Defendant Packer, Sr. refers to Clements as a "great partner and unit holder in U.S. Lubes for almost four years." Although Defendants claim in the Removal Notice that the status of the entity controlled by Clements changed, this correspondence indicates that Defendant Packer, Sr. believed that, despite the December 2003 transfer, Clements's status did not change. The fact that Defendant Packer, Sr.

continued to believe that Clements's status did not change indicates that he believed that the status of the entity controlled by Clements had also not changed.

Defendants' treatment of Plaintiff 611 with regard to capital contributions also leads only to one conclusion – that Defendants considered Plaintiff 611 to be a Member of Defendant U.S. Lubes. On September 19, 2005, Defendant U.S. Lubes sent a letter ("September 19, 2005 letter"), attached hereto as Exhibit 8, to all Members describing a proposed capital contribution request in which Defendant U.S. Lubes requested "additional contributions from various shareholders," including Plaintiff 611. The Agreement, however, makes clear that capital contributions may only be requested from "Members" of Defendant U.S. Lubes:

> 6.2 **Additional Contributions and Member Loans**. In the event the Additional Capital Date shall occur, thereafter the Board of Managers may determine from time to time to request additional Contributions or loans from the **Members** ("**Member** Loans"). In such event, the Board of Managers shall give notice (a "Funding Notice") to all **Members** in writing at least ten (10) business Days prior to the date on which such additional contribution or **Member** Loan shall be due. Each Funding Notice shall set forth the amount of additional Contribution or **Member** Loan needed, the purpose for which such additional Contribution or **Member** Loan needed, and the date by which the **Members** shall contribute or lend. Within ten (10) Business Days after the date of a Funding Notice, the **Members** shall conduct a meeting of **Members**, and by a Majority of the **Members** shall determine the number of additional units to be assigned in return for the aggregate additional Contribution or the terms and conditions for the **Member** Loans (which may include, without limitation, assignment of Units or warrants or options to acquire Units), as the case may be. Each **Member** shall be entitled to contribute or lend a share of all additional Contributions or **Member** Loan, as the case may be, equal to the amount thereof multiplied by his Sharing Ratio. No **Member** shall be obligated to make any additional Contribution or **Member** Loan. In the event any

> one or more **Members** shall not make any additional
> Contribution or **Member** Loan requested of such **Member**,
> the other **Members** may make such additional Capital
> Contributions or **Member** Loans, as the case may be, up to
> the aggregate amount set forth in the applicable Funding
> Notice, in proportion to their respective Sharing Ratios or
> in such other proportion as such **Members** shall agree.

(emphasis added).

Although the September 19, 2005 letter does not identify itself as a formal "Additional Capital Date," subsequent correspondence demonstrates clearly that the request for additional capital was governed by Section 6.2 of the Agreement. In an email to counsel for Plaintiff 611, dated October 3, 2005 (the "Email," attached hereto as Exhibit 9), Defendant Wrubel, acting at the time as counsel for Defendant U.S. Lubes, stated that the September 19, 2005 letter was a "proposal for consideration" before formal steps were undertaken under the Agreement:

> There is no pending capital call to be stayed. If you refer to
> Mr. Packer's letter of September 19, 2005 to the [sic]
> **memebrs** of US Lubes in that regard, that letter must be
> understood in the context of a similar letter Mr. Packer sent
> before **Member** Loans were made in 2002. As was the
> case then, the current letter is a proposal for consideration
> before US Lubes' Board of Managers sends a Funding
> Notice and calls a meeting of the **Members in accordance
> with US Lubes' Company Agreement.**

(emphasis added).

In the Email, Defendant Wrubel indicates that the September 19, 2005 letter was intended as a precursor to a Funding Notice, which is part of the formal procedure under § 6.2 of the Agreement for requesting additional capital Contributions from Members. Section 6.2, however, contemplates only two funding options: "Contributions" and Member Loans. Although the limitations on the entities from which a "Member Loan" may be

requested are self-evident, the Agreement also forecloses any entity other than a Member

from making a "Contribution."  Section 1.15 defines "Contributions" as

> **with respect to any Member**, any cash, the net book value of any property (which shall be Gross Asset Value of any property less liabilities assumed with respect to, such property), services rendered, or a promissory note or other obligation to contribute cash or property or to perform services, which a **Member** contributes to the Company. Any reference in this Agreement to the Contribution of a **Member** shall include the Contributions to the Company made by any predecessor in interest of such **Member** in respect of the Interest of such **Member**.

(emphasis added).

By requesting that Plaintiff 611 make a Contribution of capital to Defendant U.S. Lubes,

Defendants clearly demonstrated that they understood Plaintiff 611 to be a Member of

Defendant U.S. Lubes.  Had Plaintiff 611 not been a Member, Defendant U.S. Lubes

would have been unable to solicit or accept a Contribution from it.  In order to gain the

benefits of a Contribution, however, Defendant U.S. Lubes treated Plaintiff 611 as a

Member consistent with its treatment of Plaintiff 611 in its 2003 and 2004 tax returns.

Now that the treatment of Plaintiff 611 as a Member is no longer of any benefit,

Defendants conveniently reverse their prior position and claim shelter under the

Agreement that they apparently disregarded for years.

The Email also demonstrates conclusively that Defendants, in their own words,

considered Plaintiff 611 to be a Member of Defendant U.S. Lubes.  In the Email,

Defendant Wrubel, writing on behalf of Defendant U.S. Lubes, refers to the September

19, 2005 letter, which he states was sent "to the [sic] memebrs of US Lubes."  Exh. 9.

The September 19, 2005 letter, however, was sent to Clements in his capacity as the

Vice-President of Plaintiff 611.  Had Plaintiff 611 not been a Member, Defendant U.S.

Lubes would not have sent that letter to Clements. Moreover, the Email refers to a pending "meeting of the Members in accordance with US Lubes' Company Agreement." Exh. 9. This meeting was clearly intended to discuss Contributions from Members, including, as the September 19, 2005 letter indicates, Contributions from Plaintiff 611. This Email clearly places Plaintiff 611 on the same footing with other Members, conceding not only the status of "Member," but also the application of provisions of the Agreement that apply expressly to "Members." In his own words, Defendant Wrubel concedes that Plaintiff 611 is in fact a Member of Defendant U.S. Lubes.

Despite this persistent regard of Plaintiff 611 as a Member, Defendants now hide behind the Agreement to claim that Plaintiff 611 is in fact not a Member. Defendants' actions, however, appear not to be based so much on their adherence to the provisions of the Agreement, but rather to which position is more beneficial under the circumstances. After years of treating and regarding Plaintiff 611 as a Member, even referring to Plaintiff 611 expressly as a "Member" a month prior to the initiation of this lawsuit, *see* Exh. 9, Defendants now twist their position to fit their goal at hand. The position relied upon to extract additional capital from Plaintiff 611 has now been abandoned so that Plaintiffs' present efforts to litigate in its chosen forum may be thwarted. Defendants should not be permitted to rely on this disingenuous position for their current benefit. It is clear that Defendants have regarded Plaintiff 611 as a Member ever since it received the Member interest from Plaintiff American First.

Plaintiff 611 has relied upon Defendants' position that it is a Member in all of its interactions with Defendant U.S. Lubes. For example, Plaintiff 611's reliance on Defendants' representations that it was a Member led it to engage in negotiations

surrounding a potential capital contribution, as described in Exhs. 7, 8, 9. Had Plaintiff 611 been aware that Defendants did not in fact believe that Plaintiff 611 was a Member, Plaintiff 611 would have participated in Defendant U.S. Lubes's affairs as a non-Member entity to the extent permitted by the Agreement, or would have complied with any additional requirements set forth by Defendant U.S. Lubes for becoming a Member under the Agreement. Defendants, however, never made such additional requests, and instead sought to persuade Plaintiff 611 to engage in activities, beneficial to all Defendants, that could be executed only by a Member. If Defendants truly believed that Plaintiff 611 was never a Member, enticing it to participate in Contributions applicable only to Members would be an action taken in bad faith to the detriment of Plaintiff 611. The only other conclusion, however, is that Defendants concocted this argument solely to frustrate Plaintiff's choice of forum, with complete disregard for its prior and consistent treatment of Plaintiff 611 as a Member.

The rationale underlying Defendants' adjustment of its position is quite transparent: Should this Court determine Plaintiff 611 to be a Member of Defendant U.S. Lubes, there would not be complete diversity of citizenship between Plaintiffs and Defendants, and Defendants' attempts at removal would fail. Defendants should not be permitted to abandon their consistently held position for the sole purpose of supporting their Removal, to the detriment of Plaintiffs. This Court should instead find that Plaintiff 611 is indeed a Member, and thus that this case must be remanded to the Circuit Court for Baltimore City.

### III. Plaintiff American First Remains a Member Until Its Membership Interest is Transferred in Accordance with the LLC Agreement.

Defendants argue that Plaintiff 611 did not fulfill the requirements of the Agreement because it did not execute or deliver an Admission Agreement. Even if this were true, however, there would not be complete diversity because, under the Agreement, Plaintiff American First would remain in its status as a Substitute Member of Defendant U.S. Lubes.

Section 10 of the Agreement, entitled "Disposition of Interests," governs the disposition of a member's interest. Section 10.1 provides:

> **10.1 Restrictions on Disposition**. Except as provided in Section 3.8[1] and Section 11.2,[2] no Member or Assignee may Dispose of all or any portion of such Member's Interest now or hereafter owned beneficially by such Member except as expressly provided for in this Section 10 and in accordance with its terms and conditions, including but not limited to Section 10.6.

Even if Defendants' theory that Plaintiff 611 did not execute and deliver an Admission Agreement is assumed to be accurate, the terms of this provision indicate that Plaintiff American First would retain its Member interest in U.S. Lubes even if Plaintiff 611 did not become a Member. Section 10.1 states clearly that U.S. Lubes will not recognize any transfer of a Member's Interest unless that transfer is done in accordance with the Agreement. Defendants' theory, however, indicates that U.S. Lubes did not consider any transfer of Plaintiff American First's Member interest to be in accordance with the terms and conditions of the Agreement.

Despite the facts and the plain language of the Agreement, Defendants wish to exclude both Plaintiff American First and Plaintiff 611 as Members. Defendants, however, cannot have it both ways. Either Plaintiff 611 fulfilled the requirements to be a

---

[1] This section, entitled "Right to Purchase Interest of Member in Default," is not relevant to this matter.

[2] This section, entitled "Right to Purchase Interest of Bankrupt Member," is not relevant to this matter.

Substitute Member or it did not.  If it did, then it is a Substitute Member and its citizenship is determinative of U.S. Lubes's citizenship.  If it did not, however, the language of the Agreement indicates that the transfer of the Member Interest is invalid.  If that were in fact the case, Plaintiff American First would, under the Agreement, retain its status as a Substitute Member and therefore its citizenship would be determinative of U.S. Lubes's citizenship.  Thus, under any theory, there is a citizen of Maryland on both sides of the litigation, which defeats diversity jurisdiction.

### IV.    Plaintiff 611 is a Member of Defendant U.S. Lubes for Purposes of Diversity of Citizenship.

Even if Plaintiff 611 does not meet the requirements under the Agreement to be a "Member," it is nonetheless a member or owner for purposes of citizenship.  It is well-established that the citizenship of an LLC is determined by the citizenship of each of its individual members or owners.  *See General Tech. Applications, Inc. v. Exro LTDA*, 388 F.3d 114, 121 (4th Cir. 2004); *Tri-Partners, LLC v. Fiorenza*, 2001 WL 333096, at *1 (D.Md. March 1, 2001); *JBG/JER Shady Grove, LLC v. Eastman Kodak Co.*, 127 F.Supp.2d 700, 701 (D.Md. 2001); *see also Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 586 (2004) (stating that "[a]lthough the Court has never ruled on the issue, Courts of Appeals have held the citizenship of each member of an LLC counts for diversity purposes").  Defendants claim, however, that Plaintiff 611 did not fulfill the requirements to be a Substitute Member of U.S. Lubes under the Agreement, and thus its citizenship should not be taken into consideration for purposes of determining diversity in this case.  The case law, however, is not so rigid.  Instead, the case law demonstrates that, because Plaintiff 611, at the very least, possesses an ownership interest in Defendant U.S.

Lubes,[3] it is a member or owner of Defendant U.S. Lubes for purposes of determining its citizenship.

Although Plaintiff 611 maintains that it is a Substitute Member as defined by the Agreement, its citizenship would still be relevant even if it did not fulfill the requirements to be a Substitute Member.  There appears to be no case law defining the term "member" in the context of diversity jurisdiction in any way that limits its application to those entities that are defined as "Members" by the LLC or other association.  Instead, the case law states that the citizenship of an unincorporated business association will include the citizenship of any entity that possesses some ownership in the association.  In *C.T. Carden v. Arkoma Assoc.*, 494 U.S. 185, 195-96 (1990), the U.S. Supreme Court held that the citizenship of a limited partnership (later applied by lower courts to LLCs) is to be determined by examining the citizenship of all partners that make up the limited partnership.  The Court rejected the notion that the citizenship of only the general partners should be considered; instead, it held that the citizenship of all partners, including limited partners, should be considered.  *Id.*  In doing so, the Court found that all interests in the partnership, no matter what level of ownership or control, would be considered for purposes of citizenship:

> [Plaintiff Limited Partnership] asserts that the Fifth Circuit correctly determined its citizenship solely by reference to the citizenship of its general partners, without regard to the citizenship of its limited partners.  Only the general partners, it points out, "manage the assets, control the litigation, and bear the risk of liability for the limited partnership's debts," and, more broadly, "have exclusive and complete management and control of the operations of

---

[3] Defendants' records indicate that Plaintiff 611 possessed, at the very least, an ownership interest in Defendant U.S. Lubes.  On the Schedule K-1 accompanying Defendant U.S. Lubes's tax returns for both 2003 and 2004, Plaintiff 611 is identified, by Defendant U.S. Lubes, as owning 11.922% of the capital of Defendant U.S. Lubes.  Exhs. 4, 5.

the partnership." This approach of looking to the citizenship of only some of the members of the artificial entity finds even less support in our precedent than looking to the State of organization . . . . We have never held that an artificial entity, suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members. No doubt some members of the joint stock company in *Chapman* [*v. Barney*, 129 U.S. 677 (1889)], the labor union in [*Steelworkers v. R.H. Bouligny, Inc.*, 382 U.S. 145 (1965)], and the limited partnership association in *Great Southern* [*Fire Proof Hotel Co. v. Jones*, 177 U.S. 449 (1900)] exercise greater control over their respective entities than other members. But such considerations have played no part in our decisions.

*Id.* at 192.

This language indicates that, in determining which entities determine the citizenship of an unincorporated association (such as an LLC), the courts will look not to a rigid definition of "Member," but rather will look to which entities hold a direct ownership interest in the LLC. This is evidenced by the fact that many cases addressing this topic state that the citizenship of an LLC is determined by the citizenship of its "owners," *see, e.g., Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 232 F.3d 854, 860 (11th Cir. 2000); *Muhlenbeck v. Ki, LLC*, 304 F.Supp.2d 797, 798-99 (E.D.Va. 2004), or use the terms "owner" and "member" interchangeably. *See, e.g., Tri-Partners*, 2001 WL 333096, at *1.

This treatment of "owners" and "members" synonymously is further demonstrated in practice by the forms used by the Internal Revenue Service and other taxing jurisdictions. See Exhs. 4 (designating ownership interest as "Member" interest), 5 (same), 6 (same). On the "Partner's Maryland Information, Maryland Schedule K-1 Equivalent," completed and filed by Defendant U.S. Lubes as part of its 2004 tax forms and attached hereto as Exhibit 10, Plaintiff 611 is identified as a "partner." Likewise, on

other state forms filed with Defendant U.S. Lubes's 2004 tax returns that are similar to the federal K-1 form, Defendant U.S. Lubes consistently identifies Plaintiff 611 as a "partner." *See, e.g.,* New Jersey Schedule NJK-1, attached hereto as Exhibit 11; New York Schedule K-1 Equivalent, attached hereto as Exhibit 12; Pennsylvania Schedule RK-1 (09-04), attached hereto as Exhibit 13.

Faced with the affirmative identification of Plaintiff 611 as a Member on the 2003 and 2004 K-1s completed by Defendant U.S. Lubes, Defendants may argue that such a designation on those forms is meaningless in this context. Even if this Court determines that the affirmative designation of Plaintiff 611 as a member or partner on the K-1s does not afford Plaintiff 611 status as a "Member" as that term is defined in the Agreement, however, the fact that the terms "member" and "partner" are used in these documents demonstrates that entities that are subject to these forms should be considered members or partners for purposes of determining the citizenship of the unincorporated business association of which they are a "member" or "partner." The use of these terms is consistent with the conclusion in the case law that the citizenship of an unincorporated business association is to be determined by the citizenship of any entity that possesses an ownership interest in that association. *See, e.g., Carden*, 494 U.S. at 195-96 (citizenship of partnership determined by that of "partners"); *General Tech. Applications*, 388 F.3d at 121 (citizenship of LLC determined by that of "members").

Whether a "member" or a "partner," the underlying principle is clear: the citizenship of an unincorporated business association is to be determined, not from the provisions of a contract, but from the citizenship of those entities that possess an ownership interest in the association. *Carden*, 494 U.S. at 192. Because, at the very

least, Plaintiff 611 possesses an ownership interest in Defendant U.S. Lubes, the citizenship of Plaintiff 611 will be determinative of the citizenship of Defendant U.S. Lubes. Because both Defendant U.S. Lubes and Plaintiff 611 are citizens of the State of Maryland, there is no diversity and this case must be remanded to the Circuit Court for Baltimore City.

### **CONCLUSION**

For the foregoing reasons, Plaintiffs 611, LLC and American First Management, Inc. respectfully request that this Honorable Court issue an order remanding this action to the Circuit Court for Baltimore City and award Plaintiffs just costs, expenses, and attorneys' fees in connection with this motion under 28 U.S.C. § 1447(c).

Respectfully submitted,

/s/ Thomas M. Wood, IV
Thomas M. Wood, IV
Federal Bar No. 00365
Neuberger, Quinn, Gielen, Rubin & Gibber, P.A.
One South Street, 27th Floor
Baltimore, MD 21202-3201
TMW@nqgrg.com
410-332-8550 (phone)
410-332-8564 (Fax)