**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CONNECTU LLC, | |
| Plaintiff, | Civil Action No. 1:04-cv-11923 (DPW) |
| v. | District Judge Douglas P. Woodlock |
| MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, FACEBOOK, INC., | Magistrate Judge Robert B. Collings |
| Defendants. | |
| MARK ZUCKERBERG and FACEBOOK, INC., | |
| Counterclaimants, | |
| v. | |
| CONNECTU LLC, | |
| Counterdefendant, | |
| and | |
| CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA, | |
| Additional Counterdefendants. | |

**PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION
DATED MARCH 2, 2007**

## TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................. 1

II.  FACTUAL BACKGROUND............................................................................ 1

III. THE AMENDED COMPLAINT SUPERSEDED THE ORIGINAL COMPLAINT ........... 2

    A. The Amended Complaint Relates Back Under Fed. R. Civ. P. 15(c)................................ 3

    B. The Procedure Used To Preserve Diversity Should Be Immaterial .................................. 4

    C. The R&R Recommends That The Court Reach An Inequitable Result ............................ 4

IV. THE MEMBERLESS LLC CONCLUSION IS CONTRARY TO ALL RELEVANT
    EVIDENCE, TESTIMONY, AND DELAWARE LAW ...................................................... 6

    A. A Memberless LLC Is Impossible Under Delaware Law.............................................. 7

    B. Tyler Winklevoss Became A Member At Formation .................................................... 7

    C. The R&R's Ruling Leads To An Unreasonable Result ................................................ 9

    D. The Evidence Reflects the Admission of Tyler And Cameron........................................ 10

    E. ConnectU's Business Records Are Dispositive.......................................................... 12

    F. Tyler And Cameron Considered Membership At Formation .......................................... 13

V.   ZUCKERBERG WAS A CALIFORNIA CITIZEN ON THE FILING DATE.................... 14

VI.  IF THE COURT DISMISSES THIS ACTION, CONNECTU MAY REFILE .................... 18

    A. Dismissal Must Be Without Prejudice..................................................................... 18

    B. Leave To Amend Should Be Granted...................................................................... 19

        1. The Parties Are Completely Diverse Today ......................................................... 19

        2. ConnectU Should Be Permitted To Amend.......................................................... 19

        3. The Statutes of Limitations Are Tolled .............................................................. 19

        4. Discovery Should Be Carried Over .................................................................. 20

VII. CONCLUSION............................................................................................. 20

# TABLE OF AUTHORITIES

## CASES

*Bair v. Peck*,
  738 F. Supp. 1354 (D. Kan. 1990) ................................................................. 17, 18

*Bank One, Texas, N.A. v. Montle*,
  964 F.2d 48 (1st Cir. 1992) ................................................................................ 15

*Boelens v. Redman Homes, Inc.*,
  759 F.2d 504 (5th Cir. 1985) ................................................................................ 3

*Boutiette v. Dickinson*,
  768 N.E.2d 562 (Mass. App. Ct. 2002) ............................................................. 20

*Brown v. Baeke*,
  2005 WL 309940 at *3 (D. Kan. Feb. 2, 2005) ................................................. 20

*Brown v. Texas & Pac. R.R. Co.*,
  392 F. Supp. 1120 (W.D. La. 1975) ...................................................................... 4

*Carney v. Resolution Trust Corp.*,
  19 F.3d 950 (5th Cir. 1994) .................................................................................... 3

*Davis v. Allstate Insurance Co.*,
  2005 WL 1362959 at *1 (S.D. Miss. June 3, 2005) ........................................... 20

*Everett v Brief*,
  1985 WL 3563 at *13 (S.D.N.Y. November 1, 1985) ......................................... 16

*Facchina v. Malley*,
  C.A. No. 783-N (Del. Ch. August 1, 2006) ........................................................... 7

*Foman v. Davis*,
  371 U.S. 178 (1962); ............................................................................................ 19

*Full Service Beverage Co. v. Blue Ox Distributors LLC*,
  2006 WL 753211 at *2 (D. Colo. March 22, 2006) ........................................... 20

*Garcia Perez v. Santaella*,
  364 F.3d 348 (1st Cir. 2004) ................................................................... 15, 17, 18

*Glasford v. Schreier*,
  2004 WL 1469469, at *2 (S.D.N.Y. June 30, 2004) ......................................... 16

*Gordon v. Steele*,
  376 F. Supp. 575 (W.D. Pa. 1974) ...................................................................... 16

*Grupo Dataflux v. Atlas Global Group*,
  541 U.S. 567 (2004) ............................................................................................ 19

*Hamilton v. Accu-tek*,
  13 F. Supp.2d 366 (E.D.N.Y.) ............................................................................ 16

*Integrated Technologies v. Biochem*,
  2 F. Supp. 2d 97 (D. Mass. 1998) ........................................................................ 18

*Kaluna v. Iranon*,
  952 F.Supp. 1426 (D. Haw. 1996) ......................................................................... 6

*Karnes v. Poplar Bluff Transfer Co.*,
  209 F.3d 1064 (8th Cir. 2000) ............................................................................... 3

*Koal Indus. Corp. v. Asland, S.A.*,
  808 F. Supp. 1143 (S.D.N.Y. 1992) ....................................................................... 3

*Liberace v. Conway*,
  574 N.E.2d 1010 (Mass. App. Ct. 1991) .............................................................. 20

*Lundquist v. Precision Valley Aviation, Inc.*,
  946 F.2d 8 (1st Cir. 1991) .................................................................................... 16

*Mathews v. Weber*,
  423 U.S. 261 (1976) ............................................................................................... 6

*Mut. Benefit Life Ins. Co. v. Carol Mgmt. Corp.*,
  1994 WL 570154, at *3 (S.D.N.Y. Oct. 13, 1994) ................................................ 4

*O'Brien v. Jansen*,
  903 F. Supp. 903 (D. Md. 1995) .......................................................................... 15

*Parker & Parsley Petroleum Co. v. Dresser Indus.*,
  972 F.2d 580 (5th Cir. 1992) ............................................................................... 20

*Parry v. Mohawk Motors of Mich., Inc.*,
  236 F.3d 299 (6th Cir. 2000) ................................................................................. 3

*Rodi v. S. New Eng. Sch. of Law*,
  389 F.3d 5 (1st Cir. 2004) .................................................................................... 19

*Sanial v. Bossoreale*,
  279 F. Supp. 940 (S.D.N.Y. 1967) ................................................................. 16, 17

*Schieszle v. Ferrum College*,
  236 F. Supp. 602 (W.D. Va. 2002) ...................................................................... 17

*Sessions v. Rusk State Hosp.*,
  648 F.2d 1066 (5th Cir. 1981) ............................................................................... 3

*Steckman v. Hart Brewing, Inc.*,
  143 F.3d 1293 (9th Cir. 1998) ............................................................................. 19

*United States. v. Raddatz*,
  447 U.S. 667, 680-81, n.7 (1980) .......................................................................... 6

*Valentin v. Hospital Bella Vista*,
  254 F.3d 358 (1st Cir. 1991) ............................................................................... 17

*Viqueira v. First Bank*,
  140 F.3d 12 (1st Cir. 1998) ................................................................................. 19

*Wallace v.HealthOne*,
   79 F. Supp. 2d 1230 (D. Colo. 2000)..................................................... 17

*Washer v. Bullitt County*,
   110 U.S. 558 (1884)............................................................................... 2

## OTHER AUTHORITIES

1 R. FRANKLIN BALOTTI AND JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS &
   BUSINESS ORGANIZATIONS § 20.6 ...................................................... 7

6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL
   § 1476 ...................................................................................................... 3

## RULES

Fed. R. Civ. P. 15(c) ................................................................................ 3

Fed. R. Civ. P. 41 .................................................................................... 4

Fed. R. Civ. P. 72(b) ........................................................................... 1, 6

Fed. R. Civ. P. 41(b) ............................................................................. 18

## STAUTES

28 U.S.C. § 1331 .................................................................................... 19

28 U.S.C. § 1332 .................................................................................... 19

Delaware 2004 Limited Liability Company Act…………………………………*passim*

## I.    INTRODUCTION

The March 2, 2007 Report and Recommendation (Dkt. 283, "R&R") should have relied on the Amended Complaint, which contains a federal claim. Upon filing, it became the operative document, rendering the diversity issue moot. To rule otherwise would lead to an inequitable result.

The R&R also reaches an impossible conclusion under a crucial point of Delaware law, which the R&R omits: "Limited liability company . . . means a . . . company formed under the laws of the State of Delaware and having 1 or more Members." 6 Del. C. Ann. § 18-101(6). Contrary to this definition and other controlling Delaware law, the R&R concludes that "there simply is no requirement under Delaware law that there be members of an LLC at formation," and that ConnectU LLC had no Members on the filing date (Dkt. 283 at 41). The Court reached this conclusion on its own; no party briefed it, and in fact all parties agree that ConnectU had at least two Members on September 2, 2004, Tyler and Cameron Winklevoss.[1] No party, nor the R&R, cited § 18-101(6) because it was not an issue. However, ConnectU was a valid LLC on the filing date and therefore had at least one Member, by statutory mandate. The Court should correct the R&R's error, which has serious implications for Delaware LLCs.

The R&R also incorrectly finds that Zuckerberg was a New York citizen on the filing date.

Pursuant to Fed. R. Civ. P. 72(b), ConnectU urges this Court to reject the R&R and deny Defendants' motion to dismiss. If the Court dismisses, ConnectU will refile, and this Court should pick up the new case where this one ended.

## II.    FACTUAL BACKGROUND

In December 2002, the founders of ConnectU, Cameron and Tyler Winklevoss and Divya Narendra (the "Founders") had a great idea: to create a social networking website for colleges, starting with Harvard University, where they were juniors at the time. In November 2003, the Founders asked Defendant Zuckerberg to join with them to complete the programming for their

---

[1] All witnesses agreed that Tyler and Cameron Winklevoss were Members at the LLC's April 6, 2004 formation (Dkt. 255 at 9). Defendants also argued that at least Tyler and Cameron were Members at formation (Dkt. 265 at 3; Dkt. 266 at 11; Dkt. 271 at 11, 12-13). "[T]he parties have struggled valiantly, each in their own way, to establish members of ConnectU on September 2, 2004." (Dkt. 283 at 55)

harvardconnection.com website and launch it as quickly as possible. Dkt. 14 at Counterclaim ¶9. Zuckerberg agreed, and dove into completing the website, or so he told the Founders. What he did not tell them was that he had a secret agenda. At least as early as December 22, 2003, he started developing a competing website, thefacebook.com, and launched it on February 4, 2004.

After the thefacebook.com website launched, the Founders knew they had lost the critical jump on the market that Defendants had snatched away. Harvardconnection.com still wasn't ready to launch. In early March 2004, the Founders hired a professional website development company. In April 2004, Tyler Winklevoss formed ConnectU LLC. The Founders finally launched the site, renamed "connectu.com", on May 21, 2004. Unfortunately, by this time thefacebook.com had a reported 150,000 users at 30 U.S. colleges. Dkt. 279, Ex. 19, 12.

As of April 2005, thefacebook.com (now facebook.com) had a reported 8.3 million registered users, operating at almost all 1400 U.S. colleges, with an average of 80% membership at each college. Dkt. 279, Ex. 11. Since its launch, it has become the seventh most trafficked site in the United States and has a market valuation of $2 to $8 Billion, which rightfully belongs to ConnectU. Declaration of Meredith H. Schoenfeld, "Schoenfeld Decl.," Ex. 1; Ex. 2.

## III.     THE AMENDED COMPLAINT SUPERSEDED THE ORIGINAL COMPLAINT

ConnectU objects to the R&R at 4, which fails to view the Amended Complaint as the controlling pleading. The R&R acknowledges ConnectU's argument that the question of diversity was rendered moot when the Amended Complaint was filed (Dkt. 283 at 4), but wrongly focuses on the Amended Complaint's inability to "cure" prior deficiencies. Dkt. 283 at 4-10. The R&R does not, however, address the basic question of why this matters after the Amended Complaint was filed.

On October 28, 2005, ConnectU amended the Complaint as a matter of right to add a copyright claim (no Answer had been filed). Dkt. 13 at 6. At that point, the Amended Complaint became the operative document and rendered the original Complaint without legal effect. It is well-established that an amended Complaint supersedes an original Complaint. *See Washer v. Bullitt County*, 110 U.S. 558, 562 (1884); *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07

(6th Cir. 2000) (amended Complaint supersedes all previous Complaints and controls the case from that point forward).  Hence, federal courts must resolve questions of subject matter jurisdiction by examining the face of the amended Complaint.  *Karnes v. Poplar Bluff Transfer Co.*, 209 F.3d 1064, 1067 (8th Cir. 2000); *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) (court must look to the amended Complaint in assessing jurisdiction); 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, CIVIL § 1476 at 556-57 (amended pleading "supersedes the pleading it modifies" and "any subsequent motion . . . should be directed at the amended pleading").

### A.   The Amended Complaint Relates Back Under Fed. R. Civ. P. 15(c)

The R&R incorrectly rules, without explanation, that Fed. R. Civ. P. 15(c), which provides for the relation back of amendments, does not "appertain in the circumstances at hand."  Dkt. 283 at 9, n.3.  Rule 15(c)(2) allows for relation back when the "claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading."  An amendment that changes the jurisdictional basis of an action relates back to the original Complaint's filing date if the new basis arose from the same facts.  *See Carney v. Resolution Trust Corp.*, 19 F.3d 950, 954 (5th Cir. 1994) (amendment that states new basis or changes jurisdictional basis relates back if it arises out of original factual situation); *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1070 (5th Cir. 1981) (plaintiff may amend to state a different claim over which court has jurisdiction; if it arises out of same transaction or occurrence, it relates back); *Koal Indus. Corp. v. Asland, S.A.*, 808 F. Supp. 1143, 1158 (S.D.N.Y. 1992) (amendment that changes the legal theory or adds another claim arising from same occurrence relates back).  The facts alleged in the original Complaint (Dkt. 1, ¶¶ 11-23) and the Amended Complaint (Dkt. 13, ¶¶ 11-23) are substantively identical.  Because ConnectU's copyright claim arose from the same conduct as ConnectU's other claims, this Court should rule that the Amended Complaint relates back to the filing date; therefore, jurisdiction was proper at that time.

3

### B.  The Procedure Used To Preserve Diversity Should Be Immaterial

ConnectU could have dismissed the original Complaint without prejudice under Fed. R. Civ. P. 41 at any time prior to October 28, 2004.  ConnectU then could have refiled a new case with a federal question, and jurisdiction would undoubtedly be proper.  ConnectU's decision to amend the Complaint, rather than refile, should not lead to such a vastly different result.  In the context of Rule 41, courts have found that the procedure used does not matter.  *See Mut. Benefit Life Ins. Co. v. Carol Mgmt. Corp.*, 1994 WL 570154, at *3 (S.D.N.Y. Oct. 13, 1994); *Brown v. Texas & Pac. R.R. Co.*, 392 F. Supp. 1120, 1123 (W.D. La. 1975).  Therefore, ConnectU should obtain the same result as if it refiled the Complaint, rather than amended it.

### C.  The R&R Recommends That The Court Reach An Inequitable Result

Failing either to acknowledge the Amended Complaint as the operative Complaint, or to allow the Amended Complaint to relate back to filing date, would have substantial inequitable results.  Until Judge Collings administratively denied them on September 25, 2006, pending the outcome of this motion, the parties had pending five motions to compel (three for Connect and two for Defendants) and a motion for protective order, all of which were fully briefed, and were argued on March 3, 2006.  Until Judge Collings administratively denied them on March 2, 2007, Plaintiff also had a pending motion for contempt relating to yet another motion to compel, which the court granted on March 31, 2006 (Dkt. 164), and a motion to substitute Plaintiff's successor in interest, ConnectU, Inc., a Connecticut corporation.  Still pending is yet another of Plaintiff's motions, which seeks forensic discovery of Defendants' electronic memory devices and all post-May 21, 2004 documents requested by Plaintiff's production requests, which Defendants are withholding.  Together, those motions relate to 75 of ConnectU's production requests and 5 of its interrogatories, and one of Defendants' depositions and interrogatories.  ConnectU also has five motions to compel pending in two other federal courts (at least one of which is being transferred to this Court), seeking documents from Defendants' third party investors.  Such motions spring from Judge Collings' March 31, 2006 Order granting one of ConnectU's motions to compel discovery regarding the current value of Facebook, Inc.

4

If this case is dismissed, the effort and extraordinary cost of such motions may be lost. To avoid an unjust result, Defendants' motion should be denied. Judge Collings will then reinstate and decide the pending motions, which he said he would do promptly (September 25, 2006 Order), and the case can proceed quickly to expert discovery and trial. The parties have served all production requests permitted by Local Rule 26.1(c), so the case can move quickly into the deposition phase. In fact, Judge Collings said he would close fact discovery four months after such motions are decided. November 18, 2005 Order.

If this case is dismissed, Plaintiff will refile it right away (based on a federal question—copyright infringement—and complete diversity today, see § VI.B.1, *infra*), but unless this Court picks up the new case where it stood on September 25, 2006, before Judge Collings administratively denied some of the pending motions, all of the time, effort, and money expended on discovery motions by the parties, the Court, third parties, and other courts, will have been wasted.

Defendants may argue that ConnectU could simply refile such motions in the new case, but it is highly unlikely that it would be so simple or that Defendants would allow it to be so. Defendants have made this case as expensive as possible to date, as the motions demonstrate. In the new case, ConnectU will be forced to petition the new Judge and possibly a new Magistrate to pick up the case where this one left off, which will surely lead to additional delay, expense, effort, and wasted judicial resources (the new Judge or Magistrate will need to duplicate Judge Collings' learning curve—the March 3, 2006 oral argument on the motions to compel took a whole day of court time). ConnectU will need to oppose any Rule 12(b) motions Defendants may file (which may delay the start of discovery indefinitely), reply to and/or move to dismiss Defendants' counterclaims, confer with Defendants to prepare a new Rule 26(f) report, redo the initial disclosure, await a new case management conference and scheduling order, reissue discovery requests (rewritten to account for the discovery it has obtained), await responses, meet and confer with opposing counsel on disputed discovery requests, rewrite and refile its motions to compel to reflect such discovery conferences, reply to Defendants' oppositions thereto, reargue the motions, and await court decisions.

5

Also, assuming that Judge Collings' March 31, 2006 discovery order (on which ConnectU's motion for contempt and five motions to compel third parties is based) has any validity in the new case, which Defendants and the investors surely will contest in view of the dismissal of this case for lack of subject matter jurisdiction, ConnectU is likely to need to start from scratch to obtain discovery from Defendants and from Facebook's investors regarding Facebook, Inc.'s current value, and may need to change its approach if such Order is not valid.  ConnectU may not be able to rely on Judge Collings' March 31, 2006 Order, which is likely to make obtaining the documents much harder and much more expensive.  All of this could easily take another eight months (ConnectU's motions to compel were filed and argued between July 2005 and March 2006), at enormous cost.  This Court should avoid such an inequitable result.

## IV.    THE MEMBERLESS LLC CONCLUSION IS CONTRARY TO ALL RELEVANT EVIDENCE, TESTIMONY, AND DELAWARE LAW

The R&R cites no law to support the conclusion that a Delaware LLC that was validly formed before the filing date, and was validly subsisting on the filing date, was or could be stateless.  Dkt. 283 at 39, 55.  ConnectU objects to this conclusion.  Under controlling Delaware law and the undisputed evidence, which the R&R missed and misconstrued, such a conclusion is impossible.[2]

Because the R&R is reviewed *de novo*, this Court has a duty to reject the R&R unless, on *de novo* reconsideration, it is found to be justified.  *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976) ("[t]he authority—and the responsibility—to make an informed, final determination, we emphasize, remains with the [district] judge."); Fed. R. Civ. P. 72(b).  *De novo* review means the district court must consider the matter anew, as if it had not been heard before and as if no decision previously had been rendered.  *Kaluna v. Iranon*, 952 F.Supp. 1426, 1429 (D. Haw. 1996).  Credibility is the only possible limitation on the power of the district judge to depart from, or disregard, the R&R. *United States. v. Raddatz*, 447 U.S. 667, 680-81, n.7 (1980).  The R&R found all of the witnesses

---

[2] A copy of the relevant Delaware LLC Act from 2004 is attached as Schoenfeld Decl. Ex. 3 for the Court's convenience.

credible (Dkt. 283 at 51-54, 67), so this Court must make its own determinations, based on the record and Delaware law not considered, or misconstrued, by the R&R.

### A.  A Memberless LLC Is Impossible Under Delaware Law

The R&R seems to assume there are no Members until an LLC agreement is executed. (Dkt. 283 at 40).  This is wrong under Delaware law.  *See Facchina v. Malley*, C.A. No. 783-N (Del. Ch. August 1, 2006) (analyzing membership of a Delaware LLC that had no LLC agreement). The Delaware LLC Act mandates that an LLC has at least one Member at formation.  6 Del. C. Ann. § 18-101(6) ("Limited liability company . . . means a . . . company formed under the laws of the State of Delaware and having 1 or more Members."), see also § 18-301(a)(1) and § IV.B, *infra*. In fact, as the R&R noted, and as § 18-101(7) provide(s), "Members" enter into LLC agreements. (Dkt. 283 at 44, finding that the Delaware LLC Act provides Members with broad discretion in drafting the LLC Agreement).

ConnectU was certainly validly formed and existing on the filing date, under §18-201(a) & (b) (see Ex. 38 (Certificate of Formation), Dkt. 283 at 39, and § IV.B, *infra)*.  Although an LLC is "dissolved [a]t any time there are no Members," the R&R does not find that ConnectU was dissolved and in fact treats ConnectU as a valid LLC (Dkt. 283 at 39, 55).  Moreover, by default ConnectU's existence is perpetual, and is subject to a savings statute.  6 Del. C. Ann. §18-801(a)(1) & (4).  Thus, by statutory mandate it must have had at least one Member when it was formed.[3]

The parties did not brief any of this Delaware law because they agreed that ConnectU had at least two Members on the filing date.  The R&R raised this issue *sua sponte* and missed and/or misconstrued these controlling rules of Delaware law, especially § 18-101(6).

### B.  Tyler Winklevoss Became A Member At Formation

Applying §18-301, the R&R states that "no one became a Member at the formation of the LLC."  Dkt. 283 at 38-39.  This is contrary to the evidence (discussed below), ConnectU's

---

[3] Under § 18-102(2), a Member need not be named on the Certificate of Formation, but this does not mean that having a Member at that time is optional.  Members need not be named because Delaware law protects LLC's and their Members from the disclosure of potentially sensitive or confidential information.  *See* 1 R. FRANKLIN BALOTTI AND JESSE A. FINKELSTEIN, DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 20.6.

arguments (Dkt. 255 at 9; Dkt. 267 at 3-4; Dkt. 275 at 2), and Defendants' arguments (Dkt. 251 at 2; Dkt. 271 at 11, 12-13). ConnectU's witnesses testified that Tyler Winklevoss was a ConnectU LLC Member at formation, and that Tyler admitted his brother Cameron shortly thereafter. ConnectU's business records corroborate such testimony. Defendants argued that Tyler, Cameron, and Divya Narendra became Members at formation.[4]

Tyler Winklevoss was plainly ConnectU's founding Member, before or at formation. The R&R omits important evidence regarding this fact. Tyler conceived the company in his mind and considered its formation before he set it up. T: 54, 59.[5] He solely and personally formed ConnectU LLC because he thought there should be a formal company to run the connectu.com website. T: 18,19, 33, 53, 55, 77; C: I-219-20, 261-65, 269; D: II-5. He took the actual steps to set up ConnectU LLC, through The Company Corporation ("TCC"). T: 19, 53, 54; C: I-261-62. He believed that "if it's my company that I should be the one setting it up." T: 19. Tyler testified at least six times that ConnectU LLC was "my company." T: 19, 23, 30, 74.

On April 6, 2004, Tyler Winklevoss telephoned TCC, whose business is setting up Delaware statutory entities, and formed ConnectU LLC. Pl's Ex. 53 reflects this call,[6] which is TCC's record of the April 6, 2004 teleconference with Tyler Winklevoss, placing the order to form ConnectU LLC. T: 25. On this TCC standard form, under "Director," TCC entered "Tyler Winklevoss" after Tyler told TCC that ConnectU LLC was his company and was to be in his name, T: 23, 53, identified himself as the legal contact for the LLC, T: 25, and paid the formation fee, T: 26. The fact that TCC identified Tyler as a Director rather than a Member is a distinction without a difference. *See Grupo dos Chilies, LLC,* 2006 WL 668443, at *2 (Del. Ch. March 10, 2006) (documents referring to relevant persons as "Managing Partners" sufficient to determine that they

---

[4] The R&R necessarily adopts ConnectU's argument that Mr. Narendra was not a Member on the filing date, and therefore diversity existed on that date.

[5] Citations to the October 24-25, 2006 hearing transcript (Dkt. 261-263) are to the witness, designated by "T" for Tyler Winklevoss, "C" for Cameron Winklevoss, and "D" for Divya Narendra, followed by the page number.

[6] All of the exhibits cited herein were admitted into evidence during the October 24-25, 2006 hearing. Additionally, all cited exhibits are attached for the convenience of the Court.

were Members of a Delaware LLC).  Shortly after his call to TCC, Tyler received the Certificate of Formation (Ex. 38) from Delaware.  T: 28.

Tyler testified that he was the sole founding Member because he set up the company (T: 53-54), and that he had the right to bring in other Members because it was his company, it was in his name, and that if he did not have that right, who would?  T: 30.  This is an important question.  If Tyler did not have this right, how could ConnectU LLC's Members **ever** be admitted?

Thus, the R&R is wrong in finding that "the documentary evidence makes clear, and the parties do not appear to dispute, that no one became a Member at the formation of the LLC."  Dkt. 283 at 38-39.  The R&R is also wrong (at 41) that "there simply is no requirement under Delaware law that there be members of an LLC at formation."  Under § 18-101(6), ConnectU must have had at least one Member at formation.  A person becomes a Member before or at formation according to § 18-301(a), which says that a person is admitted as a Member of the LLC upon the last to occur of (1) formation, or (2) as set forth in an LLC agreement, or (3) when the person's admission is reflected in the LLC's records.  At formation, there was no LLC agreement.  Thus, Tyler became a Member at formation, as TCC's records reflect.[7]

### C.   The R&R's Ruling Leads To An Unreasonable Result

The R&R also states that "[s]ince there were no Members of ConnectU at the formation, there were no Members to consent to Narendra's Membership on or before September 2, 2004" (Dkt. 283 at 42), and that "no ConnectU record reflecting the admission of any Members to the LLC prior to September 2, 2004, have been proffered by the parties" (Dkt. 283 at 40).  This is illogical, and contrary to the evidence.  Under this reasoning, no one could ever become a Member of ConnectU, or anyone could.

The R&R cites no Delaware law for the proposition that because there were no Members at formation, there were no Members to consent to Divya Narendra's admission on or before

---

[7] Section 18-201(a) also requires at least one "authorized person" to sign the certificate of formation.  TCC certainly was authorized by Tyler.  Under §18-201, the certificate may include "[a]ny other matters the members determine to include therein."  Section 18-201(a) entails that there must be one or more Members to determine what to include in the certificate, and that the authorized person must be a Member or acting for a Member.

September 2, 2004. Dkt. 283 at 42. Sections 18-101(6), 201(a), and 301(a) of the Delaware LLC Act are to the contrary, as discussed above. Furthermore, this conclusion begs the questions: (1) who would/could ever become Members, (2) who had authority to prepare the LLC agreement, (3) how could such an agreement be valid—who had the power to sign it and bind the LLC? It also ignores the application of § 18-301(b)(1) (discussed below). Additional Members may be admitted after formation under § 18-301(b)(1), by agreement of the existing Members. Under the R&R's ruling, how could this ever happen?

Moreover, without an initial Member to agree to the admission of other Members, there is nothing preventing people who are not related to the LLC from entering into an LLC agreement and becoming Members of that LLC, even though they have absolutely no connection to it. To safeguard against such an absurd result, the individual who forms the LLC **must** be considered the initial Member, or acting for such Member, absent an LLC agreement or contrary business records. In this regard, the R&R's mistakes of Delaware law have far-reaching implications for Delaware LLCs, and therefore should be corrected.

### D. The Evidence Reflects the Admission of Tyler And Cameron

Under Delaware law, a person becomes a Member after formation, under §18-301(b)(1), under the following circumstances: as provided in an LLC agreement, or with the consent of all Members and when the person's admission is reflected in the LLC's records.

The evidence reflects Tyler's and Cameron's prefiling admission as Members. Tyler testified that Cameron became a Member shortly after ConnectU was formed, when Tyler agreed to let him in. Tyler knew Cameron would be contributing to the company and felt that it was right to do so. T: 30. Also, Tyler, Cameron, and Divya Narendra agreed that, after formation, only Tyler and Cameron would be ConnectU LLC's Members (C: I-185; D: II-72, 91-93), run the company and handle all company affairs (T: 37-38; C: I-183-85; D: II-16-17), and hold company positions (T: 37). Tyler and Cameron were not taking other jobs after college graduation, were devoted to running ConnectU (T: 37; C: I-183-84), and in fact ran the company (C: I-184-85).

10

Tyler's and Cameron's admission is also reflected in the company's business records. Ex. 40, which is ConnectU's application to do business in Connecticut, is dated August 15, 2004. Ex. 40 was admitted into evidence **over Defendants' express objection that it was not a ConnectU business record**. Dkt. 262 at I-195; March 12, 2007 Order.

Cameron provided an assistant, Ms. Antonelli, the information to complete this form (C: I-189-90), she prepared it at his instruction (C: I-189), Cameron authorized Ms. Antonelli to sign his name, and she did so (C: I-190). As Cameron instructed, Ms. Antonelli identified Cameron and Tyler as Members (C: I-191). This was a complete list of ConnectU LLC's Members as of August 15, 2004 (C: I-192).

Cameron said Ex. 40 is a ConnectU business record (C: I-190, 193). It was filed with the State of Connecticut (C: I-192), rejected because the letters "LLC" were missing, refiled, and accepted (C: I-192-95). Ex. 41, which is dated one week after the filing date, confirms the prefiling Members listed in Ex. 40, Tyler and Cameron (C: I-197). Ex. 41 was also admitted over Defendants' objection that it was not a business record (Dkt. 262 at I-213-14, 198).

Ex. 42, which is ConnectU LLC's application to open a Wachovia checking account, also reflects the admission of Cameron and Tyler as ConnectU LLC's Members before the filing date. Ex. 42 is incontestably a ConnectU business record and was admitted as such. Importantly, Ex. 42 was admitted over Defendants' express objection that the document was inadmissible to prove the truth of the matter stated, after *voir dire* by Judge Collings. Dkt. 261 at 100-101.

Ex. 42 identifies Cameron and Tyler as ConnectU LLC's Members as of January 2005. T: 46-47, 98-99; C: I-200-03. Although this is after the filing date, the Wachovia documents reflect ConnectU's Members on the filing date because there is no evidence of any membership change between the filing date and January 2005.

Thus, the R&R is wrong in finding that "[s]ince there were no Members of ConnectU at the formation, there were no Members to consent to Narendra's Membership on or before September 2, 2004" (Dkt. 283 at 42), and that "no ConnectU record reflecting the admission of any Members to the LLC prior to September 2, 2004, have been proffered by the parties" (Dkt. 283 at 40).

11

Moreover, there is no contrary testimony; and no witness disagreed with the facts presented here. Even the Defendants agree. It was their position that Tyler, Cameron, AND Divya Narendra were ConnectU LLC Members on the filing date.

**E. ConnectU's Business Records Are Dispositive**

On page 54, the R&R states with respect to Ex. 42 and 40, "given the circumstances of their creation and in light of other evidence, the Court does not find the documents to be dispositive or particularly persuasive on the Membership issue." The R&R is silent, however, on such circumstances and other evidence. Although the R&R correctly cites the record on page 54 regarding Ex. 42 and 40, it omits important testimony regarding those exhibits. Regarding Ex. 42, Cameron also testified that he provided the information to complete the Wachovia form and instructed an assistant, Ms. Antonelli, to prepare it (C: I-201).[8] Tyler specifically recalled signing the document (T: 98-99), and said that when he signed it, he understood that all Members were to be identified (T: 46). Both Tyler and Cameron understood that the form had a complete list of ConnectU's Members when they signed it (T:47; C I-202-03).

Regarding Ex. 40, Cameron testified that he instructed Ms. Antonelli to identify him and Tyler as ConnectU's Members[9] (C: I- 189-93). They were ConnectU's only Members as of August 15, 2004 (C: I-192) (see also § IV.D, *supra*). The State of Connecticut accepted Ex. 41 (which is identical to Ex. 40) as a statement of ConnectU's Members before and after the filing date (C: I-195-98; Ex. 41).

Moreover, the R&R (at 54) is wrong as a matter of law, as is footnote 20, which says that Ex. 40 and 42 "do not reflect anyone's admission to the LLC." The issue is not whether Ex. 40 and 42 are "persuasive." The issue is whether they are ConnectU business records, and whether those records reflect the admission of ConnectU's Members. *See* § 18-301(a)(2); *Grupo dos Chilies*

---

[8] This was confirmed by Ms. Antonelli in her deposition at 43:3-45:5, admitted into evidence at Dkt. 263, II-100, attached as Schoenfeld Decl., Ex. 4.
[9] This was confirmed by Ms. Antonelli in her deposition at 144:10-145:8, 146:10-19, admitted into evidence at Dkt. 263, II-105, attached as Schoenfeld Decl., Ex. 4.

2006 WL 668443, at *3 (admission into an LLC may be reflected when "documentary evidence makes it clear that the parties intended [for certain individuals] to be the Members of [the LLC].") If so, they are dispositive on the identity of ConnectU's Members.

The R&R cites no case or statutory authority—under Delaware or other law—for a ruling that Ex. 40 and 42 are not LLC business records, that they do not reflect the admission of Members, that Cameron lacked the authority to instruct Ms. Antonelli, or that he did so inaccurately, and such findings would be contrary to the evidence. The R&R also cites no support for a ruling that this is a question of weight, or for rejecting the truth of the information in the Exhibits. Moreover, the Court admitted Ex. 40 over an objection that it was not a ConnectU business record (see § IV.D *supra*), and the R&R recognizes that it identifies Tyler and Cameron as ConnectU Members as of August 15, 2004 (Dkt. 283 at 54). Ex. 41 confirms it (see § IV.D *supra*).[10] Regarding Ex. 42, it is undeniably a ConnectU business record, was admitted as such, and Defendants made no objection that it is not. The R&R concedes that it identifies Tyler and Cameron as ConnectU Members as of January 2005, and the Court admitted it over an objection that it could not be admitted for its truth, after *voir dire* by the Court (see § IV.D *supra*). There is no evidence that Membership changed between the filing date and January 2005, so Ex. 42 correctly reflects and confirms ConnectU's Membership on the filing date. Contrary to the R&R, these ConnectU business records—simply by virtue of their existence—dispositively establish ConnectU's Members on the filing date of the Complaint.

### F.    Tyler And Cameron Considered Membership At Formation

The R&R states that "All three also testified that in or about the time the LLC was formed, . . .they gave little, if any, thought as to who the Members of the LLC were." Dkt. 283 at 51. The R&R cites nothing to support this statement, which is directly contrary to the testimony (see § IV.B, *supra*). Although the R&R is correct (at 52) that the witnesses testified that they were scrambling— at formation—to launch their website and therefore gave no thought to entering into an **LLC**

---

[10] The R&R also omits Ex. 53 (see § IV.B *supra*).

13

**agreement** (see T: 17-18; C: I-182-83; D: II-4), Tyler believed he was the founding Member (T: 30, 53-54; see also § IV.B *supra*). That the witnesses did not think about an LLC agreement at formation does not mean there was no Member. Sections 18-301(a) and 201(d) do not require an LLC agreement at formation and § 18-101(6) says there is at least one Member when the LLC is formed. Such Member is admitted at formation, at the latest. Under §18-301(a), if there is no LLC agreement before or at formation, "a person [Tyler] is admitted as a Member" upon "the formation of the limited liability company" or "when the person's admission is reflected in the records of the limited liability company."

The R&R's citations at 52 also do not support its findings. On Dkt. 261 at 54, Tyler testified that he became ConnectU's founding Member on April 6, 2004 when he caused TCC to form the LLC. At 63-66, he tries to answer Defendants' questions about whether there was an agreement governing the capacity in which he was acting when he called TCC, but he had already testified that no LLC agreement existed at that time (see the preceding paragraph). On Dkt. 262 at I-262, Cameron testified that Tyler formed the LLC, then tried to answer Defendants' questions about whether Tyler was "the sole **founder** of ConnectU LLC" (emphasis added). Nothing in this testimony supports the R&R's finding that "[a]ll three also testified that in or about the time the LLC was formed, . . .they gave little, if any, thought as to who the Members of the LLC were."

The R&R also quotes Divya Narendra at length, where he said he did not expect to be a Member at formation. Dkt. 283 at 52-53. The R&R prefaces the quote with "Narendra testified, and the Winklevoss brothers echoed similar sentiments." *Id.* The Winklevoss brothers did echo Narendra: they said Narendra was not a Member at formation. This has been ConnectU's position all along. The R&R's citations at 53 support the witnesses' testimony that Narendra was not a Member at formation. They do not in any way support a finding that there was no Member at formation (T: 68, 74; C: I-182-83).

## V.    ZUCKERBERG WAS A CALIFORNIA CITIZEN ON THE FILING DATE

ConnectU objects to the finding that Defendant Zuckerberg was a New York citizen on the filing date (Dkt. 283 at 68). Because the R&R credits Zuckerberg's testimony (Dkt. 283 at 67), this

Court, on *de novo* review, is free to view all of the relevant evidence in a different light and find that Zuckerberg was a California citizen on the filing date.

In determining citizenship, the Court must consider the totality of a person's conduct, such as place of residence and place of business. *See Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004). Although the R&R cites *Bank One, Texas, N.A. v. Montle*, 964 F.2d 48, 49 (1st Cir. 1992), regarding some such factors, it omits other factors and does not apply **any** of the case law presented by ConnectU (see Dkt. 282 at 8-15; Dkt. 221 at I-218-24).

Zuckerberg is only entitled to claim New York domicile if he was a student, and could therefore claim his parents' state as his domicile. *See O'Brien v. Jansen*, 903 F. Supp. 903, 904 (D. Md. 1995). However, at the June 22 hearing Judge Collings acknowledged that Zuckerberg was not entitled to the presumption if he was not a student on the filing date. (Dkt. 219-221 at I-273.) And indeed, he was not. Although the R&R finds that it was not Zuckerberg's intention to drop out of Harvard (Dkt. 283 at 59, 61), this is not the issue, especially at Harvard, which allows indefinite leaves of absence (Z: 43-44).[11] Rather, the issue is whether Zuckerberg was entitled on the filing date to a presumption that he was still a student, and therefore to claim his parents' home as his domicile. Even if he were not a student on the filing date, he could still return to Harvard at any time. Viewed in this light, the facts rebut the presumption. *O'Brien,* 903 F. Supp. at 904 (several factors undermined the strength and efficacy of the presumption). Sometime before August 13, 2004, Mr. Zuckerberg decided not to return to Harvard, obtained an indefinite leave of absence effective May 28, 2004 (Dkt. 283 at 59), has not been a student—and has lived in California—since that time (Dkt. 283 at 58, 62-64), and for all of this time has had no plans to return to Harvard (Dkt. 283 at 64).[12]

The R&R describes many of Zuckerberg's connections to California and lack of intent to return to Massachusetts or New York (Dkt. 283 at 57-67). For example, he disposed of his

---

[11] Cites to Zuckerberg's testimony are to the June 22, 2006 hearing transcript, Dkt. 219-221, in this form "Z: __".

[12] *Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (place of residence is a factor supporting domicile).

Massachusetts possessions (Dkt. 283 at 59),[13] leased an unfurnished home and bought furniture (Dkt. 283 at 62-63),[14] opened utility accounts with a California address (Dkt. 283 at 63), bought a car registered in California (Dkt. 283 at 66), engaged California lawyers who incorporated his company, using his California address (Dkt. 283 at 60), signed many Facebook corporate documents and provided his California address (Dkt. 283 at 60),[15] earned a living in California ($19,333 in 2004; Dkt. 283 at 64-65), had barely stayed with his parents for years (Dkt. 283 at 57-58), and had severed almost all parental support (Dkt. 283 at 65).[16]  By the filing date, Zuckerberg had also spent most of his college money in California. (Dkt. 283 at 61).

Important facts omitted by the R&R are as follows.  When asked, "At some point in time did you make the decision to actually stay in California full time?," Zuckerberg responded, "Yeah.  I didn't go back to school" (Z: 40-41).  He made that decision on August 13, 2004, when he cancelled his Harvard housing for Fall 2004 (Z: 30, 39, 164, 197; Ex. 14, admitted 237-38).  At about this time, Facebook, Inc. was also being incorporated as a Delaware corporation.  However, Zuckerberg's counsel completed the certificate with his Palo Alto address and advised him to sign it.  Zuckerberg did not instruct his counsel to change the address to his parents' New York address because "I didn't really think it mattered."  He also said "I might have even asked them [counsel] if it was okay and they said yes" (Z: 77).  In September 2004, he also had no intent or plans to go to New York and stay there.[17]  He also backdated at least one corporate document before the filing

---

[13] *See Lundquist v. Precision Valley Aviation, Inc.,* 946 F.2d 8, 11 (1st Cir. 1991) (location of personal belongings is a factor favoring citizenship).

[14] *See Sanial v. Bossoreale,* 279 F. Supp. 940, 943 (S.D.N.Y. 1967) (leasing an unfurnished home supports domicile).

[15] *See Lundquist,* 946 F.2d at 12 (statements of residence on corporate documents are strong evidence, entitled to significant weight).

[16] *See Hamilton v. Accu-tek,* 13 F. Supp.2d 366, 369-70 (E.D.N.Y.) (discontinuation of parental support is evidence of domicile change and rebuts presumption of student status); *Glasford v. Schreier,* 2004 WL 1469469, at *2 (S.D.N.Y. June 30, 2004) (same).

[17] "Q: In September of 2004 did you have any plans to go to New York and stay there for an indefinite period of time? A: No formal plans.  Q: Did you have any plans at all?  A:  Not really"  (Z: 58, 68).  When asked "Do you live at your parents' house now?," he answered "I don't stay there, no" (Z: 68).  He then confirmed testifying in deposition that when asked about his parents' home," he said "I don't live there now" (Z: 68).  Also, when asked "In fact you hadn't lived in your parents' house since you went to Exeter in your junior year of high school, correct"?, he said "I haven't stayed there, yeah, for I mean an extended period of time" (Z: 103).  An intention not to return to the former domicile favors the new domicile.  *Everett v Brief,* 1985 WL 3563, at *4 (S.D.N.Y. November 1, 1985); *Gordon v. Steele,* 376 F. Supp. 575, 577 (W.D. Pa. 1974).

date and provided a California address (Z: 82-83; Ex. 16), completed a 2004 California W-2

statement and should have filed a California tax return (Z: 124, 126-28; Ex. 22, 37), and completed

a Facebook, Inc. New Employee Information Sheet dated September 1, 2004, wherein he provided

the address for the Westbrook Avenue house (Z: 79; Ex. 15) for which he signed a one-year lease

shortly thereafter (Ex. 26; Z: 61). By the filing date, he had consolidated Facebook's operations in

California, ran Facebook, Inc. from his California home, contractually and logistically committed

Facebook, Inc. and himself to California, convinced his friends to move there, met his first venture

capital investor, whose money he needed, and operated a successful business in California, which

depended on him. (Z: 42, 189-90, 193-94, 209-10). He wasn't going anywhere.

     As of the filing date, he intended to return to California whenever he left. Just after the

filing date, he and some friends went to New York and stayed with his parents for 2-3 days because

they had no place to live in California lined up when their summer sublet ended. (Dkt. 283 at 62; Z:

58). Although the R&R says, "At that time his intent was to go back to California for a short period

of time (#219 at 58)," Zuckerberg's testimony revealed his actual intent: to remain in California.

Upon further questioning, he admitted testifying as follows during a deposition: "I said I intended

to go back to California and stay after that [New York visit]" (Z: 60). Immediately after returning

to California from New York, he signed a one-year lease in California (Z: 207-08; Ex. 26).

Domicile is where a person "has his true, fixed home and principle establishment, and to which,

whenever he is absent, he has the intention of returning." *Valentin v. Hosp. Bella Vista*, 254 F.3d

358, 366 (1st Cir. 2001). On the filing date, Zuckerberg was physically present in California and

intended to remain there for an indefinite period.[18]

     These facts are analogous to *Bair v. Peck*, 738 F. Supp. 1354 (D. Kan. 1990), which the

R&R omits. While attending the University of Colorado, Bair decided to work at a Colorado ski

resort. The presumption that he would return to his home state, Kansas, after completing his studies

---

[18] *See Garcia Perez*, 364 F.3d at 351; *Schieszler v. Ferrum Coll.*, 236 F. Supp. 2d 602, 611 (W.D. Va. 2002); *Sanial*, 279 F. Supp. at 944; *Wallace v. HealthOne*, 79 F. Supp. 2d 1230, 1233 (D. Colo. 2000) (intent to remain in new state need not be an intent to remain permanently). The R&R finds that Zuckerberg intended to leave Harvard for "a term or two" (Dkt. 283 at 59, 61, 67), which is an indefinite period of time.

was disproved by the fact that he stayed and worked in Colorado without attending school.  *Id*. at

1357.  The same is true here:  Zuckerberg left Harvard and worked in California, so he is not

entitled to a presumption that he would return to New York after completing his studies.  He even

said he had no intent to return to New York (see footnote 17), but the R&R omits this testimony.

As the *Bair* court said, "[w]hen a young adult has taken those steps which objectively show a

commitment for an indefinite period of time to become a member of the community in which he or

she resides, the courts should not be reluctant to infer a domicile."  *Id.* at 1358.  Bair worked at a ski

resort, which is transient, seasonal work, but the court found that he showed a commitment to

become a member of the community for an indefinite period of time.  By contrast, on the filing date,

Zuckerberg had decided to stay in California for at least two school terms, was the CEO of a

company that depended on him, and which he had committed to operating in California, and had

told Harvard he was not coming back.[19]  Thus, if Kansas was no longer Bair's domicile, New York

certainly was no longer Zuckerberg's domicile.  Dkt. 283 at 16; *Bair v. Peck,* 738 F. Supp. at 1357-

58.

## VI.    IF THE COURT DISMISSES THIS ACTION, CONNECTU MAY REFILE

The R&R did not address the disposition of the action should it be refiled, even though these

issues were briefed by ConnectU and such a determination was requested.  Dkt. 282 at 17-20; Dkt.

275 at 19.  Should the Court dismiss this action, ConnectU should be permitted to refile, and all

discovery should be carried over.

### A.  Dismissal Must Be Without Prejudice

According to Fed. R. Civ. P. Rule 41(b), a dismissal for lack of jurisdiction does not operate

as an adjudication on the merits, and therefore does not preclude a second action on the same claims

that overcomes the initial jurisdictional defect.  *Integrated Technologies Ltd. v. BioChem*

*Immunosystems, Inc.*, 2 F. Supp. 2d 97, 105 (D. Mass. 1998) (J.Woodlock) (dismissal for lack of

---

[19] *See Garcia Perez*, 364 F.3d at 353 (building a professional foundation is evidence of domicile).

jurisdiction is not an adjudication on the merits).  Defendants conceded ConnectU's right to refile,

citing *Grupo Dataflux v. Atlas Global Group*, 541 U.S. 567, 571 (2004).  Dkt. 94 at 12.

### B.   Leave To Amend Should Be Granted

#### 1.   The Parties Are Completely Diverse Today

Effective May 23, 2006, ConnectU LLC merged into ConnectU, Inc., a Connecticut

corporation.  Dkt. 228.  ConnectU, Inc. is diverse to all Defendants.  Dkt. 182, Ex. 4 at 93-96.

Thus, upon refiling the Complaint, subject matter jurisdiction would be based on both a federal

question (*i.e.*, the copyright claim) and diversity.  28 U.S.C. §§ 1331 and 1332.

#### 2.   ConnectU Should Be Permitted To Amend

Upon dismissal, the Court should provide leave to amend.  Dismissal without leave to

amend is improper "unless it is clear, upon de novo review, that the complaint could not be saved

by any amendment."  *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).  The

Supreme Court has instructed that "outright refusal to grant the leave without any justifying reason

appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and

inconsistent with the spirit of the Federal Rules."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see

also Viqueira v. First Bank,* 140 F.3d 12, 20 (1st Cir. 1998) (party should seek permission to amend

in the district court).

#### 3.   The Statutes of Limitations Are Tolled

Under Massachusetts law, if an action is commenced within the limitations period and then

dismissed for "any matter of form," the plaintiff is entitled to "commence a new action for the same

cause within one year after the dismissal."  Mass. Gen. Laws ch. 260, § 32; *Rodi v. S. New Eng.

Sch. of Law*, 389 F.3d 5, 18 (1st Cir. 2004).  "[W]here [a] plaintiff has been defeated by some

matter not affecting the merits, some defect or informality, which he can remedy or avoid by a new

process, "the statute of limitations "shall not prevent him from doing so."  *Coffin v. Cottle*, 33 Mass.

(16 Pick.) 383, 386 (Mass. 1835); *Integrated Technologies*, 2 F. Supp. 2d at 105 (dismissal for lack

of jurisdiction is not an adjudication on the merits).  The savings rule applies here.  *See Boutiette v.*

*Dickinson*, 768 N.E.2d 562, 563-64 (Mass. App. Ct. 2002); *Liberace v. Conway*, 574 N.E.2d 1010, 1012 (Mass. App. Ct. 1991).

### 4. Discovery Should Be Carried Over

Several courts have noted that because the most expensive element of trial preparations is discovery, an enormous burden to the parties and court resources would be saved if discovery were carried over. This is true here (*see* § III.C, *supra*). *See Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 588 (5th Cir. 1992) (parties would not have to repeat effort and expense of discovery); *Full Serv. Beverage Co. v. Blue Ox Distributors LLC*, 2006 WL 753211, at *2 (D. Colo. March 22, 2006) (upon refiling, all discovery carried over); *Davis v. Allstate Ins. Co.*, 2005 WL 1362959, at *1 (S.D. Miss. June 3, 2005) (as a condition of allowing dismissal, discovery should not start anew); *Brown v. Baeke*, 2005 WL 309940, at *3 (D. Kan. Feb. 2, 2005) (discovery carried over). Thus, if this case needs to be refiled, it should pick up exactly where it left off on September 25, 2006 and all pending motions should be decided.

## VII. CONCLUSION

For the reasons set forth herein, the R&R should be rejected and Defendants' motion to dismiss should be denied. In the alternative, if diversity was lacking on September 2, 2004, leave to refile should be granted and this case should pick up exactly where it left off on September 25, 2006.

Respectfully submitted,

DATED: March 16, 2007

/s/ John F. Hornick
John F. Hornick (*pro hac vice*)
Meredith H. Schoenfeld (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
FINNEGAN, HENDERSON ET AL.
901 New York Avenue N.W.
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Attorneys for Plaintiff and Counterdefendants

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on March 16, 2007.

/s/ John F. Hornick
John F. Hornick

21