UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>                     Plaintiff,<br><br>    v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES AND THEFACEBOOK, INC.,<br><br>                Defendants. | CIVIL ACTION No.: 1:04-cv-11923 (DPW) |
| MARK ZUCKERBERG, and THEFACEBOOK, INC.,<br><br>                Counterclaimants,<br><br>    v.<br><br>CONNECTU LLC, CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>                Counterdefendants. | |

**DEFENDANT EDUARDO SAVERIN'S BRIEF IN RESPONSE TO PLAINTIFF CONNECTU LLC'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATION**

1

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

INTRODUCTION ....................................................................................................... 1

I.   CONNECTU LLC MISSTATES THE PROPER STANDARD OF REVIEW. ..... 2

II.  BECAUSE THE R&R FOUND THAT CONNECTU LLC HAD NO MEMBERS
     ON SEPTEMBER 2, 2004 AND CONNECTU HAS ADMITTED THAT IT HAD
     NO OPERATING AGREEMENT ON THAT DATE, THIS ACTION MUST BE
     DISMISSED. ................................................................................................ 3

     A.   Delaware LLC Law Requires Few Formalities, But It Does Require At
          Least One Member And An Operating Agreement. ..................................... 4

     B.   Because ConnectU LLC Had No Members or Operating Agreement At
          Filing, It Was Not A Valid Delaware LLC, And Its Purported Complaint
          Must Be Dismissed. ................................................................................ 7

III. IN THE ALTERNATIVE, IF CONNECTU HAD ANY MEMBERS EFFECTIVE
     SEPTEMBER 2, 2004, ITS MEMBERSHIP MUST BE DERIVED FROM THE
     OPERATING AGREEMENT .......................................................................... 8

     A.   Delaware Law Gives Legal Effect To The Retroactive Terms Of LLC
          Agreements. .......................................................................................... 8

     B.   State Law Has Been Consistently Held To Govern The Determination Of
          Citizenship Of Juridical Entities For Purposes Of The Diversity Jurisdiction
          Analysis. ............................................................................................... 9

     C.   Determining An LLC's Membership Under State Law, Even If Retroactive,
          Is Fully Consistent With The Underlying Policy Of The "Time-Of-Filing"
          Rule. ................................................................................................... 12

     D.   The Existing Sham Exception In Diversity Citizenship Jurisprudence Is
          Fully Sufficient To Address Any Concerns Regarding Abuse Of This
          Proposed Rule. ..................................................................................... 14

     E.   Even If There Were A Conflict Between The Time-Of-Filing Rule And
          Delaware LLC Law, Delaware LLC Law Should Supply The Rule Of
          Decision. ............................................................................................. 15

IV.  THE RELATION BACK DOCTRINE DOES NOT SAVE CONNECTU LLC'S
     FLAWED COMPLAINT. ............................................................................. 15

## INTRODUCTION

Defendant Eduardo Saverin ("Saverin") respectfully submits this response to the objections of ConnectU LLC ("ConnectU") to the Report and Recommendation On Facebook Defendants' Motion to Dismiss dated March 2, 2007 (Document 283, hereinafter referred to as the "R&R"). ConnectU's objections wrongly urge the Court to undo the R&R's carefully considered factual and credibility findings and replace them with a series of factual findings that the R&R expressly considered and rejected. ConnectU's objections are built on three faulty legal arguments: the first is an incorrect articulation of the standard of review; the second, that the Magistrate's finding that ConnectU had no members at the time of filing should be substituted with a finding that the only members of ConnectU at the time of filing were Cameron and Tyler Winklevoss; and finally, that the "relation back" doctrine somehow serves to save its faulty complaint.[1]

The logical outcome of Magistrate Collings fact-finding that ConnectU had no member as of the time of filing the complaint is not, as ConnectU would have it, that ConnectU actually had two members (Cameron and Tyler Winklevoss but not Divya Narendra). Instead, this finding compels one of two conclusions: either ConnectU was not a valid Delaware LLC as of the time of filing the complaint, or ConnectU's written operating agreement and its retroactivity provision controls, destroying diversity. In either case, the Court should overrule ConnectU's objections and grant the defendants' motion to dismiss.

---

[1] In an effort to minimize duplication with the Facebook Defendants, Saverin addresses herein only these three purely legal questions. This is in no way intended to undermine the conclusion that ConnectU's objections to the R&R should be rejected based upon the further arguments in the brief of the Facebook Defendants.

1

**ARGUMENT**

**I.    CONNECTU LLC MISSTATES THE PROPER STANDARD OF REVIEW.**

The district judge "shall make a de novo determination of . . . any portion of the magistrate judge's disposition to which specific written objection has been made."  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).  "The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate with instructions."  Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1)(C).

"[A]bsent special circumstances, a district judge may not reject the credibility determination of a magistrate judge without first hearing the testimony that was the basis for that determination."  *U.S. v. Hernandez*, 443 F.3d 138, 148 (1st Cir. 2006).  In *Hernandez*, the First Circuit held that the district court had abused its discretion to the extent that the district court rejected the magistrate judge's credibility determination of the co-defendant Gorbea.  *Id*. at 147-48.  Similarly, in *U.S. v. Rivera*, the district court refused to "tamper with the credibility determination made by the Magistrate-Judge," explaining that the magistrate had set forth the facts in her Report and Recommendation after hearing the testimonies of the defendants and the police officers.  465 F. Supp. 2d 89, 93 (D.P.R. 2006).  Requiring "the district court to conduct a second hearing whenever either party objects to the magistrate judge's credibility findings would largely frustrate the plain objective of Congress to alleviate the increasing congestion of litigation in district courts."  *United States v. Raddatz,* 447 U.S. 667, 676 n.3 (1980).

Here, ConnectU, noting that the R&R found all of the witnesses to be credible, nonetheless wrongly urges this Court to consider all issues anew. ConnectU Objection at 6-7, 14-15.  The R&R makes numerous credibility determinations, however, such as its rejection of the testimony of the ConnectU witnesses that Tyler Winklevoss was the sole founding member of ConnectU LLC and that he admitted his brother Cameron Winklevoss as a member but did not

2

admit Divya Narendra.  R&R at 51-55.  Thus, because the R&R's factual findings are necessarily

bound up with credibility determinations, the Court must accept the R&R's factual finding unless

it chooses to hold its own evidentiary hearing in order to assess witness credibility.

**II.    BECAUSE THE R&R FOUND THAT CONNECTU LLC HAD NO MEMBERS ON SEPTEMBER 2, 2004 AND CONNECTU HAS ADMITTED THAT IT HAD NO OPERATING AGREEMENT ON THAT DATE, THIS ACTION MUST BE DISMISSED.**

The R&R determines that ConnectU LLC had no members as of the time of filing of the

complaint on September 2, 2004.  *See* R&R at 40.  This finding was based upon a full

consideration of the evidence and testimony proffered, and is entitled to deference since it

necessarily incorporated credibility determinations as to the ConnectU witnesses.  The R&R's

conclusion is also correct in light of ConnectU's admission that it lacked an operating agreement

at the time the case was filed and continued to lack an operating agreement until the written

operating agreement signed August 5, 2005 (the "Operating Agreement.").

Given these facts, one of two possible outcomes must be the case:  either (1) ConnectU

LLC was not a valid Delaware LLC with members as of the date of filing, and has thus failed to

satisfy its burden of showing that jurisdiction is proper; or (2) if ConnectU was a valid LLC at

the time the complaint was filed, its members were non-diverse because of the binding effect of

the Operating Agreement.  In either case, the lawsuit must be dismissed.  ConnectU's argument

that the R&R's factual findings should be set aside in favor of the view of the facts that it

advocated but that the R&R explicitly rejected is without merit.

**A.    Delaware LLC Law Requires Few Formalities, But It Does Require At Least One Member And An Operating Agreement.**

The Delaware LLC Act (6 Del. C. §§ 18-101 et seq.) governs membership in ConnectU LLC at the time of filing.[2]  The policy of the Act is to "give maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."  6 Del. C. § 18-1101(b).  Consequently, the Act's basic approach is to "provide members with broad discretion in drafting the Agreement and to furnish default provisions when the members' agreement is silent."  *Elf Atochem*, 727 A.2d at 291.  To that end, the Act is replete with provisions made subject to modification in the LLC Agreement (*i.e.*, many of the Act's provisions begin with the phrase, "Unless otherwise provided in a limited liability agreement . . .").  *See id.* at 191 & n.26.  Indeed,

> the Act gives members virtually unfettered discretion to define contractually their business understanding, and then provides assurance that their understanding will be enforced in accordance with the terms of their limited liability company agreements.

Martin I. Lubaroff & Paul M. Altman, "Delaware Limited Liability Companies," *Delaware Law of Corporations & Business Organizations*, § 20.1 (R. Franklin Balotti & Jesse A. Finkelstein, eds. 1998).

As flexible as it is designed to be, however, Delaware law still requires that a valid Delaware LLC must ordinarily have at least one member.  6 Del. C. § 18-101(6) (defining "limited liability company" and "domestic limited liability company" to mean "a limited liability company formed under the laws of the State of Delaware *and having 1 or more members*") (emphasis added).  With two limited exceptions, a Delaware LLC is dissolved and its affairs

---

[2] Notably, ConnectU has now abandoned the position it earlier espoused that state law may not be given effect in assessing the question of subject matter jurisdiction.

must be wound up "at any time there are no members." 6 Del. C. §18-801(a)(4).[3]  The two

exceptions allow a memberless LLC to continue by admitting a replacement member within

ninety days (or another period, as set forth in the LLC agreement).  *Id.*  Thus, under Delaware

law, an LLC such as ConnectU that forms with no members and no operating agreement has, at

best, a ninety-day grace period to remedy the defect.[4]

In addition, Delaware law requires that an LLC have an operating agreement.  *See, e.g.*, 6

Del. C. §§ 18-101(7), 18-201(d), 18-301;  *Elf Atochem North America, Inc. v. Jaffari*, 727 A.2d

286, 288, 291-92 (Del. 1999); *see also Atlantic St. John, LLC v. Yeomans*, 26 A.D.3d 266, 267

(N.Y. App. Div. 2006) (Delaware LLC law "contemplates that . . . a company will enter into a

limited liability company agreement or operating agreement"); *cf. Facchina v. Malley*, No.

Civ.A. 783-N, 2006 WL 2328228, *2-*3 (Del. Ch. Aug. 1, 2006) (where there is agreement as to

the identity of members but no other operating agreement has been proven, remaining operating

agreement terms are supplied by default LLC statutory provisions including 6 Del. C. § 18-

402).[5]  Again, the requirement is very flexible.  An LLC agreement can be written or oral, and

---

[3] Under Delaware law, upon dissolution the LLC enters a period of winding up that continues until a certificate of cancellation is filed.  *See* 6 Del. C. § 18-803(b).  An LLC may still prosecute and defend lawsuits during windup, *see id.*, but here it did so as a "stateless" entity without members, and so could not satisfy the diversity statute.  *See* R&R at 55; *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828-30 (1989).

[4] The only other possible result is that the LLC is never properly formed.  ConnectU objects that the minimal requisites of Delaware law lead to an illogical result, because under its reading if an LLC is formed without members it can never have members admitted after formation.  *See* ConnectU Objection at 9-10.  Again, this begs the question about whether formation with no members is proper or possible.  In any event, this narrow reading overlooks the fact that members can be admitted to the LLC in connection with formation upon the later of a number of events, including the compliance with the LLC agreement, and underscores the necessity that an LLC agreement to be executed appointing members within ninety days of formation.  6 Del. C. § 18-301(a).

[5] The *Facchina* court found some of the LLC members had reached an "understanding," but opined that this understanding could not substitute for an operating agreement adopted by all the members.  It then looked to 6 Del. C. § 18-402 to fill in missing governance provisions that would apply

*(Footnote continued)*

5

the statute supplies certain omitted provisions.  6 Del. C. § 18-101(7).  The title of the agreement

is irrelevant.  *Id.*  Furthermore, such an agreement is enforceable against a number of potential

objections.  Neither individual members and managers, nor the LLC itself, need execute the

agreement.  *Id.*  In addition, the LLC agreement is not unenforceable simply because there is

only one party to it.  *Id.*  But the LLC must have an operating agreement.[6]

Thus, the valid formation of an LLC under Delaware law requires two conditions that

were not met here at the outset:  at least one member, and an operating agreement.  Here, the

R&R evaluated each of the business records submitted by ConnectU, and determined that "no

ConnectU records reflecting the admission of any members to the LLC prior to September 2,

2004, have been proffered by the parties."  R&R at 40.  It also found that, "[e]ven if it were to be

concluded that evidence of the parties' intentions and course of conduct was relevant in

determining the membership of ConnectU LLC on September 2, 2004, based on the record

before the Court, that evidence does not establish that ConnectU had any members as of the date

the complaint was filed."  R&R at 51.  The R&R concluded that the first admission of members

to the LLC was accomplished by the August 5, 2005 Operating Agreement.  R&R at 40.

The R&R's conclusion that no members were admitted to ConnectU on September 2,

2004 is bolstered by ConnectU's admission that it had no operating agreement at that time:  "At

---

in the absence of an operating agreement.  What the *Facchina* court makes clear, however, is that the
members of the LLC had in fact reached an agreement on one key point – the identity and ownership
interests of its members.  This agreement itself constituted a critical term necessary for the LLC's
existence and operation, and *Facchina*'s statement suggesting that the LLC had no operating agreement
whatsoever is dicta.

[6] A Delaware LLC also requires the filing of a valid certificate of formation, 6 Del. C. § 18-201,
which is the one statutory requisite that ConnectU met.  That filing is only one step in the flexible
formation process, however, and though it may have begun the formation of ConnectU, it did not
complete it.  *See, e.g.*, 6 Del. C. § 18-201(d) (making clear that the LLC agreement can be entered before,
after, or at the time of filing the certificate of formation).

formation, there was no LLC agreement."  ConnectU Objection at 9; *see also id.* at 13-14

(conceding that Cameron, Tyler, and Narendra "gave no though to entering into an LLC

agreement" at formation); 6 Del. C. § 18-101(7); *Elf Atochem*, 727 A.2d at 288, 291-92.

> **B.**    **Because ConnectU LLC Had No Members or Operating Agreement At Filing, It Was Not A Valid Delaware LLC, And Its Purported Complaint Must Be Dismissed.**

Delaware LLC law is flexible, but not infinitely malleable.  Upon formation with no

members and no operating agreement on April 6, 2004, ConnectU had at most ninety days to

correct its deficiency or be subject to statutory dissolution.  6 Del. C. § 18-801(a)(4).  ConnectU

still had no members on June 5, 2004, ninety days later.  In fact, the R&R found that ConnectU

did not remedy either deficiency until shortly before execution of the Operating Agreement in

August 5, 2005.  *E.g.*, R&R at 53.  It was therefore dissolved by operation of Delaware statute.

6 Del. C. §18-801(a)(4).

ConnectU, citing the fact that Delaware law requires that an LLC have at least one

member, reaches the wrong conclusion in its objection.  It assumes that ConnectU LLC was a

valid Delaware LLC, and thus contends that the R&R must be wrong in its factual determination

that ConnectU lacked members.  The correct conclusion to be drawn from the fact that ConnectU

had no members is not, however, that the R&R's factual findings must be set aside in favor of

factual findings urged by ConnectU and expressly rejected by the Court.  Rather, this fact

compels the conclusion either that the LLC was defectively formed from the outset, or that it

entered statutory dissolution soon thereafter.  In either case, ConnectU has failed to satisfy its

burden of showing that jurisdiction is proper.  *Hawes v. Club Ecuestre El Comandante*, 598 F.2d

698, 702 (1st Cir. 1979).

III.    **IN THE ALTERNATIVE, IF CONNECTU HAD ANY MEMBERS EFFECTIVE SEPTEMBER 2, 2004, ITS MEMBERSHIP MUST BE DERIVED FROM THE OPERATING AGREEMENT.**

In the alternative, if the Court determines to reject as an erroneous legal conclusion the R&R's finding that ConnectU had no members at formation, the Court must then determine who the members were.  Based upon the R&R's other factual and credibility findings, ConnectU's membership can only be derived as a matter of law from the Operating Agreement.[7]  The case must still be dismissed, because the Operating Agreement makes Narendra, a citizen of New York at the time of filing, an initial member of the LLC effective as of the date of formation (thus destroying diversity).

Delaware law permits retroactivity of membership in LLCs, and this provision is fully consistent with the time-of-filing rule.  The Operating Agreement is given retroactive effect under Delaware law, and by its terms it includes Narendra as a member as of the time of filing the Complaint based on Narendra's affirmative act of entering into an operating agreement purporting to have retroactive effect.

A.    **Delaware Law Gives Legal Effect To The Retroactive Terms Of LLC Agreements.**

The R&R acknowledged "that the Delaware Limited Liability Company Act should be construed flexibly and that the members of LLCs are afforded broad powers to fix contractually the terms and conditions of their relationship."  R&R at 45.  Consistent with those policies, the

---

[7] Should the Court decide to engage in independent fact-finding or hold its own hearing, Saverin contends that the Operating Agreement confirms the operational reality of ConnectU's makeup at the time of formation, and that the evidence from formation through the execution of the Operation Agreement confirms and bolsters the fact that Narendra was a member during this time as set forth in the Operating Agreement.  For the purposes of this Response and in order to avoid duplication with the argument of the Facebook Defendants (which Saverin adopts), Saverin restricts his argument on this point to the legally binding nature of the recitation of retroactivity in the Operating Agreement as an alternative to the R&R's factual finding that ConnectU had no members at formation.

8

Act provides that a person may be admitted as a member of an LLC, whether before or after formation of the LLC, as of "the time provided in and upon compliance with the limited liability company agreement." 6 Del. Ch. § 18-301(a)(2), (b)(1). Further, the Act provides that a limited liability company agreement "may be made effective as of the formation of the limited liability company or at such other time or date as provided in the limited liability company agreement." 6 Del. Ch. § 18-201(d). Here, ConnectU's own members drafted an Operating Agreement which provides that Divya Narendra is a founding member and, though it is executed on August 5, 2005, consistent with the Act, the Agreement is made effective as of ConnectU's date of formation, April 6, 2004.

### B.    State Law Has Been Consistently Held To Govern The Determination Of Citizenship Of Juridical Entities For Purposes Of The Diversity Jurisdiction Analysis.

Federal diversity jurisdiction requires complete diversity of citizenship between the parties at the time the action is commenced. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004). The citizenship of an unincorporated entity such as an LLC is determined by the citizenship of each of its members. *Carden v. Arkoma Assoc.*, 494 U.S. 185 (1990); *Pramco, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54 (1st Cir. 2006).

In determining the membership of an LLC or any other state-created unincorporated association for the purposes of diversity jurisdiction analysis, state law provides the rule of decision. *See, e.g.*, *Kier Bros. Investments v. White*, 943 F. Supp. 1, 3 (D.D.C. 1996) ("In order to determine the citizenship of a state-created entity for purposes of determining whether diversity exists, federal courts have relied on applicable state law."); *611 LLC v. U.S. Lubes, LLC*, No.CCB-05-3417, 2006 WL 2038615 at *2 (D. Md. Jul. 18 2006) ("[M]embership in U.S.

Lubes [LLC] is governed by the Agreement and Delaware law.").[8]  Indeed, federal law has

nothing to say on the question of membership in a state law-governed entity such as an LLC.

Because LLCs are creatures of state law, the status and characteristics of the LLC, including its

membership, can only be determined by reference to the law of the state in which the LLC was

formed.  *Cf. Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002) (Posner, J.) ("the

question of what state a corporation is a citizen of if its corporate charter has been revoked

depend[s] on the status of such an entity under the law of the state that granted (and later

revoked) the charter."); *Delancey v. Chicago Ins. Co.*, No. 04-2355, 2004 WL 2694910 at *2

(E.D. La. 2004) (for the purposes of diversity of citizenship analysis, "an entity's corporate status

is determined in accordance with state law because corporations are purely a creation of state

law.").

In *Wild*, the Seventh Circuit addressed the question of whether diversity jurisdiction

existed where, at the time the complaint was filed, the charter of one of the defendant

---

[8]  *Accord, e.g.*, *Int'l Paper Co. v. Denkmann Assoc.*, 116 F.3d 134, 136-37 (5th Cir. 1997) (in determining membership of Louisiana partnership for diversity of citizenship analysis, court examined Louisiana law to determine if an individual was a partner at the time of filing); *Royal Ins. Co. of America v. Quinn-L Capital Corp.*, 3 F.3d 877, 882-883 (5th Cir. 1993) (in determining citizenship of Texas Lloyd's plan insurer, court relied on Texas law to determine whether an attorney-in-fact was a member of a Lloyd's plan insurer); *United National Ins. Co. v. Waterfront N.Y. Realty Corp.*, 907 F. Supp. 663 (S.D.N.Y. 1995) (holding that an estate should not be considered partner of a partnership for diversity of citizenship analysis even though the estate held an interest in the partnership because the estate had not satisfied the requirements for partnership under state law and the partnership agreement).

Courts have also relied on state law in a variety of other contexts in the determination of diversity jurisdiction.  For example, in determining whether a state-created business entity was a corporation for diversity purposes (in which case diversity is determined by the citizenship of its state of incorporation and principal place of business), courts have relied on state law characterization of the entity's status.  *See Hoagland v. Sandberg, Phoenix & Van Gontard*, 385 F.3d 737 (7th Cir. 2004) (holding that the definition accorded to an entity under state law is determinative for diversity purposes as well:  if the entity is a "corporation" under state law, it is a "corporation" for diversity purposes); *Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell*, 710 F.2d 87, 89 (2d Cir. 1983) (holding that a professional corporation "is a corporation under New York law and is therefore a citizen of New York" for the purposes of diversity jurisdiction).

corporations had been revoked by the state of its incorporation, Oklahoma, and was reinstated only after the action was filed. *Wild*, 292 F.3d at 528.[9] Judge Posner, writing the opinion of the court, stated that the question could be resolved only by reference to the status of the corporation under Oklahoma law. *Id.* at 528. Under Oklahoma law, a corporation whose charter was revoked continues to exist as a corporation for the purposes of suing and being sued until it is actually dissolved. *Id.* at 528-29. Further, the Oklahoma law also made reinstatement of a corporation's charter retroactive. *Id.* at 529. Consequently, the court held that the corporation was a citizen of Oklahoma at the time of filing for the purpose of establishing diversity jurisdiction. *Id.*

Similarly, in *Ripalda v. American Operations Corp.*, 977 F.2d 1464 (D.C. Cir. 1992), the court considered the citizenship of a Delaware corporation which had been dissolved at the time the action was filed. The court reasoned that because the Federal Rules of Civil Procedure provide that a corporation's capacity to sue and be sued is determined by the law under which it was organized, Delaware law also governed the citizenship, if any, of the dissolved corporation for diversity purposes. *Id.* at 1468. The court found that Delaware law provided for the continued existence of a dissolved corporation the purpose of prosecuting and defending lawsuits, and, thus, held that it was a citizen of Delaware at the time of filing. *Id.* at 1468; *accord Costain Coal Holdings, Inc. v. Resource Investment Corp.*, 15 F.3d 733 (7th Cir. 1994); *Delancey*, 2004 WL 2694910, at *1.

Courts have also relied upon state statutes extending the existence of a partnership after dissolution in determining the membership of a partnership at the time of filing for the purposes

---

[9] Although not explicitly stated in the opinion, a finding that the dissolved corporation was not a citizen of any state would mean that diversity jurisdiction would be precluded. *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989).

of diversity analysis.  *See Schiavone v. City of New York*, 99 F.3d 546 (2d Cir. 1996).  In

*Schiavone*, the Second Circuit considered whether a company that had divested its interests in a

joint venture before the lawsuit was filed nonetheless remained a member of the joint venture at

the time of filing for the purposes of diversity of citizenship analysis.  *Id.* at 547-48.  If the

company was a member at the time of filing, diversity would be destroyed.  *Id.*  The court held

that state partnership law was determinative of the company's membership in the joint venture at

the time of filing.  *Id.* at 548.  Under relevant state law, the company's divestment of its interest

dissolved the joint venture, but that the joint venture nevertheless was deemed to continue to

exist with respect to all pre-existing matters not wound up.  *Id.* at 549-50.  Accordingly, the court

held that the company was still a member of the joint venture and diversity was destroyed.  *Id.;*

*accord Mudge Rose Guthrie Alexander & Ferdon v. Pickett*, 11 F. Supp. 2d 449 (S.D.N.Y.

1998).

        In each of the foregoing cases, the courts relied solely upon state law to determine the

"state of facts that existed at the time of filing."  *Grupo Dataflux*, 541 U.S. at 571.  In the same

way, if the Court is inclined to overturn the R&R's finding that ConnectU had no members at

formation and the time of filing, it should look to Delaware's retroactivity provision to determine

who the members of ConnectU were as a matter of Delaware law as of the time of filing of the

Complaint.

> **C.     Determining An LLC's Membership Under State Law, Even If Retroactive,
>         Is Fully Consistent With The Underlying Policy Of The "Time-Of-Filing"
>         Rule.**

        The "time-of-filing" rule is a court-created rule which provides that "the jurisdiction of

the Court depends upon the state of things at the time of the action brought."  *Mollan v.*

*Torrance*, 9 Wheat. 537, 539, 6 L. Ed. 154 (1824).  The primary purpose of the rule is to

minimize litigation over jurisdiction by providing courts with a bright-line rule to establish

whether or not jurisdiction exists in a particular case. *See Grupo Dataflux*, 541 U.S. at 580-81. Indeed, "[t]he time-of-filing rule is what it is precisely because the facts determining jurisdiction are subject to change, and because constant litigation in response to that change would be wasteful." *Id.* at 580.

Allowing the terms of an LLC agreement which are given effect by state law to determine membership of an LLC in the diversity of citizenship analysis plainly serves the same goal of certainty promoted by the "time-of-filing" rule. The Delaware statutory scheme provides that the LLC operating agreement typically will constitute the comprehensive agreement among its members and contain comprehensive provisions addressing the admission and withdrawal of members. *See, e.g.*, *Elf Atochem*, 727 A.2d at 288. Because Delaware law provides that LLC agreements will be made retroactive, parties will order their transactions accordingly.

This permits an LLC who proposes to be a plaintiff in a lawsuit to understand with precision and clarity whether it can meet the threshold requirement for invoking diversity jurisdiction before it files suit based upon an existing body of law that governs its internal affairs. An LLC defendant likewise would quickly know whether complete diversity actually existed, and be provided a quick and easy way to address the situation with a plaintiff if not.. Further, a defendant considering removal in an action brought by an LLC plaintiff may simply ask to examine the Operating Agreement to determine the propriety of its action, or if unable to do so prior to removal, quickly determine whether it should consent to remand once a plaintiff LLC later produces it and demonstrates a lack of complete diversity. Adverse LLCs could simply exchange operating agreements and chart their membership to determine whether complete diversity exists. These contemplated results promote the certainty and efficiency that are the hallmarks of the time of filing rule. On the other hand, creating a hodgepodge of federal

common law decisions about LLC citizenship deprives the litigants and the court of this kind of ready analysis, and virtually ensures the kind of complicated, expensive, and time-consuming litigation over jurisdiction that the "time of filing" rule was designed to prevent.

As the Court stated in *Grupo Dataflux*, "[u]ncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point particularly wasteful." *Id*. at 582. Relying on the terms of state law, particularly where, as here under Delaware law, an extant operating agreement is given dispositive effect, facilitates the purpose of the "time-of-filing" rule.

    **D.**    **The Existing Sham Exception In Diversity Citizenship Jurisprudence Is Fully Sufficient To Address Any Concerns Regarding Abuse Of This Proposed Rule.**

The R&R expressed concern that allowing Delaware's LLC statute to have retroactive effect might permit a subsequent event to dictate discovery, fostering litigation and uncertainty. R&R at 36. Of course, any rule is potentially subject to abuse, but 28 U.S.C. Section 1359 is fully up to the task of limiting collusive or improper attempts to create or defeat jurisdiction. That Section, which denies federal jurisdiction where a party, "by assignment or otherwise, has been improperly or collusively made or joined" to invoke the jurisdiction of the federal courts, as well as the ample case law which has interpreted that statutory section, provides a more than sufficient basis for a court to address any sham devices to manufacture diversity jurisdiction in a particular case. *See* 28 U.S.C. § 1359; *see also, e.g.*, *Toste Farm Corp. v. Hadbury, Inc.*, 70 F.3d 640 (1st Cir. 1995) (affirming dismissal for lack of diversity jurisdiction under Section 1359 where Rhode Island corporation was merged into New York corporation for the purpose of creating diversity jurisdiction); *Airlines Reporting Co. v. S and N Travel*, 58 F.3d 857, 862 (2d Cir. 1995) ("[W]e construe section 1359 broadly to bar any agreement whose 'primary aim' is to concoct federal diversity jurisdiction."); *Bass v. Texas Power & Light Co.*, 432 F.2d 763 (5th

14

Cir. 1970) (reversing under 28 U.S.C. § 1359 the district court's ruling that diversity jurisdiction existed in a wrongful death action where an out-of-state administrator was appointed for the sole purpose of creating diversity of citizenship).

> **E.**     **Even If There Were A Conflict Between The Time-Of-Filing Rule And Delaware LLC Law, Delaware LLC Law Should Supply The Rule Of Decision.**

Previously, ConnectU had asked the Court to disregard the provision of the Delaware LLC Act which enforces retroactive operating agreements, claiming that giving dispositive effect to a retroactive LLC agreement would allow Delaware law to "govern the question of federal diversity." (ConnectU's Post-Hearing Brief at 2). ConnectU has now conceded that Delaware LLC law governs this inquiry. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1937) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."). Furthermore, ConnectU has urged that documents created after the filing of the complaint are ConnectU business records that should be given dispositive effect. *See* ConnectU Objection at 12-13 (Ex. 52, Wachovia form created January 2005). Undoubtedly, the Operating Agreement is a business record of ConnectU, and ConnectU has offered no rationale as to why it should not also be given dispositive effect, particularly where, unlike the Wachovia form, it expressly contemplated that it would be given retroactive effect pursuant to a Delaware statute authorizing that retroactivity. In short, if the Court views ConnectU as a valid Delaware LLC with any members at the time the complaint was filed, it must find that Narendra was a member and dismiss the case.

## IV.     THE RELATION BACK DOCTRINE DOES NOT SAVE CONNECTU LLC'S FLAWED COMPLAINT.

ConnectU's argument that "jurisdiction was proper" at the time of filing the original complaint "because ConnectU's copyright claims arose from the same conduct as ConnectU's

other claims" is without merit. *See* ConnectU Objection at 3. This is so because (a) there was no subject matter jurisdiction over a copyright claim at the time of the original complaint, and (b) supplementation could not cure a jurisdictional defect.

Even if ConnectU had alleged a copyright claim in its original complaint, this Court could not have exercised jurisdiction over it. Section 411(a) of the Copyright Act provides that "no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). ConnectU, however, did not have a certificate of registration until October 15, 2004, more than a month after the September 2, 2004 filing of the original complaint. This Court could thus not have had federal question jurisdiction over a copyright claim until mid-October 2004.

Moreover, supplementing the pleading after obtaining the registration did not fix the initial lack of subject matter jurisdiction.[10] When a court has no jurisdiction over the original complaint, the court also has no jurisdiction to entertain an amended complaint that adds an entirely new cause of action to create a different basis for jurisdiction. *See Broad v. DKP Corp.*, No. 97 Civ. 2029, 1998 U.S. Dist. LEXIS 12942 at *23 (S.D.N.Y. Aug. 19, 1998) ("Plaintiff here seeks to add facts not alleged in the original complaint in an effort to establish [federal subject matter] jurisdiction [], thus substituting an entirely new cause of action and a new basis for jurisdiction. Constitutional and procedural constraints prevent me from endorsing this strategy."). In *Broad*, plaintiff asserted diversity jurisdiction in the original complaint and

---

[10] ConnectU's amended complaint is in fact supplemental complaint because the legal basis for jurisdiction over the new claim of copyright infringement arose after the filing of the original complaint. *See* Fed. R. Civ. P. 15(d) ("a supplemental pleading set[s] forth transactions or occurrences or events which have happened <u>since</u> the date of the pleading sought to be supplemented") (emphasis added). Regardless of whether the complaint is designated amended complaint or supplemental complaint, the Court does not have jurisdiction to address the so-called amended complaint.

16

defendants moved to dismiss arguing lack of diversity. *Id*. at *2. Plaintiffs cross moved to amend complaint to add a RICO claim which would provide federal subject matter jurisdiction.

*Id*. The Court declined to address the merits of plaintiff's motion to amend explaining:

> Plaintiff would have me ignore defendant's 12(b)(1) motion to dismiss the complaint for lack of diversity by allowing plaintiff to amend his complaint to assert a wholly new basis for subject matter jurisdiction. Succumbing to this invitation would require: (1) ignoring a threshold jurisdictional challenge to which plaintiff fails to respond; and (2) allowing plaintiff to amend a complaint *in an action over which I lack jurisdiction*. Such a maneuver, apparently attempted as a sort of legal "do-over" in light of grave questions concerning the existence of diversity jurisdiction in the first place, thwarts the statutory requirements governing subject matter jurisdiction.

> . . .because I must accordingly grant defendant's motion to dismiss for lack of subject matter jurisdiction, I cannot allow plaintiff to amend his complaint in an effort to establish jurisdiction retroactively. *Once defendant's motion to dismiss is granted, there simply is no remaining case or controversy for plaintiff to re-fashion in an attempt to remain in federal court.*

*Id*. at *5-*6 (internal citation omitted) (emphasis added); *accord Asset Value Fund Limited Partnership v. Care Group, Inc.*, 179 F.R.D. 117, 119 (S.D.N.Y. 1998) ("while plaintiffs may 'correct their complaint to show that jurisdiction does in fact exist[,] . . . if there is not federal jurisdiction, it cannot be created by amendment.") (citing 3 James Wm. Moore et al., Moore's Federal Practice, § 14.14[3] (3d ed. 1997) (Rule 15)).

In *Asset Value*, on the eve of trial, defendants notified the Court that diversity jurisdiction was lacking. 179 F.R.D. at 119. Plaintiff sought to amend its complaint to add a Section 10(b) claim which would have conferred federal subject matter jurisdiction. *Id*. The Court denied Plaintiff's request and dismissed the Complaint.

> [B]ecause [Asset Value's 10(b)5] allegations did not appear in the original complaint, and because the original complaint contained no other factual allegations from which the proposed claims could legitimately arise, or through which Care could reasonably be put on notice of such claims, Asset Value cannot amend its complaint to include those allegations now. Manifestly, Asset Value's proposed amendment "seeks not to remedy inadequate jurisdictional allegations, but rather to substitute a new action over which there is jurisdiction for one where

17

it did not exist." As such, the amendment is precluded under longstanding
principles of pleading and jurisdiction.

*Id*. at 121 (internal citations omitted).

Likewise, in the instant case, ConnectU's copyright claim "did not appear in the original

complaint" nor did the original complaint contain allegations from which the copyright claim

could arise. *See id*. There is no allegation of recordation or registration of copyright in the

original complaint. As such, ConnectU's amended complaint does not "remedy inadequate

jurisdictional allegations," but rather substitutes "a new action over which there is jurisdiction for

one where it did not exist" and should therefore not forestall dismissal. *Id*.; *see Steel Co. v.

Citizens for a Better Environment,* 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot

proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist,

the only function remaining to the court is that of announcing the fact and dismissing the

cause.") (citation omitted)*.*

None of the cases cited by ConnectU apply the relation-back doctrine in a jurisdictional

context. In *Carney v. Resolution Trust Corporation*, there was no jurisdictional issue in the

original complaint or the first amended complaint and hence no need for a new jurisdictional

amendment by relation back of the second amended complaint. 19 F.3d 950, 954-55 (5th Cir.

1994). In *Sessions v. Rusk State Hospital*, the Court merely concluded that the amended

complaint was not time barred because it related back to the date of filing the original complaint.

648 F.2d 1066, 1070 (5th Cir. 1981). The Court did not find that the amended complaint cured

the jurisdictional defect in the original complaint. Instead, the Court dismissed the original

complaint as barred by the Eleventh Amendment and dismissed the suit as lacking merit. *Id*. at

1068. In *Koal Industries Corp. v. Asland*, the court found that the claims in the amended claims

related back to the original complaint; the claims in the original complaint were timely filed and

18

not time barred.  808 F. Supp. 1143, 1157-60 (S.D.N.Y. 1992).  There was no discussion of whether the amended claims cured the absence of jurisdiction.

The R&R thus correctly held that "[b]y its terms, Rule 15(c), Fed. R. Civ. P., which provides for the relation back of amendments, does not appertain in the circumstances at hand." R&R at 9, n.3.[11]

## CONCLUSION

ConnectU's objections to the R&R are without merit.  Accordingly, the Court should dismiss this case for lack of subject matter jurisdiction, because ConnectU has not and cannot establish that diversity existed as of the filing of the Complaint on September 2, 2004.[12]

---

[11] ConnectU objects that dismissal of its case would lead to an inequitable result, and it might appear on the surface that refusing to allow the Amended Complaint to relate back to the time of filing while applying the retroactivity provision of Delaware law determine LLC membership is harsh.  Federal courts are courts of limited jurisdiction, and must monitor their jurisdictional boundaries vigilantly.  *Diaz-Rodriguez v. Pep Boys Corp.*, 410 F.3d 56, 62 n.5 (1st Cir. 2005).  Jurisdiction under the diversity statute, in particular, is strictly construed.  *Hawes*, 598 F.2d at 702.  ConnectU chose its forum and framed its original complaint.  It also voluntarily executed its Operating Agreement reciting its retroactivity.  When the jurisdictional defect in its case was brought to its attention, it chose to fight rather than voluntarily dismiss and refile a valid action.  While the legal principles that mandate dismissal in this case may seem harsh in their combined effect, it is not inequitable or inconsistent to hold ConnectU to the legal consequences of its voluntary acts.

[12] Because of the jurisdictional defect in ConnectU's case, Saverin maintains that all questions about the relationship between this case and any future case ConnectU might choose to file should be deferred until such filing and taken up in the context of that new case.  It would be premature to pass judgment or set conditions in this case for whether a future, yet-to-be-filed case is proper and timely, or to decide now how it should be conducted. *Steel Co.,* 523 U.S. at 94 (1998).

19

DATED: March 26, 2007

/s/ Daniel K. Hampton

Gordon P. Katz (BBO# 261080)
Daniel K. Hampton (BBO# 634195)
HOLLAND & KNIGHT, LLP
10 St. James Avenue
Boston, MA  02116
Telephone:  (617) 523-2700
dan.Hampton@hklaw.com
gordon.katz@hklaw.com

Annette L. Hurst (*pro hac vice*)
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA  94104
Telephone:  (415) 772-6000

Bhanu K. Sadasivan (*pro hac vice*)
HELLER EHRMAN LLP
275 Middlefield Road
Menlo Park, CA  94025
Telephone:  (650) 324-7197

Attorneys for Defendant Eduardo Saverin

**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent
electronically to the registered participants as identified on the Notice of Electronic Filing
(NEF) and paper copies will be sent to those indicated as non registered participants on
the date of filing.

Dated:  March 26, 2007                          /s/ Daniel K. Hampton
                                                Daniel K. Hampton