IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>   Plaintiffs,<br><br>v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>   Defendants. | CIVIL ACTION NO. 1:04-CV-11923 (DPW) |
| MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>   Counterclaimants,<br><br>v.<br><br>CONNECTU LLC,<br><br>   Counterdefendant,<br><br>and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>   Additional Counterdefendants. | |

**FACEBOOK DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO
REPORT AND RECOMMENDATION DATED MARCH 2, 2007**

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     STANDARD OF REVIEW.................................................................................... 2

     A.      Rule 72(a), F.R.C.P. and 28 U.S.C. § 636(b)............................................... 2

III.    PROCEDURAL HISTORY ................................................................................... 2

     A.      The Original Pleadings Did Not Show Diversity Or Standing ............................ 3

     B.      ConnectU Identifies Members To Escape Jurisdiction In California Action ........ 4

     C.      ConnectU Changes Its Position After Pramco ...................................................... 7

IV.     ARGUMENT.......................................................................................................... 9

     A.      The Time Of Filing Rule Applies, Not The Relation Back Rule.......................... 9

          1.      Grupo Is The Controlling Law ................................................................. 9

          2.      ConnectU Cannot Argue Prejudice Under The Law Or Facts ............... 11

     B.      ConnectU Could Not Prove Diversity Jurisdiction Under 28 U.S.C. § 1332 ...... 11

          1.      The Court Properly Found That No Members Existed Under
               Delaware Law.......................................................................................... 12

          2.      ConnectU Did Not Prove It Had Members On September 2, 2004......... 15

          3.      Zuckerberg Was A New York Citizen On The Filing Date.................... 16

               a.      ConnectU's Application Of "Domicile" Law Is Wrong ............ 16

               b.      The MJ Properly Evaluated The Facts ....................................... 17

V.      CONNECTU'S MISCELLANEOUS ARGUMENTS SHOULD BE REJECTED........ 19

     A.      Dismissal With Prejudice Is Warranted............................................................. 19

     B.      ConnectU's Additional Requests Are Not Properly Before the Court............... 20

VI.     CONCLUSION..................................................................................................... 20

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Accord Lundquist* v. *Precision Valley Aviation , Inc.*,
  946 F.2d 8 (1st Cir. 1991) ............................................................................... 11

*Aetna Casualty and Surety Co.,* v. *Hillman*,
  796 F.2d 770 (5th Cir. 1986) ........................................................................... 10

*Alexander* v. *Trustees of Boston Univ.*,
  585 F. Supp. 282 (D. Mass. 1984) ................................................................... 17

*Anderson* v. *Watts*,
  138 U.S. 694 (1891) .......................................................................................... 17

*Aoude* v. *Mobil Oil Corp.*,
  892 F.2d 1115 *(1st Cir. 1989)* ......................................................................... 19

*Asset Value Fund Ltd. Partner.* v. *Care Group, Inc.*,
  179 F.R.D. 117 (S.D.N.Y. 1998) ..................................................................... 10

*Bair* v. *Peck*,
  738 F. Supp. 1354 (D. Kan. 1990).................................................................... 17

*Boelens* v. *Redmen Homes, Inc.*,
  759 F.2d 504 (5th Cir. 1985) ........................................................................... 10

*Broad* v. *DKP Corp.*,
  1998 WL. 516113 (S.D.N.Y. 1998) ......................................................10, 11, 20

*Brockton Sav. Bank* v. *Peat, Marwick, Mitchell & Co.*,
  771 F.2d 5 (1st Cir. 1985)................................................................................ 19

*Bull HN Information Sys., Inc.* v. *Hutson*,
  229 F.3d321 (1st Cir. 2000) ............................................................................ 15

*Carbine* v. *Xalapa Farm Ltd. Partnership*,
  980 F. Supp. 860 (E.D. La. 1997) ................................................................... 12

*Garcia Perez* v. *Santaella*,
  364 F.3d 348 (1st Cir. 2004) ........................................................................... 16

**TABLE OF AUTHORITIES**
(continued)

Page

*Grupo Dataflux* v. *Atlas Global Group L.P.*,
  541 U.S. 567 (2004)................................................................................1, 9, 10, 11

*Hawes* v. *Club Ecuestre El Comandante*,
  598 F.2d 698 (1st Cir. 1979) ............................................................................ 11

*Independent Living Aids, Inc.* v. *Maxi-Aids, Inc.*,
  349 F. Supp. 2d 509 (E.D.N.Y. 2004) ................................................................ 2

*Jane Doe* v. *Helen O'Bannon*,
  91 F.R.D. 442 (E.D.Pa 1981) ........................................................................... 10

*Katz* v. *Goodyear Tire & Rubber Co.*,
  737 F.2d 238 (2d Cir. 1984)............................................................................. 16

*McMann* v. *Doe*,
  460 F. Supp. 2d 259 (D.Mass. 2006)................................................................ 12

*Newman-Green, Inc.* v. *Alfonso-Larrain*,
  490 U.S. 826 (1989).....................................................................................11, 16

*Pramco LLC* v. *San Juan Bay Marina, Inc.*,
  435 F.3d 51 (1st Cir. 2006) ................................................................................ 7

*Premier Homes & Land Corp.* v. *Cheswell, Inc.*,
  240 F. Supp. 2d 97 (D. Mass. 2002)................................................................. 19

*Steel Co.* v. *Citizens for a Better Environment*,
  523 U.S. 83 (1998) ........................................................................................... 20

*Tanzymore* v. *Bethlehem Steel Corp.*,
  457 F.2d 1320 (3rd Cir. 1972)......................................................................... 16

*USM Corp.* v. *GKN Fasteners Ltd*,
  578 F.2d 21 (1st. Cir. 1978) ............................................................................ 10

*United States* v. *Raddatz*,
  447 U.S. 667 (1980)..................................................................................... 2, 19

# TABLE OF AUTHORITIES
## (continued)

Page

*Willis* v. *Westin Hotel Co.*,
  651 F. Supp. 598 (S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 884
  F.2d 1556 (2d Cir. 1989)......................................................................................... 17

*Wyle* v. *R.J. Reynolds Indus., Inc.*,
  709 F.2d 585 (9th Cir. 1983).................................................................................... 19

## STATE CASES

*Blackwell* v. *Elsten*,
  1984 WL 2753 (D.D.C.) ........................................................................................... 19

*Elf Atochem North America, Inc.* v. *Jaffari*,
  727 A.2d 286 (1999) ................................................................................................. 13

*Facchina* v. *Malley, No. Civ.A. 783-N*,
  2206 WL 2328228 ..................................................................................................... 15

*In re Grupos dos Chiles, LLC*,
  2006 WL 668443 ....................................................................................................... 14

*Limited Liability Companies: Tax and Business Law*,
  1998 WL 1169452 ..................................................................................................... 14

*Matthews* v. *D'Amore*,
  2006 WL 3095817 (Ohio App. 10 Dist., Nov. 2, 2006) ........................................... 12

*Wai Yip Int'l Corp.* v. *JAAM, LLC*,
  2006 WL 3690649 (D.N.J. 2006).............................................................................. 10

## DOCKETED CASES

*Facebook, Inc.* v. *ConnectU LLC, et al., California Superior Court*,
  Case No. 1-05-CV-047381 (the "California Action") ............................................... 5

## FEDERAL STATUTES

28 U.S.C. § 1367(a)........................................................................................................ 3

28 U.S.C. § 1653 ............................................................................................................ 9, 10

# TABLE OF AUTHORITIES
## (continued)

Page

28 U.S.C. § 636(b)(1)(c) .......................................................................................... 2

28 U.S.C. §1332 ...................................................................................................... 3

Fed. R. Civ. P. 15(c) ........................................................................................... 9, 10

Fed. R. Civ. P. 72(b) ............................................................................................... 20

## I.    <u>INTRODUCTION</u>

ConnectU LLC's objections to Magistrate Judge Collings' Report and Recommendation

("R&R") that this case be dismissed should be overruled.  The carefully reasoned 69-page R&R

is the result of hundreds of pages of briefing over a year and a half, two evidentiary hearings

lasting several days, ten days of depositions, extensive document discovery, and dozens of

exhibits.  ConnectU offers no credible reason to revisit the detailed factual and legal findings of

the Magistrate Judge ("MJ").  In the end, ConnectU simply failed to meet its burden of proving

diversity at the time of filing and, in fact, engaged in an effort to manufacture jurisdiction.

ConnectU raises three arguments, each of which lack merit:

1. <u>**ConnectU incorrectly applies the "relation back" doctrine instead of the time of filing rule.**</u>  The R&R correctly recognized that the relation back doctrine has no applicability to this case.  Rather, the time of filing rule governs, and requires that diversity jurisdiction exist at the time of filing of the original complaint.  This rule has existed for nearly 200 years and was most recently articulated in *Grupo Dataflux v. Atlas Global Group L.P.*, 541 U.S. 567, 570-571 (2004).  Applying the time of filing rule, *Grupo* found proper dismissal of a case after trial was completed.  ConnectU offers no reason to depart from the established Supreme Court precedent.

2. <u>**ConnectU incorrectly challenges the R&R's factual and legal finding that ConnectU had no members at the time of filing**</u>.  The R&R applied the law correctly, and, in any event, found as a matter of fact, that ConnectU had not met its burden to prove that ConnectU had members at the time of filing.  In so doing, the R&R evaluated ConnectU's witnesses' credibility and decided to reject their sworn testimony in light of the extensive evidence controverting their testimony.

3. <u>**ConnectU incorrectly challenges the MJ's determination of Mark Zuckerberg's domicile**</u>.  The MJ carefully weighed the facts and found that Mark Zuckerberg was credible when he testified concerning his domicile as of September 2, 2004.  His testimony was corroborated with extensive documentation.  ConnectU offers no valid basis to challenge the conclusion other than saying it disagrees with MJ Collings.

ConnectU also asks for a litany of forms of relief from dismissal, only one of which is

properly before this Court — that is, whether this case should be dismissed with or without

prejudice or whether some other sort of sanction is warranted.  Defendants submit that the Court

should use its inherent powers to dismiss this case with prejudice.  As set forth herein, ConnectU

engaged in a cynical bad-faith effort to manufacture jurisdiction.  ConnectU created a much-

belated Operating Agreement purporting to transfer rights, had witnesses proffer false testimony controverting prior sworn testimony in a procedural game, attempted to manufacture prejudice by filing numerous motions after this issue arose, and needlessly prolonged the dispute related to jurisdiction. Such bad faith actions should not be countenanced by this Court, warranting dismissal with prejudice.

## II.    STANDARD OF REVIEW

### A.    Rule 72(a), F.R.C.P. and 28 U.S.C. § 636(b).

Those portions of the R&R to which objections are made are subject to *de novo* review. 28 U.S.C. § 636(b)(1)(c). The court need not "rehear the contested testimony in order to carry out the statutory command to make the required 'determination.'" *United States v. Raddatz*, 447 U.S. 667, 674 (1980). The Court has discretion to give deference to the MJ's R&R. *Independent Living Aids, Inc. v. Maxi-Aids, Inc.*, 349 F. Supp. 2d 509, 515 (E.D.N.Y. 2004). "[I]t is unlikely that a district judge would *reject* a magistrate's proposed findings on credibility when those findings are dispositive and substitute the judge's own appraisal; to do so without seeing and hearing the witness or witnesses whose credibility is in question could well give rise to serious questions … ." *Raddatz*, 447 U.S. at 681 n.7. (emphasis in original).

## III.    PROCEDURAL HISTORY[1]

ConnectU's complaint is premised on the assertion that Defendants "stole" its idea in creating the website www.facebook.com. ConnectU claims the idea was presented to Zuckerberg by the then Harvard undergraduate students Divya Narendra, Cameron Winklevoss,

---

[1]  References to testimony or exhibits admitted during the June 22, 2006 or October 24-25, 2006 hearings conducted by the MJ appear as "6/22/06 Hg. Tr. at xx:yy" or "10/24/06 Hg. Tr. Ex. __," where "xx:yy" refers to page (xx) and line (yy) numbers. References to the R&R appear as "RR at __." References to ConnectU's Objections to the R&R appear as "Objections at __." References to other pleadings electronically filed with the Court appear by Docket Entry "(Doc. No. ___)."

OHS West:260202035.6

and Tyler Winklevoss.[2]  *See generally* Amended Complaint (Doc. No. 13; 10/24/06 Hg. Tr. Ex.

65).  At the time of these purported events, ConnectU LLC did not exist.

A.    <u>The Original Pleadings Did Not Show Diversity Or Standing.</u>

In its original complaint filed September 2, 2004, ConnectU LLC was the sole plaintiff

asserting seven state law claims as its basis for relief.  *See* Complaint (Doc. No. 1; 10/24/06 Hg.

Tr. Ex. 64).  The only basis for federal subject matter jurisdiction set forth in the complaint was

diversity jurisdiction under 28 U.S.C. §1332 and pendent jurisdiction under 28 U.S.C. § 1367(a).

*Id*. at ¶¶ 2-3.  ConnectU identified itself as a Delaware LLC, and listed Cameron and Tyler

Winklevoss, and Divya Narendra as the LLC's "founders," suggesting that they may be

members.  *Id*. ¶ 11.  This factual statement was reviewed and approved by Cameron Winklevoss

before the Complaint was filed.  *See* 10/24/06 Hg. Tr. at 222:5-18.  The complaint did not

identify the domicile of any of those "founders" and did not expressly specify any members of

ConnectU LLC.  ConnectU also specifically alleged that Zuckerberg was a resident of New York

as a basis to assert diversity jurisdiction.  *See* Complaint (10/24/06 Hg. Tr. Ex. 64) at ¶¶ 4-10.

ConnectU did not expressly aver the domicile or citizenship of Zuckerberg.  *Id.*

On October 28, 2004, ConnectU filed an "Amended" Complaint ("FAC"), abandoning

diversity jurisdiction and instead asserting federal question jurisdiction.  *See* FAC (Doc. No. 13;

10/24/06 Hg. Tr. Ex. 65).  The FAC added supplemental claims for copyright infringement and

unfair business practices.  *Id*. ¶¶ 24-37.  These new claims were supplemental, as they could not

have been raised in the original complaint.  Namely, ConnectU claimed to have obtained a

copyright on October 15, 2004, after the original complaint was filed.  *Id.* ¶¶ 24-29 & Ex. A.

---

[2]  In its objections to the R&R, ConnectU makes numerous arguments about facts and issues
irrelevant to the issues considered by the MJ.  Defendants disagree with the assertions but will
focus on the issues relevant to the R&R in this memorandum.

OHS West:260202035.6

Defendants filed their Answer on November 18, 2004 (Doc. No. 14). The Answer identified various defects in the FAC, including that ConnectU "assert[ed] claims on behalf of a corporate entity which purportedly arose prior to the formation of that entity," and also that all claims were barred because ConnectU lacked standing. *Id*. pp. 9, 11.

To investigate standing and ConnectU's rights to the asserted claims, on July 11, 2005, Defendants propounded their first set of interrogatories in this action, asking for the basis of ConnectU's position that it was the successor in interest to Harvard Connection, as alleged in the FAC. 10/24/06 Hg. Tr. Ex. 67, Interrogatory No. 7. On August 5, 2005, three days prior a Rule 30(b)(6) deposition of ConnectU (and for which one of the topics was the method of assignment to ConnectU of the relevant intellectual property rights), Divya Narendra, Cameron Winklevoss, Tyler Winklevoss, and Howard Winklevoss (Cameron and Tyler's father) executed a written operating agreement governing the rights and obligations of ConnectU LLC and admitting each of the individuals as members as of "April 6, 2004." 10/24/06 Hg. Tr. Ex. 43; *id*. at C011291 (emphasis added). ConnectU's response to Interrogatory No. 7 cited this Operating Agreement and little else. 0/24/06 Hg. Tr. Ex. 67, Interrogatory No. 7. The Operating Agreement was the first and only document produced purporting to convey any rights to ConnectU from Narendra, and the Winklevoss brothers. It also was the first and only document that specifically states that members in ConnectU LLC are being admitted.

Defendants filed their motion to dismiss on October 14, 2005. (Doc. No. 94.) Numerous grounds for dismissal were raised, including the absence of diversity and that ConnectU did not have standing at the time it initiated its claim. Nine of ConnectU's 12 discovery motions were filed after the motion to dismiss was filed.

### B.   ConnectU Identifies Members To Escape Jurisdiction In California Action.

On August 17, 2005, Facebook, Inc., filed a complaint in California Superior Court

against ConnectU LLC and its four "founding" members, Messrs. Winklevoss and Narendra, alleging violations of California's Penal Code Section 502(c) and common law misappropriation — *Facebook, Inc. v. ConnectU LLC, et al.*, California Superior Court, Case No. 1-05-CV-047381 (the "California Action"). (Doc. No. 226, Ex. A.)

The individual defendants challenged jurisdiction by filing a Motion to Quash Service of Summons and Complaint for Lack of Personal Jurisdiction. (Doc. No. 226, Ex. B.) Their central argument was that they should not be subject to personal jurisdiction because they were acting as members of ConnectU LLC. *Id.* at 4:25-26. "The Individual Defendants," they argued, "did not take any acts regarding Plaintiff outside their positions as members of an LLC, and Plaintiff has no evidence that they did." *Id.* at 6:25-26

To investigate, Facebook sought discovery related to the court's exercise of personal jurisdiction over the individual defendants. For example, Facebook Special Interrogatory No. 14 (served on all defendants) sought the identity of ConnectU's current and former Members, Managers, and Board of Managers as well as the dates of their membership. *See, e.g.,* 10/25/06 Hg. Tr. 37:15-24 & Ex. 78, 8:19-25. All four of ConnectU's members, as well as ConnectU, initially objected to the interrogatory and provided no substantive response. Facebook filed a Motion to Compel, which was granted. The parties then responded under penalty of perjury that the:

> Members of ConnectU include Cameron Winklevoss, Tyler Winklevoss, Howard Winklevoss, and Divya Narendra, as set forth in the Limited Liability Company Operating Agreement recited in the Interrogatory ("Operating Agreement") and found at bates numbers C011285 through C011335. ***These persons have all been Members since ConnectU was formed.***

*Id*. at 39:5-41:18 Ex 78, Tab C, 5:5-11. (Emphasis added.)

Facebook also served the defendants with Form Interrogatories.[3]  All of the defendants,
answered 24 times under oath that any unlawful downloads of email account information by
ConnectU from the Facebook website occurred only in their capacities as "members" of
ConnectU.  *See, e.g.*, 10/24/06 Hg. Tr. Ex. 71, Tab A, 5:10-7:2.  Because the defendants'
responses were deficient, Facebook filed a motion to compel.  The motion was granted.  In those
responses, Messrs. Winklevoss and Narendra intimated under oath that all downloads referenced
in their responses occurred prior to the end of July 2004.  *See, e.g.,* 10/24/06 Hg. Tr. at 55:8-58:2
& Ex. 71, Tab B, 2:2-4:17.  As part of this admission, the defendants also cross-referenced their
amended response to Special Interrogatory No. 14, described above.  *Id.* at 57:14-58:2, Ex. 71,
Tab B, 2:6-8.

Facebook also served requests for production seeking all documents relating to the
formation of ConnectU LLC.  10/24/06 Hg. Tr. at 206:9-16.  Again, the Superior Court found
ConnectU's initial responses deficient and ordered supplementation, including a Declaration
describing that a complete production had been made.  *Id.* at 206:18-207:14 & Ex. 83; *see also*
(Doc. No. 226, Ex. Y.)  In responding to the Order, ConnectU did not include any Wachovia
bank records or foreign LLC registrations from Connecticut.  *Id.* 208:7-18;  256:10-25.

On June 2, 2006, the California court granted the individual defendants' Motion to
Quash. (Doc. No. 226, Ex. C.)  The court provided no analysis in its decision.  *Id.*  At no point
prior to this Order did ConnectU ever contend that the individual defendants were not members
of ConnectU LLC as of September 2, 2004.

---

[3]  In California Superior Court practice, parties may serve both "Form" interrogatories, which are
a specific set of questions that have been approved by the California Supreme Court, and
"Special" interrogatories, which are prepared by the parties and are similar to the traditional
interrogatories served pursuant to Rule 33, FRCP, in Federal Court practice.

C.     **ConnectU Changes Its Position After *Pramco*.**

Subsequent to the parties' initial briefing on Defendants' Motion to Dismiss in this action, the First Circuit issued *Pramco LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51 (1st Cir. 2006), and held that an LLC's citizenship for purposes of diversity is determined by the citizenship of its members. The Facebook Defendants immediately filed a Notice of New Authority re *Pramco*, to which ConnectU responded. (Doc. No. 169 & 171) ConnectU did not argue that Narendra was not a member of the LLC, but instead asserted only that Zuckerberg was not a New York citizen at the time the complaint was filed. (Doc. No. 171.)

On May 1, 2006, the MJ entered a Memorandum and Procedural Order setting an evidentiary hearing on the issue of Zuckerberg's and Narendra's domicile at the time the original complaint was filed. (Doc. No. 172). The MJ also authorized expedited discovery on the topic of domicile of Narendra and Zuckerberg. *Id.*, at 12-13. Extensive discovery was taken. As would later be shown at the Court's evidentiary hearing, the evidence from discovery proved that ConnectU was wrong about Zuckerberg's citizenship.

On June 12, 2006 (after most discovery had been taken and 10 days after the Motion to Quash was granted), ConnectU filed a Motion for Leave to File a Supplemental Brief in Light of *Pramco* and argued *for the first time* that Narendra was not a Member of ConnectU as of September 2, 2004. (Doc. No. 181). In support of its Motion, ConnectU filed three identical declarations from the Winklevoss brothers and Narendra. (Doc. Nos. 183-185). Each declaration described a purported prior oral agreement allegedly reached among Messrs. Winklevoss and Narendra, in which they contended that they agreed not to make Narendra a Member of ConnectU when it was formed. *Id.*, ¶¶ 1. In the eighteen months of preceding litigation, this so-called oral agreement had never before been identified in any court proceeding despite repeated requests and Court orders requiring such disclosure. In fact, when asked for discovery on the so-

called agreement, ConnectU resisted.  (Doc. No. 191 at 2-3; Doc. No. 194 Exs. O-Q.)

Following the filing of ConnectU's Supplemental Brief, the Court held the evidentiary hearing related to Zuckerberg and Narendra's citizenship. The parties stipulated that Narendra was domiciled in New York at the time of the evidentiary hearing. 6/22/06 Hg. Tr. at 12:5-14. Zuckerberg testified for an entire day.  He was cross-examined for about four hours.  Numerous exhibits were entered as evidence by both parties.

On August 24, 2006, the MJ entered a Second Memorandum and Procedural Order (1) finding Zuckerberg to be a citizen of New York as of September 2, 2004 and (2) scheduling a second evidentiary hearing on ConnectU's membership as of September 2, 2004.  (Doc. No. 230).  Extensive expedited discovery was taken on the issue of membership in ConnectU. Defendants learned that in 2005, ConnectU filed its 2004 composite tax returns stating that Narendra was a Member of ConnectU LLC during that tax year.  See 10/24/06 Hg. Tr. Exs. 44, 53 & 56.  Remarkably, just days after his deposition was taken on October 3, 2006 on "the membership issue" as part of these proceedings, Howard Winklevoss (the Winklevoss brothers' father) attempted to convince ConnectU's tax accountant to file an amended 2004 tax return in which Narendra would not be named as a member.  10/24/06 Hg. Tr. at 162:5-165:24. ConnectU's accountant testified he was uncomfortable doing so.  *Id.* at 125:6-12.

The Court held a two day evidentiary hearing and admitted deposition testimony and numerous exhibits into evidence. Howard Winklevoss did not testify.  The Court rejected the testimony offered in the three declarations and found, under the law and facts, that ConnectU had no members at the time of filing.  The Court made no reference to the other bases raised in the motion to dismiss, presumably because the R&R rendered the other issues moot.

IV.    **ARGUMENT**

A.    **The Time Of Filing Rule Applies, Not The Relation Back Rule.**

1.    ***Grupo* Is The Controlling Law.**

The R&R correctly ruled that diversity is determined at the time the complaint is filed. RR at 26-27.  The R&R ruling applies current Supreme Court jurisprudence that "[w]here there is *no* change of party, jurisdiction depending on the condition of the party is governed by that condition, as it was at the commencement of the suit." *Grupo Dataflux*, 541 U.S. at 574; *see also* R&R at 3-4.  ConnectU incorrectly argues that the amended complaint can retroactively cure a jurisdictional defect under Fed. R. Civ. P. 15(c) and 28 U.S.C. § 1653.  *Grupo* supports the R&R wherein the MJ ruled that Rule 15(c) and Section 1653 have no bearing on this motion.

In *Grupo*, a case that ConnectU ignores, Atlas Global Group, a Texas limited partnership, filed its original action against Grupo Dataflux, a Mexican corporation.  Grupo filed a motion to dismiss based on lack of subject matter jurisdiction after a jury verdict was returned in favor of Atlas.  The court dismissed the case reasoning that complete diversity was lacking at the time the lawsuit was filed, because Atlas had two Mexican citizen partners at that time.  On appeal, Atlas successfully argued that dismissal was inappropriate because the two Mexican partners had left the partnership a month before trial, thereby allegedly curing the jurisdictional defect.  The Supreme Court reversed by reaffirming the long standing rule that "the jurisdiction of the Court depends upon the state of things at the time the action is brought." *Id.* at 570.

ConnectU had no issued copyright when it initiated this case.  The issuance of ConnectU's alleged copyright arose after the filing of this case, making it a supplemental claim at best.  Because this claim was not actionable on September 2, 2004, it cannot be used to create jurisdiction retroactively.  ConnectU, in seeking to preserve its claim by asserting an after acquired copyright claim, is seeking to enlarge the jurisdiction of the Court.  Rule 15(c) and

OHS West:260202035.6

Section 1653 cannot be used to "enlarge the jurisdictional bounds of this court." *USM Corp. v. GKN Fasteners Ltd*, 578 F.2d 21, 23 (1st. Cir. 1978); *see also Grupo*, 541 U.S. at 575 (holding that a citizenship change cannot cure a defect at time of filing). "Relation back only exists for the purpose of ameliorating the effect of statutory bars to relief and not for the purpose of artificially assisting plaintiffs to fulfill constitutional prerequisites, such as standing." *Jane Doe v. Helen O'Bannon*, 91 F.R.D. 442, 447 (E.D.Pa 1981).

Further, an amendment adding Federal claims may not be used to create jurisdiction retroactively under Rule 15(c) or Section 1653. *Aetna Casualty and Surety Co., v. Hillman,* 796 F.2d 770, 774-76 (5th Cir. 1986). *See also, Wai Yip Int'l Corp. v. JAAM, LLC*, 2006 WL 3690649, at *1-*4 (D.N.J. 2006) (adopting Magistrate Judge's R&R that case be dismissed for lack of diversity jurisdiction when plaintiff sought to amend pursuant to Rule 15 and Section 1653 to assert copyright and patent claims); *Broad v. DKP Corp.*, 1998 WL 516113, at *1, *4 - *7 (S.D.N.Y. 1998) (citing numerous cases and refusing to permit defendant who improperly brought suit pursuant to diversity jurisdiction to withdraw diversity and amend pursuant to Rule 15 and Section 1653 to assert a Federal RICO claim that would otherwise support federal question jurisdiction); *Asset Value Fund Ltd. Partner. v. Care Group, Inc.*, 179 F.R.D. 117, 118-19 (S.D.N.Y. 1998) (where diversity jurisdiction was lacking in original complaint amendment under Rule 15 and Section 1653 to add a federal securities law claim was not permitted); *see also Boelens v. Redmen Homes, Inc.*, 759 F.2d 504, 511-12 (5th Cir. 1985).[4]  As the court in *Broad* recognized, to allow an amendment to confer "retroactive subject matter jurisdiction" under such

---

[4]  ConnectU cites *Boelens* to claim that the amended complaint supersedes the original complaint with respect to jurisdiction. ConnectU's Opposition, at 3.  To the contrary, *Boelens* held that an amended complaint would not be given retroactive effect for purposes of jurisdiction. *Id.* at 511-12.  In any event, the original complaint in *Boelens* included a federal claim, making the case quite different from the one presented to this Court.

circumstances "would be engaging in a form of hypothetical jurisdiction," which is wholly improper. 1998 WL 516113 at *4. *See also, Newman-Green, Inc. v. Alfonso-Larrain*, 490 U.S. 826, 831 (1989).

### 2.    ConnectU Cannot Argue Prejudice Under The Law Or Facts.

ConnectU claims that it would suffer substantial prejudice if the case is dismissed. This argument was rejected by *Grupo*. The court acknowledged the harsh consequences resulting from a strict application of the time of filing rule but nevertheless asserted that this rule must be adhered to "regardless of the costs it imposes," because "uncertainty regarding the question of jurisdiction is particularly undesirable, and collateral litigation on the point is particularly wasteful." *Id.* at 582.

Notwithstanding this clear Supreme Court guidance, ConnectU decided to engage in collateral litigation surrounding this issue. ConnectU has been aware of the jurisdictional defect in its original complaint since November 2004. It had the option of filing a new complaint and mitigating the harsh consequences resulting from the application of the "time of filing rule that has a pedigree of almost two centuries." *Id.* at 582. Rather than simply dismissing and re-filing, however, ConnectU chose to file nine additional motions to compel and engage in substantial, acrimonious litigation to challenge what would otherwise be a straightforward course of action.

### B.    ConnectU Could Not Prove Diversity Jurisdiction Under 28 U.S.C. § 1332.

ConnectU's remaining challenges involve diversity jurisdiction. Statutes conferring diversity jurisdiction are to be "strictly construed." *Hawes v. Club Ecuestre El Comandante*, 598 F.2d 698, 702 (1st Cir. 1979). The plaintiff has the burden of proof to establish diversity at the time of filing. *Id. Accord Lundquist v. Precision Valley Aviation , Inc.*, 946 F.2d 8, 10 (1st Cir. 1991). Here, ConnectU bears the burden of ***disproving*** that ConnectU LLC had no members

under Delaware law as of September 2, 2004, or alternatively that if it had members that Divya

Narendra was not one of them. *See Carbine v. Xalapa Farm Ltd. Partnership*, 980 F. Supp. 860,

862 (E.D. La. 1997) ("Because the Partnership is the party seeking to invoke this Court's

jurisdiction, it bears the burden of disproving that plaintiff and her brothers are limited

partners"). ConnectU could not meet its burden on either account, as set forth herein and in

previous briefing.

### 1. The Court Properly Found That No Members Existed Under Delaware Law.

The MJ correctly found that ConnectU had no members at the time of filing. RR at 55.

ConnectU incorrectly contends that the absence of members in an LLC is a legal impossibility.[5]

Objections at 7. Delaware law contemplates that persons can first be admitted as members either

before or after the certificate of formation is filed with the Secretary of State. To be complete,

however, the LLC must be populated with members. 6 Del.C. § 18-101(6)[6] (an LLC "means a

limited liability company formed under the laws of the State of Delaware *and* having 1 or more

members") (emphasis added).

Contrary to ConnectU's assertions, the addition of members is not automatic. "'Member'

means a person who has been admitted to a limited liability company as a member as provided in

§ 18-301 … .'" § 18-101(11). Admission is accomplished by compliance with the statutory

requirements. RR at 50; *Matthews v. D'Amore*, 2006 WL 3095817, *8 (Ohio App. 10 Dist.,

Nov. 2, 2006). Under Section 18-301, membership admission can occur "in connection with

formation of a limited liability company" (§ 18-301(a)) or "after the formation" of the LLC.

---

[5] ConnectU complains that the MJ undertook this analysis without briefing by the parties. "Any federal court should address the issue of subject matter jurisdiction *sua sponte*." *McMann v. Doe*, 460 F. Supp. 2d 259, 263 -264 (D.Mass. 2006). As part of this independent obligation, the Court is free to assess the facts and law independently of the parties and is in fact obligated to do so.
[6] Unless otherwise stated, all citations beginning "Section 18-XXX" or "§ 18-XXX" are to

§ 18-301(b).[7]  Admission of a member "in connection with the formation" occurs *upon the later of*:

> 1) formation of the LLC, or
>
> 2) the time provided in the LLC Operating Agreement or (when the Agreement is silent) "when the person's admission is reflected in the records of the" LLC.

§ 18-301(a)(1) and (2); RR at 38.

The only way a person can be admitted upon "formation of the LLC" (*i.e.*, contemporaneously with the filing of the certificate) is if an Operating Agreement or other company record a) predates the filing of the certificate of formation and b) reflects admission of a member; otherwise, "formation of the LLC" is not the later of the two events to occur and admission could not be complete at that time.  If, on the other hand, the LLC is created first (*i.e.*, the certificate is filed before any records are created), which is what occurred in this case, a person is admitted at the time provided in the Operating Agreement or when the LLC's records say that a member is being admitted.  As a factual matter, the MJ found no records saying any person was admitted prior to September 2, 2004.  In fact, the MJ found that the August 2005 Operating Agreement is the only document that says members are admitted.  RR at 40, n.20; 54. Moreover, ConnectU's Operating Agreement is not "silent" on admission and thus, business records are inapplicable, in any event. 10/24/06 Hg. Tr., Ex. 43.

ConnectU suggests that Tyler is the "founding member" because "he caused TCC to form the  LLC."  Objections at 8. ConnectU also incorrectly argues that *because* there was no LLC agreement in place before or at formation, Tyler became the first member upon the certificate filing. *Id.*, 14.  Filing a certificate of formation does not establish membership per se.  *Elf*

---

Sections of the Delaware Code Annotated, 6 Del.C. § 18-XXX.

[7]  Subsection (b) is not addressed here, because absent admission "in connection with

*Atochem North America, Inc. v. Jaffari*, 727 A.2d 286, 288 (1999) ("the certificate of formation is a relatively brief and formal document that is the first statutory step in creating the LLC as a separate legal entity. … the statute contemplates that the certificate of formation is to be complemented by the terms of the Agreement"). The filing of the certificate is deemed notice that an LLC has been formed under the laws of the state of Delaware (§ 18-207), but such "formation" does not complete the Limited Liability Company. To complete an LLC, an "authorized person" must file a code-compliant certificate of formation with the Delaware Secretary of State. § 18-201. The "authorized person need not be an LLC member … ." Bishop & Kleinberger, *Limited Liability Companies: Tax and Business Law*, 1998 WL 1169452, *4.

ConnectU offers two documents to support its claim that certain members existed as of September 2, 2004: an application for registration in Connecticut (Ex. 40) and copies of Wachovia Bank signature cards (Ex. 42).[8] ConnectU incorrectly focuses on the nature of the document (*i.e.*, "it's a business record") and whether it reflects the establishment of *status* of a person.[9] Delaware law requires a record that establishes the *admission* of a member. The MJ correctly found that these documents "do not reflect anyone's *admission* to the LLC" as required by Delaware law. RR at 40 (emphasis added). Further, the MJ evaluated the facts and testimony

---

formation," there can be no admission "after the formation."

[8]  The Court inadvertently identified Exhibit 42 as a document that predates the filing of the complaint. RR at n.20. While that document suggests that it was signed on January 13, **2004**, the parties agree that the document actually was signed on January 13, **2005**. *See* Ex. 42, fax header; Objections at 13. Because it was executed after the complaint was filed, the Court need not consider it at all.

[9]  ConnectU mischaracterizes *In re Grupos dos Chiles, LLC*, 2006 WL 668443, by arguing that it holds admission may be reflected when "documentary evidence makes it clear that the parties intended [for certain individuals] to be the Members." Objections at 13. *Grupos* had an operating agreement. The court looked to the agreement *plus* corroborating evidence to "underscore the parties' intent … " regarding membership. RR at 47 citing *Grupos* at *3. As the MJ pointed out, the court looked to extrinsic evidence to resolve an ambiguity in the parties' agreement; no such ambiguity exists here. RR at 47.

OHS West:260202035.6

related to ConnectU's exhibits and found them unpersuasive "given the circumstances of their creation and in light of all the other evidence."[10]  RR at 54; *see* RR at 53-54.  This finding was a credibility finding that need not be disturbed.

ConnectU's reliance on *Facchina v. Malley*, No. Civ.A. 783-N, 2206 WL 2328228, for the proposition that an LLC can have members without an Operating Agreement is inapposite. The *Facchina* court does not address Section 18-301 or the admission of members into an LLC. *Facchina* simply finds that, absent an Operating Agreement, the LLC Act governs the internal affairs of the company.  *Facchina*¸ 2006 WL 2328228 *3.  Notwithstanding this finding, the LLC Act mandates that LLC members enter into an agreement at some point.  § 18-201(d). *Facchina* finds, however, that unexpressed understandings of membership are insufficient agreements under the law.  *Id.*

      **2.**       **ConnectU Did Not Prove It Had Members On September 2, 2004.**

ConnectU ignores the MJ's explicit finding that ConnectU cannot "meet the requirements of Title 28 U.S.C. § 1332(a)(1) that the dispute be between citizens of different states."  RR at 56.  ConnectU bears the burden of proving that complete diversity existed on September 2, 2004. *Bull HN Information Sys., Inc. v. Hutson*, 229 F.3d321, 328 (1st Cir. 2000).  After a two-day evidentiary hearing, the MJ concluded that ConnectU did not meet its burden to prove it had admitted any members by September 2, 2004.  RR at 54. Without members, ConnectU LLC's citizenship could not be determined.  The MJ correctly found, therefore, that in the absence of

---

[10]  "Other evidence" includes contradictory statements made by ConnectU witnesses (RR at 18-25), Narendra's admission that an agreement did not exist until August 2005 (RR at 52; 10/25/06 Hg. Tr., 4:20-25 & 11:5-22), and ConnectU's failure to produce documents in violation of a court order.  RR at 53 n. 24. To the extent the Court seeks to revisit the straightforward reading of the law set forth by the MJ, the Court should consider all evidence and law related to membership discussed in the earlier briefing by defendants, incorporated by reference herein. These facts conclusively establish the absence of diversity jurisdiction under any reasonable interpretation of the law.

members by whom the Court could assess citizenship, ConnectU LLC was stateless on

September 2, 2004. *Newman-Green*, 490 U.S. at 829 (1989) (where court found that "stateless

status destroyed complete diversity"); *see also Tanzymore v. Bethlehem Steel Corp.*, 457 F.2d

1320, 1324 (3rd Cir. 1972) (where court notes that "a stateless person cannot create diversity of

citizenship for purposes of 28 U.S.C. § 1332"). ConnectU offers no reason to revisit the

extensive factual findings of the Court.

### 3.    Zuckerberg Was A New York Citizen On The Filing Date.

The R&R correctly finds that Zuckerberg was domiciled in New York on September 2,

2004. RR at 55-68. ConnectU selectively cites testimony to argue that as of September 2, 2004,

"Zuckerberg had no intent or plans to go to New York and stay there," but fails to cite his

additional extensive testimony stating New York was his "home." Objections at 16. ConnectU

bore the burden of proving the required "intent to give up the old and take up the new [domicile],

coupled with and actual acquisition of a residence in the new locality." *Katz v. Goodyear Tire &

Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984). ConnectU failed to meet that burden.

### a.    ConnectU's Application Of "Domicile" Law Is Wrong.

Despite ConnectU's laundry list of what it views as "omitted" evidence by the MJ, a

wealth of evidence established Zuckerberg's domicile in New York as of September 2, 2004.

Contrary to ConnectU's argument concerning relevant factors to consider related to domicile, the

First Circuit recognizes that courts may take any number of factors into account in order to

determine domicile, including (but not limited to) voting records and habits, location of personal

and real property, driver's license records, banking records, mail delivery, and business habits.

*Garcia Perez v. Santaella*, 364 F.3d 348, 351 (1st Cir. 2004) (holding that "[n]o single factor is

dispositive, and the analysis focuses not simply on the number of contacts with the purported

domicile, but also on their substantive nature").

The MJ's conclusion is consistent with the presumption of continuing domicile (particularly for transitory citizens such as college students), which has long been recognized under the law. *Anderson v. Watts*, 138 U.S. 694, 706 (1891). Such "transitory" citizens are presumed by the courts to be citizens of the states where they have most recently been domiciled. *See, e.g.*, *Alexander v. Trustees of Boston Univ.*, 585 F. Supp. 282, 287 (D. Mass. 1984) ("The fact that a student, living out of state, has registered to vote in the state of the school, does not defeat a claim of citizenship in the home state"); *Willis v. Westin Hotel Co.*, 651 F. Supp. 598, 603-04 (S.D.N.Y. 1986)(woman who was a citizen of Florida in 1977, but who resided transiently in a series of luxury hotels in New York from 1977-1985, was still deemed domiciled in Florida for purposes of diversity given the entirety of the facts), *aff'd in part, rev'd in part on other grounds*, 884 F.2d 1556 (2d Cir. 1989). It was undisputed that Zuckerberg's most recent domicile as of September 2, 2004 was New York. *See* R&R 57-58 & nn. 25 & 27. ConnectU could not meet its burden to prove that that domicile had changed.

ConnectU argues that the MJ failed to consider *Bair v. Peck*, 738 F. Supp. 1354 (D. Kan. 1990). Objections at 17-18. This argument is irrelevant. Like the R&R, the *Bair* court specifically credited the plaintiff's testimony that at the time of filing he wanted to attend college and also "desire[d] to live in Colorado," even though he maintained some ties to Kansas. *Id.* at 1357. The court acknowledged the *Bair* case was close (*see id.*), and it did not purport to announce a controlling rule on student domicile like ConnectU intimates. *Id.* Here, the MJ applied the same balancing as the *Bair* court, and credited Zuckerberg's testimony that he did not want to cease to be a student or give up his New York domicile as of September 2, 2004.

### b.    The MJ Properly Evaluated The Facts.

Zuckerberg testified before the MJ repeatedly that as of September 2, 2004, he considered New York, where he was born, raised and where his parents still reside, to be his

home. *See, e.g.*, 6/22/06 Hg. Tr. at 101:11-17;  102:13-103:6; 137:17-140:2; 165:2-12; 172:13-173:9; 181:23-182:2; 195:14-197:13. *See also* R&R at 57-58, 59, 67 & nn. 25 & 27.  Zuckerberg testified that as of September 2, 2004 he had no "intent to live or remain in California indefinitely." *Id.* at 181:23-182:2.

Zuckerberg's testimony was corroborated by extensive evidence.  For instance, the first sub-lease for the La Jennifer Way residence that Zuckerberg signed on June 19, 2004, during Harvard's summer break, on the front lists Zuckerberg's Dobbs Ferry, New York address, and includes his New York telephone number.  *See* 6/22/06 Hg. Tr. at 170:19-171:16 & Ex. K.  One reason for this was because at the time Zuckerberg did not expect to remain at the residence past the summer.  *Id.* at 171:7-9.  Zuckerberg's receipt of invoices in August through November, 2004, from a server facility were sent to Zuckerberg's Dobbs Ferry, New York address.  *Id.* at 172:1-174:9 & Ex. 27.  Zuckerberg used his New York residence in August 2004 when signing a co-location facilities agreement with a different entity known as Equinex.  *Id.* at 175:10-177:21 & Ex. 28.  Between September 2, 2004 and sometime in 2006, Zuckerberg possessed only a New York driver's license.  6/22/06 Hg. Tr. at 166:18-168:14 & Ex. B.  Zuckerberg was registered to in New York as of September 2, 2004.  *Id.* at 169:13-170:10 & Ex. E.  He used his Dobbs Ferry, New York address on bank records in California in August and September of 2004.  *Id.* at 174:10-175:3 & Ex. 29.  He maintained other bank, checking and credit card accounts with banks and institutions on the East Coast, all of which were sent to his New York residence.  *Id.* 177:22-178:18.  These accounts were used to pay for insufficient checking funds on his student checking account in September, 2004.  *Id.* 182:5-19. When he moved to California, he did not purchase significant furniture, and Facebook was essentially run out of his temporary residence.  *Id.* at 178:19-180:4.

The MJ heard extensive evidence, found Zuckerberg to be credible when he testified that he originally intended to remain a Harvard student with New York as his domicile (*see* R&R at 67), and properly applied the law. The MJ's credibility assessment is entitled to particular deference. *Raddatz*, 447 U.S. at 681 n.7. The R&R should be adopted.

## V.    CONNECTU'S MISCELLANEOUS ARGUMENTS SHOULD BE REJECTED

### A.    Dismissal With Prejudice Is Warranted.

ConnectU asks this Court to dismiss this case without prejudice. The R&R is silent on whether the case should be with or without prejudice. Defendants submit that dismissal with prejudice is warranted.

The Court has inherent power to impose punitive sanctions, including dismissal of the action with prejudice to prevent abuse of the judicial process. *Premier Homes & Land Corp. v. Cheswell, Inc.*, 240 F. Supp. 2d 97, 99 (D. Mass. 2002) (dismissal with prejudice allowed where plaintiff willfully engaged in a scheme to deceive the court with fabricated evidence); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 119-1120 *(1st Cir. 1989)*; *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) ("Courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice"); *see also Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co.*, 771 F.2d 5, 11-12 (1st Cir. 1985); *Blackwell v. Elsten*, 1984 WL 2753 (D.D.C.)(holding that "plaintiff's less than candid demeanor, his false and contradictory statements, and the pattern of his behavior in filing and prosecuting this lawsuit" warranted sanctions and also dismissing case with prejudice without explanation).

ConnectU engaged in a cynical effort to defraud this Court. Nearly 18 months ago, Defendants argued that ConnectU did not own the rights to proceed and that diversity did not exist. ConnectU reacted by first trying to create standing and ownership through a belated

assignment of intellectual property rights in an operating agreement. It then used that document to escape liability in California, claiming people listed in the agreement were members. Once it was clear that the law of diversity related to membership was unfavorable and that a substantial risk of dismissal in Massachusetts existed, they manufactured an oral agreement regarding non-membership in an LLC and ran away from their previous testimony. Tellingly, all of ConnectU's machinations occurred after the Motion to Dismiss had been filed. The conclusion is inescapable: ConnectU, its members, and their counsel intended to deceive this Court for the purposes of preserving jurisdiction where it does not lie. As a result, Facebook Defendants request that this case be dismissed with prejudice.[11] Such relief is warranted here.

**B.** **ConnectU's Additional Requests Are Not Properly Before the Court.**

ConnectU asks the Court to grant it leave to amend its complaint, toll the statute of limitations, and permit discovery to go forward in a re-filed action. These requests for relief are not "written objections to the proposed findings and recommendations" in the purview of Rule 72(b). Fed. R. Civ. P. 72(b). As a result, they should be ignored. Further, if the Court adopts the R&R and dismisses this action, it will not have the requisite jurisdiction to grant the relief sought. *See Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83 (1998); *Broad*, 1998 WL 516113 at *4 (denying procedural motion when Court found no diversity). Thus, the requests for additional relief must be rejected.

**VI.** **CONCLUSION**

For the reasons specified above, this case should be dismissed with prejudice.

---

[11] Alternatively, Defendants request an evidentiary hearing to determine the appropriate sanction for ConnectU's misconduct.

OHS West:260202035.6

Dated:  March 26, 2007                    Respectfully submitted,

                                          /s/ I. Neel Chatterjee /s/
                                          _____
                                          G. Hopkins Guy, III*
                                          I. Neel Chatterjee*
                                          Monte M.F. Cooper*
                                          Theresa A. Sutton*
                                          ORRICK, HERRINGTON & SUTCLIFFE LLP
                                          1000 Marsh Road
                                          Menlo Park, CA  94025
                                          Telephone:  (650) 614-7400
                                          Facsimile:   (650) 614-7401

                                          Steve M. Bauer
                                          Jeremy P. Oczek
                                          PROSKAUER ROSE, LLP
                                          One International Plaza, 14th Floor
                                          Boston, MA 02110-2600
                                          Telephone:     (617) 526-9600
                                          Facsimile:     (617) 526-9899

                                          ATTORNEYS FOR MARK ZUCKERBERG,
                                          DUSTIN MOSKOVITZ, ANDREW
                                          MCCOLLUM, CHRISTOPHER HUGHES, and
                                          FACEBOOK, INC.

                                          * Admitted Pro Hac Vice

OHS West:260202035.6

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 26, 2007.

Dated:  March 26, 2007.            Respectfully submitted,

                                      /s/ I. Neel Chatterjee /s/
                                          I. Neel Chatterjee

OHS West:260202035.6