IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CONNECTU LLC,<br><br>                              Plaintiff,<br><br>      v.<br><br>MARK ZUCKERBERG, EDUARDO SAVERIN, DUSTIN MOSKOVITZ, ANDREW MCCOLLUM, CHRISTOPHER HUGHES, and FACEBOOK, INC.,<br><br>                              Defendants.<br>MARK ZUCKERBERG, and FACEBOOK, INC.,<br><br>                            Counterclaimants,<br><br>      v.<br><br>CONNECTU LLC,<br><br>                            Counterdefendant,<br><br>      and<br><br>CAMERON WINKLEVOSS, TYLER WINKLEVOSS, and DIVYA NARENDRA,<br><br>      Additional Counterdefendants. | CIVIL ACTION NO. 1:04-cv-11923 (DPW) |

**CONNECTU'S REPLY TO DEFENDANTS' CORRECTED RESPONSE TO CONNECTU'S OBJECTIONS TO CLERK'S AUTHORITY TO TAX COSTS, AND OPPOSITION TO TAXATION OF COSTS**

      Defendants' Corrected Response to ConnectU's Objection does not refute that ConnectU had legitimate grounds for asserting diversity jurisdiction and acted in a reasonable manner. Because 28 U.S.C. § 1919 requires this Court to determine what is just (Dkt. 293 at 4), costs should not be awarded where the Defendants gained valuable information through discovery and the dismissal for lack of subject matter jurisdiction hinged on a decision made long after this case

was filed. Moreover, Defendants' representations that all of the submitted costs relate to their Motion to Dismiss are false on their face and Facebook Defendants have refused to correct them.

## I. ConnectU Refiled As Soon As It Was Able

As Defendants repeatedly point out, ConnectU asserted that it would refile this case if it were dismissed (Dkt. 298 at 2, 9). In fact, ConnectU did exactly what it promised to do. It refiled as soon as it was able to do so, which was after this Court dismissed this action.[1]

## II. Discovery Was Properly Ongoing After the Motion To Dismiss Was Filed

After the Motion to Dismiss was filed on October 14, 2005, discovery on the merits was never stayed, nor should it have been. In fact, Judge Collings clearly stated that he would NOT stay discovery pending the outcome of the Motion to Dismiss (Transcript of Nov. 18, 2005 hearing at 9:12-15) and he has never issued any stay order. On March 3, 2006, several months after the Motion to Dismiss was filed, Judge Collings heard oral argument on all of the parties' motions to compel discovery on the merits that were pending at that time. On March 31, 2006, the Court ruled on one of those motions, granting it in part and denying it in part, and permitting ConnectU to seek discovery regarding the value of the facebook.com website and Facebook, Inc., unhindered by the pending Motion to Dismiss. That order was never vacated.

Under the case law, discovery on the merits normally proceeds after the filing of a motion to dismiss. *See Digital Equipment Corp. v. Currie Enterprises*, Civil Action No. 91-11624-WD, 1992 U.S. Dist. LEXIS 17718 *2 (D. Mass. Feb. 12, 1992) ("Although this court has discretion to stay discovery in an appropriate case, such a stay is neither automatic or routine.");

---

[1] It is worth noting that although Defendants' Motion to Dismiss was granted, Judge Collings rejected all of their arguments (except on the issue of Mr. Zuckerberg's citizenship) and decided the motion on an issue he presented *sua sponte*. ConnectU's position was that Defendants' arguments for dismissal should be rejected and that Divya Narendra was not a Member of ConnectU LLC on the filing date. With this the Court agreed, except on the Zuckerberg citizenship issue. In other words, but for the Court's *sua sponte* reason for dismissing, ConnectU was right and would have had no reason to dismiss the case voluntarily, then refile.

2

*Kleinerman v. U.S. Postal Service*, 100 F.R.D. 66, 68 (D. Mass. 1983) (denying motion for stay of discovery pending resolution of motion to dismiss for lack of jurisdiction and finding that allegations of lack of jurisdiction are not sufficient to halt discovery). Since discovery was properly ongoing, ConnectU prudently pursued discovery on the merits, as did Defendants. ConnectU's and Defendants' discovery on the merits, all of which can be used in the new case, therefore is not justification for awarding any costs to Defendants.

**III.   Many Of The Costs Are Unrelated To Subject Matter Jurisdiction Or Too Vague To Assess**

Defendants argue that they "have the statutory right to seek . . . costs related to the dismissal of ConnectU's case" (Dkt. 298 at 4). On page 5 of their Response, they state that "[b]ecause Defendants' costs are all related to litigating the issue of subject matter jurisdiction, this Court may grant such costs," and "Defendants have incurred over $238,000 in litigation costs solely related to the motion to dismiss" (Dkt. 298 at 5). Although the Court has discretion to award such costs, Defendants have no right to them. Moreover, "[i]tems proposed by winning parties as costs should always be given careful scrutiny." *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964). Based on a review of Defendants' "Corrected Itemization of Costs in Support of Defendants' Bill of Costs" and their supporting declaration, these statements are false on their face.

The costs submitted by Defendants undeniably cover the whole case—from 2004 through the present. The Motion to Dismiss wasn't filed until October 14, 2005. The Order setting the first evidentiary hearing and permitting discovery on citizenship wasn't until May 1, 2006 (Dkt. 172). But bills for the entire period, from 2004 through the present, are included.

For example, included in the costs that Defendants' allege are "solely related to the motion to dismiss" are expenses related to the August 9, 2005 Rule 30(b)(6) deposition of

3

ConnectU (see Dkt. 292, Ex. A at 25, Ex. C at 5, 7). The deposition topics all related to the merits, did not relate to diversity (and the Motion to Dismiss had not yet been filed), and were the subject of a motion to compel filed by Defendants (Declaration of Meredith H. Schoenfeld ("Schoenfeld Decl.", Ex. 1; Dkt. 90).

There are many other examples of costs undoubtedly not related to the Motion to Dismiss, such as the costs of attending the hearings on discovery motions in November 2005 and March 2006 (Dkt. 292, Ex. A at 33, 40, Ex. B at 39), and all of the *pro hac vice* and other filing fees under "Fees of the Clerk."

Under "Fees for Service of Summons and Subpoena," all of the entries for 2005 and for 2006 up through April could not possibly have related to the Motion to Dismiss. Defendants took no depositions related to the motion until June 16, 2006.

Similarly, all entries under "Fees of the Court Reporter" predating June 2006 could not possibly be related to the Motion to Dismiss. Moreover, except for the August 9, 2006 deposition of ConnectU mentioned above, any bills for deposition expenses **could not even have been incurred in this case**; Defendants took only one deposition in this case before June 16, 2006. Also, Defendants took no depositions in this case between the time of the June 22, 2006 hearing and September 21, 2006. Thus, expenses incurred between those dates cannot be from this case.[2] They even submit a "Deposition/Transcript Expense" invoiced for February 22, 2007 and a "Subpoena Travel Expense, Local" expense for March 8, 2007, which was long after discovery and briefing on the motion was completed. Indeed, the latter expense was after the

---

[2] Even if Defendants incurred a deposition cost before the June 22, 2006 hearing that was not invoiced to them until after the hearing, they took only one deposition related to the Motion to Dismiss before the June 22, 2006 hearing, namely, the June 16, 2006 deposition of Divya Narendra.

4

Report & Recommendation issued.  And all of the "Subpoena Telephone" expenses are from dates when Defendants were not conducting **any** discovery relating to the motion.

Regarding "Fees and Disbursements for Printing and Imagining [sic] of Electronic Data" and "Fees for Exemplification," Defendants have submitted costs from the inception of the lawsuit and before the motion was filed.  They also submitted costs for the period between the completion of the first round of briefing on the motion (November 8, 2006) and the June 22, 2006 hearing, when the only work they could have been doing on the case was related to discovery on the merits.  Again they submit expenses for February 22 and March 8, 2007, after discovery and briefing on the motion had ended, and with respect to the latter, after the Report & Recommendation issued.

In the "Exemplification" category is "Fee to Obtain Deposit Materials at the Copyright Office."  This expense is unrelated to the Motion to Dismiss and was incurred six months before the motion was filed.  Similarly, they submitted an expense for "U.S. Patent & Trademark Office - PTO fees" from August 7, 2006.  Not only was all work on the Motion to Dismiss dormant at that time, as the parties awaited the Court's ruling from the June 22, 2006 hearing, but there are no issues in this case involving any subject matter over which the U.S. Patent & Trademark Office has jurisdiction.  Thus, there was no reason to incur such an expense in this case, much less in connection with the Motion to Dismiss.

Regarding the "Docket Fees," one of these costs was incurred in February 2007, after briefing on the motion was completed.  ConnectU cannot understand how the other entries are related to the Motion to Dismiss.

Regarding "Other Costs," whatever they are, some were incurred before the motion was filed, others in the dormant period between the completion of the first round of briefing and the

5

June 22, 2006 hearing, or between the hearing and the Court's August 24, 2006 interim order, and others after the Report & Recommendation issued.

Neel Chatterjee's declaration supporting the Bill of Costs also clearly covers costs for the whole case, as do the Exhibits thereto.

It would be unjust to award these costs to Defendants. Moreover, as Defendants admit, such costs are not authorized by applicable law.

With respect to examining the purpose of such expenses, Defendants ask how much detail ConnectU needs, citing the numerous amount of pages they have included as exhibits (Dkt. 298 at 7). However, the quantity of pages is immaterial. The evidence cited by Defendants still falls short. Many invoices state costs for items such as "outside reproduction services", "miscellaneous online research," "outside services," and "other business meals." It is impossible to tell the true nature of these costs, whether they related to the Motion to Dismiss, or whether, in fact, they even relate to this case. The descriptions do not provide any link between the services performed and costs related to the Motion to Dismiss.

Furthermore, even for the costs that were related to subject matter jurisdiction, Defendants have not shown that such costs were necessarily obtained. "Necessarily obtained" does not mean that the materials obtained added to the convenience of the parties or made the task of the trial judge easier, and the "most direct evidence of 'necessity' is the actual use of materials obtained by counsel or by the court." *U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1245-46 (10th Cir.1988). On the issue of Divya Narendra's membership, Defendants deposed Cameron Winklevoss, Tyler Winklevoss, and Divya Narendra (Divya Narendra twice), issued 129 broad production requests, subpoenaed 23 third parties for documents (including Divya Narendra's parents, Harvard University, Princeton University, and ConnectU's counsel,

Finnegan Henderson Farabow Garrett and Dunner LLP), subpoenaed 17 third parties for depositions, and took 10 depositions. Despite this extensive and expensive discovery, Defendants were not able to prove the Divya Narendra was a member of ConnectU, LLC on September 2, 2004. Defendants should not be entitled to make Plaintiff pay for their overreaching and inefficient discovery.

Defendants have failed to show why they are entitled to the costs they seek, or to show a proper correlation between such costs and the dismissal of this case, and their request must be denied.

### IV.     Defendants Do Not Care That Their Statements Are False on Their Face

Noticing the problem detailed above, on April 16, 2007 ConnectU sent the following email to Defendants' counsel:

> The "Corrected Defendants' Response to ConnectU's Objections to Clerk's Authority to Tax Costs, and Opposition to Taxation of Costs," which Defendants filed on April 13, 2007, states that "Because Defendants' costs are all related to litigating the issue of subject matter jurisdiction, this Court may grant such costs," and "Defendants have incurred over $238,000 in litigation costs solely related to the motion to dismiss." As you know, ConnectU objects to Defendants' recovery of any costs. However, Neel Chatterjee's declaration and the summary of costs clearly cover costs for the whole case and the summary clearly includes costs unrelated to the motion to dismiss, both in time and/or subject matter. Please immediately withdraw the incorrect Bill of Costs and related documents, or correct such misstatements.

Eighteen minutes later, Facebook Defendants' counsel responded as follows:

> Defendants know of no costs being taxed pursuant to 28 USC 1919 and/or 1920 that are un-related to the motion to dismiss or which are inappropriate under the governing statutes. It is incumbent that you inform us specifically which costs you believe are not taxable as a matter of law in order for us to respond to a demand like that set out below.
>
> Moreover, I do not believe unilateral demands or inflammatory commentary will advance the litigation, and I believe all of our

7

> clients would be better served if such argumentation is abandoned in the pending lawsuit. To that end, I would welcome a message that cites specifically the source of any grievance associated with the Bill of Costs, in the hope that a sincere dialogue about the Bill can proceed.

Clearly, Facebook Defendants made no attempt to review the costs during those eighteen minutes. More disturbingly, Facebook Defendants tried to shift the burden to ConnectU to identify costs unrelated to the Motion to Dismiss, surely hoping that the Court would enter the Bill of Costs as submitted, while the parties dialogued. But most disturbingly, Facebook Defendants did not seem to care that their representations to the Court were false on their face. So ConnectU's counsel responded as follows a few hours later:

> No, it is incumbent upon you.

Facebook Defendants' counsel responded, twelve minutes later:

> None of us are able to identify any deficiencies in the Bill of Costs. Please identify what you deem to be the deficiencies so we are able to respond. Thank you,

Clearly, they didn't even try. This email exchange is submitted herewith as Schoenfeld Decl., Ex. 2.

In view of Facebook Defendants' false representations relating to the submitted costs, and their disinterest in correcting them for the Court, no costs should be awarded.

**V.    Discovery Related To Jurisdiction Relates To the Case On the Merits**

Discovery related to jurisdiction may also relate to the merits or is likely to benefit the case on the merits. For example, one of Defendants' defenses is that accused conduct did not occur in Massachusetts (Dkt. 14 at 11). The deposition regarding Mr. Zuckerberg's citizenship and residence is directly relevant to this defense. The depositions of the Winklevoss brothers and Divya Narendra taken by Defendants in connection with the Motion to Dismiss are also riddled with questions and answers relating to ConnectU LLC's Operating Agreement, its

8

meaning and scope, and the disposition of their pre-formation intellectual property rights. Defendants are sure to use this discovery again, as the case on the merits proceeds, because another of their defenses is that ConnectU is not the real party in interest. Another defense is that ConnectU allegedly failed to mitigate damages. Much of the discovery conducted by Defendants for the Motion to Dismiss may relate to this defense, such as discovery relating to the formation of ConnectU, the Winklevosses' and Narendra's meetings with website developers after Zuckerberg stole their idea, and connectu.com's launch.

Moreover, a third party with facts related to this case, iMarc, produced documents related to the merits in response to Defendants' subpoena related to jurisdiction (such documents relate, for example, to Defendants' unclean hands defense).

Discovery related to the Motion to Dismiss may also be used in the California action pending between these parties, and in fact Facebook, Inc. has done so on at least one occasion: counsel for Facebook, Inc. cited portions of Divya Narendra's October 25, 2006 hearing testimony to counsel for ConnectU to further their arguments in the California case. (Schoenfeld Decl. Ex. 3 at point (5) in April 6, 2007 2:28 PM and 6:35 PM e-mails). Thus, it is impossible for Defendants to state that discovery related to the Motion to Dismiss will not carry over to this case (or the California case), or otherwise benefit the parties in connection with the merits of the action.

## VI.   Conclusion

For the forgoing reasons, ConnectU respectfully urges this Court to reject Defendants' Bill of Costs.

Dated: April 17, 2007 Respectfully submitted,

/s/ John F. Hornick
John F. Hornick (*pro hac vice*)
Margaret A. Esquenet (*pro hac vice*)
Meredith H. Schoenfeld (*pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
    GARRETT & DUNNER, L.L.P.
901 New York Avenue, N.W.
Washington, D.C. 20001
Tel: (202) 408-4000
Fax: (202) 408-4400

Daniel P. Tighe (BBO# 556583)
Scott McConchie (BBO# 634127)
GRIESINGER, TIGHE, & MAFFEI, L.L.P.
Boston, MA 02110
Telephone: (617) 603-0918
Facsimile: (617) 542-0900
dtighe@gtmllp.com
smcconchie@gtmllp.com

Attorneys for Plaintiff
ConnectU LLC

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on April 17, 2007.

/s/ John F. Hornick
John F. Hornick (*pro hac vice)*