# United States Court of Appeals
## For the First Circuit

No. 07-1796

CONNECTU LLC,

Plaintiff, Appellant,

v.

MARK ZUCKERBERG ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

[Hon. Robert B. Collings, U.S. Magistrate Judge]

Before

Lipez, Circuit Judge.
Selya and Siler,⸱ Senior Circuit Judges.

John F. Hornick, with whom Margaret A. Esquenet, Meredith H. Schoenfeld, Daniel P. Kaufman, Finnegan Henderson Farabow Garrett & Dunner LLP, Daniel P. Tighe, Scott McConchie, and Griesinger Tighe & Maffei, LLP were on brief, for appellant.

Daniel K. Hampton, with whom Gordon P. Katz, Holland & Knight, LLP, Annette L. Hurst, and Heller Ehrman LLP were on brief, for appellee Saverin.

I. Neel Chatterjee, with whom G. Hopkins Guy, III, Monte M.F. Cooper, Theresa A. Sutton, Orrick, Herrington & Sutcliffe, LLP, Steven M. Bauer, Jeremy P. Oczek, and Proskauer Rose LLP were on brief, for remaining appellees.

⸱Of the Sixth Circuit, sitting by designation.

April 3, 2008

**SELYA, Senior Circuit Judge.** Viewed broadly, this appeal concerns a bitter dispute about the parties' rights in and to Facebook, a spectacularly successful creature of the information age. Viewed more narrowly, however, it presents a jurisdictional enigma that requires us to decide whether an amended complaint that switches the basis of the district court's subject matter jurisdiction from the existence of diversity of citizenship, 28 U.S.C. § 1332(a)(1), to the existence of a federal question, id. § 1331, should be given effect when filed as of right before any jurisdictional challenge has been mounted. This is a question of first impression at the federal appellate level – and one that sets two established legal principles on a collision course.

For the reasons that follow, we hold that the jurisdictional claim in the amended complaint warrants full consideration and constitutes a viable hook on which federal jurisdiction can be hung. Because this holding is at odds with the conclusions reached by the court below, we reverse the order of dismissal and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

The relevant facts can be succinctly summarized. We wrest them from the allegations of the original and amended complaints (cautioning, however, that many of the substantive details appear to be hotly disputed).

The seeds of the global controversy were sown in a Harvard College dormitory room.   Tyler Winklevoss, Cameron Winklevoss, and Divya Narendra (the Founders), then Harvard undergraduates, hatched the idea of creating a social networking website for college students.   Lacking the programming expertise necessary to bring this idea to fruition, the Founders asked defendant Mark Zuckerberg to help them complete the proposed website's source code and aid in the development of their embryonic website.   The request, which was made and accepted in November of 2003, yielded an horrific harvest.

According to the Founders, Zuckerberg not only failed to carry out the assignment but also stole their idea, business plan, and rudimentary (unfinished) source code in order to launch a competing social networking website.   Zuckerberg acted in secret. By the time that the Founders learned of his perfidy, completed the source code through other means, and inaugurated their own social networking website (originally called harvardconnection.com and later renamed connectU.com), Zuckerberg's venture (originally called thefacebook.com and later abbreviated facebook.com) had gotten an unbeatable head start in user traffic.[1]

Harvard's traditional school color is crimson but the Founders saw red.   On September 2, 2004, ConnectU LLC, a Delaware

---

[1]As of March 2008, Facebook boasted over 60,000,000 users and had become the fifth most trafficked website in the United States.

-4-

limited liability company (the LLC) commenced an action in the federal district court premised on diversity of citizenship and the existence of a controversy in the requisite amount, 28 U.S.C. § 1332(a)(1), against Zuckerberg and five other defendants associated with him, namely, Dustin Moskovitz, Eduardo Saverin, Andrew McCollum, Christopher Hughes, and Facebook itself. The complaint linked the three Founders with the LLC and asserted a gallimaufry of state-law claims arising from the alleged misappropriation and unauthorized use of the LLC's confidential source code and business plan.

On October 28, 2004 — approximately two weeks after registering a copyright for its website's source code with the United States Copyright Office and before any responsive pleading was filed by the defendants — the LLC served an amended complaint. See Fed. R. Civ. P. 15(a). The amended complaint added a corporate affiliate of Facebook as a defendant and introduced two new statements of claim, including a federal-law claim for copyright infringement. At the same time, the amended complaint forsook diversity as the basis for federal subject matter jurisdiction and premised jurisdiction instead on the existence of a federal question. See 28 U.S.C. § 1331. That federal question consisted of the newly asserted copyright infringement claim, see 17 U.S.C. § 501(b), and carried with it supplemental jurisdiction over the armada of state-law claims, see 28 U.S.C. § 1367(a).

-5-

Almost one year later, the defendants moved to dismiss for want of subject matter jurisdiction.[2]   Fed. R. Civ. P. 12(b)(1).  They argued that the parties to the original complaint were not wholly diverse and that, therefore, the LLC's jurisdictional allegation did not hold water.

The defendants' argument had to be recalibrated in light of our ensuing decision in <u>Pramco, LLC</u> v. <u>San Juan Bay Marina, Inc.</u>, 435 F.3d 51 (1st Cir. 2006), in which we held that the citizenship of a limited liability company is to be determined by the citizenship of its members.  <u>See id.</u> at 54-55.  Buoyed by this recalibration, the defendants continued to assert that complete diversity was lacking.  They predicated this assertion on the belief that both Zuckerberg and Narendra (a person whom the defendants claimed was a member of the LLC at the time of suit) were citizens of New York.

This argument focused on the jurisdictional basis set forth in the original complaint because, in the defendants' view, the amended complaint was beside the point. For this proposition, they cited the time-of-filing rule reiterated in <u>Grupo Dataflux</u> v. <u>Atlas Global Group L.P.</u>, 541 U.S. 567, 570-71 (2004).

_____

[2]Although belated, the motion was not untimely. An absence of subject matter jurisdiction can be raised at any time.  <u>See Am. Fiber & Fin., Inc.</u> v. <u>Tyco Healthcare Group, LP</u>, 362 F.3d 136, 138-39 (1st Cir. 2004) (explaining that challenges to federal subject matter jurisdiction can be advanced at any stage of the proceedings).

The LLC countered that the existence vel non of diversity had become a non-issue because the amended complaint, which premised jurisdiction on the existence of a federal question, had become the operative pleading. In the alternative, the LLC maintained that the parties to the original complaint were wholly diverse at the time of the commencement of the action. In support of this last proposition, the LLC suggested that Narendra's citizenship should not figure into the diversity calculus because he had not been admitted as a member of the LLC and that, at any rate, Zuckerberg was a citizen of California, not New York.

The district judge referred the dismissal motion to a magistrate judge for a report and recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). After holding a protracted evidentiary hearing, the magistrate judge recommended that the motion to dismiss be granted. ConnectU LLC v. Zuckerberg, (ConnectU I), 482 F. Supp. 2d 3, 32 (D. Mass. 2007). In taking this position, the magistrate judge concluded that because ConnectU's original complaint was premised on diversity jurisdiction, he had no choice but to look to that complaint, as it stood at the time of filing, in resolving the jurisdictional inquiry. Id. at 5-8 (citing Grupo Dataflux, 541 U.S. at 570-71). The magistrate judge further concluded that, under the time-of-filing rule, the amended complaint could not cure any jurisdictional defect that might exist in the original complaint.

-7-

Id. at 8. The magistrate judge went on to find that, at the time of the original filing, no complete diversity existed.[3] Id. at 14-32. A recommendation for dismissal followed. Id. at 32.

The LLC objected to the magistrate judge's report and recommendation. The district judge summarily overruled these objections, adopted the recommended decision, and dismissed the case without prejudice for want of subject matter jurisdiction.[4] This timely appeal ensued. Simultaneous with the filing of the notice of appeal, the LLC's successor-in-interest commenced a new action in the district court (ConnectU II) asserting materially identical claims against the same defendants.

## II. **ANALYSIS**

Although the LLC advances multiple claims of error on appeal, only one of them — its contention that the district court failed to treat the amended complaint as the operative pleading for the purpose of determining subject matter jurisdiction — need concern us. Before addressing the merits of that contention, however, we must deal with the defendants' plaint that this appeal should be dismissed as moot.

---

[3]The reasoning of the magistrate judge is intricate and depends in large measure on a problematic interpretation of Delaware statutory law. Because we find the jurisdictional allegations of the amended complaint controlling, see text infra, no useful purpose would be served by an analysis of that reasoning.

[4]To simplify our discussion, we do not hereafter distinguish between the magistrate judge and the district judge but, rather, take an institutional view and refer only to "the district court."

## A.  Mootness.

The Constitution confines the jurisdiction of the federal courts to actual cases and controversies.  U.S. Const. art. III, §  2, cl. 1.  This prerequisite must be satisfied at each and every stage of the litigation.  See Spencer v. Kemna, 523 U.S. 1, 7 (1998); Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974); Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001).  Because the inquiry into whether an appeal has become moot implicates a foundational question, sound practice dictates that we give that inquiry priority and conduct it as a threshold matter.  See City of Erie v. Pap's A.M., 529 U.S. 277, 287 (2000).  Accordingly, we start there.

An appeal becomes moot if an intervening event strips the parties of any legally cognizable interest in the outcome.  See Murphy v. Hunt, 455 U.S. 478, 481 (1982); Goodwin v. C.N.J., Inc., 436 F.3d 44, 48 (1st Cir. 2006).  The burden of establishing mootness rests with the party urging dismissal.  See County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979); Ramírez v. Sánchez Ramos, 438 F.3d 92, 100 (1st Cir. 2006).  This burden is a heavy one.  United States v. W. T. Grant Co., 345 U.S. 629, 633 (1953); R.I. Ass'n of Realtors, Inc. v. Whitehouse, 199 F.3d 26, 34 (1st Cir. 1999).  Withal, dismissal of an appeal is compulsory once a court finds that the parties no longer possess a personal stake in the outcome.  See Cruz, 252 F.3d at 533.

Here, the defendants posit that this appeal no longer embodies a live case or controversy because the LLC's successor-in-interest, ConnectU, Inc., has instituted a new, materially identical action in the district court. In the defendants' view, this initiative renders the earlier action superfluous and, hence, destroys the utility of this appeal. We do not agree.

We assume for argument's sake, favorably to the defendants, that ConnectU, Inc. and the LLC are so closely tied that they are for present purposes one firm. But although the virtual firm has chosen to institute a second action asserting materially identical claims, it retains a legally cognizable interest in the outcome of this appeal. We explain briefly.

There is a recognized defense to a claim of mootness in the appellate context when a party can demonstrate that a lower court's decision, if allowed to stand, may have collateral consequences adverse to its interests. See Horizon Bank & Trust Co. v. Massachusetts, 391 F.3d 48, 54 (1st Cir. 2004); Friedman v. Shalala, 46 F.3d 115, 117 (1st Cir. 1995). That defense is pertinent here: the district court's decision to dismiss the original action for want of subject matter jurisdiction has a concrete (and potentially devastating) impact on the second action.

The key is in the timing. The commencement of ConnectU I tolled the applicable statutes of limitations approximately two-and-one-half years earlier than did the commencement of ConnectU

II. Thus, a reversal of the dismissal order would mitigate the force of any limitations defenses relied on by the defendants in ConnectU II. This is a collateral consequence of the type that suffices to defuse a claim of mootness. See 13A Charles Alan Wright et al., Federal Practice and Procedure § 3533.3, at 291 (2d ed. 1984) ("Collateral consequences may be found in the prospect that a judgment will affect future litigation or administrative action."); cf. Patriot Cinemas, Inc. v. Gen. Cinema Corp., 834 F.2d 208, 215-16 (1st Cir. 1987) (holding appeal not moot even though plaintiff was pursuing identical claims in state court because the federal action "toll[ed] the statute of limitations 11 months earlier" than did the state court action).

         In an effort to coax us away from this result, the defendants chant a familiar mantra: that collateral consequences that are remote or speculative will not inoculate an appeal against a finding of mootness. See In re Burrell, 415 F.3d 994, 999 (9th Cir. 2005); United States v. Duclos, 382 F.3d 62, 67-68 (1st Cir. 2004). This mantra is correct as an abstract legal proposition, but it has little traction here. The record in ConnectU II shows with conspicuous clarity that the defendants have ardently pressed limitations defenses to a number of the claims asserted. They cannot now be heard to complain that the date of tolling is of no consequence. Cf. Alternative Sys. Concepts, Inc. v. Synopsys, Inc., 374 F.3d 23, 32-33 (1st Cir. 2004) (indicating that estoppel

-11-

principles bar parties from pressing inconsistent claims in different judicial proceedings).

We also reject the defendants' importunings to the effect that a case is rendered moot simply because a plaintiff has decided to pursue two overlapping actions simultaneously. The law is pellucid that an action is not automatically rendered moot by the mere existence of a similar pending action.[5] See, e.g., Pieczenik v. Dyax Corp., 265 F.3d 1329, 1332 (Fed. Cir. 2001); Patriot Cinemas, 834 F.2d at 215-16; see also 13A Wright et al., supra § 3533.2, at 244 ("[T]he mere pendency of parallel actions seeking the same relief does not of itself moot either action.").

The defendants' final effort to convince us that the appeal is moot hinges on the notion that the decision to file a new action constituted an election of remedies.[6] We are not persuaded.

---

[5] While we have cautioned that a party should not file duplicative lawsuits in the same court, Sutcliffe Storage & Ware. Co. v. United States, 162 F.2d 849, 851 (1st Cir. 1947), there are extenuating circumstances here. This is important because "[t]he complex problems that can arise from multiple federal filings do not lend themselves to a rigid test, but require instead that the [court] consider the equities of the situation when exercising its discretion." Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000).

[6] The defendants' argument that the appeal is moot because the LLC failed to register to do business in Massachusetts prior to filing suit is not a mootness argument at all. At any rate, our decision that the district court should have looked to the amended complaint for the purpose of determining subject matter jurisdiction, see text infra, makes the purported failure to register at an earlier date irrelevant.

The election of remedies doctrine is grounded on equitable principles. See Far W. Fed. Bank v. Office of Thrift Superv'n-Dir., 119 F.3d 1358, 1365 (9th Cir. 1997); Gens v. Resolution Trust Corp., 112 F.3d 569, 572 & n.1 (1st Cir. 1997). It has no real relevance to the question of mootness. If more were needed — and we doubt that it is — the election of remedies doctrine applies only when a party pursues mutually inconsistent claims for relief. See, e.g., Dopp v. HTP Corp., 947 F.2d 506, 514 (1st Cir. 1991). The purpose of the doctrine is to prevent double recovery for the same wrong. See, e.g., Gens, 112 F.3d at 573. None of these concerns are present here.

That ends this aspect of the matter. Concluding, as we do, that this appeal is not moot, we move to the validity of the dismissal order.

## B. **Subject Matter Jurisdiction**.

The order of dismissal hinges on the existence vel non of subject matter jurisdiction. Our inquiry into subject matter jurisdiction depends, in the first instance, on which pleading — the original complaint or the amended complaint — controls. At the outset, however, we pause to comment upon an arcane bit of nomenclature.

There is an open question as to whether an amended complaint asserting a cause of action that arose only after the prior complaint was filed should be regarded as a "supplemental"

-13-

rather than an "amended" complaint. The difference is modest.  An amended complaint filed pursuant to Federal Rule of Civil Procedure 15(a) typically relates to matters that have taken place prior to the date of the pleading that is being amended.  See 6 Wright et al., supra § 1473 (Supp. 2007). A supplemental complaint typically allows the pleader to "set[] forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented."  Fed. R. Civ. P. 15(d).  An amended complaint sometimes can be filed "as a matter of course," Fed. R. Civ. P. 15(a); a supplemental complaint cannot.

Here, however, the question of which label applies is more theoretical than real.  The parties and the district court consistently have treated the neoteric pleading as an amended complaint.  The defendants did not move to strike it, nor have they presented any developed argumentation either below or on appeal to the effect that the pleading should be regarded as a supplemental complaint.  Thus, any issue regarding the possible status of the

pleading as a supplemental complaint is waived.[7]  See United States
v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

This brings the preserved claim of error front and
center.   The LLC argues that the district court erroneously
regarded the original complaint as controlling for the purpose of
gauging subject matter jurisdiction.   In its view, the amended
complaint, filed as of right under Federal Rule of Civil Procedure
15(a), superseded the original complaint and rendered it functus
officio.

The defendants demur.   They argue that an action
originally filed under diversity jurisdiction — like this one —
must, in line with longstanding Supreme Court precedent, live or
die from a jurisdictional standpoint as of the time of filing
regardless of subsequent changes in either the facts or the
underlying jurisdictional allegations.

We begin our formulation of an answer to this conundrum
with a recognition that the parties' competing arguments combine to
pose a pure question of law and, therefore, engender de novo

---

[7]In any case, given that the amended complaint was filed as of
right, the characterization of the pleading is of little moment;
any error is in this instance would appear to be harmless.  See,
e.g., 6A Wright et al., supra § 1504, at 184-86. Furthermore, even
though copyright law requires copyright registration as a
prerequisite to instituting a copyright infringement suit in
federal court, 17 U.S.C. § 411(a), "registration is not a condition
for copyright protection," id. § 408(a).   Because the alleged
violation of the instant copyright began prior to the filing of the
original complaint, the conclusion of likely harmlessness is
strengthened.

review. See Young v. Lepone, 305 F.3d 1, 14 (1st Cir. 2002). In conducting that review, some points are uncontroversial. For example, it is clear beyond hope of contradiction that the Civil Rules permit a party to amend its complaint "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a). An amended complaint, once filed, normally supersedes the antecedent complaint. See InterGen N.V. v. Grina, 344 F.3d 134, 145 (1st Cir. 2003); 6 Wright et al., supra § 1476, at 556-57. Thereafter, the earlier complaint is a dead letter and "no longer performs any function in the case." Kolling v. Am. Power Conversion Corp., 347 F.3d 11, 16 (1st Cir. 2003).

For aught that appears, this is precisely what happened here. The LLC amended its complaint before the defendants filed a responsive pleading and, thus, the amendment was effective as a matter of right pursuant to Rule 15(a). Consequently, under ordinary rules of pleading and practice, the amended complaint would have replaced the original complaint lock, stock, and barrel. See id.; InterGen, 344 F.3d at 145. And because the amended complaint dropped any allusion to diversity as a jurisdictional predicate for the action, a conventional application of the rules of pleading and practice would seem to have required the district court to direct its jurisdictional inquiry not toward diversity but, rather, toward federal question jurisdiction (specified in the

-16-

amended complaint as the sole basis for federal court jurisdiction).

This result draws substantial support from a recent Supreme Court decision. In Rockwell International Corp. v. United States, 127 S. Ct. 1397 (2007), the Justices stated unequivocally that "when a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction." Id. at 1409. The case law in the courts of appeals is to the same effect. See, e.g., Wellness Cmty.-Nat. v. Wellness House, 70 F.3d 46, 49 (7th Cir. 1995); Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985).

The matter is complicated, however, by the existence of a different line of authority, headed by Grupo Dataflux. In the district court's view, Grupo Dataflux reaffirmed the time-of-filing rule and required it to turn a blind eye to any attempt to change the jurisdictional basis of the action. As we explain below, we believe that the district court misconceived the reach of the time-of-filing rule.

Historically, diversity jurisdiction requires complete diversity of citizenship as between all plaintiffs and all defendants. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806); Am. Fiber & Fin., Inc. v. Tyco Healthcare Group, L.P., 362 F.3d 136, 139 (1st Cir. 2004). Citizenship is determined as of the

date of commencement of an action and, therefore, in cases premised on diversity, jurisdiction "depends upon the state of things at the time of the action brought." Mullen v. Torrance, 22 U.S. (9 Wheat.) 537, 539 (1824). The Court 'hewed to this time-of-filing rule in Grupo Dataflux, in which it held that attaining diversity during the pendency of litigation could not save jurisdiction if the parties had not been diverse at the outset. 541 U.S. at 570-72.

Notwithstanding the impressive pedigree of the time-of-filing rule, it is inapposite here. The letter and spirit of the rule apply most obviously in diversity cases, where the rule originated, see Mullen, 22 U.S. at 537-39, and where heightened concerns about forum-shopping and strategic behavior offer special justifications for it, see, e.g., New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc., 101 F.3d 1492, 1503 (3d Cir. 1996); Shaw v. Gwatney, 795 F.2d 1351, 1354 (8th Cir. 1986); In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 510 F. Supp. 2d 299, 316 n.77 (S.D.N.Y. 2007); see also 13B Wright et al., supra § 3608, at 452. These concerns are not present in the mine-run of federal question cases, and courts have been careful not to import the time-of-filing rule indiscriminately into the federal question realm.[8]  See New Rock, 101 F.3d at 1503.

_____

[8]While there are outliers, see, e.g., Rosa v. Resolution Trust Corp., 938 F.2d 383, 392 n.12 (3d Cir. 1991), those few decisions allude to the time-of-filing rule reflexively and without any

More importantly, no court has ever read the time-of-filing rule to bar a plaintiff from switching jurisdictional horses before any jurisdictional issue has been raised, abandoning a claimed entitlement to diversity jurisdiction, and substituting a claimed entitlement to federal question jurisdiction. Certainly, the decision in Grupo Dataflux does not adumbrate such a result. While the Court there relied upon the time-of-filing rule to thwart an effort to manufacture diversity jurisdiction during the pendency of an action, 541 U.S. at 571, the decision operates exclusively in the realm of diversity jurisdiction.

A lightning tour of Grupo Dataflux illustrates why we find that opinion unhelpful to the defendants' cause. There, a Texas limited partnership invoked diversity jurisdiction and filed a breach of contract action in federal district court against a Mexican corporation. Id. at 568. After an adverse verdict, the

_____

meaningful analysis. See New Rock, 101 F.3d at 1503. The only consistent use of the time-of-filing rule in federal question cases occurs in the area of removal — an area in which the danger of manipulation is high. When a defendant removes a case to federal court based on the existence of a federal question, an amendment eliminating the claim giving rise to federal jurisdiction typically does not defeat jurisdiction. See, e.g., Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988). This is of scant solace to the defendants here, as removal cases raise forum-manipulation concerns that are totally absent when it is the plaintiff who chooses the federal forum and voluntarily amends his complaint to strengthen his claim of entitlement to that forum. See Rockwell Int'l, 127 S. Ct. at 1409 n.6 (suggesting that removal cases raise "forum-manipulation concerns that simply do not exist" in cases in which a plaintiff chooses a federal forum and then alters the action's jurisdictional basis through amendment).

defendant moved to dismiss for want of subject matter jurisdiction, alleging that the parties were not wholly diverse at the time of suit. Id. at 569. The district court determined that, on the filing date, the plaintiff, a limited partnership, included two Mexican nationals among its members. Id. For diversity purposes, it was thus a citizen of, inter alia, Mexico, and complete diversity was lacking. Id.

On appeal, the plaintiff argued that the two Mexican nationals had been dropped from the partnership prior to trial and, thus, should be disregarded for purposes of a diversity analysis. The court of appeals agreed. Id. at 569-70 (citing Atlas Global Group, L.P. v. Grupo Dataflux, 312 F.3d 168, 174 (5th Cir. 2002)). The Supreme Court reversed, holding that the time-of-filing rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time-of-filing — whether the challenge be brought shortly after filing, after the trial, or even for the first time on appeal." Id. at 571 (emphasis supplied).

As this account makes manifest, the Grupo Dataflux Court explicitly restricted the time-of-filing rule to diversity cases. Nothing in the opinion intimates that the Court meant to extend the rule wholesale beyond the frontiers of the diversity context. Doing so would have represented a major innovation, and a lower federal court should be slow to assume that the Supreme Court has

-20-

taken a significant doctrinal step by indirection or innuendo. Cf. Whitman v. Am. Trucking Ass'ns, Inc., 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes."). We are unwilling to indulge so rash an assumption here.

The case at hand is at a considerable remove from Grupo Dataflux. Here, unlike the plaintiff in that case, the LLC claims an entitlement to federal question jurisdiction. That claim does not depend on a manipulation of its business membership in order to fabricate complete diversity. Rather, the LLC amended its complaint in response to its copyright registration and altered the jurisdictional foundation of its action. At that point — that is, once the amended complaint superseded the original complaint — this case became a federal question case, not a diversity case. Nothing in Grupo Dataflux bars a legitimate shifting of the jurisdictional underpinnings of an action; and nothing in Grupo Dataflux demands the extension of the time-of-filing rule to a run-of-the-mill federal question case.

We add, moreover, that we can see no policy-based reason for elongating the reach of the time-of-filing rule and applying it to a case in which a plaintiff forsakes a claimed entitlement to diversity jurisdiction in favor of a claimed entitlement to federal question jurisdiction. After all, the plaintiff is both the author and the master of its complaint. See Holmes Group, Inc. v. Vornado

-21-

Air Circ'n Sys., Inc., 535 U.S. 826, 831 (2002). As such, it has the power to "decide what law [it] will rely upon." The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913). We think that principle extends to a plaintiff's decision as to which causes of action to bring and what jurisdictional arguments to press.

It bears emphasis that the time-of-filing rule is a judge-made construct: it does not owe its existence to any interpretation of constitutional or statutory text that demands our allegiance. See Grupo Dataflux, 541 U.S. at 583 (Ginsburg, J., dissenting); Dery v. Wyer, 265 F.2d 804, 808 (2d Cir. 1959). In the last analysis, this rule is the product of a policy decision that aims to promote certainty in diversity cases while at the same time minimizing the risk of unwholesome strategic behavior arising from the temptation to manufacture diversity through manipulation of the applicable constitutional and statutory requirements. See New Rock, 101 F.3d at 1504; In re MTBE, 510 F. Supp. 2d at 316 n.77; 13B Wright et al., supra § 3608, at 452.

These policy concerns, indigenous to diversity cases, are largely absent in federal question cases. Diversity depends in material part on citizenship, and citizenship is a matter of choice that easily can be influenced, in a mobile society, by the simple expedient of moving from place to place as a case progresses. See, e.g., Hawes v. Club Ecuestre El Comandante, 598 F.2d 698, 699-701 (1st Cir. 1979). In contrast, federal question jurisdiction

-22-

derives from the existence of particular causes of action and, thus, is not subject to the same vagaries. The risks of forum-shopping and jurisdictional manipulation are relatively insignificant. See In re MTBE, 510 F. Supp. 2d at 316 n.77 ("A plaintiff cannot add a federal claim to defeat federal question jurisdiction, only to solidify it.") (emphasis in original).

It follows that whereas a uniform, easily administered test is a practical necessity in diversity cases, no comparable need exists in federal question cases. See Boelens, 759 F.2d at 507-08 (indicating that concerns of jurisdictional manipulation "are not present . . . in a case of original federal question jurisdiction in which the plaintiff . . . is invoking the jurisdiction of the federal court"); cf. Rockwell Int'l, 127 S. Ct. at 1409 n.6 (noting that, in contrast to removed cases, "forum-manipulation concerns . . . simply do not exist" in cases brought in federal court and premised on federal question jurisdiction). We therefore reject the proposed application of the time-of-filing rule in what has become a federal question case.

The defendants have a fallback position. They asseverate that, even if the time-of-filing rule does not pertain, an amended complaint cannot relate back to an earlier pleading over which the court had no jurisdiction. This asseveration rests on the assumption that the district court did not have diversity jurisdiction over the action at the time of filing. Even if that

-23-

were so — a matter on which we take no view — the argument mixes plums with pomegranates. Rule 15(c)'s language about the relation back of amendments has no bearing here.

The purpose of Rule 15(c) is to allow a plaintiff to avoid the preclusive effect of a statute of limitations so long as certain conditions are satisfied. See, e.g., Leonard v. Parry, 219 F.3d 25, 27-28 (1st Cir. 2000); 6A Wright et al., supra § 1496, at 64-65; see also Fed. R. Civ. P. 15(c) advisory committee notes (stating that the relation back doctrine "is intimately connected with the policy of the statute of limitations"). The relation back doctrine has nothing to do with the curing of jurisdictional defects in an earlier pleading. See USM Corp. v. GKN Fasteners Ltd., 578 F.2d 21, 23 (1st Cir. 1978); Cicchetti v. Lucey, 514 F.2d 362, 367-68 (1st Cir. 1975).

In all events, the LLC's amended complaint did not "cure" a jurisdictional defect by engaging the gears of Rule 15(c)'s relation back mechanism.[9] Instead, it replaced the original complaint in its entirety — and it did so at a point when the district court's jurisdiction had not yet been questioned.

The defendants attempt to analogize this case to our decisions in USM Corp. and Cicchetti. That proffered analogy is

---

[9]In fairness to the defendants, the LLC did proffer a "relation back" argument — but that argument was both ill-conceived and unnecessary to our conception of the way in which this appeal should be resolved.

flawed. In USM Corp., we dismissed an appeal from a stay order for lack of appellate jurisdiction because the underlying claim was predominantly equitable in nature; therefore, the claim was not arbitrable and the stay could not be appealed. 578 F.2d at 21-22. The plaintiff then amended its complaint to drop its prayers for equitable relief and sought to use this restructuring to resurrect appellate jurisdiction. Id. We held that an amended complaint could not relate back to repair the jurisdictional defect retroactively. Id. at 23. Cicchetti dealt with a similar attempt retroactively to manufacture jurisdiction and, thus, revivify an action. See 514 F.2d at 367-68.

The case before us is a horse of a markedly different hue. In contrast to the plaintiffs in USM Corp. and Cicchetti, the LLC did not resort to the relation back mechanism in order to resurrect jurisdiction that already had been found wanting (indeed, the LLC's claim of entitlement to federal question jurisdiction, as we see it, does not depend upon the relation back mechanism at all). Rather, the LLC's amended complaint became the operative pleading by operation of law before any jurisdictional challenge was mounted. For present purposes, the new pleading did no more than memorialize the LLC's decision to rely on federal question jurisdiction in lieu of diversity jurisdiction.

The defendants have a final shot in their sling. They note, uncontroversially, that federal courts do not possess and

should not presume to exercise hypothetical jurisdiction.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998); see also U.S. Const. art. III.  Building on this foundation, they suggest that allowing a plaintiff to amend its complaint to add a newly-acquired federal cause of action capable of triggering the existence of federal jurisdiction that otherwise would be lacking is tantamount to sanctioning a form of hypothetical jurisdiction. We think that this suggestion is composed of more cry than wool.

As an initial matter, the case law indicates that a court sometimes may constitutionally exercise jurisdiction over a case even though it does not secure solid jurisdictional footing until after the case has been brought.  See, e.g., Caterpillar, Inc. v. Lewis, 519 U.S. 61, 73 (1996) (curing a wrongful exercise of removal jurisdiction); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 837 (1989) (involving the dropping of a party); see also Bernstein v. Lind-Waldock & Co., 738 F.2d 179, 185 (7th Cir. 1984) (Posner, J.) (holding erroneous exercise of removal jurisdiction cured by subsequent amendment of complaint to include federal causes of action); In re MTBE, 510 F. Supp. 2d at 307-08 & nn.39-42 (outlining criteria used to determine whether a jurisdictional defect is curable).

Perhaps more important, by looking to the amended rather than the original complaint, a court does not "'assume[]' jurisdiction for the purpose of deciding the merits."  Steel Co.,

-26-

523 U.S. at 94.  Amendments as of right under Rule 15(a) operate "as a matter of course," and do not require a judicial imprimatur. Seen in this light, Rule 15(a)'s allowance of amendments as of right does not ask a court to make an end run around the requirement that jurisdiction be established as a threshold matter. The Rule simply creates a roadmap; where the time-of-filing rule does not obtain, it directs an inquiring court to evaluate an action (including its jurisdictional predicate) by reference to the amended complaint instead of the original complaint.

The golconda of cases cited by the defendants are not to the contrary.  In each of them, the plaintiff asked the district court to grant them leave to amend their complaint after a jurisdictional challenge had been lodged (or, in some instances, adjudicated).  See, e.g., Boelens, 759 F.2d at 511-12; Asset Value Fund Ltd. P'ship v. Care Group, Inc., 179 F.R.D. 117, 118-19 (S.D.N.Y. 1998); Broad v. DKP Corp., 1998 WL 516113, at *1, 4 (S.D.N.Y. Aug. 19, 1998).  That is not what occurred here; as we have said, the LLC's amended complaint was filed as of right and became the operative complaint without judicial intervention and before any jurisdictional challenge had surfaced.

These are salient differences.  A motion for leave to file an amended complaint necessarily implicates a district court's authority to grant or deny the motion.  See Falise v. Am. Tobacco Co., 241 B.R. 63, 67 (E.D.N.Y. 1999); Broad, 1998 WL 516113, at *4.

When confronted with such a motion, there is a strong argument that a court ordinarily should consider any threshold jurisdictional concerns raised by the parties before ruling on the motion. Although we leave the question open, taking some other course might be thought an exercise of hypothetical jurisdiction.   See Integrated Tech. & Dev., Inc. v. Rosenfield, 103 F. Supp. 2d 574, 578-79 (E.D.N.Y. 2000); Am. Charities for Reas. Fundr. Reg., Inc. v. Shiffrin, 46 F. Supp. 2d 143, 154 (D. Conn. 1999).

But where, as here, a plaintiff amends its complaint as of right, the Civil Rules operate mechanically, and the judge's authority over the case is not brought to bear. In that event, the absence of federal subject matter jurisdiction in the original complaint will pose no obstacle to the consideration of an amended complaint. See Integrated Tech., 103 F. Supp. 2d at 579.

To sum up, we hold that the instant appeal is not moot; that the amended complaint, filed as of right, superseded and replaced the original complaint; that the action was at that point transformed into a federal question case (at least in the circumstances at hand); that the time-of-filing rule does not apply to such a case; and that the district court erred in looking to the original complaint and applying the time-of-filing rule.   The district court therefore mistakenly granted the defendants' motion to dismiss; the court had, and should have exercised, federal question jurisdiction over the action.

-28-

## III.   CONCLUSION

We need go no further. Although the defendants have advanced other arguments, those arguments are either unavailing, or inadequately developed, or both. We reject them out of hand and, for the reasons elucidated above, we reverse the order of dismissal. We remand the matter to the district court for further proceedings consistent with this opinion (including reinstatement of the previously dismissed state-law counts). The district court should consider, among other things, whether ConnectU I and ConnectU II should be consolidated pursuant to Fed. R. Civ. P. 42(a).

**Reversed and Remanded**.